**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

---

VALENTINO DIXON,

        Plaintiff,

    v.

CITY OF BUFFALO et al.,

        Defendants.

No. 19-cv-01678 (WMS) (HKS)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 1

ARGUMENT ............................................................................................................ 5

   I.   Defendants Are Obligated to Produce Documents that Are Relevant and Proportional to the Needs of the Case ................................................................ 5

     A.   The Requested Materials Are Relevant ............................................... 5

       1.   The Five Cases Are Relevant to Plaintiff's Monell Claims and the Individual Defendants' Misconduct ................................................ 6

       2.   Defendants' Shared Lists of Targets Are Relevant to Plaintiff's *Monell* Claims and Defendants' Misconduct .................................... 9

     3.   The Requested Materials Are Proportional to the Needs of the Case ............... 10

   II.   Defendants' Objections to Producing Responsive Documents Are Insufficient ....... 11

     A.   Defendant City of Buffalo Has Not Justified Its Failure to Produce the Requested Materials ................................................................. 11

     B.   Defendant County of Erie Has Not Justified Its Failure to Produce the Requested Materials ................................................................. 14

       1.   Mr. Ortiz's Federal Lawsuit Has No Bearing on the Relevance of the Discovery Sought Here ................................................. 15

       2.   The DeJac Case Is Relevant to Plaintiff's Claims .......................... 17

       3.   The Okungwu Documents are Relevant to Plaintiff's Claims .......... 19

       4.   The Capozzi Documents Are Relevant to Plaintiff's Claims .......... 20

CONCLUSION ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-CV-06519(MAT), 2017 WL 3130380 (W.D.N.Y. July 24, 2017)............................................................................................................. 6

*Bailey v. City of New York*, No. 14 CIV. 2091 JBW VMS, 2015 WL 4523196 (E.D.N.Y. July 27, 2015)................................................................................................... 7, 10, 11

*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir.1983) ...................................................... 8

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ................................ 2, 16, 19

*Black Love Resists In the Rust by & through Soto v. City of Buffalo, N.Y.*, 334 F.R.D. 23 (W.D.N.Y. 2019) .............................................................................................. 11

*Brandon v. City of New York*, 705 F. Supp. 2d 261 (S.D.N.Y. 2010) ............................ 2

*Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012 (W.D.N.Y. Oct. 31, 2018) .......................................................................................................... 6

*Chillemi v. Town of Southampton*, No. 12-CV-3370 ADS AKT, 2015 WL 5838724 (E.D.N.Y. Oct. 7, 2015) .................................................................................................... 9

*Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65 (W.D.N.Y. 2003) .............. 12

*Collins v. City of New York*, 923 F.Supp.2d 462 (E.D.N.Y.2013)................................. 8

*Cox v. McClellan*, 174 F.R.D. 32 (W.D.N.Y. 1997)............................................. 6, 17

*DiLeo v. Comm'r*, 959 F.2d 16 (2d Cir. 1992) ......................................................... 13

*Dobson v. Dougherty*, No. 17-CV-1014-LJV-MJR, 2018 WL 6321390 (W.D.N.Y. Dec. 4, 2018) ............................................................................................................ 7, 9, 17

*Gross v. Lunduski*, 304 F.R.D. 136 (W.D.N.Y. 2014)............................................... 17

*Gugino v. City of Buffalo*, No. 21-CV-283V(F), 2021 WL 5239901 (W.D.N.Y. Nov. 10, 2021) ................................................................................................................. passim

*Harper v. Port Auth. of New York & New Jersey*, No. 05CIV.5534(BSJ)(RLE), 2006 WL 1910604 (S.D.N.Y. July 10, 2006) .............................................................. 8, 20

*In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690 (3d Cir. 2018) .......... 12

*Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122 (N.D.N.Y. 1984)............................. 6

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) ......................................................... 9

*Ivery v. Baldauf*, No. 14-CV-6041, 2015 WL 13877948 (W.D.N.Y. Sept. 29, 2015) ............. 6, 17

*Kitevski v. City of New York,* No. 04 CIV. 7402 RCC RLE, 2006 WL 680527 (S.D.N.Y. Mar. 16, 2006) ....................................................................................................... 6

*McLennon v. City of New York*, 171 F. Supp. 3d 69 (E.D.N.Y. 2016) ......................... 8

*Medina v. Napoli*, No. 07-CV-0497W(SR), 2020 WL 515900 (W.D.N.Y. Jan. 31, 2020)............ 6

*Mingo v. City of New York*, No. 19CIV5806FBVMS, 2020 WL 7085359 (E.D.N.Y. Dec. 3, 2020) ................................................................................................................ 8, 20

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)............. 2

*Okongwu v. County of Erie*, No. 14-CV-832WMS, 2017 WL 2686454 (W.D.N.Y. June 22, 2017) ............................................................................................................... 19

*Ortiz v. Case*, No. 16CV322V, 2017 WL 2720087 (W.D.N.Y. June 23, 2017).............. 13, 15, 16

*Peters v. City of Buffalo*, 848 F. Supp. 2d 378 (W.D.N.Y. 2012) ............................... 18

*Ramos v. Town of E. Hartford,* No. 3:16-CV-166 (VLB), 2016 WL 7340282 (D. Conn. Dec. 19, 2016) ............................................................................................................. 10

*Rossy v. City of Buffalo*, No. 17-CV-937-WMS, 2020 WL 2833001 (W.D.N.Y. June 1, 2020) ... 2

*Steinman v. Morton Intl., Inc.*, 07-CV-00532-JJM, 2015 WL 13830798 (W.D.N.Y. Dec. 30, 2015) ..................................................................................................................... 11

*T.H. by Shepherd v. City of Syracuse*, No. 517CV1081GTSDEP, 2018 WL 3738945 (N.D.N.Y. Aug. 7, 2018) ........................................................................................... 6, 7, 17

*Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495 (D. Md. 2000) .................................... 12, 14

*United States v. Am. Tel. & Tel. Co.*, No. 74-1698, 1978 WL 1429 (D.D.C. Oct. 18, 1978) ....... 13

*United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir. 1960) ............................. 13

*Walker v. Suffolk Cty. Police Dep't*, No. CV 08-959 (JG) (AKT), 2011 WL 13127986 (E.D.N.Y. May 11, 2011) ........................................................................................... 7, 14, 17, 20

*Walls v. City of New York*, 502 F. Supp. 3d 686 (E.D.N.Y. 2020) .......................................... 6, 10

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 5, 10

# BACKGROUND

## *Plaintiff's Claims*

Plaintiff Valentino Dixon ("Plaintiff" or "Mr. Dixon") spent over 27 years wrongfully incarcerated for the 1991 Buffalo shooting murder of Torriano Jackson, before a 2018 reinvestigation by the Erie County DA recognized his actual innocence. Complaint ¶¶ 1–2. Plaintiff's wrongful incarceration resulted from Defendants' egregious misconduct and efforts to fabricate a case against him. Complaint ¶ 5. Defendants, including Detective Mark Stambach and Assistant District Attorney Christopher Belling acting as an investigator, coerced witnesses into providing false statements that Mr. Dixon was the shooter (*id.* ¶¶ 60–66, 112), even after Lamar Scott gave a sworn statement to Defendant Stambach confessing to killing Torriano Jackson (*id.* ¶ 98). Although Mr. Scott continued to truthfully proclaim that he was the shooter and that Mr. Dixon was innocent, Defendants Stambach and Bellling nonetheless threatened him with violence and coerced him into falsely blaming Mr. Dixon for the shooting. *Id.* ¶¶ 103, 108. On information and belief, Defendants fabricated a case against Mr. Dixon because he was one of a list of targets Defendants "intended to get 'off the street' by making any colorable charges stick to them." *Id.* ¶ 6; *see also id.* ¶¶ 44, 45, 74, 135, 155, 200, 206.

The individual Defendants' misconduct did not occur in isolation. Mr. Dixon's wrongful conviction was also the direct result of the unconstitutional and otherwise illegal policies, practices, and customs of both the Buffalo Police Department ("BPD") and the Erie County District Attorney ("ECDA"). *Id.* ¶ 12. The BPD had a policy, practice, or custom of: coercing or fabricating incriminatory statements or identifications, using various techniques to make false statements appear true and reliable, and failing to adequately supervise and discipline BPD officers in the exercise of their constitutional obligations, including their obligations not to

fabricate evidence, commit perjury, or hide exculpatory evidence. *Id.* ¶¶ 151–53. The ECDA had policies, practices, and customs of: failing to discipline prosecutorial misconduct; ignoring and suborning police misconduct; failing to prosecute police misconduct; encouraging or participating in the fabrication of evidence to create a false basis for charges against targets they wanted "off the street"; actively seeking to destroy exculpatory evidence by threatening witnesses to obtain their silence or false recantations; acting as *de facto* investigators, directing and controlling the BPD's serious felony investigations; and threatening witness tampering charges against criminal defense attorneys who sought to comply with their professional obligations by interviewing prosecution witnesses. *Id.* ¶¶ 201–07. These claims are well-established in the Second Circuit. *See Bellamy v. City of New York*, 914 F.3d 727, 757–61 (2d Cir. 2019).[1]

As examples of Defendants' policies, practices, and customs and their systemic failures, Plaintiff cited the cases of five other individuals who were also wrongfully convicted due to similar misconduct:

- Anthony Capozzi, who was wrongfully convicted of rape due to the BPD's misconduct, including possible false confessions orchestrated by BPD. Complaint. ¶¶ 167–68. DNA evidence eventually proved that Mr. Capozzi was innocent, and he was exonerated after spending 22 years in prison. *Id.* ¶ 169.

- Lynn DeJac, who was wrongfully convicted of killing her daughter after the BPD—including Defendants Stambach and James P. Lonergan—fabricated incriminating

---

[1] Under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a city or county is liable for the unconstitutional actions of its employees if a plaintiff demonstrates that the action was part of an "an official policy or custom," which could include, *inter alia*, "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware" or "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Rossy v. City of Buffalo*, No. 17-CV-937-WMS, 2020 WL 2833001, at *4 (W.D.N.Y. June 1, 2020) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

evidence and suppressed exculpatory evidence. *Id.* ¶ 171. She was exonerated by DNA evidence after spending 14 years in prison. *Id.* ¶ 172.

- Cory Epps, who was wrongfully convicted of murder, spending 20 years in prison before his conviction was vacated. *Id.* ¶ 178. The BPD—including Defendants Stambach and Raniero Massechia—suppressed exculpatory evidence and fabricated evidence. *Id.* ¶¶ 179–81.

- Josue Ortiz, who suffers from schizophrenia and other mental illnesses and was wrongfully convicted of murders he did not commit after the BPD—including Defendant Stambach—elicited a false confession while Mr. Ortiz was experiencing, what medical professionals, described as "suicidal" and "psychotic" behaviors. *Id.* ¶¶ 184–85. Defendant Stambach and other BPD officers also concealed evidence that conflicted with the false confession. *Id.* ¶ 187. Mr. Ortiz was eventually released after the U.S. Department of Justice and the FBI independently investigated the murders and concluded that Mr. Ortiz was innocent. *Id.* ¶ 188.

- Louis Eze, Joy Wosu, and Emeka Okongwu, who were wrongfully convicted of sexually assaulting Mr. Okongwu's two young daughters after the ECDA wrongfully prosecuted them. *Id.* at ¶ 212. The young daughters later explained that ECDA prosecutors coached them to provide false testimony. *Id.* ¶ 213. In addition, ADA Michael Cooper, who had a reputation for being aggressive, did not disclose the young girls' multiple attempts to recant the false story. *Id.* ¶¶ 212–13. All three of their convictions were eventually vacated and their cases were dismissed. *Id.* ¶ 212.

### *Plaintiff's Requests*

On September 14, 2020, Plaintiff requested that Defendant City of Buffalo produce documents concerning the investigation and prosecution of Anthony Capozzi, Lynn DeJac, Cory Epps, and Josue Ortiz. Affidavit from Mary Katherine McCarthy dated January 7, 2020 ("McCarthy Aff."), Exhibit A at RFP 19. Plaintiff also requested documents from the City listing individuals that the ECDA or Buffalo Police Department BPD sought to surveil, monitor, stop, arrest, prosecute, or incarcerate, including without limitation any watchlists, whether gang or drug-related or otherwise, from 1/1/1980 to 12/31/1995. *Id.* at RFP 20.

On June 9, 2021, Plaintiff requested that the Defendant County of Erie produce documents concerning the Capozzi, DeJac, Epps and Ortiz investigations, and also requested

documents concerning the investigation of Louis Eze, Joy Wosu, and Emeka Okongwu. McCarthy Aff., Exhibit B at RFP 13.

### *Defendants' Responses*

On December 24, 2020, the City responded to Plaintiff's document requests. In its response, the City objected to Request 19 regarding the other enumerated casefiles, arguing that the demand is "unduly burdensome," "irrelevant," and "not material and necessary to the prosecution" of the case. McCarthy Aff., Exhibit C at 28.[2] In addition, the City asserted that the documents requested are subject to protective, confidentiality, and/or sealing orders, and produced two such orders, entered in the Ortiz and Epps cases, respectively. *Id.*; McCarthy Aff., Exhibit D. The City has not to date produced a single document responsive to Request 19. In response to Request 20 regarding the target list, the City similarly stated that the demand is "unduly burdensome," "irrelevant," and "not material and necessary to the prosecution" of the case. McCarthy Aff., Exhibit C at 29. The City has also not produced any documents responsive to this request.

On July 19, 2021, the County objected to producing documents concerning the investigations, claiming that Plaintiff's demand is "overly broad, unduly burdensome, not likely to lead to the discovery of information material to this case." McCarthy Aff., Exhibit H at 17. The County also specifically objected to producing the documents because, in its view, information relating to the cases cannot support a *Monell* claim. The County's argument largely relies on a prior court's decision in federal litigation relating to Mr. Ortiz's wrongful conviction. *Id.*

---

[2] Although the City originally objected on various privilege grounds, it has not produced a privilege log and has since represented that it is not withholding any documents based on privilege. McCarthy Aff., Exhibit N.

4

Since propounding his discovery requests in September 2020, Plaintiff has met-and-conferred with City and County Defendants regarding their outstanding discovery responses on numerous occasions—at least ten times—to discuss both Defendants' substantive objections and their delays in production due to the COVID-19 pandemic, short staffing, and a change in counsel for the City in July 2021. McCarthy Aff. ¶ 5. Throughout multiple meet-and-confers, Plaintiff has explained that a previous decision regarding Mr. Ortiz's *Monell* claims does not diminish the relevance of documents concerning the five cases. McCarthy Aff., Exhibit E. However, both the County and the City have maintained their objections. McCarthy Aff. ¶ 5, Exhibits J & M. The City also rejected Plaintiff's offer to work with the City to narrow the scope of RFP 19 or provide direction on prioritization of its production in response to the City's objections. McCarthy Aff., Exhibit L.

## ARGUMENT

Plaintiff is entitled to discover the full scope of records sought regarding the Capozzi, DeJac, Epps, Ortiz, and Okongwu cases and for the documents related to any shared watchlists from 1/1/1980 to 12/31/1995. The documents are relevant to Plaintiff's individual and *Monell* claims and proportional to needs of this case. *See* Fed. R. Civ. P. 26(b)(1). There is ample authority demonstrating the reasonableness of Plaintiff's requests.

## I.    Defendants Are Obligated to Produce Documents that Are Relevant and Proportional to the Needs of the Case

### A.  The Requested Materials Are Relevant

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "The rule is broadly interpreted to permit discovery of relevant evidence regardless of the potential that such evidence will be admissible at trial." *Medina v. Napoli*, No. 07-CV-0497W(SR), 2020 WL 515900, at *2

(W.D.N.Y. Jan. 31, 2020) (quoting *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997)). In that vein, "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012, at *1 (W.D.N.Y. Oct. 31, 2018) (internal quotations omitted) (quoting *Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-CV-06519(MAT), 2017 WL 3130380, at *1 (W.D.N.Y. July 24, 2017)).

Moreover, "[f]ederal policy favors broad discovery in civil rights actions." *Ivery v. Baldauf*, No. 14-CV-6041, 2015 WL 13877948, at *1 (W.D.N.Y. Sept. 29, 2015) (quoting *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984)); *Walls v. City of New York*, 502 F. Supp. 3d 686, 692 (E.D.N.Y. 2020) ("Courts have long interpreted Rule 26(b)(1)'s scope broadly with respect to relevance and discovery sought in connection with federal § 1983 civil rights claims.").

### 1. The Five Cases Are Relevant to Plaintiff's Monell Claims and the Individual Defendants' Misconduct

Plaintiff's requests for documents relating to the five wrongful conviction cases in which Defendants are alleged to have participated in similar misconduct pursuant to a pattern, practice, or custom easily surpass this low relevance bar. *See, e.g.*, *Gugino v. City of Buffalo*, No. 21-CV-283V(F), 2021 WL 5239901, at *3 (W.D.N.Y. Nov. 10, 2021) ("[C]omplaints, lawsuits, and notices of claims involving use of chokeholds by defendants' police officers similar to chokehold alleged by plaintiff subject to discovery in support of plaintiff's *Monell* claim[.]" (citing *T.H. by Shepherd v. City of Syracuse*, No. 517CV1081GTSDEP, 2018 WL 3738945, at *4 (N.D.N.Y. Aug. 7, 2018)); *Kitevski v. City of New York,* No. 04 CIV. 7402 RCC RLE, 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006) (ordering production of complaint records and noting that, in the

context of a *Monell* claim, such records are relevant to show "the City's knowledge of, and response to, [the defendant officer's] behavior and complaint history").

As discussed above, Plaintiff alleges that Defendants' misconduct here (*e.g.*, fabricating evidence, coercing victims into false testimony, and failing to supervise and discipline) occurred pursuant to Defendants' policies, practice, or customs of such misconduct. Accordingly, "if [P]laintiff's allegations prove to be true insofar as []he alleges that these policies have caused the constitutional deprivation alleged in this instance, then evidence of other incidents . . . may assist in illustrating a causal relationship between these policies and constitutional deprivations." *T.H. by Shepherd*, 2018 WL 3738945, at *5; *see also Dobson v. Dougherty*, No. 17-CV-1014-LJV-MJR, 2018 WL 6321390, at *4 (W.D.N.Y. Dec. 4, 2018*) ("[W]here lawsuits involve *Monell* claims, courts have ordered discovery of documents and information that establish a municipality's policies or customs as well as individual defendants' participation in or reliance on those policies or customs.").

In addition, the five cases are relevant to Plaintiff's allegations regarding the culture of the BPD and ECDA and their systemic histories of misconduct (*see, e.g.* Complaint ¶¶ 41, 43). *See Bailey v. City of New York*, No. 14 CIV. 2091 JBW VMS, 2015 WL 4523196, at *4 (E.D.N.Y. July 27, 2015) ("Although some of the requested exhibits concern types of constitutional violations other than *Brady* or *Rosario* violations, the [documents] are nonetheless relevant in that they may shed light on a culture and policies that 'effectively encouraged [ADAs] to' engage in 'underhanded tactics.'"); *Walker v. Suffolk Cty. Police Dep't,* No. CV 08-959 (JG) (AKT), 2011 WL 13127986, at *2 (E.D.N.Y. May 11, 2011) ("The Complaint repeatedly references a systematic history of misconduct within the Suffolk County Police

Department such that discovery of prior reports of similar conduct are reasonably calculated to lead to the discovery of admissible evidence.").

The Capozzi, Dejac, and Okongwu cases, insofar as they occurred prior to Plaintiff's wrongful arrest and conviction, may also demonstrate that Defendants had notice of such misconduct. *See, e.g.*, *Mingo v. City of New York*, No. 19CIV5806FBVMS, 2020 WL 7085359, at *2 (E.D.N.Y. Dec. 3, 2020) (finding "disciplinary summaries and performance evaluations relevant to . . . *Monell* claim as possible evidence of the [defendant's] notice of misconduct"). In addition, any response or lack thereof to this evidence of misconduct by BPD is highly relevant evidence to Plaintiff's claims regarding customs of insufficient supervision and discipline. *See, e.g.*, *Harper v. Port Auth. of New York & New Jerse*y, No. 05CIV.5534(BSJ)(RLE), 2006 WL 1910604, at *2 (S.D.N.Y. July 10, 2006) ("Because [plaintiff] asserts claims based on *Monell*, [defendants'] knowledge of, and response to, defendants' behavior and complaint history is relevant.").

Finally, because the Ortiz and Epps cases occurred after Mr. Dixon's wrongful arrest, they may show how Defendants ratified similar acts of misconduct. Indeed, "[b]ecause the disposition of the policymaker may be inferred from his conduct after the events giving rise to the constitutional violation, a policymaker's implicit ratification may be established by his or her reward or encouragement of the unlawful conduct." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 97 (E.D.N.Y. 2016) (internal quotations and citations omitted) (citing *Collins v. City of New York*, 923 F.Supp.2d 462, 477 (E.D.N.Y.2013) and *Batista v. Rodriguez*, 702 F.2d 393, 398 (2d Cir.1983)). Consistent with such ratification, Plaintiff alleges that "[n]ot only were repeat offender prosecutors not disciplined, they were promoted to the highest levels of the office. For example, ADA Clark became the head of the office and ADA Marusak was promoted to the

highest levels of the office's administration." Complaint ¶ 216. In addition, outside of *Monell* liability, the Ortiz and Epps cases may also be relevant to establishing "a pattern, intent, and absence of mistake" under Rule 404(b). *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990). For example, "courts in the Second Circuit have held that incidents or complaints occurring after the events at issue in a Section 1983 lawsuit may be relevant and discoverable for reasons other than proving the existence of a municipal policy or custom." *Dobson*, 2018 WL 6321390, at *5; *see also Chillemi v. Town of Southampton*, No. 12-CV-3370 ADS AKT, 2015 WL 5838724, at * 8–9 (E.D.N.Y. Oct. 7, 2015) (collecting cases).

### 2. Defendants' Shared Lists of Targets Are Relevant to Plaintiff's *Monell* Claims and Defendants' Misconduct

Plaintiff alleges throughout his Complaint that the BPD and ECDA "maintained and shared a list of targets that they intended to get 'off the street' by making any colorable charges stick to them" and that "Defendants fabricated a case against Mr. Dixon because he had been present at the scene and he was one of the targets on their list." Complaint ¶ 6; *see also id.* ¶¶ 44, 45, 74, 135, 155, 200, 206. Plaintiff has reason to believe both that such a list existed at the time and that Mr. Dixon was on it—as well as that his presence on the list motivated Defendants fabrication of evidence. As described in his Complaint, the BPD and ECDA suspected that Mr. Dixon was selling drugs and the BPD ransacked his house and pulled him over almost every single day for the first half of 1991. *Id.* ¶ 45. Indeed, Defendants had a "mutual understanding that BPD officers would, if presented with an opportunity, create evidence by any means necessary to make any colorable charges against targeted people stick." *Id.* ¶ 44.

Thus, the shared list(s) of targets and associated documents are highly relevant to demonstrating Defendants' misconduct in this case, such as the fabrication of evidence that lead to Mr. Dixon's wrongful conviction. Moreover, the knowledge of the list and potentially similar

misconduct regarding the other people on the list could also demonstrate *Monell* liability for the same reasons articulated above, *e.g.*, showing that Defendants had notice of misconduct or "shed[ding] light on a culture and policies that 'effectively encouraged [ADAs] to' engage in 'underhanded tactics.'" *Bailey*, 2015 WL 4523196, at *4.

### 3.   The Requested Materials Are Proportional to the Needs of the Case

Discoverable evidence is defined as:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P 26(b)(1).

Here, these factors weigh heavily in favor of disclosure. First, "'[t]he importance of the issues at stake in the action' is significant, as they involve civil rights." *Walls*, 502 F. Supp. 3d at 695; *see also Ramos v. Town of E. Hartford,* No. 3:16-CV-166 (VLB), 2016 WL 7340282, at *8 (D. Conn. Dec. 19, 2016) ("The fact that the claims implicate important federal civil rights . . . counsels in favor of requiring greater disclosure under the Rules' proportionality standard."). The amount of controversy due to the damages accumulated from Mr. Dixon's 27 years in prison for a crime he did not commit due to Defendants' misconduct is high. Crucially, "Defendants' exclusive access to the information weighs in favor of discovery because it diminishes the availability and relevance of other proportionality considerations; Plaintiff[], regardless of [his] resources, cannot show the importance of the information in resolving the issues if [he] do[es] not know what it is." *Walls*, 502 F. Supp. 3d at 695.

Finally, given the relevance of the materials, the burden of producing materials for only five cases is minimal. *See, e.g., Black Love Resists In the Rust by & through Soto v. City of*

*Buffalo, N.Y.*, 334 F.R.D. 23, 34 (W.D.N.Y. 2019) ("As only 168 files are at issue, this burden is hardly insurmountable."); *Bailey*, 2015 WL 4523196, at *4 ("Moreover, Plaintiff's request is not, in the circumstances of this case, overbroad. Plaintiff seeks only seventeen documents . . . ."). The burden of producing a single list—or even several lists—is even more minimal.

In sum, the information requested is highly relevant and proportional to the needs of this case.

## II.    Defendants' Objections to Producing Responsive Documents Are Insufficient

"The party seeking discovery has the initial burden to demonstrate that the information sought is relevant and proportional to the needs of the case . . . and upon such showing the burden shifts to the party resisting the discovery to explain why discovery should not be permitted." *Gugino*, 2021 WL 5239901, at *3 (internal quotation omitted). Defendants have not met their burden here.

### A.    Defendant City of Buffalo Has Not Justified Its Failure to Produce the Requested Materials

The City's objections to producing the records related to the five cases and documents related to any watchlist use boilerplate language such as "unduly burdensome," "irrelevant," and "not material and necessary to the prosecution." McCarthy Aff., Exhibit C at 28–29. However, as discussed in detail above, the materials are clearly relevant to Plaintiff's claims.

Moreover, the City has not shown how producing the materials related to the five cases is burdensome. "A party opposing a discovery request cannot make conclusory allegations that a request is . . . unduly burdensome. Instead the party resisting discovery must show specifically how each discovery request is . . . unduly burdensome." *Steinman v. Morton Intl., Inc.*, 07-CV-00532-JJM, 2015 WL 13830798, at *1 (W.D.N.Y. Dec. 30, 2015). Accordingly, "[o]bjections based on burdensomeness require the objecting party provide an affidavit from a person with

knowledge of the facts explaining why the request unduly burdens the responding party."
*Gugino*, 2021 WL 5239901, at *3 (citing *Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D.
65, 69 (W.D.N.Y. 2003). The City has not done so here.

 The City also asserted that the documents requested are subject to protective,
confidentiality, and/or sealing orders, and produced two such orders, entered in the Ortiz and
Epps cases, respectively. McCarthy Aff., Exhibit D. The Court should reject the City's attempt to
evade its discovery obligations by relying upon prior "protective, confidentiality, and/or sealing
orders, including but not limited to those Bates numbered as 'COB 000316-COB000322.'"
McCarthy Aff., Exhibit C at 28. First, the Discovery Confidentiality Order in this case assures
the protection of any documents produced that contain sensitive information. *See* ECF No. 30-2
¶ 2. Second, the mere existence of prior protective and sealing orders in other cases does not
justify the City's failure to produce documents in this action.

 To begin, the City cannot use prior confidentiality orders to insulate it from producing *its
own documents*. "It may readily be agreed that discovery in one lawsuit that is subject to a
protective order may not necessarily, or even often, preclude discovery in a subsequent lawsuit . .
. ." *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 699 (3d Cir. 2018)
((citation omitted); *see also Tucker v. Ohtsu Tire & Rubber Co.*, 191 F.R.D. 495, 501 (D. Md.
2000) ("[T]here is something unsettling about the notion that [defendant] might forever be
insulated from producing discovery in this, or other actions, by virtue of having once produced it
in a protected fashion in [another] case."). Indeed, "[r]ecords may of course be relevant to one,
two, or ten different lawsuits, and there is no basis for concluding that the court in which they
happen to have been produced first has the power, by virtue of that fact, to preclude their
production when a litigant in another action legitimately requires them for the preparation of his

case." *United States v. Am. Tel. & Tel. Co.*, No. 74-1698, 1978 WL 1429, at *3 (D.D.C. Oct. 18, 1978).

Moreover, the documents included at the referenced Bates numbers are orders relating to the Ortiz and Epps cases that do not justify the City's failure to produce responsive documents here. The Ortiz orders allowed federal grand jury materials in *United States v. Misael Montalvo, et al.* to be disclosed to both Erie County and Mr. Ortiz with the requirement that they be kept "secret and confidential." These orders do not forever preclude disclosure of all of the City's responsive documents, regardless of whether they were included in grand jury proceedings.[3] *See DiLeo v. Comm'r*, 959 F.2d 16, 19 (2d Cir. 1992), citing *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960) ("[W]hen testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been . . . examined by a grand jury.").

The Epps document is simply a stipulation between the parties (that was not "so ordered" by the Court), agreeing that documents produced in the *Epps v. City of Buffalo* action are to temporarily be designated "Confidential – Attorney's Eyes Only," only "until the parties can negotiate and have a so-ordered Confidentiality Order" that protects the identity of a confidential witness. There does not appear to be any so-ordered confidentiality stipulation protecting

---

[3] In fact, in Mr. Ortiz's wrongful conviction case, the Court unsealed many of the documents sought here pursuant to N.Y. CPL §160.50, and ordered defendants to produce "the police file synopsis of the contents of the file and plaintiff's statements that were part of the investigative file", and any "summary . . . contained in the prosecution file . . . in order for plaintiff to identify such documents that are not produced initially for him to then move specifically to compel production and resist the privilege asserted for non-production." *Ortiz v. Case*, No. 16CV322V, 2017 WL 2720087, at *7 (W.D.N.Y. June 23, 2017).

documents from disclosure in other actions. *See Tucker*, 191 F.R.D. at 501 ("There is less need for deference and comity when the order involved is really an agreement by counsel . . . than an action directed by the court after a full consideration of the merits of a fully briefed dispute."). Moreover, if the City is truly concerned about protecting a confidential witness, other solutions are available that do not require withholding information completely.

### B. Defendant County of Erie Has Not Justified Its Failure to Produce the Requested Materials

The County objects to producing documents for all the investigations because in its view Plaintiff's demands are "overly broad, unduly burdensome, [and] not likely to lead to the discovery of information material to this case." McCarthy Aff., Exhibit H, at 17–18. The County's boilerplate objections fail for the same reasons they fail the City: the materials are relevant to Plaintiff's *Monell* claims and Defendants' misconduct and the County has not pointed to a specific burden in producing the records.

The County also objected to producing the documents because in its view, they cannot support a *Monell* claim. However, the applicable inquiry at this stage is not whether the five cases establish liability under *Monell*, but whether they are relevant to the claims in Plaintiff's case *based on the allegations in his complaint*. *See, e.g.*, *Walker*, 2011 WL 13127986, at *2 (finding that the "information sought is relevant to Plaintiff's claims as pled in the Complaint" and noting that "[t]he Complaint repeatedly references a systematic history of misconduct within the Suffolk County Police Department such that discovery of prior reports of similar conduct are reasonably calculated to lead to the discovery of admissible evidence"). Accordingly, because the cases are relevant and discovery is proportional to Plaintiff's claims, the County has failed to

14

meet its burden "to explain why discovery should not be permitted." *Gugino*, 2021 WL 5239901, at *3.[4]

### 1. Mr. Ortiz's Federal Lawsuit Has No Bearing on the Relevance of the Discovery Sought Here

The County misplaces reliance on a prior court's findings in Mr. Ortiz's federal lawsuit, *Ortiz v. Case,* No. 1:16-CV-00322 EAW, 2019 WL 1236413 (W.D.N.Y. Mar. 18, 2019), *aff'd*, 782 F. App'x 65 (2d Cir. 2019), arguing that as a result of that holding, the Ortiz, DeJac, and Okongwu cases cannot support a *Monell* claim. But the *Ortiz* court's findings have nothing to do with the relevance of the requested materials to the prosecution of *this* case.

In *Ortiz v. Case*, Mr. Ortiz alleged that the individual defendants, former ADA Kenneth F. Case, and former District Attorneys Frank A. Sedita, III, and Frank J. Clark prosecuted claims against him without properly evaluating the evidence, and hid and failed to disclose exculpoatory evidence, forcing Mr. Ortiz to file a motion to vacate his conviction. *Id.* at *4. The court granted defendants' motion for summary judgment, finding that these claims were barred due to absolute prosecutorial immunity and Eleventh Amendment sovereign immunity. *Id.* at *6–7.

In addition, in connection with his *Monell* claim, Mr. Ortiz also alleged that the County "had a policy or custom to 'endorse, authorize and enforce unconstitutional methods, investigations, arrests, identifications, evidence disclosure, and all other procedures related to the Constitutional rights of citizens, including the Plaintiff herein . . . [and] a policy or custom that 'a convicted person was not provided constitutional rights even after his conviction and incarceration was reasonably known and proven to be wrongful and unjust.'" *Id.* at *7. However,

---

[4] The County also objected to producing materials related to Capozzi and Epps because the cases were not referenced in Plaintiff's Complaint. McCarthy Aff. Ex H, at 17. That objection is baseless because Plaintiff did cite the Capozzi and Epps matters in his Complaint. *See* Complaint ¶¶ 167–70 (Cappozi), ¶¶ 178–83 (Epps).

the court found that Mr. Ortiz's claims were conclusory and without adequate support because Mr. Ortiz "failed to submit any evidence of a municipal policy or custom in opposition to [d]efendants' motion for summary judgment," and therefore failed to establish the existence of a genuine issue of material fact. *Id.*

The court's decision in *Ortiz v. Case* has no relevance here. To begin, any prior finding of immunity does not foreclose a *Monell* claim here. *See Bellamy*, 914 F.3d at 760 ("In contrast to the immunity inquiry, *Monell* addresses not whether certain functions can open individuals to liability, but simply which governmental entity (the state or the municipality) is responsible for a given function."). In addition, the policies and customs described in *Ortiz v. Case* are distinct from those alleged in Plaintiff's Complaint. Here, unlike in *Ortiz*, Plaintiff alleges that the ECDA had policies, practices, and customs of: ignoring and suborning police misconduct; actively seeking to destroy exculpatory evidence by threatening witnesses to obtain their silence or false recantations; acting as *de facto* investigators; and directing and controlling the BPD's serious felony investigations. Complaint ¶¶ 201–07.

Finally, even assuming *arguendo* that Mr. Ortiz's allegations and Plaintiff's allegations were similar, the procedural posture of the case make the *Ortiz* court's finding inapplicable in this context. Mr. Ortiz's failure to submit sufficient evidence to establish an issue of material fact on summary judgment is irrelevant to this discovery dispute. Plaintiff does not have a burden to establish facts that a policy or custom exists here, but only must show that the materials in the investigation and prosecution of Mr. Ortiz are relevant to Plaintiff's allegations that the ECDA had the policies, practices, and customs identified in his Complaint. Put differently, Plaintiff is entitled to the materials related to Mr. Ortiz's case because Defendants' misconduct in that case could illuminate a smaller piece of a larger mosaic of Defendants' persistent unconstitutional

misconduct pursuant to the policies, practices, and customs *as alleged in Plaintiff's complaint*. *See, e.g.*, *Walker*, 2011 WL 13127986, at *2 ("The Complaint repeatedly references a systematic history of misconduct within the Suffolk County Police Department such that discovery of prior reports of similar conduct are reasonably calculated to lead to the discovery of admissible evidence.").

### 2.   The DeJac Case Is Relevant to Plaintiff's Claims

*Ortiz v. Case* is similarly unconnected to the relevancy of the DeJac materials to the prosecution of Plaintiff's case. In the context of summary judgment, the *Ortiz* court found that the DeJac case would not support a *Monell* claim in Ortiz's proposed amended complaint because the DeJac case was settled and thus "resolved without any finding of liability." *Id.* The court added that "[p]laintiff has offered no facts regarding these lawsuits beyond their mere existence, such that the Court could conclude that a triable issue of fact existed with respect to a purported Erie County policy or custom." *Id.* The *Ortiz* court's analysis is inapplicable to whether the DeJac case is relevant to Plaintiff's claims. As another court in this District remarked: "there is a stronger argument in favor of disclosure of unsubstantiated complaints in cases, like this one, which involve a Section 1983 claim against a municipality, or *Monell* claim." *Dobson*, 2018 WL 6321390, at *3; *see also Gross v. Lunduski*, 304 F.R.D. 136, 145 (W.D.N.Y. 2014) ("In civil rights actions, courts have permitted discovery of prior similar complaints or incidents regardless of the outcome of those complaints." (emphasis omitted) (quoting *Cox*, 174 F.R.D. at 34); *Ivery*, 2015 WL 13877948, at *1 (same).  Accordingly, the DeJac case is relevant to Plaintiff's claims regardless of whether there was a finding of liability because it is relevant to a showing that the misconduct in that case is pursuant to policies, practices, and customs of similar misconduct as alleged in Plaintiff's complaint. *See, e.g.*, *T.H. by Shepherd*, 2018 WL 3738945, at *6 ("Limiting the scope of discovery to substantiated claims

17

against defendants . . . will be insufficient to meet plaintiff's needs. Plaintiff is entitled to probe whether defendant City of Syracuse failed to seriously investigate claims of a similar nature that had some validity to them.").

Moreover, before the DeJac case was settled, the court found on a motion to dismiss in *Peters v. City of Buffalo*, that Ms. Peters (formerly known as Ms. DeJac) had "sufficiently shown that the County's policymakers may plausibly have known about, and permitted, the alleged conduct" by "ple[ading] a series of acts in 1997 and 2007 undertaken by district attorneys Clark and Marusak, pursuant to the County's alleged custom or practice of having district attorneys control homicide investigations." 848 F. Supp. 2d 378, 390 (W.D.N.Y. 2012). In particular, Ms. Peters pled that:

> there was a policy, practice and custom of the Defendant COUNTY OF ERIE and Erie County District Attorney's Office to take an active part in and exert inordinate control over the murder investigations of the Defendants CITY OF BUFFALO and BUFFALO POLICE DEPARTMENT and a corresponding policy, practice and custom of [those] Defendants . . . to permit the Erie County District Attorney's Office to direct and control their investigations, including, but not limited to, what evidence gets tested, what witness to question, and the role polygraph tests take in eliminating suspects.

*Id.* Ms. Peters's allegations regarding the County's policies, practices, and customs are similar to the allegations in Plaintiff's complaint. *See, e.g.*, Complaint ¶ 204. The similarities in the allegations make the DeJac documents relevant to the prosecution of Plaintiff's case under Rule 26(b). *See, e.g.*, *Gugino*, 2021 WL 5239901, at *3 ("[T]he permissible scope of discovery is governed by the claims or defenses in the case."). The fact that the claims in DeJac's complaint survived a motion to dismiss only makes the relevance of the DeJac documents to the prosecution of Plaintiff's case clearer.

### 3. The Okungwu Documents are Relevant to Plaintiff's Claims

The County similarly contends that it need not produce the Okongwu documents because "the DA's were dismissed from the Okongwu case based on prosecutorial immunity," citing *Ortiz v. Case* once more. However, the the court's dismissal of the County on a motion to dismiss in *Okongwu v. County of Erie*, No. 14-CV-832WMS, 2017 WL 2686454, at *3 (W.D.N.Y. June 22, 2017), is inapplicable to the relevance of the Okongwu materials here because, as discussed above, prosecutorial immiunity and *Monell* liability are separate issues. *See Bellamy*, 914 F.3d at 760.

Specifically, in *Okongwu v. County of Erie*, Mr. Okongwu "allege[d] that witnesses were coerced and coached in the initial prosecution on several occasions up until trial, to go on with the fabricated evidence that was initially brought to authorities by Ollie McNair," the twins' foster mom, and that ADAs "Cooper and Bridge knew or should have known that the testimony of the two girls was manufactured by Ollie McNair." *Id.* at *3 (internal citations and quotations omitted). The court then found that the ADA defendants were immune from suit, but made no finding beyond that, nor could it at that stage.[5] The Court did not address whether the ADAs coerced Mr. Okongwu's daughters into fabricating evidence, and if they did, whether ECDA's policies, practices, and customs in failing to discipline prosecutorial misconduct, ignoring and suborning police misconduct, and failing to adequately train prosecutors to turn over exculpatory evidence allowed such misconduct. Accordingly, despite its misguided reliance on its dismissal

---

[5] It bears noting that Mr. Okongwu, after spending 11 years wrongfully incarcerated, sued the County *pro se*. *Id.* at *1. Thus, the court's dismissal of the County based on Mr. Okongwu's pleadings does not necessarily mean that the County did not participate in a similar pattern, practice, or custom of misconduct as in Plaintiff's case, but only that Mr. Okongwu, acting without counsel, did not properly allege misconduct not covered by prosecutorial immunity.

from Mr. Okongwu's lawsuit, the County has not demonstrated that the materials are not relevant to Plaintiff's claims.

### 4.   The Capozzi Documents Are Relevant to Plaintiff's Claims

Lastly, contrary to the County's assertion (McCarthy Aff., Exhibit H, at 17), Plaintiff has established that there is a nexus between the Capozzi case and Plaintiff's claims. Anthony Capozzi was wrongfully arrested in 1985 and the facts of the case, as discussed in Plaintiff's Complaint, suggest that the victims identified the 220-pound Mr. Capozzi as the 160-pound attacker "because of improper coercion, pressure, or suggestion from BPD officers." Complaint ¶ 168. Plaintiff alleges similar misconduct here and thus "discovery of prior [instances] of similar conduct are reasonably calculated to lead to the discovery of admissible evidence." *Walker*, 2011 WL 13127986, at *2. Moreover, as with the other four cases, the Capozzi case could show that the County had notice of the BPD's prior similar acts of misconduct. *See, e.g.*, *Mingo*, 2020 WL 7085359, at *2 (finding "disciplinary summaries and performance evaluations relevant to . . . *Monell* claim as possible evidence of the [defendant's] notice of misconduct"). In addition, any response or lack thereof to this evidence of misconduct by BPD is highly relevant evidence to Plaintiff's claims regarding customs of insufficient supervision and discipline. *See, e.g.*, *Harper*, 2006 WL 1910604, at *2 ("Because [plaintiff] asserts claims based on *Monell*, [defendants'] knowledge of, and response to, defendants' behavior and complaint history is relevant.").

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court compel the production of documents responsive to Plaintiff's RFP Nos. 19 and 20 to the City of Buffalo and RFP 13 to the County of Erie.

Dated: January 7, 2022
New York, New York

/s/ Mary Katherine McCarthy
Mary Katherine McCarthy
Nick Joel Brustin
Anna Benvenutti Hoffmann
Mary Katherine McCarthy
Sona Shah
Gerardo Romo

NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson

EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290