# Exhibit A

*September 14, 2020 Plaintiff's Initial Request for Production of Documents and Things to Defendant City of Buffalo*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTINO DIXON,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF BUFFALO et al.<br><br>      Defendants. | Case No. 19-cv-01678<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT CITY OF BUFFALO** |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT CITY OF BUFFALO**

    Under Federal Rules of Civil Procedure 26 and 34, Plaintiff Valentino Dixon, by his attorneys, Neufeld Scheck & Brustin, LLP, and Donald Thompson, Easton Thompson Kasperek Shiffrin LLP, demand that Defendant City of Buffalo ("Defendant") produces documents responsive to the following requests within 30 days of service of this demand. As required by Rule 26(e), Defendant must promptly amend or supplement answers or disclosures within 30 days after additional information or material is acquired, and in no event later than 30 days before trial.

    Defendant's answers must restate each document request in full before responding to it. Each document request must be accorded a separate answer. Each response shall first set forth <u>verbatim</u> the document request to which it is responsive. Requests or subparts thereof shall not be combined for the purpose of supplying a common answer. The answer to a document request or subpart must not be supplied by referring to the answer to another request for documents unless the request for documents or subpart referred to supplies a complete and accurate answer to the request for documents or subpart being answered.

    It is further required that all documents produced appear in the form, order, and condition that they are in on the day that these document requests are served, including all comments, notes, remarks, or other materials which may have been added to documents subsequent to their initial preparation. Documents that in their original condition were stapled, clipped, or otherwise fastened

1

together shall be produced in the order in which they were originally arranged. Documents not otherwise responsive to a request shall be produced if such documents refer to, relate to, or explain the documents called for in this Request, or if such documents are attached to documents called for in this Request and constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar documents. In accordance with the parties' agreement before the Court, documents shall be produced electronically.

If documents are not in Defendant's possession but within Defendant's control, Defendant is required to comply with the definition and instructions for "control" below. If no responsive documents exist, then so state. If Defendant objects to any request on the grounds of privilege, its response must identify the nature of the responsive information and specify the claimed privilege in a log, consistent with Rule 26(b)(5). If Defendant objects to or otherwise does not respond to any Request, in whole or in part, it must set forth the nature and basis for the objection or other failure or refusal to respond in sufficient detail so that the Court can determine the propriety of such objection or failure or other refusal to respond, and state whether any information is being withheld on the basis of the objection.

## DEFINITIONS

The following definitions and principles shall be deemed to have the meaning set forth herein, and are incorporated herein and throughout this and each succeeding set of discovery requests, if any, as though fully set forth at length, unless expressly stated to the contrary.

    a.    **Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

    b.    **Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

    c.    **Identify** (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present

2

        or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

d.   **Identify** (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

e.   **Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

f.   **Person**. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

g.   **You**. The term "you" refers to the party to whom these requests to admit are propounded, its agents, employees, representatives, and attorneys, and those employed by its attorneys.

h.   **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

i.   **Control**. "Control" shall be defined so as to apply to any document, if you have the right to secure the document or a copy thereof from another person or public or private entity having actual possession thereof. If a document is responsive to a request for identification or production and is in your control, but is not in your possession or custody, identify the person in possession or custody. If any document was, but is no longer, in your possession or subject to your control, state what disposition was made of it, by whom, and the date

  or dates or approximate date or dates on which such disposition was made, and why.

 **j.** **All/Any/Each**. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

 **k.** **And/Or**. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

 **l.** **Number**. The use of the singular form of any word includes the plural and vice versa.

 **m.** **BPD.** The term "BPD" refers to the Buffalo Police Department, including any department, officer, employee, agent, or contractor thereof.

 **n.** **ECDA.** The term "ECDA" refers to the Erie County District Attorney's Office, including any department, officer, employee, agent, or contractor thereof.

 **o.** **August 10, 1991 Buffalo shooting investigation.** The term "August 10, 1991 Buffalo shooting investigation" refers to the investigation of the August 10, 1991 altercation and shooting around 1:00 a.m. near the intersection of East Delevan and Bailey Avenues in Buffalo, NY. It includes without limitation the investigation, arrest, and/or prosecution of Valentino Dixon.

## REQUESTS FOR PRODUCTION TO DEFENDANT CITY OF BUFFALO

1. Identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo concerning the August 10, 1991 Buffalo shooting investigation, including without limitation:

 **a.** the complete BPD investigative file regarding the August 10, 1991 Buffalo shooting investigation, reproduced in its original form with index and cover pages;

 **b.** the complete investigative files from any other agency of the City of Buffalo concerning the August 10, 1991 Buffalo shooting investigation;

**c.**  any and all medical, forensic or crime lab files, reports, and notes concerning the August 10, 1991 Buffalo shooting investigation, including any and all documents on any forensic testing, and including without limitation any and all documents relating to ballistics or gunshot residue testing;

**d.**  any and all crime reports, investigative reports and supplements, notes, and witness statements concerning the August 10, 1991 Buffalo shooting investigation;

**e.**  any and all memo books, notebooks, and notes from all investigating officers, identified by officer name and shield number concerning the August 10, 1991 Buffalo shooting investigation;

**f.**  any and all photographs, including true and accurate color copies of any photographs of physical evidence or testing procedures concerning the August 10, 1991 Buffalo shooting investigation;

**g.**  any and all audiotapes and videotapes, including but not limited to audio or video recordings of Valentino Dixon or witnesses interviewed concerning the August 10, 1991 Buffalo shooting investigation, including but not limited to Lamar Scott, Aaron Jackson, Mario Jarmon, Emil Adams, John Sullivan, Heather Smith, Leonard Brown, Pamela Yates, Eric Doss, Ronnie Bryant, LaRosa Carson, Walter Lee Dennis, Tamara Frida, Michael Bland, Anthony Watkins, and/or Antoine Shannon;

**h.**  any and all warrants (including arrest warrants, search warrants, and bench warrants), affidavits in support, and related materials concerning the August 10, 1991 Buffalo shooting investigation;

**i.**  any and all transcripts;

**j.**  any and all signed or unsigned waiver of rights documents or forms concerning the August 10, 1991 Buffalo shooting investigation;

**k.**  laboratory reports, preliminary reports, and supplements concerning the August 10, 1991 Buffalo shooting investigation;

5

**l.**  all documents relating to trace evidence testing or examination, ballistics or gun powder residue testing, forensic hair examination or testing, serological testing or examination, latent fingerprint examination or testing, and the determination of the time of the victims' deaths;

**m.**  audit reports, case reviewer reports and notes, and peer review reports and notes;

**n.**  any and all inventories, vouchers, chain of custody documents, and letters of transmittal;

**o.**  any and all logs, including but not limited to patrol logs, evidence logs, testing logs custody logs, employee hour logs, and any other logs relating to the testing and maintenance of physical evidence concerning the August 10, 1991 Buffalo shooting investigation;

**p.**  any and all electronic mail or other data concerning the August 10, 1991 Buffalo shooting investigation that existed at the time of Valentino Dixon's 1992 criminal trial;

**q.**  interdepartmental memoranda and any other communications between investigative agencies, including but not limited to those of the City of Buffalo and the ECDA, and any other investigative agency concerning the August 10, 1991 Buffalo shooting investigation;

**r.**  any and all medical examinations concerning the August 10, 1991 Buffalo shooting investigation;

**s.**  any and all news reports and/or press statements concerning the August 10, 1991 Buffalo shooting investigation;

**t.**  any and all documents concerning the use of confidential informants and/or anonymous witnesses in the August 10, 1991 Buffalo shooting investigation;

**u.**  to the extent not produced above, any and all documents prepared by any employee, agent, or official of the City of Buffalo concerning the August 10, 1991 Buffalo shooting investigation;

**v.**  to the extent not produced above, any and all documents relating to Valentino Dixon.

2. Identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo, including without limitation the BPD, concerning the perjury investigations or prosecutions of Mario Jarmon and Leonard Brown ("the perjury investigation"), Indictment No. 91-1476-003, including without limitation:

   a. the complete BPD file regarding the perjury investigation, reproduced in its original form with index and cover pages;

   b. the complete investigative files from any other agency of the City of Buffalo concerning the perjury investigation;

   c. any and all crime reports, investigative reports and supplements, notes, and witness statements concerning the perjury investigation;

   d. interdepartmental memoranda and any other communications between investigative agencies, including but not limited to those of the City of Buffalo and the ECDA, and any other investigative agency;

   e. any and all news reports and/or press statements concerning the perjury investigation;

   f. to the extent not produced above, any and all documents prepared by any employee, agent, or official of the City of Buffalo concerning the perjury investigation; and

3. To the extent not produced in Request #2 above, identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo, including without limitation the BPD, relating to Mario Jarmon (DOB: 12/23/1971) and Leonard Brown (DOB: 12/07/1970).

4. Identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo, including without limitation the BPD, concerning any other arrest, investigation, or prosecution of Valentino Dixon, including without limitation:

    a.    Indictment #90-2383 (sentence date: 08/20/91), charging attempted assault in the second degree and other related charges;

    b.    Indictment #90-0832 (sentence date: 08/20/91), charging attempted criminal possession of a weapon in the second degree and other related charges;

    c.    Indictment #91-1167 (offense date: 04/06/1991; sentence date: 03/06/1992), charging criminal sale of a controlled substance in the third degree and other related charges; and

    d.    Indictment #91-1550 (sentence date: 03/06/1992), charging criminal possession of a weapon in the third degree and other related charges.

5. Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the City of Buffalo concerning any involvement of Lamar Scott, Aaron Jackson, Emil Adams, and/or John Sullivan in the City of Buffalo's law enforcement operations including without limitation:

    a.    documents concerning his or her activities as an informant, whether registered or unregistered, for the City of Buffalo; and

    b.    any plea negotiations or offers made between 1/1/1980 and 12/31/1995.

6. Identify and produce true and correct certified copies of any and all organizational charts or other documents reflecting the chain of command in the BPD between 1/1/1980 and 12/31/1995, including without limitation those documents pertaining to Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski.

7. Identify and produce true and correct certified copies of any and all documents relating to the hiring, employment, performance, discipline, and/or remediation of Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski

("BPD Defendants") from the dates each first applied for any position at the City of Buffalo, or any of its agencies, to the present, including without limitation the following:

- **a.** complete personnel files;
- **b.** complete materials related to applications for employment with the City of Buffalo, including applications submitted and any materials generated or obtained during background evaluations or other evaluation of those applications;
- **c.** all records and communications concerning promotions or changes of assignment, including but not limited to applications for promotion to detective, the results of any promotion-related examinations, and records or communications relating to precinct assignments or transfers;
- **d.** complete training records, including but not limited to all syllabi, course descriptions, records of attendance at any in-house or outside training courses, and training-related evaluations, proficiency evaluations and testing results;
- **e.** complete medical and psychological records, including pre-employment testing or evaluation and any follow-up or subsequent testing or evaluation after being hired, and any necessary authorizations therefore signed and executed by the individual defendants;
- **f.** all documents relating to background investigations conducted at any time prior to hiring and through retirement;
- **g.** all documents relating to performance evaluations;
- **h.** all documents relating to salary, payment, and expense records and reports;
- **i.** all documents relating to any civilian complaints, irrespective of whether the complaint(s) were substantiated;
- **j.** all documents relating to any City of Buffalo internal allegations, complaints, or investigations of misconduct, irrespective of whether the complaint(s) were substantiated, including without limitation complete Internal Affairs files;
- **k.** any document created by or in the possession of any departmental supervisor regarding any allegation of misconduct of any kind, or any action taken in response to such an allegation;

9

    **l.**    any and all documents reflecting any criticism, discipline, or remediation, in any form, concerning misconduct by any BPD Defendant;

    **m.**    all documents concerning allegations of misconduct against any BPD Defendant from any source;

    **n.**    all Notices of Claim filed with the City of Buffalo or its agencies naming any BPD Defendant, or which, although not naming those individuals, allege misconduct attributable to any of them;

    **o.**    all documents concerning civil or criminal lawsuits involving misconduct by any BPD Defendant;

    **p.**    all documents concerning civil or criminal lawsuits involving allegations of official misconduct in which any BPD Defendant was a witness;

    **q.**    all requests for leave of absence, disability, or early retirement;

    **r.**    all requests for authorization to engage in employment outside of the City of Buffalo; and

    **s.**    any and all documents relating to awards, decorations, commendations or other positive citations bestowed for any positive acts or qualities.

**8.**    To the extent not requested above, identify and produce true and correct certified copies of any and all documents reflecting allegations from any source that Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski engaged in investigative misconduct including but not limited to allegations they:

    **a.**    pressured, intimidated, coerced, manipulated, misled, assaulted, threatened, or otherwise used improper techniques with any crime suspect or witness; or

    **b.**    acted or failed to act to prevent such misconduct;

    **c.**    engaged in the fabrication or planting of evidence, tampering with evidence or gave untrue sworn testimony, or

    **d.**    failed to document or otherwise disclose to the prosecution exculpatory or impeachment evidence

whether or not the allegation was substantiated, from the time that each joined the City of Buffalo to the present, including without limitation any charges, statements, notes, reports, memoranda, bench notes, or correspondence, transcripts, findings, conclusions, or recommendations made by investigating authorities, and civil, administrative, or criminal complaints originating from civilians or law enforcement personnel.

9. To the extent not requested in Requests #6–8 above, identify and produce true and correct copies of any and all other documents and materials that comprise or are part of the BPD personnel file for each of Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski.

10. Produce true and correct photographs of Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, and Robert Grabowski from when each joined the City of Buffalo, and from around 1991.

11. Identify and produce true and correct certified copies of any and all documents concerning training (whether internal or external) received by City of Buffalo officers, investigators, detectives, and supervisors, from 1/1/1980 to 12/31/1995, including but not limited to presentations, BPD directives, memoranda, videos, analyses, reports, correspondence, and instructional materials, with respect to the following categories:
    a. conducting criminal investigations, particularly of homicides;
    b. identifying and eliminating individuals as suspects;
    c. retaliation against witnesses or suspects;
    d. retaliation against whistleblowers, officers, or other employees;
    e. conducting eyewitness identification procedures, including without limitation photo arrays and line-ups;
    f. documenting investigative work and suspect and witness statements;
    g. record keeping;

11

    **h.**    interrogating or interviewing suspects and witnesses, specifically including any training in the Inbau & Reid technique or method of interrogation;

    **i.**    dealing with witnesses, suspects, or other persons with intellectual disabilities;

    **j.**    coercing, threatening, pressuring, or intimidating witnesses or suspects;

    **k.**    offering promises, rewards, or inducements to witnesses or suspects;

    **l.**    communications with prosecutors;

    **m.**    conducting and documenting polygraph examinations;

    **n.**    the documentation and disclosure of exculpatory and impeachment information to prosecutors pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny;

    **o.**    supervision of detectives and officers;

    **p.**    supervising serious felony investigations;

    **q.**    communicating and working with the ECDA and its agents;

    **r.**    providing day-to-day supervision of detectives; and

    **s.**    reporting, investigating, remediating, and tracking employee misconduct.

**12.** To the extent not already disclosed, identify and produce true and correct certified copies of any and all documents reflecting the City of Buffalo's policies, practices, customs, or procedures, whether written or oral, and any modifications thereto, no matter when implemented or promulgated, in effect at any point between 1/1/1980 to 12/31/1995, concerning the following:

    **a.**    conducting interviews of witnesses, potential witnesses, persons-of-interest, suspects, and defendants;

    **b.**    conducting interviews or any other business or making contact with persons, witnesses, or suspects with intellectual disabilities;

    **c.**    *Miranda* requirements;

    **d.**    investigating homicides;

    **e.**    the use of video or audio recording during interviews of witnesses, potential witnesses, persons-of-interest, suspects, and defendants;

  **f.**  the documentation and disclosure of interviews of witness, potential witnesses, persons-of-interest, suspects, and defendants;

  **g.**  the documentation and disclosure of exculpatory and impeachment information to prosecutors pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny;

  **h.**  gathering, examining, testing, and using physical and forensic evidence;

  **i.**  conducting and documenting polygraph examinations;

  **j.**  communicating and working with the ECDA and its agents;

  **k.**  supervision of detectives and officers; and

  **l.**  reporting, investigating, remediating, and tracking employee misconduct.

**13.** Any reports or documents regarding investigations into BPD misconduct, or any communications regarding those reports or investigations, including without limitation reports published by:

  **a.**  The U.S. Department of Justice ("DOJ"), including but not limited to the 1992 report by the DOJ examining complaints about the BPD and other mid-sized cities between 1983 and 1990;

  **b.**  The U.S. Attorney's Office for the Western District of New York; and

  **c.**  The International Association of Chiefs of Police ("IACP"), including but not limited to the 1991 report by the IACP on the BPD;

**14.** Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the BPD concerning Lamar Scott, Aaron Jackson, Emil Adams, John Sullivan, or Leonard Brown, including without limitation:

  **a.**  his complete criminal "rap sheet";

  **b.**  any agreement entered into between him and the BPD;

  **c.**  all files regarding any arrest of him, or regarding any incident during which he or she was detained by the City of Buffalo or its agencies;

    **d.**    all files regarding the investigation or prosecution of every crime with which he was charged;

    **e.**    a true and correct copy of every statement he gave to any City of Buffalo employee;

    **f.**    a list of cases or incidents in which he was involved in any way, including but not limited to: as a complainant, witness, informant, suspect, person of interest;

    **g.**    true and correct copies of any and all testimony he gave in any judicial proceeding;

    **h.**    true and correct copies of any and all agreements between he and the City of Buffalo or its agents;

    **i.**    any communication between he and the City of Buffalo, its agencies, or other law enforcement agencies, including without limitation the BPD; and

    **j.**    any and all documentation, including, but not limited to, notes or transcripts, of any employee of the BPD advocating for leniency or favorable treatment of the person enumerated in the header paragraph in connection with a crime, violation, or other criminal case;

**15.**    Identify and produce true and correct certified copies of any and all documents reflecting communications between the City of Buffalo, and any other City of Buffalo agency or agents regarding Valentino Dixon, Lamar Scott, Aaron Jackson, Mario Jarmon, Emil Adams, John Sullivan, Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski with any of the following entities:

    **a.**    Office of the Attorney General;

    **b.**    ECDA;

    **c.**    U.S. Attorney's Office for the Western District of New York; and

    **d.**    any news media.

**16.**    Identify and produce true and correct copies of any communication, including but not limited to email and SMS communication relating in any way to the August 10, 1991

   Buffalo shooting investigation including without limitation the underlying investigation, arrest, and prosecution of Valentino Dixon, the grand jury proceedings and criminal trials against Valentino Dixon, the appeals and post-conviction proceedings of Valentino Dixon, the re-investigation of the August 10, 1991 Buffalo shooting investigation, and/or the present civil rights lawsuits brought by Valentino Dixon.

17. Identify and produce true and correct copies of any communication, including but not limited to email and SMS communication, to/from named Defendants, about the perjury investigation against Leonard Brown and Mario Jarmon, including without limitation the grand jury proceedings and 1992 criminal trial against Leonard Brown and Mario Jarmon, and their appeals and post-conviction proceedings.

18. Identify and produce true and correct certified copies of any and all documents pertaining to citizen complaints, internal affairs investigations, disciplinary findings, or criminal cases, whether internal or external, in the possession, custody, or control of the BPD, relating to excessive force, false arrest, malicious prosecution, coerced confessions or witness statements between 1/1/1978 and 12/31/1995, including, but not limited to the following officers, arrests, or incidents:
  a. The BPD assault and arrest of Jeffrey Dunbar in 1990;
  b. The BPD assault of Mageda Dhali in 1990;
  c. The BPD assault of Domingo Morales in 1990;
  d. The BPD assault of Mark Aiken and Steven Johnson in 1990; and
  e. The BPD assault of Robert Staudacher in 1978 by Mark Stambach and other officers.

19. Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the City of Buffalo, including without limitation the BPD, concerning the investigation and prosecution of:
  a. Anthony Capozzi in 1985 for alleged rape, including without limitation:

15

      i. the full investigative BPD file for the case, including documents from before and after Mr. Capozzi's conviction;

      ii. any and all witness statements in any form;

      iii. any documents relating to or referencing any contact between police and witnesses;

      iv. any and all communications with the Erie County District Attorney's Office;

      v. any and all documents relating to any lineups or other identification procedures in the case.

**b.** Lynn DeJac in 1984 for the murder of her daughter, including without limitation:

      i. the full investigative BPD file for the case, including any documents from before and after Ms. DeJac's conviction;

      ii. any and all witness statements in any form;

      iii. any documents relating to or referencing any contact between police and witnesses;

      iv. any and all documents created by, reviewed, or containing information relating to Mark Stambach or James Lonergan;

      v. any and all documents relating to any lineups or other identification procedures in the case;

      vi. any and all communications with the Erie County District Attorney's Office; and

      vii. any and all documents referencing Wayne Hudson.

**c.** Cory Epps in 1998 for the murder of Tomika Means, including without limitation:

      i. the full investigative BPD file for the case, including any documents from before and after Mr. Epps' conviction;

      ii. any and all witness statements in any form;

      iii. any documents relating to or referencing any contact between police and witnesses;

      iv. any and all documents created by, reviewed, or containing information relating to Mark Stambach or Raniero Masecchia;

      v. any and all documents relating to any lineups or other identification procedures in the case.

      vi. any and all communications with the Erie County District Attorney's Office;

    d. Josue Ortiz in 2004 for murder, including without limitation:

      i. the full investigative BPD file for the case, including any documents from before and after Mr. Ortiz's conviction;

      ii. any and all witness statements in any form;

      iii. any documents relating to or referencing any contact between police and witnesses;

      iv. any and all documents created by, reviewed, or containing information relating to Mark Stambach;

      v. any and all documents relating to any lineups or other identification procedures in the case;

      vi. any and all communications with the Erie County District Attorney's Office; and

      vii. any and all communications with federal law enforcement agencies including the FBI and U.S. Department of Justice.

**20.** Identify and produce true and correct certified copies of any and all documents listing individuals that the ECDA or BPD sought to surveil, monitor, stop, arrest, prosecute, or incarcerate, including without limitation any watchlists, whether gang or drug-related or otherwise, from 1/1/1980 to 12/31/1995.

**21.** Identify and produce true and correct certified copies of any and all documents that you will use to support your defenses as to liability or damages at trial.

**22.** Identify and produce true and correct copies of any and all insurance policies covering law enforcement activities, both operational and supervisory, for the BPD from 1985 to the present. This includes but is not limited to the following types of policies: commercial general liability/general liability policies, D&O or other error and omission policies, professional liability policies and law enforcement liability policies.

Plaintiff reserves the right to supplement and amend the foregoing requests for production of documents, to propound additional requests, and to use other discovery mechanisms.

Dated: September 14, 2020

Sincerely,

/s/ Mary McCarthy
Mary McCarthy, Esq.

NEUFELD SCHECK & BRUSTIN, LLP
Nick Brustin
Anna Benvenutti Hoffmann
Mary McCarthy
99 Hudson Street, 8th Floor
New York, NY 10013
P: (212) 965-9081

EASTON THOMPSON KASPEREK
  SHIFFRIN LLP
Donald Thompson
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
P: (585) 423-8290

## **CERTIFICATE OF SERVICE**

      I, Mary McCarthy, hereby certify that on September 14, 2020, true and correct copies of Plaintiff's First Set of Requests for Production of Documents and Things to Defendant City of Buffalo were served *via* Electronic Mail to counsel for Defendant City of Buffalo:

                                                               /s/ Mary McCarthy