# Exhibit B

*June 9, 2021 Plaintiff's Revised Request for Production of Documents and Things to Defendant City of Buffalo*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VALENTINO DIXON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CITY OF BUFFALO et al.<br><br>　　　　Defendants. | Case No. 19-cv-01678<br><br>**PLAINTIFF'S REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT COUNTY OF ERIE** |

**PLAINTIFF'S REVISED FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT COUNTY OF ERIE**

　　　　Under Federal Rules of Civil Procedure 26 and 34, Plaintiff Valentino Dixon, by his attorneys, Neufeld Scheck & Brustin, LLP, and Donald Thompson, Easton Thompson Kasperek Shiffrin LLP, demand that Defendant County of Erie ("Defendant") produces documents responsive to the following requests within 30 days of service of this demand. As required by Rule 26(e), Defendant must promptly amend or supplement answers or disclosures within 30 days after additional information or material is acquired, and in no event later than 30 days before trial.

　　　　Defendant's answers must restate each document request in full before responding to it. Each document request must be accorded a separate answer. Each response shall first set forth <u>verbatim</u> the document request to which it is responsive. Requests or subparts thereof shall not be combined for the purpose of supplying a common answer. The answer to a document request or subpart must not be supplied by referring to the answer to another request for documents unless the request for documents or subpart referred to supplies a complete and accurate answer to the request for documents or subpart being answered.

　　　　It is further required that all documents produced appear in the form, order, and condition that they are in on the day that these document requests are served, including all comments, notes, remarks, or other materials which may have been added to documents subsequent to their initial preparation. Documents that in their original condition were stapled, clipped, or otherwise fastened together shall be produced in the order in which they were originally arranged. Documents not otherwise responsive to a request shall be produced if such documents refer to, relate to, or explain

1

the documents called for in this Request, or if such documents are attached to documents called for in this Request and constitute routing slips, transmittal memoranda or letters, comments, evaluations, or similar documents. In accordance with the parties' agreement before the Court, documents shall be produced electronically.

If documents are not in Defendant's possession but within Defendant's control, Defendant is required to comply with the definition and instructions for "control" below. If no responsive documents exist, then so state. If Defendant objects to any request on the grounds of privilege, its response must identify the nature of the responsive information and specify the claimed privilege in a log, consistent with Rule 26(b)(5). If Defendant objects to or otherwise does not respond to any Request, in whole or in part, it must set forth the nature and basis for the objection or other failure or refusal to respond in sufficient detail so that the Court can determine the propriety of such objection or failure or other refusal to respond, and state whether any information is being withheld on the basis of the objection.

## DEFINITIONS

The following definitions and principles shall be deemed to have the meaning set forth herein, and are incorporated herein and throughout this and each succeeding set of discovery requests, if any, as though fully set forth at length, unless expressly stated to the contrary. **Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

    a.    **Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

    b.    **Identify** (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

    c.    **Identify** (with respect to documents). When referring to documents, "to

2

|      |      |
|------|------|
|      | identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d). |
| d.   | **Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. |
| e.   | **Person**. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association. |
| f.   | **You**. The term "you" refers to the party to whom these requests to admit are propounded, its agents, employees, representatives, and attorneys, and those employed by its attorneys. |
| g.   | **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting. |
| h.   | **Control**. "Control" shall be defined so as to apply to any document, if you have the right to secure the document or a copy thereof from another person or public or private entity having actual possession thereof. If a document is responsive to a request for identification or production and is in your control, but is not in your possession or custody, identify the person in possession or custody. If any document was, but is no longer, in your possession or subject to your control, state what disposition was made of it, by whom, and the date or dates or approximate date or dates on which such disposition was made, and why. |
| i.   | **All/Any/Each**. The terms "all," "any," and "each" shall each be construed as encompassing any and all. |
| j.   | **And/Or**. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. |

3

    **k.**    **Number**. The use of the singular form of any word includes the plural and vice versa.

    **l.**    **BPD.** The term "BPD" refers to the Buffalo Police Department, including any department, officer, employee, agent, or contractor thereof.

    **m.**    **ECDA.** The term "ECDA" refers to the Erie County District Attorney's Office, including any department, officer, employee, agent, or contractor thereof.

    **n.**    **August 10, 1991 Buffalo shooting investigation.** The term "August 10, 1991 Buffalo shooting investigation" refers to the investigation of the August 10, 1991 altercation and shooting around 1:00 a.m. near the intersection of East Delevan and Bailey Avenues in Buffalo, NY. It includes without limitation the investigation, arrest, and/or prosecution of Valentino Dixon.

## REVISED REQUESTS FOR PRODUCTION TO DEFENDANT COUNTY OF ERIE

**1.**    Identify and produce true and correct copies of all documents in the possession, custody, or control of the County of Erie, including without limitation the ECDA, prior to June 16, 1992, concerning the August 10, 1991 Buffalo shooting investigation, including the prosecution of Valentino Dixon for that shooting. This request includes but is not limited to the following categories of documents:

    **a.**    The complete ECDA file relating to the August 10, 1991 Buffalo shooting;

    **b.**    The complete ECDA file relating to the criminal action *People of the State of New York v. Valentino Dixon* in Supreme Court of Erie County, indictment number 91-1476-001;

    **c.**    Any documentation or audio recordings of suspect or witness interviews or interrogations, whether taken by an employee of the ECDA, the BPD, or anyone else, including without limitation documentation of agreements, payments, inducements, promises, or benefits offered to or request by any witness or potential witness;

    **d.**    All documents provided to Valentino Dixon's defense counsel as discovery or *Rosario*, specifically including all disclosed *Brady* and *Giglio* material, as well as any correspondence, index pages, cover sheets, notes, or other documents or filing relating to production of such discovery material to defense counsel;

4

  **e.** All handwritten notes from any employee of the ECDA, including without limitation all notes by prosecutors Christopher Belling, Frank Sedita, and/or any other prosecutor or investigator involved in the 1991–92 investigation and prosecution of the August 10, 1991 Buffalo shooting;

  **f.** All documents reflecting any communication, including without limitation, reports, letters, e-mails, and SMS messages, between any officer, agent, or employee of the ECDA or to or from any such person of the ECDA, pertaining to Valentino Dixon or the August 10, 1991 Buffalo shooting; and

  **g.** All tangible or physical evidence collected during or pertaining to the investigation of the August 10, 1991 Buffalo shooting, or the prosecution of Valentino Dixon as a suspect in those crimes, including but not limited to photographs, fingerprint evidence, seized property, clothing worn by any victim, serological evidence, DNA evidence or testing, and any other forensic evidence;

    i. For any such tangible or physical evidence, produce any and all documents, including without limitation communications, logs, e-mails, letters, notes, reports, receipts, and chain of custody forms, concerning the location of that evidence; and

  **h.** To the extent not produced above, any other document relating to Valentino Dixon, Lamar Scott, or any other suspect in the August 10, 1991 Buffalo shooting in the possession, custody, or control of the County prior to June 16, 1992.

**2.** Identify and produce true and correct copies of all documents in the possession, custody, or control of the County, including without limitation the ECDA—but which were not in its possession, custody, or control on or before June 16, 1992—concerning the August 10, 1991 Buffalo shooting investigation, any subsequent reinvestigation of that crime, and/or any reinvestigation relating to Valentino Dixon's conviction. This request includes but is not limited to the following categories of documents currently in the possession of the County or its attorneys, employees, or agents:

  **a.** Subcategories #1(a) – (h);

  **b.** The complete ECDA file relating to any appellate and/or postconviction proceedings;

    **c.**    The complete ECDA file relating to the reinvestigation of the August 10, 1991 Buffalo shooting, including without limitation, the reinvestigation of Valentino Dixon's arrest, prosecution, and conviction;

    **d.**    Notes from any employee of the County of Erie, including without limitation the ECDA, involved in the reinvestigation of the August 10, 1991 Buffalo shooting, including without limitation John Flynn, Christopher Belling, Frank Sedita, and/or any other prosecutor or investigator involved in the reinvestigation;

    **e.**    All tangible or physical evidence collected during or pertaining to the reinvestigation of the August 10, 1991 Buffalo shooting, or the prosecution of Valentino Dixon as a suspect in those crimes, including but not limited to photographs, fingerprint evidence, seized property, clothing worn by any victim, serological evidence, DNA evidence or testing, and any other forensic evidence,

        i.    For any such tangible or physical evidence, produce any and all documents, including without limitation communications, logs, e-mails, letters, notes, reports, receipts, and chain of custody forms, concerning the location of that evidence.

    **f.**    To the extent not produced above, any other document relating to Valentino Dixon, Lamar Scott, or any other suspect in the August 10, 1991 Buffalo shooting in possession, custody, or control of the County on or after June 16, 1992.

**3.**    Identify and produce true and correct copies of all documents in the possession, custody, or control of the County, including without limitation the ECDA, concerning the perjury investigation and prosecutions of Leonard Brown and Mario Jarmon (Indictment # 91-1476-003). This request includes without limitation:

    **a.**    The complete ECDA file relating to the criminal action *People of the State of New York v. Mario Jarmon and Leonard Brown* in Supreme Court of Erie County, indictment # 91-1476-003;

    **b.**    Any documentation or audio recordings of suspect or witness interviews or interrogations, whether taken by an employee of the ECDA, the BPD, or anyone else, including without limitation documentation of agreements, payments,

       inducements, promises, or benefits offered to or request by any witness or potential witness;

**c.** All handwritten notes from any employee of the ECDA, including without limitation all notes by prosecutors Christopher Belling, Frank Sedita, and/or any other ECDA prosecutor or investigator involved in the 1991–92 investigation and perjury prosecutions;

**d.** The complete ECDA file relating to any appellate and/or postconviction proceedings for Mario Jarmon or Leonard Brown;

**e.** Any files regarding any reinvestigation of the Brown and Jarmon perjury investigations and/or prosecutions;

**f.** All documents provided to Leonard Brown's defense counsel as discovery or *Rosario*, specifically including all disclosed *Brady* and *Giglio* material, as well as any correspondence, index pages, cover sheets, notes, or other documents or filing relating to production of such discovery material to defense counsel;

**g.** All documents provided to Mario Jarmon's defense counsel as discovery or *Rosario*, specifically including all disclosed *Brady* and *Giglio* material, as well as any correspondence, index pages, cover sheets, notes, or other documents or filing relating to production of such discovery material to defense counsel;

**h.** All documents reflecting any communication, including without limitation, reports, letters, e-mails, and SMS messages, between any officer, agent, or employee of the ECDA or to or from any such person of the ECDA, pertaining to Leonard Brown or Mario Jarmon;

**i.** All tangible or physical evidence collected during or pertaining to the reinvestigation of the perjury prosecution of Leonard Brown and Mario Jarmon, including but not limited to photographs, fingerprint evidence, seized property, clothing worn by any victim, serological evidence, DNA evidence or testing, and any other forensic evidence;

      i. For any such tangible or physical evidence, produce any and all documents, including without limitation communications, logs, e-mails, letters, notes, reports, receipts, and chain of custody forms, concerning the location of that evidence; and

7

    **j.**    To the extent not already described above, any and all documents concerning Mario Jarmon and/or Leonard Brown and the August 10, 1991 Buffalo shooting.

**4.** The complete ECDA files for any and all other investigations or prosecutions of Valentino Dixon, including without limitation:

    **a.**    Indictment #90-2383 (sentence date: 08/20/91), charging attempted assault in the second degree and other related charges;

    **b.**    Indictment #90-0832 (sentence date: 08/20/91), charging attempted criminal possession of a weapon in the second degree and other related charges;

    **c.**    Indictment #91-1167 (sentence date: 03/06/1992),, charging criminal sale of a controlled substance in the third degree and other related charges;

    **d.**    Indictment #91-1550 (sentence date: 03/06/1992), charging criminal possession of a weapon in the third degree and other related charges.

**5.** To the extent not otherwise requested above, all documents in the possession, custody, or control of the County, including without limitation ECDA, pertaining to Valentino Dixon, Leonard Brown, or Mario Jarmon, including but not limited to criminal history information, investigations, arrests, or prosecutions.

**6.** Any and all correspondence including but not limited to electronic communications, such as e-mail, SMS, or text communications, in the County's possession, custody, or control, concerning the investigation of the August 10, 1991 Buffalo shooting; the prosecution of Valentino Dixon for that shooting and any and all resulting appeals and post-conviction matters; the perjury investigation and 1992 prosecutions of Mario Jarmon and Leonard Brown; the reinvestigation of the August 10, 1991 Buffalo shooting and exoneration of Valentino Dixon, or the instant civil action, *Dixon v. City of Buffalo*, 19-cv-01678, including without limitation:

    **a.**    Reports;
    **b.**    Press statements;
    **c.**    Communications with media;
    **d.**    Communications with BPD;

      **e.**    Communications with Mr. Dixon or counsel for Mr. Dixon; or

      **f.**    Any private individuals.

**7.** To the extent not otherwise requested above, all documents in the possession, custody, or control of the County, including without limitation the ECDA, concerning Lamar Scott, Aaron Jackson, Emil Adams, John Sullivan, Heather Smith in any law enforcement operations including without limitation:

    **a.**    documents concerning his or her activities as an informant, whether registered or unregistered, for the County of Erie or its agents;

    **b.**    any plea negotiations or offers made between 1/1/1980 and 12/31/1995;

    **c.**    any and all ECDA files regarding the investigation, prosecution, or incarceration of him or her, and regarding the investigations of the crimes for which they were convicted.

**8.** All documents in the possession, custody, or control of the County, including without limitation the ECDA, concerning Lamar Scott, Aaron Jackson, Emil Adams, John Sullivan, Heather Smith including without limitation:

    **a.**    his or her complete criminal "rap sheet";

    **b.**    any agreement entered into between he or she and the BPD;

    **c.**    all files regarding any arrest of him or her, or regarding any incident during which he or she was detained by the County of Erie, the City of Buffalo or its agencies;

    **d.**    all files regarding the investigation or prosecution of every crime with which he or she was charged;

    **e.**    a true and correct copy of every statement he or she gave to any City of Buffalo or County of Erie employee;

    **f.**    a list of cases or incidents in which he or she was involved in any way, including but not limited to: as a complainant, witness, informant, suspect, person of interest;

    **g.**    true and correct copies of any and all testimony he or she gave in any judicial proceeding;

    **h.**    true and correct copies of any and all agreements between he or she and County of Erie, the City of Buffalo, or its agents;

     **i.**    any communication between he or she and the County of Erie its agencies, or the City of Buffalo, or its agencies, or any other law enforcement agencies, including without limitation the ECDA and BPD; and

     **j.**    any and all documentation, including, but not limited to, notes or transcripts, of any employee of the ECDA or BPD advocating for leniency or favorable treatment of the person enumerated in the header paragraph in connection with a crime, violation, or other criminal case.

**9.**    Identify and produce true and correct certified copies of any and all documents concerning training (whether internal or external) received by ECDA prosecutors, officers, investigators, and supervisors, from 1/1/1980 and 12/31/1995, including but not limited to presentations, ECDA directives, memoranda, videos, analyses, reports, correspondence, and instructional materials, with respect to the following categories:

    **a.**    conducting criminal investigations, particularly of homicides;
    **b.**    communicating and working with the BPD and other police agencies;
    **c.**    identifying and eliminating individuals as suspects;
    **d.**    conducting eyewitness identification procedures, including without limitation photo arrays and line-ups;
    **e.**    documenting investigative work and suspect and witness statements;
    **f.**    charging or threatening to charge witnesses with perjury;
    **g.**    record keeping;
    **h.**    interrogating or interviewing suspects and witnesses, specifically including any training in the Inbau & Reid technique or method of interrogation;
    **i.**    dealing with witnesses, suspects, or other persons with intellectual disabilities;
    **j.**    coercing, threatening, pressuring, or intimidating witnesses or suspects;
    **k.**    offering promises, rewards, or inducements to witnesses or suspects;
    **l.**    communications with prosecutors;
    **m.**    conducting and documenting polygraph examinations;
    **n.**    the documentation and disclosure of exculpatory and impeachment information to prosecutors pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny;

    **o.**    supervision of prosecutors and investigators;

    **p.**    supervising serious felony investigations;

    **q.**    evidence retention or chain-of-custody with respect to either the ECDA or the BPD;

    **r.**    providing day-to-day supervision of prosecutors and investigators; and

    **s.**    reporting, investigating, remediating, and tracking employee misconduct.

**10.** Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of the County, including without limitation the ECDA, concerning the ECDA's policies, practices, customs, or procedures, whether written or oral, and any modifications thereto, no matter when implemented or promulgated, in effect at any point between 1/1/1980 and 12/31/1995, regarding the following:

    **a.**    conducting interviews of witnesses, potential witnesses, persons-of-interest, suspects, and defendants;

    **b.**    conducting interviews or any other business or making contact with persons, witnesses, or suspects with intellectual disabilities;

    **c.**    *Miranda* requirements;

    **d.**    investigating homicides;

    **e.**    the use of video or audio recording during interviews of witnesses, potential witnesses, persons-of-interest, suspects, and defendants;

    **f.**    the documentation and disclosure of interviews of witness, potential witnesses, persons-of-interest, suspects, and defendants;

    **g.**    the documentation and disclosure of exculpatory and impeachment information to prosecutors pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny;

    **h.**    gathering, examining, testing, and using physical and forensic evidence;

    **i.**    conducting and documenting polygraph examinations;

    **j.**    communicating and working with the BPD and its agents or other police agencies;

    **k.**    supervision of detectives and officers; and

    **l.**    reporting, investigating, remediating, and tracking employee misconduct.

**11.** Identify and produce true and correct certified copies of any and all documents listing individuals that the ECDA or BPD sought to surveil, monitor, stop, arrest, prosecute, or incarcerate, including without limitation any watchlists, whether gang or drug-related or otherwise, from 1/1/1980 and 12/31/1995.

**12.** Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the County, including without limitation the ECDA, concerning allegations of investigative misconduct on the part of BPD officers relating to excessive force, false arrest, malicious prosecution, coerced confessions or witness statements, or other misconduct, including but not limited to allegations concerning the following officers, arrests, and/or prosecutions:
  **a.** The BPD assault and arrest of Jeffrey Dunbar in 1990;
  **b.** The BPD assault of Mageda Dhali in 1990;
  **c.** The BPD assault of Domingo Morales in 1990;
  **d.** The BPD assault of Mark Aiken and Steven Johnson in 1990; and
  **e.** The BPD assault of Robert Staudacher in 1978 by Mark Stambach and other officers.

**13.** Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the County of Erie, including without limitation the ECDA, concerning the investigation, arrest, and prosecution of:
  **a.** Anthony Capozzi in 1985 for alleged rape, including without limitation:
    i. the full ECDA case file including documents from before and after Mr. Capozzi's conviction; and
    ii. any and all documents describing BPD investigative conduct in the course of the arrest, investigation, and/prosecution, including without limitation witness statements, identification procedures, contact between police and witnesses, and communications between ECDA and BPD.
  **b.** Lynn DeJac in 1984 for the murder of her daughter, including without limitation:
    i. the full ECDA case file including any documents from before and after Ms. DeJac's conviction;

      ii. any and all documents describing BPD investigative conduct in the course of the arrest, investigation, and/prosecution, including without limitation witness statements, identification procedures, contact between police and witnesses, and communications between ECDA and BPD; and

      iii. any and all documents created by, reviewed by, or containing information relating to Mark Stambach or James Lonergan.

**c.** Cory Epps in 1998 for the murder of Tomika Means, including without limitation:

      i. the full ECDA case file including any documents from before and after Mr. Epps' conviction;

      ii. any and all documents describing BPD investigative conduct in the course of the arrest, investigation, and/prosecution, including without limitation witness statements, identification procedures, contact between police and witnesses, and communications between ECDA and BPD; and

      iii. any and all documents created by, reviewed by, or containing information relating to Mark Stambach or Raniero Masecchia.

**d.** Josue Ortiz in 2004 for murder, including without limitation:

      i. the full ECDA file case including any documents from before and after Mr. Ortiz's conviction;

      ii. any and all documents describing BPD investigative conduct in the course of the arrest, investigation, and/prosecution, including without limitation witness statements, identification procedures, contact between police and witnesses, and communications between ECDA and BPD; and

      iii. any and all documents created by, reviewed, or containing information relating to Mark Stambach.

**e.** Louis Eze, Joy Wosu, and Emeka Okongwu for the alleged assault of Mr. Okongwu's two daughters in 1991, including without limitation:

      i. the full ECDA case file including any documents from before and after the convictions in this case; and

      ii. any and all documents describing BPD investigative conduct in the course of the arrest, investigation, and/prosecution, including without limitation

>witness statements, identification procedures, contact between police and witnesses, and communications between ECDA and BPD.

14. Identify and produce true and correct certified copies of any and all documents relating to the hiring, employment, performance, discipline, and/or remediation of Christopher Belling or Frank Sedita III from the dates each first applied for any position at the County of Erie, or any of its agencies, to the present, including without limitation the following:

   a. complete personnel files;
   b. complete materials related to applications for employment with the County of Erie, including applications submitted and any materials generated or obtained during background evaluations or other evaluation of those applications;
   c. all records and communications concerning promotions or changes of assignment, including but not limited to applications for promotion to detective, the results of any promotion-related examinations, and records or communications relating to precinct assignments or transfers;
   d. complete training records, including but not limited to all syllabi, course descriptions, records of attendance at any in-house or outside training courses, and training-related evaluations, proficiency evaluations and testing results;
   e. complete medical and psychological records, including pre-employment testing or evaluation and any follow-up or subsequent testing or evaluation after being hired, and any necessary authorizations therefore signed and executed by the individual defendants;
   f. all documents relating to background investigations conducted at any time prior to hiring and through retirement;
   g. all documents relating to performance evaluations;
   h. all documents relating to salary, payment, and expense records and reports;
   i. all documents relating to any civilian complaints, irrespective of whether the complaint(s) were substantiated;
   j. all documents relating to any County of Erie internal allegations, complaints, or investigations of misconduct, irrespective of whether the complaint(s) were substantiated, including without limitation complete Internal Affairs files;

**k.** any document created by or in the possession of any departmental supervisor regarding any allegation of misconduct of any kind, or any action taken in response to such an allegation;

**l.** any and all documents reflecting any criticism, discipline, or remediation, in any form, concerning misconduct by Christopher Belling or Frank Sedita III;

**m.** all Notices of Claim filed with the County of Erie or its agencies naming Christopher Belling or Frank Sedita III, or which, although not naming those individuals, allege misconduct attributable to any of them;

**n.** all documents concerning civil or criminal lawsuits involving misconduct by Christopher Belling or Frank Sedita III;

**o.** all documents concerning civil or criminal lawsuits involving allegations of official misconduct in which Christopher Belling or Frank Sedita III was a witness or prosecutor;

**p.** all documents concerning allegations of misconduct against Christopher Belling or Frank Sedita III from any source;

**q.** all requests for leave of absence, disability, or early retirement;

**r.** all requests for authorization to engage in employment outside of the County of Erie by Christopher Belling or Frank Sedita III; and

**s.** any and all documents relating to awards, decorations, commendations or other positive citations bestowed for any positive acts or qualities for Christopher Belling or Frank Sedita III.

**15.** Any reports or documents in the possession, custody, or control of the County, including without limitation the ECDA, concerning investigations into ECDA or BPD misconduct, or any communications regarding those reports or investigations, including without limitation reports published by:

**a.** The U.S. Department of Justice;

**b.** The U.S. Attorney's Office for the Western District of New York;

**c.** The International Association of Chiefs of Police; and

**d.** And including without limitation the following specific reports:

   i. The 1991 300-page report by the IACP on the Buffalo Police Department;

15

        ii. The 1992 report by the DOJ examining complaints about the Buffalo Police Department and other midsized cities between 1983 and 1990.

16. Identify and produce true and correct copies of any and all insurance policies covering law enforcement activities, both operational and supervisory, for the ECDA from 1985 to the present. This includes but is not limited to the following types of policies: commercial general liability/general liability policies, D&O or other error and omission policies, professional liability policies and law enforcement liability policies.

17. Identify and produce true and correct certified copies of any and all documents that you will use to support your defenses as to liability or damages at trial.

Plaintiff reserves the right to supplement and amend the foregoing requests for production of documents, to propound additional requests, and to use other discovery mechanisms.

Dated: June 9, 2021

        Sincerely,

        /s/ Julian Clark
        Nick Brustin
        Anna Benvenutti Hoffmann
        Mary McCarthy
        Julian Clark
        NEUFELD SCHECK & BRUSTIN, LLP
        99 Hudson Street, 8th Floor
        New York, NY 10013
        P: (212) 965-9081

        EASTON THOMPSON KASPEREK SHIFFRIN LLP
        Donald Thompson
        The Powers Building
        16 West Main Street, Suite 243
        Rochester, New York 14614
        P: (585) 423-8290

## **CERTIFICATE OF SERVICE**

      I, Julian Clark, hereby certify that on June 9, 2021, true and correct copies of Plaintiff's Revised First Set of Requests for Production of Documents and Things to Defendant County of Erie were served *via* Electronic Mail to counsel for Defendant County of Erie.

                                                           /s/ Julian Clark