# Exhibit C

*December 24, 2020 Defendant City of Buffalo's Initial Response to Plaintiff's Initial Request for Production of Documents and Things*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **VALENTINO DIXON** | **RESPONSE TO PLAINTIFF'S FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT CITY OF BUFFALO** |
| **Plaintiff,** | |
| **v.** | |
| **CITY OF BUFFALO,** _et al.,_ | **Case No.: 19-cv-01678** |
| **Defendants.** | |

_____

Defendant, CITY OF BUFFALO (hereinafter "City") offers the following Responses to Plaintiff's "FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT CITY OF BUFFALO" based on information available as of the date prescribed herein with reservation of the right to supplement these responses as further information becomes available during the investigation and discovery of this case.

## <u>GENERAL OBJECTIONS</u>

1.      These responses are based on information available as of the date prescribed herein and with reservation of the right to supplement these responses as further information becomes available during the investigation and discovery of this case.

2.      The City responds to each and every document request subject to the general objections set forth herein. These objections form a part of the response to each and  every document request and are set forth herein to avoid duplication by

1

restating them for each document request. These general objections may be specifically referred to in response to a certain request and/or demand for the purpose of clarity. However, the failure specifically to refer to a general objection is not and shall not be construed to be a waiver of any general objection, even if other general objections are specifically stated in response to a request and/or demand.

3.     The City objects to each of the requests to the extent that the requests seek information and documents prepared in anticipation of litigation or are subject to the attorney-client privilege, attorney work product doctrine, deliberative process privilege, law enforcement privilege, prosecutorial privilege, or any other applicable privilege, including but not limited to those set forth by statutes such as the New York Civil Rights Law § 50-b, New York Public Officers Law §§86, 87, 89, the New York Social Services Law, the Health Insurance Portability And Accountability Act (HIPAA), the Family Educational Rights and Privacy Act (FERPA), and 18 NYCRR §357.1. The City further objects to and will not produce any publicly available or information and/or documents available as a matter of public record.

4.     The City objects to each of the requests to the extent that the requests seek to impose upon the City any obligation beyond those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of Civil Procedure. The City objects to each of the requests and/or demands and to the instructions and definitions that accompany them, to the extent that the requests/demands and instructions are inconsistent with the Federal Rules of Civil Procedure and/or the Local Rules of Civil Procedure, and/or attempt to impose requirements greater than those imposed by each or all of those rules.

The City objects to these requests to the extent that the requests seek to impose an obligation upon the City to collect and/or obtain information and/or documents from any person or entity that is not a party to this action.

5.      The City objects to each of the document requests to the extent the requests are vague, ambiguous, overbroad, unduly burdensome, oppressive, unlimited in time, scope, or subject, call for unbounded discovery, and/or do not describe the documents or information sought with reasonable particularity.

6.      The City objects to each of the document requests to the extent that the requests are not reasonably calculated to lead to the discovery of admissible evidence or seek information that is not material and necessary to the prosecution or defense of this action.

7.      The City objects to each of the document requests to the extent that the requests seek information not in the possession of the City or its agents/employees.

8.      The City reserves the right to challenge the competency, relevance, materiality, and admissibility of, and to object on any grounds to, the use of the information, and/or documents provided hereby in any proceeding or trial of this or any other action.

9.      The City objects to the document requests insofar as the requests state or imply contested facts, circumstances, legal conclusions, issues, events, or circumstances. The City's responses to these document requests shall not constitute any admission of any fact, event, circumstance, issue, or legal conclusion.

10.     The City objects to any requests for original evidence, records, documents, and things; the City will not release original evidence or things to any party for discovery purposes but will provide a reasonable opportunity for appropriate viewing in the presence of all parties.

11.     The City expressly reserves the right to amend and supplement the following responses and document requests with respect to additional information, material, and documents supplied or obtained in the course of discovery herein.

12.     The City objects to these requests/demands to the extent that the requests do not describe the information and/or documents sought with reasonable particularity.

13.     The City objects to these requests to the extent that the request seek information that is proprietary in nature.

<u>**RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT CITY OF BUFFALO**</u>

1.     <u>REQUEST</u>:   Identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo concerning the August 10, 1991 Buffalo shooting investigation, including without limitation:

        a.     the complete BPD investigative file regarding the August 10, 1991 Buffalo shooting investigation, reproduced in its original form with index and cover pages;

        b.     the complete investigative files from any other agency of the City of Buffalo concerning the August 10, 1991 Buffalo shooting investigation;

4

c.    any and all medical, forensic or crime lab files, reports, and notes concerning the August 10, 1991 Buffalo shooting investigation, including any and all documents on any forensic testing, and including without limitation any and all documents relating to ballistics or gunshot residue testing;

d.    any and all crime reports, investigative reports and supplements, notes, and witness statements concerning the August 10, 1991 Buffalo shooting investigation;

e.    any and all memo books, notebooks, and notes from all investigating officers, identified by officer name and shield number concerning the August 10, 1991 Buffalo shooting investigation;

f.    any and all photographs, including true and accurate color copies of any photographs of physical evidence or testing procedures concerning the August 10, 1991 Buffalo shooting investigation;

g.    any and all audiotapes and videotapes, including but not limited to audio or video recordings of Valentino Dixon or witnesses interviewed concerning the August 10, 1991 Buffalo shooting investigation, including but not limited to Lamar Scott, Aaron Jackson, Mario Jarmon, Emil Adams, John Sullivan, Heather Smith, Leonard Brown, Pamela Yates, Eric Doss, Ronnie Bryant, LaRosa Carson, Walter Lee Dennis, Tamara Frida, Michael Bland, Anthony Watkins, and/or Antoine Shannon;

h.    any and all warrants (including arrest warrants, search warrants, and bench warrants), affidavits in support, and related materials concerning the August 10, 1991 Buffalo shooting investigation;

i.       any and all transcripts;

j.       any and all signed or unsigned waiver of rights documents or forms concerning the August 10, 1991 Buffalo shooting investigation;

k.       laboratory reports, preliminary reports, and supplements concerning the August 10, 1991 Buffalo shooting investigation;

l.       all documents relating to trace evidence testing or examination, ballistics or gun powder residue testing, forensic hair examination or testing, serological testing or examination, latent fingerprint examination or testing, and the determination of the time of the victims' deaths;

m.       audit reports, case reviewer reports and notes, and peer review reports and notes;

n.       any and all inventories, vouchers, chain of custody documents, and letters of transmittal;

o.       any and all logs, including but not limited to patrol logs, evidence logs, testing logs custody logs, employee hour logs, and any other logs relating to the testing and maintenance of physical evidence concerning the August 10, 1991 Buffalo shooting investigation;

p.       any and all electronic mail or other data concerning the August 10, 1991 Buffalo shooting investigation that existed at the time of Valentino Dixon's 1992 criminal trial;

q.       interdepartmental memoranda and any other communications between investigative agencies, including but not limited to those of the City of Buffalo

6

and the ECDA, and any other investigative agency concerning the August 10, 1991 Buffalo shooting investigation;

r.      any and all medical examinations concerning the August 10, 1991 Buffalo shooting investigation;

s.      any and all news reports and/or press statements concerning the August 10, 1991 Buffalo shooting investigation;

t.      any and all documents concerning the use of confidential informants and/or anonymous witnesses in the August 10, 1991 Buffalo shooting investigation;

u.      to the extent not produced above, any and all documents prepared by any employee, agent, or official of the City of Buffalo concerning the August 10, 1991 Buffalo shooting investigation;

v.      to the extent not produced above, any and all documents relating to Valentino Dixon.

RESPONSE: The City objects to this request in that it is overly broad, burdensome, vague, irrelevant, not likely to result in the production of admissible evidence and/or material and necessary to the prosecution of this matter, and may request materials that are privileged or not otherwise in the City's possession. The City objects to and will not produce any communications or documents that are protected by the attorney-client privilege and/or attorney work-product privilege.

Subject to and without waiving such objections, the City respectfully directs Plaintiff to the previously disclosed documents, Bates numbered "COB000001-COB000294," that may be responsive to this demand. Given the age of the underlying

7

matter and the restrictions resulting from the ongoing coronavirus/COVID-19 virus pandemic, this response is provided subject to the City's reservation of right to supplement the same upon further discovery and investigation, if necessary and appropriate.

2.    REQUEST:    Identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo, including without limitation the BPD, concerning the perjury investigations or prosecutions of Mario Jarmon and Leonard Brown ("the perjury investigation"), Indictment No. 91-1476-003, including without limitation:

a.    the complete BPD file regarding the perjury investigation, reproduced in its original form with index and cover pages;

b.    the complete investigative files from any other agency of the City of Buffalo concerning the perjury investigation;

c.    any and all crime reports, investigative reports and supplements, notes, and witness statements concerning the perjury investigation;

d.    interdepartmental memoranda and any other communications between investigative agencies, including but not limited to those of the City of Buffalo and the ECDA, and any other investigative agency;

e.    any and all news reports and/or press statements concerning the perjury investigation;

8

f.      to the extent not produced above, any and all documents prepared by any employee, agent, or official of the City of Buffalo concerning the perjury investigation; and

RESPONSE: The City objects to this request in that it is overly broad, burdensome, vague, irrelevant, not likely to result in the production of admissible evidence and/or material and necessary to the prosecution of this matter, and may request materials that are privileged or not otherwise in the City's possession. The City objects to and will not produce any communications or documents that are protected by the attorney-client privilege and/or attorney work-product privilege.

Subject to and without waiving such objections, the City respectfully directs Plaintiff to the previously disclosed documents, Bates numbered "COB000001-COB000294," including but not limited to the document Bates numbered "COB 000289," that may be responsive to this demand. Given the age of the underlying matter and the restrictions resulting from the ongoing coronavirus/COVID-19 virus pandemic, this response is provided subject to the City's reservation of right to supplement the same upon further discovery and investigation, if necessary and appropriate.

3.      REQUEST:    To the extent not produced in Request #2 above, identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo, including without limitation the BPD, relating to Mario Jarmon (DOB: 12/23/1971) and Leonard Brown (DOB: 12/07/1970).

RESPONSE: The City objects to this demand in that it is overly broad, unduly burdensome, irrelevant, not material and necessary to the prosecution of this

9

matter, and may request materials that are not discoverable, privileged, and/or sealed pursuant to provisions of the Criminal Procedure Law.

Subject to and without waiving such objections, the City respectfully directs Plaintiff to Response ¶2.

4.    REQUEST:    Identify and produce true and correct certified copies of any and all documents generated by or in the custody of the City of Buffalo, including without limitation the BPD, concerning any other arrest, investigation, or prosecution of Valentino Dixon, including without limitation:

a.    Indictment #90-2383 (sentence date: 08/20/91), charging attempted assault in the second degree and other related charges;

b.    Indictment #90-0832 (sentence date: 08/20/91), charging attempted criminal possession of a weapon in the second degree and other related charges;

c.    Indictment #91-1167 (offense date: 04/06/1991; sentence date: 03/06/1992), charging criminal sale of a controlled substance in the third degree and other related charges; and

d.    Indictment #91-1550 (sentence date: 03/06/1992), charging criminal possession of a weapon in the third degree and other related charges.

RESPONSE:  The City objects to this demand in that it is overly broad, unduly burdensome, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable based upon the allegations contained within Plaintiff's Complaint, privileged, and/or sealed pursuant to provisions of the Criminal Procedure Law.

Subject to and without waiving such objections, information responsive to this demand may be contained within the previously disclosed documents, Bates numbered "COB000001-COB000294".

5.    <u>REQUEST</u>:    Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the City of Buffalo concerning any involvement of Lamar Scott, Aaron Jackson, Emil Adams, and/or John Sullivan in the City of Buffalo's law enforcement operations including without limitation:

a.    documents concerning his or her activities as an informant, whether registered or unregistered, for the City of Buffalo; and

b.    any plea negotiations or offers made between 1/1/1980 and 12/31/1995.

<u>RESPONSE</u>:    The City objects to this demand in that it is vague, ambiguous, and subject to multiple meanings, overly broad, unduly burdensome, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable, privileged under the law enforcement privilege, and/or sealed pursuant to provisions of the Criminal Procedure Law.

Subject to and without waiving such objections, information responsive to this demand may be contained within the previously disclosed documents, Bates numbered "COB000001-COB000294".

6.    <u>REQUEST</u>:    Identify and produce true and correct certified copies of any and all organizational charts or other documents reflecting the chain of command in the BPD between 1/1/1980 and 12/31/1995, including without limitation those documents

pertaining to Mark Stambach, Raniero Massecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski.

        <u>RESPONSE</u>: The City objects to this request in that it is overly broad, burdensome, vague, ambiguous, and subject to multiple meanings, irrelevant, not likely to result in the production of admissible evidence and/or material and necessary to the prosecution of this matter, and may request materials that are no longer in the City's possession. The City objects to and will not produce any communications or documents that are protected by the attorney-client privilege and/or attorney work-product privilege.

        Subject to and without waiving such objections, the enclosed documents, Bates numbered "COB000295-COB000315" may be responsive to this demand. Given the age of the underlying matter and the restrictions resulting from the ongoing coronavirus/COVID-19 virus pandemic, this response is provided subject to the City's reservation of right to supplement the same upon further discovery and investigation, if necessary and appropriate.

        7.   <u>REQUEST</u>:   Identify and produce true and correct certified copies of any and all documents relating to the hiring, employment, performance, discipline, and/or remediation of Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski ("BPD Defendants") from the dates each first applied for any position at the City of Buffalo, or any of its agencies, to the present, including without limitation the following:

        a.     complete personnel files;

b.      complete materials related to applications for employment with the City of Buffalo, including applications submitted and any materials generated or obtained during background evaluations or other evaluation of those applications;

c.      all records and communications concerning promotions or changes of assignment, including but not limited to applications for promotion to detective, the results of any promotion-related examinations, and records or communications relating to precinct assignments or transfers;

d.      complete training records, including but not limited to all syllabi, course descriptions, records of attendance at any in-house or outside training courses, and training-related evaluations, proficiency evaluations and testing results;

e.      complete medical and psychological records, including pre-employment testing or evaluation and any follow-up or subsequent testing or evaluation after being hired, and any necessary authorizations therefore signed and executed by the individual defendants;

f.      all documents relating to background investigations conducted at any time prior to hiring and through retirement;

g.      all documents relating to performance evaluations;

h.      all documents relating to salary, payment, and expense records and reports;

i.      all documents relating to any civilian complaints, irrespective of whether the complaint(s) were substantiated;

j.      all documents relating to any City of Buffalo internal allegations, complaints, or investigations of misconduct, irrespective of whether the complaint(s) were substantiated, including without limitation complete Internal Affairs files;

k.      any document created by or in the possession of any departmental supervisor regarding any allegation of misconduct of any kind, or any action taken in response to such an allegation;

l.      any and all documents reflecting any criticism, discipline, or remediation, in any form, concerning misconduct by any BPD Defendant;

m.      all documents concerning allegations of misconduct against any BPD Defendant from any source;

n.      all Notices of Claim filed with the City of Buffalo or its agencies naming any BPD Defendant, or which, although not naming those individuals, allege misconduct attributable to any of them;

o.      all documents concerning civil or criminal lawsuits involving misconduct by any BPD Defendant;

p.      all documents concerning civil or criminal lawsuits involving allegations of official misconduct in which any BPD Defendant was a witness;

q.      all requests for leave of absence, disability, or early retirement;

r.      all requests for authorization to engage in employment outside of the City of Buffalo; and

s.      any and all documents relating to awards, decorations, commendations or other positive citations bestowed for any positive acts or qualities.

14

RESPONSE: The City objects to this demand in that it is overly broad, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession. The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

8. REQUEST: To the extent not requested above, identify and produce true and correct certified copies of any and all documents reflecting allegations from any source that Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski engaged in investigative misconduct including but limited to allegations they:

a. pressured, intimidated, coerced, manipulated, misled, assaulted, threatened, or otherwise used improper techniques with any crime suspect or witness; or

b. acted or failed to act to prevent such misconduct;

c. engaged in the fabrication or planting of evidence, tampering with evidence or gave untrue sworn testimony, or

d. failed to document or otherwise disclose to the prosecution exculpatory or impeachment evidence whether or not the allegation was substantiated, from the time that each joined the City of Buffalo to the present, including without limitation any charges, statements, notes, reports, memoranda, bench notes, or correspondence transcripts, findings, conclusions, or recommendations made by investigating

15

authorities, and civil, administrative, or criminal complaints originating from civilians or law enforcement personnel.

      <u>RESPONSE</u>: The City objects to this demand in that it is overly broad, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession. The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

      9.   <u>REQUEST</u>:   To the extent not requested in Requests #6-8 above, identify and produce true and correct copies of any and all other documents and materials that comprise or are part of the BPD personnel file for each of Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, or Robert Grabowski.

      <u>RESPONSE</u>: The City objects to this demand in that it is overly broad, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession. The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

10.     <u>REQUEST</u>:   Produce true and correct photographs of Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Daniel DiPirro, and Robert Grabowski from when each joined the City of Buffalo, and from around 1991.

<u>RESPONSE</u>:  The City objects to this demand in that it is irrelevant, not material and necessary to the prosecution of this matter, and requests materials that are not discoverable and may not otherwise be in the City's possession.

11.     <u>REQUEST</u>:    Identify and produce true and correct certified copies of any and all documents concerning training (whether internal or external) received by City of Buffalo officers, investigators, detectives, and supervisors, from 1/1/1980 to 12/31/1995, including but not limited to presentations, BPD directives, memoranda, videos, analyses, reports, correspondence, and instructional materials, with respect to the following categories:

a.      conducting criminal investigations, particularly of homicides;

b.      identifying and eliminating individuals as suspects;

c.      retaliation against witnesses or suspects;

d.      retaliation against whistleblowers, officers, or other employees;

e.      conducting eyewitness identification procedures, including without limitation photo arrays and line-ups;

f.      documenting investigative work and suspect and witness statements;

g.      record keeping;

h.      interrogating or interviewing suspects and witnesses, specifically including any training in the Inbau & Reid technique or method of interrogation;

17

i.      dealing with witnesses, suspects, or other persons with intellectual disabilities;

j.      coercing, threatening, pressuring, or intimidating witnesses or suspects;

k.      offering promises, rewards, or inducements to witnesses or suspects;

l.      communications with prosecutors;

m.      conducting and documenting polygraph examinations;

n.      the documentation and disclosure of exculpatory and impeachment information to prosecutors pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny;

o.      supervision of detectives and officers;

p.      supervising serious felony investigations;

q.      communicating and working with the ECDA and its agents;

r.      providing day-to-day supervision of detectives; and

s.      reporting, investigating, remediating, and tracking employee misconduct.

RESPONSE:  The City objects to this demand in that it is overly broad in scope and time period, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession.  The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

12.    <u>REQUEST</u>:    To the extent not already disclosed, identify and produce true and correct certified copies of any and all documents reflecting the City of Buffalo's policies, practices, customs, or procedures, whether written or oral, and any modifications thereto, no matter when implemented or promulgated, in effect at any point between 1/1/1980 to 12/31/1995, concerning the following:

a.    conducting interviews of witnesses, potential witnesses, persons-of-interest, suspects, and defendants;

b.    conducting interviews or any other business or making contact with persons, witnesses, or suspects with intellectual disabilities;

c.    *Miranda* requirements;

d.    investigating homicides;

e.    the use of video or audio recording during interviews of witnesses, potential witnesses, persons-of-interest, suspects, and defendants;

f.    the documentation and disclosure of interviews of witness, potential witnesses, persons-of-interest, suspects, and defendants;

g.    the documentation and disclosure of exculpatory and impeachment information to prosecutors pursuant to *Brady v. Maryland*, *Giglio v. United States*, and their progeny;

h.    gathering, examining, testing, and using physical and forensic evidence;

i.    conducting and documenting polygraph examinations;

j.    communicating and working with the ECDA and its agents;

k.    supervision of detectives and officers; and

19

l.      reporting, investigating, remediating, and tracking employee misconduct.

RESPONSE:  The City objects to this demand in that it is overly broad in scope and time period, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession.  The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

13.    REQUEST:    Any reports or documents regarding investigations into BPD misconduct, or any communications regarding those reports or investigations, including without limitation reports published by:

a.      The U.S. Department of Justice ("DOJ"), including but not limited to the 1992 report by the DOJ examining complaints about the BPD and other mid-sized cities between 1983 and 1990;

b.      The U.S. Attorney's Office for the Western District of New York; and

c.      The International Association of Chiefs of Police ("IACP"), including but not limited to the 1991 report by the IACP on the BPD;

RESPONSE:  The City objects to this demand in that it is overly broad, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession.  The City objects to and will not produce any communications or documents that were prepared in anticipation of

20

litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

14.    REQUEST:    Identify and produce true and correct certified copies of any and all documents generated by, or in the custody of, the BPD concerning Lamar Scott, Aaron Jackson, Emil Adams, John Sullivan, or Leonard Brown, including without limitation:

a.    his complete criminal "rap sheet";

b.    any agreement entered into between him and the BPD;

c.    all files regarding any arrest of him, or regarding any incident during which he or she was detained by the City of Buffalo or its agencies;

d.    all files regarding the investigation or prosecution of every crime with which he was charged;

e.    a true and correct copy of every statement he gave to any City of Buffalo employee;

f.    a list of cases or incidents in which he was involved in any way, including but not limited to: as a complainant, witness, informant, suspect, person of interest;

g.    true and correct copies of any and all testimony he gave in any judicial proceeding;

h.    true and correct copies of any and all agreements between he and the City of Buffalo or its agents;

i.    any communication between he and the City of Buffalo, its agencies, or other law enforcement agencies, including without limitation the BPD; and

21

j.      any and all documentation, including, but not limited to, notes or transcripts, of any employee of the BPD advocating for leniency or favorable treatment of the person enumerated in the header paragraph in connection with a crime, violation, or other criminal case;

RESPONSE:   The City objects to this demand in that it is vague, ambiguous, and subject to multiple meanings, overly broad in time and scope, unduly burdensome, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable, privileged under the law enforcement privilege, and/or sealed pursuant to provisions of the Criminal Procedure Law.

Subject to and without waiving such objections, information responsive to this demand may be contained within the previously disclosed documents, Bates numbered "COB000001-COB000294".

15.    REQUEST:    Identify and produce true and correct certified copies of any and all documents reflecting communications between the City of Buffalo, and any other City of Buffalo agency or agents regarding Valentino Dixon, Lamar Scott, Aaron Jackson, Mario Jarmon, Emil Adams, John Sullivan, Mark Stambach, Raniero Masecchia, James Longergan, John Vickerd, Daniel DiPirro, or Robert Grabowski with any of the following entities:

a.      Office of the Attorney General;

b.      ECDA;

c.      U.S. Attorney's Office for the Western District of New York; and

d.      any news media.

RESPONSE:  The City objects to this demand in that it is vague, ambiguous, and subject to multiple meanings, overly broad in time and scope, unduly burdensome, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable, privileged under the law enforcement privilege, and/or sealed pursuant to provisions of the Criminal Procedure Law.

Subject to and without waiving such objections, information responsive to this demand may be contained within the previously disclosed documents, Bates numbered "COB000001-COB000294".

16.    REQUEST:  Identify and produce true and correct copies of any communication, including but not limited to email and SMS communication relating in any way to the August 10, 1991 Buffalo shooting investigation including without limitation the underlying investigation, arrest, and prosecution of Valentino Dixon, the grand jury proceedings and criminal trials against Valentino Dixon, the appeals and post-conviction proceedings of Valentino Dixon, the appeals and post-conviction proceedings of Valentino Dixon, the re-investigation of the August 10, 1991 Buffalo shooting investigation, and/or the present civil rights lawsuits brought by Valentino Dixon.

RESPONSE:  The City objects to this demand in that it is overly broad in time and scope, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession.  The City objects to and will not produce any communications or documents that were prepared in

anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

Subject to and without waiving such objections, information responsive to this demand may be contained within the previously disclosed documents, Bates numbered "COB000001-COB000294".

17.    REQUEST:  Identify and produce true and correct copies of any communication, including but not limited to email and SMS communication, to/from named Defendants, about the perjury investigation against Leonard Brown and Mario Jarmon, including without limitation the grand jury proceedings and 1992 criminal trial against Leonard Brown and Mario Jarmon, and their appeals and post-conviction proceedings.

RESPONSE:  The City objects to this demand in that it is overly broad in time and scope, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession.  The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.  Given the age of the underlying matter and the restrictions resulting from the ongoing coronavirus/COVID-19 virus pandemic, this response is provided subject to the City's reservation of right to supplement the same upon further discovery and investigation, if necessary and appropriate.

18.    <u>REQUEST</u>:    Identify and produce true and correct certified copies of any and all documents pertaining to citizen complaints, internal affairs investigations, disciplinary findings, or criminal cases, whether internal or external, in the possession, custody, or control of the BPD, relating to excessive force, false arrest, malicious prosecution, coerced confessions or witness statements between 1/1/1978 and 12/31/1995, including, but not limited to the following officers, arrest, or incidents:

a.    The BPD assault and arrest of Jeffrey Dunbar in 1990;

b.    The BPD assault of Mageda Dhali in 1990;

c.    The BPD assault of Domingo Morales in 1990;

d.    The BPD assault of Mark Aiken and Steven Johnson in 1990; and

e.    The BPD assault of Robert Staudacher in 1978 by Mark Stambach and other officers.

<u>RESPONSE</u>:  The City objects to this demand in that it is overly broad, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, and may request materials that are not discoverable or otherwise in the City's possession.  The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege.

19.    <u>REQUEST</u>:    Identify and procedure true and correct certified copies of any and all documents generated by, or in the custody of, the City of Buffalo, including without limitation the BPD, concerning the investigation and prosecution of:

a. Anthony Capozzi in 1985 for alleged rape, including without limitation:

i. the full investigative BPD file for the case, including documents from before and after Mr. Capozzi's conviction;

ii. any and all witness statements in any form;

iii. any documents relating to or referencing any contact between police and witnesses;

iv. any and all communications with the Erie County District Attorney's Office;

v. any and all documents relating to any lineups or other identification procedures in the case.

b. Lynn DeJac in 1984 for the murder of her daughter, including without limitation:

i. the full investigative BPD file for the case, including any documents from before and after Ms. DeJac's conviction;

ii. any and all witness statements in any form;

iii. any documents relating to or referencing any contact between police and witnesses;

iv. any and all documents created by, reviewed, or containing, information relating to Mark Stambach or James Lonergan;

v. any and all documents relating to any lineups or other identification procedures in the case;

    vi. any and all communications with the Erie County District Attorney's Office; and

    vii. any and all documents referencing Wayne Hudson.

  c. Cory Epps in 1998 for the murder of Tomika Means, including without limitation:

    i. the full investigative BPD file for the case, including any documents from before and after Mr. Epps' conviction;

    ii. any and all witness statements in any form;

    iii. any documents relating to or referencing any contact between police and witnesses;

    iv. any and all documents created by, reviewed, or containing formation relating to Mark Stambach or Raniero Masecchia;

    v. any and all documents relating to any lineups or other identification procedures in the case.

    vi. any and all communications with the Erie County District Attorney's Office;

  d. Josue Ortiz in 2004 for murder, including without limitation:

    i. the full investigative BPD file for the case, including any documents from before and after Mr. Ortiz's conviction;

    ii. any and all witness statements in any form;

    iii. any documents relating to or referencing any contact between police and witnesses;

iv.     any and all documents created by, reviewed, or containing information relating to Mark Stambach;

v.     any and all documents relating to any lineups or other identification procedures in the case;

vi.     any and all communications with the Erie County District Attorney's Office; and

vii.     any and all communications with federal law enforcement agencies including the FBI and U.S. Department of Justice.

<u>RESPONSE</u>: The City objects to this demand in that it is overly broad, unduly burdensome, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, may request materials that are not discoverable or otherwise in the City's possession, privileged under the law enforcement privilege or the disclosure of which would create substantial safety risk to confidential informant(s) and/or witness(es) and/or reveal state and/or federal law enforcement tactics or strategies, and/or is sealed pursuant to provisions of the New York State Criminal Procedure Law and/or Federal Criminal Procedure Law. The City objects to and will not produce any communications or documents that were prepared in anticipation of litigation and/or are protected by the attorney-client privilege, attorney work-product privilege, and/or any other applicable privilege. The City further objects in that this demand may request documents, materials, and/or information that is subject to protective, confidentiality, and/or sealing orders, including but not limited to those Bates numbered as "COB 000316-COB 000322".

20.    <u>REQUEST</u>:    Identify and produce true and correct certified copies of any and all documents listing individuals that the ECDA and BPD sought to surveil, monitor, stop, arrest, prosecute, or incarcerate, including without limitation any watchlists, whether gang or drug-related or otherwise, from 1/1/1980 to 12/31/1995.

<u>RESPONSE</u>:  The City objects to this demand in that it is overly broad, unduly burdensome as to time and scope, vague, ambiguous, subject to multiple meanings, irrelevant, not material and necessary to the prosecution of this matter, may request materials that are not discoverable or otherwise in the City's possession, privileged under the law enforcement privilege or the disclosure of which would create substantial safety risk to confidential informant(s) and/or witness(es), and/or reveal confidential or sensitive state and/or federal law enforcement tactics or strategies.

21.    <u>REQUEST</u>:    Identify and produce true and correct certified copies of any and all documents that you will use to support your defenses as to liability or damages at trial.

<u>RESPONSE</u>: The City respectfully directs Plaintiff to the previously disclosed documents, Bates numbered "COB000001-COB000294," that may be responsive to this demand.  Given the age of the underlying matter and the restrictions resulting from the ongoing coronavirus/COVID-19 virus pandemic, this response is provided subject to the City's reservation of right to supplement the same upon further discovery and investigation, if necessary and appropriate.

22.    <u>REQUEST</u>:    Identify and produce true and correct copies of any and all insurance policies covering law enforcement activities, both operational and supervisory,

for the BPD from 1985 to the present.  This includes but is not limited to the following types of policies: commercial general liability/general liability policies, D&O or other error and omission policies, professional liability policies and law enforcement liability policies.

RESPONSE: The City objects to this request in that it is overly broad, burdensome, vague, irrelevant, not likely to result in the production of admissible evidence and/or material and necessary to the prosecution of this matter, and may request materials that are privileged or not otherwise in the City's possession.  The City objects to and will not produce any communications or documents that are protected by the attorney-client privilege and/or attorney work-product privilege.

Subject to and without waiving such objections, the City is not aware of any responsive documents, and at or around the time of the subject incident, the City was self-insured.  Given the age of the underlying matter and the restrictions resulting from the ongoing coronavirus/COVID-19 virus pandemic, this response is provided subject to the City's reservation of right to supplement the same upon further discovery and investigation, if necessary and appropriate.

The City reserves the right to supplement, clarify, revise, and/or correct this response and disclosure pursuant to Rule 26(e).

Dated: December 24, 2020
          Buffalo, New York

                              TIMOTHY A. BALL, ESQ.
                              Corporation Counsel

                              *s/Maeve E. Huggins*

By:    Maeve E. Huggins
        Assistant Corporation Counsel
        *Attorneys for the Defendants*
        65 Niagara Square
        1100 City Hall
        Buffalo, New York 14202
        (716) 851-4317