UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VALENTINO DIXON,

                              Plaintiff,

v.                                                  Case No. 19-cv-01678

CITY OF BUFFALO, et al.,

                              Defendants.

---

**DECLARATION OF PETER SAHASRABUDHE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

      PETER SAHASRABUDHE, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

      1.     I am an attorney associated with Hodgson Russ LLP, attorneys for the defendants the City of Buffalo (hereinafter "the City"), Mark Stambach, Raniero Masecchia, James Lonergan, John Vickerd, Richard Donovan, and various John Does identified as Unknown Buffalo Police Department Supervisors (collectively referred to hereinafter as "the City Defendants"). As an attorney of record, I am fully familiar with the proceedings in this matter and submit this Declaration in response and opposition to the motion to compel production of documents filed by the plaintiff, Valentino Dixon. (Dkt Nos. 52-53.)

      2.     In his motion, the plaintiff seeks an order compelling the production of documents in response to Requests 19 and 20 of his Request for Production addressed to the City. (Dkt. No. 52.)

      3.     Based on the evidence submitted here by the City Defendants, and for the reasons stated in the City Defendants' accompanying Memorandum of Law, the Court should

deny the plaintiff's motion to the extent it seeks to compel production of documents in Response to Request 19. This request seeks information and materials related to criminal investigations and arrests that are completely unrelated to the allegations in the Complaint and that are not relevant to the plaintiff's claims.

4. Further, as more fully set forth below, the remainder of the plaintiff's motion is moot based on his description of the documents he is seeking in Request 20. (Dkt. No. 52-1 (hereinafter "Plaintiff Memo of Law") at p. 9-10.) In short, the City is not in possession of any "lists" like those described by the plaintiff in his motion. Consequently, it has no documents or other materials to produce in response to Request 20.

5. Accordingly, the City Defendants respectfully request that the Court deny the plaintiff's motion in its entirety.

### RELEVANT ALLEGATIONS AND THE FACTS OF THE UNDERLYING 1991 MURDER INVESTIGATION AND PLAINTIFF'S ARREST

6. This case involves the City Defendants' investigation into the murder of Torriano Jackson, which occurred in the early morning hours of August 10, 1991. (Dkt. No. 1 (hereinafter "Compl.") at ¶ 48.). Mr. Jackson died after being shot during an altercation at the corner of East Delevan and Bailey Avenue in the City of Buffalo. (*Id.*)

7. The shooting arose out of a street fight between two groups of young men who had previously been feuding. The victim, Torriano Jackson and his brother, Aaron, were a part of one group, and two of the plaintiff's half-brothers, Leonard Brown and Antwan Shannon, were a part of the other. Another participant in the feud and fight was Mario Jarmon, a friend of the plaintiff and his brothers. (Compl. at ¶ 50.)

8. The plaintiff does not dispute that he was at the scene of the crime when the shooting took place. (Compl. at ¶ 56.) More troubling, he now admits that he brought the weapon used to kill Torriano Jackson to the scene of the crime shortly before the shooting occurred.

9. Ultimately, the plaintiff was arrested for the murder of Torriano Jackson and convicted of the same on June 16, 1992. (Compl. at ¶ 132.)

10. Alleging that he was wrongfully arrested and convicted of the murder, the plaintiff contends that he was on a "list" of people that the members of the Buffalo Police Department's Homicide Division wanted to get off the street in the early 1990's by making "colorable charges stick to them." (Compl. at ¶ 6.)

### THE ARRESTS AND INVESTIGATIONS REFERENCED IN REQUEST 19 ARE NOT RELEVANT TO THE PLAINTIFF'S CLAIMS

11. Request 19 seeks comprehensive files and documentation related to the investigations and arrests of four individuals: (1) Anthony Capozzi, (2) Lynn DeJac, (3) Cory Epps; and (4) Josue Ortiz.

12. Notably, three of these arrests and investigations occurred years *after* the plaintiff's arrest and conviction, and thus have no probative value for the plaintiff's *Monell* claims. In any event, the underlying facts of all four cases demonstrate that they have little to no similarity to the plaintiff's allegations here. Accordingly, the Court should deny the plaintiff's request to compel the production of documents in response to Request 19.

3

**Cases Involving Arrests Occurring After the Plaintiff's Conviction**

13. Provided as **Exhibit A** is the Amended Complaint filed in the Western District of New York by Lynn DeJac in a case entitled *Peters v. City of Buffalo*, *et al.*, Case No.10-CV-953.[1] This Court knows of the allegations and factual background of this case, given that it presided over the lawsuit until it was resolved through settlement.

14. Ms. DeJac's lawsuit stems from the investigation of a murder that occurred in 1993 and a conviction that occurred in 1994. Ms. DeJac was accused and convicted of killing her daughter, Crystallyn, who died in her bedroom due to strangulation. Ms. DeJac was ultimately exonerated through DNA evidence. Her ex-boyfriend was actually responsible for Crystallyn's death.

15. Notably, Ms. DeJac's arrest and prosecution occurred years after the plaintiff's, and the underlying crime in Ms. DeJac's case is characteristically different from the one for which the plaintiff was accused. One investigation involved a shooting that was the end result of a street fight, and the other involved a family member's strangling of a young teenage girl. Perhaps most importantly, there was absolutely no allegation in Ms. DeJac's case that she was on a list of persons that the Buffalo Police Department wanted to "get off the street."

16. Provided as **Exhibit B** is the operative Complaint filed in an ongoing litigation in the Western District of New York entitled *Epps v. City of Buffalo*, Case No. 1:19-cv-00281. This lawsuit stems from Cory Epps's alleged wrongful conviction for the murder of Tomika Means. Our office has been retained to represent the defendants in this case.

---

[1] As noted by the plaintiff in his papers, Ms. DeJac had changed her last name when she commenced her civil claims stemming from her arrest and conviction.

17. The *Epps* case involves a murder and investigation that occurred in 1997 and a conviction that occurred in 1998. Thus, the relevant events of the *Epps* lawsuit occurred some five to six years *after* the events focused on in the Complaint in this case.

18. The crux of the allegations in the *Epps* lawsuit are that members of the Buffalo Police Department withheld potentially exculpatory evidence from the Erie County District Attorney's Office. In contrast, the plaintiff in this case alleges that Erie County District Attorney's Office and the Buffalo Police Department worked in tandem to diminish the utility and credibility of evidence which was allegedly exculpatory for the plaintiff.

19. There are no allegations in the *Epps* case that Mr. Epps was on a list of wanted people that the Buffalo Police Department actively sought to get off the streets.

20. Provided as **Exhibit C** is the operative Complaint in ongoing litigation in the Western District of New York entitled *Ortiz v. Wagstaff et. al.*, Case No. 1:16-cv-00321. This case involves allegations made by Josue Ortiz against the City of Buffalo and its former officers and detectives. The allegations stem from Mr. Ortiz being arrested and convicted for a shooting that occurred in 2004. Mr. Ortiz ultimately pled guilty but was released from prison once federal authorities reinvestigated the crime years later.[2]

21. The relevant events of the *Ortiz* case occurred *over a decade* after the events referenced in the Complaint in this case.

---

[2] Mr. Ortiz has filed a separate lawsuit against Erie County, which is referenced in the plaintiff's moving papers.

22. Mr. Ortiz likewise does not allege that he was only arrested because he was on a list of people that were targeted by the Buffalo Police Department.

23. In short, given that the relevant events in the cases involving Ms. DeJac, Mr. Epps, and Mr. Ortiz occurred well *after* the plaintiff's arrest and conviction, those cases have no probative value for the plaintiff's *Monell* claims. The three cases simply cannot demonstrate or establish what the City's policies and customs were at the time of this plaintiff's arrest and conviction. Because they post-date the plaintiff's conviction, the three cases also cannot be used to show that the City's policy makers had notice of prior acts of misconduct similar to those alleged in the Complaint.

24. It also cannot reasonably argued that there is are sufficient similarities between these cases and the allegations contained in the plaintiff's Complaint, and the plaintiff has not demonstrated the potential relevance of these case-files.

25. For all of these reasons, the Court should rule that documents and materials related to these three arrests and investigations are not discoverable.

**The Capozzi Case**

26. Unlike the DeJac, Epps, and Ortiz cases, the Cappozzi investigation and arrest occurred before the plaintiff was arrested or convicted. The plaintiff contends that the files may demonstrate notice to City policy makers of prior acts of misconduct similar to those alleged by the plaintiff.

27. However, the underlying facts of that case are so vastly different from this one that it does not meet the relevance threshold required to permit discovery. Unlike the

plaintiff, Mr. Capozzi was arrested and convicted of rape based on identification from the actual victims of the crime. (Compl. at ¶ 168.) Eventually, and unlike the plaintiff, Mr. Capozzi was exonerated by DNA evidence. (*Id.* at 169.)

28. The plaintiff has made absolutely no showing that any of the individual officers or detectives who investigated the rapes in the Capozzi case were involved or connected to the plaintiff's case in any way. The factual circumstances surrounding the rape do not resemble those involved in the murder of Torriano Jackson.

29. Simply put, the only similarity between the Capozzi case and the plaintiff's demonstrated in the plaintiff's moving papers is that their convictions were ultimately overturned. This is not enough to warrant discovery, and the Court should therefore deny the plaintiff's motion to the extent it seeks records related to Capozzi.

### PRODUCTION OF MATERIALS REQUESTED IN REQUEST 19 IS UNDULY BURDENSOME AND NOT PROPORTIONAL TO THE NEEDS OF THE CASE

30. In addition to lack of relevance, the Court should deny production of the materials identified in Request 19 because their production would be unduly burdensome and disproportional to the needs of the case. At the very least, if production is ordered, the scope of documents produced should be significantly narrowed.

31. As counsel of record in this case and the *Epps* case, I have seen how voluminous files can be in cases where an arrest was made, a conviction was obtained, the crime or crimes were reinvestigated, and the underlying conviction was overturned. Further, complicating matters is that crimes that are re-investigated contain materials that were created over multiple decades by different sources.

7

32. It is very likely that files maintained by the City and Erie County for the Capozzi, DeJac, Epps, and Ortiz matters would likely *each* be voluminous in and of themselves. A blanket production of these files by both City and the County would thus likely inundate the parties with document productions.

33. A blanket production in response to Request 19 would also have the effect of creating numerous of potential disputes between the parties related to *other* criminal investigations with complicated factual and procedural backgrounds. Many of the facts in these cases are in dispute or unresolved, and some of the issues presented by these cases are being actively litigated. Outright production in Response to Request 19 thus creates the danger of unduly broadening the issues disputed by the parties and the issues that might ultimately be tried before a jury. I fear that the Court will have to conduct mini-hearings concerning each of these expected disputes and issues.

34. For these additional reasons, the Court should deny the plaintiff's request to compel the City Defendants to respond to Request 19.

35. Alternatively, should the Court find that Request 19 does seek potentially relevant information, the Court should invoke its authority to narrow the scope of production in response to the request. For example, the Court could order production of materials from the case files that show or record a particular individual involved in a specific activity such as one of the individual defendants taking witness statements, or one of the individual defendants showing a witness a photo array. Should it deem some production necessary, the Court should also invoke its authority to limit the time period from which documents are being requested.

Currently, the plaintiff seeks documents from investigations that span the course of three separate decades.

36. To the extent that the plaintiff requests outright production in response to Request 19, however, his motion must be denied.

**THE CITY IS NOT IN THE POSSESSION OF ANY LISTS SOUGHT BY REQUEST 20**

37. The plaintiff's motion also seeks to compel a response to Request 20 of his Request for Production addressed to the City. That request asks the City to: "Identify and produce true and correct certified copies of any and all documents listing individuals that the ECDA or BPD sought to surveil, monitor, stop, arrest, prosecute, or incarcerate, including without limitation any watch lists, whether gang or drug related or otherwise, from 1/1/1980 to 12/31/1995."

38. Read literally, this request asks the City to produce any document or material of any kind which indicates that any individual was surveilled or investigated by the Buffalo Police Department over a 15 year period. Of course, such a demand would be wildly overbroad and would not be proportional to the needs of the case.

39. During the at least three meet and confers that I have participated in on behalf of the City, counsel for the plaintiff has never relayed to me a more narrow set of documents that they may be seeking in response to Request 20. I have thus always maintained that the City stands on the objections stated in its response to Request 20, which was issued before our office even made its appearance in this case.

9

40. Now, in the plaintiff's motion to compel, the plaintiff seems to indicate that he is only seeking documents that would constitute an actual list or lists of individuals that were persons of interest to the Buffalo Police Department during the identified timeframe.

41. If it is only tangible lists that the plaintiff is seeking, I can represent that the City is currently not in the possession of any such materials. Upon information and belief, they do not exist.

42. From what I have been told, there of course were individuals suspected of engaging in criminal activity in the time period identified in Request 20. Further, there may be information in investigative files related to arrests of those individuals that suggested that detectives and officers of the Buffalo Police Department suspected them of engaging in criminal activity prior to their arrests.

43. But the City is not in the possession of any lists showing all of the individuals who were suspected of engaging in criminal activity or who were known criminals. Nor is the City in the possession of any lists showing people who were identified as targets for arrests during the specified time period.

44. Accordingly, because the City has no "lists" to produce, the portion of the plaintiff's motion seeking to Compel production in response to Request 20 is moot.

## **CONCLUSION**

45. For the foregoing reasons, and for reasons stated in the accompanying Memorandum of Law, the Court should deny the relief requested in the plaintiff's motion and grant such other relief as it deems just and proper.

Dated: January 20, 2022

//s Peter A. Sahasrabudhe
Peter Sahasrabudhe

16083658v8