# EXHIBIT C

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSUE ORTIZ,

              *Plaintiff,*

CASE NO. _____

**COMPLAINT FOR VIOLATIONS OF FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; FALSE IMPRISONMENT; NEGLIGENCE; INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

*v.*

**RICHARD WAGSTAFF, MARY GUGLIUZZA, MARK VAUGHN, MARK STAMBACH, and BPD DOES 1-12, in their Capacity as Police Officers of the CITY OF BUFFALO; BUFFALO POLICE DEPARTMENT; CITY OF BUFFALO,**

              *Defendants.*

## INTRODUCTION

1. This civil rights actions seeks compensatory and punitive damages as a result of the wrongful conviction and imprisonment of Plaintiff, Josue Ortiz, a 23 year old United States citizen, from November 17, 2004 to December 12, 2014. By and through his attorneys, The Law Offices of Wayne C. Felle, PC (Wayne C. Felle, Esq., of counsel), alleges and states his Complaint as against the defendants, as established more particularly herein.

2. The wrongful arrest, conviction and imprisonment of Mr. Ortiz was the direct and foreseeable consequence of official policies, patterns, practices and customs that manifest a failure to recognize basic principles of due process, constitutional rights and demonstrate intentional, reckless disregard and indifference for human life and liberty. The Buffalo Police Department through Defendants named herein and as an agency operating with the authority of law failed to protect Mr. Ortiz by allowing individuals who lacked the proper training and oversight to violate his constitutional rights, thereby causing Mr. Ortiz profound physical and psychological injuries.

## JURISDICTION AND VENUE

3. This civil rights action is brought pursuant to, inter alia, the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and other state and federal laws for relief from commission of intentional and tortuous acts. This Court has jurisdiction over federal claims pursuant to the constitutional provisions enumerated and 28 U.S.C. §1331 and §1343 (3) and (4), as they are brought to redress deprivations of rights privileges and immunities secured by the United States Constitution and by law. This Court has jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Western District of New York, under 28 U.S.C. §1391(b), in that Defendants are located in this state and district, and a substantial part of the acts and/or omissions giving rise to Plaintiff's claim occurred in this district.

5. That at all times hereinafter mentioned, and at the time of the occurrence hereinafter more particularly set forth, the plaintiff, JOSUE ORTIZ, was a citizen of the United States residing in the City of Buffalo, County of Erie, State of New York.

6. That at all times hereinafter mentioned, and at the time of the occurrence hereinafter more particularly set forth, the defendants, RICHARD WAGSTAFF (hereinafter "WAGSTAFF"), MARY GUGLIUZZA (hereinafter "GUGLIUZZA"), MARK VAUGHN (hereinafter "VAUGHN), MARK STAMBACH (hereinafter "STAMACH") , and BPD DOES 1-12 were residents of the County of Erie, State of New York.

7. That at all times hereinafter mentioned, the defendant, BUFFALO POLICE DEPARTMENT (Hereinafter "BPD") is a county department duly organized and existing under and by virtue of the laws of the City of Buffalo, County of Erie and State of New York.

8. That at all times hereinafter mentioned Defendant BPD was responsible for the policies, practices and customs of BPD and its officers.

9. That at all times hereinafter mentioned Defendant BPD was responsible for the hiring, training, supervision, retention, control and discipline of police officers and/or detectives within the office of the BPD, including specifically its investigators, officers and employees.

10. That at all times hereinafter mentioned Defendants BPD and CITY OF BUFFALO (hereinafter "BUFFALO) was the employer, supervisor and/or authority over the individual defendants, WAGSTAFF, GUGLIUZZA, VAUGHHN, STAMBACH and BPD DOES 1-12 , and through the authority vested in the BPD and BUFFALO, said individual Defendants were authorized to act under the color of law.

11. That at all times hereinafter mentioned Defendants BPD and BUFFALO were responsible for ensuring that all officers within the BPD acted lawfully; followed constitutional due

3

process safeguards; implemented and adhered to customs, practices and policies consistent with the pursuit of justice and presumption of innocence; and guaranteed all the rights and liberties provided for by the Constitution of the State of New York and the United States.

12. Defendant's WAGSTAFF, GUGLIUZZA, VAUGHHN, STAMBACH and BPD DOES 1-12 were hired, employed and acting on behalf of the BPD at all times herein and were acting in such capacity as an authorized officer and/or detective of the BPD, under color of law.

13. The defendants, WAGSTAFF, GUGLIUZZA, VAUGHHN, STAMBACH and BPD DOES 1-12 were at all times relevant to this complaint duly appointed to lawfully enforce the laws of the State of New York and through the BPD having taken an oath to uphold the laws of the State of New York and the United States, thereby acting under color of law.

14. At all times relevant hereto and in all of their actions described herein, each defendant was acting under the color of law, county authority, state authority, statute, custom, practice or usage, and pursuant to their official capacity.

15. At all times relevant hereto and in all of their actions described herein, each defendant was acting intentionally and/or with reckless disregard and/or deliberate indifference and/or negligently.

16. This claim is brought on behalf of JOSUE ORTIZ for violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure to his person; deprivation of due process; for the loss in his liberty; for the physical, emotional and mental suffering all arising from his unjust and wrongful investigation, interrogation, arrest, conviction and imprisonment for crimes he did not commit.

4

## BACKGROUND AND FACTUAL ALLEGATIONS

17. On November 16, 2004, JOSUE was taken into police custody, subjected to custodial interrogation, arrest and incarceration through the actions, authority and power of the Defendant's through color of law. Based upon the actions of the defendants JOSUE continued to be incarcerated until his release on December 8, 2014.

18. The wrongful arrest, conviction, or incarceration of JOSUE was the direct result of the intentional, reckless disregard and deliberate indifference of Defendants who obtained a coerced, manipulated and false confession from a man whom they knew was suffering from obvious psychiatric illness and who had a history of serious mental health problems at the time of his interrogation and alleged confession; concealed, withheld and failed to investigate exculpatory and inconsistent evidence related to the commission of this crime; detained and arrested JOSUE without regard to the witness identifications, inconsistencies in statements with the physical and forensic evidence; coerced and manipulated a known "jail house informant" to provide testimony reasonably known to be false; failing to properly investigate the commission of this crime and instead framing JOSUE, a mentally compromised individual, for a crime he did not commit. Defendant's failed in any meaningful way to consider JOSUE's significant cognitive impairment, bi-polar disorder and schizophrenia which contributed to a diminished and distorted capacity to comprehend everyday events and thereby allowed defendants to deny and violate his constitutional rights.

19. Rather than properly investigate the case the defendants choose to remove or omit pieces of evidence that did not fit into their theory and to submit for prosecution a case known to have serious questions of credibility and trustworthiness, all contrary to the pursuit of justice. Defendants knowingly

5

relied on false and inconsistent identification evidence and intentionally failed or refused to turn over to the Erie County District Attorney's Office exculpatory and constitutionally mandated material from the investigation that makes clear the innocence of the JOSUE. Disregarding JOSUE's psychiatric disorders and obvious psychotic break from reality at the time of the investigation and interrogation, along with ignoring the substantial evidence of his innocence the Defendants obtained and relied upon a manufactured, coerced and patently false confession from JOSUE

20. At the time of JOSUE's detention, interrogation, arrest, indictment, prosecution, conviction and imprisonment there were significant inconsistencies between the purported "confession" and the objective physical evidence and initial witness descriptions of the perpetrators of the crime that should have caused these Defendants to reject, prevent and question the integrity of the criminal case against JOSUE, but instead these Defendants removed, hid or altered the inconsistent investigation material which was clearly "Brady" material and failed, refused and denied turning over the exculpatory information or evidence to criminal defense attorneys representing JOSUE.

21. On December 6, 2004, an Erie County Grand Jury indicted JOSUE on two (2) counts of Murder in the First Degree in violation of New York Penal Law §125.27(1)(a)(viii); two (2) counts of Murder in the First Degree in violation of New York Penal Law §124.27(1)(a)(vii); two (2) counts of Murder in the Second Degree in violation of New York Penal Law §125.25(1), 20.00; two (2) counts of Murder in the Second Degree in violation of New York Penal Law §125.25(3); and one (1) count of Burglary in the First Degree, an Armed Felony in violation of New York State Penal Law §140.30(1), 20.00. These charges involved crimes committed against two different male victims in the City of Buffalo, New York on November 11, 2004.

22. As a result of his Indictment JOSUE was facing a sentence of life in prison if convicted. Given his emotional and mental condition he could not cope with the idea of being behind bars the rest

6

of his life. On May 22, 2006, the Honorable Michael L. D'Amico, J.S.C., accepted Claimant's conviction of two counts of manslaughter in the 1st degree.

23. Thereafter, on June 16, 2006, JOSUE was sentenced to an indefinite term of twenty-five (25) years of imprisonment with five (5) years of post-release supervision, and was directed to the custody of the New York State Department of Corrections.

24. Thereafter and following an investigation, by the United States Attorney's Office, Federal Bureau of Investigations and the New York State Police into the 10th Street and 7th Street gangs, along with examination of witness statements, physical evidence, likelihood of false confession and DNA evidence surrounding JOSUE's conviction for the killings of the Camacho brothers, law enforcement officials determined that three different individuals (exclusive of JOSUE) were responsible for the underlying crime.

25. On November 16, 2012, U.S. Attorney for the Western District of New York, William J. Hochul, Jr., as well as Assistant U.S. Attorney, Joseph M. Tripi announced that a three count superseding indictment was returned by a Federal Grand Jury on November 8 2012 charging Efrain Hidalgo, Brandon Jonas and Misael Montalvo, with two counts of discharging a firearm causing death in furtherance of drug trafficking and violent crime for the murders of Nelson and Miguel Camacho, the same individuals JOSUE was convicted of killing. On November 9, 2012 the Federal District Court signed an Order authorizing release of the Federal Grand jury minutes to the Erie County District Attorney's Office.

26. Assistant U.S. Attorney, Joseph M. Tripi announced that based upon the independent investigation of Federal law enforcement officers JOSUE has "zero role in this offense" and requested that the Erie County District Attorney's Office would release JOSUE without further litigation or proceedings. Notwithstanding the foregoing, JOSUE remained in the custody of the New York State

7

Department of Corrections due to defendant's intentional, reckless disregard and/or indifference to the rights of the Plaintiff herein.

27. Shortly after the indictment against the above-mentioned individuals was returned, the U.S. Attorney's Office announced JOSUE's innocence publicly and in Federal Court. Assistant U.S. Attorney, Joseph Tripi stated that the evidence provided to the District Attorney's Office, specifically defendant SEDITA, clearly establishes JOSUE's innocence.

28. The evidence provided to SEDITA, then District Attorney, was clear and unequivocal that JOSUE was innocent of the crimes he was convicted of, yet JOSUE still remained in custody due to the intentional, reckless disregard and/or indifference to his liberty and constitutional rights by Defendants herein through their failure to admit the error, falsity or impropriety of their criminal investigation and admit that they had wrongfully arrested and imprisoned a man who was innocent.

29. Notwithstanding the receipt of information from United States law enforcement officials which exonerated JOSUE the Defendants continued to stubbornly insist in the propriety of the criminal investigation leading to his wrongful arrest and incarceration, and would not agree to his release from custody.

30. JOSUE's moved to vacate his conviction based on newly discovered evidence, conflicts in identification and physical evidence, likelihood of false confession, DNA evidence which excludes JOSUE from the crime and proves his actual innocence. The motion was based on the contention that the Claimant's guilty plea was based upon a false, manipulated and coerced confession procured by the Defendants when JOSUE was suffering from a severe psychotic break from reality, including schizophrenia, exacerbated by sleep deprivation, drug use and a limited command of the English language.

8

31. Furthermore, evidence was discovered, that was not turned over to the Claimant, or his attorney's, at the time of the Claimant's alleged confession, indictment, conviction and/or sentencing.

32. Notwithstanding the clear and convincing evidence of JOSUE's wrongful conviction and incarceration, Defendants herein continued to oppose the motion to vacate his conviction, ignoring the proof provided by other law enforcement officials and agencies, the evidence of inconsistent and doubtful proof supporting JOSUE's conviction and ignoring the overwhelming evidence that unequivocally established guilt of Efrain Hidalgo, Brandon Jonas and Misael Montalvo in the murders of the Camacho brothers.

33. JOSUE continued to be incarcerated from November 16, 2012 to December 8, 2014 due to Defendants actions and/or inactions including an unwillingness to accept federal law enforcement investigation results and the federal indictment of the individuals responsible for the crimes at issue, along with overwhelming inconsistencies in the evidence and clear violations of the constitutional rights in the criminal prosecution of JOSUE.

34. the Honorable Thomas J. Francyzk Ordered a hearing to determine whether by clear and convincing evidence the Claimant should have his conviction for the murders of the Camacho brothers vacated.

35. JOSUE continued to be incarcerated during this time, rather than released on his own recognizance pending the hearing based on defendants continue intentional actions to obstruct justice.

36. At numerous hearing dates for the Motion to Vacate JOSUE's conviction, Defendants herein failed to appear as witnesses and continued to support opposition to JOSUE's innocence which required that proceedings be delayed and re-scheduled. While presenting no evidence to rebut JOSUE's innocence, the Defendant's continued their opposition and delays, while JOSUE continued to be wrongfully imprisoned.

9

37. On December 8, 2014, for the first time the Erie County District Attorney conceded the innocence of the Plaintiff, allowing for the conviction entered on June 16, 2006 to be vacated, thereafter the Claimant was released from prison on his own recognizance pending dismissal of the underlying indictment.

38. Thereafter, the Claimant brought a Motion to Dismiss the underlying Indictment for murder. On January 20, 2015, the 2004 indictment in The People v. Josue Ortiz, indictment number 02630-2004 in the New York State Court was dismissed. The Order was officially filed and entered on May 8, 2015.

39. The dismissal of the indictment was based on the actual innocence of JOSUE, as well as the history, character and condition of the defendant and spurious and improper criminal proceedings leading to his false conviction and wrongful incarceration.

40. The claims made herein are for violation of the constitutional rights, protections and safeguards afforded to all United States citizens, and specifically the Plaintiff herein. The Defendants herein violated Plaintiff's Fourth and Fourteenth Amendments to the United States Constitution, through applicability of 42 U.S.C. § 1983 and all Judicial rulings and/or decisions applicable thereto.

41. Plaintiff claims that individual Defendant's and the BPD violated his constitutional rights under color of law. Despite knowledge of improper, dishonest and/or illegal policies, patterns, practices and customs, the supervisory and policy making officers have not been effectively disciplined, trained or otherwise failed to properly supervise the individuals who engaged in and furthered these policies, patterns, practices and customs; have not effectively trained the defendants with regard to the proper constitutional and statutory limits of the exercise of their authority; and have endorsed the policies, patterns, practices and customs thereby affirming and endorsing the actions.

42. Prior to and during the criminal investigation, prosecution and imprisonment of Plaintiff the Defendant's maintained policies or customs exhibiting deliberate indifference to the constitutional rights of citizens which caused violation of their constitutional rights, specifically the plaintiff herein. The supervisory and policy making officers at all times herein relevant, and prior, took no effective action to ensure that detainees, persons of interest and/or subjects with mental, emotional and/or cognitive illnesses and/or impairments were treated with recognition of the likelihood that these conditions could lead to a false, coerced and/or manipulated confession; in instances as demonstrated herein these officers in fact took advantage of such illness and/or impairment in order to ostensibly solve a crime, "clear the case" or to give the appearance of successful criminal investigation; these same officers failed to have any resources available to law enforcement personal to educate, train and assist during involvement with persons of mental and psychiatric illness and/or impairment to ensure the truthfulness, reliability and veracity of statements, factual assertions, incriminating comments or confessions all creating a culture wherein persons with mental and/or psychiatric illness or impairment were subjected to unreasonable, manipulative, coercive and unlawful interrogation, detention, arrest, prosecution and conviction in violation of constitutional protections.

43. Prior to and during the criminal investigation, prosecution and conviction of Plaintiff it was the policy or custom of the BPD to endorse, authorize and enforce unconstitutional methods, investigations, arrests, identifications, evidence disclosure and all other procedures related to the Constitutional rights of citizens, including the Plaintiff herein. Defendants herein were aware of inconsistent, exculpatory and contrary identification testimony related to the perpetrators of this crime, notwithstanding the defendants herein, including supervisory and policy-making officers, endorsed and followed improper, dishonest and illegal policies, patterns, practices and customs wherein such information was not provided to the Defendant, or his counsel, in compliance with constitutional

11

requirements and legal precedent; where the effect of the inconsistent evidence was to weaken the criminal case it was buried, not disclosed or removed from the file in violation of constitutional protections and requirements; and where the defendants acted in a manner, inconsistent with their oath and the administration of justice, to procure at all costs an ostensible conviction even where there were significant facts contradicting the proof of guilt.

44. Prior to and during the criminal investigation, prosecution and conviction of Plaintiff it was the policy or custom of the BPD to inadequately and improperly investigate citizen complaints of the BPD, including attorney's, investigators, and agents of the BPD, and instead acts of misconduct and constitutional violations were tolerated and condoned.

45. Prior to and during the criminal investigation, prosecution and conviction of Plaintiff it was the policy or custom of the BPD to inadequately train, educate and/or supervise its employee's, including individual defendants herein, and thereby allowed a policy or custom of learning on the job through improper, undocumented and unconstitutional methods exhibiting an intentional and/or reckless indifference and/or intentional disregard to the liberties and constitutional rights of United States citizens, specifically the Plaintiff herein.

46. Prior to and during the criminal investigation, prosecution and conviction of Plaintiff it was the policy or custom of the BPD to condone and support the obstruction, deliberate removal or failure of disclosure of exculpatory information related to the criminal investigation of United States citizens, including the Plaintiff herein.

47. During the criminal prosecution and conviction of Plaintiff the BPD, specifically through individual defendants herein, failed to provide exculpatory and/or "Brady material" to counsel for Plaintiff (then a criminal defendant), after the same was demanded, in contradiction of required constitutional rights of an accused.

12

48. In failing to provide exculpatory and/or "Brady material" to counsel for Plaintiff, during the criminal prosecution, conviction and imprisonment of Plaintiff, the Defendants intentionally violated the constitutional rights of the Plaintiff herein.

49. Defendant's BPD, through individual defendants herein, acted in reckless disregard and/or intentional indifference to the constitutional rights of the Plaintiff (then a criminal defendant) in prioritizing a conviction over protection of the constitutional rights of the Plaintiff herein. The false arrest, conviction and incarceration of the Plaintiff was a direct product of the actions and/ or inactions of the Defendant's herein.

50. The BPD also violated the constitutional rights of the Plaintiff herein through a policy, custom and/or directive that a convicted person was not provided constitutional rights even after his conviction and incarceration was reasonably known and proven to be wrongful and unjust. Defendant's maintained policies or customs exhibiting intentional, deliberate indifference and/or reckless disregard to the constitutional rights of the plaintiff herein. The supervisory and policy making officers at all times herein relevant, and prior, took no effective action to release from prison a man known to be innocent and rather chose to stubbornly reject information and evidence offered by the United States Attorney General's office and the Federal Bureau of Investigation while the plaintiff suffered in prison.

51. The Defendants herein failed and refused to accept the proof, evidence and prosecutorial decisions of the United States Attorney General's Office and/or the Federal Bureau of Investigation which demonstrated that the crimes Plaintiff was wrongfully convicted and incarcerated for were in fact committed by individuals other than Plaintiff herein.

52. Defendant's herein intentionally violated the constitutional rights of the Plaintiff through a custom or policy that stubbornly, exclusively and wrongfully rejected any implication of wrongful conviction and/or incarceration of the Plaintiff herein. Due to the reckless disregard, intentional

indifference and/or the outright intentional actions of the defendants an innocent man was caused to be incarcerated when there was overwhelming proof of his innocence in violation of the Fourth and Fourteenth Amendments of the United States constitution and New York State constitutional provisions.

53. Defendant's herein were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things failing to investigate all leads, investigate all potential perpetrators of the crime, properly follow-up and question identification and fact witnesses, process and incorporate physical and/or forensic evidence, failing to consider the mental and psychiatric conditions of JOSUE, coercing and manipulating JOSUE to sign a confession, failing to adequately train and supervise and in other ways rushing to judgment without regard to the possibility of false accusation, arrest, detainment, conviction or imprisonment of an innocent man.

54. The willful and intentional actions of the defendants herein constitute outrageous conduct insofar as they were intended to cause JOSUE to be imprisoned for over ten (10) years, without regard to his mental and psychiatric condition, with a likelihood of causing JOSUE extreme and unnecessary emotional distress.

## CLAIMS FOR RELIEF

55. As a result of his unjust conviction, JOSUE has been wrongfully imprisoned for 10 years and twenty-two (22) days his life. Further, he has lived with the stigma and humiliation of being looked upon by others as a murderer from the time of his conviction, to the time of his exoneration, and beyond.

56. The injuries and damages sustained by JOSUE arising from his unjust conviction and imprisonment include, but are not limited to the following: personal injuries; pain and suffering; severe mental anguish; emotional distress; activation, precipitation and aggravation of posttraumatic stress disorder; loss of income; humiliation, indignities and embarrassment; degradation, including the day to day indignities, embarrassment and degradation of prison life, and life as a convicted murderer; injury to reputation; permanent loss of natural psychological development; subjection to physical and verbal attacks; abuse and harassment; restrictions on all forms of personal freedom, including, but not limited to, daily loss of freedom in movement from place to place, the loss of choice and opportunity with respect to diet, sleep, personal and social contact, as well as the loss of educational opportunity, vocational opportunity, adequate medical and/or psychiatric and/or psychological care by physicians and/or other medical personnel of his own choosing, athletic opportunity, personal fulfillment, sexual activity, family relationships, socializing, reading, television, movies, travel, enjoyment and expression. As a direct result of his unjust conviction and imprisonment and loss of freedom, JOSUE will require ongoing medical and/or psychiatric and related treatment, therapy, rehabilitation and care into the indefinite future. He has been caused to suffer from and continues to suffer from posttraumatic stress disorder, nightmares and insomnia, anxiety, panic attacks, depressive disorder, sleep disturbance, nightmares and dysthymia.

57. As a result of his incarceration, JOSUE was effectively sealed off from his family and friends. The only contact he had over ten (10) years was through limited supervised telephone calls and letters which took place under the stricture of prison life. On those occasions when he had visitors, as well as numerous other occasions, he was subjected to the indignity and embarrassment of being strip searched.

58. In addition to being sealed off from his friends and family, while in prison, JOSUE, was, in effect, also sealed off from establishing new and meaningful relationships with others. As a result of the effects of his unjust conviction and incarceration, it is not likely he will ever have the ability to do so in the future.

59. Not only was JOSUE caused to suffer the daily rigors, degradation, humiliation, abuse and loss of freedom, while in prison, he was also deprived of being able to do the simple things that most people take for granted such as driving, shopping, visiting friends and relatives, developing romantic relationships, turning on a television to watch a favorite show, taking a walk or even stopping at a restaurant for a cup of coffee.

60. Since JOSUE's release he has been making many attempts to find employment, but as soon as he disclosed his past to prospective employers the position would become unavailable. JOSUE's attempts at employment have resulted in rejection after rejection. He has been forced to rely on social services for his basic support and necessities. His ability to obtain meaningful employment in the future is basically nonexistent and it is unlikely that JOSUE will ever be employed.

61. JOSUE can never regain the more than ten years if his life during which he was wrongfully incarcerated by the State of New York. At a minimum, he deserves some measure of compensation for the time he was robbed of and the damages he has suffered and continues to suffer as a result.

62. After his conviction, JOSUE was confined to numerous correctional facilities throughout New York State. During this period he suffered profoundly as a victim of the unjust and erroneous application of the Criminal Justice System of New York State. JOSUE had numerous family members pass away, and was unable to attend their funerals, or even be aware of when they passed away. In

16

particular, JOSUE's grandmother passed away in 2009, and JOSUE was not told of her passing until 2012. JOSUE lives with the shame of his grandmother passing, while thinking he was a murderer.

63. JOSUE was physically attacked by other in-mates, one such occurrence resulted in JOSUE being stabbed in the face. Furthermore, because of his severe mental state, he was subject to horrific emotional abuse by the correctional officers, including throwing cold water on him and taking away his mattress and bedding for periods of time. Moreover, JOSUE was not only subject to physical abuse by other inmates but by correctional officers within the New York State Department of Corrections. Further, because of the abuse and mental state JOSUE was in, he attempted to take his own life in 2005 by attempting to hang himself with a sheet. Throughout his incarceration, JOSUE lived in constant fear of being sexually assaulted, beaten, stabbed, burned or killed. He feared for his physical safety, indeed for his life.

64. JOSUE can never regain the more than ten years if his life during which he was wrongfully incarcerated by the State of New York. At a minimum, he deserves some measure of compensation for the time he was robbed of and the damages he has suffered and continues to suffer as a result.

65. As a result of his unjust conviction and imprisonment, it was the perception of the community, the Department of Correction employees and other persons that JOSUE was a guilty of murdering two people assassination style. As a result he was treated as a violent criminal by prison personnel. His condition was further aggravated in that his sense of reality was totally turned inside out.

66. Due to JOSUE's unjust conviction and incarceration, his sense of reality, his self-confidence, his day to day living skills, his social skills, his trust in others, his trust in his own perceptions were severely affected, eroded and/or destroyed. He now feels helpless to control his life

17

and has little hope for the future. It is unlikely that he will ever be able to live and manage his life independently.

67. In addition to the pain and suffering sustained by JOSUE, he will require future comprehensive psychiatric evaluations and treatment, medications, therapy and rehabilitation, including psychological counseling, case management services and supervised community residential services.

68. Had JOSUE not suffered from his wrongful conviction and incarceration, he would have had available to him the opportunity to be gainfully employed. As stated above, he is now virtually unemployable. As a result of his incarceration he has lost the past and future opportunity for employment and the economic value thereof.

69. The within Claim qualifies for "docket priority" as provided for in §8-b.2 of the New York State Court of Claims Act.

**WHEREFORE**, Plaintiff, JOSUE ORTIZ, prays for judgment against all Defendants, and each of them, as follows:

1. For general damages against the City of Buffalo and Buffalo Police Department, inclusive of individual Defendants, jointly and severally, in an amount to be proven at trial;

2. For special damages against the City of Buffalo and Buffalo Police Department, inclusive of individual Defendants, jointly and severally, in an amount to be proven at trial;

3. For punitive and exemplary damages against the City of Buffalo and Buffalo Police Department, inclusive of all defendants, jointly and severally, in an amount to be proven at trial;

4.  For reasonable costs, expenses, and attorney fees pursuant to 42 U.S.C. §1988 and any other applicable law;

5.  For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on any and all issues triable by a jury.

DATED:  April 22, 2016
        Williamsville, NY

**LAW OFFICES OF
WAYNE C. FELLE, P.C.**

_____
**WAYNE C. FELLE, ESQ.**
*Attorney for Plaintiff*
6024 Main Street
Williamsville, NY 14221
Tel. No. (716) 505-2700