UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

VALENTINO DIXON,

               Plaintiff,

    v.

CITY OF BUFFALO, et al.,

               Defendants.

───────────────────────────────

Civil Action No. 19-cv-01678

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>DEFENDANTS COUNTY OF ERIE AND CHRISTOPHER BELLING'S</u><br><u>CROSS MOTION</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION..................................................................... .............  1

II.     RELEVANT FACTS............................................................. ................  3

III.    ARGUMENT.......................................................................... ............. 7

        A.      THE COURT SHOULD BIFURCATE DISCOVERY.............. .........  7

                I.      THE IMPORTANCE OF EFFICIENCY AND THE SPEEDY
                        RESOLUTION OF CLAIMS..........................................................  8

                II.     THE LIKELIHOOD OF PREJUDICE  .......................................13

        B.      THE COURT SHOULD LIMIT DISCOVERY BECAUSE THE
                MATERIALS SOUGHT ARE NOT
                RELEVANT....................................... .............................................  14

CONCLUSION....................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

Cases

*Amato v. City of Saratoga Springs,*
   170 F.3d 311,316 (2d Cir. 1999 .............................................................. 9

*Askins v. Doe,*
   727 F.3d 248, 253 (2d Cir. 2013) ............................................................ 9

*Bellamy v. City of New York,*
   914 F.3d 727 (2d Cir. 2019) ............................................................... 9, 16

*Bolden v. Cnty. of Sullivan,*
   523 F. App'x 832, 834 (2d Cir. 2013)). ................................................... 9

*Busch v. City of New York,*
   00 CV 5211 (SJ), 2002 U.S. Dist. LEXIS 18337 at *9-10 (E.D.N.Y.
   Sept. 9, 2002 ......................................................................................... 9

*Connick v. Thompson,*
   131 S. Ct. 1350, 1361 (2011) ............................................................... 11

*Fisher,*
   1992 U.S. Dist. LEXIS 3436 at *6......................................................... 13

*Ismail v. Cohen,*
   706 F. Supp. 243,251 (S.D.N.Y.1989) .............................................. 8, 13

*Jett v. Dallas Ind. Sch. Dist.,*
   491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ................ 16

*Jones v. City of New York,*
   2013 U.S. Dist. LEXIS 179265 (E.D.N.Y. Dec. 20, 2013)...................... 13

*Masi v. City of New York,*
   98 Civ. 6802 (MBM), 1999 U.S. Dist. LEXIS 13488 at *1-
   2 (S.D.N.Y. Sept. 2, 1999)). .................................................................. 9

*Monell v. Dep't of Soc. Srvcs.,*
   436 U.S. 658, 694-95 (1978) .................................................................. 8

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S.340, 350-54 (1978) ................................................................ 15

*Ortiz v. Case, et.al.,*
    16-cv-00322- (W.D.N.Y. 2019) ............................................................. 5

*Outlaw v. Hartford,*
    884 F.3d 351, 372–73 (2d Cir. 2018) ................................................. 15

*Peo. v. Dixon,*
    214 A.D.2d 1010, 1012 (4th Dep't 1995) ........................................... 3

*Rankel v. Town of Somers,*
    11-CV-6617 (CS), 2014 U.S. Dist. LEXIS 24815, at *57 (S.D.N.Y.
    Feb. 25, 2014)........................................................................................ 9

*Ricciuti v. New York City Trans. Auth.,*
    796 F. Supp 84 86 (S.D.N.Y. 1992) ................................................. 8, 13

*Roth v. Jennings,*
    03-CV-7760 (DAB), 2006 U.S. Dist. LEXIS 4266 at *19 (S.D.N.Y.
    Feb. 2, 2006).......................................................................................... 10

*Segal v. City of New York,*
    459 F.3d 207, 219 (2d Cir. 2006) ........................................................ 9

*Tabor v. New York City,*
    11 CV 0195 (FB)(CLP), 2012 U.S. Dist. LEXIS 29004, at *33-
    35  (E.D.N.Y. Feb. 23, 2012)................................................................ 14

*Vallejo v. Amgen, Inc.,*
    903 F.3d 733, 742-43 (8th Cir. 2018) ................................................. 15

*Van de Kamp v. Goldstein,*
    555 U.S. 335 (2009) ............................................................................. 13

*Vichare v. AMBAC, Inc.,*
    I06 F.3d 457, 466 (2d Cir. 1996) ......................................................... 8

*West v. City of New York,*
    1996 U.S. Dist. LEXIS 6239 at *16 (S.D.N.Y. May 8, 1996).............. 8

*Williams v. City of New York,* 07-CV-5362 (NG)(VVP), 2008 U.S. Dist.
    LEXIS 104730, at *8 (E.D.N.Y. Dec. 29, 2008) .................................. 9

**Statutes**

Civil Rights Law § 50-b ........................................................................... 11

CPL §440.10 ............................................................................................ 4

Fed. R. Civ. P. 26(b)(1) ........................................................................... 6

Fed. R. Civ. P. 42(b) ............................................................................... 8

New York Crim. Proc. Law § 160.50 ....................................................... 11

New York Crim. Proc. Law § 160.55 ....................................................... 11

I.     **Introduction**

As the Court knows, Mr. Dixon was convicted of murder in 1991 after a jury trial.  He exhausted his appellate rights and collaterally attacked his conviction on several occasions.  Each time, the conviction was upheld.  Part of his conviction was later overturned based solely upon newly discovered evidence obtained in connection with a 2018 reinvestigation.   Other parts of his conviction were undisturbed.

Mr. Dixon's conviction, incarceration and release are sensational.  But that is not what this case is about.  Indeed, this case is not about whether Mr. Dixon was or was not guilty of murder or any other crime.  This case is about whether Mr. Dixon was subject to unconstitutional conduct and/or deprived constitutional rights in the investigation and prosecution that led to his conviction.

Plaintiff's claim against the defendant County of Erie consists of a *Monell* claim that the Erie County District Attorney's Office (ECDA), as the policymaker for the County of Erie, at the time of the investigation and prosecution, maintained a policy, custom, or pattern or practice of facilitating or condoning improper, illegal and unconstitutional investigative techniques in serious felony investigations. [See Dkt. # 1 ¶¶261-264]

Plaintiff's claims against the defendant Christopher Belling, as are relevant to the instant application, rest upon allegations of prosecutorial misconduct that violated Plaintiff's constitutional rights. [See Dkt. # 1 ¶¶ 224-226, 237, 238, 244]

As is more fully set forth below, Plaintiff's *Monell* claims against the County of Erie are entirely dependent on proof that his constitutional rights were violated by defendant Belling. If, as is expected, it is established through dispositive motion practice, that Mr. Belling is not liable for violation of Plaintiff's constitutional rights, there can be no *Monell* claim against the County as a matter of law.

As is relevant to the County Defendants, Plaintiff seeks to compel discovery of a number of unrelated civil actions which, Plaintiff alleges, may demonstrate unconstitutional customs and practices at issue in this case. In support of its application seeking disclosure, Plaintiff alleges wrongdoing on the part of ECDA in only one of the five cases upon which he is seeking disclosure. The cases are from varying time frames and, in large part, encompass facts different than Mr. Dixon's case.

For the reasons set forth below, Plaintiff's Motion to Compel (Dkt. # 52) should be denied without prejudice to renew in the event he is able to establish liability for a constitutional violation. Instead, this Court should grant the County Defendants' Cross Moton to bifurcate discovery in this matter so that discovery on Plaintiff's *Monell* claims occurs after dispositive motion practice.[1]

---

[1] In Plaintiff's motion to compel, Plaintiff also suggests that Defendants should be compelled to disclose "shared lists of targets" evidencing selective prosecution of Mr. Dixon. As Defendants noted in response to Plaintiff's Request for Production#11, Defendants are not in possession of and are not aware of any such lists or documents. To Defendants' knowledge, the requested materials do not exist.

## II.     Relevant Facts

Before the action that resulted in Mr. Dixon's release, he made the same challenges in three prior court proceedings, each of which affirmed his conviction and rejected these claims.

Initially, Mr. Dixon challenged the jury's verdict at the Appellate Division, Fourth Department.  The Fourth Department affirmed the conviction finding that: "Three eyewitnesses positively identified defendant as the shooter. In addition, those witnesses testified that they knew defendant or had seen him on a number of prior occasions. The contention that defendant was misidentified as the shooter was rejected by the jury and its verdict is not against the weight of the credible evidence. The trial court's instructions to the jury on the issue of identification were sufficient to enable the jury to apply the correct rules of law." *Peo. v. Dixon*, 214 A.D.2d 1010, 1012 (4th Dep't 1995)(internal citations omitted).

In 2003, Plaintiff moved the trial court to vacate his conviction based upon ineffective assistance of counsel, the discovery of new evidence and prosecutorial misconduct. *See* Decision of Hon. Michael L. D'Amico dated August 30, 2004 attached as Exhibit 1 to the Declaration of Eric M. Soehnlein. In that detailed decision, the trial court addressed many of the claims contained in the instant complaint and rejected each of them.

Later, Plaintiff collaterally attacked the verdict, filing a petition for habeas corpus in the Western District of New York that resulted in another detailed decision

by Magistrate Bianchini, dated January 7, 2009. Again, Mr. Dixon's claims were rejected, including claims of prosecutorial misconduct. Exhibit 2 to Declaration of Eric M. Soehnlein.

Further, on May 28, 2018, Mr. Dixon filed another CPL §440.10 motion alleging that his conviction should be vacated based upon newly discovered evidence and an alleged failure of the ECDA and its agents to disclose negative results of gun residue testing of Dixon's clothing from the night of the shooting. Upon receipt of the 2018 motion, the ECDA conducted an investigation and determined that, based upon newly discovered evidence, part of Mr. Dixon's conviction should be vacated. The ECDA's investigation conclusively established that there was no failure to disclose gun residue testing of Dixon's clothing because such testing was never done and therefore, it did not provide a basis for vacating the conviction. Mr. Dixon's weapons conviction was not vacated. Indeed, Mr. Dixon specifically withdrew his application to vacate the weapons charge and did not object to the ECDA determination that no exculpatory evidence had been withheld by the prosecution.

In this action, Mr. Dixon seeks to further litigate claims of prosecutorial impropriety in a new forum. In pertinent part, the complaint alleges that in 1991, the ECDA had policies, practices and customs of: failing to discipline prosecutorial misconduct; ignoring and accepting police misconduct; failing to prosecute police misconduct; encouraging and participating in the fabrication of evidence for select individuals the office allegedly wanted off the street; seeking to destroy exculpatory evidence by threatening witnesses; directing and controlling the Buffalo Police

Department's (BPD) serious felony investigations; and by threatening witness tampering charges against criminal defense attorneys who sought to interview prosecution witnesses. (Dkt. # 52-1 at 6).

To bolster the claim, Plaintiff seeks documents about unrelated criminal cases:

- Anthony Capozzi, who, Plaintiff alleges, was wrongfully convicted of rape in 1987 (when a different District Attorney held office) due to "BPD misconduct" and "possible false confessions orchestrated by BPD" (Dkt. # 52-1 at 6);

- Lynn DeJac, who was convicted of killing her daughter in 1994 and later exonerated by DNA evidence. Plaintiff alleges the wrongful conviction was the result of BPD defendants fabricating incriminating evidence and suppressing exculpatory evidence (id.);

- Cory Epps, who was wrongfully convicted of murder in 1997, also when a different District Attorney held office. Plaintiff alleges the BPD suppressed exculpatory evidence and fabricated evidence in that prosecution (id.);

- Josue Ortiz, who in 2004 was convicted of two murders he did not commit, also when a different District Attorney held office. In that case, Plaintiff alleges the BPD elicited a false confession and suppressed evidence contrary to the false confession (id.)[2];

- Louis Eze, Joy Wosu and Emeke Okongwu, who were wrongfully convicted of sexually assaulting Mr. Okongwu's daughters in 1994. Plaintiff alleges ECDA prosecutors coached them to provide false testimony.

---

[2] Like Mr. Dixon, following his release Mr. Ortiz filed a *Monell* action against Erie County alleging unconstitutional customs and practices on the part of ECDA in connection with his prosecution and conviction. That case was dismissed in its entirety on a motion for summary judgment. *See Ortiz v. Case, et.al.,* 16-cv-00322- (W.D.N.Y. 2019) (Dkt. # 66).

On its face, Plaintiff alleges wrongdoing on the part of the ECDA prosecutors or agents in only one of the five cases requested.  Moreover, only two of the cases occurred during the time period of Mr. Dixon's prosecution and conviction.

More problematically, Plaintiffs requests go beyond the scope of Rule 26 disclosure, requesting "all documents" relating to the above cases in the custody and control of the County of Erie. (Exhibit 1).[3] Like this case, the above matters were also litigated in subsequent civil matters that were handled by the Erie County Attorney's Office.  To the extent the requests seek documents in the possession of the County Attorney, those materials are protected by the attorney-client privilege and the request should be denied.

Discovery in this case is in the initial stages.  The parties have exchanged initial disclosures and document production.  No deposition testimony has occurred.  Indeed, the facts and circumstances of Mr. Dixon's investigation and prosecution have not been discovered.

More critically, the County Defendants believe they have meritorious defenses based on prosecutorial immunity and related legal doctrines they intend to raise in dispositive motion practice once all facts and circumstances of the investigation and prosecution of Mr. Dixon are brought to light.  Stated another way, defendants believe that, just as in the *Ortiz* case, this case will be dismissed on well-settled law.

---

[3] As the Court knows, the Federal Rules of Civil Procedure explicitly instruct that materials subject to the attorney-client and attorney-work product privilege not be disclosed in federal civil matters.  *See* F.R.C.P. 26(b)(1).

III.    Argument

    a.  The Court Should Bifurcate Discovery

In accord to well-established precedent, the Court should bifurcate discovery in the interests of judicial economy and expediency and stay discovery on Mr. Dixon's *Monell* claims until after dispositive motion practice.

Here, Plaintiff's municipal liability claims are precursors to extensive and potentially unnecessary discovery requests, and, in turn, discovery that defendants are likely to produce in support of their defenses in the event the case is not dismissed in dispositive motion practice. In addition to producing 30(b)(6) witnesses for depositions, if Mr. Dixon can demonstrate a colorable *Monell* claim as to his own case, defendants will also likely be tasked with reviewing and producing records from several other criminal cases handled by the ECDA in the years leading up to the prosecution of Mr. Dixon in order to establish that the ECDA had sufficient practices and protocols and did not engage in the systemic misconduct alleged in the Complaint.

Nonetheless, a far narrower scope of discovery on Plaintiff's own arrest and prosecution will likely lead to a dispositive summary judgment motion. Thus, the broader universe of *Monell* discovery will likely be wholly unnecessary.

Further, and as is set forth below, bifurcating this action for the purposes of discovery will foster the goals of convenience and efficiency and will conserve the time and resources of the Court and the parties. It will also avoid prejudice to the

individual defendants should the claims against them proceed to trial, as those claims are separate and apart from Plaintiff's municipal liability claims regarding the policies and practices of the ECDA. These are precisely the goals that bifurcation is intended to achieve. *See* Fed. R. Civ. P. 42(b); *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019); *Vichare v. AMBAC, Inc., 1*06 F.3d 457, 466 (2d Cir. 1996); *Ricciuti v. New York City Trans. Auth.,* 796 F. Supp 84 86 (S.D.N.Y. 1992). Indeed, if even one of these criteria is met, a court should bifurcate discovery. *Ricciuti,* 796 F. Supp. at 86; *West v. City of New York*, 1996 U.S. Dist. LEXIS 6239 at *16 (S.D.N.Y. May 8, 1996); *Ismail v. Cohen*, 706 F. Supp. 243,251 (S.D.N.Y.1989), aff d, 899 F.2d 183 (2d Cir. 1990).

Here, all of the Rule 42(b) criteria favor bifurcation. Bifurcation will expedite the resolution of the case. It will avoid potential prejudice to the individual defendants should the claims against them proceed to trial. No prejudice will result to Plaintiff, because if defendants do not meet their burden on summary judgment of proving that Plaintiff suffered no underlying constitutional violations committed by the ECDA during the course of Plaintiff's prosecution, Plaintiff may then be entitled to broader *Monell* discovery.

### i. The Importance of Efficiency and the Speedy Resolution of Claims

Plaintiff's municipal liability claims are dependent on proof that the alleged policies and practices were the moving force behind the violation of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Srvcs.*, 436 U.S. 658, 694-95 (1978). As the Second Circuit has held, "*Monell* does not provide a separate cause of action for

the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citations omitted). The same is true even where there are no individually named defendants in the case. *See Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013) ("It suffices to plead and prove against the municipality that municipal actors committed the tort against the Plaintiff and that the tort resulted from a policy or custom of the municipality. In fact, the Plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality."). Absent an underlying constitutional violation, a *Monell* claim cannot lie. *Rankel v. Town of Somers*, 11-CV-6617 (CS), 2014 U.S. Dist. LEXIS 24815, at *57 (S.D.N.Y. Feb. 25, 2014) (*citing Bolden v. Cnty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013)).

For this reason, among others, courts in the Second Circuit favor bifurcating *Monell* claims. *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019); *Williams v. City of New York*, 07-CV-5362 (NG)(VVP), 2008 U.S. Dist. LEXIS 104730, at *8 (E.D.N.Y. Dec. 29, 2008) (noting that bifurcation of civil rights trials is a common practice in this Circuit) (citing *Amato v. City of Saratoga Springs*, 170 F.3d 311,316 (2d Cir. 1999); *Busch v. City of New York*, 00 CV 5211 (SJ), 2002 U.S. Dist. LEXIS 18337 at *9-10 (E.D.N.Y. Sept. 9, 2002); *Masi v. City of New York*, 98 Civ. 6802 (MBM), 1999 U.S. Dist. LEXIS 13488 at *1-2 (S.D.N.Y. Sept. 2, 1999)).3 Furthermore, where Plaintiff's *Monell* allegations are themselves speculative,

9

discovery is not a proper mechanism to create support for tenuous claims. *See Roth v. Jennings*, 03-CV-7760 (DAB), 2006 U.S. Dist. LEXIS 4266 at *19 (S.D.N.Y. Feb. 2, 2006); vacated on other grounds, 489 F.3d 499 (2d Cir. 2007). In this case, considerations of efficiency and convenience weigh strongly in favor of bifurcating the *Monell* claims from the underlying constitutional violation issues for the purposes of discovery and summary judgment, and thus resolving certain of Plaintiff's claims before undertaking the burdensome and time-consuming task of discovery on Plaintiff's municipal liability claims

First, Plaintiff will likely seek to depose numerous individuals about information concerning the ECDA and its practices and policies that were in place at the time of Plaintiff's prosecution. As Plaintiff's prosecution took place in the 1990s, thirty years ago, this alone creates a unique burden, in that the persons who have the most knowledge of ECDA policies and practices during the relevant time period have likely retired.

Second, in order to defend against Plaintiff's allegation that the ECDA was deliberately indifferent in its alleged failures, defendants may need to review possibly hundreds of criminal cases tried in the years prior to Plaintiff's criminal trial. Indeed, in Plaintiff's Complaint, Plaintiff alleges that the misconduct at issue was widespread, pervasive and condoned. In order to defend against this municipal liability claim, defendants need to evaluate the unrelated cases referenced by Plaintiff in the context of each, larger, unrelated criminal prosecution, determine if there were any constitutional implications, and then review corresponding personnel

and other files for each of the non-party ADAs involved in said unrelated prosecutions.  Defendants' position is borne out by Plaintiff's document requests. This task alone would require an extraordinary expenditure of government resources, not only because of the age of the cases at issue and the slim likelihood that the those involved are still employed by the ECDA, but also because of the statutory and common law need to protect the privacy interests of non-party ADAs, criminal defendants whose charges may have since been sealed, and the witnesses and victims in those unrelated cases. The discovery on this claim alone likely implicates, *inter alia,* New York Crim. Proc. Law §§ 160.50, 160.55,  Civil Rights Law § 50-b, the attorney-client, work product, law enforcement and official information privileges. Defendants submit that Plaintiff should first conduct discovery on Plaintiff's own criminal prosecution, which defendants believe will lead to the clear conclusion that Plaintiff's prosecution and criminal trial did not violate his constitutional rights, thus entitling the County summary judgment on Plaintiff's municipal liability claim and rendering the discovery at issue in this motion moot.

Third, for the same reasons, *Monell* discovery on Plaintiff's claim that there existed, at the relevant time period, an ECDA policy to hide or obfuscate *Brady* material and other exculpatory materials, would require an extraordinary review of an unknown universe of criminal cases. Plaintiff will likely attempt to prove the existence of such a "policy" via a widespread practice or deliberate indifference to the need for training regarding note taking and *Brady* violations. The Supreme Court made clear in *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011) that *Brady* claims

simply do not "fall within the narrow range of *Canton's* hypothesized single-incident liability." The necessity for Plaintiff to develop evidence of a widespread practice or deliberate indifference, or for defendants to defend against this allegation, would be wholly obviated if Plaintiff cannot *first* prove that there was an underlying constitutional violation in his own prosecution.

In sum, all of the *Monell* discovery in this case will be superfluous if the Plaintiff fails to first establish that his constitutional rights were violated. The effect of bifurcation, as proposed herein, will be to greatly expedite the resolution of Plaintiff's claims - including his claims against the named individual defendants - and conserve resources until it is clear that it is necessary for the parties to expend resources for far broader discovery and a trial of the *Monell* claims.

Moreover, judicial economy would best be served by bifurcation. If *Monell* discovery is stayed, it will avoid the need for judicial intervention in what will doubtlessly prove to be ongoing issues regarding the appropriate scope of discovery, the application of various privileges, the relevance of certain witnesses, etc. If defendants move for summary judgment on the grounds that there is no dispute of fact concerning the constitutionality of Plaintiff's prosecution, as anticipated, discovery with respect to the *Monell* theories are not needed. For these reasons, the interests of convenience and economy favor bifurcation of Plaintiff's *Monell* claim and a stay of *Monell* discovery, except as it pertains directly to Plaintiff's own criminal prosecution.

## ii. The Likelihood of Prejudice

The great potential for prejudice to the named defendants also warrants bifurcation of discovery. Bifurcated discovery (and possibly separate trials) should be ordered where a danger exists that evidence admissible on one issue will cause prejudice by confusing jurors in considering liability on other issues. *Ricciuti*, 796 F. Supp. at 86; *Ismail*, 706 F. Supp. at 251 ("issues relating to conduct by the City or [the individual officers] will "contaminate" the mind of the finder of fact in its consideration of the liability of the other defendant); *Fisher*, 1992 U.S. Dist. LEXIS 3436 at *6 (same).

Here, the evidence of any alleged constitutional violations during the investigation and prosecution of Valentino Dixon is discrete, and the possibility that Plaintiff can prove an actionable underlying constitutional violation is exceedingly minimal, particularly in light of *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) (establishing that the training provided by a district attorney's office to its prosecutors concerning the proper disclosure of exculpatory or impeachment material is a prosecutorial function entitled to absolute prosecutorial immunity); and it's progeny, specifically, *Jones v. City of New York*, 2013 U.S. Dist. LEXIS 179265 (E.D.N.Y. Dec. 20, 2013) (holding that the defendant City cannot be liable for alleged deliberate indifference to the need for better training in the District Attorney's office). On the other hand, any evidence concerning the constitutionality of purported policies of the ECDA as they pertain to countless other prosecutions (necessary to prove

deliberate indifference) could require what amounts to retrials of criminal cases wholly unrelated to Plaintiff's prosecution.

Thus, if discovery is not bifurcated, there is risk of wasted resources, confusion and a potential for prejudice to the individual defendants. Given the risk of prejudice and the limited scope of discovery on the alleged underlying constitutional violations, discovery should be stayed on Plaintiff's *Monell* claims, except as they pertain to alleged constitutional violations in his own prosecution.

Defendants expect that Plaintiff will argue that defendants' fear of extensive *Monell* discovery may be unfounded.  But courts in this circuit have rejected similar arguments, and, more importantly, that it is within the Court's discretion to bifurcate discovery and address the bifurcation of trial subsequent to dispositive motion practice. *See Tabor v. New York City,* 11 CV 0195 (FB)(CLP), 2012 U.S. Dist. LEXIS 29004, at *33-35  (E.D.N.Y. Feb. 23, 2012) (rejecting Plaintiff's argument regarding narrow *Monell* discovery and bifurcating discovery through summary judgment).

### b.  The Court Should Limit Discovery Because the Materials Sought Are Not Relevant

If the Court bifurcates discovery, it should not rule on Plaintiff's motion to compel until the conclusion of discovery in Mr. Dixon's case.  Even if defendants are not successful in their summary judgment motions, it is possible – if not likely – that discovery on Mr. Dixon's case will narrow the scope of *Monell* claims and allegation made by Plaintiff.  Stated another way, relevance of other cases is dependent upon the facts of Mr. Dixon's own case, and the Court should not rule on what is or is not

relevant until the parties have a complete understanding of the underlying criminal prosecution and conviction.

But even if the Court does not hold the motion to compel in abeyance, it should limit Plaintiff's requests at this time.

Rule 26 of the Federal Rules of Criminal Procedure allows discovery of information "relevant to a claim or defense" within limits.  In that vein, the parties may not seek discovery of information that is privileged, and they may not seek information irrelevant because it has no possible bearing on the claims or defenses in the case.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S.340, 350-54 (1978).

The proper scope of discovery is also limited under Rule 26 (b)(1) to information that is proportional to the needs of the case considering the following factors:  (1) the importance of the issues at stake; (2) the amount in controversy; (3) the parties' relative access to information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742-43 (8th Cir. 2018).

With regard to this issue, *Monell* liability attaches only where an infringement of constitutional rights is caused by a local government policy. *See Outlaw v. Hartford*, 884 F.3d 351, 372–73 (2d Cir. 2018). To support such a claim, Mr. Dixon must first demonstrate that his rights were violated in his case.

Moreover, in searching for the proper local government that is subject to liability on a given *Monell* claim, courts look for "those official or governmental bodies who speak with final policymaking authority ... concerning the action alleged to have caused the particular ... violation at issue." *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). The Second Circuit has repeatedly recognized that "the district attorney is a municipal policymaker, because in making decisions other than whether to prosecute the district attorney acts as the manager of the district attorney's office, which, the Second Circuit concluded, is a municipal function." *See Bellamy v. City of New York*, 914 F.3d 727, 758 (2d Cir. 2019).

The facts and the law counsel the Court to limit the discovery requested.

As a threshold matter, Plaintiff does not allege or proffer wrongdoing on the part of ECDA with regard to the Capozzi, DeJac, Epps, or Ortiz cases. Taking the Plaintiff's allegations on their face, the alleged wrongdoing was done by co-defendant BPD and its agents.

Moreover, as is noted in the case law cited above, cases that occurred under a different District Attorney/administration are of marginal relevance in this case. Each District Attorney is tasked with setting policies and procedures for their office. To the extent misconduct occurred during a different administration, there has been allegation or proffer that that misconduct has to do with the policies or procedures in place at the time of the Dixon prosecution.

## IV.     Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion to compel in its entirety and issue an Order bifurcating discovery in this case so that Plaintiff's *Monell* claims be the subject of disclosure after dispositive motion practice.

Dated:  January 20, 2022
         Buffalo, New York

s/Eric M. Soehnlein
Eric M. Soehnlein, Esq.
Lippes Mathias LLP
*Attorneys for Defendants*
*County of Erie and Assistant*
*District Attorney Christopher Belling*
50 Fountain Plaza
Suite 1700
Buffalo, New York 14202
(716) 853-5100
esoehnlein@lippes.com
