UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

VALENTINO DIXON,

    Plaintiff,

  v.

CITY OF BUFFALO, *et al.*,

    Defendants.

No. 19-cv-01678 (WMS) (JJM)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' COUNTY OF ERIE AND CHRISTOPHER BELLING'S CROSS MOTION TO BIFURCATE DISCOVERY**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.    Defendant has not met its burden of demonstrating that bifurcating discovery is warranted................................................................................................................ 1

        A.    Defendant Belling's individual liability for his misconduct is inextricably intertwined with Plaintiff's *Monell* claim. ................................................................ 2

        B.    Evidence about customs and practices is relevant and admissible even in the absence of a *Monell* claim. ...................................................................................... 4

        C.    The five cases are also relevant to Plaintiff's claims against Defendants even in the absence of a *Monell* claim. .................................................................................... 6

        D.    A finding of prosecutorial immunity would not preclude discovery regarding Plaintiff's *Monell* claims against the County. ........................................................ 8

        E.    Bifurcation will prejudice Plaintiff while prejudice against Defendant is speculative at this juncture. ...................................................................................... 9

    II.    The documents are relevant to both Plaintiff's individual claims and *Monell* claims. ... 11

    III.    The County has not shown that producing the documents at issue is unduly burdensome. ........................................................................................................................ 13

CONCLUSION............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Ambrose v. City of New York*, 623 F. Supp. 2d 454 (S.D.N.Y. 2009) .......................................... 11

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019) ........................................................... 8

*Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012 (W.D.N.Y. Oct. 31, 2018) ................................................................................................................................. 6, 12

*Cambridge Capital LLC v. Ruby Has LLC*, 2021 WL 2413320 (S.D.N.Y. June 10, 2021) ........... 3

*Carter v. City of New York*, No. 08 CIV. 5799 PAC, 2013 WL 553756 (S.D.N.Y. Feb. 8, 2013) .................................................................................................................................. 10

*Casaccia v. City of Rochester*, No. 17-CV-6323 MAT/MJP, 2020 WL 1042149 (W.D.N.Y. Mar. 4, 2020) ............................................................................................................... 1, 2, 4, 5

*Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65 (W.D.N.Y. 2003) ............................... 13

*Crawley v. City of Syracuse*, No. 17-CV-1389, 2018 WL 3716782 (N.D.N.Y. Aug. 3, 2018) ...... 1

*DeVito v. Barrant*, No. 03-CV-1927 DLI RLM, 2005 WL 2033722 (E.D.N.Y. Aug. 23, 2005) .. 5

*Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017) .............................................................. 5

*Felix v. City of New York*, No. 16-CV-5845 (AJN), 2020 WL 6048153 (S.D.N.Y. Oct. 13, 2020) .................................................................................................................................. 11

*Guadalupe v. City of New York*, No. 15CIV0220CMJCF, 2016 WL 675440 (S.D.N.Y. Feb. 16, 2016) ................................................................................................................................ 10

*Gugino v. City of Buffalo*, No. 21-CV-283V(F), 2021 WL 5239901 (W.D.N.Y. Nov. 10, 2021) .................................................................................................................................... 13

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) ................................................................................ 7

*Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533 (S.D.N.Y. 2005) ................................................. 11

*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) ............................................................. 5

*Lopez v. City of New York*, No. 20-CV-2502 (LJL), 2021 WL 2739058 (S.D.N.Y. July 1, 2021) ............................................................................................................................. passim

*Masi v. City of New York*, No. 03 CIV.0246 GBD MHD, 2003 WL 22434132 (S.D.N.Y. Oct. 23, 2003) ................................................................................................................ 2, 3

*McCoy v. City of New York*, No. CV 07-4143 RJD (JO), 2008 WL 3884388 (E.D.N.Y. Aug. 13, 2008) ........................................................................................................................ 9

*Pavlovich v. City of New York*, No. 91 CIV. 5030 (PKL), 1992 WL 230472 (S.D.N.Y. Aug. 31, 1992) ..................................................................................................................... 4, 11

*Pavone v. Gibbs*, No. CV 95-0033, 1997 WL 833472 (E.D.N.Y. Sept. 29, 1997) .............. 3, 4, 11

*Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) ....................................................................... 1

*Roper v. City of New York*, 2017 WL 462270 (S.D.N.Y. Jan. 25, 2017) ....................................... 2

*Rosa v. Town of E. Hartford*, No. 00–CV–1367, 2005 WL 752206 (D.Conn. Mar. 31, 2005).... 11

*Steinman v. Morton Intl., Inc.*, 07-CV-00532-JJM, 2015 WL 13830798 (W.D.N.Y. Dec. 30, 2015) ..................................................................................................................... 13

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) ............................................................................ 8

**Rules**

Fed. R. Civ. P. 26(b) .............................................................................................................. 6, 10

**PRELIMINARY STATEMENT**

The County of Erie (the "County") has already recognized through its own independent investigation that Valentino Dixon ("Plaintiff") was wrongfully incarcerated for the murder of Torriano Jackson. The events, practices, and policies that led to Mr. Dixon's wrongful conviction and 27-year wrongful incarceration are the subject of this action. Although this case does not seek to litigate Plaintiff Valentino Dixon's innocence, "the evidence of [his] innocence provides an important backdrop for [his] claims at trial." *Restivo v. Hessemann*, 846 F.3d 547, 559 (2d Cir. 2017).

Defendant County of Erie's proposal to bifurcate discovery solely on the *Monell* claim against it would not only be inefficient, inconvenient, and a waste of time and resources, but also would prejudice Plaintiff by further delaying resolution of this important civil rights suit arising out of events over 30 years ago. Accordingly, the bifurcation standard is not satisfied, Defendant's cross motion should be denied, and Plaintiff's motion to compel production of the Dejac, Ortiz, Okongwu, Capozzi, and Epps files should be granted.

**ARGUMENT**

**I.  Defendant has not met its burden of demonstrating that bifurcating discovery is warranted.**

"Generally, it is presumed that all claims will be resolved at a single trial." *Casaccia v. City of Rochester*, No. 17-CV-6323 MAT/MJP, 2020 WL 1042149, at *2 (W.D.N.Y. Mar. 4, 2020), *recon. denied*, 2020 WL 2833008 (W.D.N.Y. June 1, 2020); *see also Crawley v. City of Syracuse*, No. 17-CV-1389, 2018 WL 3716782, at *4 (N.D.N.Y. Aug. 3, 2018) ("Bifurcation is the exception rather than the rule."). "The party seeking a stay or a bifurcation 'bears the burden of demonstrating good cause.'" *Lopez v. City of New York*, No. 20-CV-2502 (LJL), 2021 WL 2739058, at *1 (S.D.N.Y. July 1, 2021) (quoting *Roper v. City of New York*, 2017 WL 462270, at

1

\*1 (S.D.N.Y. Jan. 25, 2017)). In considering whether bifurcation of discovery is warranted, the Court looks to factors including the overlap between the different issues, the overlap between the documentary and testimonial evidence sought, and any prejudice to the opposing party if bifurcation is granted. *Casaccia,* 2020 WL 1042149, at \*2–3. At bottom, discovery should not be bifurcated where such bifurcation would be inefficient, inconvenient, or prejudicial to the non-moving party. *Id.* For the reasons discussed below, bifurcation here would be burdensome and inefficient and will prejudice Plaintiff's ability to effectively litigate his claims.

Although Defendant cites Rule 42(b) (which provides the standard for separate trials), it has not moved to bifurcate the claims for trial but instead seeks to stay discovery on Plaintiff's *Monell* claims. To be clear, "[a]n order bifurcating trial for *Monell* purposes normally should not be granted before the summary judgment stage." *Roper*, 2017 WL 462270, at \*1 n.1. Moreover, any request for separate trials should go to the trial judge. *See, e.g.*, *Masi v. City of New York*, No. 03 CIV.0246 GBD MHD, 2003 WL 22434132, at \*2 (S.D.N.Y. Oct. 23, 2003) ("[T]he question of trial bifurcation is one for the trial judge, and is beyond the purview of that court's reference to me for general pretrial purposes."). However, were Defendant's request to bifurcate *Monell* discovery granted, that would effectively tie the trial court's hands because the *Monell* claims against the County would not be ready for trial at the same time as either the individual claims against Christopher Belling or the individual and *Monell* claims against the City and Buffalo Police Department Defendants. As a result, either the trial would have to be bifurcated or trial on all other claims would have to be delayed substantially.

### A. Defendant Belling's individual liability for his misconduct is inextricably intertwined with Plaintiff's *Monell* claim.

As a preliminary matter, there is no merit to the County's argument that Plaintiff's *Monell* claims are a waste of judicial resources. Defendants' Cross Motion (ECF No. 58-4)

2

("Def. Mem.") at 14. Tellingly, Defendant has not moved to dismiss Plaintiff's *Monell* claims—or any of his claims. As a result, "the Court cannot decide that the *Monell* claim[s] [are] without merit much less that [they are] so clearly without merit that discovery should not be permitted." *Lopez*, 2021 WL 2739058, at *1; *see also, e.g.*, *Cambridge Capital LLC v. Ruby Has LLC*, 2021 WL 2413320, at *2 (S.D.N.Y. June 10, 2021) (noting there must be a "strong showing that [the party moving for the stay] is likely to succeed on the merits").

Relatedly, bifurcation is inappropriate in cases like this one where individual liability and *Monell* claims are "inextricably intertwined." *Pavone v. Gibbs*, No. CV 95-0033, 1997 WL 833472, at *1 (E.D.N.Y. Sept. 29, 1997); *see also Masi*, 2003 WL 22434132, at *1 (declining to stay *Monell* discovery after finding that "much of this discovery [would] also [be] pertinent to plaintiff's claims against the individual defendant officers"). As Plaintiff alleges in his Complaint, the Erie County District Attorney's Office ("ECDAO") had a "win-at-all-costs" culture and Defendant Belling was an exemplar of the Office's problems. Complaint ¶¶ 42, 201. Despite these well-founded allegations, "[i]mplicit within Defendant['s] request for bifurcation of discovery is an assumption that discovery relevant to *Monell* can be neatly divided and separated from discovery relevant to the claims against" Belling. *Lopez*, 2021 WL 2739058, at *1. But that is not the case here: Defendant Belling's egregious misconduct and the County's unconstitutional pattern, practice, and customs go hand-in-hand. In particular, the ECDA allowed prosecutors to act as *de facto* investigative supervisors of the Buffalo Police Department Homicide Section—both directing detectives to engage in misconduct and personally engaging in misconduct themselves in the course of criminal investigations. Complaint (ECF No. 1) ¶¶ 19, 204. Prosecutors, including Belling, not only suppressed exculpatory evidence, they as a matter of policy and practice took aggressive action to destroy exculpatory statements, including

threatening witnesses to silence them or make them falsely "recant" truthful statements. *Id.* ¶¶ 19, 205.

Consistent with these policies, Defendant Belling, working with Defendant Stambach, threatened Lamar Scott after he tried to truthfully confess to the shooting of Torriano Jackson, telling him that it would be "tragic" if people close to him were hurt or killed. *Id.* ¶ 108. Defendant Belling also told Mr. Scott that if he went into the grand jury and told the grand jury what he wanted him to say, "nothing would ever happen to them." *Id*. In addition, when Plaintiff's clothes tested negative for gunshot residue, Defendant Belling did not disclose this exculpatory information to Plaintiff or his lawyers before or during the trial. Instead, he buried or destroyed the exculpatory test results. *Id.* ¶¶ 127–28. Thus, Defendant Belling's misconduct is "inextricably intertwined" with the policy, practice, and customs that make the County liable under *Monell*. *Pavone*, 1997 WL 833472, at *1. For that reason alone, the County cannot meet its burden of showing bifurcation is proper here. *See*, *e.g.*, *Casaccia*, 2020 WL 1042149, at *4 (denying motion to bifurcate because the "issues under *Monell* are not significantly different from the issues concerning the individual actions of the municipal actors" and "the documentary and testimonial evidence is likely to overlap"); *Pavlovich v. City of New York*, No. 91 CIV. 5030 (PKL), 1992 WL 230472, at *3 (S.D.N.Y. Aug. 31, 1992) ("[E]ven if the Court were to decide that severance is proper, it is likely that the factual overlap between the individual and *Monell* claims would lead the Court to submit these claims to the same jury, seriatim.").

### B. Evidence about customs and practices is relevant and admissible even in the absence of a *Monell* claim.

Even without a *Monell* claim, Plaintiff would seek evidence in depositions—of Belling and likely other contemporaneous ECDAO prosecutors—about the ECDAO's policies and practices relevant at the time of Mr. Dixon's wrongful conviction, including about prosecutors'

4

practices and customary interactions with BPD officers. *See Casaccia*, 2020 WL 1042149, at *4 (denying bifurcation where "the documentary and testimonial evidence is likely to overlap").

Indeed, Plaintiff's counsel routinely seeks such discovery in wrongful conviction suits, even where there are no claims against the prosecutor or *Monell* claims, because this evidence is relevant to proving the underlying misconduct claims. For example, evidence about customary practices in the prosecutor's office may help demonstrate causation of injury (*e.g.*, that a prosecutor would have disclosed exculpatory evidence had it been provided to them, or would or would not have gone forward on charges had certain evidence been disclosed). Relatedly, evidence about policies and practices of supervision and discipline (in particular, failures thereof) can demonstrate an opportunity for officers to engage in misconduct—and rebut a commonly raised factual argument that an officer would not have risked engaging in the misconduct alleged because of the risk he would be caught. And evidence about whether certain conduct deviates from standard procedure may be useful to meet the high burden of proving intentional misconduct. *See, e.g.*, *Restivo*, 846 F.3d at 580) (holding evidence of a defendant's persistent deviations from "applicable professional standards" can "support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights (quotation marks omitted); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013)) (same); *Dufort v. City of New York*, 874 F.3d 338, 349 (2d Cir. 2017) (holding "Defendants' unusual decision to depart from normal [police] practice" must be construed against them on summary judgment).

Bifurcation would thus be inefficient in several ways. First, it would likely cause some witnesses to have to be deposed multiple times. *See, e.g.*, *DeVito v. Barrant*, No. 03-CV-1927 DLI RLM, 2005 WL 2033722, at *11 (E.D.N.Y. Aug. 23, 2005) ("Just as bifurcation may save

5

judicial resources, it could cause a waste of judicial resources if witnesses and evidence must be presented twice."). Second, Plaintiff anticipates bifurcation would only spur additional discovery disputes about what types of questions are permitted during regular discovery and what must be put off to any second phase, slowing the taking of depositions and imposing on the Court. Accordingly, bifurcation would not only be inefficient but also impracticable.

### C. The five cases are also relevant to Plaintiff's claims against Defendants even in the absence of a *Monell* claim.

The County moved to bifurcate *Monell* discovery in response to Plaintiff's motion to compel production of the five investigative files, but—as Plaintiff has already explained—these documents are relevant to the prosecution of Plaintiff's case outside of *Monell* liability. Plaintiff's Memorandum of Law (ECF No. 52-1) ("Pl. Mem."), at 8–9. In other words, even if *Monell* discovery is bifurcated, the County will still have to produce the investigative files as part of discovery because they are relevant to Plaintiff's claims against Defendant Belling, the individual Buffalo Police Department defendants, and the *Monell* claim against the City of Buffalo.

As an initial matter, the question is not whether the sought discovery is relevant and proportional to *the claims against the producing party*, but rather whether they are proportional to "the needs of the case." Fed. R. Civ. P. 26(b)(1). Furthermore, under Rule 26, "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012, at *1 (W.D.N.Y. Oct. 31, 2018) (quotations omitted)).

6

Here, Plaintiff has sought files related to specific cases of known wrongful convictions from this time period from *both* the County and the City.[1] Plaintiff requested files from both places because, absent discovery, he does not know whether either or both entities would maintain relevant case files relating to these investigations and prosecutions, or whether, given the passage of time, documents may be missing from either source.[2] Plaintiff anticipates that files from these cases will provide evidence of patterns of misconduct by both Defendant Belling and the individual BPD defendants. *See, e.g., Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990) (discussing the relevance of misconduct in other cases to establish "a pattern, intent, and absence of mistake" under Rule 404(b)). For example, Defendant Stombach was the lead detective in three of these cases (Epps, DeJac, and Ortiz), Lonergan was also involved in Ms. DeJac's case, and Masechhia was also involved in Mr. Epps's. Patterns of misconduct by these BPD officers—which may be demonstrated by investigative files produced by Erie County—would be directly relevant to the *Monell* claim against the City of Buffalo, which has not moved for bifurcation.

Although, absent discovery, Plaintiff does not know what if any role Belling had in these other prosecutions, he was not forced out of the Erie County's District Attorney's office until John Flynn was elected to be the Erie County District Attorney in 2017. Complaint ¶¶ 141–42. If any of the five cases can demonstrate other instances of Defendants Belling's misconduct (as Plaintiff reasonably anticipates), they would be relevant and therefore discoverable even if *Monell* discovery is bifurcated.

---

[1] Plaintiff requested the documents related to Mr. Okongwu from the County only as his case involved the Sheriff of Erie County, not the BPD. *See Okongwu v. Cty. of Erie*, No. 14-CV-832WMS, 2017 WL 2686454, at *4 (W.D.N.Y. June 22, 2017).

[2] In addition, Plaintiff received more comprehensive and different documents for the Torriano Jackson case file from the County than from the City. There is no reason to think the City and County would not also produce different documents from the other cases.

### D. A finding of prosecutorial immunity would not preclude discovery regarding Plaintiff's *Monell* claims against the County.

The premise of the County's efficiency argument—that it anticipates proving that Belling is entitled to prosecutorial immunity and so there will be no need to reach Plaintiff's *Monell* claim against the County—is fatally flawed.[3] Defendant argues that "the possibility that Plaintiff can prove an actionable underlying constitutional violation is exceedingly minimal, particularly in light of *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)." Def. Mem. at 13. Crucially, the Second Circuit has expressly rejected this argument that a finding of prosecutorial immunity under *Van de Kamp* forecloses the possibility of *Monell* liability—holding that "*Van de Kamp* said nothing about *Monell* or municipal liability" and further clarifying that "the legal question of when immunity should attach is an entirely separate inquiry from which state entity is a final policymaker for *Monell*." *Bellamy v. City of New York*, 914 F.3d 727, 760 (2d Cir. 2019).

As a result, even assuming *arguendo* that Defendants could establish at the end of discovery that Belling was entitled to prosecutorial immunity—a doubtful proposition in light of the specific allegations of investigatory misconduct against him—that would not preclude the need for discovery on Plaintiff's *Monell* claims against the County. *See, e.g.*, *Lopez*, 2021 WL 2739058, at *2 ("The conclusion that an individual defendant is not liable need not foreclose the need to examine the municipality's liability—the municipality may be liable all the same and discovery into the governmental policy and custom may still be necessary."); *McCoy v. City of New York*, No. CV 07-4143 RJD (JO), 2008 WL 3884388, at *2 (E.D.N.Y. Aug. 13, 2008)

---

[3] The County's reliance on *Tabor v. New York City*, No. 11 CV 0195 FB, 2012 WL 603561, at *11 (E.D.N.Y. Feb. 23, 2012), is misplaced. In that case, the Magistrate Judge recommended bifurcation (resulting in the stay of a 30(b)(6) deposition) at the same time she recommended dismissal of claims against the District Attorney and Assistant District Attorneys defendants. Here, the County did not even move to dismiss Plaintiff's claims against Belling.

(finding "persuasive the decisions of courts that deny bifurcation where an individual defendant asserts a defense of qualified immunity that, if successful, would not obviate trial of the *Monell* claim").

This legal error completely dooms the County's argument. The only way bifurcation could possibly advance efficiency would be if the Court were to assume that the *Monell* discovery would never be needed. Otherwise, it is beyond reasonable dispute that bifurcation will only further draw out the discovery schedule and result in unnecessary duplication and needless disputes over what documents productions and deposition inquiries are appropriate when. Because discovery on Plaintiff's *Monell* claims will be necessary in any event, bifurcation is inefficient and should be denied.

To the extent that the County makes speculative arguments relating to depositions Plaintiff will "likely" seek in the future and documents defendants "may" need to review in an "unknown universe" (Def. Mem. at 11), this conjecture is insufficient to justify bifurcation. As demonstrated by Plaintiff's current discovery requests, Plaintiff only seeks targeted discovery, and intends to continue proceeding in a matter that conserves both time and resources. Should Plaintiff at some point request production of documents that truly place an undue burden on the County, the County will certainly have the opportunity to object to production at that time. But the requests at issue here simply do not support bifurcation of discovery in this case.

### E. Bifurcation will prejudice Plaintiff while prejudice against Defendant is speculative at this juncture.

Bifurcation would significantly prejudice Plaintiff by delaying discovery of his *Monell* claims and preventing him from presenting his individual claims on summary judgment in the full context in which they arose. As a sister court recently noted:

> The examination of governmental policy and custom necessary to prove up a *Monell* claim is not, under the law, an independent harm against which

9

> the Court must protect; it is a consequence of the standards set forth by the Supreme Court for the establishment of municipal liability. If discovery will lead to an examination of government policy, that is simply be a function of the fact that a complaint challenges government policy and that the Rules entitle all parties (within limits) to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."

*Lopez*, 2021 WL 2739058, at *1 (quoting Fed. R. Civ. P. 26(b))). "An individual plaintiff is fully entitled to assert claims of municipal liability and to take discovery to support those claims." *Guadalupe v. City of New York*, No. 15CIV0220CMJCF, 2016 WL 675440, at *1 (S.D.N.Y. Feb. 16, 2016). *See also Carter v. City of New York*, No. 08 CIV. 5799 PAC, 2013 WL 553756, at *1 (S.D.N.Y. Feb. 8, 2013) ("Plaintiff is entitled to full and complete discovery concerning his [municipal] allegations."). Moreover, given circumstances outside of Plaintiff's control, such as delays in document production due to COVID-19, changes in defense counsel, and defense counsel's illnesses, discovery in Plaintiff's case has already been significantly delayed. Any further delay will prejudice Plaintiff, who was wrongfully convicted in 1992 and filed this lawsuit to vindicate his civil rights in December 2019—already over two years ago.

Conversely, there is no intelligible or clearly identified prejudice to the County, Belling, or any other Defendant here. The County argues that there is "great potential for prejudice to named defendants . . . by confusing jurors in considering liability on other issues." Def. Mem. at 13. However, as previously mentioned, the County is not seeking to bifurcate trial so any speculation on *potential* prejudice based on juror confusion is premature. *See Lopez*, 2021 WL 2739058, at *3 ("[C]oncerns regarding evidence that would be admissible against one defendant which would prejudice other defendants can be addressed when the Court considers how to conduct trial."); *see also Pavone*, 1997 WL 833472, at *2 ("If defendants were granted the relief they seek on this record based only upon speculation and their generalized assertion of prejudice,

10

then the trial of virtually any civil rights action against a municipality and its individual employees would require bifurcation.").

Should the Court find that there is potential prejudice at the close of discovery, such prejudice "could be cured by carefully crafted limiting instructions." *Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005) (quotation omitted); *see Felix v. City of New York*, No. 16-CV-5845 (AJN), 2020 WL 6048153, at *6 (S.D.N.Y. Oct. 13, 2020) ("The Court is confident that carefully crafted limiting instructions can eliminate any risk of undue prejudice to the detectives resulting from evidence offered against the City."); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 480 (S.D.N.Y. 2009) ("Any spillover prejudice to the individual officers that may be caused by the admission of Rule 404(b) evidence [at trial] to establish the *Monell* claim [pertaining to the Individual Defendants] could be cured by limiting instructions." (quoting *Rosa v. Town of E. Hartford*, No. 00–CV–1367, 2005 WL 752206, at *5 (D.Conn. Mar. 31, 2005)). Accordingly, "[t]he potential prejudice faced by the individual defendants in this case does not justify staying or staging municipal discovery." *Lopez*, 2021 WL 2739058, at *3. *See also Pavlovich*, 1992 WL 230472, at *3 ("In the absence of any tangible evidence to demonstrate that a joint trial of the individual and *Monell* claims would be unduly prejudicial, the Court concludes that defendants' claims of prejudice are speculative, and should be rejected.").

## II. The documents are relevant to both Plaintiff's individual claims and *Monell* claims.

As Plaintiff demonstrated in his moving papers, the files related to the five requested cases are relevant to both Plaintiff's individual claims and his *Monell* claims. Pl. Mem. at 6–10, 15–20. Defendants' cursory arguments to the contrary miss the mark. The thrust of Defendant's argument is that the documents are not relevant because they cannot be used to establish *Monell* liability, but that puts the cart before the horse. The standard applicable at this juncture is simply whether discovery from those five cases "could lead to other matter[s] that could bear on any

issue that is or may be in the case." *Cabarris*, 2018 WL 5650012, at *1 (quotations omitted). That, of course, includes Plaintiff's claims against Belling and against the County; whether they may ultimately be used to establish *Monell* liability is only a part of the inquiry at this stage.

In addition, the County argues that the documents are not relevant because "Plaintiff does not allege or proffer wrongdoing on the part of ECDA with regard to the Capozzi, DeJac, Epps, or Ortiz cases." Def. Mem. at 16. However, part of Plaintiff's *Monell* theory is that the ECDAO "direct[ed] and control[ed] the BPD's serious felony investigations" Complaint ¶ 204. This includes "encouraging or participating in the fabrication of evidence to create a false basis for charges" *Id.* ¶ 201. Moreover, the ECDAO's knowledge of and inaction regarding investigative misconduct by BPD officers is also part of Plaintiff's *Monell* claims—which includes allegations that ECDAO had a policy, practice, or custom of "ignoring and suborning police misconduct, including perjury [and] failing to prosecute police misconduct." *Id.* Thus, given the fabrication of evidence and suppression of exculpatory evidence in the four wrongful conviction cases involving the BPD, those cases are patently relevant to understanding the ECDAO's policy, practice, and customs regarding ADAs acting as *de facto* investigators and either joining BPD officers in misconduct or willfully ignoring it.

In addition, Defendant argues that the five cases are of "marginal relevance" because "each District Attorney is tasked with setting policies and procedures for their office." Def. Mem. at 16. However, a change in DA does not necessarily mean that there was a change in the policies, practices, or customs relevant to the prosecution of this case. To be sure, the County does not argue that the practice, policy, or customs changed in any material way, only that the head of the office is different. It is possible that discovery in the cases which all involved similar misconduct involve similar participation by ADAs or inaction by the ECDA.

12

Finally, as discussed in detail above, Section I.C *supra*, the five cases are relevant to the prosecution of Plaintiff's case outside of *Monell* liability.

## III. The County has not shown that producing the documents at issue is unduly burdensome.

While the County objected to producing documents concerning the five investigations because it would be "unduly burdensome" (McCarthy Affidavit, Exhibit H (ECF No. 53-8), at 17), the County has completely failed to identify any specific burden to it in producing the five cases. As Plaintiff argued in his moving papers, "[a] party opposing a discovery request cannot make conclusory allegations that a request is . . . unduly burdensome. Instead the party resisting discovery must show specifically how each discovery request is . . . unduly burdensome." *Steinman v. Morton Intl., Inc.*, 07-CV-00532-JJM, 2015 WL 13830798, at *1 (W.D.N.Y. Dec. 30, 2015). Accordingly, "[o]bjections based on burdensomeness require the objecting party provide an affidavit from a person with knowledge of the facts explaining why the request unduly burdens the responding party." *Gugino v. City of Buffalo*, No. 21-CV-283V(F), 2021 WL 5239901, at *3 (W.D.N.Y. Nov. 10, 2021) (citing *Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65, 69 (W.D.N.Y. 2003). Pl. Mem. 11–12. Because the investigations are relevant and the County has not shown why it would be burdensome to produce them, the Court should compel the County to produce the files. Moreover, Plaintiff has offered and is still willing to work in good faith with the County to narrow his request related to the five documents.

## CONCLUSION

For these reasons, Defendant's cross motion should be denied and Plaintiff's motion to compel production of the Dejac, Ortiz, Okongwu, Capozzi, and Epps files should be granted.[4]

Dated: January 27, 2022
New York, New York

/s/ Gerardo Romo
Mary Katherine McCarthy
Nick Joel Brustin
Anna Benvenutti Hoffmann
Mary Katherine McCarthy
Sona R. Shah
Gerardo Romo

NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson
EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290

---

[4] The City filed a request for bifurcation as a response to the County's cross motion. ECF No. 60. Because it was filed today, on the same day as Plaintiff's response is due, Plaintiff does not have time to specifically respond the City's brief. Nevertheless, bifurcation of City's claims is similarly improper, and Plaintiff can address the City's arguments in more detail at oral argument.

## CERTIFICATE OF SERVICE

      I, Gerardo Romo, hereby certify that on January 27, 2022, I filed the foregoing: Memorandum of Law in Opposition to Defendants' County of Erie and Christopher Belling's Cross Motion to Bifurcate Discovery using the ECF System, which effects service on all counsel of record.

      /s/ Gerardo Romo
Gerardo Romo
Neufeld Scheck & Brustin, LLP
99 Hudson St. 8th Floor
New York, NY 10013
Phone: 212-965-9081
Fax: 212-965-9084
*Counsel for Plaintiff Valentino Dixon*