UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

VALENTINO DIXON,

    Plaintiff,

v.

CITY OF BUFFALO et al.,

    Defendants.

No. 19-cv-01678 (WMS) (JJM)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## **TABLE OF CONTENTS**

## **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 1

    I.    Defendant has refused Plaintiff's offers to narrow his requests and its proposal to narrow the cases is inefficient and inadequate ....................................................................... 1

    II.    The four cases are relevant to Plaintiff's individual and *Monell* claims ............................. 3

        A.    The four cases are relevant to Plaintiff's individual claims ......................................... 4

        B.    The four cases are relevant to Plaintiff's *Monell* Claims ............................................. 7

    III.    Defendant has not adequately demonstrated that there is a burden to producing the files ................................................................................................................ 8

    IV.    Plaintiff served a new set of requests for documents related to RFP 20 .......................... 10

CONCLUSION ........................................................................................................................ 10

## ARGUMENT

I. **Defendant has refused Plaintiff's offers to narrow his requests and its proposal to narrow the cases is inefficient and inadequate**

As Plaintiff mentioned in his moving papers, the City has consistently rejected Plaintiff's offers to narrow his requests related to the Epps, Ortiz, DeJac, and Cappozi cases and has instead categorically opposed providing *any* of the materials under its misguided view that the cases cannot support a theory of liability under *Monell*. Plaintiff's Memorandum of Law (ECF No. 52-1) ("Pl. Mem."), at 5. It its response, the City has now reversed course, arguing that even if the Court finds the documents to be relevant to the prosecution of Plaintiff's case, Plaintiff's request for the documents is too broad and offering—for the first time since the requests were served in September 2020—to provide documents from these cases relating to the Defendant officers in Plaintiff's case. Defendant's Memorandum of Law (ECF No. 57-4) ("Def. Mem."), at 2, 7. The Court should reject the City's misguided offer.

The City's suggestion that it sift through the case files to search for reports involving the many officers involved in this suit is not only inefficient but also inadequate to address Plaintiff's claims against the individual Defendants and the City. The suggestion is necessarily inefficient because—as part of sifting through those four case files to determine which relevant officers were involved and to identify every document authored by or mentioning them—the City would already be doing the same work required to organize those files for production (if not more, as the City could simply produce the underlying case files for those cases without any such laborious review and extraction). The suggestion is also inadequate because discovery is still ongoing in this case, so officers that are not relevant now could be relevant as discovery goes on. Indeed, Plaintiff's Complaint names "John Does," whose identifies Plaintiff has not yet been to ascertain; these Does include supervisors within the BPD and acting police officers. Complaint

1

(ECF No. 1) ¶ 39. As a result, misconduct by unnamed officers in this case can support *Monell* liability even where there is no finding of liability for them, as their conduct in other cases could be relevant once they are identified through the course of discovery. *See, e.g.*, *McCoy v. City of New York*, No. CV 07-4143 RJD (JO), 2008 WL 3884388, at *2 (E.D.N.Y. Aug. 13, 2008) (discussing possibility of *Monell* liability with unnamed defendants). At the very least, then, Plaintiff needs access to the investigative files to work with the City on narrowing his request as currently all the relevant information is in the custody and control of the City.[1]

In addition, there is no legal basis to conclude that other wrongful conviction cases from the same time period are not relevant to Plaintiff's *Monell* claims unless those cases involve the exact same officers who participated in the underlying investigation here. Indeed, how the BPD supervised and disciplined (or failed to) different officers in other investigations also sheds light on the pattern, practice, and customs that the Defendants were operating under and on the City's deliberate indifference to officers' misconduct. *See, e.g.*, *H.H. v. City of New York*, No. 11-CV-4905 (NG) (ST), 2017 WL 3396434, at *7 (E.D.N.Y. Aug. 7, 2017) (discussing Second Circuit precedent and noting that a "city could be held liable for deliberate indifference where an officer in that department used excessive force against the plaintiff, even though the officer was not involved in the previous beating"); *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 196 (E.D.N.Y. 2014) ("It is plainly foreseeable that the failure to discipline an officer who has been caught red-handed might embolden that officer's close associates and colleagues to engage in similar misconduct.").

---

[1] To the extent the City is arguing that Plaintiff's requests require the production of privileged information, that assertion is misplaced. Plaintiff, of course, has no interest in obtaining documents protected by attorney-client privilege.

2

## II.     The four cases are relevant to Plaintiff's individual and *Monell* claims

Plaintiff alleges that the "BPD exhibited a long-standing pattern of fabricating incriminatory information and suppressing exculpatory information, beginning before Mr. Dixon's prosecution and continuing for decades." Complaint ¶ 154. It was BPD officers' fabrication of evidence, including the use of threats and coercion, and suppression of exculpatory evidence that led to Plaintiff's wrongful conviction. Mr. Capozzi, Ms. DeJac, Mr. Ortiz, and Mr. Epps were all wrongfully convicted through similar misconduct, *i.e.*, the fabrication of inculpatory evidence and suppression of exculpatory evidence, some of which includes the named Defendants in this case.

Specifically, BPD officers fabricated evidence against Mr. Capozzi, Ms. DeJac, and Mr. Ortiz. Mr. Capozzi was wrongfully convicted of a rape he did not commit after he was identified by two rape victims, despite obvious differences between the actual perpetrator and Mr. Capozzi. Complaint ¶ 168. Given the facts of the case, it is likely that there was improper coercion, pressure, or suggestion from BPD officers, who orchestrated the line-up that led to Mr. Cappozi's wrongful conviction. *Id.* Ms. DeJac was convicted of the murder of her daughter after BPD homicide detectives revealed to witnesses that her daughter was strangled—a fact unknown to the public at the time—to fabricate false evidence against Ms. DeJac. *Id.* ¶ 173. In that case, Defendant Lonergan also obtained a false incriminating statement from a purported "witness" named Wayne Hudson to further incriminate Ms. DeJac. *Id.* ¶ 176. When Mr. Hudson tried to recant his statement, Defendant Stambach compelled him to sign a new statement reaffirming his previous false allegations—as he and Defendant Belling did when Lamarr Scott tried to truthfully confess to the killing of Torriano Jackson in this case. *Id.* ¶ 176. Finally, Mr. Ortiz was wrongfully convicted of multiple murders after BPD homicide detectives—again, including

3

Defendant Stambach—fabricated evidence by coercing a false "confession" from him while he was experiencing mental health issues. *Id.* ¶ 184.

The four cases also show how BPD officers suppressed exculpatory evidence, as they did in Plaintiff's case. The aforementioned cases—Capozzi, DeJac, and Ortiz—all involved officers suppressing exculpatory evidence, including evidence regarding the true circumstances of how they generated (false) incriminating witness statements and identifications. In other words, as in Plaintiff's case, when exculpatory evidence conflicted with the fabricated evidence, Defendant Stambach and other BPD homicide detectives concealed evidence inconsistent with the fabricated evidence. *See, e.g. id.* ¶ 186. In addition, Mr. Epps was wrongfully convicted after BPD homicide detectives—including Defendants Stambach and Masecchia—suppressed exculpatory evidence pointing to the true shooter by removing relevant information about the shooter in their prepared witness statements. *Id.* ¶ 179. As in Plaintiff's case, Defendant Stambach aggressively badgered or coerced that witness into remaining silent about the exculpatory evidence she possessed. *Id.* ¶ 180.

As discussed below, the similarities in misconduct are relevant not just to establishing *Monell* liability, but also in developing the evidence for Plaintiff's claims against the Individual Defendants.

### A. The four cases are relevant to Plaintiff's individual claims

Despite the City's contention to the contrary, the Ortiz, Epps, and Dejac cases are relevant because they may show "a pattern, intent, and absence of mistake" under Rule 404(b). *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990). As Plaintiff argues in his moving papers, "courts in the Second Circuit have held that incidents or complaints occurring after the events at issue in a Section 1983 lawsuit may be relevant and discoverable for reasons other than proving the existence of a municipal policy or custom." *Dobson v. Dougherty*, No. 17-CV-1014-LJV-

4

MJR, 2018 WL 6321390, at *5 (W.D.N.Y. Dec. 4, 2018). The City does not—because it cannot—dispute this controlling legal rule. Instead, the City attempts to limit its application here by improperly narrowing the Court's ruling in *Dobson*, arguing that Plaintiff's request is too broad and the misconduct in Ortiz, Epps, and DeJac is somehow not related enough to the misconduct in the investigation of Plaintiff's case to be discoverable. However, each case involved at least one of the named Defendants and all involved acts of similar investigative misconduct resulting in wrongful convictions: the fabrication of false inculpatory evidence and suppression of exculpatory and impeachment evidence. Specifically, just two years after Plaintiff was arrested, Defendant Lonergan fabricated evidence against Ms. DeJac by obtaining a false statement from Mr. Hudson, and Defendant Stambach then forced Mr. Hudson to reaffirm his false position. Complaint ¶ 176. Defendant Stambach similarly fabricated evidence against Mr. Ortiz by forcing him to confess and then suppressed exculpatory evidence regarding the true nature of the "confession." *Id.* ¶¶ 184, 186. Lastly, in Mr. Epps' case, Defendants Stambach and Masecchia similarly suppressed exculpatory evidence pointing to the true shooter by removing relevant information about the shooter in their prepared witness statements. *Id.* ¶ 179. Thus, the Ortiz, Epps, and DeJac cases are relevant to establish "a pattern, intent, and absence of mistake" under Rule 404(b). To the extent the City believes Plaintiff's request as-written is too broad, Plaintiff is—and always has been—open to narrowing his request. *See* McCarthy Affidavit, Exhibit L (ECF No. 53-12). But, for the reasons discussed above, Plaintiff at the very least needs and is entitled to the homicide investigation files for each of those cases.

Furthermore, given the similarities in misconduct, the four cases are critical to Plaintiff's ability to develop his case. Under Rule 26, "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear

on any issue that is or may be in the case." *Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012, at *1 (W.D.N.Y. Oct. 31, 2018) (quotations omitted)). Certainly, these other wrongful conviction cases "bear on or could reasonably lead to other matters that bear" on issues central to Plaintiff's claims—like officers' understanding of their training and relevant BPD policies—which are relevant to establishing liability for the individual Defendants (as evidence of, for example, their mindset in intentionally violating rules). *See, e.g.*, *Dufort v. City of New York*, 874 F.3d 338, 349 (2d Cir. 2017) (holding "Defendants' unusual decision to depart from normal [police] practice" must be construed against them on summary judgment). Indeed, if discovery from those cases shows the pattern of investigative misconduct alleged in Plaintiff's complaint—which Plaintiff has no doubt they will—those documents can be used in depositions to ask Defendants about the actions of fellow BPD officers in those cases and to compare them to the misconduct in Plaintiff's case. In cases that involve the same Defendants, moreover, these documents will be highly relevant to Plaintiff's deposition preparation and strategy; for instance, Plaintiff can use discovery from those cases as a starting point and tool to further unravel each Defendant's own understanding of his training and what he believes constitutes a deviation of that training. And to the extent these investigations occurred after the Torriano Jackson homicide investigation, Plaintiff can use this discovery to ask BPD Defendants to compare their conduct in Plaintiff's case with their own conduct in later investigations. In the cases with different officers, Plaintiff can inquire into the Defendants' understanding of misconduct in those cases by asking them if they believe factually similar cases of coercion and suppression of exculpatory evidence deviate from their training. Finally, examining the investigations in other cases where similar misconduct is alleged will very likely shed light during discovery on steps the officers did or did not take in investigating Mr. Dixon's case, which is highly relevant.

### B. The four cases are relevant to Plaintiff's *Monell* Claims

Defendant argues that the DeJac, Epps, and Ortiz cases are not discoverable because they cannot support a finding of *Monell* liability since they occurred after Plaintiff's arrest. While it is true that these cases cannot demonstrate that the City had *notice* of similar misconduct, the cases are still relevant to show the contours of the customs or policies that existed at the time of Plaintiff's arrest: "To be sure, post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) (quotation and alteration omitted). As a result, "post-incident evidence is relevant to the existence of a custom or policy, from which a plaintiff may argue it was the moving force in the alleged unconstitutional violation." *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *7 (E.D. Mo. Dec. 4, 2020). While the Second Circuit has not directly addressed whether post-incident evidence is admissible for establishing *Monell* liability, "[t]his conclusion is supported by decisions from courts in the 1st, 3rd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Circuits." *Id.* at *8 (collecting cases); *see also Abdur-Rahim v. City of Columbus*, No. 2:17-CV-601, 2019 WL 1873222, at *2 (S.D. Ohio Apr. 26, 2019) (same). Crucially, Rule 26 "is broadly interpreted to permit discovery of relevant evidence regardless of the potential that such evidence will be admissible at trial." *Medina v. Napoli*, No. 07-CV-0497W(SR), 2020 WL 515900, at *2 (W.D.N.Y. Jan. 31, 2020) (quoting *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997)). Thus, because these cases bear on the policies or customs that led to Plaintiff's wrongful conviction, they are relevant under Rule 26. *See, e.g.*, *Tyson v. D.C.*, No. CV 20-1450 (RC), 2021 WL 4860685, at *12 (D.D.C. Oct. 19, 2021) ("It is the custom, not the examples, that must be the moving force behind the constitutional violation. Therefore, examples that occur after the specific incident in the case at hand can still be relevant evidence of an ongoing custom." (citation omitted)).

Lastly, the City does not dispute that the Capozzi case could establish notice of prior misconduct, but instead inaptly argues that the misconduct alleged there is too different from the misconduct in Plaintiff's case—although its argument inexplicably rests on a comparison of the underlying crimes (rape vs. murder) and the nature of the exoneration (DNA vs. the true perpetrator coming forward and pleading to the crime). The City's wordsmanship is a thinly veiled attempt to obfuscate the serious <u>investigative misconduct</u> at issue (which is the relevant inquiry here). As discussed above, it is likely Mr. Capozzi was convicted due to fabricated evidence through improper coercion, pressure, or suggestion from BPD officers who orchestrated the line-up that led to Mr. Cappozi's wrongful conviction. Complaint ¶ 168. Plaintiff has alleged the same misconduct (fabrication of evidence) as having led to his wrongful conviction. If, as anticipated, discovery from the Capozzi case file reveals similar misconduct, that would be strong evidence that the City had notice of acts of prior misconduct and could ultimately establish a claim under *Monell* liability. To be clear, the standard at the juncture is not whether (based on his pleadings) Plaintiff can establish *Monell* liability through the Capozzi case, but rather whether the Capozzi case "reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Cabarris*, 2018 WL 5650012, at *1. Clearly, as outlined above, it could.

### III. Defendant has not adequately demonstrated that there is a burden to producing the files

As Plaintiff argued in his moving papers, "[a] party opposing a discovery request cannot make conclusory allegations that a request is . . . unduly burdensome. Instead the party resisting discovery must show specifically how each discovery request is . . . unduly burdensome." *Steinman v. Morton Intl., Inc.*, 07-CV-00532-JJM, 2015 WL 13830798, at *1 (W.D.N.Y. Dec. 30, 2015). Pl. Mem. 11–12. The City's main argument against producing the documents is that

8

the files are "voluminous." Declaration of Peter Sahasrabudhe (ECF No. 57) ¶ 31–32. Defendant also speculates that "blanket production" would lead to "numerous potential disputes between the parties related to *other* criminal investigations." *Id.* ¶ 33. The City has fallen fall short of making out any concrete burden here.

      As discussed above, until filing its opposition, the City refused Plaintiff's offers to meet and confer in good faith about narrowing the scope of these *Monell* requests. And its unilaterally proposed solution is both inefficient and inadequate. Plaintiff remains willing to work with the City to narrow these requests as appropriate: to be clear, Plaintiff also has no interest in the production of voluminous irrelevant documents (or the production of privileged materials). That said, Plaintiff does need the underlying investigative files and would certainly agree to a rolling production wherein the underlying files were produced first—especially as Plaintiff anticipates that production of these case files will enable the parties to more concretely identify what, if any, additional documents from these cases should be produced. Put another way, Plaintiff is happy to work with the City on narrowing these requests but cannot do so without an understanding of the universe of relevant documents in the City's possession which—to date—the City has not been willing to discuss (even in its motion, the City says nothing more specific than that the production would be "voluminous"). Moreover, given the recent civil litigation in several of these other wrongful conviction cases, Plaintiff expects that many of these documents may be little (if any) burden to produce as the City can simply share earlier productions. This is particularly true regarding the *Epps* case, as current counsel for the City is also counsel of record in that case. *Id.* ¶ 31. Lastly, the City's concern that production of other cases will lead to "mini-hearings" (*Id.* ¶ 33) is purely speculative. These cases are patently relevant to the prosecution of

9

Plaintiff's case; whether there are colorable civil rights claims against the Defendants in those other cases is immaterial.

### IV.     Plaintiff served a new set of requests for documents related to RFP 20.

The City asserts that Plaintiff never provided a narrower request for documents in response to RFP 20. *Id.* ¶ 39. However, as detailed in Plaintiff's counsel's accompanying affidavit, counsel clarified RFP 20 and offered to narrow the request in a phone call with City's counsel (including pointing counsel to specific documents to inform the City's search). But the City responded by standing on its prior objections—resulting in Plaintiff moving to compel on RFP 20. Affidavit from Mary Katherine McCarthy dated January 27, 2022, Exhibits O, P, and Q. But in the interest of moving discovery along, Plaintiff has now served a new request for these intelligence documents and is optimistic that the parties can work in good faith on that production. *Id.*, Exhibit R. If the parties are unable to do so, they will seek direction from the Court as appropriate.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court compel the production of documents responsive to Plaintiff's RFP Nos. 19 to the City of Buffalo.

Dated: January 27, 2022
New York, New York

/s/ Mary Katherine McCarthy
Mary Katherine McCarthy
Nick Joel Brustin
Anna Benvenuti Hoffmann
Mary Katherine McCarthy
Sona Shah
Gerardo Romo

NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson

EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290

11

**CERTIFICATE OF SERVICE**

      I, Mary Katherine McCarthy, hereby certify that on January 27, 2022, I filed the foregoing: Reply Memorandum of Law in Further Support of Plaintiff's Motion to Compel Production of Documents and Affidavit in Further Support of Plaintiff's Motion to Compel using the ECF System, which effects service on all counsel of record.

      /s/ Mary Katherine McCarthy
Mary Katherine McCarthy
Neufeld Scheck & Brustin, LLP
99 Hudson St. 8th Floor
New York, NY 10013
Phone: 212-965-9081
Fax: 212-965-9084
*Counsel for Plaintiff Valentino Dixon*