

# OFFICE OF THE ERIE COUNTY DISTRICT ATTORNEY

### JOHN J. FLYNN
DISTRICT ATTORNEY

September 17, 2018

HON. SUSAN EAGAN, J.C.C.
COUNTY COURT PART 18
ERIE COUNTY COURTHOUSE
BUFFALO, NY 14202

    Re:    People v VALENTINO DIXON
                Indictment No. 91-1476

Dear Judge Eagan:

    Enclosed is an Answering Affidavit and an affidavit of service in the above-referenced matter.

                Very truly yours,

                JOHN J. FLYNN
                DISTRICT ATTORNEY

        By:    DONNA A. MILLING
                Assistant District Attorney
                Chief, Appeals Bureau

DAM/sc
Encl.
c: Donald M. Thompson, Esq.

STATE OF NEW YORK
COUNTY COURT : COUNTY OF ERIE

THE PEOPLE OF THE STATE OF NEW YORK

v                                                                                          **ANSWERING AFFIDAVIT**

VALENTINO DIXON,                                                           Indictment No. 91-1476

                       Defendant

STATE OF NEW YORK    )
COUNTY OF ERIE            )  ss.
CITY OF BUFFALO         )

      DAVID A. HERATY, being duly sworn, deposes and says:

      1. I am an attorney duly licensed to practice law in the State of New York.

      2. I am an Assistant District Attorney, appearing of counsel to JOHN J. FLYNN, District Attorney of Erie County, on behalf of the People of the State of New York.

      3. I make this affidavit in response to the motion of Donald M. Thompson, Esq., counsel for defendant, to vacate his conviction pursuant to CPL 440.10. The motion was dated and received in the District Attorney's Office on May 29, 2018.

      4. Unless otherwise stated, this affidavit is made upon personal knowledge of the People's comprehensive exoneration investigation, which took place between June and September 2018. The investigation, conducted by Assistant District Attorney Sara Dee, Chief Investigator Joseph Riga, and myself, consisted of (i) detailed interviews of approximately 30 witnesses, including every critical witness and virtually every individual with relevant information; (ii) a thorough review of the file of the District Attorney's Office, trial transcripts, records of prior proceedings, and the physical evidence; and (iii) a polygraph examination of defendant, which was arranged jointly by the People and defense counsel.

-1-

5. Under the above-captioned indictment, defendant was charged with murder in the second degree (Penal Law § 125.25[1]), attempted murder in the second degree (Penal Law §§ 110.00, 125.25[1]), criminal possession of a weapon in the second degree (Penal Law § 265.03), and assault in the third degree (Penal Law § 120.00[2]).

6. Following a jury trial, defendant was found guilty on all counts. On August 7, 1992, he was sentenced to 25 years to life imprisonment on his conviction for murder in the second degree; a consecutive term of 8⅓ to 25 years imprisonment on his conviction for attempted murder in the second degree; a concurrent term of 5 to 15 years imprisonment on his conviction for criminal possession of a weapon in the second degree; and a concurrent term of one year imprisonment on his conviction for assault in the third degree. The sentence was ordered to run consecutively to defendant's aggregate sentence of 5⅓ to 16 years imprisonment on four unrelated convictions.

7. Defendant appealed his conviction to the Appellate Division, Fourth Department, and it was unanimously affirmed (*People v Dixon*, 214 AD2d 1010 [4th Dept. 1995], *lv denied* 87 NY2d 900).

8. On November 6, 2003, defendant filed his first motion to vacate his conviction pursuant to CPL 440.10. The grounds for the motion were (i) ineffective assistance of counsel, (ii) newly discovered evidence, (iii) use of false evidence by the prosecutor, (iv) denial of rights under the compulsory process clause, and (v) prosecutorial misconduct. The motion was denied by an order of Erie County Court (D'Amico, J.) issued on August 30, 2004, and his application for leave to appeal was denied by the Fourth Department.

9. On April 14, 2005, defendant filed a petition for a writ of habeas corpus with the United States District Court for the Western District of New York. In order to overcome his procedural default - namely, the untimeliness of the petition - defendant made a claim of actual

Dixon-004228

innocence. The petition was denied by an order of District Court (Arcara, J., adopting recommendation of Bianchini, Magistrate Judge) issued on May 5, 2009.

10. In his current motion, defendant claims that (i) he is entitled to a new trial on the basis of newly discovered evidence and (ii) the People withheld evidence that defendant tested negative for gunshot residue after the shooting.

**Newly discovered evidence**

11. Defendant first moves for vacatur pursuant to CPL 440.10(1)(g), newly discovered evidence. In order to be sufficient, newly discovered evidence must fulfill all of the following requirements: "1) It must be such as will probably change the result if a new trial is granted; 2) It must have been discovered since the trial; 3) It must be such as could have not been discovered before the trial by the exercise of due diligence; 4) It must be material to the issue; 5) It must not be cumulative to the former issue; and, 6) It must not be merely impeaching or contradicting the former evidence" (*People v Salemi*, 309 NY 208, 216 [1955]).

12. The People's investigation revealed, conclusively, that defendant did not shoot Torriano Jackson, Aaron Jackson, or John Sullivan. Lamarr Scott was the shooter, just as he has maintained - albeit not always with the same version of events, and with the exception of a recantation before the grand jury - since August 12, 1991.

13. The evidence establishing Lamarr Scott's identity as the shooter includes, but is not limited to, (1) the credible statement of Tamara Frida, who was unquestionably present at the crime scene, has no association with defendant, and has consistently identified Scott as the shooter; (2) the

Dixon-004229

credible statement of Witness X[1], who was unquestionably present at the crime scene, has no association with defendant, and has identified Scott as the shooter; (3) Scott's public confession, followed by a sworn confession to the police, two days after the murder, (4) Scott's 2018 confession, which was made with full knowledge that it may adversely impact his parole application, and in which he satisfactorily explained why certain details of earlier statements were inconsistent; (5) the original statements of Mario Jarmon and Leonard Brown, which promptly identified Scott as the shooter, and important details of which were confirmed by the People's 2018 investigation; (6) the corroborating statements of several more witnesses, including Antoine Shannon, Walter Dennis, Anthony Watkins, Richard Morris, LaRosa Carson, Eric Doss, and Richard Jarrett, who say either that Scott was the shooter, that defendant was not the shooter, that Scott confessed in their presence, or that it was common knowledge on the streets that Scott was the shooter; (7) the fact that Aaron Jackson, despite identifying defendant as the shooter at trial, could not pick him out of a photo array two days after the murder; (8) the fact that Emil Adams, despite identifying defendant as the shooter, described the shooter in a way that matches Lamarr Scott and described his companion in a way that matches defendant; (9) the statement of Floyd Fisher, who testified at the perjury trial of Jarmon and Brown that he saw a man matching Scott's description standing over Torriano Jackson, a description that was consistent with that of Emil Adams; (10) the fact that John Sullivan's identification of defendant was made under unreliable circumstances - 150 feet away, at a bad angle, in the dark, and as he was running from a gunfire, having been shot himself; and (11) the professional opinion of the polygraph examiner that defendant was telling the truth when he denied shooting Torriano Jackson. As such, defendant was wrongfully convicted of murder in the second degree, attempted murder in the second degree, and assault in the third degree.

---

[1] Witness X is an individual who spoke to us on the condition that their identity remain confidential. However, we have confirmed the credibility of their account.

Dixon-004230

14. Under the laws of New York in 1991, a person was guilty of criminal possession of a weapon in the second degree when he knowingly possessed any machine gun or loaded firearm with intent to use unlawfully against another (Penal Law § 265.03 [Added by L. 1974. Ch. 1041; 1991]). The People's investigation revealed, conclusively, that defendant placed a loaded Tec-9 machine gun into his car, picked up Lamarr Scott, and drove him to Mario Jarmon's house, which was about eight houses from the murder scene. This was established by the statement of Lamarr Scott, Mario Jarmon's original statement to the police, the results of defendant's polygraph examination, and defendant's own admissions. In other words, he drove both the murder weapon and the murderer to the scene. Additionally, Lamarr Scott's statement demonstrates that defendant's intent was to use the weapon unlawfully against another. As such, defendant was properly convicted of criminal possession of a weapon in the second degree.

**Gunshot Residue Testing**

15. Defendant next moves for vacatur pursuant to CPL 440.10(1)(h), alleging a *Brady* violation. "There are three components of a true *Brady* violation: The evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued" (*Strickler v Greene*, 527 US 263, 281-282 [1999]).

16. The basis for this claim is a statement made by former ADA Chris Belling, the trial prosecutor, during an interview with two Georgetown University students for the Strong Island Films documentary "Making an Exoneree," on March 25, 2018. In response to one of the student's claim that there was no physical evidence, Belling said, "what physical evidence should there have been? This is a shooting on the street." The other student said that Valentino Dixon's clothes and hands were tested for gunshot residue (which is a claim that Dixon himself has previously made). Belling

-5-

Dixon-004231

pointed out that gunshot residue evidence is unreliable because it can easily result in either a false positive or a false negative, and that "if the ammunition used happened to be non-barium, -antimony, and -lead ammunition, then you'd get a negative, which is, by the way, what we got in the Valentino Dixon case." (Defendant's 440 motion, Video 2).

17. In a Buffalo News article from June 17, 2018, Belling was quoted as saying that "he has no recollection of whether forensic testing was done." In a phone call to the People on July 25, 2018, Belling explained that he had accepted the questioner's premise that there was gunshot residue testing, and he was explaining why a negative result would not tend to establish Valentino Dixon's innocence.

18. The People's investigation revealed, conclusively, that no gunshot residue testing was performed on defendant. Detective Jim Maroney of the Crime Scene Unit provided us with a copy of the entire evidence file, and it does not indicate that any such testing was performed. Maroney explained that had the testing been done, there would have been an evidence ticket for the testing kit, so the absence of a ticket indicates that the testing was not performed. Additionally, at the perjury trial of Leonard Brown and Mario Jarmon, Detective Henry Smardz, the evidence detective assigned to the case, testified that no gunshot residue testing was performed on anyone (Brown & Jarmon Trial Transcript, p. 360-365). Smardz explained that the Buffalo Police followed the FBI's guidelines for gunshot residue testing, which was not to do the testing more than five hours after the shooting (*id.*). In this case, defendant was pulled over 11-12 hours after the shooting.

19. As no gunshot residue testing was ever performed on defendant, it is impossible that the People withheld any such evidence. Belling obviously did not recall whether the testing was done, accepted the incorrect premise of the question, and misspoke, an understandable mistake after the passage of 27 years.

-6-

Dixon-004232

**Sentencing and Release**

20. Defendant's 5 to 15 year sentence on the criminal possession of a weapon conviction, when run consecutively to his aggregate 5⅓ to 16 year sentence on the four unrelated convictions, adds up to a 10⅓ to 31 year prison sentence. However, because none of these convictions is for anything higher than a class C felony, and all of the crimes were committed prior to his imprisonment under any of them, his aggregate sentence is deemed to be ten to twenty years imprisonment (Penal Law § 70.30[1][e][i]). As defendant has been continuously imprisoned since the day of the crime, his maximum expiration date was August 20, 2011, and he is entitled to immediate release.

WHEREFORE, the People respectfully request that defendant's motion to vacate his conviction for criminal possession of a weapon in the second degree be denied. The People consent to the vacatur of his convictions on all other counts on the basis of newly discovered evidence.

DAVID A. HERATY
ASSISTANT DISTRICT ATTORNEY

Subscribed and sworn to before me
this 17th day of September, 2018.

DONNA A. MILLING
Notary Public, State of New York
Qualified in Erie County
My commission expires on February 9, 2020.

Dixon-004233

STATE OF NEW YORK
COUNTY COURT : COUNTY OF ERIE

THE PEOPLE OF THE STATE OF NEW YORK

v

VALENTINO DIXON,

                       Defendant

AFFIDAVIT
OF SERVICE

Indictment No.
91-1476

STATE OF NEW YORK )
COUNTY OF ERIE    ) SS:
CITY OF BUFFALO  )

        SYLVIA COLLINS, being duly sworn, deposes and says:

        That she is over the age of twenty-one (21) years and is employed by the County of Erie at the Erie County District Attorney's Office; that on September 17, 2018 she served the within Answering Affidavit upon Donald M. Thompson, Esq., attorney for defendant, addressed to Donald M. Thompson, Esq., at his office located at 16 West Main Street, Suite 243, Rochester, New York 14614, by depositing a true copy of same, securely enclosed in a postpaid wrapper, in a Post Office box regularly maintained by the United States Postal Service at the Erie County Hall in the City of Buffalo, New York in the above-captioned matter.

                                                        SYLVIA COLLINS

Subscribed and sworn to before
me this 17th day of September, 2018.

DONNA A. MILLING
Notary Public, State of New York
Qualified in Erie County
My Commission Expires February 9, 2020.

Dixon-004234

---

| STATE OF NEW YORK | COUNTY | COURT. | COUNTY OF ERIE |

---

**THE PEOPLE OF THE STATE OF NEW YORK**

against

ANSWERING AFFIDAVIT

Indictment No. 91-1476

VALENTINO DIXON,
                 Defendant

---

**JOHN J. FLYNN**
District Attorney of Erie County
25 Delaware Avenue
Buffalo, NY 14202-3903
716/858-2424

---

SIR:
   PLEASE TAKE NOTICE; that a                                      , of
which the within is a copy, was duly entered in the office of the County Clerk of Erie County, on the
day of                                  , 20

                            **JOHN J. FLYNN**
                            District Attorney of Erie County
To:                         , Attorney(s) for

---

TO:
   Attorney(s) for
Date and personal service of a                                                    , of which
The within is a copy, and notice of entry thereof, is hereby admitted this        day of       , 20

                         Attorney(s) for

---

STATE OF NEW YORK, COUNTY OF                SS:

                                                             , being duly sworn deposes and says:
deponent is not a party to the action is over 18 years of age and resides at
On              , 20, deponent served the within                               upon
   at
the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post-paid properly addressed wrapper in-a post office-official depository under the exclusive care and custody of the United States Post Office within the State of New York.

Sworn to before me, this              day of                      , 20

---

Notary Public, Commissioner of Deeds

A-7B (Rev. 12/16) ECDA

Dixon-004235