Neufeld Scheck & Brustin, LLP

Tel: [212] 965-9081  
Fax: [212] 965-9084

99 Hudson Street, 8th Floor  
New York, New York 10013  
nsbcivilrights.com

February 22, 2022

**Via ECF**
Hon. Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

Re: *Dixon v. City of Buffalo et al*, Case No. 19-cv-01678 (WMS) (JJM)

Dear Judge McCarthy:

Plaintiff's counsel writes this letter in response to the Court's order (ECF No. 64). As we stated at the February 2, 2022 oral argument, we are beginning depositions the week of March 14, 2022. Pursuant to the Court's order, we respectfully request the Court's assistance in obtaining the homicide files for the investigations of Lynn DeJac, Cory Epps, and Josue Ortiz because they are relevant to Plaintiff's non-*Monell* claims.[1] As discussed below, the three cases are relevant as FRE 404(b) evidence and necessary for developing Plaintiff's claims against the individual Defendant officers.

**Background of the Parties' Discussions**

At a meet-and-confer on February 7, 2022, Plaintiff's counsel explained that production of the entire homicide files is necessary in order to provide the context necessary to understand each individual Defendant officer's conduct in each case. On February 9, 2022, the City responded that it was only willing to produce materials demonstrating that an individual Defendant engaged in a particular type of investigative activity and suggested also providing deposition transcripts from the Epps and Ortiz litigation.

While we agree that the Defendant officers' deposition transcripts are also relevant and should be produced, the remainder of Defendants' proposal is not acceptable. The documents offered would be unusable for depositions of the individual officers, because it would be impossible to know how the specific investigative action fit into the larger investigation without

---

[1] Plaintiff has asked the County three times—on February 7, 8, and 14, 2022—whether Defendant Christopher Belling was in any way involved in the Okongwu case. The County has not responded. Without that information, Plaintiff is unable to determine the Okongwu case's relevance for non-*Monell* purposes. In an abundance of caution and to avoid further delays in this case, Plaintiff respectfully requests that the Court also compel the production of the Okongwu homicide file and DA file.

the entire file. For example, it would be impossible to determine whether there were differing interviews of the same witness taken by different officers, and we would be unable to question the Defendant officer regarding discrepancies. In addition, we would lack information regarding the timeline of the case and what was known at the time of each investigative activity to understand the Defendant officer's conduct. In other words, each investigative action does not exist in a vacuum. Without the entire homicide file, we will have unnecessarily limited ways to use highly relevant materials. Furthermore, the City has not argued that there is any burden in producing the entire homicide files. Presumably it is less burdensome to produce the entire files—which we believe have been produced in other cases already—than to try to cull out only certain documents.

**Relevance of the Requested Homicide Files**

The DeJac, Epps, and Ortiz cases are relevant outside of *Monell* liability because they may show "a pattern, intent, and absence of mistake" under Rule 404(b) for individual Defendants Mark Stambach, Raniero Masecchia, and James Lonergan. *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990); *Dobson v. Dougherty*, No. 17-CV-1014-LJV-MJR, 2018 WL 6321390, at *5 (W.D.N.Y. Dec. 4, 2018) ("[C]ourts in the Second Circuit have held that incidents or complaints occurring after the events at issue in a Section 1983 lawsuit may be relevant and discoverable for reasons other than proving the existence of a municipal policy or custom.").

Mr. Dixon was wrongfully convicted and wrongfully incarcerated for 27 years due to the individual Defendant officers' misconduct in the investigation of the 1991 murder of Torriano Jackson. Complaint (ECF No. 1) ¶¶ 1–2. Among other things, Defendant Stambach threatened Emil Adams into identifying Mr. Dixon as the shooter. *Id.* ¶ 63. He also suppressed the exculpatory statement of Mario Jarmon. *Id.* ¶ 92. When Lamar Scott confessed to shooting Torriano Jackson, Stambach threatened him to stay silent. *Id.* ¶ 103. Stambach also improperly suggested that Mr. Dixon was the shooter during a photo array with Aaron Jackson. *Id.* ¶¶ 114–15. Stambach misrepresented and failed to accurately document his misconduct in obtaining false incriminating evidence. *Id.* ¶ 121. Defendant Masecchia fabricated a false typed statement from John Sullivan. *Id.* ¶ 80. When Leonard Brown told Masecchia that Lamar Scott was the actual shooter, Masecchia failed to document this exculpatory information. *Id.* ¶¶ 93, 111. Lastly, Defendant Lonergan memorialized a false "anonymous" tip to build a case against Mr. Dixon shortly after he was arrested. *Id.* ¶ 88.

The DeJac, Epps, and Ortiz cases all involve at least one of the named Defendants committing acts of similar investigative misconduct resulting in wrongful convictions. Specifically, just two years after Plaintiff was arrested, Defendant Lonergan fabricated evidence against Ms. DeJac by obtaining a false statement from Wayne Hudson, and Defendant Stambach then forced Mr. Hudson to reaffirm his false position. *Id.* ¶ 176. Defendant Stambach similarly fabricated evidence against Mr. Ortiz by forcing him to confess and then suppressed exculpatory evidence regarding the true nature of the "confession." *Id.* ¶¶ 184, 186. Lastly, in Mr. Epps's case, Defendants Stambach and Masecchia similarly suppressed exculpatory evidence pointing

to the true shooter by removing relevant information about the shooter in their prepared witness statements. *Id.* ¶ 179. Given the similarities in misconduct, these cases are thus potentially powerful FRE 404(b) evidence relevant to establishing the individual Defendants' unconstitutional misconduct in this case.

Moreover, the homicide files from the DeJac, Epps, and Ortiz cases are critical to Plaintiff's ability to develop his case. Under Rule 26, "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012, at *1 (W.D.N.Y. Oct. 31, 2018) (quotations omitted)). The DeJac, Epps, and Ortiz cases certainly "bear on or could reasonably lead to other matters that bear" on issues central to Plaintiff's claims. For instance, the Defendant officers' understanding of their training and applicable Buffalo Police Department policies is relevant to establishing liability for the individual Defendants (as evidence of, for example, their mindset in intentionally violating rules). *See, e.g.*, *Dufort v. City of New York*, 874 F.3d 338, 349 (2d Cir. 2017) (holding "Defendants' unusual decision to depart from normal [police] practice" must be construed against them on summary judgment). In that vein, the homicide files are incredibly useful to Plaintiff's deposition preparation and strategy because Plaintiff can use the Defendant officers' conduct in the cases as a starting point and tool to understand each individual's own knowledge of his training and what he believes constitutes a deviation of that training. In addition, because the investigations occurred after the Torriano Jackson homicide investigation, Plaintiff can ask the Defendant officers to compare their conduct in Plaintiff's case with their own conduct in the later investigations to further unravel their knowledge of their trainings and applicable policies.

For the reasons stated above, Plaintiff respectfully requests that the Court compel the production of the homicide files for the DeJac, Epps, Ortiz, and Okongwu cases and the deposition transcripts of the applicable Defendant officers from the Epps and Ortiz litigation. For the Okongwu case, we also request the DA file for use in Defendant Christopher Belling's deposition. We thank the Court for its continued attention to the matter.

Respectfully submitted,

/s/ Nick Brustin_____
Nick Brustin

*Counsel for Plaintiff*

cc: All Counsel (via ECF)