UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTINO DIXON,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF BUFFALO et al.,<br><br>        Defendants. | No. 19-cv-01678 (WMS) (HKS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL APPEARANCE AT A DEPOSITION**

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................................1

LEGAL STANDARD ........................................................................................................3

    I.    Mr. Sullivan has offered no basis or justification for failing to comply with the properly issued Subpoena. ...................................................................................4

    II.   Mr. Sullivan's testimony is critical to the Mr. Dixon's wrongful conviction suit. .............5

CONCLUSION ...................................................................................................................7

## BACKGROUND

On March 25, 2022, Plaintiff Valentino Dixon properly served a Subpoena to Testify at a Deposition ("Subpoena"), pursuant to Federal Rule of Civil Procedure 45, on non-party John Sullivan, a critical witness in this action. Mr. Sullivan never raised any objections on the relevance of his testimony, or on proper service of the subpoena. Despite the proper service of the subpoena and the importance of his testimony, on April 8, 2022, Mr. Sullivan failed to show up to his deposition. Accordingly, Plaintiff seeks a Court order compelling Mr. Sullivan to appear at a deposition and a notice that if Mr. Sullivan does not appear to the Court-ordered deposition, he may be held in contempt by the Court. Plaintiff does not know why Mr. Sullivan did not appear for the deposition but believes a court order and warning may help get him to comply for a rescheduled deposition.

Mr. Sullivan is a critical witness to Mr. Dixon's wrongful conviction case. Mr. Sullivan was present the night of the August 10, 1991 shooting and was shot by a stray bullet in the leg when Lamarr Scott starting firing towards Torriano Jackson. ECF No. 1, ("Complaint") ¶ 69.[1] Mr. Sullivan was taken to the hospital where he was interviewed by Defendant Buffalo Police Department ("BPD") officer John Vickerd. *Id.* Mr. Scott, who was six-feet tall and wearing black and white clothing, looked remarkably different from Mr. Dixon, who was five-foot-seven and not wearing black and white clothing. *Id.* ¶ 73. Despite describing Lamarr Scott and his clothing, according to Defendant Vickerd's report, Mr. Sullivan gave Vickerd Mr. Dixon's name. *Id.* ¶¶ 72–73. Later that afternoon, after Mr. Sullivan was released from the hospital, he gave a formal statement to Defendant BPD officer Raniero Massechia. *Id.* ¶ 80. Although Mr. Sullivan's initial

---

[1] A few days after the 1991 shooting, Lamarr Scott, confessed to the crime. Mr. Scott eventually pled guilty to the crime in 2018, after the Erie County District Attorney's Office's reinvestigation found Mr. Dixon to be innocent. *Id.*

1

description matched Lamarr Scott, he again named Valentino Dixon as the shooter. *Id.* ¶¶ 80–81. Although Mr. Sullivan described the true shooter, his identification was used as the sole basis to arrest Mr. Dixon, just twelve hours after the shooting. *Id.* ¶ 85; Affidavit of Nick Joel Brustin, Ex. A (BPD Complaint).

Plaintiff's investigator spent over two months searching for John Sullivan, who appears to not have stable housing, to serve him a subpoena to testify for a deposition. Affidavit of Nick Joel Brustin ¶ 3. On March 25, 2022, pursuant to Rule 45, Mr. Sullivan was served with the Subpoena to Testify at Deposition in a Civil Action ("Subpoena") at a gas station in Buffalo, New York at which he is known to frequent, along with a $40 witness fee check. Affidavit of Nick Joel Brustin, Ex. B (Subpoena), Ex. C (Proof of Service), Ex. E (March 25, 2022 Email from Tony Olivo). The Subpoena requested that Mr. Sullivan attend a deposition on April 8, 2022. Along with the Subpoena, Mr. Dixon's counsel included a letter explaining that the federal subpoena requires his presence in the case and providing him with counsel's contact information to discuss logistics of the deposition. Affidavit of Nick Joel Brustin, Ex. D (March 18, 2022 Letter to Sullivan).

Upon service of the Subpoena, Mr. Sullivan indicated that he would get in touch with his attorney Herbert Greenman of Lipsitz, Green, Scime and Cambria and have his attorney reach out to Plaintiff's counsel. Affidavit of Nick Joel Brustin, Ex. E (March 25, 2022 Email from Tony Olivo). Nick Brustin, attorney for Plaintiff, called Mr. Greenman twice before Mr. Sullivan's scheduled deposition. Affidavit of Nick Joel Brustin ¶ 4. Mr. Greenman informed Mr. Brustin that he had represented Mr. Sullivan in a prior matter and that after Mr. Sullivan was served with the subpoena, Mr. Sullivan called Mr. Greenman regarding the deposition. Mr.

2

Greenman agreed to help facilitate the deposition. Mr. Greenman called Mr. Sullivan at the number he believed that Mr. Sullivan provided, but it was a wrong number. *Id.* ¶ 4.

On April 8, 2022, counsel for all parties appeared virtually for the scheduled deposition in Buffalo, New York. Mr. Sullivan did not appear. *Id.* ¶ 6.

Because Mr. Sullivan is refusing to comply with the Subpoena, this Court should enforce the Subpoena and compel Mr. Sullivan to appear for a deposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 provides a means for parties to subpoena testimony from non-parties. *See generally* Fed. R. Civ. P. 45. "Absent an improperly issued subpoena or an 'adequate excuse' by the non-party, failure to comply with a subpoena made under Rule 45 may be deemed a contempt of the court from which the subpoena issued. Indeed, the judicial power to hold a non-party who has failed to obey a valid subpoena in contempt is the primary mechanism by which a court can enforce a subpoena." *Am. Precision Indus., Inc. v. Fed. Ins. Co.*, No. 14-CV-1050-RJA, 2018 WL 3422060, at *2–3 (W.D.N.Y. July 16, 2018) (quoting *Beare v. Millington*, No. 07-CV-3391, 2010 WL 234771, at *3 (E.D.N.Y. Jan. 13, 2010). "Put another way, a non-party who knowingly fails to comply with a duly issued subpoena and offers no justification for his or her failure to comply may be found in contempt under Rule 45." *Id.* (collecting cases). "Although Rule 45(g) permits a court to hold a person in contempt for failure to obey a subpoena 'without adequate excuse,' 'courts in the Second Circuit have often held that . . . a court should first issue an order compelling compliance with the subpoena.'" *Murphy v. Snyder*, No. CV101513JSAKT, 2019 WL 4396574, at *5 (E.D.N.Y. Aug. 6, 2019), *report and recommendation adopted*, No. 2:10-CV-01513, 2019 WL 4415430 (E.D.N.Y. Aug. 23, 2019) (quoting *Kerr v. Thomas*, No. 14 CIV 9168, 2017 WL 485041, at *4 (S.D.N.Y. Feb. 3, 2017)).

Accordingly, Plaintiff seeks an order compelling Mr. Sullivan to appear at a deposition and a notice that if Mr. Sullivan does not appear to the Court-ordered deposition, he may be held in contempt by the Court.

In addition, "[s]ubpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *Am. Precision Indus., Inc.*, 2018 WL 3422060, at *2 (quotation omitted) (collecting cases). "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Id.* (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)). Moreover, under Rule 26, the information sought must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Am. Precision Indus., Inc.*, 2018 WL 3422060, at *2 (considering proportionality in enforcing Rule 45 subpoena).

## ARGUMENT

**I.  Mr. Sullivan has offered no basis or justification for failing to comply with the properly issued Subpoena.**

Under Rule 45, a subpoena "may command a person to attend a . . . deposition . . . within 100 miles of where the person resides." Fed. R. Civ. P. 45(c)(1). "Service of a subpoena is governed by Rule 45(b)(1) . . . which states, in pertinent part, that '[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by the law.'" *Jalayer v. Stigliano*, No. CV102285LDHAKT, 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (quoting Fed. R. Civ. P. 45(b)(1)). "In addition, where required, the party serving the subpoena must establish proof of such service in accordance with Rule 45(b)(4), which states that '[p]roving service, when necessary, requires filing with the issuing court a statement showing the

date and manner of service and the names of the persons served. The statement must be certified by the server.'" *Id.* (quoting Fed. R. Civ. P. 45(b)(4)).

Here, Plaintiff's counsel caused to be served the Subpoena and a $40 witness fee check through personal service and have provided proof of service. Ex. B (Subpoena) and Ex. C (Proof of Service). Along with the subpoena, Mr. Dixon's counsel included a letter explaining that the federal subpoena requires his presence in the case and providing him with counsel's contact information to discuss logistics of the deposition scheduled for April 8, 2022. Ex. D (March 18, 2022 Letter to Sullivan). On notice that his deposition was scheduled for April 8, 2022, Mr. Sullivan called his lawyer, Mr. Greenman. Affidavit of Nick Joel Brustin ¶ 4. Despite Plaintiff counsel's multiple attempts to coordinate with Mr. Sullivan and his lawyer, Mr. Sullivan did not show to the deposition. *Id.* ¶¶ 4–6.[2]

Accordingly, given the proper service of the subpoena and Mr. Sullivan's lack of justification for complying with it, the Court should compel his testimony.

**II.   Mr. Sullivan's testimony is critical to the Mr. Dixon's wrongful conviction suit.**

"The enforceability of Rule 45 subpoenas is subject to the same relevancy prerequisites under Rule 26(b)(1)." *Cty. of Niagara v. Netherlands Ins. Co.*, No. 14-CV-737A(F), 2017 WL 2059808, at *3 (W.D.N.Y. May 15, 2017), *aff'd*, No. 14-CV-737-A(F), 2017 WL 3917133 (W.D.N.Y. Sept. 7, 2017); *Am. Precision Indus., Inc.*, 2018 WL 3422060, at *2. In that vein, "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012, at *1 (W.D.N.Y. Oct. 31, 2018) (internal quotations omitted) (quoting *Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-

---

[2] Mr. Greenman has agreed to help facilitate the deposition of Mr. Sullivan, in the event that the Court grants Plaintiff's Motion to Compel.

CV-06519(MAT), 2017 WL 3130380, at *1 (W.D.N.Y. July 24, 2017)). Moreover, "[f]ederal policy favors broad discovery in civil rights actions." *Ivery v. Baldauf*, No. 14-CV-6041, 2015 WL 13877948, at *1 (W.D.N.Y. Sept. 29, 2015) (quotation omitted). As a critical witness whose identification was the sole basis for Mr. Dixon's arrest, there is no question that Mr. Sullivan's deposition is relevant to Mr. Dixon's claims.

As the Court is aware, Mr. Dixon alleges the BPD and the individual defendant officers improperly suggested or coerced several witnesses, including Mr. Sullivan, into identifying Mr. Dixon as the shooter. Complaint ¶ 200. The fabricated evidence was part of the prosecution that led to Mr. Dixon's wrongful conviction, depriving Mr. Dixon of his constitutional rights under the Fourth Amendment, Fifth, and Fourteenth Amendments of the United States Constitution. *See generally Id.* ¶¶ 224–35 (discussing the fabrication of evidence in relation to Mr. Dixon's civil rights claims).

Defendant Vickerd interviewed John Sullivan at the hospital shortly after the shooting, where Mr. Sullivan described the actual shooter but nonetheless identified Mr. Dixon as the shooter. *Id.* ¶¶ 72–73. Later that afternoon, after Mr. Sullivan was released from the hospital, he gave a formal statement to Defendant Massechia, where he again named Valentino Dixon as the shooter. *Id.* ¶¶ 80–81. Whether BPD officers pressured Mr. Sullivan or improperly suggested to Mr. Sullivan to identify Mr. Dixon as the shooter is critical to Mr. Dixon's claims that the BPD officers fabricated evidence against him. Moreover, Mr. Sullivan's testimony is uniquely important to Mr. Dixon's wrongful conviction case because his identification was the only identification used as a basis to arrest Mr. Dixon, just twelve hours after the shooting. *Id.* ¶ 85; Ex. A.

Furthermore, compelling Mr. Sullivan's testimony is proportional to the needs of Mr. Dixon's civil rights case. Under Rule 26, proportionality considers:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Those factors weigh heavily in favor in compelling Mr. Sullivan's testimony.

To begin, Mr. Dixon spent 27 years wrongfully incarcerated because of defendants' unconstitutional misconduct. His lawsuit seeks to vindicate his rights under the United States Constitution. "The fact that [Mr. Dixon's] claims implicate important federal civil rights . . . counsels in favor of requiring greater disclosure under the Rules' proportionality standard." *Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2016 WL 7340282, at *8 (D. Conn. Dec. 19, 2016); *Walls v. City of New York*, 502 F. Supp. 3d 686, 695 (E.D.N.Y. 2020) ("The importance of the issues at stake in the action' is significant, as they involve civil rights."). In addition, the redress for the almost three decades in prison will likely be in the millions of dollars, making the amount in controversy quite high. Lastly, given that only Mr. Sullivan and the defendant officers know what was or was not said to him during their interactions, Mr. Dixon's lack of access to the information also weighs in favor of compelling Mr. Sullivan's testimony.

## CONCLUSION

The Subpoena was lawfully issued, properly served, and requests relevant testimony, proportional to the needs of Mr. Dixon's civil rights case. Mr. Sullivan has refused to comply with it. This Court should enforce the Subpoena and order Mr. Sullivan to testify in Mr. Dixon's

7

civil rights action and provide a notice that if Mr. Sullivan does not appear to the Court-ordered deposition, he may be held in contempt by the Court.

Dated: April 22, 2022
New York, New York

                                /s/ Nick Joel Brustin
                                Nick Joel Brustin
                                Mary Katherine McCarthy
                                Anna Benvenutti Hoffmann
                                Mary Katherine McCarthy
                                Sona Shah
                                Gerardo Romo

                                NEUFELD SCHECK & BRUSTIN LLP
                                99 Hudson Street, Eighth Floor
                                New York, NY 10013
                                T: (212) 965-9081

                                Donald M. Thompson

                                EASTON THOMPSON KASPEREK
                                SHIFFRIN LLP
                                The Powers Building
                                16 West Main Street, Suite 243
                                Rochester, New York 14614
                                T: (585) 423-8290