UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTINO DIXON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BUFFALO et al.,<br><br>    Defendants. | No. 19-cv-01678 (WMS) (JJM) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL APPEARANCE AT A DEPOSITION**

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................................1

LEGAL STANDARD .........................................................................................................3

    I.    Mr. Jackson has offered no basis or justification for failing to comply with the properly issued Subpoena. .......................................................................................4

    II.   Mr. Jackson's testimony is relevant to Mr. Dixon's wrongful conviction suit...................5

CONCLUSION....................................................................................................................7

i

## BACKGROUND

On March 24, 2022, Plaintiff Valentino Dixon properly served a Subpoena to Testify at a Deposition ("Subpoena"), pursuant to Federal Rule of Civil Procedure 45, on non-party Aaron Jackson, an important witness in this action. Mr. Jackson never raised any objections on the relevance of his testimony, or on proper service of the subpoena. Despite the proper service of the Subpoena and the importance of his testimony, on April 7, 2022, Mr. Jackson failed to show up to his deposition. Accordingly, Plaintiff seeks a Court order compelling Mr. Jackson to appear at a deposition and a notice that if Mr. Jackson does not appear to the Court-ordered deposition, he may be held in contempt by the Court.

Mr. Jackson is an important witness to Mr. Dixon's wrongful conviction case. Mr. Jackson is the brother of Torriano Jackson, whose murder on August 10, 1991 led to Mr. Dixon's wrongful conviction. Not only was Mr. Jackson present the night of the shooting, but he was also a central figure in the fight that precipitated it. Moments before Lamarr Scott began shooting that night, Aaron Jackson and his brother Torriano Jackson confronted Mario Jarmon outside the parking lot of Louie's Texas Red Hots, knocking him to the ground. ECF No. 1, ("Complaint") ¶¶ 49–52. Mr. Scott shot at the Jackson brothers as they were kicking Mr. Jarmon on the floor. *Id.* ¶¶ 50–52. Aaron Jackson was injured and transported to the hospital. *Id.* ¶ 113.

A couple days after the shooting, Defendant Buffalo Police Department ("BPD") officer Mark Stambach interviewed Mr. Jackson at the hospital and showed him a photo array, which included a photo of Mr. Dixon. *Id.* ¶ 114. Mr. Jackson did not know Mr. Dixon and told Defendant Stambach that he could not be sure who shot his brother because everything "happened so quick." *Id.* ¶¶ 115–16. Nonetheless, under those circumstances, Mr. Jackson selected Mr. Dixon. *Id.* ¶ 115. After a series of interactions with BPD officers, Mr. Jackson

1

identified Mr. Dixon as the shooter at Mr. Dixon's grand jury proceedings and again at his trial. *Id.* ¶¶ 117–19.

On March 24, 2022, pursuant to Rule 45, Mr. Jackson was served with the Subpoena to Testify at Deposition in a Civil Action at his cousin's house in Buffalo, New York, along with a $40 witness fee check. Affidavit of Nick Joel Brustin, Ex. A (Subpoena), Ex. B (Proof of Service), Ex. C (Declaration of Tony Olivo) ¶¶ 2–3. The Subpoena requested that Mr. Jackson attend a deposition on April 7, 2022. Along with the Subpoena, Mr. Dixon's counsel included a letter explaining that the federal subpoena requires his presence in the case and providing him with counsel's contact information to discuss logistics of the deposition. Affidavit of Nick Joel Brustin, Ex. D (March 18, 2022 Letter to Jackson).

Upon service of the Subpoena, Mr. Jackson exclaimed that there was "no [expletive] way" he would comply with the Subpoena. Ex. C (Declaration of Tony Olivo) ¶ 4. The investigator who served the Subpoena informed Mr. Jackson that he should contact Plaintiff's counsel regarding the Subpoena and the deposition it demanded. *Id.* ¶ 5. After Plaintiff's counsel did not hear from Mr. Jackson, Plaintiff's investigator called and left multiple messages to Mr. Jackson regarding the deposition to no avail. *Id.* ¶ 6.

On April 7, 2022, counsel for all parties appeared for the scheduled deposition in Buffalo, New York. Mr. Jackson did not appear. Affidavit of Nick Joel Brustin ¶ 3.

Because Mr. Jackson is refusing to comply with the Subpoena, this Court should enforce the Subpoena and compel Mr. Jackson to appear for a deposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 provides a means for parties to subpoena testimony from non-parties. *See generally* Fed. R. Civ. P. 45. "Absent an improperly issued subpoena or an 'adequate excuse' by the non-party, failure to comply with a subpoena made under Rule 45 may be deemed a contempt of the court from which the subpoena issued. Indeed, the judicial power to hold a non-party who has failed to obey a valid subpoena in contempt is the primary mechanism by which a court can enforce a subpoena." *Am. Precision Indus., Inc. v. Fed. Ins. Co.*, No. 14-CV-1050-RJA, 2018 WL 3422060, at *2–3 (W.D.N.Y. July 16, 2018) (quoting *Beare v. Millington*, No. 07-CV-3391, 2010 WL 234771, at *3 (E.D.N.Y. Jan. 13, 2010). "Put another way, a non-party who knowingly fails to comply with a duly issued subpoena and offers no justification for his or her failure to comply may be found in contempt under Rule 45." *Id.* (collecting cases). "Although Rule 45(g) permits a court to hold a person in contempt for failure to obey a subpoena 'without adequate excuse,' 'courts in the Second Circuit have often held that . . . a court should first issue an order compelling compliance with the subpoena.'" *Murphy v. Snyder*, No. CV101513JSAKT, 2019 WL 4396574, at *5 (E.D.N.Y. Aug. 6, 2019), *report and recommendation adopted*, No. 2:10-CV-01513, 2019 WL 4415430 (E.D.N.Y. Aug. 23, 2019) (quoting *Kerr v. Thomas*, No. 14 CIV 9168, 2017 WL 485041, at *4 (S.D.N.Y. Feb. 3, 2017)). Accordingly, Plaintiff seeks an order compelling Mr. Jackson to appear at a deposition and a notice that if Mr. Jackson does not appear to the Court-ordered deposition, he may be held in contempt by the Court.

In addition, "[s]ubpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *Am. Precision Indus., Inc.*, 2018 WL 3422060, at *2 (quotation omitted) (collecting cases). "The party issuing the subpoena must demonstrate that the information sought

is relevant and material to the allegations and claims at issue in the proceedings." *Id.* (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)). Moreover, under Rule 26, the information sought must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Am. Precision Indus., Inc.*, 2018 WL 3422060, at *2 (considering proportionality in enforcing Rule 45 subpoena).

## ARGUMENT

**I.   Mr. Jackson has offered no basis or justification for failing to comply with the properly issued Subpoena.**

Under Rule 45, a subpoena "may command a person to attend a . . . deposition . . . within 100 miles of where the person resides." Fed. R. Civ. P. 45(c)(1). "Service of a subpoena is governed by Rule 45(b)(1) . . . which states, in pertinent part, that '[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by the law.'" *Jalayer v. Stigliano*, No. CV102285LDHAKT, 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (quoting Fed. R. Civ. P. 45(b)(1)). "In addition, where required, the party serving the subpoena must establish proof of such service in accordance with Rule 45(b)(4), which states that '[p]roving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.'" *Id.* (quoting Fed. R. Civ. P. 45(b)(4)).

Here, Plaintiff's counsel caused to be served the Subpoena and a $40 witness fee check through personal service and have provided proof of service. Ex. A (Subpoena) and Ex. B (Proof of Service). Along with the subpoena, Mr. Dixon's counsel included a letter explaining that the federal subpoena requires his presence in the case and providing him with counsel's contact information to discuss logistics of the deposition scheduled for April 7, 2022. Ex. D

4

(March 18, 2022 Letter to Jackson). Once he was served, Mr. Jackson exclaimed that there was "no [expletive] way" he would comply with the Subpoena. Ex. C (Declaration of Tony Olivo) ¶ 5. Despite Plaintiff counsel's multiple attempts to coordinate with Mr. Jackson, Mr. Jackson did not show to the deposition. *Id.* ¶ 6.

Accordingly, given the proper service of the Subpoena and Mr. Jackson's lack of justification for complying with it, the Court should compel his testimony.

**II.    Mr. Jackson's testimony is relevant to Mr. Dixon's wrongful conviction suit.**

"The enforceability of Rule 45 subpoenas is subject to the same relevancy prerequisites under Rule 26(b)(1)." *Cty. of Niagara v. Netherlands Ins. Co.*, No. 14-CV-737A(F), 2017 WL 2059808, at *3 (W.D.N.Y. May 15, 2017), *aff'd*, No. 14-CV-737-A(F), 2017 WL 3917133 (W.D.N.Y. Sept. 7, 2017); *Am. Precision Indus., Inc.*, 2018 WL 3422060, at *2. In that vein, "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Cabarris v. Knight Transportation, Inc.*, No. 17-CV-6259, 2018 WL 5650012, at *1 (W.D.N.Y. Oct. 31, 2018) (internal quotations omitted) (quoting *Albino v. Glob. Equip. USA, Ltd.*, No. 6:14-CV-06519(MAT), 2017 WL 3130380, at *1 (W.D.N.Y. July 24, 2017)). Moreover, "[f]ederal policy favors broad discovery in civil rights actions." *Ivery v. Baldauf*, No. 14-CV-6041, 2015 WL 13877948, at *1 (W.D.N.Y. Sept. 29, 2015) (quotation omitted). Given Mr. Jackson's role in the altercation before the shooting and his misidentification of Mr. Dixon as the shooter, Mr. Jackson's testimony is relevant to Mr. Dixon's claims.

As the Court is aware, Mr. Dixon alleges the BPD and the individual defendant officers improperly suggested or coerced several witnesses, including Mr. Jackson, into identifying Mr. Dixon as the shooter. Complaint ¶ 200. The fabricated evidence was part of the prosecution that led to Mr. Dixon's wrongful conviction, depriving Mr. Dixon of his constitutional rights under

5

the Fourth Amendment, Fifth, and Fourteenth Amendments of the United States Constitution. *See generally Id.* ¶¶ 224–35 (discussing the fabrication of evidence in relation to Mr. Dixon's civil rights claims).

Defendant Stambach interviewed Mr. Jackson at the hospital a couple days after the shooting and showed him a photo array, which included a photo of Mr. Dixon. *Id.* ¶ 114. Mr. Jackson did not know Mr. Dixon and told Defendant Stambach that he could not be sure who shot his brother because everything "happened so quick." *Id.* ¶¶ 115–16. Nonetheless, under those circumstances, Mr. Jackson selected Mr. Dixon. *Id.* ¶ 115. After a series of interactions with BPD officers, Mr. Jackson identified Mr. Dixon as the shooter at Mr. Dixon's grand jury proceedings and again at his trial. *Id.* ¶¶ 117–19.

Furthermore, compelling Mr. Jackson's testimony is proportional to the needs of Mr. Dixon's civil rights case. Under Rule 26, proportionality considers:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Those factors weigh heavily in favor in compelling Mr. Jackson's testimony.

To begin, Mr. Dixon spent 27 years wrongfully incarcerated because of defendants' unconstitutional misconduct. His lawsuit seeks to vindicate his rights under the United States Constitution. "The fact that [Mr. Dixon's] claims implicate important federal civil rights . . . counsels in favor of requiring greater disclosure under the Rules' proportionality standard." *Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2016 WL 7340282, at *8 (D. Conn. Dec. 19, 2016); *Walls v. City of New York*, 502 F. Supp. 3d 686, 695 (E.D.N.Y. 2020) ("The importance of the issues at stake in the action' is significant, as they involve civil rights."). In

addition, the redress for the almost three decades in prison will likely be in the millions of dollars, making the amount in controversy quite high. Lastly, given that only Mr. Jackson and the BPD officers, including Defendant Stambach, know what was or was not said to him during their interactions, Mr. Dixon's lack of access to the information also weighs in favor of compelling Mr. Jackson's testimony.

## CONCLUSION

The Subpoena was lawfully issued, properly served, and requests relevant testimony, proportional to the needs of Mr. Dixon's civil rights case. Mr. Jackson has refused to comply with it. This Court should enforce the Subpoena and order Mr. Jackson to testify in Mr. Dixon's civil rights action and provide a notice that if Mr. Jackson does not appear to the Court-ordered deposition, he may be held in contempt by the Court.

Dated: April 27, 2022
New York, New York

/s/ Nick Joel Brustin
Nick Joel Brustin
Mary Katherine McCarthy
Anna Benvenutti Hoffmann
Mary Katherine McCarthy
Sona Shah
Gerardo Romo
NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson
EASTON THOMPSON KASPEREK SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290

7