UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTINO DIXON,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF BUFFALO, *et al.*,<br><br>      Defendants. | No. 19-cv-01678 (WMS) (JJM) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINDING OF CONTEMPT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

    I.    Mr. Dixon is wrongfully convicted and incarcerated for 27 years. .................................... 1

    II.    Mr. Jackson does not comply with the proper subpoenas and related Court orders. .......... 2

LEGAL STANDARD ............................................................................................................. 4

    I.    The Court may hold a person in contempt under Rule 45 and its inherent authority. ......... 4

    II.    The Court had broad discretion to impose sanctions sufficient to coerce compliance with its orders, including incarceration. ............................................................................... 5

    I.    Plaintiff has established by clear and convincing evidence that Mr. Jackson has not complied with the subpoenas and related court order. ................................................. 6

    II.    The Court should order Mr. Jackson arrested. ..................................................... 8

CONCLUSION ........................................................................................................................ 8

# INTRODUCTION

Plaintiff Valentino Dixon spent 27 years incarcerated for a Buffalo, New York murder he did not commit before he was eventually exonerated in 2018. His § 1983 suit against the police and prosecutors whose misconduct caused his wrongful conviction, which was filed in 2019, has been frustrated because a critical third-party witness, Aaron Jackson, has repeatedly and intentionally flouted valid court orders and subpoenas compelling his testimony. Regrettably, Mr. Jackson's willful and repeated disobedience of court orders and subpoenas, including orders by this Court to appear at a deposition, indicates nothing short of coercive sanctions would suffice to enforce the Court's valid order. Plaintiff respectfully submits that the Court has ample basis to support a finding of contempt, and that the imposition of coercive sanctions—including Mr. Jackson's arrest and detention until he attends a deposition—is necessary to compel compliance.

# BACKGROUND

**I.  Mr. Dixon is wrongfully convicted and incarcerated for 27 years.**

Plaintiff Valentino Dixon spent over 27 years wrongfully incarcerated for the 1991 murder of Torriano Jackson in Buffalo, New York, until a 2018 reinvestigation by the Erie County District Attorney's Office ("ECDAO") recognized his actual innocence. *See* Dkt. No. 1, ("Complaint") ¶¶ 1–2. A few days after the 1991 shooting that led to Torriano Jackson's death, the true shooter, Lamar Scott, confessed to the crime. *Id.* ¶ 10. Mr. Scott eventually pled guilty to the crime in 2018, after the ECDAO reinvestigation found Mr. Dixon to be innocent. *Id.*

Mr. Jackson is an important witness to Mr. Dixon's wrongful conviction case. Not only was Mr. Jackson present the night of the shooting, but he was also a central figure in the fight that precipitated it. Moments before Lamar Scott began shooting that night, Aaron Jackson and his brother Torriano Jackson confronted Mario Jamon outside the parking lot of Louie's Texas

1

Red Hots, knocking him to the ground. *Id.* ¶¶ 49–52. Mr. Scott shot at the Jackson brothers as they were kicking Mr. Jarmon on the floor. *Id.* ¶¶ 50–52. Aaron Jackson was injured and transported to the hospital. *Id.* ¶ 113.

A couple days after the shooting, Defendant Buffalo Police Department ("BPD") officer Mark Stambach interviewed Mr. Jackson at the hospital and showed him a photo array, which included a photo of Mr. Dixon. *Id.* ¶ 114. Mr. Jackson did not know Mr. Dixon and told Defendant Stambach that he could not be sure who shot his brother because everything "happened so quick." *Id.* ¶¶ 115–16. Nonetheless, under those circumstances, Mr. Jackson selected Mr. Dixon. *Id.* ¶ 115. Crucially, Mr. Dixon, who is 5 feet 7 inches tall and thin, looks remarkably different than Mr. Scott, who is 6 feet tall and accurately described as heavyset by other witnesses. *Id.* ¶¶ 57–59. After a series of interactions with BPD officers, Mr. Jackson identified Mr. Dixon as the shooter at Mr. Dixon's grand jury proceedings and again at his trial. *Id.* ¶¶ 117–19.

**II.  Mr. Jackson does not comply with the proper subpoenas and related Court orders.**

On March 24, 2022, pursuant to Rule 45, Mr. Jackson was served with the Subpoena to Testify at Deposition in a Civil Action (" First Subpoena") at his cousin's house in Buffalo, New York, along with a $40 witness fee check. Dkt. No. 80-3 (Subpoena), Dkt. No. 80-4 (Proof of Service), Dkt. No. 80-5 (Declaration of Tony Olivo) ¶¶ 2–3. The Subpoena requested that Mr. Jackson attend a deposition on April 7, 2022. Along with the Subpoena, Mr. Dixon's counsel included a letter explaining that the federal subpoena requires his presence in the case and providing him with counsel's contact information to discuss logistics of the deposition. Dkt. No. 80-6 (March 18, 2022 Letter to Jackson).

Upon service of the First Subpoena, Mr. Jackson exclaimed that there was "no [expletive] way" he would comply with the Subpoena. Dkt. No. 80-5 (Declaration of Tony Olivo) ¶ 4. The

2

investigator who served the Subpoena informed Mr. Jackson that he should contact Plaintiff's counsel regarding the Subpoena and the deposition it demanded. *Id.* ¶ 5. After Plaintiff's counsel did not hear from Mr. Jackson, Plaintiff's investigator called and left multiple messages to Mr. Jackson regarding the deposition to no avail. *Id.* ¶ 6. On April 7, 2022, counsel for all parties appeared for the scheduled deposition in Buffalo, New York. Mr. Jackson did not appear. Dkt. No. 80-2, Affidavit of Nick Joel Brustin ¶ 3.

On May 11, 2022, Plaintiff filed a motion to compel Mr. Jackson's appearance a deposition under Rule 45, which was personally served on Mr. Jackson on May 10, 2022. Dkt. No. 80-7 (Certificate of Service). On May 12, 2022, the Court then ordered a briefing schedule and asked that Plaintiff serve a copy of the test order upon Mr. Jackson. Dkt. No. 81. Mr. Jackson was served with the text order via USPS mail on May 16, 2022. Dkt. No. 82. Mr. Jackson did not respond the motion and on June 28, 2022. Dkt. No. 86. The Court granted Plaintiff's motion to compel his appearance at a deposition, specifying that: "Mr. Jackson is ordered to appear for the next scheduled deposition in this case, and is cautioned that his unexcused failure to do so may result in him being held in contempt pursuant to Fed. R. Civ. P. 45(g)." *Id.*

On July 30, 2022, Mr. Jackson was served with a subpoena for a deposition for September 14, 2022 ("Second Subpoena"), a copy of the Court's order compelling his deposition, and a letter from Plaintiff's counsel dated July 18, 2022. *See* Declaration of Nick Brustin, Ex. A (Documents personally served on Aaron Jackson on July 30, 2022); Ex. B (Proof of Service). Upon service of the Second Subpoena and the Court's order, Plaintiff's investigator informed Mr. Jackson that failure to appear to the deposition may result in his arrest. *See* Declaration of Nick Brustin, Ex. C (Declaration of Maria DiPirro) ¶ 5. Mr. Jackson then

3

indicated that "they should send the Marshals." *Id.* On September 6, 2022, Plaintiff's counsel called Mr. Jackson to remind him of his obligations to attend the deposition, and Mr. Jackson again explained that he would not show up to the deposition. *See* Declaration of Nick Brustin ¶ 3.

On September 14, 2022, counsel for all parties attended a deposition at 70 Niagara Street, Buffalo, New York, the location identified in the Second Subpoena. *See* Declaration of Nick Brustin ¶ 4. Mr. Jackson did not appear at the deposition. *See id.*

## LEGAL STANDARD

**I.    The Court may hold a person in contempt under Rule 45 and its inherent authority.**

"Embedded in Anglo-American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person . . . in civil contempt, and then imprisoning him until he complies." *In re Martin-Trigona*, 732 F.2d 170, 174 (2d Cir. 1984) (quoting *In re Grand Jury Investigation (Braun)*, 600 F.2d 420, 422 (3d Cir.1979)). Accordingly, "[i]t is well-settled that federal courts have inherent power to punish contempt." *Loc. 807 Lab. Mgmt. Pension Fund v. City Elevator Corp.*, No. 19CV4688ENVCLP, 2021 WL 7906554, at *1 (E.D.N.Y. Sept. 17, 2021) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) and *Abrams v. Terry*, 45 F.3d 17, 23 (2d Cir. 1995)). In addition to the District Court's inherent authority,[1] Federal Rule of Civil Procedure 45 provides that a court "may hold in contempt a person who,

---

[1] Only the District Court may order contempt here. "While district courts have wide discretion in imposing sanctions for failure to comply with discovery orders . . . United States magistrate judges have limited civil contempt authority." *CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*, No. 115CV09857PGGSDA, 2022 WL 1321386, at *2 (S.D.N.Y. May 3, 2022) (quoting *Funnekotter v. Republic of Zimbabwe*, No. 09-CV-08168 (CM) (THK), 2011 WL 5517860, at *2 (S.D.N.Y. Nov. 10, 2011). "In the absence of the parties' consent to a magistrate judge's exercising complete jurisdiction pursuant to 28 U.S.C. § 636(c), a magistrate judge can neither grant nor deny a motion for contempt." *Id.* (citing *Comverse, Inc. v. Am. Telecommunications, Inc. Chile S.A.*, No. 07-CV-11121 (PKL) (HBP), 2009 WL 464446, at *2 (S.D.N.Y. Feb. 24, 2009)).

having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g). "Indeed, the judicial power to hold a non-party who has failed to obey a valid subpoena in contempt is the primary mechanism by which a court can enforce a subpoena." *Am. Precision Indus., Inc. v. Fed. Ins. Co.*, No. 14-CV-1050-RJA, 2018 WL 3422060, at *2–3 (W.D.N.Y. July 16, 2018) (quoting *Beare v. Millington*, No. 07-CV-3391, 2010 WL 234771, at *3 (E.D.N.Y. Jan. 13, 2010). Furthermore, Local Rule 83.4 provides a mechanism and process for the Court to find a person in contempt. While the Court has multiple sources of authority for finding a person in contempt when failing to comply with a subpoena and related court orders, "[t]he Court need not choose between these sources of contempt power." *In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777, at *10 (S.D.N.Y. June 15, 2020) (citing *Chambers*, 501 U.S. at 50).

"In each case, contempt is appropriate where a party deliberately violates a clear and unambiguous order to appear for a deposition pursuant to a subpoena." *Id*. Specifically, "[a] court may hold a party in contempt 'if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner.'" *Scalia v. Zetti's Maple, Inc.*, No. 20-MC-11 (JLS), 2021 WL 267652, at *2 (W.D.N.Y. Jan. 27, 2021) (quoting *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016)).

II.   **The Court had broad discretion to impose sanctions sufficient to coerce compliance with its orders, including incarceration.**

"Civil contempt sanctions 'have two purposes: to coerce compliance with a court order and to compensate a plaintiff." *Id.* (quoting *CBS Broad. Inc.*, 814 F.3d at 101 (citation omitted). "When 'the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance.'" *Id.* (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*,

5

073 F.2d 53, 57 (2d Cir. 1982)). "Where the purpose of a civil sanction is to make a party comply, the court must exercise its discretion in determining the proper sanction, considering the 'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Carrington v. Graden*, No. 18 CIV. 4609 (KPF), 2021 WL 1087772, at *1 (S.D.N.Y. Feb. 8, 2021) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)).

As described above, "[i]t is a widely-held and long standing principle that detention as a means of coercing compliance with the court's order was an option well within the district court's inherent authority." *Close-Up Int'l, Inc. v. Berov*, 474 F. App'x 790, 795 (2d Cir. 2012). "In this regard, the court may resort to incarceration as a coercive sanction for civil contempt, such that 'the contemnor is able to purge the contempt and obtain his release by committing an affirmative act.'" *Carrington*, 2021 WL 1087772, at *1 (quoting *Int'l Union Mine Worker of Am. v. Bagwell*, 512 U.S. 821, 828-29 (1994)).

## ARGUMENT

**I. Plaintiff has established by clear and convincing evidence that Mr. Jackson has not complied with the subpoenas and related court order.**

Mr. Dixon has established by clear and convincing evidence that Mr. Jackson has failed to comply with the subpoenas and related Court orders. To demonstrate contempt, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 (2d Cir. 2014) (quoting *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir.2003)). "A clear and unambiguous order is one that 'leaves no uncertainty in the minds of those to whom [the order] is addressed.'" *Id.* at 143 (quoting *Perez*, 347 F.3d at 424).

6

The Court's Order was clear, and the accompanying subpoenas, made clear that Mr. Jackson's testimony was required in a federal lawsuit and the Court's order further clearly cautioned him that that failure to appear to a deposition may result in Mr. Jackson being held in contempt. As the Court noted in its order compelling Mr. Jackson's testimony, Mr. Dixon issued a proper subpoena for an April 7, 2022 deposition, and Mr. Jackson was properly served, but Mr. Jackson refused to attend the deposition. Dkt. No. 86. In addition, Mr. Jackson was properly served a subpoena for a deposition on July 30, 2022 and was also provided with a copy of the Court's order, in which he ordered to attend the deposition and further "cautioned that his unexcused failure to do so may result in him being held in contempt pursuant to Fed. R. Civ. P. 45(g)." *Id.* Despite the proper service and the Court's clear warning, Mr. Jackson failed to attend the September 14, 2022 deposition.

The subpoena and Court orders were valid, they were clear, and Mr. Jackson had the ability to comply with them but refused to do so. Crucially, Mr. Jackson was clearly aware of the subpoenas and order and on multiple occasions expressed to counsel or process servers that he understood his obligation to attend and was willfully refusing to do comply with the court order and subpoenas. *See* Dkt. No. 80-5 (Declaration of Tony Olivo) ¶ 4; Declaration of Nick Brustin ¶ 3; Ex. C (Declaration of Maria DiPirro) ¶ 5

Furthermore, it is clear that Mr. Jackson "has not diligently attempted to comply in a reasonable manner." *Gucci Am., Inc.*, 768 F.3d at 142. Rather, Mr. Jackson has expressed that he would not attend a deposition and that Plaintiff and the Court should "should send the Marshals." Declaration of Nick Brustin, Ex. C (Declaration of Maria DiPirro) ¶ 5.

Accordingly, Plaintiff has established by clear and convincing evidence that Mr. Jackson has violated the proper subpoenas and related Court order. *See Perez v. Walmart Inc.*, No. 21-

7

CV-04522 (JMW), 2022 WL 4329769, at *2 (E.D.N.Y. Sept. 19, 2022) (holding a non-party in contempt for refusing to show up to Court-ordered deposition).

### II.  The Court should order Mr. Jackson arrested.

Given Mr. Jackson's consistent flouting of the Court's order and proper subpoenas, Plaintiff respectfully submits that the there is ample basis for the Court to find that Mr. Jackson is in contempt, and that the only way to obtain compliance with the Court's order would be if Mr. Jackson were ordered detained until he either sits for a deposition or agrees that he will voluntarily appear at a scheduled deposition. *See Close-Up Int'l, Inc.*, 474 F. App'x at 795 (noting that the Court may order coercive incarceration after a finding of contempt). As such, Plaintiff respectfully requests that the Court hold Mr. Jackson in contempt and order that he be arrested and detained until either he sits for a deposition or he commits to voluntarily appearing at a deposition when it can be scheduled.[2]

### CONCLUSION

Plaintiff has established by clear and convincing evidence that Mr. Jackson has violated proper subpoenas and related Court orders. The Court should hold Mr. Jackson in contempt and order him to be detained until he either has a deposition or agrees to voluntarily agree a deposition when it is ordered.

Dated: October 5, 2022
New York, New York

/s/ Nick Joel Brustin

Nick Joel Brustin
Mary Katherine McCarthy
Anna Benvenutti Hoffmann

---

[2] Although Plaintiff reserves his right to seek fees and expenses should the Court eventually find Mr. Jackson to be in contempt, *see Ametek, Inc. v. N. Shore Int'l, Inc.*, No. 16CV2258SJFARL, 2017 WL 3172821, at *3 (E.D.N.Y. July 26, 2017); Local Rule 84.3, his focus is on obtaining compliance with the court order for Mr. Jackson's deposition testimony.

Mary Katherine McCarthy
Sona Shah
Gerardo Romo

NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson
EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290