UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

VALENTINO DIXON,

    Plaintiff,

v.

CITY OF BUFFALO, *et al.*,

    Defendants.

No. 19-cv-01678 (WMS) (JJM)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRODUCTION OF DOCUMENTS BY DEFENDANT COUNTY OF ERIE**

**FACTUAL BACKGROUND**

Plaintiff Valentino Dixon spent over 27 years wrongfully incarcerated for the 1991 murder of Torriano Jackson in Buffalo, New York, until a 2018 reinvestigation by Defendant Erie County (the "County") recognized his actual innocence. *See* Complaint and Jury Demand, ¶¶ 1–2 (Dkt. No. 1).[1]

A few days after the 1991 shooting that led to Torriano Jackson's death, the true shooter, Lamar Scott, confessed to the crime. ¶ 10. Mr. Dixon—present in the area that night, along with approximately one hundred other bystanders—was not involved. Mr. Dixon (five feet seven inches tall and slim) did not look anything like the true shooter, Mr. Scott (six feet tall and heavyset), who was accurately described to the police by a number of witnesses. ¶¶ 4, 57, 59, 64.

Defendants built their case against Mr. Dixon by using improper suggestion and coercion to induce three witnesses (Emil Adams, Aaron Jackson and John Sullivan) to falsely identify him as the shooter. ¶¶ 7, 59-84, 112-122. These three false "identifications" were the core of the prosecution, and the only evidence at Mr. Dixon's trial that specifically incriminated him. *Id.* Not only did none of the other nearly one hundred people at the scene misidentify Mr. Dixon as the shooter, but some witnesses specifically told Defendants that Mr. Dixon was *not* involved in the shooting. ¶ 8, 11, 64. When two eyewitnesses, Mario Jarmon (now deceased) and Leonard Brown, tried to testify that they saw Mr. Scott, not Mr. Dixon, shoot Torriano Jackson, Defendant Belling threatened them, charging and causing them to be wrongfully convicted of perjury. ¶¶ 11, 94.

---

[1] All references to paragraph numbers are to paragraphs in the Complaint and Jury Demand.

1

In 2018, the Erie County District Attorney, John Flynn, thoroughly reinvestigated the crime, interviewing over thirty witnesses, and concluded what many had long known: Mr. Dixon was innocent. ¶ 144. The true shooter was Lamar Scott—someone who had initially and repeatedly confessed to the crime. On September 19, 2018, Mr. Dixon's convictions for the shooting were vacated and Mr. Scott pled guilty. ¶¶ 145-46.

## PROCEDURAL HISTORY

The County provided its first privilege log on February 17, 2022. In response to Plaintiff's repeated requests to supply additional information regarding certain entries, the County amended its privilege log for the first time on June 3, 2022. On July 29, 2022, Plaintiff sent a letter to the County explaining that the amended privilege log continued to fail to meet the requirements of L.R. 26(d). Among other issues, the privilege log failed to list authors, recipients, dates, and subject matter of the documents at issue. *See* Exhibit 1 (Plaintiff's July 29th letter attached as Exhibit B). The letter also explained that the County was obligated to produce certain documents listed on the June privilege log because Plaintiff has a substantial need for them in order to prosecute his claims. *Id.* After a meet and confer call on August 24, 2022, the County provided the August Privilege Log, which failed to remedy the noted deficiencies. *Id.* (August 25th privilege log attached as Exhibit A). The County also did not produce the documents that Plaintiff requested.

On September 30, 2022, Plaintiff submitted a letter to the Court regarding the privilege log issues in order to begin the discovery dispute process. *Id.* The County responded to Plaintiff's letter on October 6, 2022. In response to the letters, the Court held a status conference on October 11, 2022, and instructed the parties to submit briefing on the issues raised. *See* Docket Nos. 91, 94.

## LEGAL STANDARD

The party claiming it is protected from producing responsive relevant documents has the burden of demonstrating that it has met the requirements to assert such protection. *See* Fed. R. Civ. P. 26(b)(5); Local Rule 26(d). Even where the criteria are met, that is not the end of the inquiry regarding whether production is required.

"Where documents are prepared in anticipation of litigation, a party may be entitled to them by showing 'that it has substantial need for the materials ... and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Klosin v. E.I. du Pont de Nemours & Co.*, 561 F. Supp. 3d 343, 358 (W.D.N.Y. 2021), citing Fed. R. Civ. P. 26(b)(3)(A)(ii). "A substantial need exists 'where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Id.*

## ARGUMENT

I.  **Plaintiff has a substantial need for documents relating to the County's initial investigation and reinvestigation of the 1991 shooting, as well as the perjury trial.**

The County asserts that it is protected from producing the following documents that are relevant to Plaintiff's claims: (1) documents relating to statements made in connection with the original investigation of the 1991 shooting; (2) documents relating to the perjury trial, which was based on statements witnesses made regarding the 1991 shooting; (3) documents relating to statements made in connection with the reinvestigation of the 1991 shooting.[2]

Plaintiff believes he has a substantial need for at least the following documents, regardless of whether these documents are properly subject to claims of privilege or protection:

---

[2] The County interviewed 30 witnesses in connection with the reinvestigation. ¶ 144.

3

|    | Bates No.        | Date     | Author/Recipient                                                                                 | Privilege         | Type                                                               | Further Description                                                                                                |
|----|------------------|----------|--------------------------------------------------------------------------------------------------|-------------------|--------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------------------|
| 1. | COE002499-2500   | 8/12/91  | N/A                                                                                              | W/P and T/P       | Handwritten notes- attorney impressions                            | Notes 8/12/91 re Lamar Scott interview and further tasks                                                           |
| 2. | COE002503-2505   | None     | N/A                                                                                              | W/P and T/P       | Handwritten notes-attorney impressions                             | Notes re witnesses                                                                                                 |
| 3. | COE002530-2532   | None     | N/A                                                                                              | W/P and T/P       | Handwritten notes                                                  | Impressions – trial prep materials; notes re statements of Jarmon, Brown, Kenny M                                  |
| 4. | COE002541-2544   | None     | N/A                                                                                              | W/P and T/P       | Handwritten notes re: evidence, witnesses, attorney impressions    | Attorney notes from reinvestigation                                                                                |
| 5. | COE003388-3390   | 10/13/92 | From: Frank A. Sedita III To: Richard G. Shanley, Confidential Criminal Investigator             | W/P, T/P, D/P     | Internal memorandum                                                | Identifying and describing witnesses relevant to perjury trial                                                     |
| 6. | COE003391-3392   | None     | N/A                                                                                              | W/P and T/P       | Handwritten Attorney Notes                                         | Work product and trial preparation materials, notes based on review of statements to police, trial preparation notes |
| 7. | COE003408-3446   | None     | Author 1                                                                                         | W/P and T/P       | Handwritten Attorney Notes                                         | Work product and trial preparation materials, trial preparation notes based on review of statements, transcripts from |

4

|     | Bates No. | Date | Author/ Recipient | Privilege | Type | Further Description |
| --- | --- | --- | --- | --- | --- | --- |
|     |     |     |     |     |     | Dixon grand jury and trial proceedings |
| 8.  | COE003447-3481 | None | Author 1 | W/P and T/P | Notes re: Witnesses | Work product and trial preparation materials relating to perjury trial |
| 9.  | COE003494-3497 | 9/23/92-12/15/92 | Author 1 | W/P and T/P | Notes re: Contacts Made | Notes re trial preparation for perjury trial |
| 10. | COE003509-3510 | 8/12/91 | N/A | W/P and T/P | Handwritten Attorney Notes | Notes re Lamar Scott interview and further tasks |
| 11. | COE003738-3739 | none | N/A | W/P and T/P | Handwritten Attorney Notes | Notes regarding 1st statement given by Leonard Brown |
| 12. | COE0003740-3761 | none | N/A | W/P and T/P | Handwritten Attorney Notes | Summary of investigation materials and grand jury testimony, appears to have generated as part of the reinvestigation by or at the direction of David Heraty |
| 13. | COE004301-4302 | 3/2/18 | From: David Herary To: Michael Keane | D/P, W/P and A/C | Email | Reinvestigation: Attorney analysis of facts underlying Dixon conviction |
| 14. | COE004303-4304 | 3/1/18 | From: David Herary To: Michael Keane | D/P, W/P and A/C | Email | Reinvestigation: timeline, legal analysis of issues relevant to 440 response; handwritten attorney notes |
| 15. | COE004422-4423 | none | N/A | W/P and A/C | Handwritten Attorney Notes | Chart of involved people |
| 16. | COE004758-4774 | 9/11/18 | David Heraty, Sara Dee | D/P, W/P and A/C | Internal Memo to DA 2018 Reinvestigation |     |

5

| Bates No. | Date | Author/Recipient | Privilege | Type | Further Description |
|---|---|---|---|---|---|
| | | and Joe Riga | | | |

These documents appear to be crucial to Plaintiff's ability to prove his claims against Defendants. As discussed above, Plaintiff alleges that: Defendant Stambach coerced Emil Adams and Aaron Jackson into making false identifications of Mr. Dixon; Defendant Vickerd used improper suggestion to cause Mr. Sullivan to falsely identify Mr. Dixon as the shooter; Defendant Masecchia bolstered Mr. Sullivan's through improper coercion; and Stambach coerced Lamarr Scott into falsely claiming that Mr. Dixon was the shooter. ¶ 226. Plaintiff also alleges that the Defendant officers fabricated evidence, including fabricating both the documentation related to their improper suggestive procedures and a false "anonymous" tip from Defendant Lonergan. ¶ 226. In addition, Plaintiff alleges that Defendant Belling, acting as an investigator, worked with Stambach to improperly coerce Mr. Adams and Mr. Scott into identifying Mr. Dixon as the shooter. *Id.*

Whether the prosecutor knew that the Defendant officers misled or pressured the witnesses is directly relevant to establishing a violation of Mr. Dixon's constitutional rights. *See Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) ("In the absence of evidence that [the officer] misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of [plaintiff's] constitutional rights"). Similarly, in order to prove the Defendant officers liable for fabricating evidence, Plaintiff must show that the prosecutor relied on the fabricated evidence because "[t]o prove a Section 1983 fair trial claim, a plaintiff must establish that," *inter alia* "the officer forwarded the false information to prosecutors" and "the false information was likely to influence a jury's decision." *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021) (quotation omitted). Moreover, if Belling had a hand in "fabricating evidence through false

6

statements or omissions that are both material and made knowingly," as alleged, then he is not protected by absolute immunity. *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015).

In addition, Plaintiff alleges that Defendants Stambach, Lonergan, Vickerd, and Masecchia deprived Plaintiff of his right to a fair trial by withholding material exculpatory and impeachment evidence from prosecutors and the defense including evidence of their misconduct in obtaining false identifications. ¶ 227. The prosecutor's knowledge of whether the officers withheld material exculpatory and impeachment evidence is directly relevant to establishing the Defendant officers' liability. *See, e.g. Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) (police satisfy Brady obligations when they provide exculpatory evidence to prosecutors); *Ulerio v. City of New York*, No. 18 CIV. 2155 (GBD), 2018 WL 7082155, at *8 (S.D.N.Y. Dec. 20, 2018) (no Brady violation where prosecutors had knowledge of the relevant evidence).

Lastly, in order to state a claim for malicious prosecution Plaintiff must show that "there was no probable cause for the proceeding." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quotation marks omitted). While an indictment creates a presumption of probable cause, the presumption may be rebutted by showing "that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or the District Attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in bad faith[.]" *Hicks v. Marchman*, 719 F. App'x 61, 65 (2d Cir. 2018) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82–83 (1983)). As such, what the District Attorney's office knew or relied on is directly related to Plaintiff's malicious prosecution claim.

### A. Witness information is essential to proving Plaintiff's claims.

While several entries in the privilege log describe "witnesses" and "statements" (*see, e.g.,* entries 1-5, 8, 11 above), as well as the reinvestigation that involved 30 witness interviews (*see, e.g.,* entry 16 above), the County never provided the names of the witnesses at issue despite

7

Plaintiff's explicit requests to do so. The County also often fails to provide authors, recipients and dates as well (*see, e.g.,* entries 2-4 above). Thus, it is impossible for Plaintiff to fully assess the nature of the documents and the validity of the County's claims of protection from production.

      Nonetheless, it is well-established in this Circuit that in cases alleging police and prosecutor misconduct, Plaintiffs have a substantial need to discover documents like these, which include witness statements and statements that officers made to prosecutors. As discussed *supra*, determining what the police and prosecutors knew, and when they knew it, is essential information needed to prosecute Plaintiff's claims. *See Abdell v. City of New York*, No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006) ("in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors"); *Cohen v. City of New York*, 255 F.R.D. 110, 125-26 (S.D.N.Y. Nov. 10, 2008) (substantial need for witness notes where the notes were the product of contemporaneous observations, could not be replicated, and arrests and police misconduct go to the heart of the claims in the litigation); *In re McRay, Richardson, Santana, Wise, & Salaam Litig.*, No. 03 CIV. 9685 DAB RLE, 2011 WL 5880994, at *5 (S.D.N.Y. Nov. 22, 2011), *on reconsideration in part,* No. 03 CIV. 9685 DAB RLE, 2012 WL 1450428 (S.D.N.Y. Apr. 26, 2012) (plaintiff showed a substantial need for documents related to ADA investigation of him where ADA's misconduct was "squarely at issue").

      The passage of time since both the 1991 shooting, and the reinvestigation that led to Plaintiff's exoneration, only reinforces Plaintiff's need for the documents at issue. As this Court is aware, several key witnesses (Emil Adams, Aaron Jackson and John Sullivan) have refused to appear for their depositions and Plaintiff has been forced to begin contempt proceedings in order

to compel their depositions (*see, e.g.,* Docket No. 92). Notably, at least one key witness, Mario Jarmon, is now deceased. Even where witnesses are still available, their recollections of facts from over thirty years ago will not be the same today as it was back then. Indeed, in *Abdell*, the court recognized that witness memories may lapse after just two years, observing that the "difficulty of recalling the details of chaotic events that took place more than two years ago is likely to diminish the utility of the testimony." *Abdell*, 2006 WL 2664313 at *7; *see also Jackson v. Nassau Cnty.*, 340 F.R.D. 539, 549 (E.D.N.Y. 2022) ("memories fade over time, and Plaintiff will certainly need to compare earlier testimony of witnesses to properly prepare for their trial testimony."); *Johnson v. Bryco Arms*, No. 03-cv-2582 (JBW), 2005 WL 469612, at *5–6 (E.D.N.Y. Mar. 1, 2005) (requiring production of witness statement in order to assess credibility issues).[3] Moreover, information relating to the perjury trial is directly relevant to Plaintiff's claims, given the allegations that Mr. Brown and Mr. Jarmon were prosecuted because they refused to identify Mr. Dixon as the perpetrator of the 1991 shooting.

Therefore, all documents concerning witness statements and the facts underlying the County's investigations should be produced as they are essential to Plaintiff's claims that Defendants were aware that Plaintiff was not the true perpetrator at the time of his prosecution.

### B. Included "mental impressions" of attorneys do not preclude production when there is a substantial need for documents.

The County cannot avoid its obligation to produce documents essential to Plaintiff's claims by characterizing the documents as "attorney impressions" and "analysis." Courts in the Second

---

[3] Additionally, to the extent it is relevant to the Court's analysis, witness statements are treated as fact, not opinion work product, even when summarized by counsel. *Abdell*, 2006 WL 2664313 at *6. "Just because the statements were summarized rather than transcribed verbatim does not mean they necessarily reflect the thought processes of the person who took them…. " *Moroughan v. Cnty. of Suffolk*, No. CV12512JFBAKT, 2018 WL 11268801, at *7 (E.D.N.Y. Feb. 6, 2018) (finding substantial need for investigative notes).

Circuit have held that even "core work product" must be produced where Plaintiff has demonstrated a substantial need for the documents at issue. For example, in *McRay*, the court recognized that the "best evidence about [ADA] involvement is contained in their notes" and because of the "allegations regarding the initial investigation, and the fact that DANY has previously...request[ed] the...convictions be vacated...the interests favoring disclosure of core work product related to the ADA's involvement in the investigation outweigh" any other interests. *In re McRay,* 2011 WL 5880994 at *5. The same is true here.

The decision in *Greene v City of New York*, a case similar to this one, is illustrative here. No. 08-cv-243 (RJD), 2012 WL 5932676 (E.D.N.Y. Nov. 27, 2012). *Greene* was a wrongful conviction case, where plaintiff alleged false identification due to the police pressuring witnesses. *Id.* at *1. The court held that the ADA's handwritten notes, which were core work product, must be produced due to substantial need because they related to the following subjects:

- Information the ADA was aware of at the time, included in ADA's "handwritten notes, conveying his opinions and mental impressions" regarding witnesses interviewed by police, *id.* at *6;

- Mental impressions of witnesses, considering nearly 30 years had passed since the criminal case, *id.* at *7;

- Preparation for an opening statement, because the notes "may shed light on the broader context in which the alleged misconduct took place," *id.* at *9;

- "[I]nformation about [the witness's] ability to identify plaintiff, which goes to the heart of plaintiff's claim," *id.* at *10; and

- Mental impressions relating to the questioning of witnesses that "go to the heart of plaintiff's claim of misidentification and contain information regarding the ADA's knowledge at the time," *id*.

Plaintiff seeks the exact same types of information that courts have previously found is essential to proving claims like the ones here.

10

**II.     This Court Should Order Production of All Documents that It Determines Are Not Protected from Production**

The party asserting privilege or protection from production must meet the burden of demonstrating that the protection applies. Fed. R. Civ. P. 26(b)(5). Western District of New York Local Rule 26(d) is clear regarding the information that should be included on a privilege log: (1) the type of document; (2) the general subject matter; (3) the date of the document; and (4) any other information that is sufficient to identify the document, including the author, the addressees, and any other recipients shown in the document, and the relationship of the author, addressees, and recipients to each other. Where there are issues regarding the sufficiency of a party's claims for protection from production, *in camera* review may resolve those issues. *See, e.g., Favors v. Cuomo*, 285 F.R.D. 187, 220 (E.D.N.Y. 2012) ("[T]he prudent course is for the Court to perform an analysis of the allegedly privileged documents, *in camera*, prior to ruling as to the specific documents (or categories of documents) over which the privilege has been invoked.").

At the October 11, 2022 status conference, the County agreed to provide the documents listed on the privilege log to the Magistrate Judge, and the Court agreed to conduct an *in camera* review of the documents. In addition to those documents Plaintiff substantially needs to prosecute its claims (*see* Section I, *supra*), the Court should also order the production of all additional documents that the Court finds are not protected from production because they do not meet the requirements for the protection asserted. *See, e.g., In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 31 (W.D.N.Y. 1997) (ordering the disclosure of all documents not within the protection of either the attorney-client privilege or work-product doctrine).[4] Plaintiff has detailed

---

[4]     Because the County has failed to furnish an adequate privilege log (despite three attempts at doing so), this Court may also reject outright its claims of privilege. *See Aurora Loan Servs., Inc. v. Posner & Assocs., P.C.,* 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("[f]ailure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege."); *see also S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 164 (S.D.N.Y. 2014) (failure to specify

11

the flaws in the County's privilege claims in its previous correspondence to the Court, and with the County. *See* Exhibit 1.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court order the County to produce the documents that Plaintiff substantially needs to litigate his claims, and to produce any documents that the Court finds are not protected from production after its *in camera* review.

Dated: October 25, 2022
New York, New York

/s/ Sona R. Shah
Nick Joel Brustin
Mary Katherine McCarthy
Anna Benvenutti Hoffmann
Mary Katherine McCarthy
Sona R. Shah
Gerardo Romo
NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson
EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290

---

authors and recipients for the majority of documents, and failure to provide adequate descriptions of subject matter and a basis for claimed privileges, resulted in waiver of any applicable privilege).

12