UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALENTINO DIXON,

       Plaintiff,                                    Civil Action No. 19-cv-01678

  v.

CITY OF BUFFALO, et al.,

       Defendants.
_____

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

**LIPPES MATHIAS LLP**
Jennifer C. Persico
James P. Blenk
*Attorneys for Defendants, County of Erie
and Assistant District Attorney Christopher
Belling in his individual capacity*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
jblenk@lippes.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

INTRODUCTION ..........................................................................................................1

LEGAL STANDARD .....................................................................................................2

    I.    WORK-PRODUCT PRIVILEGE ......................................................................2

    II.    DELIBERATIVE PROCESS PRIVILEGE.......................................................3

ARGUMENT...................................................................................................................3

    I.    THE COUNTY DEFENDANTS' PRIVILEGE LOG PRESERVED THE PRIVILEGE OF THE DOCUMENTS.................................................................................3

    II.    THE PLAINTIFF'S MOTION FAILS TO ESTABLISH A SUBSTANTIAL NEED FOR THE COUNTY DEFENDANTS' WORK PRODUCT. ..........................................4

        a.  Plaintiff's Conviction for the Jackson Murder does not Establish the Merit of his Conclusory Claims of Impropriety in the Investigation of the Jackson Murder.................5

        b.  The Plaintiff has Superior, Alternative Paths to Discovery of its Allegations which do not Require Disclosure of Work-Product ................................................................7

        c.  Because of the Weakness of Need Demonstrated in the Plaintiff's Motion, Greene and Abdell do not Support the Plaintiff's Position .................................................................8

CONCLUSION.............................................................................................................12

## INTRODUCTION

In this motion, the Plaintiff seeks the production of sixteen (16) documents that were withheld by the County of Erie and Christopher Belling (the "County Defendants") in this litigation. (P's Mem. of L. (Doc. 99-1), p. 4-5.) These documents were all generated by the Erie County District Attorney's Office ("DA's Office") and fall into three categories: documents maintained in connection with (A) the prosecution of Valentino Dixon for the murder of Torriano Jackson on August 10, 1991 (the "Jackson Murder") (the "Dixon Prosecution Materials"[1]); (B) the perjury prosecution of Leonard Brown and Mario Jarmon arising from their grand jury testimony concerning the Jackson Murder (the "Perjury Prosecution Materials"[2]) and (C) the 2018 reinvestigation (the "Reinvestigation Materials"[3]). To assist in this motion, the County Defendants delivered these materials to the Court for *in camera* review on November 9, 2022. (Doc. 103.)

With respect to the Dixon Prosecution Materials, the Perjury Prosecution Materials and the Reinvestigation Materials, the County Defendants contend that these materials are work-product, which is protected by Rule 26(b)(3) of the Federal Rules of Civil Procedure because they were generated by the DA's Office in connection with the criminal prosecution of Valentino Dixon, the criminal prosecutions of Brown and Jarmon and the Plaintiff's motion to vacate his conviction, brought pursuant to Article 440 of the New York Criminal Procedure Law (the "440 Motion"). With respect to the Reinvestigation Materials, the County Defendants further contend that these materials are protected by the deliberative process privilege.

---

[1] COE2499-2500, 2503-05, 2530-32, 3509-10
[2] COE3388-90, 3391-3392, 3408-46, 3447-81, 3494-97, 3738-39, 3740-61
[3] COE2541-44, COE4301-02, 4303-04, 4422-23, 4758-74

1

Aside from quibbles with the County Defendants' privilege log, the Plaintiff does not appear to refute that these documents are work-product. The question for this Court therefore is whether the Plaintiff demonstrates a "substantial need" for the documents. The Plaintiff fails to make a sufficient showing on this point.

The Plaintiff has come forward with no evidence or even specific allegations to support (i) instances of improper conduct by police or prosecutors; (ii) reasons that the Plaintiff's allegations of coercion cannot be developed from alternative sources, including the parties to the coercion; or (iii) evidence that improper conduct would exist in the privileged records of the DA's Office. Without any factual predicate, the Plaintiff's need for the County Defendants' work-product is based on nothing more than speculation that some piece of evidence might be found therein. The Plaintiff therefore fails to meet his burden, and the Plaintiff's Motion to Compel should be denied.

## LEGAL STANDARD

The County Defendants have raised two applicable privileges regarding the documents at issue: (I) the work-product privilege and (II) the deliberative process privilege.

### I.   WORK-PRODUCT PRIVILEGE

The work-product privilege creates an "essential zone of privacy" around the work generated by an attorney. *In re Grand Jury Proc.*, 219 F.3d 175, 190 (2d Cir. 2000). The rule exists to, *inter alia*, avoid altering attorney behavior based on the rationale that "in the absence of this privilege, 'much of what is now put down in writing would remain unwritten.'" *Id.* quoting *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393, 91 L. Ed. 451 (1947).

A party seeking discovery of *factual* work-product must show "substantial need." To obtain work that includes "mental impressions, conclusions, opinions or legal theories, the movant must demonstrate a highly persuasive showing of need." *Klosin v. E.I. du Pont de Nemours & Co.*, 561 F. Supp. 3d 343, 361 (W.D.N.Y. 2021) (internal quotation omitted).

## II.     DELIBERATIVE PROCESS PRIVILEGE

The rationale behind deliberative privilege is "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *The Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 356 (E.D.N.Y. 2009) (internal citation, quotation omitted.)

An intra-agency document qualifies for the deliberative process privilege where it is predecisional and deliberative. *Id.* "A document is predecisional when it is prepared in order to assist an agency decision-maker in arriving at his decision." *Id.* at 357. Once established, the deliberative process privilege can only be overcome by the movant's showing that "its need for the materials outweighs [the movant's] interest in nondisclosure." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 274 F.R.D. 106, 113 (S.D.N.Y. 2011)

## ARGUMENT

## I.     THE COUNTY DEFENDANTS' PRIVILEGE LOG PRESERVED THE PRIVILEGE OF THE DOCUMENTS

The materials at issue were contained in the Erie County District Attorney's Office files. They were necessarily developed in relation to prosecutions of Plaintiff, Brown or Jarmon or in response to Plaintiff's post-trial application.[4]

In addition to being work-product, the Reinvestigation Materials were developed in direct response to the Plaintiff's 440 motion and to assist the District Attorney in his determination as to how to respond to the pending application. These are the quintessential definition of deliberative process documents. *Shinnecock Nation*, 652 F. Supp. 2d at 357 ("A document is predecisional when it is prepared in order to assist an agency decision-maker in arriving at his decision.")

As the Court will see during its *in camera* review, the Defendant's privilege log reflects a good-faith effort to categorize, identify and describe the documents at issue.  Unfortunately, because many of the documents are more than thirty (30) years old, they do not  contain the identifying information contemplated by  Local Rule 26(d), which is clearly geared toward documents generated in the electronic era of ubiquitous metadata.

As the County Defendants have made a sufficient showing of privilege, which has been properly preserved by documentation on a privilege log, the Court should evaluate whether the Plaintiff has demonstrated a substantial need for these documents.

## II.     THE PLAINTIFF'S MOTION FAILS TO ESTABLISH A SUBSTANTIAL NEED FOR THE COUNTY DEFENDANTS' WORK PRODUCT.

---

[4] The Plaintiff casts some doubt as to whether an attorney prepared all of the materials withheld, but this is not a dispositive issue because work-product protection attaches to "not only materials which are prepared by attorneys themselves, but also by their agents, which include 'those who are enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation.'" *Klosin v. E.I. du Pont de Nemours & Co.*, 561 F. Supp. 3d 343, 348 (W.D.N.Y. 2021) (*quoting Costabile v. Westchester Cty.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)

4

The Plaintiff's Complaint (Doc. 1) can be distilled as follows: there must have been impropriety in the investigation of the Jackson Murder because Mr. Dixon was incorrectly identified as the shooter. The instant motion, which cites exclusively to the Plaintiff's Complaint, takes an additional leap: there might be evidence of such impropriety in the work-product of the DA's Office. The Plaintiff's attempt to reach privileged records is misdirected and unsupported by any factual predicate, other than Plaintiff's conclusory allegations.

> a. *Plaintiff's Conviction for the Jackson Murder does not Establish the Merit of his Conclusory Claims of Impropriety in the Investigation of the Jackson Murder*

The Plaintiff's brief begins with the bizarre assertion that Mr. Dixon was found actually innocent during the reinvestigation of his conviction for the Jackson Murder. (P's Mem of L. (Doc. 99-1), p. 1.) In fact, as a result of Mr. Dixon's manifest lack of "actual innocence," he remains convicted of criminal possession of a weapon on in the second degree, for which he had received a 5 to 15 year sentence. This complication in the Plaintiff's narrative has been judicially affirmed against him and has precluded him from receiving an award from the State of New York for his purported innocence. *Dixon v. State*, Claim No. 135327 (N.Y. Ct. Cl. April 16, 2021) (Attached hereto as **Exhibit A**) *affirmed* 208 A.D.3d 1624 (4th Dep't 2022).

We correct this assertion not to relitigate Mr. Dixon's guilt or innocence, but to provide context. The extent of Mr. Dixon's involvement refutes the Plaintiff's underlying logic that since Mr. Dixon was misidentified, there must have been improper investigatory tactics employed by the Defendants. With a full understanding of Mr. Dixon's involvement, his misidentification is far more easily understood without any improper conduct.

Despite coordinating with Mr. Dixon in securing their release from prison, the actual shooter, Lamarr Scott, maintains that Mr. Dixon was central to the Jackson Murder. Indeed, by

5

Mr. Scott's account, Mr. Dixon provided to Mr. Scott the means, motive and opportunity for the Jackson Murder.

Regarding means and opportunity, Mr. Scott "wouldn't have been at the [crime scene] if it wasn't for [Mr. Dixon]." See Excerpts of the Transcript of the Deposition of Lamar Scott, dated March 14, 2022 (attached hereto as **Exhibit B**), p. 79:4-5. At the scene, Mr. Dixon entrusted his gun to Mr. Scott (*id.*, 79:6-7), who saw himself as a "protector" (*id.*, 83:9).

Regarding motive, the shooting arose from a conflict involving Mr. Dixon and his brothers. As Mr. Scott put it, the "beef wasn't with him." (Scott Dep. Trans. (Ex. B), p. 14:14-15.) Right before Mr. Scott pulled the trigger, Mr. Dixon told him, "stop them from shooting my brother." (*Id.*, 81:21) When Leonard Brown pointed out Toriano Jackson as the threat, Lamar Scott began shooting. (*Id.*, 81:22.)

There is a simple explanation for why Mr. Dixon was ultimately convicted. There was no reason for Mr. Scott to commit the Jackson Murder. He did not know any of the people involved. In contrast, Mr. Dixon had a specific motive and was an integral actor at the scene. There were therefore very good reasons for witnesses to identify Mr. Dixon as the shooter. And while an individual misidentification might have been overcome, the truth could not easily be revealed without implicating both Mr. Scott and Mr. Dixon in serious crimes. As a result, Mr. Scott, Mr. Dixon and their allies told inconsistent accounts that were not credible.[5] These

---

[5] *See* **Exhibit C** Excerpt of the Deposition of Valentino Dixon, p. 19:3-9 (Mario Jarmon told an inaccurate account to the Grand Jury); p. 30:7 – 18 (Valentino Dixon denied seeing the shooter); pp. 61-62 ("Q: In the course of th[e videotaped] confession that we just saw, Lamarr Scott did not truthfully relay the facts leading up to the shooting of Toriano Jackson?...A: No, not to my understanding.")

dynamics were the result of Mr. Scott and Mr. Dixon's own culpable conduct that preceded any investigation.

> b. *The Plaintiff has Superior, Alternative Paths to Discovery of its Allegations which do not Require Disclosure of Work-Product*

As is set forth above, Mr. Dixon's allegation of misidentification provides extremely weak evidence of improper investigatory techniques. Aside from facial weakness, the Plaintiff does not have a substantial need for these documents because the Plaintiff's allegations can be and indeed must be, supported by other witnesses and documents.

Each theory advanced by the Plaintiff involves multiple parties. The Plaintiff alleges that Defendant Stambach coerced Emil Adams; Defendant Vickerd and Defendant Masecchia coerced John Sullivan; Defendant Stambach coerced Lamarr Scott; and Defendant Lonergan created a false anonymous tip. (P's Mem of L. (Doc. 99-1), p. 6.) In conclusory fashion, the Plaintiff further alleges that Defendant Belling worked with Stambach to coerce Mr. Adams and Mr. Scott into identifying Mr. Dixon as the shooter.[6] (*Id*.) Thus, for each coercive act, there was a law enforcement witness *and* identifying witness, in addition to contemporaneous documentary evidence. The very existence of these alternatives negates the Plaintiff's substantial need for work-product documents. *See Costabile v. Westchester Cty.*, 254 F.R.D. 160, 167 (S.D.N.Y. 2008) ("Where persons with equivalent information are available for interrogation and/or deposition," the substantial need threshold is not met.)

Even if the Plaintiff's allegations were more specific and supported, the Plaintiff fails to address why any evidence would be found in the files of the DA's Office. As can been gleaned

---

[6] As further evidence of the speculative nature of the instant application, the Plaintiff cites to no deposition testimony, despite having deposed Lamar Scott, Defendant Stambach, Defendant Vickerd, and Defendant Lonergan; yet, the Plaintiff cites no testimony to support his allegations.

7

from review of the materials produced *in camera*, the withheld documents are generally derivative of the fruits of the investigation, which have been available to the Plaintiff for decades.

The Plaintiff feigns several conflicts by referencing hypothetical circumstances where the contents of the prosecutor's files *could* be more relevant to the claims and defenses a litigation, as is the case with establishing that fabricated evidence was relied upon in the grand jury or trial proceedings (P's Mem. of L. (Doc. 99-1), pp. 6, 7).  Here, there is no doubt, however, that the Plaintiff has the full and accurate BPD file concerning the murder investigation, the Grand Jury records and the trial materials.[7]  No Defendant has cast doubt on the ECDA Office's possession of the BPD file (including the alleged fabricated and coerced investigations) at any particular point in time.  That these issues have come up in other cases on which Plaintiff relies does not mean that these issues have or will come up in this case.

      c. *Because of the Weakness of Need Demonstrated in the Plaintiff's Motion, Greene and Abdell do not Support the Plaintiff's Position*

As is set forth above, the Plaintiff's demonstration of need is weak, speculative and non-specific, and it is therefore distinguishable from the need demonstrated by the movant in *Greene v. City of New York* (2012 WL 5932676 (E.D.N.Y. 2012)).  In *Greene*, the court considered work-product production in the context of well-founded Brady violations.  *Id.* at 2.  In this way, the *Greene* plaintiff was armed with evidence of impropriety that the Plaintiff can only gesture at with conclusory allegations.  In fact, the best *Brady* violation that the Plaintiff can muster is the circular and conclusory allegation that the police failed to disclose the exculpatory detail that the

---

[7] The County Defendants have produced the materials generated exclusively by the Buffalo Police Department that were maintained in the DA Office's files.

8

police had engaged in misconduct in obtaining false identifications. (P's Mem. of L. (Doc. 99-1), p. 7.)

While this case, like *Greene*, also involves misidentification, the nature of the misidentification is distinguishable. *Greene*, who was an innocent third-party, was initially identified by the brother of the true perpetrator, who the police had reason to suspect. 2012 WL 5932676 at *2. Mr. Dixon, in contrast, was in the position of having the means, motive and opportunity to commit Jackson Murder and, in fact, had a felonious role in the Jackson Murder. Mr. Dixon's misidentification was far more plausible, and it therefore serves as much weaker circumstantial evidence of police misconduct than in *Greene*.

Unlike in *Greene*, the Plaintiff's strongest exculpatory evidence was not secreted away in a witness interview room in a police precinct, it was broadcast on the local news. Mr. Scott's confession was known to the defense at trial. When compared to *Greene*, the precise contents of the files of the DA's Office in the instant matter are not necessary to develop the Plaintiff's claims.

Finally, despite the *Greene* plaintiff coming forward with far more need for prosecution materials, the court still analyzed each grouping of documents and only produced those that both "may contain information and is relevant to the contentions by the plaintiff" for which the plaintiff had demonstrated a substantial need. 2012 WL 5932676 at *6. The court allowed the prosecutor to hold back work-product documents that were delivered to the court for in camera review, including handwritten attorneys notes and internal memoranda concerning the plaintiff's CPL 440 motion. See *Greene*, ** 6-22. If the Court ultimately decides that Plaintiff has shown any need at all, this Court should analyze the documents, with reference to the Plaintiff's specific allegations, as in *Greene*.

9

The instant action is also distinguishable from *Abdell* (No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313).  In *Abdell,* the plaintiffs challenged mass arrests of demonstrators for minor and (presumably) poorly documented offenses at the 2004 Republican Convention.  The plaintiffs sought the production of forms, dubbed "DA Data Sheets," which were prepared at the beginning of prosecutions as a precursor to criminal complaints.  *Id.* at *1.  These DA Data Sheets were routinely produced as *Rosario* material.  *Id.* at *4.  Although the court in *Abdell* required the production of the DA Data Sheets, the instant case is fundamentally different in at least three (3) ways.

First, the content of the ECDA file is far less relevant in the instant context, which does not involve the disposition of dozens of minor arrests intended to warehouse protestors.  In such a case, the evidence (or lack thereof) underlying a criminal complaint is a material question.  Here, there is no doubt that the identifications of Dixon as the shooter provided probable cause for his arrest.  At best, the Complaint challenges the provenance of these documented identifications.  The instant case turns on the underlying investigatory conduct, to which there are living witnesses, and not on the precise details of what was provided to prosecutors at the time that probable cause determinations were made.

Second, the instant case was reliant on specific observations of police officers making minor arrests years before depositions would occur.  *Id.* at *7.  Here, while the lapse of time is far greater, the identifications were documented contemporaneously, developed further in recorded grand jury proceedings and then subjected to challenge at a high-profile criminal trial.  The Plaintiff therefore has a wealth of documentation and can seek additional testimony from the identifiers and testimony from officers who were present for the identifications.

Third, the materials at issue, consisting largely of trial preparation notes, are not of a nature that are turned over in the ordinary course of prosecutions. For this reason, they fall within the underlying rationale for the work-product doctrine, which is intended to allow attorneys to advance a case with candor and without risk of it falling into the hands of adversaries. *See Hickman v. Taylor*, 329 U.S. 495, 511, 67 S. Ct. 385, 393, 91 L. Ed. 451 (1947) ("Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten."); see also *Abdell* at \*4 (quoting *Hickman, supra*). Thus, unlike in *Abdell*, where the form documents were routinely disclosed, the instant case presents a far greater risk of negatively altering and interfering with attorney behavior. See *Abdell* at \*4.

Based on the principles underlying the work-product doctrine and the deliberative process privilege, the Plaintiff's attempt to reach the Reinvestigation Materials is particularly troubling. These materials were generated in the investigatory and deliberative process occasioned by Plaintiff's Article 440 vacatur motion. If these materials were to be produced in this (or any) litigation, it would have a strong disincentivizing effect on similarly situated district attorney officers in the future. Disclosure of the intra-office deliberations of Assistant District Attorneys (especially in re-investigation cases) would certainly have a chilling effect on the open and honest deliberations form which this Plaintiff has benefited.

For the foregoing reasons, the Plaintiff fails to establish a substantial need for the work-product of the DA's Office.

## CONCLUSION

Based on the foregoing, this Court should deny the Plaintiff's Motion to Compel.

Dated: November 9, 2022
       Buffalo, New York

                           Respectfully submitted,

                           **LIPPES MATHIAS LLP**

               By:    */s/ James P. Blenk*
                     Jennifer C. Persico
                     James P. Blenk
                     *Attorneys for Defendants, County of Erie and Assistant District Attorney Christopher Belling in his individual capacity*
                     50 Fountain Plaza, Suite 1700
                     Buffalo, New York 14202
                     (716) 853-5100
                     jpersico@lippes.com
                     jblenk@lippes.com