# EXHIBIT B

```
                    VIDEO DEPOSITION
                      LaMARR SCOTT




UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------
VALENTINO DIXON,

                          Plaintiff,

             - vs -      Case No.
                         1:19-cv-01678-WMS

CITY OF BUFFALO and COUNTY OF ERIE;
and DETECTIVE MARK R. STAMBACH,
DETECTIVE RANIERO MASECCHIA, DETECTIVE
JAMES P. LONERGAN, DETECTIVE JOHN VICKERD,
CHIEF RICHARD T. DONOVAN, JOHN DOES,
Unknown Buffalo Police Department Supervisors,
and ASSISTANT DISTRICT ATTORNEY CHRISTOPHER
BELLING, in their individual capacities,

                          Defendants.
-------------------------------------------
```

         Video recorded deposition of LaMARR

SCOTT, taken pursuant to the Federal Rules of Civil

Procedure, in the law offices of HARRINGTON &

MAHONEY, 70 Niagara Street, 3rd Floor, Buffalo, New

York, on March 14, 2022, commencing at 10:02 a.m.,

before DANIELLE M. FETZER, Notary Public.



```
 1
 2   APPEARANCES:        NEUFELD SCHECK & BRUSTIN, LLP,
                         By NICK J. BRUSTIN, ESQ.,
 3                       nick@nsbcivilrights.com, and
                         GERARDO ROMO, ESQ.,
 4                       gerardo@nsbcivilrights.com,
                         99 Hudson Street,
 5                       8th Floor,
                         New York, New York  10013,
 6                       (212) 965-9081,
                             and
 7                       EASTON THOMSON KASPEREK SHIFFRIN, LLP,
                         By DONALD M. THOMPSON, ESQ.,
 8                       The Powers Building,
                         16 West Main Street, Suite 243,
 9                       Rochester, New York  14614,
                         (585) 423-8290,
10                       dmthompson@etksdefense.com,
                         Appearing for the Plaintiff.
11
                         HODGSON RUSS LLP,
12                       By HUGH M. RUSS, III, ESQ.,
                         hruss@hodgsonruss.com, and,
13                       PETER A. SAHASRABUDHE, ESQ.,
                         psarasa@hodgsonruss.com,
14                       The Guaranty Building,
                         140 Pearl Street, Suite 100,
15                       Buffalo, New York  14202,
                         (716) 856-4000,
16                       Appearing for the Defendants,
                         City of Buffalo, Detective
17                       Mark R. Stambach, Detective
                         Raniero Masecchia, Detective
18                       James P. Lonergan, Detective
                         John Vickerd, Chief Richard T.
19                       Donovan, and John Does, Unknown
                         Buffalo Police Department
20                       Supervisors.
21
22
23
24
25
```



```
 1
 2                    LIPPES MATHIAS WEXLER FRIEDMAN LLP,
                      By ERIC M. SOEHNLEIN, ESQ.,
 3                    esoehnlein@lippes.com, and
                      JENNIFER C. PERSICO, ESQ.,
 4                    jpersico@lippes.com,
                      50 Fountain Plaza, Suite 1700,
 5                    Buffalo, New York  14202,
                      (716) 853-5100,
 6                    Appearing for the Defendants,
                      County of Erie and
 7                    Assistant District Attorney
                      Christopher Belling.
 8
     PRESENT:         PAMELA YATES RICHARDSON
 9                    TYLER Z. RAHNER, Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



```
 1                      LaMarr Scott
 2          BY MR. BRUSTIN:
 3          Q.   Is this in fact the plea that you gave?
 4          A.   Yes.
 5          Q.   Okay.  And is this an accurate account
 6   that you gave here of what transpired on
 7   August 10th of 1991?
 8          A.   Yes.
 9          Q.   Okay.  And could you just briefly
10   describe what happened between you and Mr. Jackson
11   on that night?
12          I don't need you to give me the whole -- the
13   whole rundown, but the actual shooting itself, sir.
14          A.   Well, the beef wasn't with me, the beef
15   was with Valentino Dixon and his -- his brothers.
16   Basically to alleviate any intricate -- any
17   intricate details, Torriano Jackson and his family,
18   you know, they pulled up in a yellow Dodge Shadow,
19   I think it was, and they commenced to fight with
20   Mario Jarmon and shots were fired.
21          Unfortunately, Torriano Jackson ended up
22   dying because I was supplied a weapon by Valentino,
23   and shot Torri, Mario Jarmon in the process of that
24   and, you know, destroyed some lives.  So that's the
25   basic synopsis of it.
```



```
 1                    LaMarr Scott
 2        Q.   But Valentino Dixon took you there in
 3   the car?
 4        A.   Yes.  I wouldn't have been there if it
 5   wasn't for him.
 6        Q.   And gave you the gun?
 7        A.   Yes.
 8        Q.   Did he point anyone out?
 9        A.   No, Leonard did.
10        Q.   Was Leonard with you in the car?
11        A.   No, Leonard wasn't in the car, but
12   Leonard was on the corner that night.
13        Q.   When you and Valentino Dixon arrived
14   that night, did you meet up with Leonard?
15        A.   Yeah, we met with Leonard, Mario,
16   Walter Dennis, and Antoine.  We were all there.
17        Q.   After you pulled the trigger, what did
18   you do?
19        A.   I ran to the right, which is past Mario
20   Jarmon's house, a couple of yards, and I went to
21   get into Valentino's car but he told me I couldn't
22   get into his car and drove off, so I dumped the gun
23   a couple houses down.
24        MR. RUSS:  That's all I have.  Thank you.
25        THE WITNESS:  You're welcome.
```



```
 1                      LaMarr Scott
 2           THE WITNESS:  No, he didn't specifically say
 3   we've got to shoot this guy or anything like that.
 4   He just said we've got business to handle.
 5           BY MR. BRUSTIN:
 6           Q.   And as you consistently said, beginning
 7   in 1991, you made the decision to pull the trigger
 8   and to shoot Torri Jackson, correct?
 9           (Objections to the form.)
10           THE WITNESS:  It wasn't a decision.  I don't
11   call it a decision, I call it acting on.
12           BY MR. BRUSTIN:
13           Q.   You've certainly taken responsibility
14   for that, correct, sir?
15           A.   Yeah, I took responsibility for that.
16   Yeah.  I mean ... all right.  We're trying the case
17   all over again, but here's -- Valentino Dixon told
18   me specifically, they're shooting my brother.  I
19   said this before, and I'll say it again.  He said,
20   they're shooting my brother, and stop them from
21   shooting my brother.
22           Leonard pointed to Torriano Jackson, and
23   that's when the beginning of all of this stuff
24   that's happening now began to happen.  So --
25           Q.   All right.
```



```
 1                    LaMarr Scott
 2   It was an issue.
 3           BY MR. BRUSTIN:
 4           Q.   And the reason that you -- the reason
 5   that you shot Torri Jackson is because you were
 6   concerned that he was going to kill Mario, correct?
 7           (Objections to the form.)
 8           THE WITNESS:   I just looked at it as being
 9   instinctive, man, being a protector basically.
10           BY MR. BRUSTIN:
11           Q.   All right.
12           A.   It was instinctive.  I can't tell you
13   what my mindset was, what my thoughts were, and who
14   said -- you know, situations like that, there's
15   really no conversation.
16           I don't know if you've ever been in war or
17   anything like that or any of that, but this is just
18   what it is.
19           BY MR. BRUSTIN:
20           Q.   I haven't at all.  I have not, anything
21   like it.  And I'll acknowledge that to you, sir.
22   But my understanding, based on what you
23   described --
24           A.   Right.
25           Q.   -- in the past --
```

