UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

VALENTINO DIXON,

    Plaintiff,

v.

CITY OF BUFFALO, *et al.*,

    Defendants.

No. 19-cv-01678 (WMS) (JJM)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR PRODUCTION OF DOCUMENTS
BY DEFENDANT COUNTY OF ERIE**

**INTRODUCTION**

After interviewing over 30 witnesses in a thorough reinvestigation in 2018, the District Attorney's Office concluded that Plaintiff Valentino Dixon was innocent of the murder for which he had been convicted: he did not shoot Torriano Jackson on August 10, 1991. Instead, Lamar Scott, who confessed to the crime only days later, was the shooter. Indeed, Plaintiff was not part of the altercation that led to the shooting at all; he was down the block inside a store. Contemporaneous witness accounts of the shooter accurately described Lamar Scott, who is much larger than and looks very different from Plaintiff. But after speaking to Defendants, the same witnesses misidentified Plaintiff—whom the police suspected of involvement—as the shooter. At least two of these witnesses have admitted that this identification was the result of police suggestion and other misconduct. Now, the County is trying to prevent Plaintiff from having access to key evidence—including statements from critical witnesses—relevant to assessing whether these misidentifications were the result of police misconduct, as Plaintiff claims, or some innocent mistake, as Defendants now implausibly argue.

While it is obviously impossible for Plaintiff to know exactly what information is in the documents at issue, Plaintiff has good reason to believe that the documents include information essential to his claims, which is otherwise unavailable. The County's assertion that the same information is available through depositions taken decades later is provably false. The Individual Defendants largely disclaim any memory of the investigation at all, and the three key witnesses to the misconduct alleged are uncooperative; their repeated non-compliance with deposition subpoenas has necessitated contempt motions that are pending in both this Court and the Northern District of Georgia. Moreover, Plaintiff does not have a complete written record of the

1

relevant events. The County has stated that it has no records of the statements it took during the reinvestigation of the case against Plaintiff.

There is good reason for the Court to order production of the documents at issue. Despite the County's arguments, the information sought is crucial to Plaintiff's claims of fabrication and coercion. Witness statements are necessary to establish what the Defendants knew and when, which is essential to proving Plaintiff's claims. *See* Docket No. 99-1 ("Opening Mem.") at 6-7. Courts in the Second Circuit have found that the "substantial need" standard is met in circumstances like the ones here, and the County cannot point to any authority to the contrary.

## ARGUMENT

I. **Plaintiff has demonstrated his substantial need for any privileged documents at issue.**

As a preliminary matter, Plaintiff does not concede that the documents listed in the motion are properly protected from disclosure, especially to the extent that the County asserts that statements of fact are protected from disclosure. Plaintiff defers to the Court's *in camera* review to determine whether the documents should be disclosed because they are not, on their face, subject to any protection.

The County's position that Plaintiff does not have a substantial need for the information at issue is unsupported by the evidence developed thus far. The County contends that there is an innocent explanation for the fact that Plaintiff was misidentified by multiple witnesses, who all actually saw a man who looked totally different from him commit the shooting. If, as the County describes, Defendants had a basis to think that Valentino Dixon was the shooter (County Opp. at 6), that itself is evidence that Defendants had a reason to improperly feed Mr. Dixon's name to the witnesses who all saw Lamar Scott shoot Torriano Jackson that night. It does not demonstrate that Defendants did not engage in misconduct. In any event, the County puts the cart before the

2

horse. *See Maher v. Monahan*, No. 98CIV.2319(JGK)(MHD), 2000 WL 777877, at *4 (S.D.N.Y. June 15, 2000) ("We need not…address the ultimate merits of plaintiff's claim in order to assess the immediate discovery dispute…. discovery cannot be blocked by the assertion that the claim is meritless, since [the claim] is adequately pled, has not been dismissed, and is not self-evidently pressed in bad faith.").[1]

### A.   Key fact witnesses are unavailable and/or hostile.

Plaintiff alleges that Defendants pressured three witnesses into misidentifying him as the shooter (Emil Adams, Aaron Jackson, and John Sullivan), and wrongfully prosecuted two witnesses (Mario Jarmon and Leonard Brown) for perjury because they refused to identify Plaintiff. *See* Opening Mem. at 1. As the County is aware, Mr. Adams, Mr. Jackson and Mr. Sullivan have all been unavailable and/or uncooperative in this case, requiring Plaintiff to initiate contempt proceedings against them.[2] Mr. Jarmon is now deceased. This alone supports Plaintiff's need for the witnesses' contemporaneous statements in connection with both the initial investigation and the re-investigation.

For example, in a letter dated November 22, 1991 (two months after the shooting) from Defendant Belling to Defendant Donovan, Belling admitted that there was a possibility that Mr. Dixon was not the shooter, identified a need to interview a plethora of witnesses, and expressed interest in participating in the interviews himself:

---

[1]   Despite the County's characterization, Plaintiff's § 440.10 case seeking dismissal of the weapons charge remains pending before the Honorable Susan M. Eagan of the Erie County Criminal Court. *See People v. Dixon*, File No. 1991-1476, Erie County Court. On August 11, 2022, Judge Eagan issued an Order stating that Mr. Dixon had "made a prima facie showing of actual innocence meriting a fuller exploration." Appellate Dkt. No. 26 (Order). That hearing has been set for early January 2023.

[2]   John Sullivan is homeless, further complicating the process of serving him and coordinating his appearance at a deposition.

> [W]e have major discrepancies in regard to who committed the murder of Torriano Jackson. It is my opinion that these discrepancies can only be cleared up by continued investigation. Namely, there are various people who were at the scene of this shooting who have never been talked to. It is imperative that these people be located and interviewed in depth as soon as possible. If they can be located during the day I would like to participate in the interview.

*See* Exhibit A, COE 1686-87. Belling also expressed that he "would particularly like to participate in the interview of Mario Jarmon." *Id.* Any documentation of those interviews, especially of those who are deceased or otherwise unavailable, is crucial to Plaintiff's ability to litigate his case.

Plaintiff's need for the documentation is particularly salient here, where witnesses have described feeling coerced by Belling and Defendant officers. For example, in a tape-recorded interview from 1993, Emil Adams describes that "in so many words" Defendant Belling and Defendant officers pressured him to identify Mr. Dixon as the shooter. *See* Exhibit B, Dixon 9601-9627, Excerpt of Emil Adams Interview, at 9605-9606. He additionally describes a fear that there would be repercussions from the DA's Office if he did not identify Mr. Dixon: "They're gonna cover their tracks. And they did this to Mario." *Id.* at 9610.

In addition, in three sworn affidavits, Lamar Scott describes feeling coerced and threatened by Defendant Belling, the DA's Office, and Defendant Buffalo Police officers to identify Valentino Dixon. *See* Exhibit C, Dixon 3807-3809 at 3809, Lamarr Scott Affidavit dated December 11, 1998 ("I later felt my life was threatened because of the harassment done by Det. Stambach and the District Attorney Chris Belling."); Exhibit D, Dixon 5930, Lamarr Scott Affidavit dated January 31, 1998 ("The reason why I perjured myself before the Grand Jury is because, in my mind, my life and the lives of my family were in jeopardy from the Buffalo Police Department and the District Attorney's Office if I did not testify the way that I did."). In another affidavit, Lamar Scott stated:

4

> A few months later I was contacted by the District Attorney in the case Christopher Belling. He advised me that it was in my best interest to testify at the grand jury and say that Valentino Dixon committed the crime. I repeatedly refused to do so. After our meeting I found myself being harassed by the lead detective in the case Mr. Mark Stambach who repeatedly made threats on my life if I didn't come to the grand jury and testify.

Exhibit E, Dixon 5931-5932, Affidavit of Lamarr Scott dated February 27, 2002.

Moreover, the recent deposition testimony of Tamara Frida, a witness to the shooting, further supports the importance of the contemporaneous statements that Plaintiff seeks. Ms. Frida testified, among other things:

- She called the police to state that she was at the scene of the shooting, and Valentino Dixon was not the perpetrator, but the police did not follow up with her (Exhibit F, Frida Tr. 26-28);

- Everyone present at the shooting knew that Plaintiff was not the shooter and wondered why he was targeted (*id.* 30:17-31:4);

- Emil Adams told her that "the reason why he had to say that 'Tino was the shooter was because the police department was threatening him with some charges he had in Michigan" (*id.* 33:1-3) and that he knew Valentino was not the shooter (*id.* 33:22-23). Adams also said the District Attorney was threatening him (*id.* 55:18-22); and

- She was interviewed by the District Attorney reinvestigating the case and told them the truth about what she had seen, although some details had faded from her memory by that time (*id.* 42:23-43:10). Her statement was tape recorded (*id.* 50:17-21).

Any information in the sought-after documents regarding these topics would clearly be relevant to Plaintiff's claims. While the County asserts there is "no doubt" regarding probable cause (County Opp. 10), Plaintiff alleges that such doubt did exist and the evidence supports those allegations. And while the County claims that the information provided to prosecutors is irrelevant here (County Opp. 10), Plaintiff has already explained that determining what the prosecutors knew is essential to his malicious prosecution claim. *See* Opening Mem. at 7. Similarly, Plaintiff must show that the prosecutor relied on fabricated evidence in order to

demonstrate the law enforcement Defendants' liability. *Id.* And, if Belling was involved in fabricating evidence, then he is not protected by absolute immunity. *Id.* at 6-7.

Additionally, Ms. Frida's testimony highlights that despite the County interviewing 30 witnesses in connection with its reinvestigation, it has not produced the majority of those records to Plaintiff, but instead has only produced videos of interviews of Lamar Scott and Valentino Dixon. In fact, in connection with the 440 motion, the County referred to statements from the following witnesses who identified Lamarr Scott as the shooter, none of which have been produced to Plaintiff: Tamara Frida; Witness X; Mario Jarmon; Leonard Brown; Antoine Shannon; Walter Dennis; Anthony Watkins; Richard Morris; LaRosa Carson; Eric Doss; Richard Jarrett; and Floyd Fischer. *See* Exhibit G, Dixon 5302-5311, Answering Affidavit of David A. Heraty ¶ 13.

The County is unable to cite any authority in support of its arguments that Plaintiff has not demonstrated substantial need. The lone case it relies on, *Costabile v. Westchester*, 254 F.R.D. 160, 167 (S.D.N.Y. 2008), is completely irrelevant. That case involved a plaintiff alleging discriminatory treatment through various cruel and malicious acts over the course of a year. Defendants sought to discover the plaintiff's investigator's report, arguing only that any applicable protection had been waived. *Id.* at 166. Unlike here, there was no argument regarding substantial need, and the defendants acknowledged that they could obtain the substantial equivalent of the report by other means, including interviewing available employees. *Id.* at 167.

The County's attempts to distinguish the cases that Plaintiff relies upon are similarly unpersuasive. While the County relies heavily on the fact that *Abdell* discussed DA data sheets, the holding of the case is broader: "statements of police officers and other witnesses [do] not qualify for the greater protection accorded to core work product." *Abell v. City of New York*, No.

05-cv-8453 (KMK)(JCF), 2006 WL 2664313, at *6. The County also characterizes the claims in *Greene v. City of New York*, 2012 WL 59326e 76 (E.D.N.Y. 2012) as more well-founded than Plaintiff's claims. In fact, the court's decision in Greene was based solely on the complaint's allegations. In any case, as set forth above, a solid "factual predicate" for Plaintiff's claims exists here.

Therefore, all documents concerning witness statements and the facts underlying the County's investigations should be produced. They are essential to Plaintiff's claims that Defendants were aware that Plaintiff was not the true perpetrator at the time of his prosecution. As one court has explained:

> [T]his case involves colorable allegations that the police officers involved here manipulated evidence and the district attorneys so that the plaintiff would be improperly prosecuted. If such allegations are true, the best evidence of these improprieties would be the contemporaneous statements of the witnesses, especially those of the…officers involved. While it is true that the…officers and other witnesses could be deposed, the passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered. In short, there is a substantial need for the contemporaneous information, and an undue hardship in attempting to reconstruct the information at this time.

*Doubleday v. Ruh*, 149 F.R.D. 601, 607–08 (E.D. Cal. 1993), cited in *Abell*, 2006 WL 2664313, at *7.

### B.     The Officer Defendants have disclaimed any memory of the events at issue.

Putting aside the County's questionable contention that law enforcement witnesses would admit to fabrication or coercion in their depositions (County Opp. at 7), discovery in this case has demonstrated that the Officer Defendants cannot provide any substantive information regarding the investigation in this case.

In fact, the Officer Defendants have claimed they have no recollection of the investigation related to the shooting at all. Defendant Vickerd testified that his deposition in this

7

case was the first time he'd heard Lamarr Scott's name, and that he believes this is due to memory issues. Exhibit H, Vickerd Tr. 20:10-24. Defendant Masecchia testified that he does not "remember a single thing about the Valentino Dixon investigation". Exhibit I, Masecchia Tr. 338:7-10. Defendant Donovan similarly testified that he cannot remember anything about the case because it was too long ago. Exhibit J, Donovan Tr. 9:21-22. And Defendant Stambach could not remember details of the investigation, including regarding the key issue of whether he ever told Defendant Belling that Emil Adams's description of the shooter matched Lamarr Scott and not Valentino Dixon. Exhibit K, Stambach Tr. 177:16-178:4. Moreover, Defendant Lonergan's testimony further supports that the County's documents are integral to Plaintiff's claims. He stated that it was the District Attorney's office that disproved that Lamarr Scott was the shooter. Exhibit L, Lonergan Tr. 59:16-25. These types of investigatory actions by the District Attorney's office are clearly relevant to Plaintiff's claims.

The Officer Defendants' deposition testimony only serves to support Plaintiff's substantial need for the documents. As the court in *Abdell* recognized, depositions are not the "substantial equivalent" of contemporaneous documents. *Abell*, 2006 WL 2664313, at *7, citing *Johnson v. Bryco Arms*, 2005 WL 469612, at *5 (E.D.N.Y. Mar. 1, 2005) (depositions do not obviate need for prior statements, specifically when they may be impeachment evidence).

II. **The deliberative process privilege does not protect the County from disclosing documents.**

The County's assertion of the deliberative process privilege cannot sustain even a perfunctory analysis. First, the privilege would not protect factual summaries like witness statements. Second, the County fails to address that the privilege is intended to protect only policy decisions, and cannot extend to routine operations. *See Charles v. City of New York*, No. 11-cv-0980 (KAM)(JO), 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011) (routine operating

8

decisions cannot be transformed into policy deliberations at higher levels of government merely because they are made at public institutions).

As Plaintiff previously explained, courts have found that the deliberative process privilege does not preclude the disclosure of documents concerning internal investigations in civil rights suits. *See* Docket No. 99-2. "When the decision-making process is itself at issue, particularly in a civil rights action, the deliberative process privilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination." *Torres v. City Univ. of New York*, No. 90-cv-2278 (CSH), 1992 WL 380561, at *8 (S.D.N.Y. Dec. 3, 1992). [3]

Thus, regardless of whether the documents at issue are characterized as predecisional and deliberative, the privilege cannot shield the County. *Anilao v. Spota*, No. 10-cv-00032 (JFB)(AKT), 2015 WL 5793667, at *21 (E.D.N.Y. Sept. 30, 2015) (plaintiffs' claims of "conspiracy to violate their constitutional rights, and their malicious prosecution and false arrest claims all place in issue the deliberative process of the County Defendants in prosecuting the Plaintiffs here.").

### III. This Court should order production of all documents that it determines are not protected from production.

The County has only provided the sixteen challenged documents for the Court's *in camera* review. Plaintiff continues to assert that the remaining documents are not sufficiently described on the privilege log, and therefore it is impossible for Plaintiff to evaluate the County's

---

[3] Therefore, the County's reliance on cases in other contexts is unpersuasive. *See Shinnecock Indian Nation v. Kempthorne,* 652 F. Supp. 2d 345 (E.D.N.Y. 2009) (privilege applied to FOIA claim); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 274 F.R.D. 106 (S.D.N.Y. 2011) (privilege applied in case alleging groundwater contamination).

9

claims. *See* Opening Mem. and Exhibit 1 (Docket No. 99-2). While older documents present challenges as far as identifying certain details, that does not excuse the County's failure to provide adequate descriptions or subject matter for many of the documents. *Id.*

This Court should require submission of the remaining documents (approximately 65 documents) for *in camera* review, and then order production of any documents that are not truly protected from disclosure. *See, e.g., Favors v. Cuomo*, 285 F.R.D. 187, 220 (E.D.N.Y. 2012) (finding *in camera* review appropriate in order to resolve privilege disputes). For those documents that are protected on their face, the Court should order the County to provide a corrected privilege log in order for Plaintiff to assess the County's claims and determine whether they have a substantial need for the documents.

Alternatively, because the County has failed to furnish an adequate privilege log (despite three attempts at doing so), this Court may also reject outright its claims of privilege. *See Aurora Loan Servs., Inc. v. Posner & Assocs., P.C.,* 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) ("[f]ailure to furnish an adequate privilege log is grounds for rejecting a claim of attorney client privilege."); *see also S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 164 (S.D.N.Y. 2014) (failure to specify authors and recipients for the majority of documents, and failure to provide adequate descriptions of subject matter and a basis for claimed privileges, resulted in waiver of any applicable privilege).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court order the County to produce the documents that Plaintiff substantially needs to litigate his claims, and to produce any documents that are not protected from disclosure.

Dated: November 16, 2022

Respectfully submitted,

/s/ Sona R. Shah
Nick Joel Brustin
Mary Katherine McCarthy
Anna Benvenutti Hoffmann
Mary Katherine McCarthy
Sona R. Shah
Gerardo Romo
NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson
EASTON THOMPSON KASPEREK SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290

11