UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALENTINO DIXON,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF BUFFALO, *et al.*,<br><br>       Defendants. | No. 19-cv-01678 (WMS) (JJM) |

**<u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR FINDING OF CONTEMPT</u>**

## INTRODUCTION

As the Erie County District Attorney's Office's 2018 investigation concluded, on August 10, 1991, Lamar Scott shot and killed Torriano Jackson. At the time, Plaintiff Valentino Dixon was down the block inside a store. After spending 27 years incarcerated for a shooting he did not commit, Mr. Dixon has sued the Defendant officers and prosecutor responsible for his wrongful conviction. Even though Mr. Scott and Mr. Dixon look nothing alike, a cornerstone of Mr. Dixon's wrongful conviction was a series of witness identifications claiming to have seen Mr. Dixon shooting at Torriano Jackson, even though Lamar Scott, who is significantly larger than Mr. Dixon, was the true shooter. Indeed, from moments after the shooting, Defendants focused on Mr. Dixon as the suspect. Several witnesses who saw Lamar Scott shoot Torriano Jackson misidentified Mr. Dixon as the shooter. One of those witnesses was Aaron Jackson, who a couple days after the shooting was "not sure" who the shooter was but tentatively identified Mr. Dixon nonetheless in an interview with Defendant officer Mark Stambach—an officer who just earlier this year was found guilty by a jury in this District of maliciously prosecuting and fabricating evidence in another Buffalo murder investigation.

Over time, Mr. Jackson has doubled down on his misidentification of Mr. Dixon. As a result, Mr. Jackson's testimony remains crucial to Mr. Dixon's claims in this case. After being served with subpoenas and Court orders, Mr. Jackson now admits to not complying with them and highlights the inconsistencies regarding his original misidentification. Plaintiff respectfully submits that the Court has ample basis to support a finding of contempt, and that the imposition of coercive sanctions—including Mr. Jackson's arrest and detention until he attends a deposition—is necessary to compel compliance.

1

## ARGUMENT

**I.   Mr. Jackson's affidavit further demonstrates the importance of his testimony in this case**

Mr. Jackson's declaration demonstrates the inconsistencies in his previous statements, underscoring the need for his deposition. In his first documented statement taken two days after the shooting, taken by Defendant Buffalo Police Department officer Stambach, Mr. Jackson was shown a photo array that included Mr. Dixon and stated that he was "not sure" who shot his brother because "everything happened so fast," but nonetheless picked Mr. Dixon in the photo array. *See* Ex. A (BPD Interdepartmental Correspondence dated August 12, 1991). Indeed, at Mr. Dixon's trial, despite originally testifying that he was sure he saw Plaintiff shoot his brother, Mr. Jackson changed his testimony once more and agreed with his original statement that he was "not sure" if he knew who shot his brother. *See* Ex. B (Excerpt of Trial Transcript dated June 8, 1992). Mr. Jackson's claim that "[e]ach time [he] ha[s] testified under oath," he has "indicated that [he] saw Valentino Dixon murder [his] brother," is simply not true. Dkt. No. 105 ("Jackson Aff.") ¶ 8.

Furthermore, given that Mr. Jackson's sworn testimony has only ever been given in the context of Mr. Dixon's criminal proceedings, there are crucial topics relevant to Mr. Dixon's civil lawsuit that still need to be examined in Mr. Jackson's deposition. To be sure, while Mr. Dixon's innocence is relevant to his wrongful conviction, his lawsuit is about police and prosecutorial misconduct. Thus, Mr. Jackson's deposition will focus not only on the inconsistencies of his sworn statements, but also on his various interactions with the defendants in this case. The clearest example is of course his first interview with Defendant Stambach where Mr. Jackson tentatively identified Mr. Dixon in a photo array, despite Mr. Dixon and Mr. Scott looking completely different and Mr. Jackson not being "sure" who the shooter was. The

2

methods in which Defendant Stambach procured that tentative identification is a crucial piece of this litigation. It bears mentioning that earlier this year, a jury in this District found Defendant Stambach to be guilty of maliciously prosecuting and fabricating evidence in another Buffalo murder investigation. *See* Ex. C (Verdict Sheet from *Ortiz v. Stambach*, 16-cv-0321 (EAW) (MJR)). Mr. Jackson's testimony will undoubtedly shed light on what role Defendants' conduct played in Mr. Jackson's testimony changing over time and the police procedures used during Defendants' investigation that caused Mr. Dixon's wrongful conviction.

Lastly, to the extent Defendants may rely on Mr. Jackson's misidentification of Mr. Dixon, Mr. Jackson's deposition is necessary to develop a record to be able to impeach him at trial.

**II.    Mr. Jackson's affidavit further demonstrates that Plaintiff has clearly established that Mr. Jackson failed to comply with the Court's order**

As Plaintiff explained in his moving papers, "contempt is appropriate where a party deliberately violates a clear and unambiguous order to appear for a deposition pursuant to a subpoena." *In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777, at *10 (S.D.N.Y. June 15, 2020) (citing *Chambers*, 501 U.S. at 50). Specifically, "[a] court may hold a party in contempt 'if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner.'" *Scalia v. Zetti's Maple, Inc.*, No. 20-MC-11 (JLS), 2021 WL 267652, at *2 (W.D.N.Y. Jan. 27, 2021) (quoting *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016)).

In his affidavit, Mr. Jackson explains that the "legal documents" were "served upon [him]," and despite this, he does not "want to testify." Jackson Aff. ¶ 10. Thus, Mr. Jackson's sworn statement demonstrates that Mr. Jackson understood that his testimony is necessary for

3

Plaintiff's civil lawsuit and chose to not comply with the Court orders and subpoenas. To be clear, Mr. Jackson's statement that Plaintiff's counsel "threaten[ed]" him is not true; Plaintiff's counsel did not "threaten" Mr. Jackson by "suggest[ing] that he will have [him] arrested" if he does not testify. Jackson Aff. ¶ 11. Rather, Plaintiff's counsel was requesting Mr. Jackson's voluntary compliance and expressing his wish to avoid Court intervention by explaining the potential consequences of Mr. Jackson's failure to comply with the federal subpoenas and Court orders, which as this Court has stated "may include arrest by the United States Marshals Service and detention in prison for up to six months." Dkt. No. 95. *See* Affidavit of Nick Brustin dated November 28, 2022 ¶¶ 5–6.

While Plaintiff understands that testifying about the traumatic loss of his brother will not be easy for Mr. Jackson and Plaintiff has no wish to impose a penalty no greater than what is necessary to compel compliance with the Court's order, it is clear by Mr. Jackson's own statements that coercive sanctions are necessary and required here. Accordingly, because Plaintiff has clearly established that Mr. Jackson has failed to comply with the properly served subpoenas and Court orders, the Court should hold Mr. Jackson in contempt and order him arrested until he can be deposed. *See, e.g.*, *Carrington v. Graden*, No. 18 CIV. 4609 (KPF), 2021 WL 1087772, at *1 (S.D.N.Y. Feb. 8, 2021) ("[T]he court may resort to incarceration as a coercive sanction for civil contempt, such that 'the contemnor is able to purge the contempt and obtain his release by committing an affirmative act.'" (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947))); *see also Perez v. Walmart Inc.*, No. 21-CV-04522 (JMW), 2022 WL 4329769, at *2 (E.D.N.Y. Sept. 19, 2022) (holding a non-party in contempt for refusing to show up to Court-ordered deposition).

4

## CONCLUSION

Plaintiff has established by clear and convincing evidence that Mr. Jackson has violated proper subpoenas and related Court orders. Mr. Jackson's testimony remains critically important to Mr. Dixon's civil case. The Court should hold Mr. Jackson in contempt and order him to be detained until he either has a deposition or agrees to voluntarily agree a deposition when it is ordered.

Dated: November 28, 2022
New York, New York

/s/ Nick Joel Brustin
Nick Joel Brustin
Mary Katherine McCarthy
Anna Benvenutti Hoffmann
Mary Katherine McCarthy
Sona Shah
Gerardo Romo

NEUFELD SCHECK & BRUSTIN LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
T: (212) 965-9081

Donald M. Thompson
EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290