UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALENTINO DIXON,

                      Plaintiff,

v.

CITY OF BUFFALO, *et al.*,

                      Defendants.
_____

**DECISION AND ORDER**

1:19-CV-1678(WMS)(JJM)

Following a jury trial in Erie County Court, on August 7, 1992 Valentino Dixon was convicted of murder in the second degree under New York Penal Law ("PL") §125.25[1], attempted murder in the second degree (PL §§110.00, 125.25[1]), assault in the third degree (PL §120.00[2]), and criminal possession of a weapon in the second degree (PL §265.03). In September 2018, after Dixon had been incarcerated for 27 years, three of the convictions were vacated with the consent of Erie County District Attorney ("ECDA") John Flynn, resulting in his release. Thereafter, Dixon commenced this action for alleged constitutional violations and New York State law claims arising from his prosecution.

Before the court is Dixon's motion [99][1] seeking to compel production of documents identified in the defendant County of Erie's Amended Privilege Log dated August 25, 2022. [99-2] at 8-14. Having heard oral argument on November 22, 2022 [109], considered the parties' submissions [99, 104, 108, 114, 115], and reviewed some of the allegedly privileged documents *in camera*, for the following reasons the motion is granted in part and denied in part.

---

[1]    Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

## BACKGROUND

The parties' familiarity with the underlying facts is presumed. The County's Amended Privilege Log dated August 25, 2022 ([99-2] at 8-14) identifies 81 documents, 16 of which Dixon seeks "regardless of whether [they] are properly subject to claims of privilege or protection". Dixon's Memorandum of Law [99-1] at 5-6. These documents, which I have reviewed *in camera*, fall into three categories: materials prepared in connection with the investigation and prosecution of Dixon for the August 10, 1991 shooting that resulted in the death of Torriano Jackson ([99-1] at 5-6, document nos. 1-3, 10) [2]; materials concerning the perjury prosecutions of Leonard Brown and Mario Jarmon arising from their grand jury testimony in which they identified Lamar Scott as the shooter (id., document nos. 5-9, 11-12); and reinvestigation materials (id., document nos. 4, 13-16). The County asserts the work product privilege[3] over each of these documents, as well as deliberative process and/or attorney-client privileges over a subset of the documents. *See* id., document nos. 5, 13-16.

Dixon's motion also requests that I conduct an *in camera* review of the remaining documents on the Amended Privilege Log and order the production of those documents that I find "are not protected from production because they do not meet the requirements for the protection asserted". Dixon's Memorandum of Law [99-1] at 12.

---

[2]   The 16 documents sought by Dixon are set forth in a numbered table ([99-1] at 5-6). For ease of reference, I have adopted the numbering from the first column of that table when identifying the documents.

[3]   The Amended Privilege Log [99-2] separately asserts a privilege over many of these documents as "materials prepared for litigation or trial". Id. at 8. The parties do not address this specific privilege, which I treat as being subsumed by the work product privilege. *See* Aetna Inc. v. Mednax, Inc., 2019 WL 6250850, *2 (E.D. Pa. 2019) ("[t]he attorney work product doctrine ordinarily prevents the disclosure of documents and other tangible things 'prepared in anticipation of litigation or trial'", *quoting* Fed. R. Civ. P. ("Rule") 26(b)(3)(A)).

DISCUSSION

A.     **Motion to Compel Document nos. 1-16**

    1.     **Work Product Privilege**

"The work-product doctrine, codified . . . in [Rule] 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (*quoting* Hickman v. Taylor, 329 U.S. 495, 510–11 (1947)).[4] There are two categories of work product - fact, which "encompass[es] factual material, including the result of a factual investigation", and core, which reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative". In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

These two categories are entitled to different levels of protection: whereas fact work product is "subject to disclosure once plaintiff has demonstrated substantial need", core work product is "entitled to the highest protection afforded by law", Vasquez v. City of New York, 2014 WL 6356941, *1 (S.D.N.Y. 2014), which requires "at minimum . . . a highly persuasive showing of need" for disclosure. In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d

---

[4]     "It is settled that the [Rule 26(b)(3)] attorney-work product protection applicable to a prosecution file is inapplicable to subsequent civil rights action later brought by a defendant in a prior criminal case". Lawrence v. Suffolk County, 2022 WL 855380, *7 (E.D.N.Y. 2022) (citing cases). However, common-law work product protections may still apply. *See* Schomburg v. New York City Police Department, 298 F.R.D. 138, 142 (S.D.N.Y. 2014) ("[w]hile Rule 26(b) does not apply, the work-product doctrine articulated in Hickman [, supra], and its progeny may"); Lawrence for Estate of Hoffman v. Madison County, 2015 WL 13636281, *5 (E.D. Ky. 2015) ("even where Rule 26(b)(3) might textually withhold protection in civil discovery of a prior criminal prosecution, courts have . . . looked to common-law work product underpinnings to assess propriety of discovery").

Cir. 2000); Crosby v. City of New York, 269 F.R.D. 267, 279–80 (S.D.N.Y. 2010). *See also* Jean v. City of New York, 2010 WL 148420, *2 (E.D.N.Y. 2010) (core work product has been "described by some courts as 'absolute' or 'near absolute'"); Noel v. City of New York, 2018 WL 6649969, *3 (S.D.N.Y. 2018) (core work product is "entitled to virtually absolute protection").

          a.     **Fact Work Product: Substantial Need**

"The burden is on the party asserting a substantial need for the privileged document." Klosin v. E.I. du Pont de Nemours & Co., 561 F. Supp. 3d 343, 358 (W.D.N.Y. 2021). "A non-exhaustive list of factors to be assessed in determining substantial need includes: (1) importance of the materials to the party seeking them for case preparation; (2) the difficulty the party will have obtaining them by other means; and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks." Sanford v. Virginia, 2009 WL 2947377, *3 (E.D. Va. 2009) (*citing* Advisory Committee's Note to Rule 26(b)(3), 1970 Amendments). *See also* Anilao v. Spota, 2015 WL 5793667, *12 (E.D.N.Y. 2015) ("[d]isclosure of work product may be ordered if the party seeking it can demonstrate substantial need for the information and an inability to obtain the information, or a substantial equivalent of it, by other means without undue hardship").

Applying these factors, "courts have regularly held that in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors." Abdell v. City of New York, 2006 WL 2664313, *7 (S.D.N.Y. 2006). *See also* Moroughan v. County of Suffolk, 2018 WL 11268801, *4 (E.D.N.Y. 2018); In re McRay, Richardson, Santana, Wise, and Salaam Litigation, 2011 WL 5880994, *4 (S.D.N.Y. 2011), recon. in part on other grounds, 2012 WL 1450428 (S.D.N.Y. 2012).

Dixon contends that "all documents concerning witness statement and the facts underlying the County's investigations should be produced as they are essential to [his] claims that Defendants were aware that [he] was not the true perpetrator at the time of his prosecution". Dixon's Memorandum of Law [99-1] at 10. Much of the County defendants'[5] response focuses on the alleged weakness of Dixon's claims that improper investigatory tactics resulted in his conviction. County defendants' Memorandum of Law [104] at 7-9. However, at this stage, it is premature to assess the strength of Dixon's claims, which have been sufficiently pled. See Maher v. Monahan, 2000 WL 777877, *4 (S.D.N.Y. 2000) ("[w]e need not . . . address the ultimate merits of plaintiff's claim in order to assess the immediate discovery dispute . . . . [D]iscovery cannot be blocked by the assertion that the claim is meritless, since [the claim] is adequately pled, has not been dismissed, and is not self-evidently pressed in bad faith"). The relevant issue remains whether Dixon can obtain (or has obtained) this discovery through alternative means.

Dixon argues that "[t]he passage of time since both the 1991 shooting, and the reinvestigation that led to [his] exoneration, only reinforces [his] need for the documents at issue". Dixon's Memorandum of Law [99-1] at 9. He further contends that he has been stymied in his attempts to obtain discovery, having "been forced to begin contempt proceedings" in order to compel the depositions of "several key witnesses" (Emil Adams and John Sullivan)[6] and precluded from deposing a fourth key witness, Jarmon, who is now deceased. Id. at 9-10. According to the County defendants, Dixon has "alternative paths of discovery" to support his allegations. Id. at 9-10. They contend that since for each alleged act of coercion "there was a law

---

[5]     The "County defendants" refer to the County and former Assistant Erie County District Attorney ("ADA") Christopher Belling.

[6]     Although Dixon also pointed to his inability to depose Aaron Jackson, that deposition has since occurred. See Notice of Completed Deposition [127].

enforcement witness *and* identifying witness", as well as "contemporaneous documentary evidence", "[t]he very existence of these alternatives negates [Dixon's] substantial need for work-product documents". County defendants' Memorandum of Law [104] at 9 (emphasis in original).  However, Dixon notes that the "Officer Defendants" (*i.e.*, John Vickerd, Raniero Masecchia, Richard Donovan, Mark Stambach) have been unable, due to their limited recollections, to provide any substantive information regarding the investigation that occurred. Dixon's Reply Memorandum of Law [108] at 8-9.

Finally, the County defendants point to the fact that they have already produced all of the materials in the ECDA's files that were "generated exclusively by the Buffalo Police Department" ("BPD"). County defendants' Memorandum of Law [104] at 10 n. 7.  Since the "withheld documents are *generally* derivative of the fruits of the [BPD's] investigation", they contend that Dixon has not demonstrated a substantial need for the requested materials. Id. at 10 (emphasis added).  Even if the County defendants had represented that the withheld materials are entirely derivative of the BPD's files that have been produced, relevant fact work product could have been gathered through other sources, including the ECDA's own investigators.  In particular, the ECDA's decades-later reinvestigation appears to have involved the ECDA's own investigative efforts, apart from the earlier work of the BPD.

Under these circumstances, depositions and the existing production of BPD materials can only get Dixon so far in investigating his claims.  Faced with the limited recollection of some of the relevant defendants and the limited ability Dixon has to depose certain key non-party witnesses to the shooting, which occurred more than 30 years ago, a substantial need exists for his access to the factual work product, including witness statements, in the requested documents. See In re McRay, Richardson, Santana, Wise, and Salaam Litigation,

2011 WL 5880994 at *5 ("[a]lthough Defendant ADAs may be deposed, their ability to recall events that occurred over twenty years ago will likely diminish the utility of their testimony. The best evidence about their involvement in the investigation is contained in their notes"). As the court explained in Doubleday v. Ruh, 149 F.R.D. 601, 607-08 (E.D. Cal. 1993):

> "this case involves colorable allegations that the police officers involved here manipulated evidence and the district attorneys so that the plaintiff would be improperly prosecuted. If such allegations are true, the best evidence of these improprieties would be the contemporaneous statements of the witnesses, especially those of the sheriff's officers involved. While it is true that the sheriff's officers and other witnesses could be deposed, the passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered. In short, there is a substantial need for the contemporaneous information, and an undue hardship in attempting to reconstruct the information at this time."

Therefore, all fact work product contained in document nos. 1-16 shall be produced to Dixon.

### b.   Core Work Product:  Highly Persuasive Showing of Need

Notwithstanding the "virtually absolute protection" afforded to core work product (Noel, 2018 WL 6649969 at *3), some courts have also recognized that "in a case involving allegations of prosecutorial misconduct related to a closed criminal investigation, the prosecutor's files are discoverable to the extent that the documents 'go to the heart' of the litigation, even where the file reveals 'core' or 'opinion' work product containing the prosecutor's mental impressions, conclusions, opinions, or legal theories." Galgano v. County of Putnam, 2018 WL 11190663, *1 (S.D.N.Y. 2018). See also Anilao, 2015 WL 5793667 at *13 ("[b]ecause [the requested discovery] may reveal information which is central to Plaintiffs' allegations, the Court finds that the [the plaintiffs] have a sufficient need to discover that information"); Greene v. City of New York, 2012 WL 5932676, *10 (E.D.N.Y. 2012) (permitting disclosure of certain core attorney work product where the "documents go to the

heart of plaintiff's claim of misidentification and contain information regarding the ADA's knowledge at the time of the lineup that may be relevant to plaintiff's case and for which plaintiff has shown substantial need").

The Complaint alleges that defendant ADA Belling and others "fabricated inculpatory evidence and statements and . . . us[ed] unduly suggestive identification procedures, direct suggestion, or coercion to obtain witness identifications". Complaint [1], ¶226. It further alleges that ADA Belling intimidated grand jury witnesses and withheld exculpatory evidence. Id., ¶¶108-9, 128. Hence, the materials contained in the ECDA's files concerning ADA Belling's investigation and prosecution of Dixon plainly "go to the heart" of this litigation. See Sommer v. United States, 2011 WL 4433631, *7 (S.D. Cal. 2011) ("[i]n this case Plaintiff intends to prove that Defendants . . . investigated and prosecuted her for murder[ ] . . . despite knowing that [the] test results were corrupt, false, fabricated, and completely lacking in credibility . . . . It is clear that the mental workings of the defendant prosecutors are at issue. To the extent that the prosecutors' notes reveal that they knew test results were false or fabricated, those notes constitute the heart of Plaintiff's case").

Since the events giving rise to this action date back approximately 30 years, Dixon "cannot get substantial equivalent of the material from other sources". In re McRay, Richardson, Santana, Wise, and Salaam Litigation, 2011 WL 5880994 at *5 (although the ADAs could be deposed, "their ability to recall events that occurred over twenty years ago will likely diminish the utility of their testimony").[7] Likewise, "the interests favoring disclosure outweigh

---

[7]   In In re McRay, Richardson, Santana, Wise, and Salaam Litigation, the court permitted the disclosure of the ADAs' core work product that was created in their investigatory role, but allowed the withholding of core work product that was created in their prosecutorial role because the court had previously dismissed claims against the ADAs in their prosecutorial capacity. 2011 WL 5880994 at *5-6. I have not drawn that distinction because there continues to be claims against ADA Belling concerning

any possible chilling effect that disclosure might have on attorney behavior". Id.  Therefore, document nos. 1-3 and 10 shall be produced to Dixon in their entirety.

Less clear is whether the materials related to the perjury prosecution of Jarmon and Brown for their grand jury testimony identifying Scott as the shooter "go to the heart" of this litigation.  Neither Jarmon nor Brown are plaintiffs in this action, and their perjury trial, which occurred after Dixon's prosecution, is not at the center of the allegations in this case.  Therefore, Dixon has failed to establish a highly persuasive showing of need for the mental impressions, opinions, or legal theories of counsel involved in the perjury trial. Likewise, the more recently created documents that led to the vacatur of Dixon's convictions (*i.e.*, document nos. 4 and 13-16) do not "go to the heart" of this litigation which centers on the *initial* investigation and prosecution of Dixon for the 1991 shooting.

Consistent with my November 22, 2022 Text Order [110], the County defendants have identified document nos. 4 and 13-15 as containing exclusively core work product (*see* [114-1]), and have also provided from my *in camera* review a proposed redacted version of the ECDA's 2018 Reinvestigation Report (document no. 16) excising what they contend constitutes core work product.  The following is my evaluation of the propriety of the County defendants' identification of core work product:

### i.     Document no. 16: The 2018 Reinvestigation Report

Like here, the court in Jackson v. Nassau County, 340 F.R.D. 539, 541-42 (E.D.N.Y. 2022) evaluated for privilege a memorandum prepared by an ADA charged with conducting an investigation into the integrity of the plaintiff's conviction, which was ultimately

---

his alleged prosecutorial conduct, including his conduct in threatening grand jury witnesses (Complaint [1], ¶¶108-9) and withholding exculpatory evidence. Id., ¶128.

vacated as a result of this investigation. Addressing whether the memorandum was prepared in anticipation of litigation, the court explained:

> "The Documents contain neither legal analyses nor the mental impressions of lawyers. The most detailed document, the . . . Memo, is nothing more than a summary of [the] investigation into [the plaintiff's] claim of innocence. Thus, for example, when the . . . Memo discusses Jackson's pretrial and trial proceedings it simply details what happened during those proceedings. The . . . Memo then turns to summarizing the notes of her factual interviews of witnesses and Jackson. These notes fall squarely outside of the scope of material protected by any privilege. Even if deciding whether to re-try [the plaintiff] was one of the [ADA's] instructions . . . the . . . Memo reflects no legal analysis whatsoever as to what course to take" Id. at 548.

The 2018 Reinvestigation Report is not appreciably different. In large measure it merely summarizes the background of the prosecution and then details the reinvestigation with little commentary. No prosecutorial opinions are offered in the Report concerning the result of the reinvestigation's findings. Therefore, using Jackson as a guide, the County defendants shall make another attempt at redacting only the core work product from the 2018 Reinvestigation Report. I expect these redactions to be significantly more circumscribed to just the "mental impressions, opinions, or legal theories of counsel". Jackson, 340 F.R.D. at 545.

For the first time in their post-argument submission [114], the County defendants seek to preclude production of information in the Reinvestigation Report concerning a particular witness who "participated in the reinvestigation only upon assurance that his or her cooperation would never be made public". Id. at 6. Although this would ordinarily function as a waiver of that argument, I am sensitive to witness safety concerns. Therefore, if this cannot be addressed by an appropriate protective order or other means, Dixon may move to compel this portion of the Reinvestigation Report.

      ii.   **Documents nos. 4-9 and 11-15**

    Having reviewed these documents *in camera*, I conclude that they are not exclusively core work product. Therefore, the County defendants shall redact any core work product from these documents as well.

     2.  **Deliberative Process Privilege**

    The County asserts the deliberate process privilege over document nos. 5, 13-14, and 16. Dixon argues that reliance on this privilege "cannot sustain even a perfunctory analysis". Reply Memorandum of Law [108] at 9-10. For the reasons set forth by Dixon (Reply Memorandum of Law [108] at 9-10), [8] I agree, and conclude that this privilege does not overcome the production.

     3.  **Attorney-Client Privilege**

    The Amended Privilege Log asserts the attorney-client privilege over document nos. 13-16. "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997). However, the only privileges the County defendants rely upon in opposition to Dixon's motion to compel the reinvestigation materials are the work product and deliberative process privileges. *See* County defendants' Memorandum of Law [104] at 3.[9] In any event, even

---

[8]  Additionally, "[t]o invoke the deliberative-process privilege '[t]he claim . . . must be lodged by the head of the agency. . . . The assertion of the privilege by an attorney is therefore improper.'" Schomburg, 298 F.R.D. at 144.

[9]  "A showing of substantial need . . . does not . . . overcome attorney-client privilege." United States Equal Employment Opportunity Commission v. George Washington University, 342 F.R.D. 161,

if applicable, the attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney". Upjohn Co. v. United States, 449 U.S. 383, 395 (1981).

**B.    *In Camera* Review of the Remaining Documents Identified on the Amended Privilege Log**

"The decision whether to conduct an *in camera* review is within the district court's discretion." Smith v. Shelter Mutual Insurance Co., 2018 WL 1278429, *2 (M.D. La. 2018). Alleging deficiencies with the County's Amended Privilege Log, Dixon seeks production of "all additional documents that the [c]ourt finds are not protected from production because they do not meet the requirements for the protection asserted." Dixon's Memorandum of Law [99-1] at 12.[10]

Rule 26(b)(5)(A)(ii) only requires that a party "describe the nature of the documents" withheld "in a manner that . . . will enable other parties to assess the claim". *See also* L.R. Civ. P. ("Local Rule") 26(d). Having reviewed the Amended Privilege Log ([99-2] at 8-14), it appears to provide sufficient detail for some of the documents. While other entries are not as detailed, given that many of the documents date back approximately 30 years, including a

---

183 n. 19 (D.D.C. 2022); In re Pfohl Bros. Landfill Litigation, 175 F.R.D. 13, 22 (W.D.N.Y. 1997) ("even if Defendants demonstrate of a substantial need for the items that are protected by the attorney-client privilege, such items will remain protected from disclosure until and unless that privilege is waived").

[10]    Dixon contends that "[a]t the October 11, 2022 status conference, the County [defendants] agreed to provide the documents listed on the privilege log to the [court], and the [c]ourt agreed to conduct an *in camera* review of the documents" [99-1] at 12. While I agreed to conduct an *in camera* review of the particular documents that Dixon asserted a substantial need to obtain, no agreement was reached to conduct a blanket *in camera* review. Had such an agreement been reached, there would be no reason for Dixon to seek the current relief.

number of handwritten notes, it is understandable why the County may not be able to provide additional information.

Based on Dixon's showing thus far, I find no reason to conduct an *in camera* review of the remaining 65 documents. If there are particular documents that Dixon reasonably believes fail to comply with Rule 25(b)(5)(A) and Local Rule 26(d), he may seek appropriate relief, including *in camera* of those documents, in a renewed motion containing a more particularized showing. However, at this time, I find no basis for conducting a blanket *in camera* review of *every* remaining document. See Smith, 2018 WL 1278429 at *2 ("a blanket [*in camera*] review of every document identified on Shelter's privilege log would constitute a great and unnecessary expenditure of judicial resources").[11]

**CONCLUSION**

For these reasons, Dixon's motion to compel [99] is granted to the extent that it seeks production of document nos. 1-3 and 10 in their entirety and the fact work product contained in document nos. 4-9 and 11-16 (excluding the identity of the confidential witness in document no. 16), but is otherwise denied, without prejudice.

Since the motion involves a claim of privilege, I will stay the effect of this decision until 12:00 p.m. on January 26, 2023, to give the County defendants the opportunity to seek a further stay from District Judge William M. Skretny. Absent such a stay, the production

---

[11] Dixon further argues in a footnote that since "the County has failed to furnish an adequate privilege log . . . th[e] Court may . . . reject outright its claims of privilege". [99-1] at 12 n. 4. However, the "mere mention in a footnote does not amount to raising an argument". Rowley v. City of New York, 2005 WL 2429514, *6 (S.D.N.Y. 2005); United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993) ("[w]e do not consider an argument mentioned only in a footnote to be adequately raised"). In any event, from the documents produced for *in camera* review thus far, there appears to be good reason why the County could not identify dates or authors of certain documents.

of document nos. 1-3 and 10 shall occur by January 27, 2023. By January 31, 2023, the County shall produce redacted versions of document nos. 4-9 and 11-16 to Dixon, excising any core work product. If Dixon has any objection to the redactions that the parties are unable to resolve after conferring in good faith, he may move to compel those portions by February 10, 2023.

**SO ORDERED**.

Dated:   January 19, 2023

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge