VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 41

```
 1          Q.    All right.

 2          A.    I was afraid of going to jail or being

 3   tried.

 4          Q.    All right.  And you understood that the

 5   testimony you were giving at that trial under oath was

 6   not true?

 7          A.    Absolutely.

 8          Q.    By the way, do you regret that decision

 9   today?

10          A.    No.

11          Q.    And that's because you thought that if you

12   told the truth you might be prosecuted yourself?

13          A.    Absolutely.

14          Q.    Okay.  Now, you mentioned that at the time

15   of the shooting you had never met Valentino Dixon,

16   never spoken to him; is that right?

17          A.    That's correct.

18          Q.    Okay.  Have you met him since?

19          A.    Actually, we have not met face-to-face, but

20   we have talked on the telephone several times.

21          Q.    Okay.  When's the first time you spoke to

22   Valentino Dixon?

23          A.    It would have been probably about maybe a

24   week or so maybe after he was released.

25          Q.    Okay.  And just generally what did you talk
```

1  about?

2       A.  We just talked about him being out.  Of

3  course I verbally apologized to him for, you know, all

4  those years, but he said he understood.  We talked

5  about religion, God, and just his experience and being

6  out, you know, in the world.

7       Q.  Okay.  And you said -- you mentioned you've

8  spoken to him a couple times since?

9       A.  Oh, yeah.

10      Q.  Okay.  Has Valentino Dixon ever asked you

11  to say anything that wasn't true about what you saw or

12  heard or your interactions with the police?

13      A.  Never.

14      Q.  Has anybody from my office ever asked you

15  to say or do anything that wasn't true?

16      A.  Never.

17      Q.  Would you do it if we had?

18      A.  No.  No.

19      Q.  Now, did there come a point in time when

20  you were interviewed in connection with a

21  reinvestigation of Valentino Dixon's conviction?

22      A.  Yes.  Quite a few times.

23      Q.  Do you remember how many times you were

24  interviewed?  I know you were interviewed by some

25  private investigators.  Were you also interviewed by

 1  the District Attorney reinvestigating the case?

 2         A.   Yes.

 3         Q.   And during all of those interviews did you

 4  do your best to tell them the best you could remember

 5  what happened?

 6         A.   Yes.

 7         Q.   Now, over time have some of the details

 8  about what you saw and heard faded a bit from your

 9  memory?

10         A.   Yes.

11         Q.   Now, did you also volunteer to take a

12  polygraph examination?

13              MR. SAHASRABUDHE:  Form.

14              MS. HURLEY:  Form.

15              THE WITNESS:  I did not --

16  BY MR. BRUSTIN:

17         Q.   Let me withdraw.

18         A.   Okay.

19         Q.   Were you asked to take a polygraph?

20         A.   I was asked.

21         Q.   Okay.  And did you in fact take a polygraph

22  examination?

23         A.   I did.

24              MR. SAHASRABUDHE:  And can we -- when?

25  BY MR. BRUSTIN:

 1        Q.    Yeah.  Do you remember exactly when it was?
 2              MR. SAHASRABUDHE:  I'll tell you --
 3              THE WITNESS:  Okay.  I was going to say
 4   maybe 20 -- it's been so many.
 5   BY MR. BRUSTIN:
 6        Q.    I think I have it.  So let me see if this
 7   refreshes your recollection.  Do you remember in 2012?
 8        A.    Yes.
 9        Q.    Okay.  And do you remember who requested
10   it?
11        A.    I want to say it was the investigator.  I
12   know at that time I was talking to Max Adler, the
13   reporter Jimmy and whoever the lawyer was maybe at
14   that time.  I remember him being out of New York City.
15   I don't remember exact names.
16        Q.    And you mentioned that you told Valentino
17   Dixon when you spoke to him about how badly you felt?
18        A.    Uh-huh.
19        Q.    And it sounds like, and you tell me if I'm
20   wrong, but because of -- because of your inability to
21   say that Lamar Scott -- withdrawn.  Have you -- over
22   the years have you attempted to cooperate and tell the
23   truth about what happened?
24        A.    Yes.
25        Q.    And is part of that a result of you feeling

 1   badly about not giving that information at the time?

 2        A.   Yes.

 3        Q.   And when you took that polygraph exam were

 4   you asked questions about whether or not Valentino

 5   Dixon was the person who shot and killed Torriano

 6   Jackson?

 7        A.   Yes.

 8        Q.   And did you answer those questions

 9   truthfully?

10        A.   Yes.

11        Q.   And were you asked questions about whether

12   Lamar Scott was the shooter?

13        A.   Yes.

14        Q.   And you answered those questions

15   truthfully?

16        A.   Yes.

17        Q.   Were you told whether or not you passed

18   that polygraph exam?

19        A.   It wasn't until much later, not like right

20   then and there.

21        Q.   But eventually were you told?

22        A.   Yes.

23        Q.   What were you told?

24        A.   That my polygraph exam, it was -- I was

25   found to be truthful.

1         Q.    Okay.  Do you remember whether you were

2    told that by the District Attorney reinvestigating the

3    case?

4         A.    No.  It was actually the lawyer who was I

5    guess a part of the reinvestigation.  Yeah.

6         Q.    Okay.  And I think you also met with a --

7    you met with an investigator, and you signed an

8    affidavit; is that right?

9         A.    Yes.

10        Q.    Did you write that affidavit?

11        A.    No, I did not write it.

12        Q.    Did you do your best to make sure that it

13    was accurate to the best of your recollection at that

14    time?

15        A.    Yes.

16              MR. SAHASRABUDHE:  And are we talking about

17    1998 or --

18              MR. BRUSTIN:  You know what?  Let's just --

19    we might as well just mark it.  Do you know what

20    exhibit number we're on?  Mo, do you know what exhibit

21    number we're on?

22              MR. SOTO-BRITO:  Yeah.  Give me one second.

23    21.

24              MR. BRUSTIN:  21.  Let's mark this as

25    Plaintiff's 21, please.

```
 1                    (EXHIBIT 21, Affidavit of Tamara Frida, was
 2    marked for identification.)
 3    BY MR. BRUSTIN:
 4         Q.   Is this the -- is this an affidavit that
 5    you signed in November of 1998?
 6         A.   Yes.
 7         Q.   Okay.  And did you do your best to -- can
 8    you describe the process of how this affidavit was
 9    created?
10         A.   Yes.  I met with Roger Putnam, and he just
11    asked me to talk and tell my story as to what
12    happened, and he was writing as I was talking.
13         Q.   Okay.  And did you do your best to tell him
14    a number of years later what you remembered?
15         A.   Yes.
16         Q.   Do you think you got every single detail
17    exactly as it happened?
18         A.   It may not be exactly as it happened, but
19    it was very close.
20         Q.   All right.  You did the best you could?
21         A.   Uh-huh.  Yes.
22         Q.   You certainly were attempting to tell him
23    the truth?
24         A.   Yes.
25         Q.   And then you signed it?
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 48

1        A.   Yes.

2        Q.   Okay.  I think I asked this, but I just

3   want to make sure.  To the best of your recollection

4   no police officer or person from the District

5   Attorney's office ever showed you any photographs in

6   connection with the shooting; is that correct?

7        A.   No.  The only photographs I saw were the

8   photos of my vehicle, and that was at the trial.

9        Q.   Okay.

10       A.   And they just asked me during that to

11  verify that that was my vehicle.  And that was the

12  perjury trial.  I'm sorry.

13       Q.   And, by the way, would it be fair to say

14  that when you spoke to Mr. Belling he never asked you

15  any questions about your call to the police department

16  in the days following the shooting, correct?

17            MS. HURLEY:  Form.

18            THE WITNESS:  No, he did not.

19  BY MR. BRUSTIN:

20       Q.   And would it be fair to say if Mr. Belling

21  had asked you if you called the police in the days

22  following the shooting and reported that Valentino

23  Dixon was not the shooter you would have told him you

24  made that call?

25       A.   At that time, no.

 1        Q.   Okay.  Because -- so after the -- even
 2   after the perjury charges you knew about, at that time
 3   you wouldn't tell him?
 4        A.   Yeah.  I wouldn't have at that time, no.
 5        Q.   If they had come to you before the perjury
 6   charges would you have told them you were the person
 7   that made that call?
 8             MR. SAHASRABUDHE:  Form.
 9             MS. HURLEY:  Form.
10             THE WITNESS:  Yes, I would have.
11   BY MR. BRUSTIN:
12        Q.   All right.  Let me take just a couple
13   minute break, and I may be just about done, but let me
14   look through my notes.
15        A.   Okay.
16        Q.   And I'm sure these folks are going to have
17   some questions for you, but let me make sure I don't.
18             VIDEOGRAPHER:  The time is 11:19 a.m.
19   We're going off the record.
20             (A short recess was taken.)
21             VIDEOGRAPHER:  The time is 11:26 a.m.
22   We're back on the record.
23   BY MR. BRUSTIN:
24        Q.   Just a couple more questions, Ms. Frida.
25   Did you -- during the times that we spoke on the phone

 1  did you request to review documents to refresh your

 2  recollection in the case?

 3          A.    Yes.

 4          Q.    And did you in fact review some documents

 5  that we sent to you?

 6          A.    Yes.

 7          Q.    What did you review?

 8          A.    It would have been the -- my statement to

 9  Roger Putnam, the police statement or the police's

10  correspondence here, and as well as the perjury trial,

11  the --

12                MR. SAHASRABUDHE:   Transcript.

13                THE WITNESS:   The transcript.  I'm sorry.

14  BY MR. BRUSTIN:

15          Q.    And did you have a chance to review that?

16          A.    Yes.

17          Q.    Okay.  Do you recall, Ms. Frida, when you

18  were meeting with the D.A.'s office in connection with

19  the reinvestigation whether or not any of your

20  statements were tape-recorded?

21          A.    I believe they were tape-recorded.

22          Q.    Do you remember seeing a tape recorder?

23          A.    Yes.

24          Q.    Okay.  I think that's all I have right now.

25  I may have some follow-up questions, but I'm going to

```
 1  turn it over to these other attorneys that are going

 2  to ask you some questions --

 3        A.   Okay.

 4        Q.   -- on behalf of the defendants.

 5        A.   All right.

 6        Q.   Thank you.

 7        A.   You're welcome.

 8                   CROSS-EXAMINATION

 9  BY MR. SAHASRABUDHE:

10        Q.   Good morning, Ms. Frida.  How are you?

11        A.   Good morning.  I'm well.  Thank you.

12        Q.   My name is Peter Sahasrabudhe.  I

13  introduced myself informally off the record, but I'm

14  an attorney from Buffalo.  I represent the City of

15  Buffalo and some retired homicide detectives in

16  connection with the lawsuit brought by Mr. Dixon.

17      Before I get started, do you recall kind of the

18  ground rules that Nick went over with you before you

19  started your testimony today?

20        A.   Yeah.  A little bit.

21        Q.   Okay.

22        A.   If you want to review them you can.

23        Q.   Well, my question to you is do you remember

24  them?

25        A.   Yes.
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                          Page 52

```
 1        Q.    Do you feel like you need me to repeat them
 2   or --
 3        A.    You can repeat them.
 4        Q.    Okay.  Well, do you understand that those
 5   ground rules apply equally to the questions I'm about
 6   to ask you?
 7        A.    Yes.
 8        Q.    Okay.  And if don't need me to repeat them
 9   I don't want to waste any more time.
10        A.    Okay.  Yes.
11        Q.    So if you remember them --
12        A.    All right.
13        Q.    -- I'll just get into it.
14        A.    Okay.
15        Q.    If that's okay with you?
16        A.    Yes.
17        Q.    All right.  So I want to start if we could
18   with Emil Adams.
19        A.    Uh-huh.
20        Q.    So, prior to August 10th, 1991, did you
21   know Emil Adams?
22        A.    No.
23        Q.    Okay.  So had you ever seen him or spoken
24   to him before that evening?
25        A.    No.  That was the first time.
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                          Page 53

1          Q.   And my understanding is prior to the

2    shooting you were speaking to Emil Adams?

3          A.   Yes.

4          Q.   And that was when the two of you became

5    introduced to each other?

6          A.   Yes.

7          Q.   Okay.  After the evening of the shooting

8    when was the next time that you spoke to Emil Adams?

9          A.   The next time that I spoke to him was

10   probably -- it might have been about maybe two, three

11   months after the shooting.

12         Q.   Okay.  And two, three months after the

13   shooting do you recall where that took place?

14         A.   I can't recall exactly.

15         Q.   Would it have been an in person

16   conversation?

17         A.   Yes.

18         Q.   And would it have been a meeting through

19   happenstance?

20              MR. BRUSTIN:  Objection to form and

21   foundation.

22              THE WITNESS:  I would say it would have

23   been like maybe out in the community somewhere.  It

24   might have been out -- like, at that time, going out

25   to like a club or something like that.  Yeah.

1  BY MR. SAHASRABUDHE:

2        Q.    Okay.  In other words, you hadn't planned

3  to meet up with him --

4        A.    No.

5        Q.    -- you ran into him out in public?

6        A.    Exactly.

7        Q.    Okay.  And I believe you said it was about

8  two to three months after the shooting?

9        A.    Uh-huh.

10       Q.    Is this an instance where Emil Adams

11  relayed to you why he was identifying Valentino Dixon

12  as the shooter?

13            MR. BRUSTIN:  Objection to form.

14            THE WITNESS:  This is one of them.

15  BY MR. SAHASRABUDHE:

16       Q.    One of the two that we talked about

17  earlier?

18       A.    Yes.

19       Q.    Okay.  And you mentioned that he had said

20  something about being threatened with charges that

21  were pending against him in Michigan, correct?

22       A.    Yes.

23            MR. BRUSTIN:  Objection to form.

24  MR. SAHASRABUDHE:

25       Q.    Did he tell you when those threats had been

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 55

 1  made?

 2         A.    No.  He didn't tell me when.  He just told

 3  me just in general --

 4         Q.    Okay.

 5         A.    -- that that was why.

 6         Q.    Did he go into any detail as to who had

 7  made those threats?

 8         A.    He just said that the police were saying

 9  that they were going to bring up those charges in

10  Michigan or call Michigan and have him arrested or

11  whatever on those charges.

12         Q.    But he never mentioned the name of an

13  individual detective or police officer --

14         A.    No, he did not.

15         Q.    And did he specify -- do you know for a

16  fact that he's testified that it was a Buffalo Police

17  Department employee or individual?

18         A.    He said it was the police.  He just said

19  the police, so I'm assuming Buffalo police.  He said

20  the police and the District Attorney.  He just said

21  the District Attorney.  He didn't say like ADA or

22  specific, he just said like their office pretty much.

23         Q.    Okay.  And besides saying that charges in

24  Michigan were being -- potentially going to be used

25  against him he didn't go into any further detail; is

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                          Page 56

 1  that correct?

 2        A.   No.

 3             MR. BRUSTIN:  Object to form.

 4  BY MR. SAHASRABUDHE:

 5        Q.   And you of course were not present for any

 6  conversations or interviews that Emil Adams did

 7  with --

 8        A.   No.

 9        Q.   -- the Buffalo Police Department or the

10  Erie County District Attorney's office's --

11        A.   No.

12        Q.   -- is that correct?  So you have no

13  firsthand knowledge other than what was relayed to you

14  by Emil Adams as to what may have been communicated to

15  him or what was not communicated to him?

16        A.   Right.  That's correct.

17        Q.   And I don't want to belabor the point, but

18  that's the second conversation you had with him that

19  we talked about earlier.  When approximately was that

20  conversation, if you remember?

21        A.   The second conversation would have been

22  maybe -- I want to say maybe 2002/2003.  I think it

23  was around the time when I did the interview with the

24  Buffalo News.  So, we had ran into each other.  It was

25  in public.  We were both at a store, and we had that

```
 1   discussion --

 2        Q.   Okay.

 3        A.   -- and he said it again.  He reiterated

 4   that, you know, he said Valentino was the shooter

 5   because of the charges in Michigan.

 6        Q.   Did he go into any further detail in the

 7   second conversation as he did in the first

 8   conversation?

 9        A.   No.  Not really.  No.

10        Q.   So, again, just generally a claim that

11   charges may have been used against him if he didn't

12   identify Valentino Dixon --

13        A.   Yes.

14        Q.   -- as the shooter?  But nothing further?

15        A.   Nothing further.

16        Q.   And no information as to who the individual

17   was that made those threats or when those threats may

18   have been --

19        A.   No.

20        Q.   -- made?  Okay.  Have you spoken with Emil

21   Adams since that conversation you had with him?

22        A.   No.

23        Q.   Okay.  And that would have been the last

24   time you spoke to him, in 2002?

25        A.   Yes.  I would say 2002.  Somewhere around
```

```
 1  there.  Yes.
 2          Q.   So, fair to say that those three kind of
 3  meetings that we talked about, those are the only
 4  three times you've ever spoken with Emil Adams?
 5          A.   Yes.
 6          Q.   Okay.  Did you know John Sullivan?
 7          A.   No.
 8          Q.   Okay.  Have you ever spoken to him?
 9          A.   No.  I would not know him if I saw him
10  today.  I don't even know what he looks like.
11          Q.   Okay.  You don't even know who -- you
12  didn't know who he was back in 1991?
13          A.   No.
14          Q.   Okay.  One thing I want to get clear on
15  is -- so the night of the shooting you didn't know
16  Lamar Scott by name; is that correct?
17          A.   That's correct.
18          Q.   Okay.  Is it your testimony that the night
19  of the shooting you knew Lamar Scott by sight though?
20          A.   Yes.  I would definitely be able to -- have
21  been able to identify him again.
22          Q.   So you recognized his face, but you didn't
23  know his identity?  You wouldn't have been able to say
24  what his name was?
25                  MR. BRUSTIN:  I don't think she's
```

 1  understanding your question.  I'm going to object to

 2  the form.

 3              MR. SAHASRABUDHE:  Okay.

 4              MR. BRUSTIN:  I think what she's telling

 5  you is that she could have identified him based on

 6  seeing him.  I don't think she's answering your

 7  question about whether she identified him from knowing

 8  him before.

 9  BY MR. SAHASRABUDHE:

10      **Q.   Yeah.  So, when you saw him, did you make**

11  **the connection that you may have seen him from before**

12  **in your life at any time?**

13      A.   When I saw him the night of the shooting?

14      **Q.   On August 10th.**

15      A.   No.

16      **Q.   Okay.  When was it that you made that**

17  **connection?**

18      A.   The actual connection was made -- and I'm

19  going to say it was November of 1991.  Lamar Scott was

20  in my kitchen.  At this time I was living with my --

21  well, my son's father at that time, and I came in from

22  work, and Lamar Scott was sitting at my kitchen table,

23  and I looked, and I had just a like -- and my son's

24  father took me into the bedroom, and he said, well,

25  you know that's -- he called him Sport -- that's

1  Sport, and I said you better get him out of here right

2  now, and I put it together then.

3          Q.    Understood.

4          A.    Yes.

5          Q.    So he went by a nickname --

6          A.    Uh-huh.

7          Q.    -- when he was young --

8          A.    Uh-huh.

9          Q.    -- and you knew him as Sport --

10         A.    Yes.

11         Q.    -- but you didn't know his name was Lamar

12  Scott until approximately November 1991?

13         A.    Right.  And then, when I looked at him,

14  then too was when it connected, too, we went to

15  grammar school together, and the Lamar Scott, grammar

16  school, Sport, shooter, it all just came together.

17         Q.    Understood.  So, again, that was

18  November 1991?

19         A.    Uh-huh.  Yes.

20         Q.    All right.  So would it be fair to say that

21  prior to your testimony at the trial for perjury

22  charges brought against Mario Jarmon and Leonard Brown

23  you only had two interactions with the Buffalo Police

24  Department as it relates to this shooting, this case?

25         A.    Yes.

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                                Page 61

```
 1          Q.   Okay.  And that would have been the night
 2   of the shooting, correct?
 3          A.   Correct.
 4          Q.   And that would have been your phone call
 5   that you placed a couple days later?
 6          A.   Right.  That's correct.
 7          Q.   And, so, you never spoke with any police
 8   officer after that?
 9          A.   No.
10          Q.   All right.  If you could, the kind of
11   packet of police reports that Nick went over for
12   you --
13          A.   Uh-huh.
14          Q.   -- the one at the bottom that says BPD Comp
15   203.
16          A.   Uh-huh.
17          Q.   I just want to confirm.  This report
18   appears to in some substance accurately reflect what
19   you communicated on the call?
20          A.   Yes.
21          Q.   Okay.  And as far as you know this was
22   never withheld or hidden from prosecutors, correct?
23               MR. BRUSTIN:  Objection to form and
24   speculation.
25               THE WITNESS:  I don't know because I didn't
```

 1  participate in Valentino's trial.  Yeah.  So I don't

 2  know --

 3  BY MR. SAHASRABUDHE:

 4       Q.   Did Valentino -- were you ever contacted by

 5  a defense attorney representing Valentino Dixon prior

 6  to his conviction?

 7       A.   No.

 8       Q.   Okay.  My understanding is that you were

 9  issued a subpoena in connection with Valentino Dixon's

10  criminal charges; is that incorrect?

11       A.   No.  I was not -- not for Valentino's

12  charges, no.

13       Q.   Okay.  So the only subpoena you remember

14  ever getting was in connection with the perjury?

15       A.   Yes.

16       Q.   All right.  Did there ever come a time

17  where you communicated to the Erie County District

18  Attorney's office in connection with Valentino's

19  charges that you didn't have information to give?

20       A.   Okay.  Can you repeat that for me?

21       Q.   Right.  So I'm distinguishing between the

22  perjury charges --

23       A.   Okay.

24       Q.   -- and Valentino's charges.

25       A.   Uh-huh.

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                          Page 63

```
 1          Q.   Did there ever come a time where you talked
 2   to any Assistant District Attorney or any
 3   representative of the Erie County District Attorney's
 4   office in relation to criminal charges pending against
 5   Valentino Dixon?
 6          A.   No.
 7          Q.   Never?
 8          A.   No.
 9          Q.   Okay.  So any time you spoke to a District
10   Attorney it would have been in connection with the
11   perjury charges?
12          A.   That's correct.
13          Q.   Okay.  Do you recall the police officer or
14   the detective that you spoke with at the scene of the
15   crime the night of the shooting, do you recall was he
16   in uniform or plain clothes?
17          A.   Plain clothes.
18          Q.   Okay.  Was he wearing a tie?
19          A.   No.  I want to say it would have been more
20   like jeans and a T-shirt or something.  Like it wasn't
21   like a shirt and tie, slacks.
22          Q.   Okay.  Do you recall his name?
23          A.   No, I do not.
24          Q.   Do you recall his approximate appearance?
25   Could you give us a general description?
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                          Page 64

```
 1          A.    It was a white male.  If I can recall, like
 2   I said, it was maybe a T-shirt -- he would have been
 3   older.  I would say maybe like -- maybe mid to late
 4   30s.  Maybe early 40s.
 5          Q.    Okay.  And the sum and substance of your
 6   conversation with him was that your car had been
 7   hit --
 8          A.    Yes.
 9          Q.    -- but you did not see who had committed
10   the shooting?
11          A.    Right.
12          Q.    Do you recall approximately when it was
13   that you spoke with district attorneys in connection
14   with the perjury case?
15          A.    It would have been prior to the perjury
16   trial, and I want to say, if I'm recalling right,
17   maybe -- it might have been January or February of
18   1992, but I know it was prior to the trial.
19          Q.    Okay.  So, sometime in early 1992?
20          A.    Yes.
21          Q.    Do you recall your mother ever telling you
22   that police detectives had come by and were looking
23   for you and wanted to speak to you?
24          A.    Yes.
25          Q.    Do you recall what she said to you about
```

 1  what they said?

 2         A.   No.  She just told me that the detectives

 3  had came by, and she gave me the number to contact.

 4         Q.   And you never reached out to the

 5  detectives, would that be fair to say, at that time?

 6         A.   No.  I believe that I reached out, and I

 7  want to say it might have been just to the District

 8  Attorney's office.  The number I can't remember

 9  exactly, but I know I called.  That was how I wound up

10  having to get -- well, find out I was going to be

11  subpoenaed for the meeting.  I mean -- well, to come

12  down and talk to Christopher Belling.

13         Q.   So, as far as you understand, the number

14  you were given, regardless of who gave it, was to the

15  District Attorney's office?

16         A.   Yes.

17         Q.   Okay.  At any point did any police officer

18  threaten you or expressly dissuade you from going in

19  and giving further information?

20         A.   No.

21         Q.   And although you probably reasonably were

22  reluctant to speak to anyone about what had happened,

23  no one ever expressly threatened you or told you not

24  to go give full information?

25         A.   No.

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 66

```
 1          Q.   Okay.  I want to talk a little bit about
 2    your 1998 statement to Roger Putnam.
 3          A.   Uh-huh.
 4          Q.   My understanding is that he prepared the
 5    affidavit for you after he was driving you to a class
 6    you were taking at Buff State at the time you relayed
 7    to him what you knew and what you saw about that night
 8    in 1991; is that correct?
 9          A.   Yes.  But as far as the affidavit, we did
10    that together.
11          Q.   Understood.  Understood.
12          A.   Okay.
13          Q.   I'm not trying to -- you prepared it with
14    him, and it's your statement --
15          A.   Yes.
16          Q.   -- it's not his words.  I'm not trying to
17    intimate that it's not.
18          A.   Okay.
19          Q.   And my understanding is that you were
20    coming from a trial where your boyfriend at the time
21    was being tried?
22          A.   Yes.
23          Q.   Okay.  Was Roger Putnam working for your
24    boyfriend's attorney?
25          A.   Yes.
```

1          Q.    Okay.  And that's how it came to be that he

2   was driving you to Buffalo State?

3          A.    Yes.  Because they subpoenaed me as well.

4          Q.    Okay.

5          A.    And I told him if they were going to

6   subpoena me and everything he needed to provide me

7   transportation to and from and all of that.

8          Q.    Okay.  Do you recall who your

9   ex-boyfriend's attorney was?

10         A.    I do not --

11         Q.    Okay.

12         A.    -- recall.

13         Q.    I want to talk a little bit about the night

14  in question.  So we're talking about the early morning

15  hours of August 10th, 1991.

16         A.    Yes.

17         Q.    What had you done prior to coming to

18  Louie's that evening?

19         A.    Oh.  We went to Niagara Falls.  There was a

20  party at Niagara Falls that we went to I want to say

21  for Eminem at Niagara Falls.  We had rode around

22  Niagara Falls a little bit -- Niagara Falls, New York,

23  I should say.  We came back to Buffalo, kind of rode

24  around, and then we went up to Louie's to get food.

25         Q.    Okay.  Had you been partying that evening?

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                                    Page 68

```
 1        A.    Not as far as like drinking or smoking or
 2  anything like that.  Just hanging out and dancing.
 3  That kind of thing.
 4        Q.    Got it.  So you weren't under the influence
 5  of any --
 6        A.    No.
 7        Q.    -- alcohol or drugs or anything?
 8        A.    No.
 9        Q.    Okay.  So prior to the fight breaking out
10  how far away were you from the people who were
11  involved in the fight?
12        A.    I would say maybe, at the most, maybe about
13  50, 60 feet from prior to the fight breaking out the
14  people who got out of the car, and then they went
15  across the street.  So, not far at all.
16        Q.    Okay.  Is it fair to say that prior to the
17  fight breaking out you did not have continuous vision
18  or observance of what was going on across the street?
19        A.    Okay.  Prior to the fight what you're
20  asking me is continuous observance as to --
21        Q.    The individuals who were across the street
22  and what they were doing.
23        A.    I observed, yes, but I couldn't tell you
24  exactly, like, what was happening, because everybody
25  just kind of gathered into a large crowd.
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 69

```
 1          Q.    Okay.  I guess -- I can ask this better.
 2          A.    Okay.
 3          Q.    So there's a point at which a car pulls
 4  up --
 5          A.    Right.
 6          Q.    -- people get out, and that's where the
 7  fight breaks out; is that correct?
 8          A.    They get out and gather into the large
 9  crowd and then fight.
10          Q.    So my question specifically is about before
11  the car pulls up.  Were you continuously observing --
12  because it's a crowded area, correct?
13          A.    Uh-huh.
14          Q.    Were you continuously observing the people
15  who were across the street?
16                MR. BRUSTIN:  Objection to form.
17                THE WITNESS:  I was observing them, yes.
18  It was -- because it was relatively open.  It was only
19  like about four or five people standing over there.
20          Q.    Okay.
21                MR. BRUSTIN:  Are you asking if she was
22  focusing on it?
23                MR. SAHASRABUDHE:  Yes.
24                THE WITNESS:  Okay.  If I was focusing on
25  it, I would say no.  I was not focusing on it.  I
```

 1  didn't -- my attention came when the car pulled up and

 2  all those people got out and they walked across the

 3  street.

 4  BY MR. SAHASRABUDHE:

 5          Q.   Okay.

 6          A.   So that's when I -- oh, you know, what is

 7  that all about?

 8          Q.   Is it fair to say that prior to the car

 9  pulling up your focus was at least partially on the

10  people you were speaking to --

11          A.   Yes.

12          Q.   -- who were in your car and around your

13  car?

14          A.   Yes.

15          Q.   Okay.  Now, when the car pulled up, how

16  many people did you observe get out of the car?

17          A.   I wasn't counting, but it was a lot.

18          Q.   Okay.

19          A.   Yeah.

20          Q.   And did all of those individuals as far as

21  you could tell participate in the fight?

22          A.   I don't know if everybody in the car

23  participated in the fight, and the reason why I don't

24  know is because when the fight broke out, by that time

25  the crowd had gathered.  So, I don't know.  I just

 1  know -- what I can tell you that is a fact is that the

 2  fight started with Mario and the Jackson brothers, and

 3  then that crowd just like swooped in, you know, like

 4  really big.  So if any of the other people who were in

 5  the car aside from the Jackson brothers were involved

 6  in the actual fight, I don't know.

 7          Q.   Okay.  So the car pulls up, and people get

 8  out of the car.  Is there a certain time that passes

 9  in between the fight breaking out and the car pulling

10  up?

11              MR. BRUSTIN:  Objection to form.

12              THE WITNESS:  Maybe about a minute.

13  BY MR. SAHASRABUDHE:

14          Q.   Okay.

15          A.   Yeah.

16          Q.   So it wasn't an instantaneous fight?

17          A.   No.  It wasn't instantaneous.  There were

18  some words said.

19          Q.   And then I believe you said that a crowd

20  formed around the people involved in the fight?

21          A.   Yes.

22              MR. BRUSTIN:  Objection to form.

23  BY MR. SAHASRABUDHE:

24          Q.   Did you ever see Torriano Jackson with a

25  gun?

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.

Tamara L. Frida on 10/19/2022                                    Page 72

1        A.    No.

2        Q.    The only person that you saw that evening

3  with a gun was Lamar Scott?

4        A.    That's correct.

5        Q.    And you only saw one gun that evening?

6        A.    That's correct.

7        Q.    Okay.  How long in between -- if you

8  remember -- the fight breaking out and you hearing

9  gunshots?  Can you give us an approximate guess as to

10  how long -- or an approximate estimate as to how long

11  that would have been?

12       A.    I would say -- I would guesstimate maybe

13  about two minutes, maybe three.

14       Q.    And when you first heard gunshots did

15  you -- were you able to tell where the gunshots were

16  coming from?

17       A.    From what I heard and what I saw, the

18  gunshots were from coming from Lamar when he was

19  running into the crowd.

20       Q.    Okay.

21       A.    So --

22       Q.    I guess that was a bad question.  Did it

23  take some time from when you first heard gunshots to

24  the point where you were observing Lamar Scott with

25  the gun?

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.

 1        A.   No.

 2        Q.   Okay.

 3        A.   There was no time in between because I saw

 4   Lamar Scott with the gun when he raised the gun.  To

 5   me, that was when the shooting started.

 6        Q.   All right.  And prior to Lamar Scott

 7   raising a gun and shooting, you had heard no gunshots?

 8        A.   No.

 9        Q.   Okay.  At some point you do get behind your

10   car and duck for cover, right?

11        A.   Yes.

12        Q.   Okay.  Is that almost immediately after

13   seeing Lamar Scott?

14        A.   No.

15        Q.   About how much time elapsed in between you

16   seeing Lamar Scott and you getting behind your car for

17   cover?

18        A.   Probably about a minute.  I didn't get out

19   until I saw Torri running towards me, and Lamar was

20   behind him.  So this was after Lamar started shooting.

21        Q.   I see.  So the shooting went on for

22   approximately a minute, correct?

23             MR. BRUSTIN:  Objection to form.

24             THE WITNESS:  I would guesstimate a minute.

25   BY MR. SAHASRABUDHE:

```
 1          Q.   And then you saw the incident with Torri

 2    Jackson lying on the ground?

 3          A.   That's when I got out.

 4          Q.   And that's when you got out?

 5          A.   Uh-huh.

 6          Q.   Okay.  And at no point did you see

 7    Valentino Dixon?

 8          A.   No.

 9          Q.   Okay.  Have you ever spoken with anyone who

10    is a family member of Valentino Dixon since his arrest

11    and incarceration?

12          A.   No.

13          Q.   So the only person in the Dixon family

14    generally that you've spoken to is Valentino himself?

15          A.   That's correct.

16          Q.   Have you ever spoken to anyone in the

17    Jackson family?

18          A.   No.

19          Q.   Have you ever spoken to the two people you

20    were with that evening about what you observed and

21    your interactions with, you know, police and

22    prosecutors?

23          A.   Yes.

24               MR. BRUSTIN:  Objection to form.

25    BY MR. SAHASRABUDHE:
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 75

1          Q.    Okay.  And have they ever spoken to you

2    about their interactions with police and prosecutors?

3          A.    Yes.

4          Q.    What have they told you?

5          A.    Both of them had no -- the only

6    conversations that they had with the police were, to

7    my knowledge, from what they told me, was that night.

8    We had actually made an agreement that night that we

9    were not going to talk or anything.  So that was --

10   they didn't talk to me.  They didn't tell me at least

11   anyway that they talked to the police.

12               MR. BRUSTIN:  I'm sorry.  Just to be clear,

13   when you say that night you mean the night of the

14   shooting?

15               THE WITNESS:  The night of the shooting.

16   BY MR. SAHASRABUDHE:

17         Q.    Okay.  So, as far as you're aware, the only

18   two -- the only interactions they had with the police

19   were that evening?

20         A.    That's correct.

21         Q.    And as far as you're aware the only thing

22   that they would have relayed is they did not --

23         A.    Right.

24         Q.    -- observe the shooting?

25               MR. BRUSTIN:  Object to the form.

 1                THE WITNESS:  That's right.

 2  BY MR. SAHASRABUDHE:

 3        Q.   Okay.  And do you know if they did in fact

 4  observe the shooting?

 5        A.   Yes, I do know that --

 6        Q.   Okay.

 7        A.   -- they observed the shooting.

 8        Q.   But they nonetheless told the police that

 9  they had not?

10        A.   That's correct.

11                MR. SAHASRABUDHE:  That's all I have for

12  the time being.

13                MS. HURLEY:  Thank you.

14                   CROSS-EXAMINATION

15  BY MS. HURLEY:

16        Q.   Are you good or do you need a break or

17  anything?

18        A.   I'm good.  Thank you.

19        Q.   Okay.  I know we met.  I introduced myself

20  at least off the record, but, for the record, Margaret

21  Hurley.  I'm from Lippes Mathias, and I represent the

22  County defendants in this case.

23        First of all, I also have my MSW from UB.

24        A.   Okay.

25        Q.   So I also want to say that what you

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                              Page 77

1  experienced and witnessed must have been very

2  traumatizing, and I can appreciate that, and I'm very

3  sorry that you experienced that.

4         A.    Thank you.

5         Q.    And I applaud your work with the community,

6  and especially here in North Carolina with the YMCA.

7  That's wonderful.

8         All right.  A lot of this has already been

9  covered --

10        A.    Okay.

11        Q.    -- but here's my chance.

12        A.    All right.

13              (Request for attorney to move closer to the

14  court reporter and speak louder.)

15  BY MS. HURLEY:

16        Q.    You made the anonymous call to the BPD on

17  August 14, 1991; is that correct?

18        A.    Correct.

19        Q.    During that call you did not identify Lamar

20  Scott as the shooter; is that correct?

21        A.    That's correct.

22        Q.    From the date of the shooting through

23  Dixon's trial you never gave a statement to the police

24  saying that Dixon was not the shooter, correct?

25        A.    That's correct.

```
 1                  MR. BRUSTIN:  Objection to form.
 2  BY MS. HURLEY:
 3       Q.   I'm sorry.  What was your answer?
 4       A.   That's correct.
 5       Q.   Thank you.
 6                  MR. BRUSTIN:  If you could just do me a
 7  favor.  If you could just pause before -- after she
 8  asks the questions, give me a chance to object, and
 9  then you can answer.
10                  THE WITNESS:  Okay.
11  BY MS. HURLEY:
12       Q.   You also never testified at the grand jury;
13  is that correct?
14       A.   That's correct.
15       Q.   One of the exhibits here today is the
16  police memo of your anonymous phone call.  I think
17  it's probably right before you.  Let's see -- on the
18  bottom it should be COE1567.  This one on the top.
19                  MR. BRUSTIN:  If you don't mind, we've been
20  going by the -- it's in order by the bottom Bates
21  stamp.  It's 203.
22                  MS. HURLEY:  203.  Thank you very much,
23  Nick.
24  BY MS. HURLEY:
25       Q.   And we established with Mr. Burstin [sic]
```

 1  that this document accurately reflects the substance

 2  of what you said in that anonymous call, correct?

 3            MR. BRUSTIN:  Objection to form.

 4            THE WITNESS:  Correct.

 5  BY MS. HURLEY:

 6       Q.   And in this call you said that Dixon was

 7  not the shooter, correct?

 8       A.   Correct.

 9       Q.   It says that you would think about it and

10  call back later, but you never called back, correct?

11       A.   Correct.

12       Q.   It says that you could identify people

13  there, correct?

14       A.   Correct.

15       Q.   You would not say if you could identify the

16  shooter, correct?

17            MR. BRUSTIN:  Objection to form.

18            THE WITNESS:  Correct.

19  BY MS. HURLEY:

20       Q.   You testified earlier that you would have

21  told the police or ADA Belling that Scott was the

22  shooter but for the fear of a perjury charge, correct?

23            MR. BRUSTIN:  Objection to form.  I think

24  you misstated the question.  You didn't mean to say

25  that I don't think.  You meant to say Lamar, right?

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.

Tamara L. Frida on 10/19/2022                                    Page 80

```
 1                    MS. HURLEY:  Lamar Scott.

 2                    MR. BRUSTIN:  You said -- oh.

 3                    MS. HURLEY:  I'm sorry.  Lamar Scott.

 4                    MR. BRUSTIN:  I'm sorry.

 5                    MS. HURLEY:  Can I say it again?

 6                    MR. BRUSTIN:  I apologize.

 7                    MS. HURLEY:  It's okay, Nick.

 8  BY MS. HURLEY:

 9         Q.   You testified earlier that you would have

10  told the police or ADA Belling that Lamar Scott was

11  the shooter but for the fear of a perjury charge; is

12  that correct?

13                    MR. BRUSTIN:  Objection to form.

14                    THE WITNESS:  That's correct.

15  BY MS. HURLEY:

16         Q.   Even though Brown and Jarmon were not

17  charged with perjury until January of 1992, correct?

18                    MR. BRUSTIN:  Objection to form.

19                    THE WITNESS:  That's correct.

20  BY MS. HURLEY:

21         Q.   Despite the fact that you knew Lamar Scott

22  was the shooter in November of 1991 you never told the

23  police that Lamar Scott was the shooter, correct?

24                    MR. BRUSTIN:  Objection to form.

25                    THE WITNESS:  That's correct.
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 81

 1  BY MS. HURLEY:

 2          Q.   In advance of today's date how many times

 3  did you speak with Mr. Burstin [sic] or anyone from

 4  his office?

 5          A.   Oh, gosh.  Quite a few times.

 6          Q.   Quite a few times?

 7          A.   Yes.

 8          Q.   When did you speak to Mr. Burstin or

 9  anybody from his office?  Recently?  Over the course

10  of a couple months?

11          A.   I would say probably over the course of the

12  last maybe year, year-and-a-half or so.

13          Q.   Okay.

14          A.   Yeah.

15          Q.   Okay.  What did you guys talk about?

16          A.   We talked about this case.

17          Q.   Did you guys talk about what you were going

18  to talk about today here at this deposition?

19          A.   Yes, we did.  We talked about the forms and

20  that and what was contained in the forms --

21          Q.   Okay.

22          A.   -- and my review of them.

23          Q.   Okay.  How long were the conversations do

24  you think?  Just your guesstimate.

25          A.   Maybe about 15 minutes maybe at the most.

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                                    Page 82

```
 1  One may have been 30.

 2          Q.   Okay.  That's it for me.  Thank you very

 3  much.

 4              MR. BRUSTIN:  I have a couple of follow-up

 5  questions.

 6                    REDIRECT EXAMINATION

 7  BY MR. BRUSTIN:

 8          Q.   First of all, just to be clear about our

 9  communications, I think you and I -- to my

10  recollection, you and I spoke on the phone twice about

11  the substance of what you remembered.  Is that

12  consistent with your recollection?

13          A.   That's correct.  Uh-huh.

14          Q.   And did you also speak to my colleague

15  Gerardo Romo about similar issues?

16          A.   Yes.

17          Q.   And did you also have some other

18  discussions -- brief discussions with people in my

19  office about scheduling the deposition?

20          A.   Yes.

21          Q.   And just to be clear, and I think you

22  already said this, did anybody from my office ever

23  suggest that you do anything other than tell the truth

24  and tell us what you remember?

25          A.   No.
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                                    Page 83

```
 1          Q.   All right.  I want to go back to -- you

 2     were asked some questions about your interactions with

 3     Putnam, the investigator.

 4          A.   Yes.

 5          Q.   Did the statement that you gave to Putnam

 6     about what you saw and heard on August 10th have

 7     anything to do whatsoever with your boyfriend or his

 8     criminal charges?

 9          A.   No.

10          Q.   Now, you were asked some questions about

11     whether or not Torriano Jackson had a gun.  Would it

12     be fair to say that you don't know one way or --

13     withdrawn.  You didn't see Torriano Jackson with a

14     gun, correct?

15          A.   I did not.

16          Q.   Would it be fair to say that you don't know

17     one way or another whether or not he was carrying a

18     gun?

19          A.   Yes --

20               MR. SAHASRABUDHE:  Form.

21               MS. HURLEY:  Object to form.

22               THE WITNESS:  -- that's fair.

23     BY MR. BRUSTIN:

24          Q.   Okay.  And the only thing that you can say

25     is that you didn't observe him with a gun, correct?
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.

Tamara L. Frida on 10/19/2022                                    Page 84

```
 1        A.   I did not observe him with a gun.

 2             MR. SAHASRABUDHE:  Form.

 3  BY MR. BRUSTIN:

 4        Q.   And you also told us that during the fight

 5  before the shooting there were times when there was a

 6  crowd around the fight, correct?

 7        A.   That's correct.

 8        Q.   And you don't know, for example, whether or

 9  not Torri Jackson pulled out a gun during the fight,

10  you just know you didn't observe it, correct?

11             MR. SAHASRABUDHE:  Form.

12             MS. HURLEY:  Form.

13             THE WITNESS:  That's correct.

14  BY MR. BRUSTIN:

15        Q.   And you don't know whether or not anybody

16  else involved -- withdrawn.  Would it be fair to say

17  that you don't recall seeing anybody -- withdrawn.

18  You don't know whether or not anybody else in the car

19  had or brandished a weapon?

20        A.   That's correct.

21        Q.   You just don't remember seeing it?

22        A.   No, I did not see it.

23        Q.   And there were numerous times during the

24  fight where you were not able to see Torri Jackson,

25  Aaron Jackson and the other people -- withdrawn.
```

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                                    Page 85

```
 1   During the fight prior to the shooting would it be
 2   fair to say that there were points in time during that
 3   fight where you were not able to see the individuals
 4   who came out of that car, including Torri Jackson and
 5   Aaron Jackson, because of the crowd around them?
 6           A.   That's correct.
 7           Q.   And the best you can recall is that the
 8   first shot that you heard came from Lamar Scott,
 9   correct?
10           A.   That's correct.
11           Q.   But you're not a gun expert, correct?
12           A.   I'm not a gun expert.
13           Q.   Would it be fair to say that you can't say
14   with certainty whether a shot came from another gun?
15                MR. SAHASRABUDHE:  Form.
16                MS. HURLEY:  Object to form.
17                THE WITNESS:  Yes, that's fair.
18   BY MR. BRUSTIN:
19           Q.   I think that's all I have.
20           A.   Okay.
21           Q.   Thank you very much.
22           A.   All right.
23                MR. SAHASRABUDHE:  I'm going to ask -- very
24   quick.
25
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                    **Page 86**

```
 1                   RECROSS-EXAMINATION
 2  BY MR. SAHASRABUDHE:
 3       Q.   So, you're not a gun expert, but you
 4  observed loud noises that evening that you associated
 5  with gunshots; is that correct?
 6       A.   Yes.
 7       Q.   And is it fair to say that your memory of
 8  that evening is such that the first loud noise that
 9  you associated with a gunshot came when Lamar Scott
10  started firing?
11       A.   That's correct.
12            MR. SAHASRABUDHE:  Okay.  I have nothing
13  further.
14            MR. BRUSTIN:  So before we go off the
15  record, you have the -- oh, do you have questions?
16            MS. HURLEY:  I was just going to ask if we
17  could take a five minute break so that Peter and I
18  could discuss before we --
19            MR. BRUSTIN:  Before we end?
20            MS. HURLEY:  -- before we end?
21            MR. BRUSTIN:  Sure.
22            VIDEOGRAPHER:  The time is 12:02 p.m.
23  We're going off the record.
24            (A short recess was taken.)
25            VIDEOGRAPHER:  The time is 12:16 p.m.
```

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                              Page 87

```
 1  We're back on the record.
 2                   RECROSS-EXAMINATION
 3  BY MS. HURLEY:
 4          Q.   Ms. Frida?
 5          A.   Yes.
 6          Q.   The night of the shooting were you facing
 7  the direction of the car?  I'm sorry.  Were you
 8  facing -- strike that.  The night of the shooting were
 9  you facing the direction of the fight?
10          A.   Yes.
11              MR. BRUSTIN:  Objection to form.
12              MS. HURLEY:  That's it.
13              MR. BRUSTIN:  Nothing?
14              MR. SAHASRABUDHE:  No.
15              MR. BRUSTIN:  So, Ms. Frida, you have the
16  right if you would like to read and review and sign
17  the deposition.  You also don't have to do that.  It's
18  up to you.  What do you prefer?
19              THE WITNESS:  I can sign it.  Yes.
20              MR. BRUSTIN:  So you want to review it and
21  sign it?
22              THE WITNESS:  Yes.
23              MR. BRUSTIN:  Okay.  So we'll send you a
24  copy of it.
25              THE WITNESS:  Okay.
```

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                    Page 88

 1             MR. BRUSTIN:  Great.  That's it.  Thank you

 2  so much for your time.  I really appreciate it.

 3             THE WITNESS:  Thank you.

 4             MR. SAHASRABUDHE:  Thank you, Ms. Frida.

 5             MS. HURLEY:  Thank you very much.

 6             MR. BRUSTIN:  It's been really nice meeting

 7  you in person.

 8             THE WITNESS:  Same here.

 9             VIDEOGRAPHER:  The time is 12:16 p.m.  this

10  concludes today's testimony.  We are off the record.

11             COURT REPORTER:  Pete, will you be ordering

12  a copy of the transcript?

13             MR. SAHASRABUDHE:  I think we'll all be

14  ordering.

15             COURT REPORTER:  Will you be ordering a

16  copy --

17             MR. SAHASRABUDHE:  Oh, absolutely.  Yeah,

18  yeah, yeah.  Electronic is fine for us.

19             COURT REPORTER:  And Ms. Hurley?

20             MS. HURLEY:  Yes, please.  Electronic.

21             (The witness, after having been advised of

22  her right to read and sign this transcript, does not

23  waive that right.)

24             (Deposition was concluded at 12:16 p.m.)

25

 1  STATE OF NORTH CAROLINA

 2  COUNTY OF MECKLENBURG

 3

 4              CERTIFICATE OF VERBATIM TRANSCRIPT

 5

 6              I, Mindy Vislay, Court Reporter and Notary

 7  Public for the State of North Carolina at Large, do

 8  hereby certify that the foregoing transcript of TAMARA

 9  L. FRIDA was taken by me and transcribed by me and is

10  a true, accurate, and complete record.

11              I further certify that I am neither related

12  to nor counsel for any party to the cause pending or

13  interested in the events thereof.

14              In witness whereof, I have hereunto set my

15  hand this 1st day of November, 2022 at Charlotte,

16  North Carolina.

17

18

19

20  _____

    Mindy Lynn Vislay
21  #200926400076

22

23

24

25

```
 1                    CHANGES AND SIGNATURE

 2   WITNESS NAME: Tamara L. Frida, 10/19/2022

 3   PAGE    LINE    CHANGE              REASON

 4   _____

 5   _____

 6   _____

 7   _____

 8   _____

 9   _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16      I, Tamara L. Frida, have read the foregoing

17   transcript and hereby affix my signature that same is

18   true and correct, except as noted above.

19

20                    _____

21                         Tamara L. Frida

22      Sworn to and Subscribed before me

23   _____, Notary Public.

24   This_____day of _____, 20____.

25   My Commission Expires:
```

**Exhibits**

**FridaT 21**
3:20 47:1

**1**

**1** 4:3

**10:27** 4:7

**10th** 11:17
28:19
40:20
52:20
59:14
67:15 83:6

**11:19** 49:18

**11:26** 49:21

**12** 29:8

**12:02** 86:22

**12:16** 86:25
88:9,24

**13** 29:8

**14** 77:17

**14th** 24:11

**15** 18:19,
20,23 21:8
81:25

**18** 10:5

**19-CV-01678**
4:5

**1990** 11:24

**1991** 10:19,

22 11:17
52:20
58:12
59:19
60:12,18
66:8 67:15
77:17
80:22

**1992** 37:6
64:18,19
80:17

**1998** 46:17
47:5 66:2

**19th** 4:6

**2**

**2** 22:17,20

**20** 10:21
21:9 44:4

**2002** 57:24,
25

**2002/2003**
56:22

**2006** 10:6,7

**2012** 44:7

**2019** 8:5,6

**2022** 4:6

**203** 24:7
61:15
78:21,22

**21** 46:23,
24,25 47:1

**28** 10:16

**3**

**30** 82:1

**30s** 64:4

**4**

**40s** 64:4

**5**

**50** 68:13

**6**

**60** 68:13

**8**

**80** 21:18

**A**

**a.m.** 4:7
49:18,21

**Aaron** 30:4
84:25 85:5

**absolutely**
17:9 34:20
38:13
41:7,13
88:17

**accurate**
46:13

**accurately**

**25:8** 61:18
79:1

**actual** 59:18
71:6

**ADA** 38:25
39:4,11
40:8 55:21
79:21
80:10

**Adams** 29:17,
22 32:4,
10,17,20
33:18
34:15
35:12
52:18,21
53:2,8
54:10
56:6,14
57:21 58:4

**addition**
8:23

**address** 19:5
21:18

**Adler** 44:12

**advance** 81:2

**advised**
88:21

**affect** 16:18
17:7

**affidavit**
46:8,10
47:1,4,8
66:5,9

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                    Index: afraid..Belling

afraid  25:20
  38:11
  40:25  41:2

age  29:14

agreement
  75:8

alcohol  68:7

Alfred  8:15,
  16  11:8,11

allegedly
  36:23

allowed  25:6

altercation
  29:2

Amherst  8:21

anonymous
  77:16
  78:16  79:2

answering
  59:6

anxiety  22:7

APB  20:24

apologize
  11:14  80:6

apologized
  42:3

apparently
  17:4,25

appearance
  63:24

appears
  61:18

applaud  77:5

apply  52:5

approximate
  63:24
  72:9,10

approximately
  4:7  15:2
  21:8  31:11
  56:19
  60:12
  64:12
  73:22

area  11:16
  69:12

Arena  29:11,
  13

arrest  74:10

arrested
  55:10

asks  78:8

Assistant
  63:2

associate
  9:19

assuming
  55:19

attempted
  44:22

attempting
  47:22

attention
  70:1

attorney
  37:16
  38:16  43:1
  46:2  51:14
  55:20,21
  62:5  63:2,
  10  66:24
  67:9  77:13

Attorney's
  37:13  38:1
  48:5  56:10
  62:18  63:3
  65:8,15

attorneys
  51:1  64:13

August
  10:18,22
  11:17
  24:11
  28:19
  40:20
  52:20
  59:14
  67:15
  77:17  83:6

aware  75:17,
  21

—————————

——————————
          **B**
——————————

bachelor's
  8:19

back  8:6,18
  10:2  11:11
  14:20
  17:18,21

18:16,18,
  24  19:1
  24:1  34:11
  49:22
  58:12
  67:23
  79:10  83:1
  87:1

background
  8:8

bad  15:18
  33:16
  72:22

badly  44:17
  45:1

Bailey  14:9

based  59:5

basically
  9:14

basics  5:15
  7:6

Bates  23:5
  78:20

bedroom
  59:24

beginning
  4:2  8:10

behalf  4:16,
  21  51:4

belabor
  56:17

Belling
  38:16,25

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                    Index: big..car

39:1,4,11
40:8
48:14,20
65:12
79:21
80:10

big  71:4

Bissell  18:8

bit  5:14
8:6 43:8
51:20 66:1
67:13,22

board  9:23

bottom  23:5
61:14
78:18,20

boyfriend
66:20 83:7

boyfriend's
66:24

BPD  23:5
61:14
77:16

brandished
84:19

break  6:14
49:13
76:16
86:17

breaking
68:9,13,17
71:9 72:8

breaks  69:7

briefly  14:2

bring  55:9

broke  70:24

brother
18:10

brothers
71:2,5

brought
51:16
60:22

Brown  60:22
80:16

Brustin
4:13,14
5:1,4
12:9,16
14:22 15:1
20:5 21:12
22:13,16,
18,19,23
23:2,13,16
26:11,21
27:10,18,
22 28:5
30:11,22
31:24 32:8
33:4,15
34:13
35:24
36:11 37:4
38:10,20
39:24 40:7
43:16,25
44:5
46:18,24

47:3 48:19
49:11,23
50:14
53:20
54:13,23
56:3 58:25
59:4 61:23
69:16,21
71:11,22
73:23
74:24
75:12,25
78:1,6,19
79:3,17,23
80:2,4,6,
13,18,24
82:4,7
83:23
84:3,14
85:18
86:14,19,
21 87:11,
13,15,20,
23 88:1,6

brutal  20:15

Buff  11:10,
13 66:6

Buffalo  4:5,
17 8:12,
18,21
10:23
11:4,16
16:11
21:16
51:14,15
55:16,19
56:9,24

60:23
67:2,23

bullet  17:25

bullets
26:14

Burstin
78:25
81:3,8

_____

C

call  22:7
24:25
25:4,5,6
37:14,24
48:15,24
49:7 55:10
61:4,19
77:16,19
78:16
79:2,6,10

called  7:21
29:11,12
48:21
59:25 65:9
79:10

campus  8:21

car  14:7
17:21
18:10,11
23:20 24:2
28:23 64:6
68:14
69:3,11
70:1,8,12,
13,15,16,

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                    Index: care..connected

22 71:5,7,
8,9 73:10,
16 84:18
85:4 87:7

care 9:5

career 17:7

careers
16:18

Carolina
7:11 9:8,
9,12 10:4
77:6

Carreras 4:8

carrying
39:9 83:17

cars 13:22
35:6

case 4:5
9:14 37:2
43:1 46:3
50:2 60:24
64:14
76:22
81:16

catch 18:5

center 11:2
21:17

Central 8:13

certainty
85:14

chance 50:15
77:11 78:8

change 17:1

charge 36:24
37:1 79:22
80:11

charged
80:17

charges
32:12,13
33:3 34:2,
12 37:20
38:22
49:2,6
54:20
55:9,11,23
57:5,11
60:22
62:10,12,
19,22,24
63:4,11
83:8

Charlotte
7:11,18

chasing 15:5

child 9:10

children
9:12 10:13

choice 16:18
17:7

choose 40:16

Christopher
65:12

cigarettes
17:13

city 4:4,
16,17

44:14
51:14

claim 57:10

claiming
37:7

class 66:5

clear 58:14
75:12
82:8,21

clinical
9:19,20

close 47:19

closer 77:13

clothes
63:16,17

club 53:25

COE1567
78:18

collar 39:7

colleague
82:14

colleagues
5:12

College 8:18

comfortable
22:6

committed
64:9

communicated
56:14,15
61:19
62:17

communications
82:9

community
7:22,23
9:13 13:24
16:24 17:1
19:25
21:17
30:13,18
31:19
35:25
36:16
37:3,23
53:23 77:5

Comp 22:15,
16 23:6
61:14

compartment
18:2

concerned
20:8,9

concluded
88:24

concludes
88:10

confessed
31:7 36:1,
5,14

confession
31:14

confirm
61:17

connected
60:14

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022    Index: connection..D.A.

connection
5:22 6:3
36:7 42:20
48:6 50:18
51:16
59:11,17,
18 62:9,
14,18
63:10
64:13

considered
9:22,23

consistent
82:12

contact
28:8,13
65:3

contacted
37:13
38:1,14
62:4

contained
81:20

continued
14:18

continuing
36:17

continuous
68:17,20

continuously
69:11,14

conversation
53:16
56:18,20,

21 57:7,8,
21 64:6

conversations
56:6 75:6
81:23

convertible
11:24,25

conviction
42:21 62:6

cooperate
44:22

copies  22:23

copy  87:24
88:12,16

correct  5:8
7:8 25:23
26:1,5,14
28:20,21
41:17
48:6,16
54:21
56:1,12,16
58:16,17
61:2,3,6,
22 63:12
66:8 69:7,
12 72:4,6
73:22
74:15
75:20
76:10
77:17,18,
20,21,24,
25 78:4,
13,14

79:2,4,7,
8,10,11,
13,14,16,
18,22
80:12,14,
17,19,23,
25 82:13
83:14,25
84:6,7,10,
13,20
85:6,9,10,
11 86:5,11

correctly
23:25

correspondence
50:10

Counsel  4:11

counseling
21:14

counselor
21:22

counselor's
21:19

counting
70:17

county  4:19,
21 9:10
39:2 56:10
62:17 63:3
76:22

couple  5:11
8:17 42:8
49:12,24
61:5 81:10
82:4

courage  27:6

court  4:8,12
5:21 39:3
77:14
88:11,15,
19

cover  16:3
73:10,17

covered  77:9

create  24:13

created  24:9
47:9

crime  20:1,
15 31:7
63:15

criminal
62:10 63:4
83:8

CROSS-
EXAMINATION
51:8 76:14

crowd  14:10,
11,12,14
68:25 69:9
70:25
71:3,19
72:19 84:6
85:5

crowded
69:12

_____

D

_____

D.A.  38:15

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022          Index: D.a.'s..drive-by

D.a.'s  50:18

dance  29:16

dancing  68:2

dangerous
  20:2

Darren  4:8

date  4:6
  77:22 81:2

day  17:16

days  24:11
  30:17
  31:10,13
  32:2
  48:16,21
  61:5

dealer  36:23

dealt  13:21

decision
  41:8

defendants
  4:17,19,21
  51:4 76:22

defense  62:5

degree  8:19,
  22

Delavan
  14:8,17

Delaware
  39:3

department
  33:2 48:15
  55:17 56:9

60:24

deposition
  4:3 5:16
  81:18
  82:19
  87:17
  88:24

describe  9:2
  11:23 14:2
  15:23
  23:20
  24:23 25:8
  47:8

description
  35:13
  63:25

detail  47:16
  55:6,25
  57:6

details  43:7

detective
  24:10 25:9
  26:25
  38:17,24
  55:13
  63:14

detectives
  19:4 51:15
  64:22
  65:2,5

difficulties
  17:24

DIRECT  4:25

direction

17:2 87:7,
9

directly
  14:14

discos  29:13

discuss
  31:25
  86:18

discussion
  30:18,24
  31:1,2,18
  35:25
  36:16 37:3
  57:1

discussions
  32:3,9
  82:18

dissuade
  65:18

distinguishing
  62:21

district
  37:13,16
  38:1,16
  43:1 46:2
  48:4
  55:20,21
  56:10
  62:17
  63:2,3,9
  64:13
  65:7,15

divulge  13:3

Dixon  4:4,14

13:4,11,
14,21
15:8,11
19:16
20:24
25:22
33:19
34:6,24
35:1,2,4,
13 36:17,
20 41:15,
22 42:10
44:17 45:5
48:23
51:16
54:11
57:12 62:5
63:5 74:7,
10,13
77:24 79:6

Dixon's
  20:21
  42:21 62:9
  77:23

document
  79:1

documents
  50:1,4

doubt  12:20,
  23 15:6,9,
  10,14,17

drinking
  68:1

drive  18:12

drive-by
  16:9

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                    Index: driving..Falls

driving
  17:22 18:6
  23:20 66:5
  67:2

drove  13:22
  18:9,10,11
  35:6

drug  36:23
  37:2

drugs  13:22
  68:7

duck  73:10

duly  4:24

Duper  11:2

_____

**E**
_____

earlier
  54:17
  56:19
  79:20 80:9

early  64:4,
  19 67:14

East  14:8
  18:7

educational
  8:8

Eighteen
  10:5

elapsed
  73:15

Electronic
  88:18,20

eligible
  9:23

Emil  29:17,
  22 32:3,
  10,17,20
  33:18
  34:15
  35:12
  52:18,21
  53:2,8
  54:10
  56:6,14
  57:20 58:4

Eminem  67:21

emotionally
  15:24

employed
  7:17 10:23

employee
  55:17

end  86:19,
  20

entire  15:3

equally  52:5

Erie  4:19
  56:10
  62:17 63:3

established
  78:25

estimate
  72:10

et al  4:5

evening

52:24 53:7
  67:18,25
  72:2,5
  74:20
  75:19
  86:4,8

event  16:18

eventually
  45:21

ex-boyfriend's
  67:9

exact  25:12
  44:15

exam  9:20,
  21,23
  45:3,18,24

examination
  4:25
  43:12,22
  82:6

exhibit
  22:9,10,
  14,20
  46:20 47:1

exhibits
  78:15

experience
  17:15 42:5

experienced
  17:7 77:1,
  3

expert
  85:11,12
  86:3

explain
  16:20
  33:25

expressly
  65:18,23

_____

**F**
_____

face  14:16,
  23 15:4
  34:12
  58:22

face-to-face
  41:19

facing  36:25
  87:6,8,9

fact  26:4
  33:19
  35:12 36:3
  37:17 38:3
  43:21 50:4
  55:16 71:1
  76:3 80:21

faded  43:8

fair  13:20
  48:13,20
  58:2 60:20
  65:5 68:16
  70:8
  83:12,16,
  22 84:16
  85:2,13,17
  86:7

Falls  67:19,
  20,21,22

families
 9:12

family  10:9
 74:10,13,
 17

father
 59:21,24

favor  78:7

fear  79:22
 80:11

February
 37:11
 64:17

feel  39:14
 52:1

feeling
 22:5,6
 44:25

feet  68:13

fell  14:16

felt  25:2
 39:18,22
 44:17

Ferry  18:7,
 12

Fifteen
 18:21

Fifty-one
 7:13

fight  14:5,
 7,8 16:5
 68:9,11,
 13,17,19

69:7,9
70:21,23,
24 71:2,6,
9,16,20
72:8 84:4,
6,9,24
85:1,3
87:9

Fillmore
 18:13

find  7:22
 65:10

finding
 37:25

fine  6:14
 88:18

fire  18:5

firing  86:10

firsthand
 56:13

fistfight
 16:6

flashy  35:6

flipped
 23:14

fluid  18:1

focus  70:9

focusing
 69:22,24,
 25

folks  49:16

follow  6:4

follow-up
 50:25 82:4

food  8:1
 67:24

form  12:8,
 15 14:21,
 24 20:3
 21:11
 26:9,19
 27:7,15,21
 28:1 30:9,
 21 31:23
 32:5,22
 33:12
 34:8,9
 35:21,22
 36:8,9,21
 38:6,7,19
 39:16,17
 40:2,3
 43:13,14
 48:17
 49:8,9
 53:20
 54:13,23
 56:3 59:2
 61:23
 69:16
 71:11,22
 73:23
 74:24
 75:25 78:1
 79:3,17,23
 80:13,18,
 24 83:20,
 21 84:2,
 11,12

85:15,16
87:11

formally
 37:25

formed  71:20

forms  81:19,
 20

forward
 14:16 15:4

foster  9:5

found  13:1
 45:25

foundation
 53:21

Fred  35:17,
 18

Frida  4:3,23
 5:2 47:1
 49:24
 50:17
 51:10
 87:4,15
 88:4

Friday  29:13

friends  18:6
 31:25
 34:19
 35:11

front  14:20

froze  16:2

full  65:24

fun  29:15

VALENTINO DIXON vs CITY OF BUFFALO, ET AL.
Tamara L. Frida on 10/19/2022                    Index: gather..heard

### G

gather   69:8

gathered
  68:25
  70:25

gave   19:4
  37:14
  65:3,14
  77:23 83:5

general
  10:24 11:4
  13:20 22:5
  55:3 63:25

General's
  21:17

generally
  19:25
  32:20
  41:25
  57:10
  74:14

gentleman
  39:1

Geo   11:24

Gerardo
  22:13
  82:15

girl   27:24

girls   28:14

give   8:7
  9:3,19
  26:16
  34:3,4

46:22
62:19
63:25
65:24 72:9
78:8

giving   41:5
  45:1 65:19

Global   4:10

God   18:3
  42:5

good   5:2,3
  17:10,15
  35:8
  51:10,11
  76:16,18

Goodrich
  21:18

Goodyear
  18:8

gosh   9:10,
  13 10:25
  16:8 81:5

Gotcha   17:18

Grabowski
  24:10

graduated
  8:10,12
  11:12,13

grammar   13:2
  60:15

grand   78:12

Great   7:5
  10:18 88:1

Greater   7:18

ground   14:17
  51:18 52:5
  74:2

group   9:7
  29:14

guess   39:2
  46:5 69:1
  72:9,22

guesstimate
  72:12
  73:24
  81:24

gun   14:9
  36:24 37:1
  39:9 71:25
  72:3,5,25
  73:4,7
  83:11,14,
  18,25
  84:1,9
  85:11,12,
  14 86:3

gunman   16:6

gunshot   86:9

gunshots
  40:12
  72:9,14,
  15,18,23
  73:7 86:5

guy   35:8

guys   22:9,
  24 81:15,
  17

### H

hall   39:2

hand   14:9

hang   29:15

hanging   30:6
  68:2

happen   39:25

happened
  18:9 19:1
  43:5 44:23
  47:12,17,
  18 65:22

happening
  68:24

happenstance
  53:19

headed   14:9

health   7:25
  9:6,7,11
  21:17

hear   6:17
  31:8

heard   19:15
  20:20,22,
  23 21:1
  31:13,16
  32:4,11,18
  36:19
  40:12,20,
  21 42:12
  43:8
  72:14,17,
  23 73:7

83:6 85:8

**hearing** 72:8

**hidden** 61:22

**high** 8:11,
  12,13

**hit** 64:7

**Hodgson** 4:16

**holes** 17:25

**home** 9:12

**homes** 9:7

**homicide**
  51:15

**Hospital**
  10:24 11:4

**hours** 67:15

**house** 25:5
  27:3 38:4

**housing** 7:25

**Hurley** 4:18
  33:12 34:9
  35:22 36:9
  38:7 39:17
  40:3 43:14
  48:17 49:9
  76:13,15,
  21 77:15
  78:2,11,
  22,24
  79:5,19
  80:1,3,5,
  7,8,15,20
  81:1 83:21
  84:12

85:16
86:16,20
87:3,12
88:5,19,20

**Huseby** 4:9

**Hutchinson**
  8:13

_____

I

_____

**idea** 20:12

**identification**
  47:2

**identified**
  59:5,7

**identify**
  26:1,3
  27:6 57:12
  58:21
  77:19
  79:12,15

**identifying**
  26:17
  54:11

**identity**
  58:23

**immediately**
  17:19,21
  73:12

**inability**
  44:20

**incarceration**
  74:11

**incident**

74:1

**including**
  14:4 27:4
  85:4

**incorrect**
  62:10

**indicted**
  37:6

**individual**
  55:13,17
  57:16

**individuals**
  14:6 68:21
  70:20 85:3

**influence**
  68:4

**informally**
  51:13

**information**
  19:5 20:1,
  10 24:17
  34:4 45:1
  57:16
  62:19
  65:19,24

**inside** 11:22
  14:7

**instance**
  54:10

**instantaneous**
  71:16,17

**insurance**
  8:1

**interactions**
  42:12
  60:23
  74:21
  75:2,18
  83:2

**interview**
  56:23

**interviewed**
  42:20,24,
  25

**interviews**
  43:3 56:6

**intimate**
  66:17

**introduce**
  4:11

**introduced**
  51:13 53:5
  76:19

**investigator**
  44:11 46:7
  83:3

**investigators**
  42:25

**involved**
  19:19 29:2
  68:11
  71:5,20
  84:16

**involving**
  14:6

**issued** 62:9

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                Index: issues..licensed

issues   82:15

---
**J**
---

Jackson
   11:17
   12:5,7,13,
   18,22
   13:5,8
   15:7 20:13
   25:23
   30:4,20
   31:21
   35:14 45:6
   71:2,5,24
   74:2,17
   83:11,13
   84:9,24,25
   85:4,5
Jacksons
   30:3
Jacqueline
   12:2
jail   40:5
   41:2
January
   37:6,11
   64:17
   80:17
Jarmon   14:12
   29:4 60:22
   80:16
jeans   63:20
Jen   4:20
Jimmy   44:13

job   11:4
jobs   10:25
   11:1
John   58:6
Joseph's
   29:12
judge   6:21,
   24 7:2
jury   78:12

---
**K**
---

kill   12:17
killed   11:18
   12:4,7,13,
   22 16:14
   20:13
   35:14 45:5
kind   7:14,
   19 13:3
   14:12
   15:21
   16:3,7,13
   17:1 25:3
   39:22
   51:17 58:2
   61:10
   67:23
   68:3,25
kitchen
   59:20,22
knew   13:21
   19:18
   26:12
   30:6,12,25

31:4
33:22,23
34:7 35:4
39:19,20
49:2 58:19
60:9 66:7
80:21
knowing   29:7
   36:2 59:7
knowledge
   13:8,25
   30:8 38:12
   56:13 75:7

---
**L**
---

ladies   28:9
Lamar   12:19,
   21,24
   14:3,8,15,
   18,19,23
   15:7 19:22
   20:13
   27:5,13
   31:6
   34:24,25
   35:12
   36:1,5,14
   37:7 44:21
   45:12
   58:16,19
   59:19,22
   60:11,15
   72:3,18,24
   73:4,6,13,
   16,19,20
   77:19

79:25
80:1,3,10,
   21,23 85:8
   86:9
large   68:25
   69:8
Lasandra
   12:2
late   64:3
lawsuit   5:22
   6:3 51:16
lawyer   44:13
   46:4
lawyers
   5:24,25
   6:4,18
leading   14:3
leaked   18:1
learn   37:5
learned
   19:22
   31:6,10
   32:11
   37:9,19,
   20,21
   38:21
led   17:12
left   8:16
Leonard
   60:22
license   9:18
licensed
   9:18

licenses
  9:17

**M**

life  15:21
  20:18
  59:12

Lippes  4:18,
  20 76:21

Litigation
  4:10

live  7:10,
  11

lived  10:3

living  19:25
  59:20

LLP  4:16

long  8:3
  10:3 15:2
  31:9 72:7,
  10 81:23

looked  59:23
  60:13

lot  11:21,
  22 14:6
  16:9,10,14
  70:17 77:8

loud  86:4,8

louder  77:14

Louie's
  11:16,21,
  22 67:18,
  24

lying  74:2

made  16:21
  18:12,18
  24:25
  31:14
  48:24 49:7
  55:1,7
  57:17,20
  59:16,18
  75:8 77:16

main  11:4

major  16:25

make  25:3,6
  36:6 46:12
  48:3 49:17
  59:10

making  6:18

male  21:19,
  20 64:1

management
  9:14

Margaret
  4:18 76:20

Mario  14:12
  29:4,7
  39:19
  60:22 71:2

mark  46:19,
  24

marked  22:21
  47:2

married
  10:11

master's
  8:20,22

Mathias
  4:19,21
  76:21

matter  4:4
  13:21

Max  44:12

meant  79:25

mechanical
  17:24

Mecklenburg
  9:9

Media  4:3

medical  7:25

meet  37:18
  38:24,25
  54:3

meeting
  39:12
  50:18
  53:18
  65:11 88:6

meetings
  58:3

member  74:10

members  7:23
  8:2

memo  78:16

memory  43:9
  86:7

men  37:6

mental  7:25
  9:6,7,11
  21:17

mentioned
  9:16 20:20
  21:13
  36:15
  41:14 42:7
  44:16
  54:19
  55:12

met  5:4,5
  38:16 40:8
  41:15,18,
  19 46:6,7
  47:10
  76:19

mic  19:15

Michigan
  33:3 34:12
  54:21
  55:10,24
  57:5

mid  64:3

middle  23:5

mind  12:21,
  23 15:6,9,
  10,15 36:7
  78:19

Mindy  4:9

minute  23:3,
  7 49:13
  71:12
  73:18,22,
  24 86:17

minutes
  18:17,19,
  20,21,23
  21:9 72:13
  81:25

misstated
  79:24

mistaken
  37:12

Mo  46:20

Mobile
  18:10,12

mom  37:14
  38:9,11

moments  14:3

monitor  4:7

months  32:2
  53:11,12
  54:8 81:10

morning  5:2,
  3 51:10,11
  67:14

mother  38:5
  64:21

Mount  29:12

move  77:13

moved  10:6
  31:12

MSW  76:23

___

**N**

___

names  16:12

44:15

navigator
  7:22

needed  67:6

nervous  16:4

Neufeld  4:13

news  31:14
  56:24

Niagara
  67:19,20,
  21,22

nice  13:22
  88:6

Nick  4:13
  5:4 51:18
  61:11
  78:23 80:7

nickname
  60:5

night  13:5
  15:11
  17:19
  23:21 40:9
  58:15,18
  59:13 61:1
  63:15 66:7
  67:13
  75:7,8,13,
  15 87:6,8

nightmares
  17:12
  21:25 22:4

nights
  29:13,14

noise  86:8

noises  86:4

nonetheless
  39:14 76:8

North  7:11
  9:8,9,11
  10:3 77:6

notes  49:14

November
  47:5 59:19
  60:12,18
  80:22

number  5:24
  19:5
  46:20,21
  47:14
  65:3,8,13

numerous
  84:23

___

**O**

___

oath  41:5

object  56:3
  59:1 75:25
  78:8 83:21
  85:16

Objection
  36:21
  53:20
  54:13,23
  61:23
  69:16
  71:11,22
  73:23

74:24 78:1
  79:3,17,23
  80:13,18,
  24 87:11

objections
  6:18

observance
  68:18,20

observe
  15:24
  20:15
  70:16
  75:24 76:4
  83:25
  84:1,10

observed
  68:23
  74:20 76:7
  86:4

observing
  16:1
  69:11,14,
  17 72:24

obtained
  8:18,22

October  4:6

office  5:12
  25:1,7
  37:13 38:2
  42:14 48:5
  50:18
  55:22
  62:18 63:4
  65:8,15
  81:4,9

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022                    Index: office's..point

82:19,22

office's
56:10

officer
26:18,25
48:4 55:13
61:8 63:13
65:17

older  64:3

open  69:18

opposed  15:8

opted  25:4

order  78:20

ordering
88:11,14,
15

overheard
21:6

———————

**P**

p.m.  86:22,
25 88:9,24

packet  61:11

pages  22:20
23:5

parking
11:21,22

Parks  12:3

part  16:21,
24 22:9
25:1 33:5,
7,10 44:25

46:5

partially
70:9

participate
62:1 70:21

participated
70:23

party  67:20

partying
67:25

pass  9:21

passed  45:17

passes  71:8

passing  9:20

patients
9:25

pause  78:7

peers  30:19

pending  34:2
54:21 63:4

people  7:23
16:10,11,
14 17:3,17
27:12 29:1
31:19
34:17
68:10,14
69:6,14,19
70:2,10,16
71:4,7,20
74:19
79:12
82:18

84:25

period  9:22

perjury
32:11,13
37:7,20
38:22
39:21
40:14,20
48:12
49:2,5
50:10
60:21
62:14,22
63:11
64:14,15
79:22
80:11,17

Persico  4:20

person  5:5
12:12,14,
21 13:2
19:22
25:23 26:5
31:20 45:5
48:4 49:6
53:15 72:2
74:13 88:7

personally
13:11 30:5

Pete  88:11

Peter  4:15
51:12
86:17

phone  5:9
19:5 24:25

37:14,24
49:25 61:4
78:16
82:10

photographs
48:5,7

photos  48:8

physical
20:10

physically
39:11

picture  27:4

pictures
26:1 27:1,
4 28:11,13

pin  37:2

place  29:12
53:13

plain  63:16,
17

plaintiff
4:14 7:7

Plaintiff's
46:25

planned  54:2

point  15:21
16:1 31:5
38:4,15
42:19
56:17
65:17 69:3
72:24 73:9
74:6

**APPENDIX 1265**

pointed  17:1

points  20:24
  85:2

police
  18:15,16
  19:9 21:4
  22:9,10,14
  23:25 24:1
  25:4
  26:12,24
  28:19 33:2
  34:5 35:19
  36:16,20
  38:4 42:12
  48:4,15,21
  50:9 55:8,
  13,16,18,
  19,20 56:9
  60:23
  61:7,11
  63:13
  64:22
  65:17
  74:21
  75:2,6,11,
  18 76:8
  77:23
  78:16
  79:21
  80:10,23

police's
  50:9

polygraph
  43:12,19,
  21 45:3,
  18,24

position
  7:21

potentially
  6:23 55:24

Powell
  35:17,18

prefer  87:18

prepared
  66:4,13

present
  11:15 13:7
  56:5

pressure
  34:5 35:19

pretty  35:5
  55:22

prior  9:20
  52:20 53:1
  60:21 62:5
  64:15,18
  67:17
  68:9,13,
  16,19 70:8
  73:6 85:1

prison  16:12

private
  9:24,25
  42:25

problem  5:20

process  47:8

processed
  24:4

prosecuted

27:12
41:12

prosecutors
  34:5 61:22
  74:22 75:2

protective
  9:10

provide  67:6

provided
  20:10

providing
  20:1

public  54:5
  56:25

pulled
  18:13,14
  70:1,15
  84:9

pulling  70:9
  71:9

pulls  69:3,
  11 71:7

pursuant  7:6

pursuing
  8:20 11:9

put  20:23
  34:6 35:19
  60:2

Putnam  47:10
  50:9 66:2,
  23 83:3,5

———————————

Q

question  6:8
  7:3 15:18
  28:18
  33:8,10,16
  51:23
  59:1,7
  67:14
  69:10
  72:22
  79:24

questions
  5:22 6:3,
  4,8,19
  20:8 22:22
  24:17 29:1
  45:4,8,11,
  14 48:15
  49:17,24
  50:25 51:2
  52:5 78:8
  82:5 83:2,
  10 86:15

quick  85:24

———————————

R

radiator
  18:1

radio  20:21
  21:2,4

raised  73:4

raising  73:7

ran  14:12

54:5 56:24

**reached**
   65:4,6

**read**  23:7,9
   24:16
   87:16
   88:22

**reading**
   23:23
   24:20

**reason**  33:1
   70:23

**reasons**  34:3

**recall**  50:17
   51:17
   53:13,14
   63:13,15,
   22,24
   64:1,12,
   21,25
   67:8,12
   84:17 85:7

**recalling**
   64:16

**Recently**
   81:9

**recess**  49:20
   86:24

**recognized**
   13:18
   15:11
   58:22

**recollection**
   44:7 46:13

48:3 50:2
82:10,12

**record**
   49:19,22
   51:13
   76:20
   86:15,23
   87:1 88:10

**recorder**
   50:22

**RECROSS-
EXAMINATION**
   86:1 87:2

**red**  11:24,
   25 26:5,13
   27:24
   28:20

**REDIRECT**
   82:6

**referring**
   24:21

**reflect**
   61:18

**reflects**
   79:1

**refresh**  50:1

**refreshes**
   44:7

**registered**
   28:22

**regret**  41:8

**regular**  16:6

**reinvestigatin
g**  43:1 46:2

**reinvestigatio
n**  42:21
   46:5 50:19

**reiterated**
   57:3

**related**  7:24

**relates**
   60:24

**relation**
   63:4

**relayed**
   54:11
   56:13 66:6
   75:22

**released**
   41:24

**religion**
   42:5

**reluctant**
   65:22

**remember**
   20:21
   21:18,20,
   21 22:10,
   13 25:10,
   11,15 31:9
   34:14
   37:9,19,
   24,25
   38:3,8
   39:4,6,9,
   10 42:23
   43:4 44:1,

7,9,14,15
46:1 50:22
51:23
52:11
56:20
62:13 65:8
72:8 82:24
84:21

**remembered**
   47:14
   82:11

**repeat**  52:1,
   3,8 62:20

**rephrase**
   6:12

**report**  22:9,
   10,14
   23:7,20,24
   24:7,9,14,
   21 25:8
   61:17

**reported**
   48:22

**reporter**
   4:9,12
   5:21 44:13
   77:14
   88:11,15,
   19

**reports**
   61:11

**represent**
   51:14
   76:21

**representative**

63:3

**representing**
62:5

**reputation**
13:15
30:7,8

**request** 50:1
77:13

**requested**
44:9

**reservation**
27:9,17

**resources**
7:22,24
8:1

**restaurant**
11:16

**result** 44:25

**retired**
51:15

**review** 50:1,
4,7,15
51:22
81:22
87:16,20

**rink** 29:10

**road** 6:24

**rode** 67:21,
23

**Roger** 47:10
50:9 66:2,
23

**Romo** 22:17
82:15

**room** 5:21

**rule** 6:24

**rules** 51:18
52:5

**run** 14:8
16:7

**rundown** 8:7
9:3

**running**
14:14 15:4
72:19
73:19

**Russ** 4:16

————————
**S**
————————

**safe** 22:5

**safety** 20:10
38:12

**Sahasrabudhe**
4:15 12:8,
15 14:21,
24 20:3
21:11
22:11,15,
25 23:11,
14 26:9,19
27:7,15,21
28:1 30:9,
21 31:23
32:5,22
34:8 35:21
36:8,21

38:6,19
39:16 40:2
43:13,24
44:2 46:16
49:8 50:12
51:9,12
54:1,15,24
56:4 59:3,
9 62:3
69:23 70:4
71:13,23
73:25
74:25
75:16
76:2,11
83:20
84:2,11
85:15,23
86:2,12
87:14
88:4,13,17

**Saturday**
29:14

**scared** 15:25
16:4 18:11
19:12,13,
14,21
26:22

**scene** 18:18,
24 19:2
24:1 35:11
63:14

**Scheck** 4:13

**scheduling**
82:19

**school** 8:11,

12,13,17
13:2
60:15,16

**Scott** 12:19,
21,24
14:3,8,15,
19 15:7
19:22
20:13
27:5,13
31:6
34:24,25
35:12
36:1,5,14
37:7 44:21
45:12
58:16,19
59:19,22
60:12,15
72:3,24
73:4,6,13,
16 77:20
79:21
80:1,3,10,
21,23 85:8
86:9

**Scott's**
14:23

**Sears** 11:2

**secure** 7:22

**seek** 17:11

**send** 34:11
87:23

**sense** 22:5

**Service** 11:2

services
  9:10,13

shaken  15:25

shirt  39:7
  63:21

shoot  12:17
  14:18
  16:24

shooter
  19:9,17
  20:25 21:2
  27:13 31:3
  32:21
  33:2,11,
  14,19,23
  34:1,7,24
  36:2,3,6,
  15 37:7
  45:12
  48:23
  54:12
  57:4,14
  60:16
  77:20,24
  79:7,16,22
  80:11,22,
  23

shooting
  10:19 13:1
  14:4,10,
  11,16
  15:20,24
  16:7 17:19
  18:17,23,
  24 19:2
  21:9,14

22:1 24:11
25:18
29:2,18,
21,23
30:18
31:10 32:3
34:15,21
40:10
41:15
48:6,16,22
53:2,7,11,
13 54:8
58:15,19
59:13
60:24 61:2
63:15
64:10
73:5,7,20,
21 75:14,
15,24
76:4,7
77:22 84:5
85:1 87:6,
8

shootings
  16:9,14

short  49:20
  86:24

shot  11:17
  12:4,7,13,
  21 13:5,8
  15:7 20:13
  25:23
  26:14
  30:19
  31:20
  35:14 45:5

85:8,14

show  22:8
  27:1

showed
  28:11,12
  48:5

shown  27:4

sic  78:25
  81:3

side  16:25

sight  13:14
  58:19

sign  87:16,
  19,21
  88:22

signed  46:7
  47:5,25

similar
  82:15

simultaneously
  14:13

single  47:16

sitting
  59:22

skating
  29:10

skipped  33:5

slacks  39:7
  63:21

Smith  12:2

smoke  17:12

smoker  17:14

smoking  18:2
  68:1

social  7:15,
  20 8:19,
  21,25 9:5,
  19,23
  16:22

son  10:16

son's  59:21,
  23

SOTO-BRITO
  46:22

sought  21:13

sounds  32:15
  44:19

speak  19:3
  32:17
  35:10,16
  64:23
  65:22
  77:14
  81:3,8
  82:14

speaking
  53:2 70:10

specialty
  9:7

specific
  55:22

specifically
  7:19 20:6
  69:10

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022    Index: speculation..Tamara

speculation
  61:24

spoke  19:4
  23:25 24:1
  28:19
  29:22 38:5
  41:21
  44:17
  48:14
  49:25
  53:8,9
  57:24 61:7
  63:9,14
  64:13
  82:10

spoken  5:9,
  11 41:16
  42:8 52:23
  57:20
  58:4,8
  74:9,14,
  16,19 75:1

Sport  59:25
  60:1,9,16

St  29:12

Stambach
  24:10 25:9
  26:25

stamp  78:21

stamped  23:5

standing
  32:24,25
  69:19

start  7:5,16
  16:7 23:6

52:17

started
  14:10,11,
  13 18:2
  51:17,19
  71:2 73:5,
  20 86:10

starting  6:2

state  8:18
  9:8,9,11
  11:10,13
  34:6 66:6
  67:2

statement
  50:8,9
  66:2,14
  77:23 83:5

statements
  50:20

station
  18:11,12

stay  16:12

stayed  8:17

Stencil
  35:17,18

stood  14:18

stopped
  37:15

store  56:25

story  47:11

street  14:17
  68:15,18,
  21 69:15

70:3

strike  87:8

student  11:5

stuff  16:10

subpoena  7:7
  62:9,13
  67:6

subpoenaed
  37:15
  40:17,18
  65:11 67:3

subsequently
  40:13

substance
  61:18 64:5
  79:1 82:11

suggest
  82:23

Sullivan
  58:6

sum  64:5

SUNY  8:21

Super  11:2

support  7:25
  9:13

swear  4:12

swooped  71:3

sworn  4:24

symptoms
  22:3

_____

| T |
| --- |
_____

T-SHIRT
  63:20 64:2

table  59:22

taking  9:20
  66:6

talk  10:20
  28:17
  33:18
  34:17,18
  35:18
  37:16,22
  41:25
  47:11
  65:12 66:1
  67:13
  75:9,10
  81:15,17,
  18

talked  26:13
  34:14
  41:20
  42:2,4
  54:16
  56:19 58:3
  63:1 75:11
  81:16,19

talking
  44:12
  46:16
  47:12
  67:14

Tamara  4:3,
  23 47:1

tape 50:22

tape-recorded
  50:20,21

targeted
  31:2

Technical
  8:13

telephone
  41:20

television
  36:2,6,15

telling 26:8
  27:12
  39:15,19,
  22 59:4
  64:21

Terrific 8:3

testified
  4:24 55:16
  78:12
  79:20 80:9

testify
  40:13,16,
  17,18

testifying
  7:6

testimony
  41:5 51:19
  58:18
  60:21
  88:10

therapist
  17:10,16
  25:2

therapist's
  25:1

therapy 8:25
  9:6,11,17
  16:21
  17:11 25:1

thing 6:17
  9:14 18:4
  34:10
  37:21
  58:14 68:3
  75:21
  83:24

things 36:19

thinking
  11:9

thought
  17:14 40:4
  41:11

threaten
  39:11
  65:18

threatened
  39:14
  54:20
  65:23

threatening
  33:3 34:11

threats
  54:25 55:7
  57:17

tie 63:18,
  21

time 4:6

5:5 6:7,
  17,18
  10:19,23
  11:4,6,8
  12:24,25
  13:5,12,15
  15:3 16:9
  19:8,13,
  14,24
  20:7,9,12
  21:15,16,
  19 22:4
  26:24
  27:4,6,8,
  14 28:2
  29:10 31:5
  35:3
  36:22,24
  37:5
  38:15,21
  41:14,21
  42:19 43:7
  44:12,14
  45:1 46:14
  48:25
  49:2,4,18,
  21 52:9,25
  53:8,9,24
  56:23
  57:24
  59:12,20,
  21 62:16
  63:1,9
  65:5 66:6,
  20 70:24
  71:8 72:23
  73:3,15
  76:12 85:2

86:22,25
  88:2,9

times 5:9
  21:21,23
  29:22
  34:14,16
  41:20
  42:8,22,23
  49:25 58:4
  81:2,5,6
  84:5,23

Tino 31:2
  33:1

today 6:8
  10:20
  12:13,14
  41:9 51:19
  58:10
  78:15
  81:18

today's 4:6
  81:2 88:10

told 18:9,
  14 21:24
  24:2
  25:17,20,
  22,25 26:4
  27:23
  28:19
  32:23
  33:22
  34:10
  40:1,5,11,
  21 41:12
  44:16
  45:17,21,

23 46:2
48:23 49:6
55:2 65:2,
23 67:5
75:4,7
76:8 79:21
80:10,22
84:4

top 11:25
78:18

Torri 14:13,
16 15:5
73:19 74:1
84:9,24
85:4

Torriano
11:17
12:5,7,13,
17,22
13:5,8
15:7 20:13
25:23
30:3,19
31:21
35:14 45:5
71:24
83:11,13

Tracker
11:24
26:5,14
27:24
28:20

transcript
50:12,13
88:12,22

transition

11:7

transportation
67:7

trauma 17:6
22:3

traumatized
17:12

traumatizing
16:16 77:2

Travis
35:17,18

trial 9:22
39:20,21
40:6,14,20
41:5 48:8,
12 50:10
60:21 62:1
64:16,18
66:20
77:23

truck 14:15
32:25

true 41:6
42:11,15

truth 27:12
39:15,20,
23 40:1,5,
10,19,21
41:12
44:23
47:23
82:23

truthful
45:25

truthfully
45:9,15

turn 51:1

type 8:1

types 8:24

_____

U

_____

UB 76:23

Uh-huh 18:22
20:4 21:3
24:8 30:14
32:16
36:4,18
44:18
47:21
52:19 54:9
60:6,8,19
61:13,16
62:25 66:3
69:13 74:5
82:13

uncomfortable
39:18,22

understand
6:7,11 7:3
27:23 52:4
65:13

understanding
23:24
26:12
28:7,8
53:1 59:1
62:8 66:4,
19

understood
26:7,17
41:4 42:4
60:3,17
66:11

unenrolled
11:8

uniform
63:16

University
8:15 11:9

upset 16:23

_____

V

_____

Valentino
4:4,14
13:4,11,
14,21
15:8,11
19:16
20:20,24
25:22 31:1
33:19,22
34:1,6,24
35:1,4,13
36:17,20
41:15,22
42:10,21
44:16 45:4
48:22
54:11
57:4,12
62:4,5,9
63:5 74:7,
10,14

**VALENTINO DIXON vs CITY OF BUFFALO, ET AL.**
Tamara L. Frida on 10/19/2022    Index: Valentino's..Zoom

Valentino's  62:1,11, 18,24

vehicle  11:22,23 16:3 18:2, 15 48:8,11

verbally  42:3

verify  48:11

versus  4:4

vicinity  13:7

vision  68:17

visit  27:25

Vislay  4:9

visually  31:4

volunteer  43:11

_____

**W**

waive  88:23

walked  70:2

walkie  19:15

wanted  16:22 17:22 25:5 36:25 64:23

waste  52:9

watching  14:6,7

weapon  84:19

wearing  39:5 63:18

week  41:24

whatever's  17:4

whatsoever  83:7

When's  41:21

white  11:25 21:20 64:1

withdraw  43:17

withdrawn  34:4 36:1, 5 37:18 38:25 44:21 83:13 84:16,17, 25

withheld  61:22

witnessed  15:20 31:3 77:1

witnesses  35:11

witnessing  16:17

wonderful  77:7

words  13:17

15:14 19:21 25:12 54:2 66:16 71:18

work  7:14, 20 8:19, 21,23,25 9:6,13,23 16:22 59:22 77:5

worked  9:6, 8,9 10:25

worker  7:15 9:19

working  8:3, 5 10:25 11:1 66:23

world  42:6

worry  7:1

worse  17:2

worst  17:5

wound  37:15 65:9

write  46:10, 11

writing  47:12

wrong  44:20

_____

**Y**

year  32:14 81:12

year-and-a-half  81:12

years  8:17 10:5,16,21 29:8 42:4 44:22 47:14

YMCA  7:18, 20,21 8:5, 24 77:6

York  8:16 44:14 67:22

young  28:9 60:7

_____

**Z**

Zoom  5:25

# BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO | SUBJECT | DATE 8-10-91 |
|---|---|---|
| FROM | FILE 91-145 | |



**WARNING - SUSPECTS'S RIGHTS**

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned. V. D.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

DO NOT REMOVE

MRS

COB 000152

**APPENDIX 1274**

P - 50 (Rev. 10/88)

# Buffalo Police Department
## Central Booking Bureau
### Prisoner Information Form

Name **Valentino Dixon**

Date **8-10-91**

Arrest No. **91-14141**

[ ] Paperwork Incomplete

[ ] Prisoner is Escape Prone

[ ] Prisoner is Assaultive

## Interrogatories

|  | Yes | No |
|---|---|---|
| 1. Are you under a doctor's care? | [ ] | [✓] |
| If yes, Name & Location | | |
| 2. Are you on Medication? | [ ] | [✓] |
| If yes, Type & Dosage | | |
| 3. When did you have the Medication last? | [ ] | [✓] |
| 4. Are you a diabetic? | [ ] | [✓] |
| 5. Are you an epileptic? | [ ] | [ ] |

## Observations

|  | Yes | No |
|---|---|---|
| 1. Prisoner is Escape Prone. | [ ] | [✓] |
| 2. Prisoner is Assaultive. | [ ] | [✓] |
| 3. Has Prisoner made any unusual statements? | [ ] | [✓] |
| 4. Does Prisoner appear to be under the influence of Alcohol or Drugs? | [ ] | [✓] |
| 5. Does Prisoner appear to be undergoing withdrawal? | [ ] | [✓] |
| 6. Does Prisoner appear to be depressed? ( i.e. Crying, Blank or Vacant Expression ) | [✓] | [ ] |
| 7. Does Prisoner appear anxious? ( Jumpy - Jerky ) | [ ] | [✓] |
| 8. Does the Prisoner appear to be hallucinating? ( Visual / Audio ) | [ ] | [✓] |
| 9. Is the Prisoner uncooperative - Aggressive? | [ ] | [✓] |

## Actions taken by Officer's / C.B.B.:

[ ] Sent to E.C.M.C.

[ ] Other Medical Treatment.

[ ] Asst. Chief of Detectives Notified.

Screening Officer **DA** ( Initials )

Police Officer,C.B.B. **FC** ( Initials )

Asst. Chief of Det.'s _____ ( Initials )

Distribution:
Original to Asst. Chief of Det.'s
1 Copy in C.B.B. file
1 Copy in Arrest folder

COB 000153

P-32 (6/80)

Docket _____

**BUFFALO POLICE DEPARTMENT**
**REPORT TO DISTRICT ATTORNEY**

C.D.91-221-504

ARREST 91-14141

**A** | DEFENDANT(s): (First Name     M.I.     Last) | D.O.B | Date of Arrest

| | | | D.O.B | | | Date of Arrest | | |
|---|---|---|---|---|---|---|---|---|
| 1 | VALENTINO A. DIXON | | 10 | 20 | 69 | 8 | 10 | 91 |
| 2 | | | / | / | | / | / | |
| 3 | | | / | / | | / | / | |
| 4 | | | / | / | | / | / | |

**B** | PENAL LAW CHARGES: (SECTION & SUB.) **125.25-1.2/120.10-1(3 CTS)/265.03(4 CTS)**

**C** | WITNESSES -VICTIMS (specify): (INCL. NAME & ADDRESS CITY, TOWN, VILLAGE, ZIP CODE) | TELEPHONE

| | | | TELEPHONE | | |
|---|---|---|---|---|---|
| 1 | DETECTIVE MARK STAMBACH | HOMICIDE SQUAD | | | |
| 2 | V- TORRANO JACKSON (DECEASED) | 19 THATCHER ST. | | | |
| 3 | V- AARON JACKSON | 19 THATCHER ST. | | | |
| 4 | V- MARIO JARMON | 1122 EAST DELAVAN | | | |
| 5 | V- JOHN SULLIVAN | 49 ELMER ST. | | | |
| 6 | | | | | |

**D** | SEARCH & SEIZURE: SEARCH WARRANT [ ] YES [ ] NO     JUDGE:

WHAT SEIZED: **N/A**                                          TO LAB ? [ ] YES [ ] NO

FROM: AUTO (Lic. State)          HOME(Address)                    PERSON(Name)

**E** | IDENTIFICATION: BY WHOM (List No. In Sec. C)  #**1**  #**2** #**3**  #**4** #**5**   AT OR NEAR SCENE [XX] YES [ ] NO

LINE UP:     DATE    /    /     BY WHOM (List No. In Sec. C)   #    #    #    #    #    #

PHOTOGRAPHS:  DATE    /    /     BY WHOM (List No. In Sec. C)   #    #    #    #    #    #

DID VICTIM KNOW DEF? [XX] YES [ ] NO   RELATIONSHIP: **FROM NEIGHBORHOOD**

**F** | STATEMENT OR ADMISSION: [XX] WRITTEN [ ] ORAL     DATE: **8** / **10** / **91**     [ ] Copy Attached
CONTENT:
**SEE WRITTEN STATEMENT TAKEN BY THE HOMICIDE SQUAD.**

(Additional Space on Back)

**G** | POLICE KNOWLEDGE OF CRIME: [XX] RADIO [ ] OBSERVATION [XX] CITIZEN [XX] OTHER

DID REPORTING OFFICER PERSONALLY WITNESS CRIME? [ ] YES [XX] NO

PHYSICAL INJURY SUSTAINED: (Describe) **TORRANO JACKSON - DECEASED //JOHN SULLIVAN - THIGH WOUND**
**(ALL INJURIES FROM GUN SHOTS)** **AARON JACKSON AND MARIO JARMON - CRITICAL CONDITION**

PROPERTY DAMAGE OR LOSS: (Describe)     **N/A**          APPROX.LOSS $

**H** | ADDITIONAL BACKGROUND INFORMATION OR PREVIOUS KNOWLEDGE OF DEFENDANT OR INCIDENT?

**SUPPORTING DEPOSITIONS TO FOLLOW WHEN COMPLAINANTS ARE PHYSICALLY ABLE TO DO SO.**
**COMPLAINANTS ARE CURRENTLY RECEIVING MEDICAL ATTENTION FOR THEIR GUN SHOT WOUNDS.**

(Additional Space on Back)

**I** | OFFICER IN CHARGE OF CASE          RANK                    ASSIGNMENT

COB 000154

P-32 (6/80)
Docket _____

**APPENDIX PAGE**

BUFFALO POLICE DEPARTMENT
REPORT TO DISTRICT ATTORNEY

C.D. 91-221-504

ARREST 91-14141

| A | DEFENDANT(s): (First Name    M.I.    Last) | | D.O.B | | | Date of Arrest | | |
|---|---|---|---|---|---|---|---|---|
| 1 | VALENTINO A. DIXON | | 10 | 20 | 69 | 8 | 10 | 91 |
| 2 | | | / | / | | / | / | |
| 3 | | | / | / | | / | / | |
| 4 | | | / | / | | / | / | |

| B | PENAL LAW CHARGES: (SECTION & SUB.)    125.25-1,2/120.10-1(3 CTS)/265.03(4 CTS) |
|---|---|

| C | WITNESSES -VICTIMS (specify): (INCL. NAME & ADDRESS CITY, TOWN, VILLAGE, ZIP CODE) | TELEPHONE | | |
|---|---|---|---|---|
| 1 | DETECTIVE MARK STAMBACH | HOMICIDE SQUAD | | |
| 2 | V- TORRANO JACKSON (DECEASED) | 19 THATCHER ST. | | |
| 3 | V- AARON JACKSON | 19 THATCHER ST. | | |
| 4 | V- MARIO JARMON | 1122 EAST DELAVAN | | |
| 5 | V- JOHN SULLIVAN | 49 ELMER ST. | | |
| 6 | | | | |

| D | SEARCH & SEIZURE: SEARCH WARRANT [ ] YES [ ] NO    JUDGE: |
|---|---|
| | WHAT SEIZED: N/A                                        TO LAB? [ ] YES [ ] NO |
| | FROM: AUTO (Lic. State)        HOME(Address)        PERSON(Name) |

| E | IDENTIFICATION: BY WHOM (List No. In Sec. C) #1 #2 #3 #4 #5    AT OR NEAR SCENE [XX] YES [ ] NO |
|---|---|
| | LINE UP:    DATE    /    /    BY WHOM (List No. In Sec, C)    #    #    #    #    #    # |
| | PHOTOGRAPHS: DATE    /    /    BY WHOM (LIST No. In Sec. C)    #    #    #    #    #    # |
| | DID VICTIM KNOW DEF? [XX] YES [ ] NO    RELATIONSHIP: FROM NEIGHBORHOOD |

| F | STATEMENT OR ADMISSION: [XX] WRITTEN [ ] ORAL    DATE: 8 / 10 / 91    [ ] Copy Attached |
|---|---|
| | CONTENT:    SEE WRITTEN STATEMENT TAKEN BY THE HOMICIDE SQUAD. |

(Additional Space on Back)

| G | POLICE KNOWLEDGE OF CRIME: [XX] RADIO [ ] OBSERVATION [XX] CITIZEN [XX] OTHER |
|---|---|
| | DID REPORTING OFFICER PERSONALLY WITNESS CRIME? [ ] YES [XX] NO |
| | PHYSICAL INJURY SUSTAINED: (Describe) TORRANO JACKSON - DECEASED //JOHN SULLIVAN - THIGH WOUND (ALL INJURIES FROM GUN SHOTS) AARON JACKSON AND MARIO JARMON - CRITICAL CONDITION |
| | PROPERTY DAMAGE OR LOSS: (Describe)    N/A    APPROX.LOSS $ |

| H | ADDITIONAL BACKGROUND INFORMATION OR PREVIOUS KNOWLEDGE OF DEFENDANT OR INCIDENT? |
|---|---|
| | SUPPORTING DEPOSITIONS TO FOLLOW WHEN COMPLAINANTS ARE PHYSICALLY ABLE TO DO SO. COMPLAINANTS ARE CURRENTLY RECEIVING MEDICAL ATTENTION FOR THEIR GUN SHOT WOUNDS. |

(Additional Space on Back)

| I | OFFICER IN CHARGE OF CASE | RANK | ASSIGNMENT |
|---|---|---|---|

COB 000155

APPENDIX 1277

P-32 (6/80)
Docket _____

BUFFALO POLICE DEPARTMENT
REPORT TO DISTRICT ATTORNEY

C.D. 91-221-504
ARREST 91-14141

**A** | DEFENDANT(s): (First Name    M.I.    Last)    D.O.B    Date of Arrest

| | | D.O.B | Date of Arrest |
|---|---|---|---|
| 1 | VALENTINO A. DIXON | 10 / 20 / 69 | 8 / 10 / 91 |
| 2 | | / / | / / |
| 3 | | / / | / / |
| 4 | | / / | / / |

**B** | PENAL LAW CHARGES: (SECTION & SUB.) 125.25-1.2/120.10-1(3 CTS)/265.03(4 CTS)

**C** | WITNESSES -VICTIMS (specify): (INCL. NAME & ADDRESS CITY, TOWN, VILLAGE, ZIP CODE)    TELEPHONE

| | | | TELEPHONE |
|---|---|---|---|
| 1 | DETECTIVE MARK STAMBACH | HOMICIDE SQUAD | |
| 2 | V- TORRANO JACKSON (DECEASED) | 19 THATCHER ST. | |
| 3 | V- AARON JACKSON | 19 THATCHER ST. | |
| 4 | V- MARIO JARMON | 1122 EAST DELAVAN | |
| 5 | V- JOHN SULLIVAN | 49 ELMER ST. | |
| 6 | | | |

**D** | SEARCH & SEIZURE: SEARCH WARRANT [ ] YES [ ] NO    JUDGE:

WHAT SEIZED: N/A    TO LAB ? [ ] YES [ ] NO

FROM: AUTO (Lic. State)    HOME(Address)    PERSON(Name)

**E** | IDENTIFICATION: BY WHOM (List No. In Sec. C) #1 #2 #3 #4 #5    AT OR NEAR SCENE [XX] YES [ ] NO

LINE UP:    DATE    /    /    BY WHOM (List No. In Sec, C) #    #    #    #    #    #

PHOTOGRAPHS: DATE    /    /    BY WHOM (LIST No. In Sec. C) #    #    #    #    #    #

DID VICTIM KNOW DEF? [XX] YES [ ] NO    RELATIONSHIP: FROM NEIGHBORHOOD

**F** | STATEMENT OR ADMISSION: [XX] WRITTEN [ ] ORAL    DATE: 8 / 10 / 91    [ ] Copy Attached
CONTENT:
SEE WRITTEN STATEMENT TAKEN BY THE HOMICIDE SQUAD.

(Additional Space on Back)

**G** | POLICE KNOWLEDGE OF CRIME: [XX] RADIO [ ] OBSERVATION [XX] CITIZEN [XX] OTHER

DID REPORTING OFFICER PERSONALLY WITNESS CRIME? [ ] YES [XX] NO

PHYSICAL INJURY SUSTAINED: (Describe) TORRANO JACKSON - DECEASED //JOHN SULLIVAN - THIGH WOUND
(ALL INJURIES FROM GUN SHOTS) AARON JACKSON AND MARIO JARMON - CRITICAL CONDITION

PROPERTY DAMAGE OR LOSS: (Describe)    N/A    APPROX.LOSS $

**H** | ADDITIONAL BACKGROUND INFORMATION OR PREVIOUS KNOWLEDGE OF DEFENDANT OR INCIDENT?

SUPPORTING DEPOSITIONS TO FOLLOW WHEN COMPLAINTS ARE PHYSICALLY ABLE TO DO SO.
COMPLAINTS ARE CURRENTLY RECEIVING MEDICAL ATTENTION FOR THEIR GUN SHOT WOUNDS.

(Additional Space on Back)

**I** | OFFICER IN CHARGE OF CASE    RANK    ASSIGNMENT
MARK STAMBACH    DETECTIVE    HOMICIDE

COB 000156

ERIE COUNTY CENTRAL POLICE SERVICES
## ARREST / BOOKING FORM

CPS AGENCY FILE NO.
91-14141

☒ IDENTITY VERIFIED BY STATE RAP SHEET
☐ IDENTITY NOT VERIFIED BY STATE RAP SHEET

### A. PERSON INFORMATION

**2. NAME (NAM) (LAST, FIRST, MI, SUFFIX)**
Dixon, Valentino A.

**3. DATE OF BIRTH (DOB)** 10-20-69  **4. AGE** 21  **5. SEX** M  **6. RACE** B

**7. SPIN NO. (COMPUTER ASSIGNED)**

**8. ADDRESS (ADR) (NO., STREET, SUFFIX, APT. NO.)** 61 Rounds
**9. CITY (CIT) (CITY, STATE, ZIP CODE)** Buffalo, NY
**10. ORA** EI01

**11. HEIGHT (HGT)** | **12. WEIGHT (WGT)** | **13. BUILD (BLD)** | **14. EYE** | **15. HAIR (HAI)** | **16. SCARS, MARKS, TATTOOS (SMT)**

**17. CITIZEN (CTZ)** ☒ YES ☐ NO  **18. PLACE OF BIRTH (POB) (CITY, STATE)** Buffalo, NY  **19. OCCUPATION (OCC)** None  **20. MARITAL STATUS (MAR)** Single

**21. WARNING (WAR)** | **CODE** | **22. DRIVER'S LICENSE NO.** | **STATE** | **23. JUVENILE** ☐ YES ☐ NO

**24. NYSID NO. (DCJ)** | **25. FBI No. (FBI)** | **26. SOCIAL SECURITY No. (SOC)** 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 | **27. MUGNO (IMS)** | **28. MISCELLANEOUS No. (MNO)** | **29. ALIASES & REMARKS SEE 51 & 52**

### B. ARREST INFORMATION

**30. BOOKING/POLICE No.** 91-221-504  **31. O.B.T.S. No. (JCN)**  **32.**

**33. ARRESTING AGENCY ORI (ARA)** NY0140100  **34. ARREST DATE (ARD)** 8-10-91  **35. ARREST TIME (ART)** 1600 Hrs  **36. ARRESTING OFFICER (ARO)** Det. Stambach  **37. ASSISTING OFFICER (ASO)** Homicide

**38. ADDRESS OF ARREST (ADR) (NO., STREET, SUFFIX, APT. NO.)** 1122 E. Delavan
**39. CITY OF ARREST (CTA)** Buffalo
**40A. COMPLAINANT (COM)** Torrano Jackson (Deceased) 19 Thatcher
Aaron Jackson 19 Thatcher
**40B. ADDRESS**

**41. ARREST-RELATED REMARK (ARI)**
Mario Jarmon 1122 E. Delavan
John Sullivan 49 Either

**42. ARREST-RELATED REMARK (ARI)**

### C. CHARGE AND DISPOSITION

| | LAW | 43. ORIGINAL CHARGE SEC-SUBSEC-PAR | CAT | CTS | ATT | LAW | 44. DISPOSITION CHARGE SEC-SUBSEC-PAR | CAT | CTS | ATT | 45 DISPOSITION OR SENTENCE | 46. DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (AC1) | PL | 125.25-1,2 | DF | 2 | | | | | | | | |
| (AC2) | | 265.03 | CF | 4 | | | | | | | | |
| (AC3) | | 120.10-1 | CF | 3 | | | | | | | | |
| (AC4) | | | | | | | | | | | | |
| (AC5) | | | | | | | | | | | | |
| (AC6) | | | | | | | | | | | | |

**47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY — TYPE AND VALUE, ACCOMPLICE NAMES**
Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine
9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC.
The defendant also did shoot Aaron Jackson, Mario Jarmon and John Sullivan. Aaron Jackson
and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU.
John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING
NO WARRANTS ON FILE
HOLD FOR ____ MB

**48A. WARRANT No. (WWN)** | **ORA** | **48B. WARRANT No. (WWN)** | **ORA** | **48C. WARRANT No. (WWN)** | **ORA** | **48D. WARRANT No. (WWN)** | **ORA**

**49. VICTIM INFORMATION** | **No. OF VICTIMS** | **AGE** | **SEX** | **AGE** | **SEX** | **50. DEFENDANT'S SIGNATURE** X

**51. (AL_) ALIASES LAST, FIRST, M.I., SUFFIX** | **52. (PR_) PERSONS RELATED REMARKS**

COB 000157

APPENDIX 1279

ERIE COUNTY CENTRAL POLICE SERVICES
ARREST / BOOKING FORM

□ IDENTITY VERIFIED BY STATE RAP SHEET
□ IDENTITY NOT VERIFIED BY STATE RAP SHEET

1. CB NO. 91-14141

## A. PERSON INFORMATION

| 2. NAME (NAM) (LAST, FIRST, MI, SUFFIX) | | 3. DATE OF BIRTH (DOB) | 4. AGE (AGE) | 5. SEX (SEX) | 6. RACE (RAC) | 7. S.I.D. NO. (SID) | CO (DITS) (CTU) |
|---|---|---|---|---|---|---|---|
| Dixon, Valentino A. | | 10-20-69 | 21 | M | B | | |

| 8. ADDRESS (ADR) (NO., STREET, SUFFIX, APT. NO.) | 9. CITY (CIT) (CITY, STATE, ZIP CODE) | 10. ORA |
|---|---|---|
| 61 Rounds | Buffalo, NY | EI01 |

| 11. HEIGHT (HGT) | 12. WEIGHT (WGT) | 13. BUILD (BLD) | 14. EYE | 15. HAIR (HAI) | 16. SCARS, MARKS, TATTOOS (SMT) |
|---|---|---|---|---|---|

| 17. CITIZEN (CTZ) | 18. PLACE OF BIRTH (POB) (CITY, STATE) | 19. OCCUPATION (OCC) | 20. MARITAL STATUS (MAR) |
|---|---|---|---|
| X YES □ NO | Buffalo, NY | None | Single |

| 21. WARNING (WAR) | CODE | 22. DRIVER'S LICENSE NO. | STATE | 23. JUVENILE □ YES □ NO |
|---|---|---|---|---|

| 24. NYSID NO. (OCS) | 25. FBI NO. (FBI) | 26. SOCIAL SECURITY NO. (SOC) | 27. NDS MC. NO. (GC) | 28. MISCELLANEOUS NO. (MIS) | 29. ALIASES & REMARKS (SEE 51 & 52 (FRS) |
|---|---|---|---|---|---|
| | | 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 | | | |

## B. ARREST INFORMATION

| 30. A.P.M. NO. (APM) | 31. O.B.T.S. NO. (OBT) | 32. |
|---|---|---|
| 91-221-504 | | |

| 33. ARRESTING AGENCY ORI (ORA) | 34. ARREST DATE (ARD) | 35. ARREST TIME (ARI) | 36. ARRESTING OFFICER (ARO) | 37. ASSISTING OFFICER (ASO) |
|---|---|---|---|---|
| NY0140100 | 8-10-91 | 1600 Hrs | Det. Stambach | Homicide |

| 38. ADDRESS OF ARREST (ACR) (NO., STREET, SUFFIX, APT. NO.) | 39. CITY OF ARREST (CTA) | 40A. COMPLAINANT (COM) | 40B. ADDRESS (ADR) |
|---|---|---|---|
| 1122 E. Delavan | Buffalo | Torrano Jackson (D) Deceased 19 Thatcher<br>Aaron Jackson 19 Thatcher | |

| 41. ARREST-RELATED WEAPON (WPN) | 42. ARREST-RELATED REMARKS (ARR) |
|---|---|
| | Mario Jarmon 1122 E. Delavan<br>John Sullivan 149 Elmer |

## C. CHARGES AND DISPOSITION

| | | 43. ORIGINAL CHARGE | | | | 44. DISPOSITION CHARGE | | | | 45. DISPOSITION OR SENTENCE | 46. DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | LAW | SEC'S./PSC C./A.P. | CAT | CTS | ATT | LAW | SEC'S./PSC C./A.P. | CAT | CTS | ATT | |
| (AC1) | PL | 125.25-1,2 | DF | 2 | | | | | | | |
| (AC2) | | 265.03 | CF | 4 | | | | | | | |
| (AC3) | | 120.10-1 | CF | 3 | | | | | | | |
| (AC4) | | | | | | | | | | | |
| (AC5) | | | | | | | | | | | |
| (AC6) | | | | | | | | | | | |

47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY – TYPE AND VALUE, ACCOMPLICE NAMES

Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine
9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC.
The defendant also did shoot Aaron Jackson, Mario Jarmon and John Sullivan. Aaron Jackson
and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU.
John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING

No WARRANTS ON FILE

HOLD FOR _____

| 47A. WARRANT NO. (WWN) | ORA | 48B. WARRANT NO. (WWN) | ORA | 48C. WARRANT NO. (WWN) | ORA | 48D. WARRANT NO. (WWN) | ORA |
|---|---|---|---|---|---|---|---|

| 49. VICTIM INFORMATION | NO. OF VICTIMS | AGE | SEX | AGE | SEX | 50. DEFENDANT'S SIGNATURE |
|---|---|---|---|---|---|---|
| | | | | | | X |

| 51. (AL ) ALIASES (LAST, FIRST, M.I., SUFFIX) | 52. (PR ) PERSONS RELATED REMARKS |
|---|---|

ERIE COUNTY CENTRAL POLICE SERVICES
**APPENDIX 1280**
ARREST / BOOKING FORM

☐ IDENTITY VERIFIED BY STATE RAP SHEET
☐ IDENTITY NOT VERIFIED BY STATE RAP SHEET

91-14141

## A. PERSON INFORMATION

| 1. NAME (NAM) LAST, FIRST, MI, SUFFIX | 3. DATE OF BIRTH (DOB) | 4. AGE | 5. SEX | 6. RACE | 7. P.S.I.D. (PD) PUTS ASSIGNED |
|---|---|---|---|---|---|
| Dixon, Valentino A. | 10-20-69 | 21 | M | B | |

| 8. ADDRESS (ADA) NO., STREET, SUFFIX, APT. NO.) | 9. CITY (CIT) CITY, STATE, ZIP CODE | 10. ORA |
|---|---|---|
| 61 Rounds | Buffalo, NY | EI01 |

| 11. HEIGHT (HGT) | 12. WEIGHT (WGT) | 13. BUILD (BLD) | 14. EYE | 15. HAIR (HAI) | 16. SCARS, MARKS, TATTOOS (SMT) |
|---|---|---|---|---|---|
| | | | | | |

| 17. CITIZEN (CIT) | 18. PLACE OF BIRTH (POB) CITY, STATE | 19. OCCUPATION (OCC) | 20. MARITAL STATUS (MAR) |
|---|---|---|---|
| ☒ YES ☐ NO | Buffalo, NY | None | Single |

| 21. WARNING (WAR) | CODE | 22. DRIVER'S LICENSE NO. | STATE | 23. JUVENILE |
|---|---|---|---|---|
| | | | | ☐ YES ☐ NO |

| 24. NYSID NO. (DCJ) | 25. FBI No. (FBI) | 26. SOCIAL SECURITY NO. (SOC) | | 28. MISCELLANEOUS NO. (MNO) | 29. ALIASES & REMARKS SEE 31 & 51 OR 52 |
|---|---|---|---|---|---|
| | | 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 | | | |

## B. ARREST INFORMATION

| 30. | 31. O.B.T.S. No. (JCN) | 32. |
|---|---|---|
| 91-221-504 | | |

| 33. ARRESTING AGENCY ORI (ARA) | 34. ARREST DATE (ARD) | 35. ARREST TIME (ART) | 36. ARRESTING OFFICER (ARO) | 37. ASSISTING OFFICER (ASO) |
|---|---|---|---|---|
| NY0140100 | 8-10-91 | 1600 Hrs | Det. Stambach | Homicide |

| 38. ADDRESS OF ARREST (ACF) NO., STREET, SUFFIX, APT. NO.) | 39. CITY OF ARREST (CYA) | 40A. COMPLAINANT (CCW) |
|---|---|---|
| 1122 E. Delavan | Buffalo | Torrano Jackson (Deceased) 19 Thatcher |
| | | Aaron Jackson 19 Thatcher |

| 41. ARREST RELATED REMARKS (ARR) | 42. ARREST RELATED REVEAL (ARR) |
|---|---|
| Mario Jarmon 1122 E. Delavan | |
| John Sullivan 19 Elmer | |

## C. CHARGES AND DISPOSITIONS

| | | 43. ORIGINAL CHARGE | | | | 44. DISPOSITION CHARGE | | | | 45. DISPOSITION OR SENTENCE | 46. DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | LAW | SEC. & VSC & PAR | CAT | CTS | ATT | LAW | SEC. & VSC & PAR | CAT | CTS | ATT | | |
| (AC1) | PL | 125.25-1,2 | DF | 2 | | | | | | | | |
| (AC2) | | 265.03 | CF | 4 | | | | | | | | |
| (AC3) | | 120.10-1 | CF | 3 | | | | | | | | |
| (AC4) | | | | | | | | | | | | |
| (AC5) | | | | | | | | | | | | |
| (AC6) | | | | | | | | | | | | |

47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY — TYPE AND VALUE, ACCOMPLICE NAMES

Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine 9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC. The defendant also did shoot Aaron Jackson, Mario Jarmon and John Sullivan. Aaron Jackson and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU. John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING

*No* WARRANTS ON FILE

HOLD FOR _MB_

| 48A. WARRANT No. (WW) | ORA | 48B. WARRANT No. (WW) | ORA | 48C. WARRANT No. (WW) | ORA | 48D. WARRANT No. (WW) | ORA |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 49. VICTIM INFORMATION | NO. OF VICTIMS | AGE | SEX | AGE | SEX | 50. DEFENDANT'S SIGNATURE |
|---|---|---|---|---|---|---|
| | | | | | | X |

| 51. (AL_) ALIASES LAST, FIRST, M.I., SUFFIX | 52. (PR_) PERSONS RELATED REMARKS |
|---|---|
| | |
| | |
| | |
| | |

ERIE COUNTY CENTRAL POLICE SERVICES

**APPENDIX M28Y**

ARREST / BOOKING FORM

FACILITY:
91-14141

☐ IDENTITY VERIFIED BY STATE RAP SHEET
☐ IDENTITY NOT VERIFIED BY STATE RAP SHEET

## A. PERSON INFORMATION

| 2. NAME (NAM) (LAST, FIRST, MI, SUFFIX) | 3. DATE OF BIRTH (DOB) | 4. AGE | 5. SEX | 6. RACE | 7. CP/DP COMPUTER ASSIGNED |
|---|---|---|---|---|---|
| Dixon, Valentino A. | 10-20-69 | 21 | M | B | |

| 8. ADDRESS (ADR) (NO., STREET, SUFFIX, APT. NO.) | 9. CITY (CIT) (CITY, STATE, ZIP CODE) | 10. ORA |
|---|---|---|
| 61 Rounds | Buffalo, NY | EI01 |

| 11. HEIGHT (HGT) | 12. WEIGHT (WGT) | 13. BUILD (BLD) | 14. EYE | 15. HAIR (HAI) | 16. SCARS, MARKS, TATTOOS (SMT) |
|---|---|---|---|---|---|
| | | | | | |

| 17. CITIZEN (CTZ) | 18. PLACE OF BIRTH (PCB) (CITY, STATE) | 19. OCCUPATION (OCC) | 20. MARITAL STATUS (MAR) |
|---|---|---|---|
| ☒ YES ☐ NO | Buffalo, NY | None | Single |

| 21. WARNING (WAR) | CODE | 22. DRIVER'S LICENSE NO. | STATE | 23. JUVENILE ☐ YES ☐ NO |
|---|---|---|---|---|
| | | | | |

| 24. NYSID NOS. (DCJ) | 25. FBI No. (FBI) | 26. SOCIAL SECURITY NO. (SOC) | 27. | 28. MISCELLANEOUS No. (MNO) | 29. ALIASES & REMARKS |
|---|---|---|---|---|---|
| | | 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 | | | |

## B. ARREST INFORMATION

| 30. | 31. O.B.T.S. No. (JCN) | 32. |
|---|---|---|
| 91-221-504 | | |

| 33. ARRESTING AGENCY ORI (ARA) | 34. ARREST DATE (ARD) | 35. ARREST TIME (ART) | 36. ARRESTING OFFICER (ARO) | 37. ASSISTING OFFICER (ASO) |
|---|---|---|---|---|
| NY0140100 | 8-10-91 | 1600 Hrs | Det. Stambach | Homicide |

| 38. ADDRESS OF ARREST (ADA) (NO., STREET, SUFFIX, APT. NO.) | 39. CITY OF ARREST (CTA) | 40A. COMPLAINANT (COM) | 40B. ADDRESS |
|---|---|---|---|
| 1122 E. Delavan | Buffalo | Torrano Jackson (Deceased) 19 Thatcher | Aaron Jackson 19 Thatcher |

| 41. ARREST-RELATED REMARKS (ARE) | 42. ARREST-RELATED REMARKS |
|---|---|
| | Mario Jarmon 1122 E. Delavan |
| | John Sullivan 49 Elmer |

## C. CHARGE INFORMATION

| | 43. ORIGINAL CHARGE | | | | | 44. DISPOSITION CHARGE | | | | | 45. DISPOSITION OR SENTENCE | 46. DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LAW | SEC-SUBSEC-PAR | CAT | CTS | ATT | LAW | SEC-SUBSEC-PAR | CAT | CTS | ATT | | |
| (AC1) | PL | 125.25-1,2 | DF | 2 | | | | | | | | |
| (AC2) | | 265.03 | CF | 4 | | | | | | | | |
| (AC3) | | 120.10-1 | CF | 3 | | | | | | | | |
| (AC4) | | | | | | | | | | | | |
| (AC5) | | | | | | | | | | | | |
| (AC6) | | | | | | | | | | | | |

**47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY – TYPE AND VALUE, ACCOMPLICE NAMES**

Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine 9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC. The defendant also did did shoot Aaron Jackson, Mario Jarmon and John Sullivan. Aaron Jackson and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU. John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING

No WARRANTS ON FILE

HOLD FOR _MB_

| 42A. WARRANT No. (WW) | ORA | 43B. WARRANT No. (WW) | ORA | 48C. WARRANT No. (WW) | ORA | 48D. WARRANT No. (WW) | ORA |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 49. VICTIM INFORMATION | No. OF VICTIMS | AGE | SEX | AGE | SEX | 50. DEFENDANT'S SIGNATURE |
|---|---|---|---|---|---|---|
| | | | | | | X |

| 51. (AL_) ALIASES LAST, FIRST, M.I., SUFFIX | 52. (PR_) PERSONS RELATED REMARKS |
|---|---|
| | |
| | |
| | |
| | |

ERIE COUNTY CENTRAL POLICE SERVICES

**APPENDIX 7282**

ARREST / BOOKING FORM

91-14141

☐ IDENTITY VERIFIED BY STATE RAP SHEET
☐ IDENTITY NOT VERIFIED BY STATE RAP SHEET

## A. PERSON INFORMATION

| Name (NAM) [Last, First, MI, Suffix] | Date of Birth (DOB) | Age (AGE) | Sex (SEX) | Race (RAC) | NYSIID (COMPUTER ASSIGNED) |
|---|---|---|---|---|---|
| Dixon, Valentino A. | 10-20-69 | 21 | M | B | |

| Address (ADR) [No., Street, Suffix, Apt. No.] | City (CIT) [City, State, Zip Code] | ORA |
|---|---|---|
| 61 Rounds | Buffalo, NY | EI01 |

| Height (HGT) | Weight (WGT) | Build (BLD) | Eye | Hair (HAI) | Scars, Marks, Tattoos (SMT) |
|---|---|---|---|---|---|
| | | | | | |

| Citizen (CTZ) | Place of Birth (PCB) [City, State] | Occupation (OCC) | Marital Status (MAR) |
|---|---|---|---|
| ☒ Yes ☐ No | Buffalo, NY | None | Single |

| Warning (WAR) | Code | Driver's License No. | State | Juvenile ☐ Yes ☐ No |
|---|---|---|---|---|

| NYSIID No. (DCI) | FBI No. (FBI) | Social Security No. (SOC) | Misc. Number (MNO) | Aliases & Remarks: See II & IP 19 of 50 |
|---|---|---|---|---|
| | | 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 | | |

## B. ARREST INFORMATION

| | O.B.T.S. No. (JCN) | |
|---|---|---|
| 91-221-504 | | |

| Arresting Agency CRI (AAA) | Arrest Date (ARD) | Arrest Time (ART) Hrs | Arresting Officer (ARO) | Assisting Officer (ASO) |
|---|---|---|---|---|
| NY0140100 | 8-10-91 | 1600 | Det. Stambach | Homicide |

| Address of Arrest (ADA) [No., Street, Suffix, Apt. No.] | City of Arrest (CTA) | Complainant (COM) | Address |
|---|---|---|---|
| 1122 E. Delavan | Buffalo | Torrano Jackson (Deceased) 19 Thatcher | |
| | | Aaron Jackson 19 Thatcher | |

| Arrest Related Remarks | |
|---|---|
| | Mario Jarmon 122 E. Delavan |
| | John Sullivan 19 Elmer |

## C. CHARGE AND DISPOSITION

| | 43 ORIGINAL CHARGE | | | | 44 DISPOSITION CHARGE | | | | 45 DISPOSITION OR SENTENCE | 46 DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| | LAW | SEC & SUB & PAR | CAT | ATT | LAW | SEC & SUB & PAR | CAT | ATT | | |
| (AC1) | PL | 125.25-1,2 | DF | 2 | | | | | | |
| (AC2) | | 265.03 | CF | 4 | | | | | | |
| (AC3) | | 120.10-1 | CF | 3 | | | | | | |
| (AC4) | | | | | | | | | | |
| (AC5) | | | | | | | | | | |
| (AC6) | | | | | | | | | | |

**47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY — TYPE AND VALUE, ACCOMPLICE NAMES**

Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine 9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC. The defendant also did shoot Aaron Jackson, Mario Jarmon and John Sullivan. Aaron Jackson and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU. John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING

No WARRANTS ON FILE

HOLD FOR MB

| 48A. Warrant No. (WWN) | ORA | 48B. Warrant No. (WWN) | ORA | 48C. Warrant No. (WWN) | ORA | 48D. Warrant No. (WWN) | ORA |
|---|---|---|---|---|---|---|---|

| 49. Victim Information | No. of Victims | Age | Sex | Age | Sex | 50. Defendant's Signature |
|---|---|---|---|---|---|---|
| | | | | | | X |

| 51. (AL_) Last, First, M.I., Suffix | 52. (PR_) Persons Related Remarks |
|---|---|
| ALIASES | |

COB 000161

**ERIE COUNTY CENTRAL POLICE SERVICES**

**APPENDIX 1283**

## ARREST / BOOKING FORM

CB NO. 91-14141

☐ IDENTITY VERIFIED BY STATE RAP SHEET
☐ IDENTITY NOT VERIFIED BY STATE RAP SHEET

### PERSON INFORMATION

| 2. NAME (NAM) (LAST, FIRST, MI, SUFFIX) | | 5. DATE OF BIRTH (DOB) | 4. AGE | 5. SEX | 6. RACE |
|---|---|---|---|---|---|
| Dixon, Valentino A. | | 10-20-69 | 21 | M | B |

| 8. ADDRESS (ADA) (NO., STREET, SUFFIX, APT. NO.) | 9. CITY (CIT) (CITY, STATE, ZIP CODE) | 10. ORA |
|---|---|---|
| 61 Rounds | Buffalo, NY | EI01 |

| 11. HEIGHT (HGT) | 12. WEIGHT (WGT) | 13. BUILD (BLD) | 14. EYE | 15. HAIR (HAI) | 16. SCARS, MARKS, TATTOOS (SMT) |
|---|---|---|---|---|---|
| | | | | | |

| 17. CITIZEN (CTZ) | 18. PLACE OF BIRTH (POB) (CITY, STATE) | 19. OCCUPATION (OCC) | 20. MARITAL STATUS (MAR) |
|---|---|---|---|
| ☒ YES ☐ NO | Buffalo, NY | None | Single |

| 21. WARNING (WAR) | CODE | 22. DRIVER'S LICENSE NO. | STATE | 23. JUVENILE ☐ YES ☐ NO |
|---|---|---|---|---|

| 24. NYSIC NO. (OCI) | 25. FBI NO. (FBI) | 26. SOCIAL SECURITY NO. (SOC) | 27. MISCELLANEOUS NO. (NM0) | 28. ALIASES & REMARKS SEE 51 & 51 |
|---|---|---|---|---|
| | | 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 | | |

### ARREST INFORMATION

| 30. ID | 31. C.B.T.S. No. (JCN) | 32. |
|---|---|---|
| 91-221-504 | | |

| 33. ARRESTING AGENCY ORI (ARA) | 34. ARREST DATE (ARD) | 35. ARREST TIME (ART) | 36. ARRESTING OFFICER (ARO) | 37. ASSISTING OFFICER (ASO) |
|---|---|---|---|---|
| NY0140100 | 8-10-91 | 1600 Hrs | Det. Stambach | Homicide |

| 38. ADDRESS OF ARREST (AOA) (NO., STREET, SUFFIX, APT. NO.) | 39. CITY OF ARREST (CTA) | 40. COMPLAINANT (COM) | FBI ADDRESS |
|---|---|---|---|
| 1122 E. Delavan | Buffalo | Torrano Jackson (Deceased) 19 Thatcher Aaron Jackson 19 Thatcher | |

| 41. ARREST RELATED REMARKS (ARI) | 42. ARREST RELATED REMARKS (ARI) |
|---|---|
| | Mario Jarmon 1122 E. Delavan John Sullivan 49 Elmer |

### CHARGE INFORMATION

| | LAW | 43. ORIGINAL CHARGE | | CAT | CTS | ATT | LAW | 44. DISPOSITION CHARGE | | CAT | CTS | ATT | 45. DISPOSITION OR SENTENCE | 46. DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (AC1) | PL | 125.25-1,2 | | DF | 2 | | | | | | | | | |
| (AC2) | | 265.03 | | CF | 4 | | | | | | | | | |
| (AC3) | | 120.10-1 | | CF | 3 | | | | | | | | | |
| (AC4) | | | | | | | | | | | | | | |
| (AC5) | | | | | | | | | | | | | | |
| (AC6) | | | | | | | | | | | | | | |

47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY — TYPE AND VALUE, ACCOMPLICE NAMES

Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine 9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC. The defendant also did shoot Aaron Jackson, Mario Jarmon and John Sullivan. Aaron Jackson and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU. John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING

NO WARRANTS ON FILE

HOLD FOR _____ MB

| 48A. WARRANT NO. (WWM) | ORA | 48B. WARRANT NO. (WWM) | ORA | 48C. WARRANT NO. (WWM) | ORA | 48D. WARRANT NO. (WWM) | ORA |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| 49. VICTIM INFORMATION | NO. OF VICTIMS | AGE | SEX | AGE | SEX | 50. DEFENDANT'S SIGNATURE X |
|---|---|---|---|---|---|---|
| | | | | | | |

| 51. ALIASES (AL_) LAST, FIRST, M.I., SUFFIX | 52 (PR_) PERSONS RELATED REMARKS |
|---|---|
| | |
| | |
| | |
| | |
| | |

COB 000162

ERIE COUNTY CENTRAL POLICE SERVICES
**APPENDIX 1284**
ARREST / BOOKING FORM

☐ IDENTITY VERIFIED BY STATE RAP SHEET
☐ IDENTITY NOT VERIFIED BY STATE RAP SHEET

1. CENTRAL No.: **91-14141**

## PERSON INFORMATION

2. NAME (NAM) (LAST, FIRST, MI, SUFFIX): Dixon, Valentino A.
5. DATE OF BIRTH (DOB): 10-20-69   4. AGE: 21   5. SEX: M   6. RACE: B   7. FPS No./CO COMPUTER ASSIGNED

8. ADDRESS (ADA) (NO., STREET, SUFFIX, APT. NO.): 61 Rounds
9. CITY (CIT) (CITY, STATE, ZIP CODE): Buffalo, NY
10. ORA: EI01

11. HEIGHT (HGT):   12. WEIGHT (WGT):   13. BUILD (BLD):   14. EYE:   15. HAIR (HAI):   16. SCARS, MARKS, TATTOOS (SMT):

17. CITIZEN (CIT): ☒ YES ☐ NO   18. PLACE OF BIRTH (POB) (CITY, STATE): Buffalo, NY   19. OCCUPATION (OCC): None   20. MARITAL STATUS (MAR): Single

21. WARNING (WAR):   CODE:   22. DRIVER'S LICENSE NO.:   STATE:   23. JUVENILE: ☐ YES ☐ NO

24. NYSIID No. (OCA):   25. FBI No. (FBI):   26. SOCIAL SECURITY No. (SOC): 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   27. BANDS No. (IDC):   28. MISCELLANEOUS No. (MNO):   29. ALIASES & REMARKS (AL & R):

## ARREST INFORMATION

30. ARREST INCIDENT No. (AIN): 91-221-504   31. O.B.T.S. No. (JCN):   32.

33. ARRESTING AGENCY ORI (ARA): NY0140100   34. ARREST DATE (ARD): 8-10-91   35. ARREST TIME (ART): 1600 Hrs   36. ARRESTING OFFICER (ARO): Det. Stambach   37. ASSISTING OFFICER (ASO): Homicide

38. ADDRESS OF ARREST (AOA) (NO., STREET, SUFFIX, APT. NO.): 1122 E. Delavan   39. CITY OF ARREST (CYA): Buffalo   40A. COMPLAINANT (COM): Torrano Jackson (Deceased)   40B. ADDRESS: 19 Thatcher / Aaron Jackson 19 Thatcher

41. ARREST-RELATED REMARKS (AR):   42. ARREST-RELATED REMARKS (ARR): Mario Jarmon 1122 E. Delavan / John Sullivan 192 Elmer

## CHARGES AND DISPOSITIONS

| | 43. ORIGINAL CHARGE | | | | | 44. DISPOSITION CHARGE | | | | | 45. DISPOSITION OR SENTENCE | 46. DISP. DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LAW | SEC/SUBSEC/PAR | CAT | CTS | ATT | LAW | SEC/SUBSEC/PAR | CAT | CTS | ATT | | |
| (AC1) | PL | 125.25-1,2 | DF | 2 | | | | | | | | |
| (AC2) | | 265.03 | CF | 4 | | | | | | | | |
| (AC3) | | 120.10-1 | CF | 3 | | | | | | | | |
| (AC4) | | | | | | | | | | | | |
| (AC5) | | | | | | | | | | | | |
| (AC6) | | | | | | | | | | | | |

47. COMPLETE HISTORY OF ABOVE CHARGE, IF PROPERTY — TYPE AND VALUE, ACCOMPLICE NAMES

Defendant did on 8-10-91 at 0129 hours while at Bailey and E. Delavan use a Tech-Nine 9mm weapon whereas he shot Torrano Jackson who later expired from his wounds at the ECMC. The defendant also did shoot Aaron Jackson, Mario Jarmon and John Sullivan.  Aaron Jackson and Mario Jarmon underwent surgery at ECMC and are now in critical condition in the ICU. John Sullivan was treated for a bullet wound to the thigh at Sister's Hospital.

B.P.D. CENTRAL BOOKING

_No_ WARRANTS ON FILE

HOLD FOR ___ MB

| 48A. WARRANT No. (WWN) | ORA | 48B. WARRANT No. (WWN) | ORA | 48C. WARRANT No. (WWN) | ORA | 48D. WARRANT No. (WWN) | ORA |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

49. VICTIM INFORMATION | No. OF VICTIMS | AGE | SEX | AGE | SEX | 50. DEFENDANT'S SIGNATURE: X

51. (AL_) ALIASES LAST, FIRST, M.I., SUFFIX | 52. (PR_) PERSONS RELATED REMARKS

P-60 (Rev.2 / 88) Print or Type
SEE INSTRUCTIONS ON BACK
PREPARE IN DUPLICATE
(*STRIKE OUT NON APPLICABLE WORDS 'PHRASES( (cross out one)

INFORMATION COMPLAINT
BUFFALO POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

FAMILY OFFENSE

APPENDIX 128S

Def: _____
( relationship to victim )

Victim: _____
( relationship to defendant )

## THE PEOPLE OF THE STATE OF NEW YORK
(Defendant's Name) (Below)

V.S. __Valentino A Dixon__ , __61 Rounds__

(Complainant's Name) (Below) , (Address or Police Unit) (Below)

I, __Det M Stambach__ , __Homicide__

accuse __Valentino A Dixon__ , _____ , the defendant(s)

in this action, that on or about the __10__ day of __August__ , 19 __91__ at or about __01:29__ A.M.

in the City of Buffalo, did *intentionally, *knowingly, ~~recklessly~~, *unlawfully, *~~with criminal negligence~~ commit the ~~crime~~

~~infraction/violation and misdemeanor~~ *felony of __Murder in the 2nd degree; Criminal Possession of a Weapon__
__Assault in the 1st degree__ 2nd deg

the provisions of Section _____ Subdivision _____ ~~xxxxxxxxxxxxxxxxxxxxxxx of the State of New York*~~

Section __125.25__ Subsection __1,2__ of the Penal Law of the State of New York *

Chapter __120.10__ Section __1__ ~~xxxxxxxxxxxxxxxxxxxxxxx of the State of New York*~~
265.03

(Set forth below the statement of the complainant, based upon personal knowledge, or upon information and belief, alleging facts of an evidentiary character, supporting, or tending to support, the charges.) *STRIKE ALL WORDS NOT APPLICABLE

The facts upon which this accusation is based are as follows: *A. OF MY OWN KNOWLEDGE or *B. ON INFORMATION AND BELIEF
&

125.25-1,2 Murder in the 2nd degree

In that the defendant, while at Bailey & Delavan, did under circumstances evincing a depraved indifference to human life, recklessly engage in conduct which created a grave risk of death to another person, and did with intent to cause the death of Torrano Jackson, did cause the death of Torrano Jackson, in that the defendant did while at the above location shoot the victim causing his death at the Erie County Medical Center.
The above information is based upon 1) your deponent personally knowing the victim Torrano Jackson to be expired from bullet wounds at Bailey & Delavan, Buffalo,NY.
2) Affidavit dated 8-10-91 from victim John Sullivan, who stated that the above named defendant did shoot the deceased on 8-10-91 at Bailey & Delavan.


265.03 Possession of a Weapon in the 2nd degree

In that the defendant, while at Bailey & Delavan, did possess a loaded firearm, to wit: a Tech-Nine 9mm weapon, with the intent to use said weapon unlawfully against Torrano Jackson, Aaron Jackson, Mario Jarmon, John Sullivan; in that the defendant did while at Bailey & Delavan, did shoot Torrano Jackson causing his demise; and did shoot Mario Jarmon, Aaron Jackson and John Sullivan, seriously injuring said complaintants.

Page 1 of __2__ Pages

mb

NOTICE: False statements made herein are punishable as a class "A" misdeameanor pursuant to section 210.45 of the Penal Law of the State of New York. ●●●●●●● Forms P-60 & P-60A must be signed by the Complainant.●●●●●●●

Date __August 10__ 19 __91__ _Mark Stambach_ Complainant
(signed)

__Det M Stambach__ __DET__ __Homicide__ __4:15__ P.M.
(Police Officer) (Rank) (Command) (Time)

Supporting Deposition attached: ____Yes _XX_ No Number____ Admissions made? _XX_ Yes ____ No, If yes, include in narrative or supporting deposition.

Assignment ☐ 2nd Platoon Pre-trial Identification Made _XX_ Yes ____No

☐ 3rd Platoon How? __by Officer__

COB 000164

P- 60A (Rev. 2/84)

PREPARE IN DUPLICATE
PRINT OR TYPE

APPENDIX 1286

MISDEMEANOR COMPLAINT (Continued)

BUFFALO POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Page  2  of  2  Pages

120.10-1     Assault in the 1st degree

In that the defendant did, with intent to cause serious physical injury to
Aaron Jackson, Mario Jarmon, John Sullivan; cause such injury, to wit:
John Sullivan was shot in the thigh, treated at Sister's Hospital; Mario Jarmon
shot in the hip and stomach, is in critical condition at ECMC in ICU;
Aaron Jackson shot through the buttocks into the stomach, is in critical condition
at ECMC in ICU; by means of a deadly weapon, to wit: a Tech-Nine 9mm weapon,
in that the defendant did shoot the above named complaintants while at
Bailey & Delavan.

mb

NOTICE: *False statements made herein are punishable as a class "A" misdemeanor pursuant to section 210.45 of the Penal Law
of the State of New York.* ●●●●●●●●●Forms P - 60 & P - 60A must be signed by the Complainant●●●●●●●●

Date  August 10  19 91                        _Mark Stambach_                    Complainant
                                                        (signed)

       Det M Stambach              DET            Homicide                              4:35        P.M.
    (Police Officer)            (Rank)            (Command)                          (Time)

COB 000160

SEE INSTRUCTONS ON BACK
PREPARE IN DUPLICATE
(*STRIKE OUT NON-APPLICABLE WORDS* PHRASES) (cross out one)

BUFFALO INFORMATION COMPLAINT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

**APPENDIX 287**

FAMILY OFFENSE

Def: _____
(relationship to victim)

Victim: _____
(relationship to defendant)

THE PEOPLE OF THE STATE OF NEW YORK
(Defendant's Name) (Below)

(Defendant's Address) (Below)

V.S. __Valentino A Dixon__ , __61 Rounds__

(Complainant's Name) (Below)

(Address or Police Unit) (Below)

I, __Det M Stambach__ , __Homicide__

accuse __Valentino A Dixon__ , the defendant(s)

in this action, that on or about the __10__ day of __August__ , 19 __91__ at or about __01:29__ A.M.

in the City of Buffalo, did *intentionally, *knowingly, xxxxxxx, *unlawfully, *xxxxxxxxxxxxxxxx commit the xxxx xxxxxxxx xxxxxxx xxxxxxxxxxxx *felony of __Murder in the 2nd degree; Criminal Possession of a Weapon__ __Assault in the 1st degree__ 2nd deg

the provisions of Section _____ Subdivision _____ xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Section __125.25__ Subsection __1,2__ of the Penal Law of the State of New York *
__265.03__

Chapter __120.10__ Section __1__ xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

(Set forth below the statement of the complainant, based upon personal knowledge, or upon information and belief, alleging facts of an evidentiary character, supporting, or tending to support, the charges.) *STRIKE ALL WORDS NOT APPLICABLE

The facts upon which this accusation is based are as follows: *A. OF MY OWN KNOWLEDGExxx *B. ON INFORMATION AND BELIEF
&

**125.25-1,2 Murder in the 2nd degree**

In that the defendant, while at Bailey & Delavan, did under circumstances evincing a depraved indifference to human life, recklessly engage in conduct which created a grave risk of death to another person, and did with intent to cause the death of Torrano Jackson, did cause the death of Torrano Jackson, in that the defendant did while at the above location shoot the victim causing his death at the Erie County Medical Center.

The above information is based upon 1) your deponent personally knowing the victim Torrano Jackson to be expired from bullet wounds at Bailey & Delavan, Buffalo,NY. 2) Affidavit dated 8-10-91 from victim John Sullivan, who stated that the above named defendant did shoot the deceased on 8-10-91 at Bailey & Delavan.

**265.03 Possession of a Weapon in the 2nd degree**

In that the defendant, while at Bailey & Delavan, did possess a loaded firearm, to wit: a Tech-Nine 9mm weapon, with the intent to use said weapon unlawfully against Torrano Jackson, Aaron Jackson, Mario Jarmon, John Sullivan; in that the defendant did while at Bailey & Delavan, did shoot Torrano Jackson causing his demise; and did shoot Mario Jarmon, Aaron Jackson and John Sullivan, seriously injuring said complainants.

Page 1 of __2__ Pages

mb

NOTICE: *False statements made herein are punishable as a class "A" misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York.* ●●●●●●● Forms P-60 & P-60A must be signed by the Complainant. ●●●●●●●

Date __August 10__ 19 __91__        _Mark Stambach_        Complainant
                                      (signed)

__Det M Stambach__        __DET__        __Homicide__        4:15 A.M. P.M.
(Police Officer)        (Rank)        (Command)        (Time)

Supporting Deposition attached: ___Yes __XX__ No  Number ___  Admissions made? __XX__ Yes ___ No, If yes, include in narrative or supporting deposition.

☐ 2nd Platoon        Pre-trial Identification Made __XX__ Yes ___No

Assignment

☐ 3rd Platoon        How? __by Officer__

COB 000166

PREPARE IN DUPLICATE    *INFORMATION* COMPLAINT    (Continued)
APPENDIX 1233

BUFFALO POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Page  2  of  2  Pages

120.10-1    Assault in the 1st degree

In that the defendant did, with intent to cause serious physical injury to
Aaron Jackson, Mario Jarmon, John Sullivan; cause such injury, to wit:
John Sullivan was shot in the thigh, treated at Sister's Hospital; Mario Jarmon
shot in the hip and stomach, is in critical condition at ECMC in ICU;
Aaron Jackson shot through the buttocks into the stomach, is in critical condition
at ECMC in ICU; by means of a deadly weapon, to wit: a Tech-Nine 9mm weapon,
in that the defendant did shoot the above named complaintants while at
Bailey & Delavan.

mb

NOTICE: *False statements made herein are punishable as a class "A" misdeameanor pursuant to section 210.45 of the Penal Law
of the State of New York.*  ●●●●●●●●Forms P- 60 & P- 60A must be signed by the Complainant●●●●●●●●

Date _____ August 10 ____ 19 91 ___          Mark Stambach          Complainant
                                              (signed)

____ Det M Stambach ____        DET          Homicide                        4:25  P.M.
(Police Officer)    (Rank)             ( Command )

COB 00167

P-60 (Rev.2 / 88) Duplicate Type
SEE INSTRUCTIONS ON BACK
PREPARE IN DUPLICATE
(*STRIKE OUT NON APPLICABLE WORDS / PHRASES) (cross out one)

INFORMATION / COMPLAINT

FAMILY OFFENSE
_____
( relationship to victim )

BUFFALO CITY COURT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Victim: _____
( relationship to defendant )

THE PEOPLE OF THE STATE OF NEW YORK
(Defendant's Name) (Below)

_____ _____
(Defendant's Address) (Below)

V.S. __Valentino A Dixon_____, __61 Rounds_____

(Complainant's Name) (Below)                    (Address or Police Unit) (Below)

I, __Det M Stambach_____, __Homicide_____

accuse __Valentino A Dixon_____, the defendant(s)

in this action, that on or about the __10__ day of __August_____, 19 __91__ at or about __01:29__ A.M.
in the City of Buffalo, did *intentionally, *knowingly, ~~recklessly~~, *unlawfully, *~~with criminal negligence~~ commit the ~~crime~~
~~infraction / violation / misdemeanor~~ *felony of __Murder in the 2nd degree; Criminal Possession of a Weapon__ in the
the provisions of Section _____ Subdivision _____ Assault in the 1st degree __~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~__ 2nd deg

Section __125.25__ Subsection __1,2__ of the Penal Law of the State of New York *
         __265.03__
Chapter __120.10__ Section __1__ ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

(Set forth below the statement of the complainant, based upon personal knowledge, or upon information and belief, alleging facts of
an evidentiary character, supporting, or tending to support, the charges.)    *STRIKE ALL WORDS NOT APPLICABLE

The facts upon which this accusation is based are as follows:  *A. OF MY OWN KNOWLEDGE or *B. ON INFORMATION AND BELIEF
&

125.25-1,2   Murder in the 2nd degree

In that the defendant, while at Bailey & Delavan, did under circumstances evincing
a depraved indifference to human life, recklessly engage in conduct which created
a grave risk of death to another person, and did with intent to cause the death of
Torrano Jackson, did cause the death of Torrano Jackson, in that the defendant did
while at the above location shoot the victim causing his death at the Erie County
Medical Center.
The above information is based upon 1) your deponent personally knowing the victim
Torrano Jackson to be expired from bullet wounds at Bailey & Delavan, Buffalo,NY.
2) Affidavit dated 8-10-91 from victim John Sullivan, who stated that the above
named defendant did shoot the deceased on 8-10-91 at Bailey & Delavan.


265.03  Possession of a Weapon in the 2nd degree

In that the defendant, while at Bailey & Delavan, did possess a loaded firearm,
to wit: a Tech-Nine 9mm weapon, with the intent to use said weapon unlawfully
against Torrano Jackson, Aaron Jackson, Mario Jarmon, John Sullivan; in that
the defendant did while at Bailey & Delavan, did shoot Torrano Jackson causing
his demise; and did shoot Mario Jarmon, Aaron Jackson and John Sullivan, seriously
injuring said complaintants.

Page 1 of __2__ Pages

mb

NOTICE: *False statements made herein are punishable as a class "A" misdemeanor pursuant to section 210.45 of the Penal
Law of the State of New York.* ●●●●●●●●Forms P-60 & P-60A must be signed by the Complainant.●●●●●●●

Date __August 10__ 19 __91__     _Mark Stambach_____ Complainant
                                        (signed)

__Det M Stambach__     __DET__     __Homicide__     __4:15__ A.M.
(Police Officer)     (Rank)          (Command)        (Time)    P.M.

Supporting Deposition attached: ___Yes _XX_No  Number ____   Admissions made? _XX_Yes ____ No, If yes, include in narrative
                                                              or supporting deposition.

Assignment          [ ] 2nd Platoon          Pre-trial Identification Made _XX_Yes ____No

                    [ ] 3rd Platoon          How? __by Officer__

                                                              COB 000168

MISDEMEANOR COMPLAINT
(Cross arrone)
(Continued)

BUFFALO POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Page __2__ of __2__ Pages

120.10-1     Assault in the 1st degree

In that the defendant did, with intent to cause serious physical injury to
Aaron Jackson, Mario Jarmon, John Sullivan; cause such injury, to wit:
John Sullivan was shot in the thigh, treated at Sister's Hospital; Mario Jarmon
shot in the hip and stomach, is in critical condition at ECMC in ICU;
Aaron Jackson shot through the buttocks into the stomach, is in critical condition
at ECMC in ICU; by means of a deadly weapon, to wit: a Tech-Nine 9mm weapon,
in that the defendant did shoot the above named complaintants while at
Bailey & Delavan.

mb

NOTICE: *False statements made herein are punishable as a class "A" misdeameanor pursuant to section 210.45 of the Penal Law
of the State of New York.* ●●●●●●●●Forms P-60 & P-60A must be signed by the Complainant ●●●●●●●●

Date ___August 10___ 19_91_          _Mark Stambach_
                                          (signed)                          Complainant

___Det M Stambach___     ___DET___     ___Homicide___          4:25  P.M.
  (Police Officer)          (Rank)        ( Command)

CQB 000168

SEE INSTRUCTIONS ON BACK
PREPARE IN DUPLICATE
(*STRIKE OUT NON-APPLICABLE WORDS · PHRASES) (cross out one)

MISDEMEANOR / COMPLAINT
BUFFALO CITY POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Def. _____
( relationship to victim)

Victim: _____
( relationship to defendant)

## THE PEOPLE OF THE STATE OF NEW YORK
(Defendant's Name) (Below)                                              (Defendant's Address)   (Below)

V.S. __Valentino A Dixon_____ , __61 Rounds_____

(Complainant's Name)  (Below)                                    (Address or Police Unit)   (Below)

I, __Det M Stambach_____        __Homicide_____

accuse __Valentino A Dixon_____ , the defendant(s)

in this action, that on or about the __10_ day of __August_____, 19 _91_ at or about ____01:29____ A.M.
in the City of Buffalo, did *intentionally, *knowingly, xxxxxxxx, *unlawfully, *xxxxxxxxxxxxxxxx commit the xxxxx
xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx *felony of __Murder in the 2nd degree; Criminal Possession of a Weapon__
__Assault in the 1st degree__ xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx   2nd deg

the provisions of  Section_____ Subdivision_____

Section __125.25__ Subsection __1,2__ of the Penal Law of the State of New York *
265.03
Chapter __120.10_ Section ____1____ xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

(Set forth below the statement of the complainant, based upon personal knowledge, or upon information and belief, alleging facts of
an evidentiary character, supporting, or tending to support, the charges.)    *STRIKE ALL WORDS NOT APPLICABLE

The facts upon which this accusation is based are as follows: *A. OF MY OWN KNOWLEDGE xx *B. ON INFORMATION AND BELIEF
&

125.25-1,2   Murder in the 2nd degree

In  that the defendant, while at Bailey & Delavan, did under circumstances  evincing
a depraved indifference to human life, recklessly engage in conduct which created
a grave risk of death to another person, and did with intent to cause the death of
Torrano Jackson, did cause the death of Torrano Jackson, in that the defendant did
while at the above location shoot the victim causing his death at the Erie County
Medical Center.
The above information is based upon 1) your deponent personally knowing the victim
Torrano Jackson to be expired from bullet wounds at Bailey & Delavan, Buffalo, NY.
2) Affidavit dated 8-10-91 from victim John Sullivan, who stated that the above
named defendant did shoot the deceased on 8-10-91 at Bailey & Delavan.

265.03  Possession of a Weapon in the 2nd degree

In that the defendant, while at Bailey & Delavan, did possess a loaded firearm,
to wit: a Tech-Nine 9mm weapon, with the intent to use said weapon unlawfully
against Torrano Jackson, Aaron Jackson, Mario Jarmon, John Sullivan; in that
the defendant did while  at Bailey & Delavan, did shoot Torrano Jackson causing
his demise; and did shoot Mario Jarmon, Aaron Jackson and John Sullivan, seriously
injuring said complaintants.

Page 1 of _2_ Pages

mb

NOTICE: False statements made herein are punishable as a class "A" misdeameanor pursuant to section 210.45 of the Penal
Law of the State of New York. ●●●●●●● Forms P-60 & P-60A must be signed by the Complainant.●●●●●●●

Date ___August 10___ 19 _91_        _Mark Stambach_____        Complainant
                                              (signed)

__Det M Stambach____        __DET____        __Homicide____        __4:15__ xx M.
(Police Officer)              (Rank)              (Command)              (Time)   P.M.

Supporting Deposition attached: ____Yes _XX_No  Number____   Admissions made? _XX_Yes____No, If yes, include in narrative
or supporting deposition.

☐ 2nd Platoon                     Pre-trial Identification Made _XX_Yes ____No

Assignment

☐ 3rd Platoon                     How? __by Officer_____

COB 000170

BUFFALO POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Page __2__ of __2__ Pages


120.10-1    Assault in the 1st degree


In that the defendant did, with intent to cause serious physical injury to
Aaron Jackson, Mario Jarmon, John Sullivan; cause such injury, to wit:
John Sullivan was shot in the thigh, treated at Sister's Hospital; Mario Jarmon
shot in the hip and stomach, is in critical condition at ECMC in ICU;
Aaron Jackson shot through the buttocks into the stomach, is in critical condition
at ECMC in ICU; by means of a deadly weapon, to wit: a Tech-Nine 9mm weapon,
in that the defendant did shoot the above named complaintants while at
Bailey & Delavan.


mb

NOTICE: *False statements made herein are punishable as a class "A" misdeameanor pursuant to section 210.45 of the Penal Law
of the State of New York.* ●●●●●●●●Forms P - 60 & P - 60A must be signed by the Complainant ●●●●●●●

Date ___August 10___ 19_91_    _Mark Stambach_ _____ Complainant
                                     (signed)

___Det M Stambach_____    ___DET___    ___Homicide___    4:25 P.M.
(Police Officer)          (Rank)       ( Command )

CQE 000017

# GENERAL OFFENSE REPORT

POLICE DEPARTMENT, BUFFALO, N.Y.

P-1191 (Rev.5/86)

| 1. VICTIM'S NAME (Firm Name, if Business) | 2. ADDRESS (Do not use Postal Zip Code Address) | 3. RES. |
|---|---|---|
| Torriano Jackson | 19 Thatcher | BUS. |
| 4. PERSON WHO DISCOVERED OR REPORTED CRIME | 5. ADDRESS (Do not use Postal Zip Code Address) | 6. RES. |
| | | BUS. |

| 6-2 C.O. NUMBER | 7. OFFENSE : Law, Section / Sub., Class, Category, Name of Offense, Degree | 2-3 DATE OCCURRED |
|---|---|---|
| 214-504 | PL. 125.25 Murder 2nd A-1 Fel. | 8-10-91  0129 Hrs. |

| 9. ADDRESS OF OCCURRENCE | 2-7 PCT. | 2-8 CASE NO. | 2-9 DATE & TIME REPORTED |
|---|---|---|---|
| 2484 Bailey | 11 | 17715 | 8-10-91 |

| 2-10 DESK OFFICER (NAME & RANK) | 10. UNIT REFERRED |
|---|---|
| P.O. JREESE | Homicide |

| 11. P-1192. Req. | By: | Pct.Dets. | DD. Sqd. |
|---|---|---|---|
| YES 1   NO 2 | X | 1 | |

| 12. VICTIM'S | Required in all CRIMES AGAINST THE PERSON | a- AGE | b- SEX | c- RACE |
|---|---|---|---|---|
| | | 17 | M | B |

14. BICYCLE DESC.
Manuf. Name ___
Frame No. ___
Color ___
Size ___  Reg. No. ___  Year ___

BICYCLE
BOYS 2 WHEEL
GIRLS 2 WHEEL
3 WHEEL
TANDEM

| 13. CASE STATUS | 2-18 |
|---|---|
| ACTIVE | |

TYPE OF PERSON (VICTIM)

| | | | |
|---|---|---|---|
| POLICE OFF. 1 | INJURY | BUS DRIVER 4 | DOMESTIC 7 |
| POLICE OFF. 2 | NO INJURY | CAB DRIVER 5 | MOTORIST 8 |
| FIREMAN 3 | | OTHERS 6 | |

| 15. RAPE | 1 RAPE BY FORCE | 2 ASSAULT TO RAPE (Attempts) | 3 OTHERS |
|---|---|---|---|

| 16. ROBBERY Method & Type of Location | ARMED ANY WEAPON 1 | STRONG-ARMED NO WEAPON 2 | HIGHWAY (Street, Alleys etc.) A | COMMERCIAL HOUSE (Except C,O,F) B | (Specify) |
|---|---|---|---|---|---|
| Weapon Type | GAS or SERVICE STA. C | CONVENIENCE STORE D | RESIDENCE (Anywhere on premises) E | BANK or SAVINGS & LOAN ASSN. F | MISC. G |

| 17. ASSAULT | 1 GUN X | 2 KNIFE or CUTTING INSTRUMENT | 3 OTHER DANGEROUS WEAPON | 4 HANDS, FIST, FEET, etc. AGGRAVATED | 5 OTHERS NOT AGGRAVATED |
|---|---|---|---|---|---|

| 18. BURGLARY Type of Entry and Premises | FORCIBLE ENTRY 1 | NON-FORCIBLE ENTRY 2 | ATT. FORCIBLE ENTRY 3 | RESIDENCE 1 A | DAY 1 | NIGHT 2 | UNKNOWN 3 | NON-RES. |
|---|---|---|---|---|---|---|---|---|

| 19. LARCENY Read from left to right the first that applies. Check one only. (Do not check any squares in FRAUD Cases) | POCKET PICKING G | PURSE SNATCHING H | SHOP LIFTING C | FROM MOTOR VEHICLE (Except accessories) D | AUTO ACCESSORIES E | BICYCLE F |
|---|---|---|---|---|---|---|
| | FROM BUILDING (except C & H) G | FROM ANY COIN OPERATED DEVICE OR MACHINE H | OTHERS (Specify) | | | |

| 3-4a CURRENCY | 3-4b JEWELRY | 3-4c CLOTHING - FURS | 3-4d OFFICE EQUIP. | 3-4e CAMERAS-TVS-RADIOS | 3-4f BIC |
|---|---|---|---|---|---|
| | | | | | |

| 3-4g FIREARMS | 3-4h HOUSEHOLD GOODS | 3-4i CONSUMABLES | 3-4j LIVESTOCK | 3-4k MISC. | |
|---|---|---|---|---|---|
| | | | | | |

| 20. DATE OF ARR. | 21. OFFENDERS NAME (Narrative if more than one) | 22 | D.O.B. | 23 AGE | ID | SEX | RACE | 23 HOME ADDRESS (No., St., City, Town, Village, State) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 24. TIME OF ARR. | 25 PCT. | 26 ARRESTING OFFICERS NAME | 27 EMP. NUMBER | Date & Time |
|---|---|---|---|---|
| | | | | 1/65'84  8-10-91  06 |

## 29 NARRATIVE

On above date, time and location the following and altercation per(s) unk. at this time did fire multiple shots from an unidentified firearm strike the following victims: (1)Torriano Jackson b/m 19 thatcher-decease at ECMC.(2) Aaron Jackson 20yrs. b/m 19thatcher,(3)Mario Jarmon 19yrs B/M 1122 East Delavan(4) John Sullivan III 17yrs B/M 49 Elmer INV By LT.SACK,P.O.sMakowski/lopez/Beyer/Padin/Forzio/Oneill of Pct#11 Cars from Pct.#8,9,16,12,TPU,K-9,Homicide,Car140,an all proper depts.

| 30 INVESTIGATING OFFICER, PRINT OR TYPE NAME | 31 EMPLOYEE NUMBER | 32 UNIT SUPERIOR OFFICERS SIGNATURE (Approving) |
|---|---|---|
| J.Makowski | 587970 | |

| 33 Unit | 34 Date | 35 Detective Supervisor | 36 Detective Assigned |
|---|---|---|---|
| | | | |

COB 000172

**INVESTIGATIVE SOLVABILITY FACTORS**

APPENDIX 1084

If the answer to any question is YES, enter the necessary information in space provided. If the answer is NO, or the question does not apply, mark space N / A and place an X in the proper numbered box.

| | | IF **NO** PLACE AN **X** IN BOX |
|---|---|---|

1. Was there a witness(es) to Crime?, List witnesses below:

| | Name | Address | Apt. | Phone | |
|---|---|---|---|---|---|
| Witness # one | Travia M. Powell | 46 Poultney | | 837-0802 | 1. ☐ |
| Witness # two | | | | | |

2. Can a suspect(s) be named? List Suspects below:

| | Name and / or Alias | Location to be found | |
|---|---|---|---|
| Suspect # one | | | 2. ☐ |
| Suspect # two | | | |

3. Can a suspect(s) be described? List Suspects Description below:

| | Race | Sex | Age | Hgt. | Wgt. | ID scars, marks etc. | Clothes description | |
|---|---|---|---|---|---|---|---|---|
| Suspect # one | | | | | | | | 3. ☐ |
| Suspect # two | | | | | | | | |

4. Can suspect(s) be Identified? By Whom? — 4. ☐

5. Can suspect vehicle be described? List description below:

| Plate No. | State | Year | Make | Model / Type | Color | Any Identifying Characteristics | |
|---|---|---|---|---|---|---|---|
| | | | | | | | 5. ☐ |

STOP...In questions 2, 3, 4, 5, the person who makes the identification must be named and his / her name must be entered in Question No. 1.

6. Is stolen property traceable? List below: — 6. ☐

| QTY | DESCRIPTION | BRAND / MAKE | MODEL NAME | SERIAL NO. / INSCR. | $ VALUE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

7. Has Evidence Unit been: — 7. ☐

☐ Requested?   ☐ Performed necessary tasks?   ☐ Photos?
☐ Other?

8. Is there significant physical evidence present? If so, describe in narrative below. — 8. ☐

9. Is there a significant M.O. present? If so, describe in narrative below. — 9. ☐

10. Is there reason to believe that the preliminary investigation cannot be completed at this time? If so, describe in narrative below. — 10. ☐

11. NARRATIVE — before making entry in the space below, insert the question number that the entry is describing.

| | |
|---|---|
| ☐ | **Investigation turned over to Homicide Detectives** |
| ☐ | **Police Info Only?** |
| ☐ | **Valentino Dixon-5'10"   160lbs-Brn/Blk** |
| ☐ | **B/M Slight build   poss.61 Rounds** |
| ☐ | **DOB 10-20-69   Mug #172430** |
| ☐ | |
| ☐ | |
| ☐ | |

COB 000173

☐ P-1369 Filed   ☐ P-79 Dist.   ☐ P-126 Dist.

APPENDIX 1295

On above date, time and location, the police do  of the arrest, Dot(s)
Who, at this time had fired multiple shots from a Murderkilled persons
state- of following victims: (1)Lorriane Jackson-?W/F 15 East-at-scene-
#1 so, (2) Jason Jackson ??-Sgt. b/m 19 at once, (3)Mark ?Jacksr (2)/75-
b/m 1524 West, Dolavah(4) John Sullivan 11c 17W/M At AO floor
m/w by LT.SAM.,P.O. Walkowski/Lopez/Reyes/Rudin/Rizzio/Omalli of Pct/11
Cars from Pct.#7,9,16,12,1rU,K-9, Homicide, Car140 an all proper depts.

J.Walkowski                                           P37070

GOB 000174

```
0478 NCIC P1ST SBU  1052
NYO140100
NO NCIC WANT DOB/07222257 NAM/FLYNN, JEFFREY E SEX/M STA/U
```

```
0478 NYSP P1ST SBU  1114
NYO140100
NO RECORD. NYSPIN   L0278LR408 NY
```

```
0478 NYSP RQ1 E SBU  1112     NYLKTR408
HEAD HOD316 938E7 S940921 S0
EYE/BRX/28 L0270692X 111276C
HENRY DOLORES J
9X WOODCREST DR, AMHERST NY  14226
DOB/0431428 JE/X72
01N27LELL0280012603134 VYR/84X VMAZLADA VSTXRD V 1/U1
INS/1V0  LUMBERMANS MUTUAL CAS CO
STATUS/1062 1D
0478 NYSP P1ST SBU  1114
NYO140100
NO RECORD. NYSPIN   01N2106LLS2800120632134
```

```
0478 NCSP P1B1 SBU  1116
NYO140100
NO RECORD - NYSPIN WANTED PERSONS FILE
NAM/HENRY DOLORES J
.DOB20431428 SEX7F RAC2U
```

COB 000175

APPENDIX 1597



COB 000176

COB 000177

COB 000178

COB 000179