COE001455

BPD Comp-~v12

William W. Shepherd
Buffalo Police Department
Photographic Unit

Case No:
#18917

Date:

AUG 10 1991

**APPENDIX 1602**



COE001456

BPD Comp. 0113

COE001457

William M. Shephard
Buffalo Police Department
Photographic Unit

Case No:        Date:        'JUN - 0 1991

# 88172

BPD Comp. 0114



COE001458

BPD Comp. 0115

COE001459

BPD Comp~v116

**William M. Shephard**
Buffalo Police Department
Photographic Unit
Case No:          Date:

# 1 8 9 1 8



COE001460

BPD Comp. 0117

COE001461

BPD Compl--118

Photographic Unit

**Date:**

Case No:

APPENDIX 1608



COE001462

BPD Comp. 0119

COE001463

BPD Comp~~120

William W. Shephard
Buffalo Police Department
Photographic Unit
Date:

AUG 10 1991

# 28



COE001464

BPD Comp. 0121

COE001465

BPD Comp. 022

ctor A. De Leone
... Department
...ice Unit
...te:    JUN ...

Pee 11
11-5-92

**APPENDIX 1612**



COE001466

COE001467

BPD Comp. _124

**Victor A. DeSimone**
Buffalo Police Department
Photographic Unit

Case No:          Date:

JUN 01 1992

**APPENDIX 1614**



COE001468

BPD Comp. 0125

COE001469

BPD Comp. 126

JUN 0

**Victor A. DeSimone**
Police Department
Photographic Unit
**Date:**

**Case No:**

#



COE001406

BPD Comp. 0127

COE001407

BPD Comp~/28

**William M. Shephard**
Buffalo Police Department
Photographic Unit

Case No:          Date:

#



COE001408

BPD Comp. 0129

COE001409

BPD Comp-~30

AUG 10 1991

William W. Shephard
Buffalo Police Department
Photograph Unit



COE001410

BPD Comp. 0131

COE001411

BPD Comp-032

William R. Shepherd
Buffalo Police Department
Photographic Unit
Date:
Case No:
AUG 16 1991



COE001412

BPD Comp. 0133

PEOPLE'S
EXHIBIT
6

PEOPLE vs. Seymour, R. J.

COE001413

BPD Comp. 5134



COE001414

BPD Comp. 0135

COE001415

BPD Comp—36

William M. Shephard
Buffalo Police Department
Photographic Unit

No:                    Date:    AUG 13 1991

#1.89112



COE001416

BPD Comp. 0137

APPENDIX 1627

COE001417

BPD Comp~~138

Photographic Unit
Dates

Case No.



COE001418

BPD Comp. 0139

COE001419

BPD Comp~v40

Buffalo Police Departme
Photographic Unit

Case No:                    AUG 19 1991



COE001420

BPD Comp. 0141

COE001421

BPD Comp~√42

Shephard

Photographic



COE001422

BPD Comp. 0143

PEOPLE'S
EXHIBIT

COE001423

BPD Comp. 344

Police Department
Photographic Unit

Case No:

AUG 10 1991

Date:

APPENDIX 1634



COE001398

BPD Comp. 0145

**APPENDIX 1635**

CD# _221 504_        FILE# _91-145_

**Officer** _JOHN VICKERD_

**Unit** _HOMICIDE_

PHOTO SPREAD INFORMATION

| Slot | ✦ | Mug Number | Mug Date |
|------|---|------------|----------|
| 1. | | 166781 | 11-13-89 |
| 2. | | 172430 | 7-29-90 |
| 3. | | 164813 | 11-14-90 |
| 4. | | 152153 | 2-31-88 |
| 5. | | 143655 | 7-16-90 |
| 6. | | 166924 | 11-16-90 |

Remarks

P-89

COE001399

P-1302          R.T.D.                                    8-10-91
                C.O.H.
                                            File 91-145
                                            Torrano Jackson

Ref: MRS

Attn: James Rat                    Called
                                   Msg 8-10-91

Sir:

        Continuing the investigation
of the shooting of Torrano Jackson.
Your writer did receive a call from
a female. She identified herself
as Mrs Jackson the mother of the
deceased. She resides at 19 Thatcher
phone 836-2809.

        She states the following
that the boy that did this
drives a white caddy. He hangs
out around Genesee and Moselle.
He made his escape in a blue
blazer. After he did this he
went and partied at one of the
area bars. She also states if
he was to run away he would
go to Niagara Falls.

        She states a young boy
told her this. He would not I.D.
himself. She was informed to get
names of anyone who said this.
and call us

                                    Respect.

COB 000118

BPD Comp. 0147

```
OPR.NAM/ SULLIVAN        JOHN              DOB/ 030274 RAC/ B SEX/ M
    NAM/SULLIVAN       JOHN       A.       DOB/030274 RAC/B SEX/M    PCN/05
ADR/309    ADAMS       ST.        CIT/BUFFALO       NY,14208    ORA/EIO
HGT/6-01   WGT/207   BLD/UNKNOWN      EYE/BRO       HAI/BLK       SMT/
CTZ/Y      POB/BUFFALO   NY       OCC/STUDENT       MAR/SINGLE
HAZ/NO WARNING
SID/67196310   FBI/                SOC/000000000   MUG/180507-EI01  MNO/
                                   TO PRINT A SUMMARY OF LOCAL ARRESTS:
NUMBER OF ARRESTS =   2               HIT UPPER FUNCTION & F1
```

CPS

COB 000129

```
X302 PAGE 01 08/10/91 S U M M A R Y   O F   A R R E S T S SULLIVAN ,JOHN
        CHARGES                                      DISPOSITIONS
```

```
07/12/90 ARR.BUFFALO    CNB/90-264766<>                              EI01
    DG 90 17150                         <>
    JCN 122754590 TPU 37                <>
PL 165-45-5      FEL.                   <>
```

```
09/21/90 ARR.BUFFALO    CNB/90-273822<>                              EI01
    BEF90-17861                         <>
PL 221-05        VIOL.                  <>
```

```
E N D   S U M M A R Y   SULLIVAN ,JOHN       002 ARRESTS,  002 CHARGES
```

```
* ACCOMPLICE INFO AVAILABLE -- USE FR.ARR OR FR.DR SCREEN
```

```
) DENOTES AN ATTEMPTED CRIME
```

```
NOTE-USE OF THIS INFORMATION IS NOT BASED ON FINGERPRINT IDENTIFICATION
     AND IS REGULATED BY LAW [TITLE 28-FEDERAL RULES AND REGULATIONS
     NEW YORK CRIMINAL PROCEDURE LAWS-ARTICLE 160].
     DO NOT RETAIN AFTER 90 DAYS FROM DATE AT TOP OF PAGE. DO NOT DISSEMINATE.
                              JOHN CARDARELLI, COMMISSIONER
                              CENTRAL POLICE SERVICES
```

COB 000130

BPD Comp. 0149



COE001400

BPD Comp. 0150

**APPENDIX 1640**

File #

CD# *CD221-504  91-145*

Officer *Det. MASECCHIA*

Unit *Homicide*

PHOTO SPREAD INFORMATION

| Slot # | Mug Number | Mug Date |
|--------|-----------|----------|
| 1. | 185651 | 6-24-91 |
| 2. | 178659 | 6-13-90 |
| 3. | 147985 | 11-2-87 |
| 4. | 178640 | 10-4-90 |
| 5. | 172822 | 6-12-89 |
| 6. | 172430 | 6-25-91 |

Remarks

P-89

COE001401

APPENDIX 1641

| TO FRANK W. LUSTAN DETECTIVE DIVISION ADMINISTRATION | SUBJECT | DATE 8/11/91 |
|---|---|---|

FROM C. FATTA, JR., LIEUTENANT
DETECTIVE DIVISION SHIFT OFFICER

DAILY REPORT FOR THE 1530-2330 HRS.
TOUR OF DUTY, ABOVE DATE

SIR,

I VISITED THE MEN'S CELLBLOCK AT : 1620 AND 2250 HRS.

ASSIGNED TO CELLBLOCK WERE: Bearon , Johnson, P.

Gambino , ,

TOTAL PRISONERS FINGERPRINTED: 12 : UNPRINTED 0

REASONS FOR UNPRINTED PRISONERS:

DEFICIENCIES IN CELLBLOCK: LIGHTS OUT:

INOPERATIVE CELLS:

CELLBLOCK BLANKETS: ON HAND: 18    IN CELLBLOCK: 0

TO BE CLEANED 9 : TOTAL: 27

IDENTIFICATION BUREAU PERSONNEL ASSIGNED: Serafinin , Adymy ½ AWL

zzz

*************************************************************************

DURING THIS TOUR OF DUTY THE FOLLOWING INCIDENTS OCCURED:

1) 1845 Hrs. Photographer Shephard called out to assist AIU with fatility
   at 578 Hopkins.

2) Received info from Lt. T.C. Smith #16 that a W-M & B-M in a late model Chev
   Caprice drove infront of shooting victims house at 19 Fatcher and shouted
   with bullhorn "We got your one boy, now we're going to get your other boy."
   Victim at present in ECMC, their security notified by Lt. Smith, Duty Insp
   to be notified.

3) P.O. Kwiatovski detailed to cellblock from Pct 9, reports off sick for t
   12-8 tour 8/12/91. Prect 9 to send mess.

RESPECTFULLY SUBMITTED,

LIEUTENANT
DETECTIVE DIVISION SHIFT OFFICE

COE001537

[ ] CONTINUED ON REVERSE

P-73   BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO  Ralph V. Dugenhart<br>Commisloner of Police | SUBJECT | DATE 8/11/91 |
|---|---|---|
| | Threats to Family of Shooting Victims | |
| FROM  P.O. Daniel F. Smith<br>P.O. Kevin Barberg<br>Precinct 16 | Refer to Msg.16584  CD# 221-504 | |

Attention: Inspector David Caruso
           Homicide Sqaud
           Intelligence Squad

RECEIVED
1991 AUG 14 AM 5:42
HOMICIDE BUREAU
BUFFALO POLICE DEPT

Sir;

On 8/11/91 at 1802 hrs. officers Smith and Barberg were dispatched to 19 Thatcher in Pct. 16 regarding a call of threats. Upon talking to the complaintant we were informed that one B/M, and one W/M in an older Chevrolet Caprice, grey, did threaten their family. The complt. Mrs. Jackson had two sons shot on 8/10/91 at 0129hrs. at Bailey and E. Delevan. Her son Torriano Jackson died of gunshot wounds and her other son Aron Jackson is confined to E.C.M.C. in critical condition. According to Mrs Jackson the above males, no better description, did ride past her house at about 1600hrs and with the use of a bullhorn did say that they would return and her son Aaron. As a result Mrs. Jackson had her son moved to a different room within E.C.M.C. under the name of John Doe.

P.O. K. Barberg

Sir;

I was informed of the above incident by Officers Smith and Barberg. I notified the Duty Inspector, the Shift Lieutenant and the security at E.C.M.C. A pick-up for the vehicle was put over the air. Security at the Hospital was given orders not to reveal the room number of Aaron Jackson to anyone and to contact our Department regarding any suspicious activity.

Respectfully,
Lt. Thomas C. Smith Prct 16

Respectfully forwarded:

Captain Michael Gasper
Prct# 16.

RESPECTFULLY FORWARDED

David Caruso
POLICE INSPECTOR

COE001539

## BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | | DATE | 8/11/91 |
|---|---|---|---|---|---|
| FROM | Det. Mark R. Stambach Det. Daniel R. DiPirro | File 91-145 Torrano Jackson Homicide Dictated by Det. Mark R. Stambach | | | |

ATTN:   James Rautenstrauch, Lieutenant

SIR:

Continuing the above investigation, your writers did go to E.C.M.C. There your writers did interview Mario Jarmon after obtaining permission from his doctor, Dr. Vilardo.

He was currently in surgical ICU in Rm. 1934. He had a trach tube and was not able to speak. He did nod and tell us the following after several questions.

He said TINO, Valentino Dixon did not shoot him by nodding no. He nodded that the guy that shot him was the dead guy. He was shot and did not see TINO with a gun. He will sign a statement when better.

Respectfully submitted,

Det. Daniel R. DiPirro

MS/les

Det. Mark R. Stambach

Mark R. Stambach

A.16

P-73 **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | | DATE | 8/11/91 |
|---|---|---|---|---|---|
| FROM | Det. Mark R. Stambach Det. Daniel R. DiPirro | File 91-145 Torrano Jackson Homicide Dictated by Det. Mark R. Stambach | | | |

ATTN:    James Rautenstrauch, Lieutenant

SIR:

Continuing the above **investigation, your writers** did go to E.C.M.C. There your writers did **interview Mario Jarmon** after obtaining permission from his doctor, Dr. Vilardo.

He was currently in surgical ICU in Rm. 1934. He had a trach tube and was not able to speak. He did nod and tell us the following after several questions.

He said TINO, Valentino Dixon did not shoot him by nodding no. He nodded that the guy that shot him was the dead guy. He was shot and did not see TINO with a gun. He will sign a statement when better.

He wrote the name of the guy that was with him and TINO as Twon from Burguard St. He also nodded that he was close friends of TINO.

We then tried to interview Aaron Jackson. His doctor refused. We were informed to check later after a day or two. We found out his parents just left.

We then contacted **Aaron's mother** at her residence. She stated her son Aaron told her at the E.C.M.C. that Valentino Dixon, shot him. She said her son told her TINO shot him with an automatic, as the bullets came out of the gun so fast. She then asked for your writer to meet her at the E.C.M.C. at 2000 hrs. tomorrow.

At this time a photo array and statement can be taken as of 8/12/91.

Aaron's father, **Frederick Jackson,** told your writer that his son told him on Tuesday that TINO was going to shoot them, that both his sons, Aaron and Torrano took him to the window of their house and showed him a white Cadillac that drove by three times. They told him it was TINO and he was after them.

He told his sons to stay out of the streets, then this happened. He agreed to an interview at E.C.M.C. on 8/12/91.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,

Det. Daniel R. DiPirro

MS/les

Det. Mark R. Stambach

Mark R Stambach

COE001538

BPD Comp. 0155

8-11-91

P-1302

R.T.O
C.O.H

File 91-145
Toirano Jackson

N.O.R.P.

D.M.R.S.

Attn: James Rout.

Sir.

Called him at 4:11

I'm continuing the investigation of Toirano Jackson your writers did go to the E.C.M.C. There your writers did interview Mario Jarmon. After getting permission from his Doctor Michael Vilardo. He is in S.I.C.U. in room 1934. He had a trache tube and was not able to speak. He did nod and tell us the following after several questions. He said Valentino Tino Dixon did not shot him by nodding no. He nodded that the guy that shot him was the dead guy. He was shot and did not see TINO with a gun. He will sign a statement when better. He wrote the name of the guy that was with him and TINO as TWON from 6 urgard street. He also nodded that he was close friends of TINO.

We then tried to interview Aaron Jackson his doctor refused. We were informed to check later after a day or two. We found out his parents had just left.

COE001540

We then contacted Aarons mother
at her residence. She stated her son
Aaron told her at the E.C.M.C. that
TINO Valentino Dixon shot him. She
said her son told her TINO shot
him with a automatic as the
bullets came out of the gun so
fast. She then asked for your
writer to meet her at the E.C.M.C.
at 8:00 PM tommorow. Photo array
and statement can be taken 8-12-91.

His father Frederick Jackson
told your writers that his sons had
told him on Tuesday that TINO was
going to shot them. That both his
sons Aaron and Tarrain took him
to the window of there house and
showed him a white caddilac that
drove by three times. They told
him it was TINO and he was after
them. He told his sons to stay
of the streets. Then this happened
He agreed to a interview at ECMC on
8-12-91.

YOWBKA OA

Respect
MRS
DRD

City of Buffalo                8-12-91
Department of Polic            0130hrs

State of New York)
County of Erie ) SS.
City of Buffalo )

LEONARD L. BROWN Date of birth 12-7-70 20yrs of age a black male residing at
63 Fay in the lower phone #893-1497. Being duly sworn deposes and makes the
following statement in Room #304 of the Buffalo Police Headquarters the office
of the Homicide Section. Statement typed and questions asked by Det. Raniero
Masecchia, in the presence of Det. Dan DiPirro.

Q. Can you read and write and how far did you attend school?
A. Yes, I got my G.E.D. from High School.

Q. Are you employed and if so where?
A. Yes, At a BUCK OR TWO 2129 Bailey.

Q. Where do you and with whom?
A. 63 Fay, with my Mother and my little brother, Antoine Shannon.

Q. The Buffalo Police Homicide Section is presently investigating a shooting
that happened E. Delavan and Bailey Ave. on 8-10-91 at approximately 1:30am
As a result of this shooting a Torrano Jackson B-Male 17yrs of age of 19
Thatcher st. was pronounced dead at the ECMC Hospital a short while later.
Also the following were also shot and are presently being treated for
gunshot wounds. Aaron Jackson black male 20yrs. of 19 Thatcher, Mario
Jarmon B-M-19yrs of age of 1122 E. Delavan and a John Sulliavn black male
17yrs of age of 49 Elmer. Can you tell me what you know of this incident?
A. Let me tell how it started, Aaron Jackson and Torre Jackson and a couple
of other boys a few weeks before the shooting, they was at a party at a
new club somewhere downtown. My little brother Antione Shannon was also
there with a couple of his friends. One of the boys that he was with had
a little controversy over something. Torre and Aaron and bunch of those
guys pulled out a gun, my brothers friends ran, they surrounded my brother
Antione and told him to get down on his knees. Torre had the gun. My
brother wouldn't get down and he just ran, nobody shot at him, OK the
night of the shooting, Me my little brother Antione and Mario Jarmon we
was in this corner store on Bailey and Delavan, I was in the store and
they was outside, my little brother came and called me to come out. He told
me that one of the guys that pulled the gun on him was sitting in a car
a little Geo across the street in a Parking lot at the Norse Star bank.
We walked across the street to the car, I told my little brother to tell
Aaron Jackson to get out of the car, I wanted to fight him one on one
I mean my brother wanted to fight one on one. But Aaron didn't want to
he kept talking about his brother just dying. That was Fred Jackson he died
about 4 weeks age he OD or something. He jumped in the car with a another
guy named Travis he was saying to wait that he was gonna come back and
spray all us Mother Fuckers. Me, my little brother and Marion walk back to M
rios house on E. Delavan. We were there for about 5 minutes when we see the
Yellow Geo go back towards Bailey, this time there are a some more people
in the back seat. We went into the house and my little brother called
Tino, thats Valentino Dixon. It took Tino around 45 minutes to get there.
When he came he was with Lamarr, All of them walked up to the corner and
they told me to stay by the house. Then I saw the Geo pull up and they
started exchanging words on the corner, Tino and Lamarr started to come
back towards the houses, the Geo parked in Louies parking lot. As Tino,
Lamarr and Antoine were coming to me, I saw about 5 guys, Aaron, Torre
and some others start with Mario who still up at the corner, They were
going after Mario throwing punches, Mario was backing up so I ran up there
to help Mario and Tino and Lamarr were behind me. I was to get up to the
fight and thow a bottle at someone when I heard a shot. Then I was looking
around and then I heard all kinds of shots. I seen Lamarr with the gun
he was shooting. I started backing up, the dude was lying on the ground
and Lamarr must have lost control of the gun it just kept going off. Tino
had run away and ran behind him. Tino jumped in his car and drove and me
and my little brother ran up into Marios house. Then Lamarr ran away into
some yard.

Q. How old is your little brother Antione Shannon?
A. 18yrs.

Q. Can you describe the gun Lamarr had?
A. It was black, it had a handle and he held it with two hands, it looked
like a machine gun. L.B

Statement of Leonard L. Brown continued on page #2......................

COE001560

Statement of Leonard L_ Brown continued from page : .................

Do you know Lamarr's full name?
No, but we came down here together, I didn't know him until that time
of the shooting.

Q. How did you and Lamarr happen to come here together?
A. My father, Step father had talked to Tino in jail and he got us all
together and had us call the News.

Q. What is your relationship to Tino, Valentino Dixon?
A. He's my half brother, we got the same Father.

Q. Did you see anyone else besides Lamarr with a gun at the time of the
shooting?
A. No.

Q. Did you have a gun?
A. No,

Q. How many shots did you see Lamarr shoot?
A. I don't know I heard the first shot coming from the street, then Lamarrs
shots were like firecrackers.

Q. Did you and Lamarr discuss what you were going to tell the Police tonight?
A. No.

Q. Do you know what happened to the gun that was used in the shooting?
A. No.

Q. Do you know where Lamarr was when he called Channel 2 News?
A. Yes, 63 Fay he was my house.

Q. Who else was in the house when he called?
A. My Father Robert Bryant and my Mother Ann Shannon, and my brother
Antione.

   Channel 2 stated that they called 893-1497 whose phone # is that?
   My mothers Anne Shannon at 63 Fay.

Q. Did you see Lamarr with the gun before the shooting started?
A. No.

Q. Did Lamarr give you the gun after the shooting?
A. No.

Q. Did Tino have a gun the night of the shooting?
A. No. I didn't see one.

Q. OK, is there anything else you can think of that might assist us in this
investigation?
A. No.

Q/ I will now have you read this 1 3/4 page statement and if there are
any additions or corrections tell me and I will make them now. Do you
understand?
A. Yes.

Q. OK, now that you have read the statement, is it true and correct?
A. Yes.

Q. Will you sign it?
A. Yes.

Sworn to and subscribed before me this the
12th Day of August, 1991                              Signed _Leonard Brown_
_Lewis Vandela_
Commissioner of Deeds in and for the
City of Buffalo, County of Erie, State of NY.
Exp. 12/92

COE001561

BPD Comp. 0159

APPENDIX 1649

DEPARTMENT OF
**CENTRAL POLICE SERVICES**
FORENSIC LABORATORY
ERIE COUNTY

REQUEST FOR FORENSIC
LABORATORY EXAMINATION

CD#221504

Hom.#91-145
ECU/LP#91-0853

CASE NO.

DATE _____ 8/10/91

| INVESTIGATING OFFICER(S) | Henry Smardz | SHIELD NO. | 404 | AGENCY | BPD | BUR. XX&T. ECU |

| DEFENDANT(S): | Valentino Dixon,BM,21
BPD #172430 |

PLEASE CHECK:
(   )SALE OF CONTROLLED SUBSTANCES          (   )POSSESSION ONLY OF CONTROLLED SUBSTANCES
CHARGES: Hom/Shootings-Poss Weap    TIME & DATE OF OCCURRENCE OR ARREST:    0129 hrs - 8/10/91

| DESCRIPTION OF EVIDENCE: | WHERE OBTAINED: | ID MARKS |
|---|---|---|
| Twenty-Two (22) items of physical evidence | Bailey & E.Delevan | HS |
| | 462 Grider St. (ECMC) | HS |
| | Sister's Hosp. | HS |
| | 74 Franklin (BPD-Hdqtrs) | HS |

refer XC P-112 for further info/description of submitted items...

Item 7 To The BPD Admin Office.
Not Submitted ē othe Items    (HMS)

| COMPLAINANT: | 1. Torriano Jackson,BM,17(Deceased) | ADDRESS: | 19 Thatcher,Bflo.NY |
| | 2. Mario Jarmon,BM,19 | | 1122 E.Delevan,Bflo.NY |
| | 3. Aaron Jackson,B,20 | | 19 Thatcher,Bflo.NY |
| | 4. John Sullivan,BM,17 | | 49 Elmer,Bflo.NY |

REMARKS/TYPE OF EXAMINATION REQUESTED:
FIREARM'S ID: #1,2,3,4,5,7 ,9,10,16,17,18,19,20
BLOOD:6,8,11,12,13,14,15,21,22

(THIS SPACE FOR LABORATORY USE ONLY)    **RECEIVED**

Received
+ Logged SP

AUG 12 1991 "Smardz"

FROM _Hen Smardz_
TIME _0915 hrs -_

LABORATORY NO. 76336

RECEIVED BY _Bert Pandolzini_

DCPS-L-1 (Rev. 1/81) ECCP

COE001647

P-73    **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | DATE 8/12/91 |
|---|---|---|---|
| FROM | Det. Daniel R. DiPirro | File 91-145 Homicide Dictated by Det. DiPirro | |

ATTN:  James Rautenstrauch, Lt.

SIR:

At 1245 hrs. this date reporting officers were notified at home by phone by Shift Lt. William Smith that more manpower was needed to assist in new information regarding the above homicide on 8/10/91.

Upon arrival at the Homicide office, your writer met Det. Masecchia and we were both briefed by Det. Stambach as to the meeting and filming by Channel 2 News at Bailey/Genesee at approximately 0001 hrs.  The reporter and cameraman were Wanda Stark, 849-5756, reporter and Jerry Gasser, phone 883-9022 cameraman.

They stated they would make a copy of the confession taped by them at midnight at Bailey/Genesee.  Your writer accompanied them to their studio at approximately 0140 hrs. and I received the tape of one Lamar Scott.  On tape he made admissions to Channel 2.  Said copy of the tape is a permanent part of this file.

While at Channel 2, I spoke to John C. Stehlin, assignment editor of Channel 2 and also legislative assistant to Councilman Fronczak.  He took the first call at the studio at approx. 2250 hrs. on 8/11/91 on the news hotline.

He spoke to a woman who gave him the number 893-1497 to call back.  She identified herself as Ann Shannon.  After calling the news director at home, John called the number back that he was given and spoke to Ann Shannon some more.

John then spoke to another male who said he was John, same phone call. John said he wanted the truth to come out and John Stehlen agreed to meet him at Bailey/Genesee with the police to film it.  This was done at midnight.  Stehlen said he will testify to the conversation he received on the phone.

Your writer then returned to the Homicide office where Dets. Masecchia/ Stambach were taking statements from Lamar Scott, confessor, and a witness Leonard L. Brown.  Their statements will become a permanent part of this file.

Respectfully submitted,


DRP/les                                           Det. Daniel R. DiPirro


COE001547

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | SUBJECT | DATE |
|----|---------|------|
| FROM | | |



CAMERAMAN

Reporter: WANDA STARK



ASSIGNMENT EDITOR

JOHN C. STEHLIN
ASSISTANT TO
DAVID A. FRANCZYK
COUNCILMEMBER FILLMORE DISTRICT

851-4138

851-4139          1405 CITY HALL
                  BUFFALO, NY 1420 2

COB 000198

P-1302
DD.

91-145

Sir:

At 1245 hrs this date reporting officer was notified at home by phone from Shift Officer Lt. Smith that more manpower was needed to assist in new info re: Homicide from Bailey & Delmore 8-10-91.

Upon arrival at our office, I met Det. Manski and we were both briefed by Det. Stambeck as to the meeting & filming by Ch #2 News at Bailey & Kensington. The reporter & Cameraman were:

WANDA STARK - 849-5756 Reporter
Jerry Casser - 883-9022 - Cameraman

They stated that they would make a copy of this a confession taped by them at 12 midt. Bailey & Delmore. I accompanied them to their studio at 0140 hrs. I viewed this tape by one Tamaar Scott, on this tape he made admission to Ch #2, said copy of tape is now part of said file.

While at Ch #2 I spoke to John C. Stehlin Assign. Editor at Ch #2 as a Legislative assistant to Shoricaph Office Councilman. He took the 1st call at the studio at approx 10³⁰ pm, 8-11-91 on News Hotline.

He spoke to a woman who gave him the number 893-7497 to call back she ID herself as Ann Shannon. After calling News Director, John called the number back and spoke to Ann Shannon re000000.

John then spoke to another male who said he was John, same phone call; John said he wanted the truth to come out at John Stehlin and Johan, he spoke to agreed to meet at Bailey + Dewise with the Police to film it; Stehlin said he will testify to this convers.

at 12
Midt + on the phone

COB 000195

BPD Comp. 0163

P-1302



I then returned to the *ARO* office when
Misrichis + Strablad were taking statments from
Tamar Scott + witness Gerald J. Brown

P-73   **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief<br>Homicide Section | SUBJECT | DATE 8/12/91 |
|---|---|---|---|
| FROM | Det. John Vickerd | File 91-145 Torrano Jackson Homicide<br>Dictated by Det. John Vickerd | |

Attn:  James Rautenstrauch, Lt.

Sir:

Your writer received a phone call from an anonymous female caller at 1300 hrs. this date while in the Homicide office.  This female stated she had information from an eyewitness who also would remain anonymous about the above shooting.

This female caller stated Valentino Dixon, known to her as TINO, is the person that shot Torrey Jackson and also Aaron Jackson.  She also states that while Aaron was lying on the ground after being shot by TINO, TINO'S best friend, Rich Wallace, also shot at Aaron with a handgun he had.  She states that Rich Wallace lives at the house next to 366 Koons Ave., upper.  She believes the number is 368.  The house is brownish in color with brick on the front.

She describes Rich Wallace as a B-M, dark skinned, 19 years, approx. 5'9", medium build, short hair, clean shaven.

This caller also stated TINO contacted Rich and a 14 year old B-M named Ronnie, that stays with Rich Wallace.  He contacted Ronnie through friends by phone from the Holding Center.  Ronnie was offered $3,000 to take the blame for the shooting.  Because of his age, TINO figured he could only be charged as a juvenile.

This caller then stated that cousins of the Jackson brothers will be shooting up Rich Wallace's house because they know he was involved.

Subsequent developments will be reported via additional P-73's.

Respectfully submitted,

*John T Vickerd*

Det. John Vickerd

JV/les

COE001544

P-88 [Rev. 12/86]

**DEPARTMENT OF POLICE**
**CITY OF BUFFALO**
**Photo - Array Identification Affidavit**

DATE: _8 / 12 / 91_

STATE OF NEW YORK
COUNTY OF ERIE          } SS. :
CITY OF BUFFALO

_AARON   JACKSON_____, AGE _20_, ADDRESS _19 THATCHER   STREET_

_____, PHONE _836 2809_, BEING DULY SWORN, DEPOSES AND MAKES THE

FOLLOWING STATEMENT TO _DETECTIVE   MARK   R.   STAMBACH_____
                                                                    [Name]                                    [Rank]
AT _1915_ HRS., DATE _8 / 12 / 91_, WHILE AT _E.C.M.C._   _GRIDER STREET_____
                                                                    [Address]          [City / Town]          [State]

**NOTE :**   STRIKE OUT SECTION **A** OR **B** THAT DOES NOT APPLY.

I WAS SHOWN A FOLDER WITH SIX [6] PHOTOGRAPHS IN SEPARATE SLOTS :

**A.**   I PICKED OUT A PHOTO IN THE NUMBER _____ SLOT AND I POSITIVELY IDENTIFY THE PERSON IN THE

PHOTOGRAPH AS BEING THE ONE THAT _____ ME ON ___/___/___ .
                                                                    (Describe criminal act)                              [Date]
I WAS TOLD BY THE ABOVE POLICE OFFICER THAT THE NAME OF THE PERSON IN THE PHOTOGRAPH IS

_____
              (Enter name)

**B.**   I PICKED OUT A PHOTO IN THE NUMBER _4_ SLOT AND I IDENTIFIED THE PERSON IN THAT PHOTOGRAPH

AS LOOKING LIKE THE PERSON WHO _SHOT MY BROTHER_ _TORRY_ ME ON _8 / 10 / 91_ BUT, I CANNOT BE SURE
                                                                    (Describe criminal act)          [Date]
~~UNLESS~~ _HE WAS THERE   IT   HAPPENED   SO   QUICK_

_NUMBER   FOUR_                                          (Describe why)

_I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE._

                                          Signed   x _Aaron Jackson_ ...................

SUBSCRIBED AND SWORN TO BEFORE ME,

THIS _12TH_ DAY OF _August_, 19 _91_

COMMISSIONER OF DEEDS IN AND
FOR THE CITY OF BUFFALO, N.Y.

**COE001402**



COE001403



BPD Comp. 0167

COE001404

BPD Comp. 0168

I have positively identified the photo in slot #......4......as
being the person that was THE Guy with the locks like
Signed... ..............................................Date... x-12-91

CD #_CD 221-504  File # 91-145_

_fﬁcer_____

Unit  _HOMICIDE_____

PHOTO SPREAD INFORMATION



| Slot | ＃ | Mug Number | Mug Date |
|---|---|---|---|
| 1. | | 186 651 | 6-24-91 |
| 2. | | 178 659 | 4-13-90 |
| 3. | | 149 985 | 11-2-87 |
| 4. | | 172 456 | 6-25-91 |
| 5. | | 178 640 | 10-4-90 |
| 6. | | 172 882 | 6-12-89 |

Remarks

P-89

COE001405

P-88 [Rev. 12/86]

DEPARTMENT OF POLICE
CITY OF BUFFALO
Photo - Array Identification Affidavit

DATE: 8 / 12 / 91

STATE OF NEW YORK
COUNTY OF ERIE     } SS. :
CITY OF BUFFALO

AARON JACKSON , AGE 20 , ADDRESS 19 THATCHER STREET

, PHONE 836 2809 , BEING DULY SWORN, DEPOSES AND MAKES THE

FOLLOWING STATEMENT TO DETECTIVE MARK R. STAMBACH

AT 1915 HRS., DATE 8 / 12 / 91 , WHILE AT E.C.M.C.    GRIDER STREET
[Name]                                          [Rank]
[Address]     [City / Town]     [State]

NOTE : STRIKE OUT SECTION **A** OR **B** THAT DOES NOT APPLY.

I WAS SHOWN A FOLDER WITH SIX [6] PHOTOGRAPHS IN SEPARATE SLOTS :

**A.**  I PICKED OUT A PHOTO IN THE NUMBER _____ SLOT AND I POSITIVELY IDENTIFY THE PERSON IN THE

PHOTOGRAPH AS BEING THE ONE THAT _____ ME ON ___/___/___ .
(Describe criminal act)                     [Date]
I WAS TOLD BY THE ABOVE POLICE OFFICER THAT THE NAME OF THE PERSON IN THE PHOTOGRAPH IS

_____
(Enter name)

**B.**  I PICKED OUT A PHOTO IN THE NUMBER 4 SLOT AND I IDENTIFIED THE PERSON IN THAT PHOTOGRAPH

SHOT MY BROTHER
AS LOOKING LIKE THE PERSON WHO TORRY ME ON 8 / 10 / 91 BUT, I CANNOT BE SURE
(Describe criminal act)          [Date]
~~UNLESS~~ HE WAS THERE IT HAPPENED SO QUICK
NUMBER FOUR                    (Describe why)

*I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.*

Signed  X Aaron Jackson ..................................

SUBSCRIBED AND SWORN TO BEFORE ME,

THIS 12TH DAY OF August ,19 91

COMMISSIONER OF DEEDS IN AND
FOR THE CITY OF BUFFALO, N.Y.

COE001542

APPENDIX 1660





COE001395

BPD Comp. 0171



COE001396

BPD Comp. 0172

I have positively identified the photo in slot # ....4.....
being the person that was THERE....as
THE SECOND SHOOTER AND LOOKS LIKE
Signed.................................Date...9.-12.-91

CD #CD 221·504   File # 91-145

Officer_____

Unit   HOMICIDE_____

PHOTO SPREAD INFORMATION

| Slot # | Mug Number | Mug Date |
|---|---|---|
| 1. | 186651 | 6-24-91 |
| 2. | 178659 | 6-13-90 |
| 3. | 147985 | 11-2-87 |
| 4. | 172430 | 6-25-91 |
| 5. | 178640 | 10-4-90 |
| 6. | 178822 | 6-12-89 |

Remarks

P-89

COE001397

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | SUBJECT | DATE |
|---|---|---|
| FROM | | |

HOMICIDE SECTION

TO:       HOMICIDE SECTION

FILE:     91 - 145

FROM:     DISTRICT ATTORNEYS OFFICE

DATE:     August 12, 1991

=======================================================================

RECEIVED FROM BUFFALO POLICE HOMICIDE SECTION, COPIES OF THE
ABOVE FILE, VICTIM: TORRANO JACKSON

*Christopher J. Belling*

ADA

CJP

COB 000232

# BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO | Lt.L.J.Baehre ID Section | SUBJECT | DATE 8/13/91 |
|---|---|---|---|

CD#221504  Hom.#91-145 ECU/LP#91-0853
Re:Hom/Shooting 8/10/91- Bailey & E.Delevan
Victim(s):1.Torriano Jackson,BM,17(Deceased)
2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20
4.John Sullivan,BM,17

**FROM**  Det.H.M.Smardz
ECU

Attn: Capt.R.T.Donovan
Chief/Hom.Section

Sir;

On Sat.08/10/91, 0140 hrs. I was notfd. at home via phone by Lt.Wm.Smith
of the DDSO that the services of the ECU were requested by the Hom.Sec. in the
16th Prct. Re: Homicide/Shootings - Bailey & E.Delevan.

I arrived at the scene at 0220 hrs 8/10/91 and was met by Insp.Labedz (DI)
and Det.Lonergan (Hom.Sec.) who along w/Prct.Officers from #16 advised me of what
had thus far possibly transpired. After Wm.Shephard (Photo Unit) videotaped and
photographed the area I conducted a Crime Scene Search & collected Physical Evidence
(please refer attached XC P-112 for further info/description of recvd.items.)
At this time during the initial crime scene search items #1 thru #10 were recovered.

At approx. 0420 hrs 8/10/91 Evid.Item #11, #12 & #13 were collected at the
ECHC/ER (#11-Clothes of Torriano Jackson.) (#12 - clothes of Mario Jarmon) and
(#13 - clothes of Aaron Jackson) after his ........

At 0630 hrs. 08/10/91 Item #14 (clothes .............................) at
the Sister's Hosp.ER ....

Items #15 thru #21 were collected on 8/10/91 ............................ during
the Autopsy of Hom.Victim Torriano Jackson,BM,17. Also at this time a set of inked
fingerprint impressions of the victim were recvd.(Faxed to the BPD-ID section
file for known impressions on file for legal ????)

At 1500 hrs 8/10/91. Item #22 (clothes ....................................
from the Susp/Deft. at the BPDHQ Booking DC.

A daylight crime .................................................................
on Sat. 1145 hrs 8/10/91 ...........................

Thus far all told ........ twenty-two (22) .........................................
pertaining to this incident.

On Mon.8/12/91,all twenty-two (22) Items ..................................
Lab for further analysis.Lab # 76336.(Refer XC P-???)

A latent print exam was conducted on Items #? (.22 cal.casing), and #? (.32-20)
revolver, and 27 spent ??? casings. The results were Negative as No Latent Prints
were developed.(Also refer P-77B-91)

Respectfully,

_[signature]_
Detective Henry M. Smardz
BPD/ID Section-ECU

FForwarded,

_[signature]_
Lt.Larry J. Baehre
BPD/ID Section

COE001592

## *EVIDENCE*

**BUFFALO POLICE DEPT.** __4__ NUMBER

Date of Crime __8/10/91__    P·112

Type of Crime __Homicide/Shootings__

Location __Bailey & E.Delevan__

Victim __1. Torriano Jackson,BM,17(Deceased)__

2. Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. __suspected lead slug recvd.on the street__ approx.1157 E.Delevan - 11'9" N.of S.curb 1157 E.Delevan & 34'4" E.of the utility pole #1155 E.Delevan

Case No. __ECU/LP#91-0853__    Collected By __HS/ HS__    Date __8/10/91__

## *EVIDENCE*

**BUFFALO POLICE DEPT.** __5__ NUMBER

Date of Crime __8/10/91__    P·112

Type of Crime __Homicide/Shootings__

Location __Bailey & E.Delevan__

Victim __1. Torriano Jackson,BM,17(Deceased)__

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. __spent brass .22 cal. casing (U) recvd.on__ the asphalt of the parking lot (Louie's Red Hots) SW corner of Bailey and E.Delevan - 14'2" S.of the S.curb approx. 1157 E.Delevan & 4'8" E.of the utility pole #1155 E.Delevan

Case No. __ECU/LP#91-0853__    Collected By __HS/ HS__    Date __8/10/91__

## *EVIDENCE*

**BUFFALO POLICE DEPT.** __6__ NUMBER

Date of Crime __8/10/91__    P·112

Type of Crime __Homicide/Shootings__

Location __Bailey & E.Delevan__

Victim __1.Torriano Jackson,BM,17(Deceased)__

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. __sample of wet red stain (susp.blood)__ recvd.on the street (approx.1157 E.Delevan) - 9'4" N.of the S.curb 1157 E.Delevan & 32'16" E.of the utility pole #1155 E.delevan

Case No. __ECU/LP#91-0853__    Collected By __HS/ HS__    Date __8/...__

COE001593

# EVIDENCE

**BUFFALO POLICE DEPT.** 7 / NUMBER

Date of Crime 8/10/91 _____ P·112

Type of Crime Homicide Shootings

Location Bailey & E.Delevan

Victim 1. Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.Johnsullivan,BM,17

Description of Evidence & Location Found (A).32 cal. 5 shot revolver,silver colored make UNKN. break front, ser.#747 w/2"bbl containing spent .32 cal.casing (B). Twenty-Seven (27) spent 9mm casings (brass) (C.) one (1) copper jacketed bullet - items received at the scene from PO Ra-Chelle Brown,Prct.#16

8/10/91 - 0225 hrs

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

---

# EVIDENCE

**BUFFALO POLICE DEPT.** 8 / NUMBER

Date of Crime 8/10/91 _____ P·112

Type of Crime Homicide/Shootings

Location Bailey & E.Delevan

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3. Aaron Jackson,BM,20  4. John Sullivan,BM,17

Description of Evidence & Location Found. sample of dry red stain (susp.blood) recvd off the seat portion of the frnt.pass.seat '90 Chev.2dr.yellow,NY Plt. ECF-131,in the parking lot of Louie's Red Hots, SW corner of Bailey and E.Delevan (2484 Bailey)

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

---

# EVIDENCE

**BUFFALO POLICE DEPT.** 9 / NUMBER

Date of Crime 8/10/91 _____ P·112

Type of Crime Homicide/Shootings

Location Bailey & E.Delevan

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. lead slug recvd on the top cellar stair of the cellar stairway, NW corner of 2484 Bailey Ave.(Louie's Red Hots) 13" E.of the W.wall & 8" N.of the front edge of the top stair

ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91    COE001594

# EVIDENCE

**BUFFALO POLICE DEPT.** $\frac{10}{\text{NUMBER}}$

Date of Crime ___8/10/91___                P·112

Type of Crime ___Homicide/Shootings___

Location___Bailey & E.Delevan___

Victim __1.Torriano Jackson,BM,17(Deceased)__

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. copper jacketed bullet recvd.on the 5th
stair from the top - on the stairway,NW corner of 2484 Bailey (Louie's Red
Hots) - 10" W.of the E.wall & 5" N.of the front edge of the stair

Case No. ___ECU/LP#91-0853___    Collected By HS/ HS    Date 8/10/91

---

# EVIDENCE

**BUFFALO POLICE DEPT.** $\frac{11}{\text{NUMBER}}$

Date of Crime ___8/10/91___                P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey/E.Delevan___

Victim __1.Torrian Jackson,BM,17(Deceased)__

2.Mario Jarmon,BM,19 3.Aaron Jackson,BM,20  4.John Sullivan,BM,17
clothes of Victim Torriano Jackson,BM,17
received from RN Barb Badgley,ECMC/ER

Description of Evidence & Location Found.

Ⓐ 1 pr.Wht.Hi-Top sneakers, wht/orange "NIKE" Force 9½ Ⓑ blue jeans
"Bugle Boy" 34M w/blk.belt Ⓒ teal briefs "Hanes" M-32/34 Ⓓ grey hood-
ed sweatshirt "Gears" XL w/Univ.Bflo.logo Ⓔ grey T-shirt "Trend-Ultra"
size L w/America's Cup logo . Items were cut by med.personell and cont-
ained WRS

Case No. ___ECU/LP#91-0853___    Collected By HS/ HS    0420 hrs
Date 8/10/91

---

# EVIDENCE

**BUFFALO POLICE DEPT.** $\frac{12}{\text{NUMBER}}$

Date of Crime ___8/10/91___                P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim __1.Torriano Jackson,BM,17(Deceased)__

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17
Clothes of Victim:Mario Jarmon,BM,19
received from RN Terena Licht,ECMC/ER

Description of Evidence & Location Found.

Ⓐ1 pr.sneakers wht.Hi-Top,NIKE"Quantum Force,10½ w/sox Ⓑ wht.print shorts
"Ocean Pacific" Ⓒ kelly grn.T-shirt "Russell Athletic" M-38/40 W/"Hunt-
ington Phys.Ed" logo Ⓓ Blk.sweatshirt Ⓔ jeans, lgt.blue "Levi Strauss"
38/30 - Items were cut by medical personell and contained Wet Red Stains
Ⓕ...one...get earring & key ring w/3 keys & ID tag "EAS"    0425 hrs COE001595
Date 8/10/91

# EVIDENCE

**BUFFALO POLICE DEPT.** 13 NUMBER

Date of Crime _____ 8/10/91 _____ P·112

Type of Crime _____ Homicide/Shooting _____

Location _____ Bailey & E.Delevan _____

Victim 1.Torriano Jackson,BM,(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. clothes of victim Aaron Jackson,BM,20
received from RN Bill Frieder,ECMC/ER,0425 hrs,8/10/91

(A)1 pr. blue sneakers "NIKE" Flight size 9, w/wht.ankle sox (B) 1 pr.grey
micro briefs "Large" (C) blk.sweatpants "Russell Athletic" XL - items
contained WRS (Wet Red Stains) , and were cut by med.personell

Case No. ECU/LP#91-0853    Collected By HS/HS    Date 8/10/91

---

# EVIDENCE

**BUFFALO POLICE DEPT.** 14 NUMBER

Date of Crime _____ 8/10/91 _____ P·112

Type of Crime _____ Homicide/Shootings _____

Location _____ Bailey & E.Delevan _____

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. Clothes of Victim:John Sullivan,BM,17
received from John Sullivan, 0630 hrs.8/10/91 at Sister's Hosp.ER

(A.) 1 pr.Royal Blue shorts w/WRS "Champion" XL
(B.) 1 pr.blue print shorts w/wrs "Pure Sweat"

Case No. ECU/LP#91-0853    Collected By HS/HS    Date 8/10/91

---

# EVIDENCE

**BUFFALO POLICE DEPT.** 15 NUMBER

Date of Crime _____ 8/10/91 _____ P·112

Type of Crime _____ Homicide/Shootings _____

Location _____ Bailey & E.Delevan _____

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. sample of head hair from Hom.Victim:
Torriano Jackson,BM,17 - recvd.1000 hrs,08/10/91 at the ECMC Morgue

Case No. ECU/ ‑ ‑0853    Collected By HS/HS    Date 8/10/91

COE001596

# EVIDENCE

**BUFFALO POLICE DEPT.** 16
NUMBER

Date of Crime _8/10/91_    P·112

Type of Crime _Homicide/Shootings_

Location _Bailey & E.Delevan_

Victim _1.Torriano Jackson,BM,17(Deceased)_

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. _copper jacketed bullet received from ME_
_Dr.Loghmanee, 1105 hrs,8/10/91 at Post of Hom.Victim:Torriano Jackson,BM._
_17 - item removed from vicitm's lt.forearm    (ECMC Morgue)_

Case No. _ECU/LP#91-0853_    Collected By _HS/HS_    Date _8/10/91_

# EVIDENCE

**BUFFALO POLICE DEPT.** 17
NUMBER

Date of Crime _8/10/91_    P·112

Type of Crime _Homicide/Shootings_

Location _Bailey & E.Delevan_

Victim _1.Torriano Jackson,BM,17(Deceased)_

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. _copper jacketed bullet received from_
_ME Dr.Loghmanee, 1108 hrs,8/10/91 at Post of Hom.Vicitm Torriano Jackson_
_BM,17 -item removed from bak of victim's rgt.hand    (ECMC Morgue)_

Case No. _ECU/LP#91-0853_    Collected By _HS/HS_    Date _8/10/91_

# EVIDENCE

**BUFFALO POLICE DEPT.** 18
NUMBER

Date of Crime _8/10/91_    P·112

Type of Crime _Homicide/Shootings_

Location _Bailey & E.Delevan_

Victim _1.Torriano Jackson,BM,17(Deceased)_

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. _copper jacketed bullet received from ME_
_Dr.Loghmanee - 1110 hrs,08/10/91 at the Post of Hom.Victim:Torriano Jackson_
_ECMC Morgue, - item removed from the victim's left upr.thigh/lateral_

Case No. _ECU/LP#91-0853_    Collected By _HS/HS_    Date _8/10/91_    COE001597

# *EVIDENCE*

**BUFFALO POLICE DEPT.** 19 NUMBER

Date of Crime ___8/10/91___ _ P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. **copper jacketed bullet received from ME**
**Dr.Loghmanee, 1114 hrs 8/10/91 at the Post of Hom.Victim:Torriano Jackson**
**ECMC Morgue - item was removed from the victim's Rgt.upr.thigh**

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

# *EVIDENCE*

**BUFFALO POLICE DEPT.** 20 NUMBER

Date of Crime ___8/10/91___ P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. **copper jacketed bullet received from ME**
**Dr.Loghmanee, 1116 hrs 8/10/91 at the Post of Hom.Victim Torriano**
**Jackson, -ECMC Morgue - item was removed from the victim'sLt.upper**
**thigh/medial**

Case No. ECu/LP#91-0853    Collected By HS/ HS    Date 8/10/91

# *EVIDENCE*

**BUFFALO POLICE DEPT.** 21 NUMBER

Date of Crime ___8/10/91___ P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. **viel of blood of Hom.Victim:Torriano**
**Jackson,BM,17 received from ME Asst.Geo.Washington,1125 hrs.8/10/91**
**at Victim's Post,ECMC Morgue**

Case No. ECU/LP#91-0853    ~~Collected By~~ HS/HS    Date 8/10/91

COE001598

# EVIDENCE

**BUFFALO POLICE DEPT.** <u>22</u>
NUMBER

Date of Crime _____8/10/91_____ _ P·112

Type of Crime _____Homicide/Shootings_____

Location _____Bailey & E.Delevan_____

Victim 1. Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. clothes of Susp/Deft.Valentino Dixon,BM
received from Valention Dixon,1500 hrs 8/10/91 at the Hom.Sec.Ofc.

A. 1pr. Blue/Blk."Nike" Sneakers Airmax size 9½    B. Blk.nylon jogging

pants "NIKE" size L  C. grey sweatshirt w/blk.trim on sleeves "NIKE"

"Force"    D. baseball cap "G" navy blue w/wht.bill —w/"Villanova Wildcats"
logo

Case No. __ECU/LP#91-0853__    Collected By ___HS/45___    Date 8/10/91

COE001599

BPD Comp. 0182

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO  Lt.L.J.Baehre<br>ID Section | SUBJECT | DATE 8/12/91 |
|---|---|---|
| | CD#221504  Hom.#91-145 ECU/LP#91-0853 | |
| FROM  Det.H.M.Smardz<br>ECU | Re:Hom/Shooting,8/10/91- Bailey & E.Delevan<br>Victim(s):1.Torriano Jackson,BM,17(Deceased)<br>  2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20<br>  4.John Sullivan,BM,17 | |

Attn: Capt.R.T.Donovan
      Chief/Hom.Section

Sir;

On Sat.08/10/91, 0140 hrs. I was notfd. at home via phone by Lt.Wm.Smith of the DDSO that the services of the ECU were requested by the Hom.Sec. in the 16th Prct. Re: Homicide/Shootings - Bailey & E.Delevan.

I arrived at the scene at 0220 hrs 8/10/91 and was metby Insp.Labedz (DI) and Det.Lonergan (Hom.Sec.) who along w/Prct.Officers from #16 advised me of what had thus far possibly transpired. After Wm.Shephard (Photo Unit) videotaped and photographedthe area I conducted a Crime Scene Search & collected Physical Evidence (please refer attached XC P-112 for further info/description of recvd.items.) At this time during the initel crime scene search Items #1 thru #10 were recovered.

At approx. 0420 hrs 8/10/91 Evid.Items #11 ,12 & #13 were collected at the ECMC/ER (#11-Clothes of Torriano Jackson) - (#12-clothes of Mario Jarmon) and (#13 - clothes of Aaron Jackson)-refer XCP-112 for further information.

At 0630 hrs. 08/10/91 Item #14 (clothes of John Sullivan)was collected at the Sister's Hosp.ER.

Items #15 thru #21 were collected on 8/10/91, 1000 hrs of thereafter during the Autopsy of Hom.Victim Torriano Jackson,BM,17.Alkso at this time a set of inked fingerprint impressions of the victim were recvd.(A check of the BPD-ID Section file for known impressions on file was Negative.

At 1500 hrs 8/10/91, Item #22 (clothes of Valentino Dixon) was collevcted from the Susp/Deft. at the BPD Hom.Section Ofc.

A daylight crime scene search of the area (Bailey & E.Delevan) was conducted on Sat. 1145 hrs 8/10/91 - No Additional Physical Evidence was recovered.

Thus far all toll - Twenty-Two (22) items of Evidence have been collected pertainin g to this incident.

On Mon.8/12/91,all Twenty-Two (22) items were forwardedto the Erie Co.CPS Lab for further analysis.Lab # 76336.(Refer XC DCPS-L_1)

A latent print exam was conducted onitems #5 (.22 cal.casing), and #7 (.32 cal. revolver, and 27 spent 9mm casings) The results were Negative as No Latent Prints were developed.(Also refer P-77B-91).

Respectfully,

Detective Henry M. Smardz
BPD/ID Section-ECU

Forwarded,

Lt.Larry J. Baehre
BPD/ID Section

COE001610

#2

P-73

# BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO    Lt.L.J.Baehre<br>ID Section | SUBJECT | DATE   8/12/91 |
|---|---|---|
| | CD#221504   Hom.#91-145  ECU/LP#91-0853 | |
| FROM   Det.H.M.Smardz<br>ECU | Re:Hom/Shooting-8/10/91-Bailey & E.Delevan<br>Victim(s):1.Torriano Jackson,BM,17(Deceased)<br>2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20<br>4.John Sullivan,BM,17 | |

Attn:Capt.R.T.Donovan
        Chief/Hom.Sec.

Sir;
        On Sat. 8/10/91 at 0330 hrs. I accompanied Wm.Shephard (Photo Unit) to the
Mobil Station located on Fillmore & E.Ferry St. (1507 Fillmore Ave.) in regards
to the investigation of Hom.Case #91-145 (Torriano Jackson Homicide).

        After photos were taken of a certain vehicle which was struck by gunfire
during this incident, it was determined that the vech.was hit but the missle
did ricochet off of it. The vech.in question was a '90 Chev.GEO Tracker -  2dr.
red w/wht.canvas top, NY Plt.#89X-997, regis.to Tamara L. Frida, 40 W.Balcom
Bflo.NY. The vech.was hit on the driver's side door post area.

        The Mgr.on duty at the time the vech.was brought into the station was one;
Tony Chambers.

Respectfully,

Detective Henry M. Smardz
BPd/ID Section-ECU

Forwarded,

Lt.Larry J. Baehre
ID Section /BPD

Orig:ECU FIle
XC:Hom.sec.

COE001611

APPENDIX 1674

BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

P-73

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | DATE 8/12/91 |
| --- | --- | --- | --- |
| FROM | Det. Mark R. Stambach | File 91-145 Torrano Jackson Homicide Dictated by Det. Mark R. Stambach | |

ATTN:    James Rautenstrauch, Lieutenant

SIR:

Continuing the above investigation, your writer did present himself to the E.C.M.C. There your writer met with Aaron Jackson. He was interveiwed in his room, #855. Permission was obtained from Dr. Phillips, his physician.

A photo array was shown to him. He identified #4 as the person that looked like the person that shot his brother Torrey. He was not sure and further stated that #4 was there, everything happened so fast.

He signed a P-88, Photo array ID affidavit. He also signed the label. Both forms will become a permanent part of this file.

While at E.C.M.C. the victim told your writer that Travis Paul, 46 Poultney was there. Your writer also learned Lisa McCullough of 221 Carl St. was also there. Her phone is 891-8252.

Your writer then went to 46 Poultney St. and met Elise Wilson and William Wilson. Elise is the mother of Travis and William is his step-father, phone 837-0802. He was not home at this time. A card was left and an appointment was set up for tomorrow at 2000 hrs.

Your writer then went to 221 Carl St. in an attempt to interview Lisa McCullough with negative results. A check will be made tomorrow.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,

Mark R. Stambach

MRS/les

Det. Mark R. Stambach

COE001550

P-73 **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Ralph V. Degenhart<br>Commissioner of Police | SUBJECT | DATE 8/12/91 |
|---|---|---|---|
| FROM | Gary P. O'Shei<br>Lt. Pct. 12 | Information regarding homicide at Bailey and E.Delevan | |

Attn. Richard T. Donovan, Chief of Homicide

Sir,
On 8/11/91 at aprx. 2340 hrs. I received a telephone call from one John Stahlin, assignment editior at Channel 2 News (849/5756) He informed me he received a phone call from an individual calling himself [John] and John stated that he was the one who shot the people at Bailey and East Delevan, and that he would surrender himself to the Police at 0000 hrs. At Genesee and Bailey on the condition he would be allowed to make a statement on camera to channel 2 prior to his surrender and that channel 2 be allowed to escort him downtown. At aprx. 2345 hrs. I phoned Inspector David Caruso [ Duty Officer ] with this information, and was informed by Inspector Caruso that he would make arrangements with the Homicide Squad to follow thru on the above.

Respectfully,

*Gary P. O'Shei*
Gary P. O'Shei
Lt. Pct. 12

Respectfully forwarded,

*Lawrence R. Bayerl*
Lawrence R. Bayerl
Captain Precinct Twelve



COB 000210

APPENDIX 1676

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | SUBJECT | DATE 8-12-91 |
|---|---|---|
| FROM | RIGHTS CARD | |

**WARNING- SUSPECTS'S RIGHTS** (MRS)

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one.

DO NOT REMOVE FROM FILE

(MRS)

COE001559

APPENDIX 167

DEPARTMENT OF
CENTRAL POLICE SERVICE
FORENSIC LABORATORY
ERIE COUNTY

CD#221504

**REQUEST FOR FORENSIC
LABORATORY EXAMINATION**

CASE NO. Hom.#91-145
ECU/LP#91-0853

DATE 8/10/91

| INVESTIGATING OFFICER(S) | Henry Smardz | SHIELD NO. | 404 | AGENCY | BPD. | BUR. | ECU |

DEFENDANT(S): Valentino Dixon,BM,21
BPD #172430

**PLEASE CHECK:**

( )SALE OF CONTROLLED SUBSTANCES          ( )POSSESSION ONLY OF CONTROLLED SUBSTANCES

CHARGES: Hom/Shootings-Poss Weap    TIME & DATE OF OCCURRENCE OR ARREST: 0129 hrs - 8/10/91

| DESCRIPTION OF EVIDENCE: | WHERE OBTAINED: | |
|---|---|---|
| Twenty-Two (22) items of physical evidence | Bailey & E.Delevan | HS MAR |
| | 462 Grider St. (ECMC) | HS |
| | Sister's Hosp. | HS |
| | 74 Franklin (BPD-Hdqtrs) | HS |

refer XC P-112 for further info/description of submitted items...

*Item 7 To the BPD Admin office.*
*Not Submitted ē other Items (HMS)*

COMPLAINANT:  1. Torriano Jackson,BM,17(Deceased)  ADDRESS:  19 Thatcher,Bflo.NY
2. Mario Jarmon,BM,19          1122 E.Delevan,Bflo.NY
3. Aaron Jackson,B,20          19 Thatcher,Bflo.NY
4. John Sullivan,BM,17          49 Elmer,Bflo.NY

REMARKS/TYPE OF EXAMINATION REQUESTED:

FIREARM'S ID: #1,2,3,4,5,7 ,9,10,16,17,18,19,20

BLOOD:6,8,11,12,13,14,15,21,22

*(THIS SPACE FOR LABORATORY USE ONLY)*    **RECEIVED**

*Received
+ Logged. SP*

AUG 12 1991 "Smardz"

FROM

TIME

LABORATORY NO. **76336**

RECEIVED BY

DCPS-L-1 (Rev. 1/81) ECCP

COE001483

P-1302

R.T.D.
C.O.H.

File 91-145
Torrano Jackson

Det. MRS

Attn: James Raut.

Sir:

I'm cont. the investigation of the homicide of Torrano Jackson your writer did present himself to the E.C.M.C. Here your did meet with Aaron Jackson. He was interviewed in his room number 855. Permission was obtained from Doctor Phillips his physician.

A photo array was shown to Aaron Jackson. He identified number four as the person that looked like the person that shot his brother Torry. He was not sure and further state that number four was there everything happened so fast. He signed the P-88 Photo-Array identification affidavit form. He also signed the label. Both forms shall now become a part of this file.

While at the hosp. the victim told your writer that Travis Powell of 46 Poultney was there. Your writer did also learn that Lisa McCullough of 221 Carl street was also there. Her phone is 891-8252

COE001545

File 91-145

Your writer then went to 46 Poultney. Here your writer did meet Elise Wilson and William Wilson Elise is the mother of Travis and William is his step father. There phone number is 837-0802. He was not home at this time. A card was left and a appointment was set up for eight tommorrow at 8:00PM.

Next your writer then to 221 Carl street in a attempt to interview uss McCullough. No one was at home. A check will be made tommorrow.

Y.O.W.B.K.A.C.A.

N.F.D.

Respect.

COE001546

P-1302

8-13-91
File 91-145

R.T.D.

C.O.H.

D. DIRS.

Sir:

In continuing the investigation
of the shooting of Torrano Jackson.
Your writer recv'd a call from radio
to contact the ~~staff~~ duty officer.
Your writer did contact the duty
officer at 2343 hours. Inspector David
Caruso informed ~~me~~ to your writer that
there was a man that wanted to turn
himself in for the shooting at
Bailey & Delavan. Inspector Caruso
also informed this writer that
the man would be turning himself
in to Channel Two and the Homicide
Squad.

Your writer proceeded to
Genesee and Bailey and arrived at
2358 hours at this time on the
Southwest corner was a reporter
and a camera man filming a black
male. The black male was doing
a interview on the camera. He
talked for about seven minutes.
The camerman was Jerry Gasser
and the reporter was Wanda Stark.

COB 000200

P-1302

After they were finished. Lt. O'Shei
assisted with placing Lamarr
Scott in the police car. He
was read his rights in the
police car. Card was timed and
dated and will remain a part
of this file.

The camera crew came to
the H.B.O. and ~~the~~ ~~belong~~ along
with Mister Lamarr Scott.
Lamarr Scott is 18 with a D.O.B
9-19-72 residing at 122 Montana
street. He was brought to the
H.B.O.

Det Massechis and Det
Di Pirro were requested to come
in for assistance. They
came into the H.B.O.

Det Di Pirro went with the
crew from Channel 2. Det Di Pirro
obtained a duplicate of the
video confession of Lamarr Scott.
See his report for further details.
This video tape was returned
and now shall remain a part
of the file.

COB 000201

APPENDIX 1682

P-1302

Det Maniscalco did take one sworn statement of one Leonard L Brown. See that statement for further details that statement shall now become a part of this file.

Your writer took one sworn statement from Lamarr Scott. See his sworn statement for further details. This statement shall become a part of this file.

Chief Donavan notified along with Assistant District Attorney Chris Belling A.D.A. Belling responded and arrived at the ABO office at 4:15 AM. He received the tape and read the statements.

Both bad boys let go see you in morning

COB 000202

Case 1:19-cv-01678-MAV-JJM    Document 167-5    Filed 12/15/23    Page 83 of 224
APPENDIX 1683

DOB/ 120770 RAC/ B SEX/ M
PR.NAM/ BROWN            LEONARD              DOB/120770 RAC/B SEX/M  PCN/04
    NAM/BROWN            LEONARD                       -NY-          ORA/E10
                                             CIT/BUFFALO      MAI/BLK      SMT/
ADR/260    OLYMPIC       BLD/MEDIUM          EYE/BRO          MAR/SINGLE       CPS
IGT/5 10   WGT/145       OCC/STUDENT
CTZ/Y      POB/BUFFALO NY             SOC/117566774   MUG/156084-E101 MNO/
IAZ/NO WARNING                        TO PRINT A SUMMARY OF LOCAL ARRESTS:
SID/5805050J    FBI/802662FA2         HIT UPPER FUNCTION & F1
                                      PR1/PRV ADR 200 BURGARD
NUMBER OF ARRESTS =    6              PR2/2011 BAILEY
  ALI/SHANNON LEONARD L               PR3/FPC PI0909C013 1313131513
                                      PR4/63 FAY ST.

File 91-145



COB 000249

BPD Comp. 0194

OZ PAGE 01 08212/21 S U M M A R Y O F A R R E S T S/BROWN LEONA
CHARGES                                    DISPOSITIONS

*01/15/87 ARR BUFFALO    CNO/87-011430
    BLTER 656
    JCN 104520BBY PCT 12
PL 140-25-2    FEL
PL 155-35      FEL

*04/02/87 ARR BUFFALO    CNO/87-073016
    MPS 4839 JCN11123304J
    ANDREWS DOUGLAS 16
PL 140-25-2    FEL
PL 155-30-1    FEL
PL 140-35      MISD

08/17/87 ARR BUFFALO    CNO/87-216626
    DJD 12643
    DILL/TPU  K-9
PL 140-25-2    FEL
PL 165-40      MISD

02/05/90 ARR BUFFALO    CNO/90-015846
    PR2260 WAR90030937
    GEORGE ROBB
PL 140-15-3    FEL

09/26/90 ARR BFLO    CNO/90-245936
    PR15843JCN13164851R
    KESSLER 16
PL 105-05      MISD
PL 205-30      MISD
PL 240-25-1    VIOL

10/23/90 ARR BFLO    CNO/90-306745
    PR20214JCN12270584J
    JORDAN NARC
PL 220-03      MISD
PL 220-50-2    MISD
PL 221-05      VIOL

[CONTINUE]

August 12th, 1991

City of Buffalo
Department of the Police

State of New York
County of Erie
City of Buffalo

Lamarr Scott age 18, D.O.B. 9-19-72 residing at 122 Montana street no phone
being duly sworn makes the following sworn statement in the Buffalo Police
Homicide Squad office. Statement taken by Detective Mark R. Stambach and
questions asked by Detective Mark R. Stambach and Typed also.

Q.  You have the right to remain silent do you understand?
A.  Yes.

Q.  Anything that you say can be used against you in a court of law do
    you undertsand?
A.  Yes.

Q.  You have the right to a attorney and have him present while you are
    being questioned do you understand?
A.  Yes.

Q.  If you cannot afford to hire a attorney one will be appointed to rep-
    resent you before any questioning, if you wish one. Do you understand?
A.  Yes.

Q.  Do you undertand these right I have given you?
A.  Yes.

Q.  Having these rights in mind do wish to talk with us now?
A.  Yes.

Q.  You were advised of your rights by me at Genesee and Bailey do you
    remember that?
A.  Yep.

Q.  Can you read and write?
A.  Yes.

Q.  What school did you go to?
A.  Buffalo Alternative, 12th grade.

Q.  The Buffalo Police Homicide Squad is investigating the shooting death
    of Mister Torrano Jackson who was shot to death at Bailey and Delavan
    at 130AM on 8-10-91. Can you tell me in your own words what you know
    about that Homicide and also the shooting of Aaron Jackson, Mario
    Jarmon, and John Sullivan?
A.  Yes, Well when the guys came back, they jumped out of a yellow dodge
    shadow and opened fire on me and my friends. I shot back in self defense
    yes. After that I ran down the street and I threw the gun. I went home.
    That was it.

Q.  Who shot and killed Torrano Jackson?
A.  I did.

Q.  What kind of a gun did you use?
A.  A TECH-NINE.

Q.  What caliber is that gun?
A.  I dont know.

Q.  Is it automatic?
A.  Yes.

Q.  Were did you get that gun?
A.  I bought it off the street.

Q.  When you did this shooting who were you with at the time of the
    shooting?
A.  Valentino Dixon, His brother Leonard, and his other brother TWON and
    Mario and that was it.

COB 000213

PAGE TWO OF STATEMENT OF MISTER LAMARR SCOTT.

Q. When you did the shooting what side of the street were you on?
A. I was on the right hand side of the street coming from Bailey.

Q. Were you on the side of the drug store owned by the Arabs?
A. Yes.

Q. Who did you shoot?
A. Torrano Jackson and far as I know I dont know who got shot.

Q. Why did you shot Torrano Jackson?
A. I shot him in self defense.

Q. Why did you shot him?
A. Because he came back and opened fire on us.

Q. What did he shot with?
A. A 38 a silver gun with a nickel plate.

Q. How many shots did you fire with the TECH-NINE?
A. I emptied the clip.

Q. What were you wearing that night?
A. A black jacket and a white T-shirt, checkered shorts, white NIKE sneakers and a white hat.

Q. Who was across the street that you know by name that saw you shot Torrano?
A. Valentino Dixon, his brother Leonard Brown, his other brother TWON. and Mario Jarmon. They were not across the street they was right next to me.

Q. Were you in a fight before this happened?
A. No.

Q. What way did you go after you did this shooting?
A. Down Delavan towrds Grider.

Q. Did you stay on the same side of the street?
A. Yes.

Q. Was that the side of the street that Mario lives on?
A. Yes.

Q. Did you and TINO go into Marios house to obtain any weapons before the shooting took place?
A. No.

Q. Was Mike Bland on the corner?
A. Yeah.

Q. When the shooting broke out did you see Mike Bland run away?
A. No.

Q. Was he there then?
A. I saw him before the shooting took place.

Q. Were did you throw the gun?
A. In a back yard.

Q. Was this on the same side of the street as Marios house?
A. Yes.

Q. Was it before or after Marios house?
A. Before.

Q. Did you tell Leonard Brown what you did with that gun?
A. No.

Q. Did you have a conversation with Leonard Brown about that gun?
A. Yes.

Q. What was that about?
A. He asked me what happened to the gun and I told him that I threw it. Afterwords he told me he had the gun in a safe place.

COB 000214

PAGE THREE OF STATEMENT OF MISTER LAMARR SCOTT.

Q. How long have you had this gun?
A. Two months.

Q. What was this all about?
A. A argument, threats, the guy Torrano Jackson put a gun to TWONS head and he said he was going to do something to him and that same night he kept on threatining us. After they threatened us they came back and thats when the shooting started.

Q. Do you know Valentino TINO Dixon?
A. Yes.

Q. Is he realated to you?
A. No.

Q. Why are you confessing tonight?
A. I dont want him to get any time for something that he did not do.

Q. Have there been any threats or promises made to you?
A. No.

Q. Have you talked with Valentino TINO Dixon about this since the shooting?
A. No.

Q. Did you shot Mario Jarmon?
A. Yes but I dont know.

Q. When the firing started was evryone in front of you?
A. No.

Q. Were was TINO?
A. About forty five feet to the side of me, to the sidewalk.

Q. Were did you stand when you opened up?
A. On the sidewalk.

Q. Did you ever walk into the street?
A. Yes.

Q. Were you shooting then?
A. Yes.

Q. As Torrano Jackson went down did you run up and put a couple more into him?
A. No.

Q. Did anyone else have a weapon at the time?
A. Torrano and me.

Q. Did Aaron Jackson have a weapon?
A. No.

Q. Did you see Arron with a weapon in his hand?
A. No.

Q. Did you see a man by the name of John Sullivan with a weapon in his hand?
A. No I dont know him.

Q. The only persons that had weapons in there hands were you and Torrano?
A. Yes.

Q. Did you shot up Delavan towards Grider?
A. No.

Q. Did you shot up Delavan towards Suffolk?
A. No.

Q. Did you shot across the street on Delavan towards Ferry?
A. Yes.

Q. Did you shot anyone in the back?
A. I dont know were I shot them I was just shooting.

COB 000215

PAGE FOUR OF STATEMENT OF MISTER LAMARR SCOTT.

Q. Did you confess on television tonight?
A. Yes.

Q. Why did you do that?
A. Because I did not want TINO to get any time because he did not do it.

Q. Will you take a lie detctor for us tommorrow?
A. Yes.

Q. Did you tell any one after the shooting that you did this shooting?
A. No.

Q. Did you go to a bar and brag about this shooting?
A. No.

Q. Did you talk with Leonard Brown about this shooting?
A. Yes.

Q. Did TINOS mother make you turn yourself in?
A. No.

Q. Is there anything else that you want to add in this statement that I have not asked that would help me in this investigtion?
A. Well not really but the reason I did this was self defense.

Q. I am now going to have you read this four page statement and ask you if it is OK?
A. Yeah its OK

Q. Will you now sign this statement?
A. Yes.

                                        SIGNED _____

                        WITNESSED _____


SWORN AND SUBSRIBED BEFORE ME THIS
AUGUST 12th, 1991.

Mark R. Stambach

COMMISSIONER OF DEEDS IN AND
FOR THE CITY OF BUFFALO. MY
COMMISSION EXPIRES ON 12-31-91

COB 000216

BPD Comp. 0199

APPENDIX 1689

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | DATE | 8/13/91 |
|----|----|----|----|----|
| FROM | Det. Mark R. Stambach | File 91-145 Torrano Jackson Homicide<br>Dictated by Det. Stambach | | |

ATTN:    James Rautenstrauch, Lieutenant

SIR:

Continuing the above investigation, your writer did notify ADA Chris Belling at 0300 hrs. this date. He was brought up to date about recent developments of this case.

ADA Belling told you writer he would respond to the Homicide office. He arrived and read both statements that were obtained. At that time, he read Lamar Scott's and Leonard Brown's statements. He then viewed a tape of a confession Lamar Scott made to Channel 2.

ADA Belling talked with Lamar Scott and a polygraph was set up for him. At this time ADA Belling requested that both Brown and Scott be let go to return to their homes.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,

*Mark R. Stambach*

MRS/les                                    Det. Mark R. Stambach

COE001565

P-1302    R T. D.                              ( ?·12·91
          C O. H                              File 91-145
                                              Toriano Jackson

Det MRS

Attn: James Rout

Sir

    I'm cont the invest. of
the Torrano Jackson case your
writer did notify A D A. Chris Belling
at 0300 AM. He was brought up to
date about recend developements
of this case.

    He told your writers that
he would respond to the HBO. He
arrived and read both statements.
At that time he read Lamarr Scotts
and Leonard Browns statement He
Then viewed a Tape of a confession
that Lamarr Scotl made to Channell 2.

    D. A. Belling talked with LaMarr
A polygraph was set up for him. At
this time D. A. Belling requested that
both Brown and Scotl be let go to return
to there homes.

      Y. O. W. B. K. A. o. A.

        Respct

        M R S

COE001548

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | | DATE 8/14/91 |
|---|---|---|---|---|
| FROM | Det. Raniero Masecchia Det. Sgt. Melvin Lobbett | File 91-145 Torrano Jackson Homicide Dictated by Det. Masecchia | | |

ATTN:  James Rautenstrauch, Lt.

SIR:

Above officers, assigned to car 271, during our tour of duty at approx. 2030 hrs. did meet Lamar Scott on the corner of Genesee/Goodyear.  There we spoke to Scott and asked if he would be willing to come in for the polygraph he requested.  A time was set up for 1100 hrs. on 8/15/91.  He stated he would be there.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,

Det. Raniero Masecchia

RM/les                                     Det. Sgt. Melvin Lobbett

COE001566

P-73    BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO | Richard T. Donovan, Chief
Homicide Section | SUBJECT | DATE |
| FROM | Det. Mark R. Stambach
Det. Robert M. Grabowski | File 91-145 Torrano Jackson
Homicide
Dictated by Det. Stambach | |

ATTN:    James Rautenstrauch, Lieutenant

SIR:

Continuing the above investigation, your writer received a phone call at
the Homicide office. A female asked your writer if she witnessed the
shooting at Bailey/Delavan, would she have to come in. She was told
yes. She would not identify herself.

She said Valentino was not the shooter. She claims she was with two
other girls.

She was asked by your writer if she was the girl from the red tracker,
and she said yes. She would think about it and call back later.

She did say she could look at pictures and make an identification of the
people that were there. She would not say if she could identify the
shooter.

Your office will be kept apprised of further developments on subsequent
P-73's of the subject calls back, otherwise, we will go out and call on
her at a later date.

Respectfully submitted,

Det. Mark R. Stambach

Det. Robert M. Grabowski

MRS/les

COE001567

P-1302

R T.D.
C.O.H.

R.M.C.
M.P.S.

Atn: James Raut.

Sir:

I'm cont. the investigation of
Torrans Jackson. Your writer received
a call at the HBO. A female asked
your writer if she witnessed the
shooting at Bailey and Delavan if she
would have to come in. She was told
yes and would not I.D. herself. She
said Valentino was not the shooter.
She claims she was with two other girls

Called 10/14/91

She was asked by your writer
if she was the girl from red TRACKER.
She said yes. She would think about
it and call back later. She did say
she could look at pictures and I.D.
the people that were there. She
would not say if she could I.D.
the shooter.

Y.O.W.B.K.A.N.O.
if they call back
otherwise we shall
go out to call on her
later

Respect.
MRS.
RMG.

COE001568

**DEPARTMENT OF
CENTRAL POLICE SERVICES
FORENSIC LABORATORY
ERIE COUNTY**

**ANALYSIS REPORT**

SUBMITTING AGENCY: Buffalo Police Department                16
-------------------------------------------------------------------

DEFENDANT(S):    Dixon,        Valentino


COMMENTS:


BPD Property No.: 179477          CASE NO.: ECU/LP#91-0853

DATE RECEIVED : 08/12/91          CD NO.:    221504

DATE ANALYZED : 08/12/91          INV. OFFICER 1.: H. Smardz

DATE OF REPORT: 08/15/91          INV. OFFICER 2.: R. Brown

-------------------------------------------------------------------
DESCRIPTION OF EVIDENCE:

Refer to the attached B.P.D. P-10A.

-------------------------------------------------------------------
RESULTS:

    The submitted H & R revolver is operable.  It was
    test fired using ammunition of laboratory supply.


                              Bert Pandolfino
                              FIREARMS EXAMINER

cjl
Attach.


COE001600

# EVIDENCE

**BUFFALO POLICE DEPT.** 1 / NUMBER

Date of Crime ___8/10/91___    P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim ___1.Torriano Jackson,BM,17(Deceased)___

**76336**

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4. John Sullivan,BM,17

Description of Evidehce & Location Found. ___copper jacketed bullet recovered on the___
street, aproxx.1157 E.Delevan - 9'4" N. of the S.curb 1157 E.Delevan and
32'16" E.of utility pole #1155 E.Delevan

Case No. ___ECU/LP#91-0853___    Collected By ___HS/ HS___    Date ___8/10/91___

# EVIDENCE

**BUFFALO POLICE DEPT.** 2 / NUMBER

Date of Crime ___8/10/91___    P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim ___1.Torriano Jackson, BM,17)Deceased)___

Description of Evidence & Location Found. ___copper jacketed bullet recvd.on the st.___
approx. 1157 E.Delevan - 16'5" N.of S.curb 1157 E.Delevan and 31'10"
E.of utility pole #1155 E.Delevan

Case No. ___ECU/LP#91-0853___    Collected By ___HS/ HS___    Date ___8/10/91___

# EVIDENCE

**BUFFALO POLICE DEPT.** 3 / NUMBER

Date of Crime ___8/10/91___    P·112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim ___1.Torriano Jackson,BM,17(Deceased)___

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4. John Sullivan,BM,17

Description of Evidence & Location Found. ___copper jacketed bullet recvd.on the street___
approx.1157 E.Delevan - 11'1" N.of S.curb 1157 E.Delevan & 34'3" E.of the
utility pole #1155 E.Delevan

COE001601

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | DATE 8/15/91 |
|---|---|---|---|
| FROM | Det. Raniero Masecchia<br>Det. Sgt. Melvin Lobbett | File 91-145 Torrano Jackson<br>Homicide<br>Dictated by Det. Masecchia | |

ATTN:  James Rautenstrauch, Lt.

SIR:

Continuing the above investigation, refer to P-73 dated 8/14/91 this writer was informed by Polygraph Examiner Thomas E. Armitage and they day crew Det. Lonergan, that Lamar Scott failed to show up or call in regards to the exam that was set up for him.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,

Det. Raniero Masecchia


RM/les                               Det. Sgt. Melvin Lobbett

COB 000245

DISTRICT ATTORNEY

JUN 2  S 41 AM '92

**DEPARTMENT OF
CENTRAL POLICE SERVICES
FORENSIC LABORATORY
ERIE COUNTY**

**ANALYSIS REPORT**

SUBMITTING AGENCY:  Buffalo Police Department          16
----------------------------------------------------------------

DEFENDANT(S):    Dixon,        Valentino


COMMENTS:


BPD Property No.:  179477        CASE NO.:  ECU/LP#91-0853

DATE RECEIVED :  08/12/91        CD NO.:    221504

DATE ANALYZED :  08/12/91        INV. OFFICER 1.:  H. Smardz

DATE OF REPORT:  08/15/91        INV. OFFICER 2.:  R. Brown

----------------------------------------------------------------
DESCRIPTION OF EVIDENCE:

Refer to the attached B.P.D. P-10A.

----------------------------------------------------------------
RESULTS:

    The submitted H & R revolver is operable.  It was
    test fired using ammunition of laboratory supply.


Bert Pandolfino
FIREARMS EXAMINER

cjl
Attach.

**COE001642**

**FORENSIC LABORATORY
ANALYSIS REPORT**

LAB. NO. **76336**

CASE NO. _____

DATE _____

*S. Pandolfino*

**RESULTS:**

8-12-91
0915 hrs

Rec'd from BPD ECU fr H. Sinaide the following
sealed + unsealed item wa's as indicated
Items 1 thru 6 - 8 - 9 - 10 - 13 thru 21 } sealed.

Items 11 - 12 - 22 rec'd partially sealed or
unsealed.

item 7 not rec'd at this time.

All rec'd packages marked for F.P.

8-12-91    Rec'd items 6 - 8 +3 - 14 - 15 - 21 - 11 - 12 - 22 turned over
to P. Hamocki

8-12-91    Rec'd from BPD Admin office BPD prop # 179477    Item # 7

Envelope Containing — one Revolver - H+R , 32 cal.
Serial # 7747

and three sealed Bays containg ammunit.
components to be descired upon analysis

Rec'd bays + revolver marked for F.P.

(SP)

note sealed by ā fired .32 cal casing is
attack attached to revolver

Revolver marked on cylinder & frame

Item 7A - fired .32 cal casing - Bay opened - casing
marked for F.P. - lab# + my initials
R-P headstamp .32 S+w cal.
F B ā hemisph. shot char. present R.F.P + BF

COE001643

APPENDIX 1699

E 536 ½" handly (w)                    L.P. headstamp

8-12-91
con't

Item 7B sealed bag containing 27 fired Immley
cal. casings. - Bag opened and.
casings marked for F.P. - casing coated c̄
fingerprint powder - obscured characteristics, powder
cleaned off of casings  Flat imp hemisph ind ch
Susp EXT 3ᵃᵐ + Susp EXc ~8³⁰        BF + BTP.

Item 7C sealed bag - opened - contents as
One fired bullet. - marked for FP
Diam  0.325" 0.365'  Sl. out of round.
Cal 38/9mm  Jack RN design = exposed lead
Base.

Rif  6 L+G imp c̄  R+ twist
Liw 0.07"-0.075"
G.W 0.100⁴                    lnd
char
present.

Wt. 114.4 grains

Pre FF exam of revolver
- Trigger does not automatically rebound
forward. It must be manually returned
forward after each pull ie during
of the BP
Test fired in the lab using a .32 S+W cal
cart z lab supply - optrable
components marked 1 cm F.P.
COE001644

BPD Comp. 0210

FORENSIC LABORATORY
ANALYSIS REPORT

LAB. NO. _76336_

CASE NO. _____

DATE _____

*E. Pandolfino*

RESULTS: 8-14-91

Sealed BPD envelope —opened
contents as follows.

Items 1-3-10-16-17-18-19-20
fired bullets.

Items 4-9 lead fragment

item 2 fired bullet jackets

item 5 fired 22 cal. casing

all items marked for EA.

Item 5—

one fired 22 l/lr cal casing
(U) [headstamp]  JFN hemisph. (shallow
Ind char present.
— Flattened mouth of casing
— rim of casing damaged — exhibits pit-like
marks EXT and/or EJR NOT discern.

(over)

DCPS-L-2A (Rev 3-91) ECCP

COE001645

APPENDIX 1701

336    S. Randolph

8-14-91   BPD homicide bureau Natified of
the results of analysis & they were
informed that rif char. of submitted bullets
included a few common 9mm cal firearms; also
that the ~~serial~~ char. of the submitted components
were similar & consistent with those of rifles
mfd by Feather industries .

COE001646

P-1302

8-20-91

Torrano Jackson
91-145
Src PS 0700-1500

(DICTATED
4505)

Sir

We interviewed Mario Dillard Jarmon, age 19 DOB 12-23-71 of 1122 Delavan Ave, tele # 896-5817 Shooting Victim from 8-10-91. He reports he suffered 3 Gun Shot Wounds on that Date, Stomach, Rt. Ankle and Graze of Chest. He is Presently in Room 1005 at the ECMC Hospital.

Jarmon States that He was at the Arab Store on Bailey Ave Near Delavan on 8-10-91 with TWAN SHANNON and Leonard Brown. He sees Aaron Jackson and Travis Powell pull up in a yellow GO. TWAN asked Aaron why he pulled a Gun on him 2 weeks ago. Aaron got all hyper and tolds him to Wait Right Here and they drive away.

He States they came back about a hour later with Tori Jackson who had a Gun and Aaron + Tori. Tori has a Silver Gun and He tells Mario that He has a Bullet for him. Tori and Aaron come at Mario & Tori Shoots Mario Doesnt Know how Many times. He States he fights with Tori and Aaron after he is shot.

COE001569

As they are fighting, Mario States he sees Lamarr Scott running toward them and his is Shooting a Gun. Tino Dixon is behind Lamarr as he is Shooting. Mario States he Runs away and lays Down and Calls for help.

Mario Describes the Gun that Lamarr is Shooting as being a Tech 9 that Lamarr and Tino Dixon Brought to his house and put in his Back Hallway. He States Tino & Lamarr Run to his House and got the Gun while he is Buying with the Jacksons and after he is Shot.

Mario reports that Leonard Brown is his Best friend and Tino Dixon is Leonard Brown's 1/2 Brother.

Your Officer will be Kept.

Resp Ref
R-B.

COE001570

**APPENDIX 1704**

P-73  **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | | DATE | 8/20/91 |
|---|---|---|---|---|---|
| FROM | Det. Robert M. Grabowski Det. Daniel R. DiPirro | File 91-145 Torrano Jackson Dictated by Det. Grabowski 0700-1500 hrs. tour of duty | | | |

ATTN:   James Rautenstrauch, Lt.

SIR:

Above officers interviewed Mario Dillard Jarmon, age 19 dob 12/23/71 of 1122 Delavan Ave., phone 896-5817, shooting victim from 8/10/91.

He reports he suffered three gunshot wounds on that date in the stomach, right ankle and a graze of the chest. He is presently in Rm. 1005 at E.C.M.C.

Jarmon states he was at the arab store on Bailey near Delavan on 8/10/91 with Twan Shannon and Leonard Brown. He saw Aaron Jackson and Travis Powell pull up in a yellow Geo. Twan askes Aaron why he pulled a gun on him two weeks ago. Aaron got all hyper and tells them to wait right here and they drive away.

He states they came back about an hour later with Torri Jackson, who had a gun and Aaron Jackson, who had a knife. Torri has a silver gun and he tells Jarmon that he has a bullet for him. Torri and Aaron come at Jarmon and Torri shoots Jarmon. He does not know how many times. He states he fought with TINO and Aaron after he was shot.

As they are fighting Jarmon states he saw Lamarr Scott running toward them and he is shooting a gun. TINO Dixon is behind Lamarr, as Lamarr is shooting. Jamar stated he ran away and laid down and called for help.

Jamar describes the gun that Lamarr is shooting as being a Tech 9, that Lamarr and TINO Dixon brought to his house earlier that night and put in his back hallway. He states TINO and Lamarr ran to his house and got the gun while he was beefing with the Jacksons and after he was shot.

Jamar states that Leonard Brown is his best friend and TINO Dixon is Leonard Brown's half brother.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,


Det. Robert M. Grabowski


RMG/les                                       Det. Daniel R. DiPirro


COE001571

APPENDIX 1732

# BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | | DATE 8/21/91 |
|---|---|---|---|---|
| FROM | Det. Robert M. Grabowski Det. Daniel R. DiPirro | File 91-145 Torrano Jackson Dictated by Det. Grabowski 0700-1500 hrs. tour of duty | | |

ATTN:  James Rautenstrauch, Lt.

SIR:

Above officers were instructed to go to 19 Thatcher St. and speak with Mrs. Jackson regarding a shot fired at the house.

Mrs. Jackson reports she found a bullet hole in the front, north side glass patio doors.  She reports that Pct. 16 just left after taking a report and picking up a bullet on the floor within the house.  She reports this shot at the house had to happen after 0100 hrs. this date when the family retired for the night.  Mrs. Jackson was waiting for a call from the Duty Officer in this matter.

Officers then went to E.C.M.C., Rm. 869, and interviewed Aaron Leon Jackson, age 20 dob 1/26/71 of 19 Thatcher St.  Aaron is recuperating from a gunshout wound to the abdomen from 8/10/91.

Aaron reports he was in a car with Travis  Powell at Bailey/Delavan on 8/10/91 and had an altercation with Mario Jarmon, who was with two other males.  He states Mario was talking about someone pulling a gun on a cousin, something Aaron states he did not know about.

He described Mario's companion as one being dark skinned with a slope haircut and the other as being chubby.

Aaron states he and Travis left the area and went to his house and got Torrano, nickname Tori, Jackson, his younger brother.  They returned to the area of Bailey/Delavan at about 0100 hrs. and saw Mario again with the same two friends.  Aaron states he got out of the car and asked Mario if he had a problem and Torrino and Travis got out of the car also.

Aaron states Mario put up his hands to fight and he, Aaron, hit Mario and Tori did too.  Prior to the fighting and manuvering in the street, one of Mario's companions left the area on a bicycle going west on Delavan.  He describes the biker as having a short haircut, taller than himself and wearing dark clothes.

He states while they were throwing punches he heard shots, felt a tingling, ran a short distance and fell to the ground.  He saw Tori lying in the street.  Tori asked Aaron to help him and Aaron states he could not move.

Aaron states he saw Travis behind the guy who was doing the shooting.

Cont'd.

# BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

| TO | SUBJECT Page 2 | DATE 8/21/91 |
|---|---|---|
| FROM Det. Robert M. Grabowski Det. Daniel R. DiPirro | File 91-145 Torrano Jackson Dictated by Det. Grabowski 0700-1500 hrs. tour of duty | |

Travis picked up Tori and carried him over his shoulder to LOUIE'S HOT DOG STAND.

He states the two guys who were with Mario when he first saw Mario at Bailey/Delavan were still with Mario when they got into the fight. He states he does not know a Lamarr Scott and a Valentino Dixon. He further states he did not know Mario Jarmon at the time of the fight until he saw his name in the newspapers.

He further states Travis Powell did not go to Tori's wake and has not visited him at the hospital. He also states he saw a Michael Bland, who lives in his neighborhood, at the shooting scene.

Your office will be kept apprised of further developments on subsequent P-73's.

Respectfully submitted,

Det. Robert M. Grabowski

RMG/les

Det. Daniel R. DiPirro

COE001573

APPENDIX 1707

P-77B-1

## BUFFALO POLICE DEPARTMENT
## EVIDENCE LATENT FINGERPRINT REPORT

LP#: 91-0895

CD#: 233885        CRIME: RECK END

COMPLT: JACKSON, LAURA        SCENE Y/N: Y

ADDRESS OF CRIME: 19 THATCHER ST.

PHONE#:

TIME/DATE OF OCC: 08/21/91

INV OFFICER: LOBBETT

UNIT OR PRCT: HOMICIDE

EVIDENCE COLLECTED: Y

LATENTS DEVELOPED: NO

DATE OF REPORT: 08/21/91

MSG TIME/DATE: 1033HRS 08/21/91

DATE PROCS: 08/21/91

TIME: 1150HRS

EXAM OFFICER: RIMBECK/RICH

DEFD:

PHOTOS TAKEN: Y

BY: DISOMONE

SUB TO LAB: Y  LAB #76495

ITEMS PROCESSED: SPENT BULLET, LOCATED INSIDE 19 THATCHER ST. LIVING ROOM 10 1/2"E. OF W. SLIDING DOORS, AND 88" N OF SOUTH WALL.

NAME                    SUSPECTS COMPARED
                             MUG#

                                                    RESULTS

REMARKS: EVIDENCE COLLECTED, AND FOWARDED TO CPS LAB., ASSIGNED LAB NUMBER
NUMBER #76495

BUFFALO POLICE DEPARTMENT
EVIDENCE UNIT

DATE 8/31/91  LP # 91-0895

NAME _____

UNIT ID# :

FORWARDED TO: LOBBETT

DATE: 08/21/91

COE001663

BPD Comp. 0218

# EVIDENCE

**BUFFALO POLICE DEPT.** #01
NUMBER

Date of Crime __08/21/91__    P. 112

Type of Crime __Reckless endangerment__

Location _____19 Thatcher_____

Victim _____Laura Jackson_____

Description of Evidence & Location Found. __Spent bullet, located 10 ½"__
__E. of W. sliding door.  and 88" N of S wall on the floor__

Case No. __91-0895__    Collected By __DR/JR__    Date __08/21/91__

COB 000260

**APPENDIX 1709**

# DEPARTMENT OF
# CENTRAL POLICE SERVICES

°REQUEST FOR FORENSIC
LABORATORY EXAMINATION

**FORENSIC LABORATORY**
**ERIE COUNTY**

CD#233885

CASE NO. ___ LP#91-0895 ___

DATE ___ 08/21/91 ___

---

INVESTIGATING
OFFICER(S)   Rich/Rimbeck          SHIELD
NO.   195      AGENCY    BPD       BUR.
                                   ~~HBL~~   ECU

DEFENDANT(S):

---

PLEASE CHECK:

( )SALE OF CONTROLLED SUBSTANCES          ( )POSSESSION ONLY OF CONTROLLED SUBSTANCES

CHARGES:   120.25 P1. Reck Ind.    TIME & DATE OF OCCURRENCE OR ARREST:

---

DESCRIPTION OF EVIDENCE:                    WHERE OBTAINED:                          IC
                                                                                      MARKS
Bullet   *Item #01 SP fel*          19 Thatcher St. (living room).

---

COMPLAINANT:                          ADDRESS:

Jackson, Laura                        19 Thatcher St.

REMARKS/TYPE OF EXAMINATION REQUESTED:

BULLET, CHECK BALLISTICS

---

(THIS SPACE FOR LABORATORY USE ONLY)          **RECEIVED**

*Record Sealed + Logged /SP*                   AUG 2 1 1991   *"Rich"*

76495                                          FROM _____
                                               TIME _____

LABORATORY NO.                                 RECEIVED BY _____

DCPS-L-1 [Rev. 1/81] ECCP                                    COE001664

APPENDIX 1710

# EVIDENCE

**BUFFALO POLICE DEPT.** #01 / NUMBER

| | |
|---|---|
| Date of Crime | 08/21/91          P-112 |
| Type of Crime | Reckless endangerment |
| Location | 19 Thatcher |
| Victim | Laura Jackson |

Description of Evidence & Location Found. Spent bullet. located 10 $\frac{1}{2}$"

E. of W. sliding door, and 88" N of S wall on the floor.

Case No. 91-0895          Collected By DR/JR          Date 08/21/91

COE001665

P-1302

DICTATED 4565

TORRANO JACKSON
#91-145

Sir                                    Dict Rept 0700-1500

We were instructed to go to 19 Thatcher St and Speak with Mrs Jackson regarding a Shot fired at the House. Mrs. Jackson Reports She found a Bullet Hole in the front N Side Glass Patio Doors. She reports that Precinct #16 had Just left after taking a Report and Picking up a Bullet on the floor within the House. She reports that this Shot at the House had to have happened after 0100 hours this date when the family Retired for the Night. Mrs. Jackson was Waiting for a Call from the Duty Officer in this matter.

We then went to the ECMC, Run 869, and Interviewed Aaron Leon Jackson age 20 DOB 1-26-71 of 19 Thatcher St. Aaron is Recuperating from a Gun Shot Wound to the Abdomen from 8-10-91.

Aaron reports that he was in a Car with Travis Powell ~~and~~ at Baily and Delavan and had a altercation with Mario Jarman, who was 2 other Males. He States Mario Was talking about pulling a Gun on a Cousin, something Aaron Stated He didn't Know about.

COE001574

P-1302

He describes Mario's Companions as one being Dark Skin w/ a slope Haircut and the other as being Chubby.

Aaron states they left that Area and went home and got TORRANO Jackson his younger Brother. They returned to the Area of Bailey & Delavan and saw Mario again with the same two friends. Aaron states that he got out of the Car and asked Mario if he Had a Problem and TORRANO & TRAVIS got out of the Car too.

*At about 0100 Hour*

Aaron States Mario put his hands up to fight and He, aaron, Pices to Mario and TORI, Did too. *as they* the they fighting and Maneuvering in the Street, one of Mario's Companions leave the area on a Bicycle going *state* West on Delavan. He Describes the Biker Short Hair Cut — *about* Taller then he, aaron, wearing Dark Clothes.

He States while they were throwing Punches, He Hears Shots, feels a tingling, Runs a short Distance and Sees TORI laying in the Street, Tori asks Me to help him and He says He Cant Move. Aaron States he Sees Travis behind the guy who is Doing the Shooting. Travis picks up TORI and Carrys Him over his shoulder to Louies Hot Dog Stand.

COE001575

BPD Comp. 0223

He states the two guys who were
Mario when he first saw Mario
at Bailey & Delavan were still with
Mario when they get in the fight.
He states he doesn't know a Lamarr
Scott and Valinto Dixon. He further
states he didn't know Mario Garman
and saw his name in the papers.

He further states Travis Powell
did not go to Tori Wade and
was not visiting him at the
Hospital. He also states he saw
a Michael Bland who lives in his
neighborhood    Your office will be kept
at
the
shortly
scene.

Resp. thru
R. J.

COE001576

AUG-12-1991  12:14  FROM  ECMC  ICAL LIBRARY  TO  STAFF BUILDERS CERT  P.07

**Staff Builders - Certified Home Health Ag** ECMC  AR# 2204082
71 W Huron St., Buffalo, NY 14202  DOC 082391 SOC 07/23/91
425 F de Park Blvd., Niagra Falls, NY 14305  A#7 EFFECTIVE DATE

## PATIENT'S REFERRAL and TREATMENT PLAN

REQUEST FOR:  ☒ INITIAL PLAN  ☐ CONFIRMATION OF PHONED ORDERS  ☐ 60 DAY REVIEW

| NAME OF PATIENT | LAST Jarman | FIRST Mario | MID. INIT. | BIRTHDATE 12/23/71 | SEX M |
|---|---|---|---|---|---|

ADDRESS 72 E Delavan Ave 14215  PHONE NUMBER 896-6817
CHANGE ADDRESS IF DIFFERENT THAN PATIENT'S HOME ADDRESS

NAME AND ADDRESS OF RESPONSIBLE PERSON  PHONE NUMBER  # PAT E.
Mr Mrs Jarman parents  859 true

NAME AND PHONE OF M.D. TO RENDER CARE
Dr LaDuca MD attending, J. O'Brien MD chief

SNF  HOSPITAL ADMISSION DATE 08/10/91  DISCHARGE
E   Unit 1024  SNF ADMISSION DATE

DIAGNOSIS PRIMARY: Multiple Gunshot wound ; Resp Distress
ALL OTHER DIAGNOSIS: & intra abd injuries

SURGERY & DATES: Bil chest tubes to thoracostomy 8/10 EXPL

PERTINENT MEDICAL HISTORY, ACTIVITIES, LIMITATIONS, AND ALLERGIES: NKDA

THERAPEUTIC GOALS  ☐ RETAIN FUNCTIONAL INDEPENDENCE IN ADL  ☐ PROVIDE PALLIATIVE SUPPORTIVE CARE IN THE TERMINAL STAGES OF ILLNESS
☐ CURE OF DISEASE AND PREVENT COMPLICATIONS
☒ PROMOTE WOUND HEALING AND PREVENT COMPLICATIONS  ☐ PREVENT PLACEMENT  ☐ OTHER (SPECIFY)

DIET: Regular  |  PROGNOSIS good  |  REHAB POTENTIAL: good

RECOMMENDED SERVICES: ☒ NURSING  ☐ P.C. AIDE ☐ PHYSICAL THERAPY ☐ SPEECH THERAPY ☐ OTHER

MEDICATIONS (DOSE & FREQ.) Tylen  Codiene TPO

N S P Y S I C I A N: DSD to chest tube sites ® side + butt
P af 8am please teach family this + she
complications  EST. LENGTH OF SERVICE

HOME SITUATION/REQUESTED - INCLUDE FREQUENCY:
TEACHING
ENEMY

PULSE RESP  WEIGHT  SPEECH NORM IMP  HEARING NORM IMP  VISION NORM IMP  BLIND  INDEP

ELIMINATION INDEP. ASSIST. INCONT. COLOST.  URINARY DRAINAGE SYSTEM DATE LAST CHANGE

A S S E S S M E N T: SOCIAL DATA, ETC. Pt is stating to teach pt...

THER.  DESTED

BPD Comp. 0225

DEPARTMENT OF
CENTRAL POLICE SERVICES
FORENSIC LABORATORY
ERIE COUNTY

**ANALYSIS REPORT**

SUBMITTING AGENCY : Buffalo Police Department          JUN 2           '92
                                                                                           ECU

---

DEFENDANT:

          Dixon,           Valentino

COMMENTS:

LAB. NO.: 76336                    CASE NO.:  Hom. 91-145

DATE RECEIVED  : 08/12/91          CD NO.: N/A

DATE ANALYZED  : 08/24/91          INV. OFFICER 1. : H. Smardz

DATE OF REPORT : 08/29/91          INV. OFFICER 2. :

---

DESCRIPTION OF EVIDENCE:

    Twenty-seven 9mm fired cartridge cases of Remington make.
    Ten fired bullets.
    Two lead fragments.
    One .22 L/LR fired cartridge case of Remington make.

---

RESULTS:

  REFER TO ATTACHED RESULT REPORT

COE001628

FORENSIC RESULTS FOR LAB NO. 76336                DATE : 08/29/91
*********************************************************************

Report No. 2

The submitted fired bullets are of the 9mm caliber class and of
jacketed round nose design.  They exhibit rifling characteristics
of six (6) land and groove impressions with a right twist.  They
exhibit individual characteristics which would be of value for
comparison versus suspect firearms.

The twenty-seven submitted fired 9mm cartridge cases were fired
in the same firearm.

Numerous makes and models of autoloading firearms exhibits consistent
class characteristics.  These include Feather Industries carbines.

The two submitted lead fragments (Items #4 and #9) are badly
damaged.  They are consistent with being the cores of jacketed
bullets.


cc:  BPD Homicide

                                Michael B. Dujanovich
                                ANALYST

     bjw

COE001629

APPENDIX 1717

# EVIDENCE

**BUFFALO POLICE DEPT.** $\underline{1}$ / NUMBER

Date of Crime 8/10/91    P-112
Type of Crime Homicide/Shootings
Location Bailey & E.Delevan
Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4. John Sullivan,BM,17

Description of Evidence & Location Found. copper jacketed bullet recovered on the street, approx.1157 E.Delevan - 9'4" N. of the S.curb 1157 E.Delevan and 32'16" E.of utility pole #1155 E.Delevan

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

# EVIDENCE

**BUFFALO POLICE DEPT.** $\underline{2}$ / NUMBER

Date of Crime 8/10/91    P-112
Type of Crime Homicide/Shootings
Location Bailey & E.Delevan
Victim 1.Torriano Jackson,BM,17)Deceased)

Description of Evidence & Location Found. copper jacketed bullet recvd.on the st. approx. 1157 E.Delevan - 16'5" N.of S.curb 1157 E.Delevan and 31'10" E.of utility pole #1155 E.Delevan

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

# EVIDENCE

**BUFFALO POLICE DEPT.** $\underline{3}$ / NUMBER

Date of Crime 8/10/91    P-112
Type of Crime Homicide/Shootings
Location Bailey & E.Delevan
Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4. John Sullivan,BM,17

Description of Evidence & Location Found. copper jacketed bullet recvd.on the street approx.1157 E.Delevan - 11'1" N.of S.curb 1157 E.Delevan & 34'3" E.of the utility pole #1155 E.Delevan

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

CQE001630

**APPENDIX 1718**

# EVIDENCE

## BUFFALO POLICE DEPT. **4** ___NUMBER___

| | |
|---|---|
| Date of Crime | 8/10/91    P-112 |
| Type of Crime | Homicide/Shootings |
| Location | Bailey & E.Delevan |
| Victim | 1. Torriano Jackson,BM,17(Deceased) |

*(handwritten, right margin:)* Badly d / But cons / w/being a / of d. . .

2. Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. suspected leed slug recvd.on the street approx.1157 E.Delevan - 11'9" N.of S.curb 1157 E.Delevan & 34'4" E.of the utility pole #1155 E.Delevan

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

# EVIDENCE

## BUFFALO POLICE DEPT. **5** ___NUMBER___

| | |
|---|---|
| Date of Crime | 8/10/91    P-112 |
| Type of Crime | Homicide/Shootings |
| Location | Bailey & E.Delevan |
| Victim | 1. Torriano Jackson,BM,17(Deceased) |

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. spent brass .22 cal. casing (U) recvd.on the asphalt of the parking lot (Louie's Red Hots) SW corner of Bailey and E.Delevan - 14'2" S.of the S.curb approx. 1157 E.Delevan & 4'8" E.of the utility pole #1155 E.Delevan

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

# EVIDENCE

## BUFFALO POLICE DEPT. **6** ___NUMBER___

| | |
|---|---|
| Date of Crime | 8/10/91    P-112 |
| Type of Crime | Homicide/Shootings |
| Location | Bailey & E.Delevan |
| Victim | 1.Torriano Jackson,BM,17(Deceased) |

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. sample of wet red stain (susp.blood) recvd.on the street (approx.1157 E.Delevan)- 9'4" N.of the S.curb 1157 E.Delevan & 32'16" E.of the utility pole #1155 E.delevan

Case No. ECU/LP#91-0853    Collected By HS/ HS    Date 8/10/91

COE001631

**APPENDIX 1719**

## EVIDENCE

**BUFFALO POLICE DEPT.** 7 / NUMBER

Date of Crime _8/10/91_                P·112

Type of Crime _Homicide/Shootings_

Location _Bailey & E.Delevan_

Victim _1. Torriano Jackson,BM,17(Deceased)_

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.Johnsullivan,BM,17

Description of Evidence & Location Found (A) .32 cal. 5 shot revolver,silver colored make UNKN. break front, ser.#747 w/2"bbl containing scent .32 cal.casing (B.) Twenty-Seven (27) spent 9mm casings (brass) C.) one (1) copper jacketed bullet - items received at the scene from PO Ra-Chelle Brown,Prct.#16

8/10/91 - 0225 hrs

Case No. _ECU/LP#91-0853_      Collected By _HS/ HS_      Date _8/10/91_

*(handwritten right margin:)* all 27-9mm casings were fired from the same firearm.

## EVIDENCE

**BUFFALO POLICE DEPT.** 8 / NUMBER

Date of Crime _8/10/91_                P·112

Type of Crime _Homicide/Shootings_

Location _Bailey & E.Delevan_

Victim _1.Torriano Jackson,BM,17(Deceased)_

2.Mario Jarmon,BM,19  3. Aaron Jackson,BM,20  4. John Sullivan,BM,17

Description of Evidence & Location Found. sample of dry red stain (susp.blood) recvd off the seat portion of the frnt.pass.seat '90 Chev.2dr.yellow,NY Plt. ECF-131,in the parking lot of Louie's Red Hots, SW corner of Bailey and E.Delevan  (2484 Bailey)

Case No. _ECU/LP#91-0853_      Collected By _HS/ HS_      Date _8/10/91_

## EVIDENCE

**BUFFALO POLICE DEPT.** 9 / NUMBER

Date of Crime _8/10/91_                P·112

Type of Crime _Homicide/Shootings_

Location _Bailey & E.Delevan_

Victim _1.Torriano Jackson,BM,17(Deceased)_

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. lead slug recvd.on the top cellar stair of the cellar stairway,NW corner of 2484 Bailey Ave (Louie's Red Hots) 13" E.of the W.wall & 8" N.of the front edge of the top stair

Case No. _ECU/LP#91-0853_      Collected By _HS/ HS_      Date _8/10/91_

*(handwritten right margin:)* Badly damaged But consistent w/being cores of jacketed bullet.

COE001632

**APPENDIX 1720**

# *EVIDENCE*

**BUFFALO POLICE DEPT.** 10 NUMBER

Date of Crime _8/10/91_____ P·112

Type of Crime __Homicide/Shootings__

Location __Bailey & E.Delevan__

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. copper jacketed bullet recvd on the 5th steir from the top - on the stairway,NW corner of 2484 Bailey (Louie's Red Hots) - 10" W.of the E.wall & 5" N.of the front edge of the steir

Case No. __ECU/LP#91-0853__    Collected By HS/ HS    Date 8/10/91

---

# *EVIDENCE* ✓

**BUFFALO POLICE DEPT.** 11 NUMBER

Date of Crime __8/10/91__ P·112

Type of Crime __Homicide/Shootings__

Location __Bailey/E.Delevan__

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. clothes of Victim Torriano Jackson,BM,17 received from RN Barb Badgley,ECMC/ER

(A) 1 pr.Wht.Hi-Top sneakers, wht/orange "NIKE" Force 9½ (B) blue jeans "Bugle Boy" 34M w/blk.belt (C) teal briefs "Hanes" M-32/34 (D) grey hood- ed sweatshirt "Gears" XL w/Univ.Bflo.logo (E) grey T-shirt "Trend-Ultra" size L w/America's Cup logo . Items were cut by med.personell and cont- ained WRS

Case No. __ECU/LP#91-0853__    Collected By HS/ HS    Date 0420 hrs 8/10/91

---

# *EVIDENCE* ✓

**BUFFALO POLICE DEPT.** 12 NUMBER

Date of Crime _8/10/91_ P·112

Type of Crime __Homicide/Shootings__

Location __Bailey & E.Delevan__

Victim 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. Clothes of Victim:Mario Jarmon,BM,19 received from RN Terena Licht,ECMC/ER

(A) 1 pr.sneakers wht.Hi-Top,NIKE"Quantum Force,10½ w/sox (B) wht.print shorts "Ocean Pacific" (C) Kelly grn.T-shirt "Russell Athletic" M-38/40 W/"Hunt- ington Phys.Ed" logo (D) Blk.sweatshirt (E) jeans, lgt.blue "Levi Strauss" 38/30 - Items were cut by medical personell and contained Wet Red Stains (F) also gold nugget earring & key ring w/3 keys & ID tag"EAS"

Case No. __ECU/LP#91-0853__    Collected By HS/ HS    Date 0425 hrs 8/10/91

COE001633

**APPENDIX 1721**

# EVIDENCE

**BUFFALO POLICE DEPT.** 13 / NUMBER

Date of Crime ___8/10/91___ **P-112**

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim ___1.Torriano Jackson,BM,(Deceased)___

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. **Clothes of victim Aaron Jackson,BM,20**
received from RN Bill Frieder,ECMC/ER,0425 hrs,8/10/91

(A)1 pr. blue sneakers "NIKE" Flight size 9, w/wht ankle sox (B) 1 pr grey
micro briefs "Large" (C) blk sweatpants "Russell Athletic" XL - items
contained WRS (Wet Red Stains), and were cut by med.personell

Case No. ___ECU/LP#91-0853___    Collected By ___HS/HS___    Date ___8/10/91___

# EVIDENCE

**BUFFALO POLICE DEPT.** 14 / NUMBER

Date of Crime ___8/10/91___ **P-112**

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim ___1.Torriano Jackson,BM,17(Deceased)___

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. **Clothes of Victim:John Sullivan,BM,17**
received from John Sullivan, 0630 hrs.8/10/91 at Sister's Hosp.ER

(A.) 1 pr.Royal Blue shorts w/WRS "Champion" XL
(B.) 1 pr.blue print shorts w/wrs "Pure Sweat"

Case No. ___ECU/LP#91-0853___    Collected By ___HS/HS___    Date ___8/10/91___

# EVIDENCE

**BUFFALO POLICE DEPT.** 15 / NUMBER

Date of Crime ___8/10/91___ **P-112**

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim ___1.Torriano Jackson,BM,17(Deceased)___

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. **sample of head hair from Hom.Victim:**
Torriano Jackson,BM,17 - recvd.1000 hrs,08/10/91 at the ECMC Morgue

Case No. ___ECU/LP#91-0853___    Collected By ___HS/HS___    Date ___8/10/91___

COE001634

BPD Comp. 0232

APPENDIX 1722

# *EVIDENCE*

**BUFFALO POLICE DEPT.** <u>16</u>
NUMBER

Date of Crime _____ 8/10/91 _____ **P-112**

Type of Crime _____ Homicide/Shootings _____

Location _____ Bailey & E.Delevan _____

Victim _ 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20   4.John Sullivan,BM,17

Description of Evidence & Location Found _ copper jacketed bullet received from ME
Dr.Loghmanee, 1105 hrs,8/10/91 at Post of Hom.Victim:Torriano Jackson,BM,
17 - item removed from vicitm's lt.forearm    (ECMC Morgue)

Case No. _____ ECU/LP#91-0853 _____   Collected By _ HS/HS _____   Date _ 8/10/91

# *EVIDENCE*

**BUFFALO POLICE DEPT.** <u>17</u>
NUMBER

Date of Crime _____ 8/10/91 _____ **P-112**

Type of Crime _____ Homicide/Shootings _____

Location _____ Bailey & E.Delevan _____

Victim _ 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20   4.John Sullivan,BM,17

Description of Evidence & Location Found _ copper jacketed bullet received from
ME Dr.Loghmanee, 1108 hrs,8/10/91 at Post of Hom.Vicitm Torriano Jackson
BM,17 - item removed from bak of victim's rgt.hand    (ECMC Morgue)

Case No. _____ ECU/LP#91-0853 _____   Collected By _ HS/HS _____   Date _ 8/10/91

# *EVIDENCE*

**BUFFALO POLICE DEPT.** <u>18</u>
NUMBER

Date of Crime _____ 8/10/91 _____ **P-112**

Type of Crime _____ Homicide/Shootings _____

Location _____ Bailey & E.Delevan _____

Victim _ 1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20   4.John Sullivan,BM,17

Description of Evidence & Location Found _ copper jacketed bullet received from ME
Dr.Loghmanee - 1110 hrs,08/10/91 at the Post of Hom.Victim:Torriano Jackson
ECMC Morgue, - item removed from the victim's left upr.thigh/lateral

Case No. _____ ECU/LP#91-0853 _____   Collected By _ HS/HS _____   Date _ 8/10/91

COE001635

**APPENDIX 1723**

## EVIDENCE

**BUFFALO POLICE DEPT.** $\frac{19}{\text{NUMBER}}$

Date of Crime _____ 8/10/91 _____ P-112

Type of Crime _____ Homicide/Shootings

Location _____ Bailey & E.Delevan

Victim _1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20   4.John Sullivan,BM,17

Description of Evidence & Location Found. copper jacketed bullet received from ME
Dr.Loghmanee, 1114 hrs 8/10/91 at the Post of Hom.Victim:Torriano Jackson
ECMC Morgue - item was removed from the victim's Rgt.upr.thigh

Case No. _____ ECU/LP#91-0853 _____ Collected By _HS/ HS _____ Date _ 8/10/91

## EVIDENCE

**BUFFALO POLICE DEPT.** $\frac{20}{\text{NUMBER}}$

Date of Crime _____ 8/10/91 _____ P-112

Type of Crime _____ Homicide/Shootings

Location _____ Bailey & E.Delevan

Victim _1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20   4.John Sullivan,BM,17

Description of Evidence & Location Found. copper jacketed bullet received from ME
Dr.Loghmanee, 1116 hrs 8/10/91 at the Post of Hom.Victim Torriano
Jackson, -ECMC Morgue - item was removed from the victim'sLt.upper
thigh/medial

Case No. _____ ECu/LP#91-0853 _____ Collected By _HS/ HS _____ Date _ 8/10/91

## EVIDENCE

**BUFFALO POLICE DEPT.** $\frac{21}{\text{NUMBER}}$

Date of Crime _____ 8/10/91 _____ P-112

Type of Crime _____ Homicide/Shootings

Location _____ Bailey & E.Delevan

Victim _1.Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19   3.Aaron Jackson,BM,20   4.John Sullivan,BM,17

Description of Evidence & Location Found. vial of blood of Hom.Victim:Torriano
Jackson,BM,17 received from ME Asst.Geo.Washington,1125 hrs 8/10/91
at Victim's Post,ECMC Morgue

Case No. _____ ECU/LP#91-0853 _____ Collected By _HS/HS _____ Date _ 8/10/91

COE001636

**APPENDIX 1724**

## *EVIDENCE*

*BUFFALO POLICE DEPT.* $\frac{22}{\text{NUMBER}}$ ✓

Date of Crime ___8/10/91___ P-112

Type of Crime ___Homicide/Shootings___

Location ___Bailey & E.Delevan___

Victim 1. Torriano Jackson,BM,17(Deceased)

2.Mario Jarmon,BM,19  3.Aaron Jackson,BM,20  4.John Sullivan,BM,17

Description of Evidence & Location Found. Clothes of Susp/Deft.Valentino Dixon,BM
received from Valention Dixon,1500 hrs 8/10/91 at the Hom.Sec.Ofc.

A. 1pr. Blue/Blk."Nike" Sneakers Airmax size 9½   B. Blk.nylon jogging

pants "NIKE" size L  C. grey sweatshirt w/blk.trim on sleeves "NIKE"

"Force"   D. baseball cap "G" navy blue w/wht.bill -w/"Villanova Wildcats"
logo

Case No. ___ECU/LP#91-0853___   Collected By ___HS/45___   Date 8/10/91

COE001637

**APPENDIX 1725**

DEPARTMENT OF
CENTRAL POLICE SERVICES
FORENSIC LABORATORY
ERIE COUNTY

ANALYSIS REPORT

DISTRICT ATTORNEY

JUN 2   9 51 AM '92
ECU

SUBMITTING AGENCY : Buffalo Police Department

----------------------------------------------------------------------

DEFENDANT:
            Dixon,        Valentino

COMMENTS:

LAB. NO.: 76336                CASE NO.: Hom. 91-145

DATE RECEIVED  : 08/12/91       CD NO.: N/A

DATE ANALYZED  : 08/24/91       INV. OFFICER 1. : H. Smardz

DATE OF REPORT : 08/29/91       INV. OFFICER 2. :

----------------------------------------------------------------------

DESCRIPTION OF EVIDENCE:

    Twenty-seven 9mm fired cartridge cases of Remington make.
    Ten fired bullets.
    Two lead fragments.
    One .22 L/LR fired cartridge case of Remington make.

----------------------------------------------------------------------

RESULTS:

 REFER TO ATTACHED RESULT REPORT

**COE001658**

FORENSIC RESULTS FOR LAB NO. 76336          DATE : 08/29/91
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Report No. 2

The submitted fired bullets are of the 9mm caliber class and of
jacketed round nose design.  They exhibit rifling characteristics
of six (6) land and groove impressions with a right twist.  They
exhibit individual characteristics which would be of value for
comparison versus suspect firearms.

The twenty-seven submitted fired 9mm cartridge cases were fired
in the same firearm.

Numerous makes and models of autoloading firearms exhibits consistent
class characteristics.  These include Feather Industries carbines.

The two submitted lead fragments (Items #4 and #9) are badly
damaged.  They are consistent with being the cores of jacketed
bullets.


cc:  BPD Homicide

Michael B. Dujanovich
ANALYST

bjw

**COE001659**

**APPENDIX 1727**

### DEPARTMENT OF
### CENTRAL POLICE SERVICES
FORENSIC LABORATORY
ERIE COUNTY

FORENSIC LABORATORY
ANALYSIS REPORT

LAB. NO. 76 336

CASE NO. Hom. 91-14

DATE 8/24/91

---

INVESTIGATING OFFICER ~~BPD~~ H. Smardt    SHIELD NO.    AGENCY BPD    BUR. PCT. Evid

---

**DEFENDENTS:**

Valentino Dixon

---

**DESCRIPTION OF EVIDENCE:**

Twenty seven 9mm fired cartridge cases of Remington make.
Ten fired bullets
Two lead fragments
One .22L/LR fired cartridge case of Remington make.

---

DATE RECEIVED    8-12-91    DATE PERFORMED    8/24/91

---

**RESULTS:**    — Report #2 —

The submitted fired bullets are of the 9mm caliber class and of jacketed round nose design. They exhibit rifling characteristics of six (6) land and groove impressions with a right twist. They exhibit individual characteristics which would be of value for comparison versus suspect firearms.

The twenty seven submitted fired 9mm cartridge cases were fired in the same firearm.

Numerous makes and models of autoloading firearms exhibit ~~sand~~ consistent class characteristics. These include Feather Industries carbines.

The two submitted lead fragments (items #4 and #9) are badly damaged. They are consistent with being the cores of jacketed bullets.

**ANALYST**

Michael

COE001660

DCPS-L-2 (Rev.    )CP

FORENSIC LABORATORY
ANALYSIS REPORT

LAB. NO. _76336_

CASE NO. _____

DATE _____

**RESULTS:**
8/24/91

Projectiles marked c the lab # BP, and (Indiv. char of value are present)

Comments

| Item | Cal | Design | wt. | Rifl. | Comments |
|------|-----|--------|-----|-------|----------|
| #1 | 9mm | JRN exposed base | 115 grains | 6 Rt LIW-0.075" GIW-0.10 | Badly damaged app. bld base marked (H'&t |
| #2 | — | JRN partial minus core | — | Rt " 2LI & 2GI meas. | badly dam. |
| #3 | 9mm | JRN exp. base | 114 gr. | 6 Rt LIW-0.075 GIW-0.10 | L'ed damage to nose white fibers app. bld (HS) base/nose |
| #4 | — | lead frag | 90 gr. | — | flattened app core (HS) |
| #7c | 9mm | JRN exp base | 114 gr. | 6 Rt LIW-0.07 GIW-0.10 | red material (HS) |
| #9 | — | lead frag | 94 gr. | — | app. plaster (HS) fibers etc - app. core |
| #10 | 9mm | JRN exp base | 115 gr. | 6 Rt LIW-0.075 GIW-0.10 | damaged app. plaster/concrete (HS) |
| #16 | 9mm | JRN exp base | 114 gr. | Rt " 2LI & 2GI meas | flattened - 1/2 wiped out lengthw app. tissue (HS) (F) |
| #17 | 9mm | JRN exp base | 106 gr. | Rt " 3 LI & 2GI meas | ~1/2 wiped out lengthwise app tissue (HS) (F) |
| #18 | 9mm | JRN exp base | 114 gr. | Rt " 3 LI & 2GI meas | flattened - 1/2 wiped out lengthw app. tissue (HS) (F) |
| #19 | 9mm | JRN exp base | 111 gr. | Rt " 2 LI & 2GI meas | flattened ~1/2 wiped out lengthw app tissue (HS)(F) |
| #20 | 9mm | JRN exp base | 100 gr. | Rt " 2 LI & 2GI mea. | flattened ~1/2 wiped out lengthw app tissue & black material (HS)(F) |

by COE00166?

Twenty seven R-P (9mm Luger) fired cart cases

FPN - hemi sph.

EXT - indistinct

EJR - on most rear outer edg.

Pos comp. between the 27 submitted fired cart cases (Bface, FPN).

COE001662

File 91-14

```
NAM/ BROWN          ,LEONARD   ,     ,DOB/ 012070.RAC/ B.SEX/ M.
    BROWN          ,LEONARD   ,     , DOB/120770 RAC/B SEX/M  PCN/04971842
200  , OLYMPIC              CIT/BUFFALO      ,NY,      ORA/EI01
5-10  WGT/145    BLD/MEDIUM      EYE/BRO          HAI/BLK      SMT/
Y    POB/BUFFALO NY         OCC/STUDENT          MAR/SINGLE
NO WARNING
5805050J    FBI/802682FA2     SOC/117566774    MUG/156084-EI01   MNO/
                       TO PRINT A SUMMARY OF LOCAL ARRESTS:
                       HIT UPPER FUNCTION & F1
                       PR1/PRV ADR 200 BURGARD
                       PR2/2011 BAILEY
                       PR3/FPC PIO909CO13 1313131513
                       PR4/63 FAY ST
```



COB 000268

```
2 PAGE 01 09/03/91<S U M M A R Y  O F  A R R E S T S>BROWN ,LEONARD
          -------CHARGES----------------<>--------------DISPOSITIONS--------------->

/15/87  ARR.BUFFALO    CNO/87-011438<>                                    EI01
   BLTER 656                           <>
   JCN 10452088Y PCT 12                <>
   140-25-2     FEL.-----------------  <>
   155-35      FEL.------------------  <>


/02/87  ARR.BUFFALO    CNO/87-073016<>                                    EI01
   MPS 4839 JCN11123304J               <>
   ANDREWS DOUGLAS 16                  <>
   140-25-2     FEL.-----------------  <>
   155-30-1    FEL.------------------  <>
   140-35      MISD-----------------   <>


/17/87  ARR.BUFFALO    CNO/87-216676<>                                    EI01
   DJD  12643                          <>
   DILL/TPU  K-9                       <>
   140-25-2    FEL.------------------  <>
   165-40      MISD-----------------   <>


/05/90  ARR.BUFFALO    CNO/90-015846<>                                    EI01
   PR2260 WAR90038237                  <>
   GEORGE ROBB                         <>
   160-15-3    FEL.------------------  <>


26/90  ARR.BFLO     CNO/90-245036<>                                       EI01
   PR15843JCN13164851R                 <>
   KESSLER 16                          <>
   175-05      MISD-----------------   <>
   205-30      MISD-----------------   <>
   240-25-1    VIOL-----------------   <>


23/90  ARR.BFLO     CNO/90-306745<>                                       EI01
   PR20214JCN12270584J                 <>
   JORDAN NARC                         <>
   220-03      MISD-----------------   <>
   220-50-2    MISD-----------------   <>
   221-05      VIOL-----------------   <>


NTINUE]
```

COB 000269

? PAGE 02 09/03/91<S U M M A R Y  O F  A R R E S T S>BROWN LEONARD
CHARGES <> DISPOSITIONS >

N D  S U M M A R Y   BROWN LEONARD          006 ARRESTS,  014 CHARGES

ACCOMPLICE INFO AVAILABLE -- USE FR.ARR OR FR.QR SCREEN

ENOTES AN ATTEMPTED CRIME

TE USE OF THIS INFORMATION IS NOT BASED ON FINGERPRINT IDENTIFICATION
AND IS REGULATED BY LAW STITLE 28-FEDERAL RULES AND REGULATIONS
NEW YORK CRIMINAL PROCEDURE LAWS ARTICLE 160J.
DO NOT RETAIN AFTER 90 DAYS FROM DATE AT TOP OF PAGE. DO NOT DISSEMINATE.
                                JOHN CARDARELLI, COMMISSIONER
                                CENTRAL POLICE SERVICES

COB 000270

DISTRICT ATTORNEY / DISTRICT ATTORNEY

**DEPARTMENT OF** 2  9 01 AM '92  JUN 2  9 41 AM '92
**CENTRAL POLICE SERVICES**
**FORENSIC LABORATORY**
**ERIE COUNTY**

**ANALYSIS REPORT**

SUBMITTING AGENCY:  Buffalo Police Department                    ECU

-----------------------------------------------------------------------

DEFENDANT(S):    Dixon,  Valentino


COMMENTS:


LAB NO.:  76336                  CASE NO.:  Hom. 91-145

DATE RECEIVED :  08/12/91        CD NO.:  221504

DATE ANALYZED :  09/12/91        INV. OFFICER 1.:  H. Smardz

DATE OF REPORT:  09/12/91        INV. OFFICER 2.:

-----------------------------------------------------------------------

DESCRIPTION OF EVIDENCE:

Items 6, 8, 11-15, 21, 22.

-----------------------------------------------------------------------

RESULTS:

Report No. 3

      The items submitted have not been examined for blood at
      this time.  Please contact the laboratory if analysis is
      indicated.


            Paul A. Hojnacki
            FORENSIC SEROLOGIST

bjw


COE001638

**FORENSIC LABORATORY
ANALYSIS REPORT**

LAB. NO. **76336**

CASE NO. _____

DATE _____

RESULTS: #3

THE ITEMS SUBMITTED HAVE NOT BEEN EXAMINED FOR BLOOD
AT THIS TIME. PLEASE CONTACT THE LABORATORY IF
ANALYSIS IS INDICATED.

*Paul A. Hojnacki*

FELONY X

HOMICIDE X

NO ANALYSIS 9

DCPS-....2A (Rev.

COE001639

COUNTY OF ERIE
CPS FORENSIC LABORATORY
CHAIN OF CUSTODY FORM

# 76336

LAB NO.: _____

SEALED ITEM(S): 6-8-13-14-15-21 *not sealed* 11-12-22 _____

FROM: *Best Pandich* _____

DATE/TIME: 8-12-91 _____ 1015 hrs _____

TO: _____ "HOSNACKi" _____

REMARKS: _____

SEALED ITEM(S): _____

FROM: _____

DATE/TIME: _____

TO: _____

REMARKS: _____

SEALED ITEM(S): _____

FROM: _____

DATE/TIME: _____

TO: _____

REMARKS: _____

SEALED ITEM(S): _____

FROM: _____

DATE/TIME: _____

TO: _____

REMARKS: _____

2/91

COE001640

COUNTY OF ERIE
CPS FORENSIC LABORATORY
CHAIN OF CUSTODY FORM

LAB NO.: _76356_

SEALED ITEM(S): _ALL ITEMS_

FROM: _(signature)_

DATE/TIME: _10 SEP 91 - 9:43 AM_

TO: _Det Hingwald    BPD/ECU_

REMARKS: ___

----------------------------------------

SEALED ITEM(S): ___

FROM: ___

DATE/TIME: ___

TO: ___

REMARKS: ___

----------------------------------------

SEALED ITEM(S): ___

FROM: ___

DATE/TIME: ___

TO: ___

REMARKS: ___

----------------------------------------

SEALED ITEM(S): ___

FROM: ___

DATE/TIME: ___

TO: ___

REMARKS: ___

2/91

COE001641

147B (4/87)

*Photos & Video*

### Buffalo Police Department
### Request For Photographs From File

FILE
91-145

Person Requesting: _Cres Belling_

Agency/Unit: _D.A's Office_

Address: _County Hall_

Phone: _858-2424_    Date of Request: _11-8-91_

***********************************************************

Date Photos Taken: _8-10-91_    Photo/Accident Case No. _18917_
_18938_

Nature of Incident: _Homicide_

Location Photos Taken: _E. Delavan & Bailey_

Reason For Request: _Trial_

Unit Referred to: _Homicide_

***********************************************************

Investigating Unit:

Status of Case: _open_    Arrest Made _yes_ yes ___ no

Defendant/Subject of Investigation: _JACKSON / VALENTINO DIXON_

Victim's Name: _TORRANO JACKSON_

Officer Authorizing Release: _Lt Jan O Rautenstrauch_
(Rank/Signature)

***********************************************************

Accident Cases Only- Category:

PDO___ Injury___ Fatal___ H&R___ City Inv.___ DWI___ Other Charges___

If City Involved, Was Corporation Counsel Notified ___ yes ___ no

***********************************************************

Chief Of Detectives Approval:

Approved _✓_ Not Approved ___ Payment Required ___ yes _✓_ no

Signature: _Angel P Alexander_

***********************************************************

Photo Unit Notations

Date Request Received _11/8/91_    Date Completed _11/9/91_

Number of Photos _18917 - 58_    Photos to be Returned ___ yes _✓_ no _+Video_
_18938 - 8_

Photos Received By: _CHRISTOPHER J. BELLING_
(print name)

Photos Signed for By: _Christopher J. Belling A.D.A._
(signature)

Date Received: _Nov 17, 1991_    Amount of Payment: _N/A_

Check/Draft Number: _N/A_    Received By: _N/A_

Photos Returned to: _____    Date: _____

Distribution: Orginal to Chief of Detectives;Duplicate to Photographic
Unit; Triplicate to Investigating Unit

COB 000273



November 21, 1991

Antoine Shannon, being duly sworn deposes & says:

1. That I am 18 yrs old and my date of birth is July 2, 1973

2. That I make this statement in the conference room at the old gym, Campbellsville College, Campbellsville Ky.

3. That on/or about August 10, 1991 I was in the vicinity of Bailey Ave & E. Delevan in the city of Buffalo N.Y.

4. I was with my brother Leonard Brown, & my friend Mario Jarmon

5. That my brother Leonard and I "had words" with Aaron Jackson in the Norstar Bank parking lot. Aaron was in Travis Powell's mothers yellow Geo. After my brother & I talked to Aaron he started to leave and Mario "had words" with Aaron.

6. That after Aaron left we went to Mario's house to call my half brother Valentino Dixon on his beeper but he did not respond.

AS
AS
AS

COB 000274

②

7. A while later my half brother "Tino" (Valentino Dixon) drove by Mario's house in his red RX7 & I flagged him down.

8. I told Tino about our argument with Aaron Jackson & Tino said he would stay around & that they wouldn't do anything

9. After that, about 10 minutes later LaMarr Scott came to the area of Mario's house on a bicycle and we (Mario Jarmon, Leonard Brown, Tino & me) filled him in on the argument with Aaron Jackson.

10. LaMarr then said "I'll be back" and left the area on his bike — going down Delevan towards Olympic Ave.

11. About 15 minutes later LaMarr came back with a gun in a garbage bag. He showed me the gun, the others were there, the gun was a long black gun it looked like a machine gun

12. After he showed us the gun LaMarr put it back in the bag & hid it in the bushes by Mario's house, in the bushes right by the side of Mario's house.

COB 000275

A5

③

13. Then Mario, Tino and I went up to the store on corner of Bailey and Delevan.

14. At this time Aaron Jackson came back to the area in Travis Powells yellow Geo, Torri Jackson was in the back seat

15. Aaron, then had some words with Mario and Tino and I came out from the doorway of the store after hearing them

16. Aaron gets out of the car, Travis gets out then Torri gets out of the car and I saw that Torri had a gun. It was silver, a hand gun, looked like a .38. I saw Torri pull something back on top of the gun.

17. Tino grabbed me & said "come on", I ~~said~~ told Mario to come along. Aaron then rushed Mario & they began fighting on the sidewalk by the "Bailey Delevan Market"

18. Then Torri came up and pointed the gun at Mario & Aaron as they fought AS

COB 000276

④

19. I started to run away down E Delevan toward olympic and I heard a shot

20. I saw Mario "Jerk" as though he was shot then I saw LaMarr running toward the corner of Bailey & Delevan with the gun in his hands. LaMarr had on dark colored shorts, maybe Navy, Black Jacket & a hat, a dark color baseball hat.

21. I saw LaMarr start shooting at Aaron I then looked toward Tino & looked back toward the corner, Torri was trying to run away & LaMarr shot Torri in the leg.

22. then LaMarr shot Torri in the back, then Torri fell on the ground & LaMarr ran up on him & stood over him shooting him as he lay on the ground

23. I ran through Marios yard & hopped the gate in back. Tino jumped in his car, the RX7 and drove away towards olymic Ave.

AS COB 000277

⑤

24. Tino's clothing this night was: jeans, a white shirt (fancy dress) sneakers and a red baseball hat w/ white letters.

25. I then called a cab from a friends house on Kermit St (I don't know his name) and the cab picked me up at Delevan and Olympic & took me home to 63 Fay. It was a fillmore Cab

26. I was present at Genessee & Bailey on the night that LaMarr Scott talked to the TV news crew & the Buffalo Police took LaMarr into custody.

27. My Brother Leonard, Me, my father Robert Bryant, my mother Annie Shannon and Tino's girlfriend Arnice had picked up LaMarr earlier and brought him to our house on Fay St. and called the TV station to set up the meeting at Genessee and Bailey.

28. I left Buffalo on August 14th to come to Campbellsville

A5                              COB 000278



I have read the preceeding 5 pages
and they are true and correct in as
far as they go into detail and to the
best of my recollection

Antonio Shannon

SWORN BEFORE ME
THIS 21st DAY OF NOVEMBER 1991

Julie A. Caldwell
NOTARY PUBLIC, STATE OF KENTUCKY

My commission expires 5/31/94.

COB 000279



Ralph V. Degenhart
Commissioner

74 Franklin Street
Buffalo, N.Y. 14202
Phone : ( 716 ) 851 - 4444

State of New York
County of Erie                    SS                    Certification
City of Buffalo

Re: CD#221504
    Hom.Case#91-145
    ECU/LP#91-0853
    Fatal Shooting, Bailey & E.Delevan - 08/10/91
    Victim; Torriano Jackson,BM,17 (Deceased)

    On Sat..08/10/91,  0220 hrs I was requested by the Homicide Section to
assist them in regards to the above aforementioned Ftal Shooting as per
Hom.Case#91-145.

    During the course of this investigation a certain .32 cal. H&R Revolver
came into my possession (item #7 - H&R .32 cal.revolver serial # 7747
5 shot, silver finish, w/2" bbl.) I received this item at the Scene
(Bailey & E.Delevan) from PO Ra-Chelle Brown (Prct.#16).

    I did examine this article and perform a Latent Fingerprint Exam on
same. My results would be described as Negative, due to the fact that
although Latent Prints were developed they lacked sufficient identifiable
ridge detail for comparable purposes. They were discarded.

                                    Chief Angelo P. Alessandra
                                    Det.Div. - BPD

                          By: Henry M. Smardz
                                    Detective Henry M. Smardz
                                    Buffalo PD/ECU

Sworn to before me this date

24 th day of December 19 91

Commissioner of Deeds, Buffalo,NY

My Commission expires 12/3/1/91

Orig:ECDA's Ofc    XC:ECU

COE001585

BPD Comp. 0255

P-73  BUFFALO POLICE DEP. TMENT INTRA-DEPARTMEN AL CORRESPONDENCE

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | DATE 12/4/91 |
| --- | --- | --- | --- |
| FROM | Det. James P. Lonergan Det. John Vickerd | File 91-145 Jackson Homicide Dictated by Det. Lonergan | |

ATTN:  James Rautenstrauch, Lt.

SIR:

Continuing this investigation, the above officers proceeded to City Honors School at Best/Masten.  We spoke with Asst. Principal Theresa Pope and informed her we would like to speak with Heather Smith, a student at that school.  Mrs. Pope stated she would have to obtain permission from the girl's mother and we agreed.

She contacted the mother, Sandra Smith at 882-5953, who stated she did not object to us talking with her daughter, as long as Mrs. Pope was present.

We then interviewed Heather Smith, B-F, age 16 dob 6/30/75 of 73 Monticello St., phone 882-5953.  She stated she was a very close friend of Aaron Jackson.  She also stated she was not present when the shooting occurred and found out about it later that evening when some dude she never saw before came up to her and said that "TINO" shot Aaron.  We asked her if she knew TINO and she said no.  She was asked if she knew Valentino Dixon and she replied "I never heard of him".

This interview was concluded and Heather returned to class.

It should be noted that Heather was interviewed in the presence of Mrs. Pope.

Respectfully submitted,

*James Lonergan*

Det. James Lonergan

JL/les                                    Det. John Vickerd

COE001584

P-73   **BUFFALO POLICE DEP.   ₁TMENT INTRA-DEPARTMEI   ₁L CORRESPONDENCE**

| TO | Richard T. Donovan, Chief Homicide Section | SUBJECT | DATE 12/5/91 |
|---|---|---|---|
| FROM | Det. James P. Lonergan  Det. John Vickerd | File 91-145 Jackson Homicide  Dictated by Det. Lonergan | |

ATTN:  James Rautenstrauch, Lt.

SIR:

Continuing this investigation, the above officers interviewed Jeffrey Shelton, B-M, age 22 dob 9/2/68 of 1150 E. Delavan, upper, phone 894-5029.

Jeffrey stated the night of the shooting he was sitting on the lower front porch at 1150 E. Delavan.  He observed a large group of people in the parking lot of LOUIE'S HOT DOGS at Bailey/E. Delavan.  He went inside and up to his apartment and approx. one minute later he heard a lot of shooting.  He stated he looked out of the window and saw three guys standing in the street and one of them had a gun and was shooting.  He also said he saw a guy lying on the ground.

Jeffrey stated it was dark and he could provide no further information on any of these individuals, nor could he identify them.  He also said he did not observe any vehicles leaving the area.

Respectfully submitted,

*James Lonergan*

Det. James Lonergan

JL/les                                           Det. John Vickerd

COE001582

P-73   **BUFFALO POLICE DEF̵ ̵TMENT INTRA-DEPARTME١ ̵AL CORRESPONDENCE**

| TO | Richard T. Donovan, Chief<br>Homicide Section | SUBJECT | | DATE   12/5/91 |
|----|----|----|----|----|
| FROM | Det. Mark R. Stambach<br>Det. Patrick W. McCarthy | | File 91-145 Torrano Jackson<br>Dictated by Det. Stambach | |

ATTN:    James Rautenstrauch, Lieutenant

SIR:

Continuing the above investigation the above officers did go to 40 W. Balcolm St. in an effort to talk with Miss Frieda.  At this time Miss Frieda was not home, but we did speak to her mother, Brenda Frieda.  She stated her daughter was currently at work and not available at this time, but she will call the Homicide office the next morning.  She would not give the above officers her personal phone number and insisted she would contact the Homicide office the next day.

Respectfully submitted,

Det. Mark R. Stambach

*Mark R. Stambach*

MRS/les                                 Det. Patrick W. McCarthy

**COE001583**

P-73 **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO | Ralph V. Degenhart<br>Commission of Police | SUBJECT | DATE 6-2-92 |
|---|---|---|---|
| FROM | Daniel Rinaldo, Det<br>Mark Vaughn, Det | Homicide Bailey and Delavan | File #91- 145 146 147 |

Attention: Angelo P. Alessandra, Insp, Chief of Detectives
Charles Fieramusca, Chief of Homicide

Sir:

On 05-18-92, Detectives Daniel Rinaldo and Mark Vaughn arrested a
Lamarr Scott, black male, dob 09-09-?? of 157 Best St. Scott was
arrested at 54 Langner and was charged with PL 220.03. The above
officers arrested Scott based on information supplied by CI-91-??.
While being transported to Erie Police headquarters for ?? ?? ??
Scott told officers ?? that he probably had an outstanding surrender ??
warrant. When ?? ?? ?? further ?? ?? the warrant, Scott told Dets
Rinaldo and Vaughn that the perjury charge was from testimony he
gave in front of the Grand Jury about Chemicide that ?? ?? ??
Bailey and Delavan. Scott stated that he knew who did the shooting
and that it wasn't Valentino Dixon who is charged in the case.
Scott refused to elaborate any further ?? ?? ?? ?? ?? ?? ??

After the arrest ?? ?? ?? ?? ?? ?? ?? ?? ?? ?? ?? ??
constantly ?? ?? ?? ?? ?? ?? ?? ?? ?? ?? ??
Homicide. Scott ?? ?? ?? ?? ?? ?? ?? ?? ??
came out the ?? ?? ?? ?? ?? ?? ?? ?? ??
corner ?? ?? ?? ?? ?? ?? ?? ?? ?? ??
recently shot ?? ?? ?? ?? ?? ?? ?? ?? ??
St. The shooting occurred in the early part of May and was over
drug turf.

Respectfully submitted

Det D. Rinaldo

Daniel Rinaldo, Det

Det. M Vaughn

Mark Vaughn, Det
Narcotics Section

COB 000286

**APPENDIX 1749**

COB 000287

DISTRICT ATTORNEY UPDATE RECEIPT

| FILE NO. | DATE | ITEM RECEIVED | D.A. (SIGNATURE) |
|---|---|---|---|
| 91-145 | 6-8-92 | 5 PHOTO ARRAYS ORIGINAL POLAROIDS OF: LEONARD REDNIT LAMAR SCOTT | Belling |

BPD Comp. 260



BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE

FILE # 91-145

FROM BUFFALO NEWS

SUBJECT

DATE 6-17-92

SMARDZ

LP# 91-0854

CD# 91-221-504

COB 000288

P147B (4/87)

Hom
9D-145

## Buffalo Police Department
### Request For Photographs From File

Person
Requesting: Frank Sedita A.D.A

Agency/Unit: Dist. Atty. Office

Address: _____

Phone: 858 2429    Date of Request: 10-21-92

**********************************************************

Date Photos Taken: Aug 10 1991    Photo/Accident Case No. 18917 WMS

Nature of Incident: Shooting - Homicide    ~~8706~~ VAD

Location Photos Taken: E. Delavan & Bailey    19407 VAD

Reason For Request: Trial Prep

Unit Referred to: Homicide

**********************************************************

Investigating Unit:

Status of Case: Cleared by Arrest    Arrest Made ✓ yes ___ no

Defendant/Subject
of Investigation: Leonard Brown & Mario Jarmon

Victim's Name: Torrino Jackson

Officer Authorizing Release: Det. _____
                            (Rank/Signature)

Accident Cases Only- Category:

/ PDO___ Injury___ Fatal___ H&R___ City Inv.___ DWI___ Other Charges___

If City Involved, Was Corporation Counsel Notified ___ yes ___ no

**********************************************************

Chief Of Detectives Approval:

Approved ✓    Not Approved ___    Payment Required ___ yes ✓ no

Signature: _____

**********************************************************

Photo Unit Notations

Date Request Received 10/22/92    Date Completed 10/75/92

Number of Photos 64    Photos to be Returned ___ yes ✓ no

Photos Received By: _____
                   (print name)

Photos Signed for By: Peter M. Kelly
                     (signature)

Date Received: 10/27/92    Amount of Payment: N/A

Check/Draft Number: N/A    Received By: N/A

Photos Returned to: _____    Date: _____

Distribution: Orginal to Chief of Detectives;Duplicate to Photographic
             Unit; Triplicate to Investigating Unit

COB 000289

P/73 **BUFFALO POLICE DEPARTMENT INTRA-DEPARTMENTAL CORRESPONDENCE**

| TO: Inspector Kevin R. Connors<br>Admin. & Comm. Division | SUBJECT | DATE 11/02/92 |
| --- | --- | --- |
| FROM Det. James P. Lonergan<br>Homicide Section | Request for all 911 and radio dispatched information relating to subject as described below | |

Sir:

On August 10, 1991 there was a shooting at Bailey & Delavan resulting in the death of one individual and the injury of three others. The CD# for this incident was #91-221-504. ~~[redacted]~~

Due to recent developments in this investigation, we are now in need of the 911 and radio dispatched information for events at this location prior to this shooting; i.e., shots fired, shootings, etc. We are interested in any relevant calls to this general location prior to 0129 hours on the 10th of August, 1991. This may include any calls late on the 9th of August, 1991.

It is my understanding that the tapes for this time period have in fact been preserved, and that the information would be available.

Respectfully submitted,

*James P. Lonergan*

Det. James P. Lonergan

Respectfully forwarded,

*James D. Rautenstrauch*

James D. Rautenstrauch
Lieutenant
Homicide Section

JPL:km

COB 000271

APPENDIX 1753

MAR-17-04   02:22PM   FROM-RE/MAX Masters                    316 449 9844           T-T97  P.004/005  F-351

# EVIDENCE                    BUFFALO POLICE DEPT.

DATE OF CRIME:       03   29   2002
TYPE OF CRIME:       Homicide/Shooting
LOCATION:    3052 Bailey

NUMBER:    8

VICTIM:    Mario Williams  B/M  12/23/71
CASE NO.:    02-0236     BY:JM

Description of Evidence & Location Found:
The following physical evidence was collected on 04/11/02 between 0930-1045hrs while at the Erie County
Morgue during the post mortem examination of the victim. Examination conducted by Erie County Medical
Examiner Dr Woytash and assisted by morgue technician T Lamb.

## TUBE OF VICTIMS BLOOD

Obtained from T. Lamb



# EVIDENCE           BUFFALO POLICE DEPT.        P-112

DATE OF CRIME:       03   29   2002
TYPE OF CRIME:       Homicide/Shooting
LOCATION:    3052 Bailey

NUMBER:    9

VICTIM:    Mario Williams  B/M  12/23/71
CASE NO.:    02-0236     BY:JM

Description of Evidence & Location Found:
The following physical evidence was collected on 04/11/02 between 0930-1045hrs while at the Erie County
Morgue during the post mortem examination of the victim. Examination conducted by Erie County Medical
Examiner Dr Woytash and assisted by morgue technician T Lamb.

## HEAD HAIR SAMPLE OF VICTIM

263717

# EVIDENCE           BUFFALO POLICE DEPT.        P-222

DATE OF CRIME:       03   29   2002
TYPE OF CRIME:       Homicide/Shooting
LOCATION:    3052 Bailey

NUMBER:    10

VICTIM:    Mario Williams  B/M  12/23/71
CASE NO.:    02-0236     BY:JM

Description of Evidence & Location Found:
The following physical evidence was collected on 04/11/02 between 0930-1045hrs while at the Erie County
Morgue during the post mortem examination of the victim. Examination conducted by Erie County Medical
Examiner Dr Woytash and assisted by morgue technician T Lamb.

## FINGERNAIL CLIPPINGS OF VICTIMS LEFT HAND

02-01907  gw

**APPENDIX 1754**

MAR-17-04  02:22PM  FROM-RE/MAX Masters          316 449 9944        T-797  P.003/005  F-351

UCPS-L-1 (Rev. 5/00) ECCP

**ERIE COUNTY**
**CENTRAL POLICE SERVICES**
*FORENSIC LABORATORY*

## REQUEST FOR LABORATORY EXAMINATION

| SUBMITTING AGENCY | PCT/BUREAU | INVESTIGATING OFFICERS |
|---|---|---|
| BUFFALO POLICE DEPT. | EVIDENCE UNIT | Det J Maroney  1.) |

| SUBMISSION DATE | CASE NO. | |
|---|---|---|
| 4/16/02 | LP#02-  0236  2.) | |

| SUBREQUISM# 02-  044 | CC#W  02-088-0131 | BUSINESS PHONE NO.  851-4484 |
|---|---|---|

CHARGES:  **Homicide/Shooting**        TIME & DATE OF OCCURRENCE  03/29/02  1P

CHECK IF APPLICABLE:  ( ) SALE OF CONTROLLED SUBSTANCES   ( ) POSSESSION ONLY OF CONTROLLED SUBSTANCES

DEFENDANT(S) *(last name, first name)*
**INVESTIGATION PENDING**
1.
2.
3.
4.
5.

COMPLAINANT/VICTIMS(S): *(last name, first name)*
WILLIAMS  Mario      DOB  12/23/71   Bm
1.
2.
3.
4.
5.

| DESCRIPTION OF EVIDENCE: | | WHERE OBTAINED | ID MARKS |
|---|---|---|---|
| TRACE  9, 10, 11 | *Evidence envelopes numbered*- | Scene/ Hospital | |
| BLOOD  8 | *Evidence envelopes numbered*- | Same as above | Jm |
| FIREARMS  12, 13 | *Evidence envelopes numbered*- | Same as above | Jm |

COMMENTS:        *Refer to copies of P-112's for complete inventory (attached)*

*(THIS SPACE FOR LABORATORY USE ONLY)*

AS ABOVE:                                   REC'D FROM:

SUBSEQUENT INV.:  rec'd sealed        PRINT LAST NAME:  Maroney

PLACED IN CHEMISTRY
PAL (Pending Analysis Locker)
UPON RECEIPT (Initial Please)         DATE/TIME REC'D:  Oct-16-02  1430

LAB. NO.:  Jm  ~ 02-01907         RECEIVED BY:



### Erie County Central Police Services
### Forensic Laboratory - Analysis Report

Agency :  Buffalo Police Department           Pct./Bureau: Evidence Unit

---

Case Names : Williams, Mario - Victim/Complainant

Lab. No. : 02-01907          Case No.: 02-0880131

Date Received  : 4/16/02      REF NO. : HOM#02-044, LP#02-0236

Date of Report : 4/23/02      Inv. Officer(s) : Maroney

---

Report Number 3

Item 12       One submitted sealed envelope with
              a fired bullet from victim - "old wound."

Item 13       One submitted sealed envelope with
              a fired bullet from victim - pelvic area.

*Tests/Conclusions*

The physical characteristics of the submitted fired bullet inside of
item #13 are consistent with it being of the .25AUTO caliber class.
General rifling (class) characteristics of six land and groove
impressions with a left twist are exhibited.  Individual characteristics
that would be of value for comparison purposes versus suspect firearms
are present.

Firearms exhibiting similar rifling characteristics include autoloading
pistols of Colt, Raven, & Astra manufacture.  However, any make or model
firearm that becomes suspect in this investigation should be submitted
for laboratory examination.

The physical characteristics of the fired jacketed bullet submitted
inside of item #11 are consistent with the 38/9mm caliber class.  The
bullet is too badly damaged/oxidized for further comparison purposes.

Images of fired ammunition components are routinely entered into the
National Integrated Ballistics Identification Network (NIBIN) computer
database.  An additional report will be issued if an association is made
with any other database images.

*I affirm that I conducted the analysis described herein.*

LABORATORY DIRECTOR
Michael  B. Dujanovich

CC: Major Crime Unit

**COE001586**

Dear mr Diina                                    1-14-2003.

      Nearly thirtteen years ago I committed a crime that a man by the name of Valentino Dixon is serving a life Sentence for. At the time of his arrest I turned my self in and confessed to the police. At that time I volenteered to take a polygraph test, and most importantly several eye witnesses saw me do the shooting. Police detectives refused to believe me, mainly because mr Dixon had been in trouble with the law in the past.

      Several months after the shooting I recanted and lied at the grand jury hearing. I was told that they had who they wanted, and to say that mr Dixons parents had put me up to confessing. I committed perjury and this is some thing that I deeply regrett. But I was young and the pressure from the police was to strong for me to handle.

      I am currently incarcerated for unrelated crimes to the matter of which I'm speaking. Myself and mr Dixon are incarcerated here in attica together, which isn't a problem. Because he holds no ill feelings towards me. I often see him which only makes this harder to deal with, knowing he is in prison for a crime I committed. I was told by several people to contact you because you are the type of person that would get down to the truth of this matter.

      I hope that you would at least investigate what really happen because there is nothing that could possibly make me lie about a situation that is this serious. Thank you for your time to this matter.

                                   Lamont Scott

COB 000292

COB 000293

ATTICA CORR. FAC.

BUFFALO NY 142
PM
15 JA
2004

ATTICA CORRECTIONAL FACILITY
BOX 149
ATTICA, NEW YORK 14011-0149.
NAME: Mr. Shaman Scott    DIN: 94B12-702

Internal affairs
Commissioner of police
Mr Rocco Diina
74 Franklin Street
Buffalo, New York 14202

BPD Comp. 268



NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES
INMATE CORRESPONDENCE PROGRAM

NAME: _____ DIN: _____

Printed on Recycled Paper

BPD Comp. 0269



GO BACK

PRINT THIS PAGE

GOLF SAVED MY LIFE

# Drawings From Prison

Creating golf holes with pencils is how I pass the time. Maybe one day I'll get to play the game I've only imagined

BY VALENTINO DIXON
WITH MAX ADLER
PHOTOS BY ETHAN HILL

July 2012

I've never hit a golf ball. I've never set foot on a golf course. Everything I draw is from inside a 6-by-10

prison cell. The first course I ever drew was for warden James Conway. He would often stop by my cell to ask how my appeal was going and to see my drawings. Before he retired, the warden brought me a photograph of the 12th hole at Augusta National and asked if I could draw it for him.

I spent 15 hours on it. The warden loved it, and it was gratifying to know my art would hang in his house. Something about the grass and sky was rejuvenating. I'd been getting bored with drawing animals and people and whatever I'd get out of National Geographic. After 19 years in Attica (N.Y.) Correctional Facility, the look of a golf hole spoke to me. It seemed peaceful. I imagine playing it would be a lot like fishing.

There's an inmate here who subscribes to Golf Digest. He crosses his name out and loans me the issues, because you get a ticket if you're caught with something that has somebody else's name on it, just like you get tickets for draping sheets across your bars, or fighting. Some guys in here break the rules anyway, but life's better when you stay invisible.

Except for that one drawing for the warden, I never copy holes exactly. I use a photograph as a starting point and then morph the image in my own way. Sometimes I'll find a tiny piece of reference material, like a tree on a stamp or mountains on a calendar, and then imagine my own golf course with it. I find the challenge of integrating these visions very rewarding.

The past two years I've drawn more than 130 golf pictures with colored pencils and 6-by-8-inch sheets of paper I order through the mail. We're not allowed to have brushes and paints, but that's all right; I like pencils. When I was little, my mom and grandma used to slap my hand because of the unconventional way I gripped the pencil, until one day my aunt Gwen told them to stop and look at the comics I'd done from the newspaper. My mom didn't believe I'd done it without tracing, so she made me draw them again freehand as she watched.

Growing up on the east side of Buffalo, my only sports were football and basketball. Talk about golf in our neighborhood and you'd probably get shot. Because of my art ability, I attended the performing-arts high school and stayed pretty clean until I graduated. Then I started dating a girl whose brothers were drug dealers, and before long I was in it, too. It's no excuse. It was what you did in my neighborhood if you wanted to make money. I became a mid-level cocaine dealer and pulled in enough to drive flashy cars and cover friends, but not much else. I rode with a weapon, same as everybody. I was out on bail for possession charges the night my life changed forever. I was 21 then. I'm 42 now.

No one likes to hear how you're innocent. I get that, and I don't talk about my case to inmates or guards. Everyone's innocent, right? Truth is, there are a lot of bad folk in Attica who deserve to be locked up. They were animals even before they were treated as animals. Violent people who want to rape and cut you, and society is safer because they're in here. But there are also people who'd never hurt anybody, who deserve a second chance. And out of 2,200 inmates, you'd better believe there are a few innocents who got railroaded by the system. When you're young and black, it can happen, and it happened to me.

It was 1:30 in the morning, and we were hanging out at a popular street corner. There were probably 70 people there when word came that the Jackson brothers were looking to get my friend Mario. It was over a girl. You never knew how seriously to take these threats in our neighborhood, but sure enough, I was in a store buying beer when I heard the shots: pow pow. I ran outside the store and grabbed my half-brother to flee. I didn't want any involvement. I was out on bail, and of all things, I wasn't going to let some romance drama among younger kids land me in prison.

COB 000004

I drove home and went to bed. From what I saw, I didn't think anybody had died. The next day the cops pulled me over, and within minutes a tow truck was there to haul away my car. It wasn't until I got to the station that they said I was being charged with second-degree murder, second-degree attempted murder and third-degree assault.

I wasn't nervous because so many people had witnessed the shooting. But soon there I was, being paraded before television cameras in a white paper suit on my way to county lockup. Two days later, LaMarr Scott, a guy I knew but wasn't close to, gave a statement to WGRZ television confessing to be the shooter and turned himself in to the police. Because my dad drove LaMarr downtown, much was made that he had coerced LaMarr into confessing. For murder? Please. My half-brother had brought LaMarr to our dad to set everything straight, and LaMarr owned only a bicycle.

I now see LaMarr regularly. One year after I was convicted, LaMarr shot a teenager in the face after an armed robbery and made him a quadriplegic. I choose not to hold a grudge against LaMarr because psychologically, it would kill my spirit. LaMarr's eligible for parole in 2018; I'm not up until 2030.



**Valentino Dixon in an Attica Correctional Facility visitation room.**

For the past 12 years I've lived in "honor block," which holds 145 inmates with the cleanest disciplinary records. We can shower every day, use the telephone, and our cells are mostly open so we can socialize and play cards and chess. There are hotplates we share to cook our food, and I buy a lot of rice, beans and pack-dried chicken from the commissary. Still, tension can brew in here. A guy will tell another guy to take it to the back, but mostly people want to stay here so they avoid trouble.

Every two months I get to visit my family for two days in a trailer. My mom lives an hour away, and I have three daughters (my youngest can thank her existence to the family-reunion program) and a wife, Louise, who was recently deported to her native Australia. Louise encountered my drawings on the

Internet and moved to the United States to help with my appeals. We were married in a brief ceremony in the visitation room.



**Wall full of Dixon's illustrations.**

The light in my cell isn't great for drawing, but I do have an outlet to plug in my Walkman. When I draw I listen to cassettes to block out the noise of the other prisoners, which can get relentless, even in honor block. I also work as a barber, do push-ups, run in place and read. One of my favorites is Man's Search for Meaning by Viktor E. Frankl about his experiences in a concentration camp. You have to find meaning in your suffering, Frankl said. To that, I say I think God put me here to draw golf courses. Maybe one day I'll play.

Some days I feel like giving up, it's true. I just want to turn nasty and bitter, but in a few hours, or maybe a few days, I'm reaching for the pencils again.

It's possible I wouldn't have lived to this age if I'd stayed on the outside. When I was a young man I wasn't useful to society -- this I don't argue. But I'm not a murderer. That's the worst thing somebody can be, and I'm not that. I hope all you need to do is look at my drawings to know that.

## IS VALENTINO DIXON INNOCENT?

It might be impossible to know exactly what happened in a beery east Buffalo parking lot on the early morning of Aug. 10, 1991, but it's worth trying to figure out: Someone's freedom is at stake.

As many as 70 people were present when what started as a fistfight ended with gunfire. Four young black males were shot, and one, Torriano Jackson, was killed.

Valentino Dixon is at Attica (N.Y.) Correctional Facility, having served 21 years of a life sentence, and still protests his innocence. Another Attica inmate, LaMarr Scott, has confessed to being the killer, but

his words are not taken seriously.

It's an extremely complex case. Across two decades, 15 eyewitnesses have testified in court or signed sworn statements. These witnesses pretty much shake out 7 to 8 in favor of Valentino Dixon's innocence, with the others saying everything happened too fast or their vantage wasn't clear. Nearly everyone there was a teenager, and many of the key participants didn't know, barely knew, just met, or claimed not to know other key participants.

Clearly, some are telling the truth and some are not. Depending on how you mix, accept or deny the conflicting accounts, two versions emerge: (1) Known drug dealer Valentino Dixon, 21, stood over Torriano Jackson, 17, and emptied the clip of a 9-millimeter automatic. (2) LaMarr Scott, 18, struggled with the same automatic, and when he finally got the barrel under control, he settled its aim on Torriano Jackson, who had shot first.

Minutes before the 1:30 a.m. shooting, a yellow Geo Storm pulled up and parked at the corner of Bailey and East Delavan avenues. From this car emerged Torriano Jackson and his older brother Aaron Jackson, 20, intent on confronting Mario Jarmon, 19, over an earlier dispute. They exchanged angry words. A crowd circled. Then, at the sound of gunshots, the crowd dispersed.

The police arrived shortly. From the bloody pavement officers recovered a .32-caliber handgun with a single spent bullet in its cylinder, a .22-caliber bullet casing, and 27 spent 9-millimeter bullet casings -- same as what riddled Torriano Jackson. (This is significant because the prosecution would present Valentino Dixon as responsible for shooting all four people.) The murder weapon was never recovered.

Christopher J. Belling, who prosecuted the case and is now the senior trial counsel of the Erie County District Attorney's Office, says the extra gun and bullet casings don't cause him to doubt that Dixon was the only gunman responsible. "Given the neighborhood and the chaos of the scene, they could've come from anywhere," Belling told Golf Digest in April 2012. "Whoever had the .32 probably decided they didn't want to have it in their hand anymore. They wanted it on the ground."

As the wounded were taken to hospitals, the police interviewed people who lingered at the scene. Some of these records haven't survived, but the police did speak to the driver of the yellow Geo, Travis Powell, 22, who said he didn't recognize the shooter.

Emil Adams, 18, made a sworn statement at the police station. He described two guys with guns; he knew neither. He said the smaller guy had a handgun and the "heavyset" guy had the automatic. That afternoon, Valentino Dixon, 5-foot-9 and 145 pounds, was arrested. His car and clothes were confiscated so they could be tested for gunpowder residue and blood.

John Sullivan, 17, who'd been released from the hospital that morning after being treated for a gunshot wound to the leg, signed a statement with police 45 minutes after Dixon's arrest. He didn't see who'd shot him in the leg, but he named Valentino Dixon as the individual who killed Torriano Jackson.

The next day the police visited Mario Jarmon (the person the Jackson brothers had been intent on fighting) in the hospital. In addition to being punched and kicked, Jarmon had been shot and couldn't speak because of a tracheal tube. The police report states: "He nodded his head to indicate that the guy that shot him was the dead guy. . . . [He] did not see [Valentino Dixon] with a gun."

Two days after the shooting, the police visited Aaron Jackson in the hospital. (The brother of the deceased would spend weeks recovering from his bullet wound.) The detective showed Jackson six

mugshots, and Jackson picked No. 4. The identity of No. 4 is absent from the detective's one-page report. Written on the bottom of the report is Jackson's quote: "But I can't be sure, it all happened so fast."

That same night, LaMarr Scott confessed to a local TV reporter that he, not Valentino Dixon, had shot Torriano Jackson. According to Scott, the guys in the yellow Geo had made threats throughout the day, which prompted him to ride his bike home and retrieve his 9-millimeter, a gun he had recently bought with cash but hadn't yet fired. When the argument escalated at the parking lot, Scott said Torriano Jackson shot first. "I was scared," Scott told the TV reporter. "I didn't know whether he was gonna kill anybody or not, so I just opened fire back on him. I didn't have any control of the automatic weapon at all, and I panicked at the same time. That's why I kept shooting him as many times as I shot him."



But this apparent good news for Valentino Dixon didn't last long. After meeting with the police and Belling, LaMarr Scott recanted what he'd told the TV reporter (and said Dixon's family put him up to the confession) and was not held or charged.

*Above:* Valentino Dixon today in Attica Correctional Facility. *Below:* Dixon, 21, shortly before he was incarcerated.

Dixon remained in prison the rest of the year. Mario Jarmon recovered, and in January 1992 a grand jury investigated the shooting. In this hearing, Mario Jarmon and another eyewitness, Leonard Brown, 20, corroborated the story of LaMarr Scott shooting an armed Torriano Jackson. Belling charged them both with perjury. At this same hearing, LaMarr Scott testified, "[Torriano] pulled out a gun and shot Mario three times and then Valentino shot [Torriano]." Concerning Valentino Dixon's gun, Scott testified, "I guess he had it. I didn't see the gun with him at the time when we walked to the corner because we was all laughing and giggling and everything. I wasn't paying attention."



In June 1992, 10 months after the fight, the murder trial began. Because Jarmon and Brown had been charged with perjury, they were not called as witnesses. "Even if I tried calling them to testify, their attorneys wouldn't have let them because it would've exposed them to additional perjury liability," Joseph

COB 000008

Terranova, Valentino Dixon's court-appointed public defender, told Golf Digest in May 2012. "What Belling did was extremely clever, and the right thing to do as a prosecutor." 

"That sort of witness intimidation by the prosecution almost never happens," says attorney Don Thompson, who worked for a number of years on Dixon's appeal but is no longer involved. "If you're just engaged in a search for the truth, you let the jury have everything and let them sort it out. On the other hand, if you've already decided what the truth is, you try to eliminate any testimony you don't like that isn't consistent with your version." Thompson also believes the perjury indictment might have deterred other witnesses from coming forward.

As for why he indicted Jarmon and Brown for perjury, Belling told Golf Digest in February 2012: "A lot of prosecutors would call it a brilliant stroke of tactical genius." Belling says Brown (Dixon's half-brother) and Jarmon (Dixon's friend) both lied to cover for Dixon, who had accidentally shot Jarmon with a stray round.

Of the prosecution's six witnesses, three testified they saw Dixon firing a gun. Of the three, Aaron Jackson gave the most vivid account. He was there with his little brother, Torriano Jackson, punching and kicking Jarmon, when he heard shots and felt shells brush his body. Shot in the stomach, he crawled to the yellow Geo with the thought of starting it and running over the shooter. He said he then turned to see Dixon kill his brother.

On cross-examination, Jackson was asked to reconcile his current certainty with his statement at the hospital 10 months earlier. Jackson responded, "My memory gets better with time." When questioned why he didn't volunteer Dixon's name (a man he knew) at the hospital, he said, "I don't remember," citing emotional and medical stress.

Emil Adams testified he jumped behind a car when he heard gunshots. Consistent with what he'd told police hours after the shooting, he testified he saw two men walk up to the fight, each carrying guns. But unlike before, at trial Adams could give a description of only one: Dixon. In his police statement Adams had said, The "kind of skinny" guy had a handgun, and the "heavyset" guy had the automatic. At trial Dixon was asked to stand, and Adams agreed the defendant was not heavyset. LaMarr Scott, who is now 6-foot-2, 270 pounds, weighed 200 pounds when he was 18.

There is controversy over the alleged interaction Emil Adams had with private investigator Roger Putnam in 2000. Working on behalf of Dixon's appeal team, Putnam says he visited Adams several times at a barbershop where Adams worked. Putnam said in an affidavit that Emil Adams indicated that his trial testimony had not been truthful and agreed to meet at Putnam's office to record a statement, but he never showed. (Adams has since sworn to police, "I do not know a Roger Putnam. I never talked to Putnam. I never lied in court or was coerced by the District Attorney's Office.")

Bob Lonski is the administrator of the Erie County Bar Association Assigned Counsel Program, which gives public defense to people who cannot afford to retain counsel in criminal matters. In the 18 years Lonski has worked there, Roger Putnam has been a regular investigator for their attorneys. Says Lonski of Putnam: "I've never heard a single mark against his reputation. While some investigators are known as computer sleuths, he's known as a very experienced guy who has a lot of contacts on the streets."

Prosecution Witness No. 3, John Sullivan, had a charge pending in Georgia when he was escorted to

Buffalo under custody to testify. (He was convicted of sexual battery and simple assault.) Shot in the leg during the fight, Sullivan had fled to the steps of a church 86 yards away (as later measured) when he saw the killing. Sullivan admitted to smoking marijuana sprinkled with cocaine and drinking malt liquor earlier in the day, but he said he slept off the high and wasn't hindered by distance or the quality of the streetlights in identifying Dixon.

Jospeh Terranova, Dixon's public defender, waived the opportunity to make an opening statement and called no witnesses. With Jarmon and Brown neutralized by perjury charges, "The witnesses we had left were not that strong," said Terranova after the trial. "If I'd called one or two weak witnesses, the jurors might have asked themselves: *Is that all the defense has to offer? He must have done it.*"

The first pages of the trial transcript detail Terranova relaying his client's request for an attorney other than himself. Valentino Dixon claimed Terranova had visited him only once in jail, was unprepared because there were witnesses he hadn't talked to, and was possibly aligned with the prosecution. Terranova says he was prepared. "When you're appointed by the court, it's not unusual that the client has a certain level of frustration and feeling of powerlessness. It's not unusual that they lash out at the only people capable of helping them."

In the trial, Terranova tried to impeach the credibility of the prosecution witnesses. He stressed the absence of motive and rested on the fact there was no physical evidence linking Dixon to the victim, Torriano Jackson. The murder weapon was never recovered, and the test results of Dixon's clothes and car had produced nothing to submit.



**One of Dixon's colored-pencil-on-paper drawings.**

Carl Krahling, now 53, was the foreman and youngest member of the all-white jury that convicted Dixon of second-degree murder, second-degree attempted murder and third-degree assault. To this day Krahling remains unsettled. "The first vote was 9-3, not guilty, and I was one of those [voting not guilty]," he says. As he remembers, one very vocal juror steadily persuaded the rest over 14 hours. But his most vivid memory is of their 11 p.m. police escort through the chaotic courtroom after the verdict, news cameras flashing and Dixon's mother wailing. On the way out, Krahling says, the judge called him into his chambers and asked, "What took so long?"

Two decades later, Krahling's memory of what the judge said is this: "There's a lot you're not allowed to know. Just trust me, you did the right thing on this. The guy lied to the grand jury; he was involved with weapons charges and drive-by shootings, drug dealings. This guy is a menace and should be off the street. Sleep well tonight, you did the right thing."

Judge Michael D'Amico says his recollection of the case is faint, but he is certain this never happened. "In the first place, I don't usually talk to individual jurors, and, secondly, I would never say something like that."

"In retrospect I should've hung the jury," Krahling told Golf Digest. "All the people testifying seemed like shady characters. And if they were all members of a rival gang, who knows what happened?"

COB 000010

Three months after Dixon was sentenced, Jarmon and Brown faced their perjury trial. A key line in the prosecution's opening remarks reads, "The proof in this case is going to show that only one person had a gun that night. That was Valentino Dixon."

Jarmon and Brown were acquitted of three of four counts of perjury. In essence, the verdict decreed the two were not lying in saying Torriano Jackson had a gun, shot it, and shot it at Mario Jarmon. But the verdict says they were lying in saying LaMarr Scott was the person who shot back.

Judge D'Amico presided over Jarmon and Brown's perjury trial as well as Valentino Dixon's murder trial.

LaMarr Scott entered Attica on the heels of Valentino Dixon. He is serving 25 to 50 years for a 1993 shooting after an armed robbery that left his victim a quadriplegic. He has reverted to the original story he told the TV reporter, that he killed Torriano Jackson. Scott told Golf Digest in March 2012, "Each and every day it eats away at me that I allowed them to convince me to do the wrong thing." He's eligible for parole in 2018, so he risks more prison time if the responsibility for Torriano Jackson's murder is switched to him.

As a reward for a clean disciplinary record, LaMarr Scott is also one of the 7 percent of Attica inmates who live in "honor block." He encounters Valentino Dixon regularly, and both say their relationship is cordial. "You can't think negative in here," Dixon says. "The more you resent your situation, the quicker you're going to start dying."

LaMarr Scott says criminal justice personnel pressured him into changing his story by bringing his foster parents into the meeting room and threatening their well-being after they left. The earliest record of Scott re-confessing is a 1994 interview he had with Dixon's attorney. Again in 2002, Scott took responsibility for Torriano Jackson's death in a sworn statement, but this generated nothing of consequence. On confessing to police detectives two days after the shooting, Scott wrote in his 2002 statement, "I was told that they had who they wanted, and to leave the situation up to them:"

"No, it didn't happen," Christopher Belling says about pressuring Scott. "[Scott] had his own lawyer, and I don't remember any foster parents being there. . . . [Scott] came to the grand jury, and he told a different story. That was the story the grand jury heard, and that's the story they went with."

Valentino Dixon's theory of the case -- and his conviction -- hasn't wavered. He believes criminal-justice personnel saw an opportunity to halt the ostentatious and rising criminality of his cocaine dealing, and seized it. He says he didn't have a gun that night. He believes the prosecution used Sullivan's pending charge as leverage to get him to testify a certain way. The night of the shooting Dixon had been out on bail for 10 months. When he heard shots, he says, he got out of there as fast as he could.

Belling says that any criminal charges Sullivan faced had no connection or impact on Dixon's case. "Apples and oranges," says Belling.

Besides dealing drugs, Dixon's worst mistake might have been cutting ties with distinguished attorney Don Thompson. "Appeal work goes very slowly. I understood his frustration, but it was a frustrating case for us, too," Thompson says. "Probably for good reasons of their own, the witnesses we were trying to track down didn't want to talk or be found."

Of the handful of witnesses who have surfaced since the murder trial, the most compelling might be Tamara Frida, a social worker with a master's degree who was working in a lab at Buffalo General Hospital in 1991. She says she clearly saw LaMarr Scott shoot Torriano Jackson before she scrambled behind her car. That night a bullet punctured the radiator of her red Geo Tracker, and on the drive home it broke down. Fear of

gangland retribution, she says, is what kept her quiet until 1998.

"[Torriano] fell face down in the street, and LaMarr was behind him, shooting. They were headed right toward my car. It all happened maybe 10 yards away," Frida told Golf Digest in March 2012.

A Buffalo police intra-departmental memo dated four days after the shooting documents a phone call from a female who refused to identify herself: "She said Valentino was not the shooter. . . . She was asked if she was the girl from the red Tracker, and she said yes. . . . She would not say if she could identify the shooter. . . . She would think about it and call back later."

Tamara Frida says she was the one who made this phone call, but out of fear she didn't call back.

There have been wrongful convictions in Erie County. In 2008, prosecutors dropped murder charges against Lynn DeJac of Buffalo after 13 years served. In 2010, Anthony Capozzi of Buffalo was awarded $4.25 million for 22 years served for rapes he didn't commit. New DNA evidence overturned both convictions. Unfortunately for Dixon, the particulars of his case make the chance of new DNA evidence virtually nil. The only "scientific" backing Dixon has is the results of a lie-detector test he passed. The administrator of the test, Malcolm Plummer, 75, a career private investigator who now teaches criminal justice at Onondaga Community College, says he is convinced of Dixon's innocence.

As for appeals, Dixon has made three swings, all misses. The best explanation of why his conviction has been upheld is a 100-page report prepared by U.S. Magistrate Victor Bianchini in 2009. The report attempts to sort out which witnesses are telling the truth and which are not. On nearly every matter in dispute the report rules against the prisoner. The report says the statements of investigator Putnam (about Emil Adams) and Tamara Frida both lack "credibility." Magistrate Bianchini writes, "It is quite difficult to believe that [Frida] would stand by silently while Dixon, whom she purportedly knew to be an innocent man, was charged, convicted and imprisoned, based only upon her notion that she might be subject to retribution by persons unknown for reasons unknown." The only statement by LaMarr Scott "which appears to have any reliability, in this Court's opinion, is his sworn testimony before the grand jury, wherein he [said Dixon was the shooter]."

For Jarmon and Brown, the report cites their indictment on four counts of perjury and later conviction, yet omits that each was acquitted on three of the counts. The possible implications of this outcome are not addressed.

"The Magistrate erred in failing to hold a hearing [to hear new witnesses speak] on any issue in this complex case," wrote Jim Ostrowski in 2009, just one attorney who tried for Dixon. "Instead, he relied virtually verbatim on the highly dubious decision in the state court by Judge D'Amico... In the absence of a hearing where the credibility of witnesses could be judged, the Magistrate nevertheless made credibility judgments about witnesses."

Magistrate Bianchini declined to comment with Golf Digest, citing the ethical problem of a judge commenting on a case that is pending.

"A bureaucratic system is set up to protect itself, and so it's not in its interest to admit mistakes," says Ostrowski.

Serving a 39 years-to-life sentence, Dixon will be eligible for parole in 2030, when he is 60. But he maintains hope he will be freed before then. The Exoneration Initiative, an organization that provides free legal assistance to wrongfully convicted persons in New York, has looked into his case. Of all Dixon's dreams, his

COB 000012

3/21/2013 5:16 PM

most vivid is to a draw a golf course from real life.

Keywords: GOLF SAVED MY LIFE, MAX ADLER, GOLF DIGEST, VALENTINO DIXON

Print
E-Mail
Feeds
Share

Get more *Golf Digest!* The game's #1 Golf Publication. Subscribe now.

## Related Links

Golf Saved My Life: Todd Bramson
Golf Helped Me Recover From War
Golf Saved My Marriage: Jeff Melcher
Golf Saved My Life: Hector Manley
Golf Saved My Life: Reg Murphy
Did golf save your life? E-mail us
More From Max Adler

COB 000013
3/21/2013 5:16 PM

GWEN JACKSON
167 BENNETT Village
BUFFALO, NY 14214

BUFFALO NY 142

06 MAR 2013 PM 6 t

POLICE COMMISSIONER
DANIEL DERENDA
74 FRANKLIN St
BUFFALO, NY 14203
14203601399

COB 000001

RECEIVED B.P.D.

2013 MR -7 PM 3 2 1

POLICE COMMISSIONER

March 3, 2013

Dear Commissioner,

 Reading about the Josue Ortiz story in the newspaper
brought me much sadness.  Even sadder is the situation for
my nephew, Valentino Dixon, who has spent 21 years in Attica
prison for a crime he didn't commit.  Law enforcement officials
have known about his innocence for many years, yet have done
nothing to correct this grave injustice.  The Buffalo News
wrote eleven articles, in 2004, about the unfairness of his
trial, and the miscarriage of justice that resulted in a
guilty verdict.  I can't understand how the FBI and two Police
Commissioners have allowed the Erie County District Attorney's
Office to deliberately ignore the multiple injustices in my
nephew's case!

 Fortunately, Valentino is finally getting the media atten-
tion that he so desperately deserves.  His first national inter-
view will air on the Golf Channel, March 12th, at 10:30 pm.
Shortly thereafter, Dateline NBC and The Today Show will also
air his story.  I expect Americans will be horrified to see
how the judicial system operates in Erie County, run by an
arrogant, corrupt District Attorney's Office.  I think the
nation will also be shocked to see that not a single higher
authority recognized the Office's misdeeds, nor stepped in
to correct the misconduct.

 I ask that after watching the upcoming interviews, that
you take whatever action you can to correct the misjustice in
Valentino Dixon's case.

     Sincerely,

     Gwen Jackson

COB 000002

**APPENDIX 1772**

P-32 (6/80)
Docket _____

## BUFFALO POLICE DEPARTMENT
### REPORT TO DISTRICT ATTORNEY

C.D. 91-221-504

ARREST 91-14141

| A | DEFENDANT(s): (First    Name    M.I.    Last) | D.O.B | Date of Arrest |
|---|---|---|---|
| 1 | VALENTINO A. DIXON | 10 /20 /69 | 8 /10 /91 |
| 2 | | / / | / / |
| 3 | | / / | / / |
| 4 | | / / | / / |

**B** PENAL LAW CHARGES: (SECTION & SUB.)  125.25-1,2/120.10-1(3 CTS)/265.03(4 CTS)

**C** WITNESSES -VICTIMS (specify): (INCL. NAME & ADDRESS CITY, TOWN, VILLAGE, ZIP CODE)   TELEPHONE

| | | | |
|---|---|---|---|
| 1 | DETECTIVE MARK STAMBACH | HOMICIDE SQUAD | |
| 2 | V- TORRANO JACKSON (DECEASED) | 19 THATCHER ST. | |
| 3 | V- AARON JACKSON | 19 THATCHER ST. | |
| 4 | V- MARIO JARMON | 1122 EAST DELAVAN | |
| 5 | V- JOHN SULLIVAN | 49 ELMER ST. | |
| 6 | | | |

**D** SEARCH & SEIZURE:  SEARCH WARRANT  [ ] YES  [ ] NO   JUDGE:

WHAT SEIZED:  N/A ·                                    TO LAB ?  [ ] YES  [ ] NO

FROM:  AUTO (Lic. State)          HOME(Address)              PERSON(Name)

**E** IDENTIFICATION:  BY WHOM (List No. In Sec. C)   #1  #2 #3 #4 #5    AT OR NEAR SCENE [XX] YES  [ ] NO

LINE-UP:    DATE    /    /    BY WHOM (List No. In Sec. C)   #   #   #   #   #   #

PHOTOGRAPHS:  DATE    /    /    BY WHOM (LIST No. In Sec. C)   #   #   #   #   #   #

DID VICTIM KNOW DEF?  [XX] YES  [ ] NO   RELATIONSHIP:  FROM NEIGHBORHOOD

**F** STATEMENT OR ADMISSION:  [XX] WRITTEN  [ ] ORAL    DATE:  8 /10 /91    [ ] Copy Attached
CONTENT:    SEE WRITTEN STATEMENT TAKEN BY THE HOMICIDE SQUAD.

(Additional Space on Back)

**G** POLICE KNOWLEDGE OF CRIME:  [XX] RADIO  [ ] OBSERVATION  [XX] CITIZEN  [XX] OTHER

DID REPORTING OFFICER PERSONALLY WITNESS CRIME?  [ ] YES  [ ] NO
PHYSICAL INJURY SUSTAINED: (Describe)  TORRANO JACKSON - DECEASED //JOHN SULLIVAN - THIGH WOUND
(ALL INJURIES FROM GUN SHOTS)  AARON JACKSON AND MARIO JARMON - CRITICAL CONDITION

PROPERTY DAMAGE OR LOSS:  (Describe) ... N/A                    APPROX.LOSS $

**H** ADDITIONAL BACKGROUND INFORMATION OR PREVIOUS KNOWLEDGE OF DEFENDANT OR INCIDENT?
SUPPORTING DEPOSITIONS TO FOLLOW WHEN COMPLAINANTS ARE PHYSICALLY ABLE TO DO SO.
COMPLAINANTS ARE CURRENTLY RECEIVING MEDICAL ATTENTION FOR THEIR GUN SHOT WOUNDS.

(Additional Space on Back)

| OFFICER IN CHARGE OF CASE | RANK | ASSIGNMENT |
|---|---|---|
| | | |

COE001470

Charges

125.25 - 1 & 2 PL          Murder 2ND

265.03      PL             Weapon
                           C felony
                           2ND

Charges

120.10 - 1 PL              assault first
                           3 counts  degree

265.03 PL                  Weapons
                           3 counts

COB 000141

259A
1312hr. Brought in to
Office – Right Rear
at the Scene
of 1183 E. Delevan

Signed by
Suspect

COB 000142

P-1302

Possible Address
of Valentino Dixon

① Fathers house — might be
210 Summer apt #10

② 554 Lisbon — newest
address

③ 368 Koons — aunt

④ Arnice Hennings — girl
209 Moselle        friend
344 Goodyear      (835-6623)

⑤ 61 Rounds      arrest
address

⑥ 162-F          Milton
Donavan         Wright
(associate)

⑦ 301 Koons      Mother
(He is a ASSHOLE)

COB 000143

BPD Comp. 0286



COB 000137

BPD Comp. 0287

Lonergan
Vickeit                    E.C.M.C.

P-1302

(4474)

0129 HRS                              Shots fired
                                      officer in trbl.

2510 Bailey          frontal church
White               guy shot        German
Pontiac

Bailey
E/Delavar

2484 Bailey
P                              2 Victims
                               there

Valentino Dixon    all other coppers
lives down the street
Valentinos          Housing got her  knows he had gun
girl               Housing            Housing on scene
friend                               - Pret #11
                                     Pret #16
                                     Pret #12

COB 000138



APPENDIX 1779

P-1302

DICTATED
4505

Torrano Jackson
#91-145

Sir                                    Det R.B0100-1500

We were instructed to go to
19 Thatcher St and Speak with
Mrs Jackson regarding a Shot
fired at the House. Mrs Jackson
Reports She found a Bullet hole
in the front N Side Glass Patio
Door. She reports that Precinct
#16 had Just left after taking a
Report and Picking up a Bullet
on the floor within the House.
She reports that this Shot at
the House had to have happened
after 0100 hours this date when
the family Retired for the Night.
Mrs Jackson was Waiting for a
Call from the Duty Officer in This
Matter.

We then went to the ECMC, Rm
869, and Interviewed Aaron Leon
Jackson age 20 DOB 1-26-71 of 19
Thatcher St. Aaron is Recuperating
from a Gun Shot Wound to The
Abdomen from 8-10-91.

Aaron reports that he was in a
Car with Travis Powell at
Bailey and Delavan and had a
altercation with Mario Jarman, who
was 2 other Malis. He states Mario
Was talking about pulling a gun on
a Cousin, Something Aaron Stated
He didn't Know about.

COB 000241

P-1302

He describes Mario's Companions as one being Dark Skin w/ a slope Haircut and the other as being Chubby.

Aaron states they left that Area and went home and got TORRANO Jackson his younger Brother. They returned to the Area of Bailey & Delavan and Saw Mario again with the Same two friends. Aaron states that he got out of the Car and asked Mario if he Had a Problem and TORRANO & TRAVIS got out of the Car too.

*at about 0100 hours*

Aaron states Mario put his hands up to fight and He aaron, his, Mario and Tori Did too. while they're the are fighting and Maneuvering in the Street, one of Mario's Companions leave the area on a Bicycle going West on Delavan. He Describes the Biker Short Hair Cut — about taller then he, Aaron, wearing Dark Clothes.

He states while they were throwing Punches, He Hears Shots, feels a tingling, Runs a Short Distance and Sees Tori laying in the Street. Tori asks Me to help him and he says He Cant Move. Aaron states he Sees Travis behind the guy who is Doing the Shooting. Travis picks up Tori and Carrys Him over his Shoulder to Louies Hot Dog Stand.

COB 000242

BPD Comp. 0291

He states the two guys who were
Mario when he first saw Mario
at Bailey & Delavan were still with
Mario when they got in the fight.
He states he doesn't know a Lamar
Scott or Valerie Defon. He further
states he didn't know Mario German
and saw his name in the papers.

He further states Travis Powell
did not go to see Wade and
was not visiting him at the
hospital. He also states he saw
a Michael Bland who lives in his
neighborhood at the Your Office will be kept

at the
shooting
scene.

Resp Thef
R-G.

COB 000243

APPENDIX 1782



COB.000221

APPENDIX 1783





COB 000182

APPENDIX 1784

APPENDIX 1785



COB 000150



COB 000030

Attorney Sean Dennis Hull then appeared at HBO. He was let into see his client. He had a conference with his client in the Lt's office. He left his card with your writer.

Mister Dixon was then taken to Central Booking were as he was Booked for murder and weapons possession and assault. See his arrest and informations for further details. Arrest Cards and info are now a part of this file.

Y C. W. B. K A. O. A. F
N. D.

Respect
R M
M R S

COE001523

**APPENDIX 1788**

## ATTACH TO ACCUSATORY INSTRUMENT

(City) (Town) (Village) of _____    Court Docket No. _____

**PEOPLE OF THE STATE OF NEW YORK**                      **DISTRICT ATTORNEY**
                                                          **of ERIE COUNTY**
-vs-                                                      Indict. No. 91-1476-001
**DEFENDANT** VALENTINO DIXON

### NOTICE TO DEFENDANT OF INTENTION TO OFFER EVIDENCE AT TRIAL
#### Sections 710.30 CPL and 700.70 CPL

**THE PEOPLE** intend to offer at trial:

**I.    STATEMENTS BY DEFENDANT:** Evidence of a statement made by the Defendant to a **Public Servant** engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him.

☑ 1.  *Written* Statement (attach copy)
☑ 2.  *Oral* Statement (Specify: date, place, *content* and to whom made)
8/10/91 - To Det. Mark Stambach at 74 Franklin Street, Buffalo, NY, defendant denied doing the shooting of Torriano Jackson.

_____
_____
_____

**II.    IDENTIFICATION OF DEFENDANT: Testimony identifying the Defendant as a person who committed the offense charged by witnesses who have identified him as such prior to arrest/trial. Specifically:**

☐ 1.  Post Crime Confrontation at or near Crime Scene/Hospital/Police Station
       Date _____    Place _____

☑ 2.  *Photograph* Identification
       Date  8/10/91 &       Place _____74 Franklin Street, Buffalo, NY____
            8/12/91                        Erie County Medical Center

☐ 3.  *Line-Up*
       Date _____    Place _____

☐ 4.  *Observation* of Defendant upon some other occasion relevant to case
       Date _____    Place _____

**III.   EAVESDROPPING WARRANT: Contents of an intercepted communication or evidence derived therefrom.**

☐ 1.  *Eavesdropping Warrant and* accompanying *Application* for Eavesdropping Warrant (attach copies of *both*)

_____

### FOR POLICE USE

Arresting Agency: _____Buffalo Police Dept._____
Arresting Officers (names): ____Donovan & Militello_____    Unit ___Intelligence___

### FOR COURT USE

Arraigning Court: _____
Defendant/Attorney (name) _____    served on (date) _____
                           By: (name) _____

**WHITE - COURT CLERK    YELLOW - DEFENSE ATTORNEY    PINK - FILE    GOLDENROD - FILE**
DA-710.30 (Rev. 4/90) ECDA                                          **COE001527**

INVESTIGATIVE SOLVABILITY FACTORS

If the answer to any question is YES, enter the necessary information in the space provided. If the answer is NO, or the question does not apply mark space N / A and place an X in the proper numbered box.

**1. Was there a witness(s) to Crime? List witnesses below:**

| Name | Address | Apt. | Phone | IF NO PLACE AN X IN BOX |
|------|---------|------|-------|----|
| Witness # one **Travis M. Powell** | **46 Poultney** | | **837-0802** | 1. ☐ |
| Witness # two | | | | |

**2. Can a suspect(s) be named? List Suspects below:**

| Name and / or Alias | Location to be found | |
|---|---|---|
| Suspect # one | | 2. ☐ |
| Suspect # two | | |

**3. Can a suspect(s) be described? List Suspects Description below:**

| Race | Sex | Age | Hgt. | Wgt. | ID scars, marks etc. | Clothes description | |
|------|-----|-----|------|------|---------------------|--------------------|--|
| Suspect # one | | | | | | | 3. ☐ |
| Suspect # two | | | | | | | |

**4. Can suspect(s) be identified? By Whom?** _____ 4. ☐

**5. Can suspect vehicle be described? List description below:**

| Plate No. | State | Year | Make | Model / Type | Color | Any Identifying Characteristics | |
|-----------|-------|------|------|--------------|-------|-------------------------------|--|
| | | | | | | | 5. ☐ |

STOP...In questions 2, 3, 4, 5, the person who makes the identification must be named and his / her name must be entered in Question No. 1.

**6. Is stolen property traceable? List below:**  6. ☐

| QTY | DESCRIPTION | BRAND / MAKE | MODEL NAME | SERIAL NO. / INSCR. | $ VALUE |
|-----|-------------|--------------|-----------|---------------------|---------|
| | | | | | |
| | | | | | |
| | | | | | |

**7. Has Evidence Unit been:**  7. ☐
☐ Requested?  ☐ Performed necessary tasks?  ☐ Photos?
☐ Other?

**8. Is there significant physical evidence present? If so, describe in narrative below.**  8. ☐

**9. Is there a significant M.O. present? If so, describe in narrative below.**  9. ☐

**10. Is there reason to believe that the preliminary investigation cannot be completed at this time? If so, describe in narrative below.**  10. ☐

**11. NARRATIVE** —before making entry in the space below, insert the question number that the entry is describing.

☐ **Investigation turned over to Homicide Detectives**
☐ **Police Info Only?**
☐ **Valentino Dixon-5'10"  160lbs-Brn/Blk**
☐ **B/M Slight build  poss.61 Rounds**
☐ **DOB 10-20-69  Mug #172430**
☐

☐ P-1369 Filed    ☐ P-79 Dist.    ☐ P-126 Dist.     COE001482

8\10\91;MILITELLO/DONOVAN; DIXON WAS ARRESTED THIS DATE FOR THE
SHOOTING (HOMICIDE) OF , OUTSIDE LOUIES HOT DOG STAND THIS DATE.
 7\22\91; DOYLE/STRIECHER; OFFICERS STOPPED VALENTINO DIXON AND A ARNICE
HENNINGS THIS DATE, DIXON WAS DRIVING A WHITE, 76 CADILLAC, N.Y. REG.
?3X-729, REGISTERED TO A DOLORES J. HENRY-GRANDMOTHER OF DIXON.
 \17\91;MILITELLO/DONOVAN; OFFICERS REC'D INFO THAT DIXON HAS OPENED A
 EW HOUSE AT 154 BERKSHIRE IN PCT. 16. IT IS BELIEVED THAT CABS PULL UP
ALL DAY AND LEAVE WITHOUT FARES.
 5\22\91;PACE/MILLER; DIXON WAS STOPPED THIS DATE AT GOODYEAR AND
BISSEL, IN A GREEN MERCEDES, N.Y. REG. 8EM-277. ALSO IN THE VEHICLE WAS
A DIONNE L. STEWARD OF 86 STEVENS, AND A EDWARD D. MCCLOUD OF 1307
SYCAMORE ST.
 5\14\91;DOYLE/STREICHER; IT IS KNOWN THAT DIXON IS OR WAS DEALING AT
1575 GENESEE, UPPER FLAT. NO FURTHER INFORMATION IS AVAILABLE.
 2\18\91;TIS/MIN; DIXON IS NOW BELIEVED TO BE LIVING AT 368 KOONS WHERE
HIS AUNT IS KNOWN TO RESIDE.
 1\31\91;TIS/MIN; ON OR ABOUT THIS DATE DIXON AND DAVID JONES WERE
SPOTTED IN A 91 SUBARU NY REG. LAM-774, OUTSIDE OF 57 BISSELL. CAR IS
OWNED BY A SHELLY HAWKINS.
 1\31\91;BAR/DER; ON OR ABOUT THIS DATE THE NARCOTICS SECTION INFORMED
BAR/DER THAT DIXON WAS ARRESTED WITH 1.5 OUNCES OF COCAINE AND A LOADED
SHOTGUN, ATF STATES THAT THEY WILL PROSECUTE ON THE WEAPON.
ͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰ Line : 1      Col : 1     ͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰINS/

F4Block  F10Save

NEW HOUSE AT 154 BERKSHIRE IN PCT. 16. IT IS BELIEVED THAT CABS PULL UP
ALL DAY AND LEAVE WITHOUT FARES.
 5\22\91;PACE/MILLER; DIXON WAS STOPPED THIS DATE AT GOODYEAR AND
BISSEL, IN A GREEN MERCEDES, N.Y. REG. 8EM-277. ALSO IN THE VEHICLE WAS
A DIONNE L. STEWARD OF 86 STEVENS, AND A EDWARD D. MCCLOUD OF 1307
SYCAMORE ST.
 5\14\91;DOYLE/STREICHER; IT IS KNOWN THAT DIXON IS OR WAS DEALING AT
1575 GENESEE, UPPER FLAT. NO FURTHER INFORMATION IS AVAILABLE.
 2\18\91;TIS/MIN; DIXON IS NOW BELIEVED TO BE LIVING AT 368 KOONS WHERE
HIS AUNT IS KNOWN TO RESIDE.
 1\31\91;TIS/MIN; ON OR ABOUT THIS DATE DIXON AND DAVID JONES WERE
SPOTTED IN A 91 SUBARU NY REG. LAM-774, OUTSIDE OF 57 BISSELL. CAR IS
OWNED BY A SHELLY HAWKINS.
 1\31\91;BAR/DER; ON OR ABOUT THIS DATE THE NARCOTICS SECTION INFORMED
 AR/DER THAT DIXON WAS ARRESTED WITH 1.5 OUNCES OF COCAINE AND A LOADED
SHOTGUN, ATF STATES THAT THEY WILL PROSECUTE ON THE WEAPON.
 110790 SAR-; DIXON ARRESTED UNDER THE NAME OF "SHAWN ANDERSON" DCJS
FILED UNDER THIS NAME. ASSOCIATED WITH STEVE AUSTIN AND RODNEY
COLE.COUSIN IS DONALD HENNINGS. DIXONS GIRLFRIEND'S HOUSE WAS ROBBED BY
THE MILLS BROTHERS(THEY ARE WANTED FOR THE SAME) ROBBERY WAS DRUG
RELATED. AS OF 11/10/90, DIXON WAS BAILED OUT IN RELATION TO SHOOTING OF
TONY WRIGHT.
ͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰ Line : 23     Col : 1     ͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰͰINS/

F4Block  F10Save

COE001587

```
RECORD DATE: 11/06/1990  1ASTER ENTRY FORM - BUFFAL P.D.    UPDATED :11/06/1990
                         2222222222222222222222222222222
DATE SPOTTED:                               PROJECT NAME: BLACK O/C

NAME: DIXON     ___,VALENTINO    AKA: "TINO     " CRIME STATUS:G.Y.C. GROUP

ADR:  61      ROUNDS                 DOB:  05/14/1970   CITZ: US
      BUFFALO    , NY                SSN: 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
PH:   (   )                          RACE/SEX: BM
                                     HEIGHT:   511
   MUG: 172430                       WEIGHT:   160
DCJS:                                HAIR:     BK
 FBI:                                EYES:     BN
NCIC: 6375891Q                       SCARS/TATOOS:
                                     EMPLOYED BY: STUDENT
REMARKS:  8\10\91;MILITELLO/DONOVAN; DIXON WAS ARRESTED THIS DATE FOR THE SHOOT
IMMMMMASSOCIATE(S) OF SUBJECTMMMMMM;IMMMMMM VEHICLES LINKED TO SUBJECT  MMMMM;
;ASSOC:             ,           ::VEHICLES:NY/8EM-277  /   /MERCED/GRN  ;
;DOB:          SSN:           :;  OWNER:DIXON    , Valentino          ;
;ADR:                         ::  ASSOC:DIXON    , Valentino          ;
;           ,    PN:(   )     ::OWNER ADR: Rounds    / Buffalo        ;
MMMMMMMMMMMMMMMMMMMMMMMMMMMMMMMMMM<MMMMMMMMMMMMMMMMMMMMMMMMMMMMMMMMM<
VIEWMMMMemoMMMMMMMMMMMMMMMM Record : 161 MMMMMMMMMMMMMMMMMMMMMMMMMMMMMMAM

    Change Enter Browse  Find Index  MainMenu  Options
```

COE001588

# PERSONAL PROPERTY STATEMENT
### ERIE COUNTY MEDICAL CENTER

Property Record No : _____         Patient Name: _____

Date : _____ Time: _____     Patient Address: _____

# Personal Property Bags: _____     "A" Number: _____

## SECTION 1: PATIENT DECLARATION

I understand that the Erie County Medical Center assumes no liability for the loss of personal property unless this property is deposited in the hospital's safe. I also understand that due to space limitations, the use of the hospital safe is limited to me for anything not identified below.

Given my understanding of the above, I choose to : 1. _____ Deposit 2. _____ Not deposit items in the hospital safe. 3. _____ I have no property to deposit nor will I bring anything of value into the hospital.

I have read and understand the above statements.

Patient/ Patient Representative Signature: *all property given to Buffalo homicide*

*belt, Sweatshirt, shirt, pants, underware, all cut Sneakers*

Witness Signature: *SK Badgley RN    Serena Scott RN*    Date: *8/10/91*    *Det. Hu Smo 0420 8/10/9*

## SECTION 2: DEPOSIT INFORMATION (COMPLETE ONLY IF A DEPOSIT IS MADE AND APPROPRIATE SPACE ABOVE IS CHECKED.)

I am requesting that the items checked below be placed in an envelope, sealed, and placed into the hospital safe. The envelope will be returned to me, or an individual I legally empower, in full and sealed. Return is limited to the hours between 9:00 a.m. and 4:00 p.m. on normal work days.

### Patient Valuables

| | | | |
|---|---|---|---|
| Key(s)  # _____ _____ | Jewelry _____ (Describe below) | | |
| Wallet _____ | Insurance Cards _____ | | |
| Purse and Contents _____ | Drivers' License _____ | | |
| Cash  ($ _____ ) _____ | Soc. Security Card _____ Other _____ | | |

Describe Jewelry/Other here: _____

Patient/Patient Representative Signature: _____

Date: _____

Witness Signature: _____     Date: _____

## SECTION 3:   RECEIPT OF PATIENT PROPERTY (COMPLETED BY THE CASHIER'S OFFICE.)

A.  Receipt of envelope by Cashier's Office: (To be completed by Cashier receiving envelope.)

Cashier's Signature: _____     Date: _____

Date Envelope Rec'd.: _____

B.  Return of envelope to Patient or Patient Representative:   (To be completed on Cashier's copy only at the time the envelope is returned to Patient or Patient Representative.)

Date Envelope Returned: _____

Patient or Patient Representative's Signature: _____

Cashier's Signature: _____

Completed in triplicate:

Original:  Bag Copy          Pink:  Patient's Copy          Yellow:  Patient's File

Gold:  Cashier's Copy (Wrap around bag - do not staple )

Form 620153  3/91

COE001602

**APPENDIX 1793**

**APPENDIX T794**



1

OCT 1 3 1992

ERIE COUNTY
DIST. ATTORNEYS OFC.

COUNTY COURT OF THE STATE OF NEW YORK

COUNTY OF ERIE : CRIMINAL TERM : PART 1

--------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK          :    Indictment
                                                  No. 91-1476-001

             -against-                       :

VALENTINO DIXON,                             :    Murder 2d

                    Defendant.               :    Trial

--------------------------------------------x

                              Erie County Hall
                              Buffalo, New York  14202
                              Monday, June 8, 1992

B e f o r e :

             HONORABLE MICHAEL L. D'AMICO

                                        Judge

A p p e a r a n c e s :

        KEVIN M. DILLON, ESQ.
             District Attorney, Erie County
             BY:  CHRISTOPHER J. BELLING, ESQ. &
                  LEONARD E. KRAWCZYK, ESQ.
                  Assistant District Attorneys
                  Appearing for the People

        JOSEPH J. TERRANOVA, ESQ.
        Appearing for the Defendant

                         Kenneth D. Meier, C.S.R.
                         Official Supreme Court Reporter

COE000001

2

I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| John A. Sullivan | 74 | 96 | | |
| Emil Adams | 143 | 164 | | |
| Aaron Jackson | 212 | 236 | 277 | |
| Travis Powell | 283 | 304 | | |
| Robert Lewis | 331 | 341 | 359 | |
| Freddie Stancil | 361 | 369 | | |
| James Diegelman | 382 | 394 | | |
| John N. LaDuca | 403 | 413 | | |
| James P. Lonergan | 427 | 439 | | |
| John Vickerd | 445 | 449 | | |
| Henry Smardz | 455 | 474 | | |
| Frank F. Tucci | 489 | 491 | | |
| Michael Dujanovich | 493 | | | |
| Bert Pandolfino | 504 | | | |
| Dr. Thomas Gordon | 515 | 520 | | |
| Fazbllah Loghmanee | 524 | 529 | | |

E X H I B I T S

| PEOPLE'S | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| No. 1 (Map) | 42 | 95 |
| No. 2 thru 32 (Photos) | 42 | |
| No. 13, 15 | " | 236 |
| No. 9, 16 | | 283 |

COE000002

3

## E X H I B I T S

| PEOPLE'S | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| No. 8, 11  (Photos) | 42 | 304 |
| Nos. 2, 3, 7, 10, 12, 14<br>17, 25, 32 | 42 | 439 |
| Nos. 4, 5, 26 thru 31 | 42 | 474 |
| Nos. 20, 21, 22, 24 (Photos) | 42 | 485 |
| No. 33 (Photo) | 94 | |
| No. 34 (Ev. bag & contents) | 283 | 474 |
| No. 34-A (gun) | 283 | 474 |
| No. 34-B (casing) | 283 | 474 |
| No. 34-C (shell casings) | 283 | 474 |
| No. 34-D ( 9-mm bullet) | 283 | 474 |
| No. 35 (ev env/bullet) | 283 | 474 |
| No. 36 (ev env/bullet jacket) | 283 | 474 |
| No. 37       " | 283 | 474 |
| No. 38 (ev env/lead fragment) | 283 | 474 |
| No. 39 (ev env/casing) | 283 | 474 |
| No. 40 (ev env/bullet) | 283 | 485 |
| No. 41 (ev env/bullet) | 283 | 485 |
| No. 42       " | 283 | 489 |
| No. 43       " | 283 | 489 |
| No. 44       " | 283 | 489 |
| No. 45       " | 283 | 489 |
| No. 46       " | 283 | 489 |
| No. 47 (Medical records) | 403 | 405 |
| No. 48 (Sisters Hosp. records) | 515 | 518 |

APPENDIX 1797

3-A

# E X H I B I T S

<u>DEFENDANT'S</u>                                    <u>FOR IDENT.</u>

 A (Statement-E. Adams)                        205

|                                                      | PAGE |
|------------------------------------------------------|------|
| Sandoval Hearing                                     | 14   |
| Proceedings of Wednesday, June 10, 1992              | 32   |
| Preliminary Charge                                   | 42   |
| Opening Statement of Mr. Belling                     | 60   |
| Proceedings of Thursday, June 11, 1992               | 164  |
| Proceedings of Friday, June 12, 1992                 | 402  |
| Proceedings of Monday, June 15, 1992                 | 513  |
| Closing Summation of Mr. Terranova                   | 557  |
| Closing Summation of Mr. Belling                     | 586  |
| Jury Charge                                          | 613  |
| Proceedings of Tuesday, June 16, 1992                | 613  |
| Jury Verdict                                         | 692  |

COE000004

APPENDIX 1798

164

Adams - Terranova - Cross

1

2       or if anybody attempts to talk to you about this

3       case.  Any questions?  9:30.  Counsel, anything?

4       See you in the morning.

5           (4:55 p.m., Court adjourned.)

6       Proceedings of Thursday, June 11, 1992.

7           (10:15 a.m., jury, counsel and defendant

8       present.)

9  E M I L    A D A M S, having been previously duly called and

10 sworn, resumed the stand, and testified further as follows:

11          THE COURT:  Good morning, ladies and

12      gentlemen.  We are going to continue, I believe,

13      with the cross-examination of Emil Adams; is that

14      right?

15          MR. TERRANOVA:  Yes, your Honor.  Could I just

16      have a moment while the witness is taking the

17      stand?  I just received a statement that I haven't

18      had time to go over.

19 CROSS-EXAMINATION

20 BY MR. TERRANOVA:

21     Q.   Mr. Adams, I would like to ask you some questions

22 about this incident, and specifically referring to your

23 testimony from yesterday.  Do you recall making a statement

24 right after the incident occurred, sir?

25     A.   To the police.

165

Adams - Terranova - Cross

1

2     Q.    Okay.  How did you come to give a statement to the
3  police?

4     A.    They arrived on the scene.

5     Q.    Okay.  Were there still a lot of people at the
6  scene when the police arrived?

7     A.    Yes.

8     Q.    Did you approach a police officer?

9     A.    He approached me.

10    Q.    All right.  You remember the name of that police
11 officer?

12    A.    No, I don't.

13    Q.    Okay.  So, a police officer came up to you and said
14 what?

15    A.    Did you see what happened?  He asked me did I see
16 what happened, and asked me Tori's name.

17    Q.    So you were standing by Tori?

18    A.    Yes, I was sitting there holding him.

19    Q.    Okay, could you speak up.  I'm everything a hard
20 time hearing you.

21    A.    I was sitting there holding him.

22    Q.    All right, so the ambulance crew hadn't arrived
23 yet?

24    A.    Yeah, they arrived the same time.

25    Q.    Okay.  And the police officer asked you your name

169

Adams - Terranova - Cross

1

2    A.   I can't recall if that's the street or not.

3    Q.   Who was at that party on Newberg Street?

4    A.   I don't remember.

5    Q.   You didn't know anybody there?

6    A.   No, just the people I was with.

7    Q.   Pardon me?

8    A.   Just the boy I was with.

9    Q.   Joseph Washington?

10    A.   No, he didn't go.  I was over to his house.

11    Q.   All right, who did you go to the party on Newberg

12 Street with?

13    A.   Boy named mark.

14    Q.   Now you don't know Mark's last name?

15    A.   No.

16    Q.   Now, you were in town last August.  Do you reside

17 permanently in Saginaw, Michigan?

18    A.   Yes.

19    Q.   Is that where your home is?

20    A.   Yes.

21    Q.   You were brought here for this trial from Michigan?

22    A.   Yes.

23    Q.   Okay.  Did you talk to Mr. Belling or his assistant

24 in this trial, Mr. Krawczyk, before taking the stand today?

25    A.   No, I didn't.

206

1                   Adams - Terranova - Cross

2    A.    It's mine.

3    Q.    All right.  Emil Adams, right?

4    A.    Yes.

5    Q.    And you were under oath at that time, were you not?

6    A.    Yes.

7    Q.    You were told to tell the truth, and you believe

8    you did?

9    A.    Yes.

10   Q.    Okay.  Now, you told us earlier you gave this

11   statement to Detective Stambach and you had an opportunity to

12   read it over to make sure there were no corrections to be

13   made before you signed it; is that right?

14   A.    Yes.

15   Q.    Okay, you weren't pressured or anything, were you?

16   A.    No.

17   Q.    Detective Stambach didn't threaten you to make a

18   statement, did he?

19   A.    No.

20   Q.    All right.  Do you recall being asked a question by

21   Detective Stambach appearing on Page 2, about a third of the

22   way down the page, the question was:

23   "Q.  Can you tell me what the person that had the Tech 9

24   looked like?"   Do you recall being asked that question?

25   A.    No, I don't.

Case 1:19-cv-01678-MAV-JJM Document 167-5 Filed 12/15/23 Page 202 of 224

P-60 (Rev 2  88)
SEE INSTRUCTIONS ON BACK
PREPARE IN DUPLICATE
(STRIKE OUT NON APPLICABLE WORDS ¬PHRASES: cross out one)

THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Victim: _____
                     ( relationship to victim )

THE PEOPLE OF THE STATE OF NEW YORK
                     (Defendant's Name) (Below)

V.S. _____Valentino A Dixon_____ , ____61 Rounds____

                     ( relationship to defendant )
                     (Defendant's Address)  (Below)

_____
          (Complainant's Name)  (Below)

                     (Address or Police Unit)  (Below)

I, _____Det M Stambach_____ , ____Homicide____

accuse ____Valentino A Dixon_____ , _____, the defendant(s)
                                                                              A.M.
in this action, that on or about the ___10__ day of ___August_____, 19 _91_ at or about _____01:29___ P.M. x
in the City of Buffalo, did *intentionally, *knowingly, ~~*recklessly~~, *unlawfully, *~~without authority or legal~~ commit the *crime

~~the crimes~~ ~~the crime~~ ~~the crimes~~ *felony of ___Murder in the 2nd degree; Criminal Possession of a Weapon
                                          Assault in the 1st degree              2nd de

the provisions of ⁺ Section_____ Subdivision _____ ~~of the penal law of the state of New York *~~

          Section ___125.25___ Subsection ____1,2____ of the Penal Law of the State of New York *

          Section ___265.03___

          Chapter ___120.10___ Section _____1_____ ~~XXXXXXXX NXXXXXXXX NX NXXX XXXXXX XXXXXX~~

(Set forth below the statement of the complainant, based upon personal knowledge, or upon information and belief, alleging facts of
an evidentiary character, supporting, or tending to support, the charges.)  *STRIKE ALL WORDS NOT APPLICABLE

The facts upon which this accusation is based are as follows:  *A. OF MY OWN KNOWLEDGEX☒ *B. ON INFORMATION AND BELIEF
                                                                              &

          125.25-1,2    Murder in the 2nd degree

          In  that the defendant, while at Bailey & Delavan, did under circumstances  evincing
          a depraved indifference to human life, recklessly engage in conduct which created
          a grave risk of death to another person, and did with intent to cause the death of
          Torrano Jackson, did cause the death of Torrano Jackson, in that the defendant did
          while at the above location shoot the victim causing his death at the Erie County
          Medical Center.
          The above information is based upon 1) your deponent personally knowing the victim
          Torrano Jackson to be expired from bullet wounds at Bailey & Delavan, Buffalo,NY.
          2) Affidavit dated 8-10-91 from victim John Sullivan, who stated that the above
          named defendant did shoot the deceased on 8-10-91 at Bailey & Delavan.


          265.03  Possession of a Weapon in the 2nd degree

          In that the defendant, while at Bailey & Delavan, did possess a loaded firearm,
          to wit: a Tech-Nine 9mm weapon, with the intent to use said weapon unlawfully
          against Torrano Jackson, Aaron Jackson, Mario Jarmon, John Sullivan; in that
          the defendant did while  at Bailey & Delavan, did shoot Torrano Jackson causing
          his demise; and did shoot Mario Jarmon, Aaron Jackson and John Sullivan, seriously
          injuring said complaintants.
                                                                         .

                                                                    Page 1 of __2__ Pages
          mb

NOTICE: *False statements made herein are punishable as a class "A" misdemeanor pursuant to section 210.45 of the Penal
          Law of the State of New York.  ●●●●●●● Forms P-60 & P-60A must be signed by the Complainant.●●●●●●●

Date ·___August 10_____19 _91_              Mark Stambach_____ Complainant
                                                  (signed)

____Det M Stambach____          _DET_          _Homicide_          4:15   ☒☒M.
  (Police Officer)        (Rank)              (Command)            (Time)       P.M.

Supporting Deposition attached: ____Yes _XX_ No  Number ____  Admissions made? _XX_Yes ____ No, If yes, include in narrative
                                                              or supporting deposition.
          [ ]  2nd Platoon                   Pre-trial Identification Made _XX_ Yes ____No
Assignment
          [ ]  3rd Platoon                    How? ___by Officer_____

COE001672

APPENDIX 1803

INFORMATION COMPLAINT   *(Cross out one)   (Continued)

BUFFALO POLICE DEPARTMENT
THE CITY COURT OF BUFFALO,
COUNTY OF ERIE, STATE OF NEW YORK

Page __2__ of __2__ Pages

120.10-1    Assault in the 1st degree

In that the defendant did, with intent to cause serious physical injury to
Aaron Jackson, Mario Jarmon, John Sullivan; cause such injury, to wit:
John Sullivan was shot in the thigh, treated at Sister's Hospital; Mario Jarmon
shot in the hip and stomach, is in critical condition at ECMC in ICU;
Aaron Jackson shot through the buttocks into the stomach, is in critical condition
at ECMC in ICU; by means of a deadly weapon, to wit: a Tech-Nine 9mm  weapon,
in that the defendant did shoot the above named complaintants while at
Bailey & Delavan.

mb

NOTICE: *False statements made herein are punishable as a class "A" misdeameanor pursuant to section 210.45 of the Penal Law
of the State of New York.* ●●●●●●●●Forms P - 60 & P - 60A must be signed by the Complainant ●●●●●●●

Date _____ August 10 _____ 19 _91_          Mark Stambach          _____ Complainant
                                                    (signed)

_____ Det M Stambach _____        DET          _____ Homicide _____          4:25   XXXX
   (Police Officer)        (Rank)                    ( Command )                   P.M.

COE001673

APPENDIX 1804



COUNTY OF ERIE
OFFICE OF THE
DISTRICT ATTORNEY

KEVIN M. DILLON
DISTRICT ATTORNEY

January 9, 1992

TELEPHONE
716-858-2424
FAX 716-858-7425

John J Molloy Esq
1299 Union Road
West Seneca NY  14224

RE:  People v. Valentino Dixon
     File No. 91-1476; Witness: Lamar Scott

Dear Mr. Molloy:

        This letter will serve to confirm and memorialize the
fact that today, January 9, 1992, the Hon. Joseph P. McCarthy,
Erie County Judge, sitting in Criminal Special Term, assigned you
to represent the above-captioned witness, Lamar Scott, in regard
to the investigation of a homicide presently entitled People v.
Valentino Dixon, File No. 91-1476.

        As we discussed in my office this date, Mr. Scott has
claimed that it was he, not the charged defendant, who committed
this crime.  Obviously, therefore this office sought to have
counsel assigned to represent Mr. Scott in regard to the Grand
Jury proceedings and Judge McCarthy assigned you for that purpose.

        I have forwarded to your office, with Lamar Scott, a
copy of the sworn statement he gave to the Buffalo Police
Department.  Should you desire to view the videotaped interview
which he gave to WGRZ-TV in which he also admits being the shooter
in this case, please do not hesitate to contact me.

        Thank you for your anticipated cooperation.

                        Very truly yours,

                        KEVIN M. DILLON
                        DISTRICT ATTORNEY

                    BY:  CHRISTOPHER J. BELLING
                         Chief Assistant District Attorney
                         Homicide Bureau

CJB:mb

cc:     William J Diggins Esq
        630 Brisbane Building
        Buffalo NY  14203

25 DELAWARE AVENUE, BUFFALO, NEW YORK 14202        **COE001692**

STATE OF NEW YORK
COUNTY COURT   :   COUNTY OF ERIE

------------------------------------
THE PEOPLE OF THE STATE OF NEW YORK    AFFIDAVIT

              vs                       File No. 91-1476

     VALENTINO DIXON
                    Defendant

     LAMARR SCOTT
                Material Witness
------------------------------------

STATE OF NEW YORK    )
COUNTY OF ERIE       ) SS:
CITY OF BUFFALO      )

         CHRISTOPHER J. BELLING, being duly sworn, deposes and
says:

         1.   That he is an Assistant District Attorney, appearing
of counsel to KEVIN M. DILLON, District Attorney of Erie County,
on behalf of the People of the State of New York.

         2.   That he is fully familiar with the facts and
circumstances surrounding the above-captioned matter, which is a
grand jury investigation into the August 10, 1991 machine gun
slaying of TORRIANO JACKSON, which occurred in the vicinity of
Bailey Avenue and East Delavan Avenue in the City of Buffalo.

         3.   That the above-captioned defendant, VALENTINO DIXON,
is presently serving a state prison sentence in regard to other
charges; however, he has been identified by at least three (3)
witnesses to the shooting of TORRIANO JACKSON as having been the
person who wielded a Mack 10 machine gun in killing Torriano
Jackson and wounding three (3) others.

**COE001696**

        4.    That pursuant to the investigation of this case, an
individual named LAMARR SCOTT has come forward at the urging of
VALENTINO DIXON's family and confessed to the news media and the
Buffalo Police Department that he was in fact the shooter.    Mr.
SCOTT spoke to the news media and to the Buffalo Police Department
on or about August 12, 1991.

        5.    That pursuant to the continuing grand jury
investigation, your deponent caused a grand jury subpoena to be
served upon LAMARR SCOTT on or about the 9th day of January, 1992.
Your deponent also took LAMARR SCOTT before County Court where he
was assigned an attorney to represent him.    The attorney is JOHN
J. MOLLOY, Esq.

        6.    That on January 10, 1992 your deponent had a
conference with Mr. MOLLOY wherein he confirmed that LAMARR SCOTT
had falsely confessed to both the news media and the Buffalo
Police Department at the urging of VALENTINO DIXON's family and
that he would appear on Monday, the 13th of January, to give
testimony before the grand jury that he did not shoot TORRIANO
JACKSON or any of the other four (4) victims but had falsely
confessed to same at the urging of the defendant, VALENTINO
DIXON's family.

        7.    Mr. MOLLOY has also informed your deponent that
LAMARR SCOTT has advised him that as soon as he has completed his
grand jury testimony, he plans to flee the jurisdiction out of
fear for VALENTINO DIXON and his family.

                                - 2 -


                                                    **COE001697**

8.    That the People's case would be materially and substantially weakened if LAMARR SCOTT should not be available to give testimony at the trial of the indictment which will no doubt result from the grand jury proceeding of January 13, 1992.

WHEREFORE, your deponent respectfully asks this Court to (a) issue a warrant pursuant to Section 620.30-2(b)(i) for his arrest and delivery to ~~New York~~ *ERIE* County Court where a hearing will be had to determine if he is a material witness and (b) that the witness be held without bail pending such hearing pursuant to 620.30 of the Criminal Procedure Law and (c) declare LAMARR SCOTT a material witness pursuant to Article 620 of the Criminal Procedure Law relative to the case of The People of the State of New York versus Valentino Dixon, File No. 91-1476 and (d) the People also request that inasmuch as the information contained in this affidavit was received from LAMARR SCOTT's attorney, that the Court review this affidavit in-camera and seal same so as not to destroy the attorney-client relationship between Mr. MOLLOY and his client, LAMARR SCOTT.

CHRISTOPHER J. BELLING
Assistant District Attorney

Sworn to before me this
13th day of January, 1992

Notary Public
State of New York
Qualified in Erie County
My Commission Expires 9/30/93

- 3 -

COE001698

**APPENDIX 1808**

REPORTING DATE

# ERIE COUNTY DISTRICT ATTORNEY
# GRAND JURY REPORT

| INDICTMENT # | | |
|---|---|---|
| YEAR | FOLDER # | SUFFIX |
| 91 | 1476 | 001 |

| PROMIS # (PRE) | PROMIS # (POST) | LAST, FIRST, MI   DEFENDANT NAME | DEFN # | DATE GJ CHARGED (COMPLETED PRESENTATION TO GJ) | IN-DICTED | NO BILLED | RETURNED COURT |
|---|---|---|---|---|---|---|---|
| | | Dixon   Valentino | 1 | 1/13/92 | ✓ | | |
| | | | 2 | | | | |
| | | | 3 | | | | |
| | | | 4 | | | | |
| | | | 5 | | | | |

| LAST, FI, MI   PROSECUTOR | LAST, FI, MI   JUDGE | COURT | TERM & PART | LAST, FI   (STENO) REPORTER |
|---|---|---|---|---|
| Belling C.J. | | HH | 12 Ft | Williams   Cindy |

**IMPORTANT** - The Identifying Defendent Number (to the right of the Defendent's name) should be entered to the left of every count as charged.

| DEFN # | CT | ATT | LAW PL | CHARGES CHARGE CODE | ACC | CLS | CAT | DATE | WITNESSES NAME/ADDRESS | V/W/P |
|---|---|---|---|---|---|---|---|---|---|---|
| | 01 | PL | | 125.25 -1 | | A | Fel | 1/13/92 | LaMarr Scott | W |
| | 02 | | | 125.25 -2 | | A | " | " | Leonard Brown | W |
| | 03 | yes | | 110 -125.25 -1 | | B | " | " | Mario Jarmon | W |
| | 04 | | | 120.10 -1 | | C | | " | Freddie Stancil Jr. | W |
| | 05 | | | 120.10 -3 | | C | | " | Robert Lewis Jr. | W |
| | 06 | | | 120.10 -4 | | C | | " | Emil Adams | W |
| | 07 | | | 120.05 -6 | | D | | 11/6/91 | John Sullivan III | V |
| | 08 | | | 120.00 -2 | | A | Mis | " | aaron Jackson | V |
| | 09 | | | 265.03 | | C | Fel | DNT | Det James Lonergan | |
| | 10 | ✓ | | 265.01 -2 | | A | Mis | DNT | Det John Vichere | |
| | 11 | | | | | | | DNT | Det Daniel DiPirro | |
| | 12 | | | | | | | DNT | Det Mark Stambach | |
| | 13 | | | | | | | 11/24/91 | Michael Bland | W |
| | 14 | | | | | | | 1/13/92 | P.O. James Dieselman | |
| | 15 | | | | | | | 1/13/92 | Frances Powell | |
| | 16 | | | | | | | | | |
| | 17 | | | | | | | | | |
| | 18 | | | | | | | | | |
| | 19 | | | | | | | | | |
| | 20 | | | | | | | | | |

OTHER NOTES

DA-S-10 (Rev. 5/91) ECDA

**COE001702**

STATE OF NEW YORK
COUNTY COURT  :  COUNTY OF ERIE

* * * * * * * * * * * * * * * * * *

THE PEOPLE OF THE STATE OF NEW YORK

                    -vs-
                                        RESPONSE TO DEMAND TO PRODUCE
            VALENTINO A. DIXON,
                    Defendant           Indictment No. 91-1476-001

* * * * * * * * * * * * * * * * * *

        PLEASE TAKE NOTICE; pursuant to Section 240.20 of the
Criminal Procedure Law and pursuant to a Demand to Produce served
upon the Office of the District Attorney for Erie County on or
about the 26th day of February, 1992, the People of the State of
New York, by KEVIN M. DILLON, District Attorney of Erie County,
CHRISTOPHER J. BELLING, Assistant District Attorney, of counsel,
furnish the following information to the defense.

        1.  There are no written, recorded or oral statements of
the defendant relating to this criminal transaction other than as
reflected in the 710.30 Notice filed and served.  There are no
co-defendants to be tried jointly in this case.

        2.  There are no transcripts of testimony relating to
this criminal action or proceeding wherein the defendant or any
co-defendant gave testimony.

        3.  Regarding the request appearing at Paragraph c of
the defendant's Demand to Produce, please find attached the
following:

COE001855

(a)   Buffalo Police Department form P-73 dated 8-10-91 authored by Det. Stanley W. Suszek with a Xerox copy of one Polaroid photograph attached thereto.

(b)   The order for an autopsy of Torriano Jackson.

(c)   A diagram of the human body prepared by the Medical Examiner's Office and bearing a date stamp from the Buffalo Police Department Homicide Bureau, August 10, 1991, 12:22 P.M.

(d)   The Medical Examiner's Certification of Death in regard to Torriano Jackson.

(e)   The Pathologic Examination Report in regard to Torriano Jackson.

(f)   A certification in regard to fingerprints signed by Det. Henry M. Smardz of the Buffalo Police Department dated December 24, 1991.

(g)   A Buffalo Police Department form P-77B with two attachments reflecting an investigation at 19 Thatcher Street, August 21, 1991.

(h)   Buffalo Police Department form P-73 dated 8-12-91 authored by Det. Henry M. Smardz (two pages).

(i)   A two-page Buffalo Police Department form P-77B-1 dated 8-10-91.

(j)   Copies of Evidence Tags Number 1 - 22.

(k)   A Request for Forensic Laboratory Examination form dated 8-10-91 submitted by Det. Henry Smardz.

COE001856

(l)   A Buffalo Police Department form P-127 with an attached form P-10A dated 8-10-91 and both bearing the property number 179477.

(m)   An Erie County Medical Center Personal Property Statement regarding Torriano Jackson.

(n)   An Erie County Medical Center Personal Property Statement regarding Aaron Jackson with one page attached.

(o)   Medical records of Aaron Jackson.

(p)   Medical records of John A. Sullivan III.

4.   Various crime scene photographs and related photographs as well as videotapes relative to this matter are available for inspection by the defense by making arrangements through Assistant District Attorney Christopher J. Belling.

5.   Stolen property is not involved in this case and as far as might be germaine under Paragraph e of the defendant's Demand to Produce.

6.   Upon information and belief two vehicles connected with the defendant were seized in regard to this investigation.

7.   Upon information and belief at this time the People are not possessed of any tapes or other electronic recordings which we intend to introduce at trial.

8.   In terms of required disclosure, the People hereby disclose to the defense the following information:

(a)   Attached hereto is a Form P-73 dated 8-14-91 authored by Det. Mark R. Stambach.

- 3 -

COE001857

(b)   Mario D. Jarmon, of 1122 East Delavan Avenue, Buffalo, claims that the defendant, Valentino Dixon, did not do the shooting charged against him in this indictment.

(c)   Leonard L. Brown, aka Leonard Shannon, of 63 Fay Street, Buffalo, also claims that Valentino Dixon did not do the shooting charged in this indictment.

(d)   Antoine Shannon, of 63 Fay Street, Buffalo, also claims that Valentino Dixon did not do the shooting charged in this indictment.

(e)   LaMarr Scott claimed in a videotape made by WGRZ (Channel 2) television on or about August 12, 1991, that Valentino Dixon did not do the shooting charged in this indictment.

(f)   It should be noted, that Jarmon, L. Brown aka Shannon, and A. Shannon all claim that LaMarr Scott did the shooting as he (Lamarr Scott) claimed to Channel 2 on or about August 12, 1991.

9.   The offenses charged against the defendant all occurred at approximately 1:29 A.M. on August 10, 1991 in the vicinity of the intersection of Bailey Avenue and East Delavan Avenues in the City of Buffalo.   The defendant was arrested at approximately 4:00 P.M. on August 10, 1991 in the vicinity of 1122 East Delavan Avenue in the City of Buffalo.

DATED:   Buffalo, New York
         March 2, 1992

- 4 -

COE001858

Yours, etc.

KEVIN M. DILLON
DISTRICT ATTORNEY OF ERIE COUNTY
(Christopher J. Belling, Assistant
District Attorney, of counsel)
Office & P.O. Address
25 Delaware Avenue
Buffalo NY  14202
(Tel:  716-858-2424)

TO:        JOSEPH J. TERRANOVA, Esq.
           Attorney for Defendant
           Office & P.O. Address
           394 Franklin Street
           Buffalo NY  14202
           (Tel: 716-852-6264)

COE001859

Tamara Frida   4/28/71
40 W. Balcolm
881 - 7192                        w/ Mom Brenda Frida
                                  _____

work Bflo Gen Hosp.  — central lab clerk
                              - 1 yr + 1 month

— ducked @ 1st shot — doesn't know
     any of the parties

w/ Jacqueline Parks        Sandra Smith
       — grandmom                next door
          Parks on 10 Harlow )   to Jackie's
                                   grandma
                                     18 Harlow

COE002309



**APPENDIX 1815**

COUNTY OF ERIE
OFFICE OF THE
DISTRICT ATTORNEY

KEVIN M. DILLON
DISTRICT ATTORNEY

January 31, 1992

TELEPHONE
716-858-2424
FAX 716-858-7425

Edward H Coughlin Esq
1002 Chemical Bank Building
Buffalo NY 14202

          RE:   People v. Leonard L. Brown
                  aka Leonard Shannon
                  Indictment No. 91-1476-002

Dear Mr. Coughlin:

       Please be advised that on January 31, 1992, the Hon.
Mario J. Rossetti, J.S.C., sitting in Criminal Special Term,
assigned you to represent the above-captioned individual.

       The defendant is currently confined to the Holding
Center in lieu of $5,000.00 bail. He is charged with an
indictment containing four counts of Perjury in the First Degree.

       Please contact the defendant at your earliest
convenience. Also, please contact the undersigned at the District
Attorney's Office as soon as possible so that we may schedule the
defendant's arraignment in this matter.

       Thank you for your anticipated cooperation.

               Very truly yours,

               KEVIN M. DILLON
               DISTRICT ATTORNEY

      BY:   CHRISTOPHER J. BELLING
           Chief Assistant District Attorney
           Homicide Bureau

CJB:mb

cc: Wm Diggins



COE002694

**District Attorney's Office**
**M E M O R A N D U M**

**Date:**     JANUARY 30, 1992

**From:**     CHRISTOPHER J. BELLING
             Assistant District Attorney

**Re:**       PEOPLE V. LEONARD L. BROWN **(SEALED)**
             INDICTMENT NO. 91-1476-001

**To:**       FILE


        The above indictment was filed by Grand Jury Term 12-A
before the Honorable Mario J. Rossetti, J.S.C., presiding at
Supreme Court, Part 15 on January 30, 1992.  When it was received
by the Court, I announced the People's readiness for trial.
Natalie J. Wood was the Court's Clerk and Cheryl M. Scroger was
the Court's stenographer for the report.


smg
cc:  PROMIS/Record Room

COE002695

ERIE COUNTY DISTRICT ATTORNEY
# GRAND JURY REPORT

| REPORTING DATE | | | | | | | | INDICTMENT # | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| JAN 3 0 1992 | | | | | | | | YEAR | FOLDER # | SUFFIX |
| | | | | | | | | 91 | 1476 | 002 |

| PROMIS # (PRE) | PROMIS # (POST) | LAST, FIRST, MI    DEFENDANT NAME | DEFN # | DATE GJ CHARGED (COMPLETED PRESENTATION TO GJ) | IN-DICTED | NO BILLED | RETURNED COURT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Brown, Leonard L. | 1 | 1/13/92 | ✓ | | |
| | 32225 | | 2 | | | | |
| | | | 3 | | | | |
| | | | 4 | | | | |
| | | | 5 | | | | |

| LAST, FI, MI    PROSECUTOR | LAST, FI, MI    JUDGE | COURT | TERM & PART | LAST, FI    (STENO) REPORTER |
| --- | --- | --- | --- | --- |
| Belleng | | | 12A | |

**IMPORTANT** - The Identifying Defendent Number (to the right of the Defendent's name) should be entered to the left of every count as charged.

| DEFN # | CT | ATT | LAW | CHARGE CODE | ACC | CLS | CAT | DATE | NAME/ADDRESS | V/W/P |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 01 | | PL | 210.15 | | D | Fel | | | |
| | 02 | | PL | 210.15 | | D | Fel | | | |
| | 03 | | PL | 210.15 | | D | Fel | | | |
| | 04 | | PL | 210.15 | | D | Fel | | | |
| | 05 | | | | | | | | | |
| | 06 | | | | | | | | | |
| | 07 | | | | | | | | | |
| | 08 | | | | | | | | | |
| | 09 | | | | | | | | | |
| | 10 | | | | | | | | | |
| | 11 | | | | | | | | | |
| | 12 | | | | | | | | | |
| | 13 | | | | | | | | | |
| | 14 | | | | | | | | | |
| | 15 | | | | | | | | | |
| | 16 | | | | | | | | | |
| | 17 | | | | | | | | | |
| | 18 | | | | | | | | | |
| | 19 | | | | | | | | | |
| | 20 | | | | | | | | | |

OTHER NOTES

DA-S-10 (Rev. 5/91) ECDA

COE002696

**APPENDIX 1819**

**District Attorney's Office**
**M E M O R A N D U M**

**Date:**    JANUARY 30, 1992

**From:**    CHRISTOPHER J. BELLING
             Assistant District Attorney

**Re:**      PEOPLE V. MARIO D. JARMON **(SEALED)**
             INDICTMENT NO. 91-1476-003

**To:**      FILE

        The above indictment was filed by Grand Jury Term 12-A
before the Honorable Mario J. Rossetti, J.S.C., presiding at
Supreme Court, Part 15 on January 30, 1992.  When it was received
by the Court, I announced the People's readiness for trial.
Natalie J. Wood was the Court's Clerk and Cheryl M. Scroger was
the Court's stenographer for the report.

smg
cc:  PROMIS/Record Room

COE002697

| REPORTING DATE | ERIE COUNTY DISTRICT ATTORNEY | INDICTMENT # | | |
|---|---|---|---|---|
| JAN 3 0 1992 | GRAND JURY REPORT | YEAR | FOLDER # | SUFFIX |
| | | 91 | 1476 | 003 |

| PROMIS # (PRE) | PROMIS # (POST) | LAST, FIRST, MI    DEFENDANT NAME | DEFN # | DATE GJ CHARGED (COMPLETED PRESENTATION TO GJ) | IN-DICTED | NO BILLED | RETURNED COURT |
|---|---|---|---|---|---|---|---|
| | 32226 | Jarmon , Mario D. | 1 | 1/13/92 | ✓ | | |
| | | | 2 | | | | |
| | | | 3 | | | | |
| | | | 4 | | | | |
| | | | 5 | | | | |

| LAST, FI, MI    PROSECUTOR | LAST, FI, MI    JUDGE | COURT | TERM & PART | LAST, FI    (STENO) REPORTER |
|---|---|---|---|---|
| Billing CY | | AD. | 12 A | |

**IMPORTANT** - The Identifying Defendent Number (to the right of the Defendent's name) should be entered to the left of every count as charged.

| DEFN# | CT | ATT | LAW | CHARGE CODE | ACC | CLS | CAT | DATE | NAME/ADDRESS | V/W/P |
|---|---|---|---|---|---|---|---|---|---|---|
| | 01 | | PL | 210.15 | | D | Fel | | | |
| | 02 | | PL | 210.15 | | D | Fel | | | |
| | 03 | | PL | 210.15 | | D | Fel | | | |
| | 04 | | PL | 210.15 | | D | Fel | | | |
| | 05 | | | | | | | | | |
| | 06 | | | | | | | | | |
| | 07 | | | | | | | | | |
| | 08 | | | | | | | | | |
| | 09 | | | | | | | | | |
| | 10 | | | | | | | | | |
| | 11 | | | | | | | | | |
| | 12 | | | | | | | | | |
| | 13 | | | | | | | | | |
| | 14 | | | | | | | | | |
| | 15 | | | | | | | | | |
| | 16 | | | | | | | | | |
| | 17 | | | | | | | | | |
| | 18 | | | | | | | | | |
| | 19 | | | | | | | | | |
| | 20 | | | | | | | | | |

CHARGES — WITNESSES

OTHER NOTES

DA-S-10 (Rev. 5/91) ECDA

COE002698

COUNTY COURT : ERIE COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

          against                  Indictment No. 91-1476-003

MARIO D. JARMON

        THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment accuses MARIO D. JARMON of the following crime:

         FIRST COUNT: PERJURY IN THE FIRST DEGREE, in that he, the said MARIO D. JARMON, on or about the 13th day of January, 1992, in this County, swore falsely and the false statement consisted of testimony before the duly impanelled Term 12-A Erie County Grand Jury and the false statement was material to the grand jury proceeding in which it was made, to wit: the said defendant swore falsely in testimony before the said Grand Jury by stating under oath that Torriano Jackson possessed a handgun on August, 10, 1991 in the vicinity of Bailey and East Delevan Avenues in the City of Buffalo.

        SECOND COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses MARIO D. JARMON of the following crime:

        PERJURY IN THE FIRST DEGREE, in that he, the said MARIO D. JARMON, on or about the 13th day of January, 1992, in this County, swore falsely and the false statement consisted of testimony before the duly impanelled Term 12-A Erie County Grand Jury and the false statement was material to the grand jury proceeding in which it was made, to wit: the said defendant swore

COE002699

falsely in testimony before the said Grand Jury by stating under oath that Torriano Jackson  fired a handgun two or three times at Mario Jarmon on August 10, 1991 in the vicinity of Bailey and East Delevan Avenues in the City of Buffalo.

THIRD COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses MARIO D. JARMON of the following crime:

PERJURY IN THE FIRST DEGREE, in that he, the said MARIO D. JARMON, on or about the 13th day of January, 1992, in this County, swore falsely and the false statement consisted of testimony before the duly impanelled Term 12-A Erie County Grand Jury and the false statement was material to the grand jury proceeding in which it was made, to wit: the said defendant swore falsely in testimony before the said Grand Jury by stating under oath that Torriano Jackson wounded Mario Jarmon on August 10, 1991 in the vicinity of Bailey and East Develan Avenues in the City of Buffalo.

FOURTH COUNT:  AND THE GRAND JURY OF THE COUNTY OF ERIE, by this indictment, accuses MARIO D. JARMON of the following crime:

PERJURY IN THE FIRST DEGREE, in that he, the said MARIO D. JARMON, on or about the 13th day of January, 1992, in this County, swore falsely and the false statement consisted of testimony before the duly impanelled Term 12-A Erie County Grand

COE002700

Jury and the false statement was material to the grand jury proceeding in which it was made, to wit: the said defendant swore falsely in testimony before the said Grand Jury by stating under oath that LaMarr Scott shot Torriano Jackson on August 10, 1991 in the vicinity of Bailey and East Develan Avenues in the City of Buffalo.

KEVIN M. DILLON
DISTRICT ATTORNEY OF ERIE COUNTY

APPENDIX 1824

# ATTORNEY'S EYES ONLY



7

COE004765