UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VALENTINO DIXON,

        Plaintiff,

v.

CITY OF BUFFALO, et al.,

        Defendants.

---

Civil Action No. 19-cv-01678

# STATEMENT OF MATERIAL FACTS SUBMITTED IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**LIPPES MATHIAS LLP**
Jennifer C. Persico
James P. Blenk
*Attorneys for Defendants, County of Erie and former Assistant District Attorney Christopher Belling*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
jblenk@lippes.com

1. After a brief fight between Mario Jarmon and Aaron and Toriano Jackson, the Jackson Murder occurred approximately 1:29am on August 10, 1991. [A 1285.[1]]

2. Evidence now demonstrates that it is more likely that Lamar Scott was the shooter that evening, but he was present that evening as an agent of Valentino Dixon.

3. Mr. Scott "wouldn't have been at the [crime scene] if it wasn't for [Mr. Dixon]." See Deposition of Lamar Scott, dated March 14, 2022, p. 79:4-5. [A 1147]

4. At the scene, Mr. Dixon provided his gun to Mr. Scott (*Id.*, 79:6-7) [A 1147], who saw himself as a "protector" (*Id.*, 83:9) [A 1151].

5. Regarding motive, the shooting arose from a conflict involving Mr. Dixon and his brothers. As Mr. Scott put it, the "beef wasn't with him." (Scott Dep. Trans., p. 14:14-15.) [A 1082.]

6. Right before Mr. Scott pulled the trigger, Mr. Dixon told him, "stop them from shooting my brother." (*Id.*, 81:21 [A1149])

7. When Leonard Brown pointed out Toriano Jackson as the threat, Lamar Scott began shooting. (*Id.*, 81:22 [A1149].)

8. By 5:05 am on August 11, 1991, Emil Adams had identified Valentino Dixon as the shooter. [A 1537]

9. Christopher Belling was not present for Emil Adams' identification of Valentino Dixon. [A1536]

10. Valentino Dixon was detained by police at 1:10 pm (BPD0064, COE001513) [A 1553].

---

[1] Bracketed reference to [A__] refer to the Appendix filed herewith.

1

11. From approximately 1:30pm to 2:30 pm, Valentino Dixon provided a materially inaccurate account of his observations at the Jackson Murder (BPD0071-73; COE 1525-26) [A 1560-62].

12. In the same office at approximately 2:30pm, John Sullivan identified Valentino Dixon as the perpetrator of the Jackson Murder.  (BPD Comp. 0076-77; COE1535-36) (the "Sullivan Identification") [A 1565-67].

13. After meeting with his attorney, Sean Dennis Hill, Esq. (BPD 0064), Dixon was booked for murder, weapons possession and assault. (BPD0064-65) [A 1553-54]; *see also* Arrest Documents (COB 00152-91.) [A 1273-1312])

14. Detective Mark Stambach completed and executed a criminal complaint supporting the charge.  (COE 1672-1673.) [A 1285-86.]

15. During the early morning of August 12, 1991, while accompanied by Valentino Dixon's father, [A 1742] Lamar Scott came forward to confess to the Jackson Murder. [A 1686-88.]

16. Later during the day of August 12, 1991, from his hospital bed, Aaron Jackson identified Valentino Dixon as the perpetrator of the Jackson Murder. (COE001550; BPD Comp. 0185.) [A 1674.]

17. Christopher Belling was not present for Aaron Jackson's identification of Valentino Dixon. [A 1674.]

18. On August 12, 1991, Erie County Assistant District Attorney Christopher Belling took possession of a copy of the Buffalo Police Department's file on the Jackson Murder. (COB232; BPD Comp. 0174.) [A 1663.]

19. Relying on that criminal complaint, as well as the identification of Valentino Dixon by John Sullivan, Defendant Belling sought the revocation of Valentino Dixon's bail.  (COE1696-1698 [A1805-1807]).

20. On January 9, 1992, John J. Malloy was appointed as counsel to Lamas Scott to represent him based on Scott's confession to the Jackson murder.  (COE 1692.) [A 1804.]

21. From November 6, 1991 through January 13, 1992, a grand jury considered testimony from eleven (11) witnesses.  [A1320]

22. At some time during the pendency of grand jury proceedings, Christopher Belling met with Antoine Shannon.  (Belling Dep. Trans., p. 251:19-252:5.) [A 252-253.]

23. During the course of that interview, Belling captured an affidavit from Shannon that implicated Lamar Scott as the perpetrator of the Jackson Murder.  (COB274-279; BPD Comp 249-254.) [A 1313-1318; 1738-1743.]

24. Antoine Shannon's identification of Lamar Scott as the shooter was disclosed to Dixon's counsel.  (ECDAO's Response to Demand to Produce (COE1855-1859).) [A 1809-1813.]

25. Christopher Belling did not engage in misconduct in connection with meeting with Antoine Shannon.  *See gen* (Belling Dep. Trans., p. 251:19-252:5.) [A 252-253]; *see also Dixon v. Conway, 613 F. Supp. 2d 330, 365 (W.D.N.Y. 2009)*

26. At some time during the pendency of grand jury proceedings, Christopher Belling met with Tamara Frida, at which time she failed to identify Lamar Scott as the perpetrator of the Jackson Murder. (Dixon 3801-3804 [A 1484-1487]; Belling Dep. Trans., p. 146:13-15.)  [A 147] (*Id.* 162:2-12) [A 163]; Belling Dep. Trans., p. 134:15 – 135:2.) [A 135-136].

27. Christopher Belling met with Tamara Frida on a second occasion after she was subpoenaed to appear for the Grand Jury in the Jackson Murder. (*Id*. 146:3 – 147:11.) [A 147-148.]

28. Tamara Frida did not tell Christopher Belling that Lamar Scott was the perpetrator of the Jackson Murder. (Belling (*Id*. at (COE2309). [A 1814.]

29. Christopher Belling did not engage in misconduct in connection with meeting with Tamara Frida. *See gen Dixon v. Conway*, 613 F. Supp. 2d 330, 368 (W.D.N.Y. 2009)

30. Tamara Frida did not come forward to provide a complete and truthful account of the events of August 10, 1992 until 1998 (Dixon 3801-3804) [A 1484-1487].

31. Tamara Frida does not claim that she made any attempt to convey Lamar Scott's guilt to anyone in law enforcement or the District Attorney's Office. (*See gen* Frida Dep. Trans.)

32. When she was approached by police at the scene, Frida denied that she "saw anything" because she "was afraid to become involved." (Dixon 3803.) [A 1486.]

33. During his testimony on January 13, 1992, Lamar Scott recanted his confession to the Buffalo Police Department, explained the circumstances surrounding his false confession and identified Valentino Dixon as the perpetrator of the Jackson Murder. [A1432 – 1458]

34. At the time that Lamar Scott recanted his confession, he was represented by counsel. (Dixon001597.) [A 1432.]

35. The Grand Jury was also presented with the live testimony of Mario Jarmon and Leonard Brown identifying Lamar Scott as the shooter, the videotaped confession of Lamar Scott (Dixon 1606-1609 [A1411-1444]), and the written confession of Lamar Scott (Dixon 1609-1611 [1444-1446]).

36. Law enforcement only testified at the grand jury proceedings to convey the existence of another weapon at the scene of the Jackson Murder (which would only tend to complicate the prosecution narrative, whether against Dixon or Scott). (Grand Jury Transcript, (Dixon1556 – 1559 [A1391-1394]).)

37. Christopher Belling did not engage in misconduct in connection with the grand jury proceedings. *Dixon v. Conway*, 613 F. Supp. 2d 330, 362 (W.D.N.Y. 2009).

38. The grand jury ultimately decided to indict Dixon, to the exclusion of Scott, on January 13, 1992. (COE001702 [A 1808])

39. The grand jury also indicted Mario Jarmon and Leonard Brown for perjury.

40. The trial of Valentino Dixon took place from June 8 through June 16, 1992.

41. Jackson, Adams and Sullivan testified and withstood sustained, aggressive cross-examination from Valentino Dixon's counsel. Dixon v. Conway, 613 F. Supp. 2d 330, 334-42 (W.D.N.Y. 2009).

42. Defense counsel did not call any witnesses. *Dixon v. Conway*, 613 F. Supp. 2d 330, 386 (W.D.N.Y. 2009)

43. The Plaintiff was found guilty of all counts: murder in the second degree, attempted murder in the second degree, criminal possession of a weapon in the second degree and assault in the third degree. (Affidavit of David Herarty, dated September 17, 2018 [Doc 66-3] (Herarty Aff.) at 3, ¶6.)

44. Christopher Belling did not engage in misconduct in connection with the trial of Valentino Dixon for the Jackson Murder. *Dixon v. Conway*, 613 F. Supp. 2d 330, 362 (W.D.N.Y. 2009)

45. Mr. Dixon appealed his conviction to the Appellate Division, Fourth Department, and it was unanimously affirmed (*Id*. at ¶7.) *See People v. Dixon*, 214 A.D.2d 1010 (4th Dep't 1995) *lv denied* 87 NY2d 900.

46. On November 6, 2003, Dixon filed his first motion to vacate his conviction pursuant to Section 440.10 of the New York Criminal Procedure Law ("CPL"). (*Id*. at ¶8.)

47. The motion was denied by an order of Erie County Court (D' Amico, J.) issued on August 30, 2004, and his application for leave to appeal was denied by the Fourth Department. (*Id*. at ¶8.)

48. On April 14, 2005, Dixon filed a petition for a writ of habeas corpus with the United States District Court for the Western District of New York. (*Id*. at ¶9.)

49. The petition was denied by an order of District Court (Acara, J., adopting recommendation ·of Bianchini, Magistrate Judge) issued on May 5, 2009. (*Id*. at ¶9.) *Dixon v. Conway*, 613 F. Supp. 2d 330 (W.D.N.Y. 2009)

50. On May 28, 2018, Dixon brought a second motion pursuant to Section 440.10 of the CPL. In reply, the Erie County District Attorney's Office conducted a reinvestigation of the Jackson Murder. (*Id*. at 1, ¶4.)

51. During the course of the reinvestigation, the Plaintiff continued to falsely downplay his involvement including lying about his prior knowledge of the weapon used in the Jackson Murder. (Dixon Dep. Trans. p. 144-145.) [A 0977-0978.]

52. However, in the course of reinvestigation, Erie County District Attorney personnel concluded that Lamar Scott was the actual shooter of Valentino Dixon. (Herarty Aff. [Doc. 66-3] at 3, ¶12.)

53. The Erie County District Attorney's Office therefore consented to the vacatur of Valentino Dixon's conviction on the basis of "newly discovered evidence." (*Id*. at 8.)

54. There is no evidence that Aaron Jackson, John Sullivan or Emil Adams have recanted their eyewitness identifications of Valentino Dixon as the perpetrator of the Jackson Murder.

55. Mr. Belling's interaction with the witnesses in this case plainly involved evaluating evidence and interviewing witnesses.

56. Mr. Belling complied with his *Brady* obligations in connection with the prosecution of Valentino Dixon. (ECDAO's Response to Demand to Produce (COE1855-1859).) [A 1809-1813.]

57. Christopher Belling was not present for the development of any evidence that preceded Valentino Dixon's arrest.

58. There is no evidence that Christopher Belling coerced Emil Adams at any time.

59. There is no evidence that Christopher Belling coerced Aaron Jackson at any time.

60. There is no evidence that Christopher Belling coerced Leonard Brown at any time.

61. There is no evidence that Christopher Belling coerced Mario Jarmon at any time.

62. Christopher Belling did not coerce Lamar Scott at any time. (Scott Dep. Trans., p. 64:5.) [A 1132.]

63. In Plaintiff's CPL § 440 motion, Plaintiff pursued a theory that the defense had failed to turn over negative gunshot residue testing. (Affirmation of Donald Thompson, dated May 18, 2018 [66-2] at 31-34.)

64. That theory proved unfounded and was based exclusively on a misstatement by Mr. Belling. (Answering Affidavit of David A. Herarty, dated September 17, 2018 [66-3], at 6-7.)

## PROCEDURAL HISTORY

65. The Plaintiff filed his Complaint on December 16, 2019. (Compl. [Doc. 1].)

66. Both the County and City Defendants answered without moving to dismiss the Complaint or any portions thereof. (*See* Answers [Doc .27, 28].)

67. On motion of the County Defendants and City Defendants, this Court (McCarthy, J.) bifurcated discovery between the Plaintiff's individual claims, which would proceed through discovery and Plaintiff's municipal claims (*i.e. Monell*[2] claims), which would be bifurcated for the purpose of discovery. (Decision and Order, dated March 8, 2022 [73] at 10.)

68. Pursuant to this Court's Fifth Amended Case Management Order (McCarthy, J), dated September 15, 2023 [156], the deadline for dispositive motions is December 15, 2023.

Dated: December 15, 2023
       Buffalo, New York

**LIPPES MATHIAS LLP**

By:   */s/James P. Blenk*
       Jennifer C. Persico
       James P. Blenk

---

[2] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).