# EXHIBIT 77

1

2    COUNTY COURT OF THE STATE OF NEW YORK

3    COUNTY OF ERIE : CRIMINAL TERM : PART 1

4    ------------------------------------------x

5    THE PEOPLE OF THE STATE OF NEW YORK

6                                              :    Indictment
                                                    No. 91-1476-003
7              -against-                       :

8    LEONARD BROWN & MARIO JARMON,             :

9                   Defendant.                 :    Perjury

                                               :    Trial
10   ------------------------------------------x

11                          Erie County Hall
                            Buffalo, New York  14202
12                          Thursday, November 5, 1992

13   B e f o r e :

14              HONORABLE MICHAEL L. D'AMICO

15                              Judge

16   A p p e a r a n c e s :

17        KEVIN M. DILLON, ESQ.
               District Attorney, Erie County
18        BY:  FRANK A. SEDITA, III, ESQ.
               Assistant District Attorney
19             Appearing for the People

20        EDWARD COUGHLIN, ESQ.
          Appearing for the Defendant Brown

21
          TERENCE B. NEWCOMB, ESQ.
22        Appearing for the Defendant Jarmon

23

24

25                     Kenneth D. Meier, C.S.R.
                       Senior Court Reporter

ERIE COUNTY CLERK  93 FEB 26 AM II: 17

I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Frank Tucci | 45 | 51C | | |
| William Shephard | 56 | 64C | | |
| Aaron Jackson | 67 | 94C<br>96N<br>100C<br>155N | 160 | |
| Travis Powell | 172 | 191C<br>201N<br>205C | | |
| John Sullivan | 206 | 220C<br>230N | 233 | |
| Fazollah Loghmanee | 239 | 245C | 249 | 250C |
| Robert Lewis | 251 | 260C<br>282N | 284 | 285C |
| Fred Stancil, Jr. | 291 | 299C<br>305N | | |
| Tamara Frida | 312 | 317C<br>320N | | |
| James Lonergan | 321 | 325C<br>333N | 335 | |
| Henry Smardz | 336 | 363C<br>373N | 375 | 376C |
| James Diegelman | 377 | 381 | | |
| Bert Pandolfino | 395 | 401C<br>403N | | |
| Charles Militello | 404 | 412C<br>415N | | |
| Michael Dujanovich | 430 | 442C<br>444N | | |
| Thomas Maxian | 446 | 452N | 455 | |

*C - Coughlin   N - Newcomb

| WITNESSES | DIRECT | CROSS | REDIRECT | 3 RECROSS |
|---|---|---|---|---|
| Raneiro Rasecchia | 455 | 459C | | |
| Christopher J. Belling | 467 | 483C 518N | 558 | 567N |
| Floyd Fisher | 572 | 588 | | |
| Darwin Amerson | 610 | 617N | | |
| Daniel DiPirro | 619 | 622 | 623 | 624 |
| Antione Shannon | 626 | 661 | 693 | |

## E X H I B I T S

| PEOPLE'S | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| No. 1 (Copper bullet) | 6 | |
| No. 2, 3 (copper bullets) | 6 | 394 |
| No. 4 (lead slug) | 6 | 394 |
| No. 5 (22 caliber casing) | 6 | 394 |
| (No Exhibit No. 6) | | 394 |
| No. 7A, 7B, 7C (.32 Caliber revolver) (27 9mm casings) (1 9mm copper jacket bullet) | 6 | 394 |
| No. 8 (Lamarr Scott mug shot) | 6 | 472 |
| No. 9 (lead slug) | 6 | 394 |
| No. 10 (9mm bullet) | 6 | 394 |
| No. 11 (Photo) | 6 | |
| Nos. 12, 13, 14 (Photos) | 6 | 60 |
| No. 15 (Photo - Dixon) | 6 | |
| Nos. 16 thru 20 (9mm slug from victim) | 6 | 394 |
| No. 21 (Dixon's clothes) | 6 | |

EXHIBITS (Continued)                                        3~A

| PEOPLE'S | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| No. 22 (Map) | 6 | 56 |
| No. 23 (Photo) | 6 | 190 |
| Nos.24, 25, 26 (Photos) | 6 | 96 |
| No. 27 (Photo) | 6 | 394 |
| No. 28 (Photo) | 6 | 334 |
| No. 29 thru 33 (Photos) | 6 | 394 |
| No. 35 (Photo) | 6 | 190 |
| Nos. 34, 36 (Photos) | 6 | 96 |
| Nos. 37 thru 43 (Photos) | 6 | 394 |
| Nos. 44 thru 50 (Photos) | 6 | |
| Nos. 51, 52 (Photos) | 6 | 317 |
| No. 53 (statement-Dixon) | 411 | |
| No. 54 (Ambulance run report) | 446 | |
| No. 55 (Statement - Brown) | 455 | 467 |
| No. 56 (GJ Test. Brown) | 518 | 568 |
| No. 57 (GJ Test. Jarmon) | 518 | 568 |
| No. 58 (Shannon statement) | 661 | |

| DEFENDANTS' | | |
|---|---|---|
| A (GJ test. A. Jackson) | 110 | |
| B (Dixon trial transcript) | 145 | |
| C (P-73) | 152 | |
| D thru J (Photos) | 197 | 200 |

3-B

EXHIBITS (Continued)

| DEFENDANTS' | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| K (Statement-Sullivan) | 221 | |
| L (GJ test. Lewis) | 288 | |
| M (P-73) | 329 | |
| N (BPD Certificate) | 369 | |
| O (GJ - Jarmon) | 518 | |
| P (Scott -testimony) | 549 | |

| | PAGE |
|---|---|
| Preliminary Charge | 6 |
| Proceedings of Friday, November 6, 1992 | 29 |
| Opening Statement - Mr. Sedita | 37 |
| Opening Statement - Mr. Coughlin | 40 |
| Opening Statement - Mr. Newcomb | 43 |
| Proceedings of Monday, November 9, 1992 | 238 |
| Proceedings of Tuesday, November 10, 1992 | 425 |
| Proceedings of Thursday, November 12 | 606 |
| Closing Summation - Mr. Coughlin | 701 |
| Closing Summation - Mr. Newcomb | 724 |
| Closing Summation - Mr. Sedita | 740 |
| Proceedings of Friday, November 13, 1992 | 764 |
| Jury Charge | 770 |
| Proceedings of Monday, November 16, 1992 | 181 |
| Jury Verdict | 827 |

Sullivan - Sedita - Direct                    205

A.    I remember him jumping out in the parking lot.

MR. SEDITA:  Objection.  I think he is going into a new area.

THE COURT:  Well, he is going into a new area, and I'm not sure that is exactly what was said, but why don't you just clarify what you want.  Is your question to him where did he leave the car?

MR. COUGHLIN:  Where did did he leave the car?

THE COURT:  Answer that question.

THE WITNESS:  In the parking lot.

MR. COUGHLIN:  All right, I have nothing further.

THE COURT:  Thank you.  You can step down, Mr. Powell.  Thank you.

(Witness excused.)

MR. SEDITA:  We have one more witness.  John Sullivan.

J O H N    S U L L I V A N, a witness located in Conyers, Georgia, having been first duly sworn, was examined, and testified as follows:

DIRECT EXAMINATION

BY MR. SEDITA:

Q.    Mr. Sullivan, are you employed, sir?

A.    Yes.

Sullivan - Sedita - Direct                206

Q.   Where do you work?

A.   Walco Packing.

Q.   John, if you could be sure that you speak into the microphone so everybody can hear you, okay.  You said you were from Conyers, Georgia?

A.   Yes.

Q.   How did you have occasions to be here today?

A.   The District Attorney's office --

THE COURT:  I can't hear you.

MR. COUGHLIN:  I can't either.

THE WITNESS:  District attorney's office --

BY MR. SEDITA:

Q.   I subpoenaed you, correct?

A.   Yes.

Q.   And District Attorney's office paid for your plane flight up here.  Is that also correct?

A.   Yes.

Q.   Also paid for one night's lodging at the Buffalo Hilton, is that also correct?

A.   Yes.

Q.   Now, I would like to refer your attention to August 10th of 1991, and before I ask you some questions with regard to that, John, I would like to ask if you knew some people and how you knew these people.  First off, before August 10th

Sullivan - Sedita - Direct                                     207

1

2    of 1991 did you know Aaron Jackson?

3         A.    Yes.

4         Q.    How did you know him?

5         A.    Grew up together.

6         Q.    What about Torriano Jackson, did you know him?

7         A.    Yes.

8         Q.    How?

9         A.    We grew up together.

10        Q.    Did you know Travis Powell?

11        A.    Yes.

12        Q.    Speak into the microphone?

13        A.    Yes, we grew up together.

14        Q.    How about Leonard Brown, did you know him?

15        A.    Yes.

16        Q.    How did you know Leonard Brown?

17        A.    Street.

18        Q.    Any type of relationship with Leonard?

19        A.    No, not really.

20        Q.    Was he a friend, or anything?

21        A.    Okay.

22        Q.    Is he in the courtroom today?

23        A.    Yes.

24        Q.    And where is he?

25        A.    Right there.

208

Sullivan - Sedita - Direct

1
2          MR. NEWCOMB:  Judge, I can't hear him.

3          THE COURT:  Would you just lean forward and

4     sit up a little straighter and get right into that

5     microphone when you talk.

6   BY MR. SEDITA:

7     Q.   What about Mario Jarmon, do you know him?

8     A.   Yes.

9     Q.   Is he in the courtroom today?

10    A.   Yes.

11    Q.   Where is he seated?

12    A.   Right here.

13         MR. SEDITA:  For the record, Judge, may it

14    reflect identification?

15         THE COURT:  The witness has identified each of

16    the defendants.

17  BY MR. SEDITA:

18    Q.   How do you know Mario, friends or anything?

19    A.   Street.

20    Q.   Do you know a Valentino Dixon?

21    A.   Yes.

22    Q.   Do you know who he was?

23    A.   Yes.

24    Q.   Knew what he looked like?

25    A.   Yes.

Sullivan - Sedita - Direct

Q.   What about Lamarr Scott, did you ever know a Lamarr Scott before August 10, 1991?

A.   No.

Q.   I would like to refer your attention specifically to August 10th of 1991 in the early morning hours and the Bailey East Delevan area in the City of Buffalo and ask if you had occasion to be there?

A.   Yes.

Q.   Can you tell us where you were, what you were doing?

A.   Going to get something to eat at Louie's.

Q.   Louie's Texas Red Hots?

A.   Yes.

Q.   Were you with anybody?

A.   Yes.

Q.   Who were you with?

A.   Fred Stancil and Robert Lewis.

Q.   You weren't with the Jackson brothers, were you?

A.   No.

Q.   You weren't with Mario Jarmon, were you?

        JURORS NO. 4 and 5:  Can't hear.

        THE COURT:  Look.  See how you are sitting, like me, kind of slumped back.  Sit up this way so that you can face.  That's good, and keep your

Sullivan - Sedita - Direct                    210

voice up.  How tall are you?

THE WITNESS:  Six, one.

THE COURT:  How much do you weigh?

THE WITNESS:  220.

THE COURT:  220.  You ought to be able to project a voice 15 feet over to that jury, okay. Keep your voice loud enough so that they can hear you, and everybody else can hear you.  Last question?  Mr. Meier.

(Record read.)

BY MR. SEDITA:

Q.   You were with a couple of people that you have indicated on the record, and what were you doing?

A.   Going to get something to eat.

Q.   As you are there with those people -- Judge, with the Court's permission I would like him to get off the stand and just indicate where he was in terms of general terms?

THE COURT:  Does he have to talk down there, Mr. Sedita?

MR. SEDITA:  Judge I'll interpret in case there's a problem.

THE COURT:  Go ahead.

MR. SEDITA:  I don't want to lead him, or anything.

Sullivan - Sedita - Direct                   211

1

2   BY MR. SEDITA:

3       Q.   Just in general terms for the jury, point to where

4   you were at that time.   Indicating on Bailey Avenue just

5   before East Delevan on the west side of Bailey Avenue.

6   Okay.   Take the stand.

7       Speak into the microphone.

8       Q.   While you were there, sir, do you see a fist fight

9   break out?

10      A.   Yes.

11      Q.   Where does that fist fight start?

12      A.   On Bailey and Delevan by the store.

13      Q.   The market?

14      A.   Yes.

15      Q.   John, you have got to speak up?

16      A.   By the Bailey-Delevan market.

17      Q.   Okay.   Who is involved in the fight?

18      A.   Mario Jarmon, Aaron Jackson.

19      Q.   Does Torriano Jackson also become involved?

20      A.   Yes.

21      Q.   Are you watching this?

22      A.   Yes.

23      Q.   Do you try to do anything with respect to that

24   fight?

25      A.   Yes.

Sullivan - Sedita - Direct                212

Q.   What do you try to do with respect to that fight?

A.   Try to stop it.

Q.   Why?

A.   Because they're friends of mine.

Q.   You knew all three of them?

A.   Yes.

Q.   Did you actually get into where they were at that point?

A.   Yes.

Q.   When you approached those three people, were they still by the Bailey-Delevan market, or were they somewhere else?

A.   Moving into the street.

Q.   The street you are referring to is what street?

A.   Delevan.

Q.   How close are you to Torriano Jackson at your closest point?

A.   Three feet.

Q.   As you are trying to break up the fight, does something else unusual happen?

A.   Yes.

Q.   Can you tell what happened to the jury?

A.   A shooting took place.

MR. NEWCOMB:   What?  I am sorry?

Sullivan - Sedita - Direct                                    213

THE WITNESS:  The shooting started.

MR. SEDITA:  There was a shooter.

MR. COUGHLIN:  That's not what the witness said.

MR. SEDITA:  That's the next question.  There was a shooter?

THE WITNESS:  Yes.

MR. COUGHLIN:  It's a conclusion.  That's all right.  I withdraw it.

BY MR. SEDITA:

Q.  Would you please get off the stand again.  Will you indicate for the jury from which direction the shooter came?

A.  From the west.

THE COURT:  Now, if you are going to say something, you have to speak up.

THE WITNESS:  From the west.

BY MR. SEDITA:

Q.  You are indicating he's coming from the west, and eastbound direction down Delevan?

A.  Yes.

Q.  Fine.  Will you please take the stand again.  Do you see anything in his hands?

A.  Yes.

Q.  What do you see in his hands?

214

Sullivan - Sedita - Direct

1

2      A.    A gun.

3      Q.    What did the gun look like?

4      A.    A black-blue steel.

5      Q.    Have you ever seen a gun like that before?

6      A.    No.

7      Q.    Can you describe the rapidness of the fire?

8      A.    Very fast.

9      Q.    Were there a lot of gunshots?

10     A.    Yes.

11     Q.    And, where were the gunshots directed?

12     A.    Everywhere, toward me, everywhere.

13     Q.    When the gunshots start, what do you observe with

14  respect to Torriano Jackson?

15     A.    I don't understand the question.

16     Q.    The gunshots start; is that correct?

17     A.    Yes.

18     Q.    You're near Torriano Jackson?

19     A.    Yes.

20     Q.    At that point what happens to Torriano Jackson?

21     A.    I took off running the other way and turned around

22  and I seen Valentino Dixon standing over Torre.

23     Q.    That's not what I am asking.

24           MR. COUGHLIN:  Just a moment.

25           THE COURT:  All right, you have got to say

215

Sullivan - Sedita - Direct

1
2    this loud enough -- and I know you can do it

3    because I have heard some of the responses -- you

4    have got to say this loud enough so everybody can

5    hear you.  The last question?

6          MR. COUGHLIN:  May I have the last response of

7    the witness, please.

8          THE COURT:  You want it read back?

9          MR. COUGHLIN:  Yes, please.

10         THE COURT:  Did you get it all?  Read it

11   back.

12         (Record read.)

13 BY MR. SEDITA:

14   Q.   Valentino Dixon have something in his hand?

15   A.   Yes.

16   Q.   What did he have in his hand?

17   A.   A gun.

18   Q.   What was he doing with the gun?

19   A.   Shooting it.

20   Q.   Who was he shooting at?

21   A.   Torriano Jackson.

22   Q.   Did you see anything with respect to what was going

23 on between Valentino Dixon and Aaron Jackson?

24   A.   No.

25   Q.   Is there any doubt in your blind that Valentino

1                    Sullivan - Sedita - Direct                216

2    Dixon was standing over Torriano Jackson and shooting at him?

3         A.    No.

4         Q.    Did there come a point in time when the shooting

5    stopped?

6         A.    Yes.

7         Q.    And what happened at that point?

8         A.    Tino running back the other way, west, from where

9    he came from.

10        Q.    When you say Tino, are you referring to Valentino

11   Dixon?

12        A.    Yes.

13        Q.    I'm going to show you a couple photographs, John.

14   First one I am going to show you what has been received in

15   evidence as People's Exhibit Number 25 for identification.   I

16   would like you to look at that photograph.   What does that

17   photograph depict?   What is in that photograph, into the

18   microphone please?

19        A.    The area of Bailey and Delevan and where Torriano

20   Jackson was laying in the street.

21        Q.    I would like to refer you to the area of the cones

22   in that photograph.   What do those cones represent?

23        A.    Where Torriano Jackson was shot in the street.

24        Q.    Where Valentino Dixon was standing over him?

25        A.    Yes.

217

1                    Sullivan - Sedita - Direct

2       Q.    I'm going to show you what has been marked as -- by

3  the way, is that a reasonable and accurate depiction of that

4  scene?

5       A.    Yes.

6       Q.    I'm going to show you what has been marked as

7  People's Exhibit Number 23 received into evidence and ask you

8  what is that?

9       A.    That's where Valentino Dixon was standing over

10 Torriano.

11      Q.    So People's Exhibit 23 is basically a close-up of

12 People's Exhibit 25?

13      A.    Yes.

14            MR. SEDITA:  Judge, at this point I would like

15            to publish these exhibits to the jury, pass them

16            around.

17            Just a couple more questions, John.

18            THE COURT:  Wait a minute.  Why don't you look

19            at one and pass it on, and give them a moment to

20            look at it before you ask the next question.

21            MR. SEDITA:  May I ask, Judge?

22            THE COURT:  Now you may.

23 BY MR. SEDITA:

24      Q.    At any time, sir, on the evening or morning hours

25 of August 10th of 1991 did you ever see Torriano Jackson with

218

Sullivan - Sedita - Direct

1
2  a gun?

3     A.    No.

4     Q.    Did you ever see him with a weapon of any kind?

5     A.    No.

6     Q.    In all the time you have known him, did you ever

7  see him with a gun?

8              MR. COUGHLIN:  Objection, your Honor.

9              THE COURT:  Overruled.

10  BY MR. SEDITA:

11     Q.    All the time you have known him, did you ever see

12  him with a weapon?

13     A.    No.

14     Q.    With respect to Aaron Jackson, did you ever see a

15  weapon on him on August 10th of 1991?

16     A.    No.

17     Q.    Have you ever known him to have a weapon?

18     A.    No.

19     Q.    Other than the individual that you have identified

20  as Valentino Dixon, the person with the gun shooting, was

21  there anybody else shooting a gun on August 10th of 1991 in

22  the vicinity of East Delevan and Bailey which you are

23  testifying to?

24     A.    No.

25     Q.    Did you ever see an individual known as Lamarr

Sullivan - Coughlin - Cross

1

2 Scott in that area?

3     A.    No.

4     Q.    Showing you what has been marked as People's

5 Exhibit Number 8 for identification, did you ever see the

6 person depicted in that photograph on August 10th of 1991 in

7 the area of Bailey and East Delevan, the event that you have

8 been testifying with regard to?

9     A.    No, I didn't.

10          MR. COUGHLIN:  What was the response?

11          THE WITNESS:  No, I didn't.

12          MR. SEDITA:  I have no further questions for

13          the witness, your Honor.

14          MR. COUGHLIN:  May we approach the Bench?

15          (Bench Conference held.)

16 CROSS-EXAMINATION

17 BY MR. COUGHLIN:

18     Q.    Mr. Sullivan, you were just shown a photograph of

19 an individual who you say you did not see in and about

20 Bailey-Delevan that night; is that right?

21     A.    Yes.

22     Q.    And, I believe you also indicated that you did not

23 see Lamarr Scott around that intersection that night, is that

24 right?

25     A.    Yes.  I guess it's the same person in the picture.

Sullivan - Coughlin - Cross

Q.   That was the same person who was in the picture, is that right?

A.   Yes.

Q.   You knew who Lamarr Scott was?

A.   No.

Q.   Then how do you know the picture was Lamarr Scott?

A.   He just told me.

Q.   Oh, you mean Mr. Sedita?

A.   Yes.

Q.   Okay.  He told you that, but that's okay.  In any event, did you ever as of August 10th see a person named Lamarr Scott?

A.   No.

Q.   Okay, you did not know who that person was, or what he was?

A.   No.

Q.   Okay.  But you did know Torre Jackson very well?

A.   Yes.

Q.   And had known him for some time?

A.   Yes.

Q.   Grew up with him?

A.   Yes.

Q.   He was a friend of yours?

A.   Yes.

Sullivan - Coughlin - Cross                221

1

2     Q.    How tall was Torre Jackson?

3     A.    Five-six, five-seven.

4     Q.    Did you ever -- were you ever of the opinion --

5  okay, strike that.

6          What about Valentino Dixon?  You did know him prior to

7  the 10th of August, right?

8     A.    Yes.

9     Q.    And how tall was he?

10    A.    Five, ten.

11    Q.    Do you recall ever being of the opinion that he was

12  six feet tall, 160 to 170 pounds?

13          MR. SEDITA:  Objection, asked and answered.

14          THE COURT:  No.  I think you're asking him if

15  he ever had the opinion that he was taller?

16          MR. COUGHLIN:  Mm-hmm.

17          THE COURT:  Overruled.

18          THE WITNESS:  No, not really.

19          MR. COUGHLIN:  Mark this, please.

20              (Whereupon, Defendant's Exhibit K was

21              marked for identification.)

22  BY MR. COUGHLIN:

23    Q.    Showing you what has been marked as Defendant's K

24  for identification, being a City of Buffalo, Department of

25  Police typewritten statement of John Arthur Sullivan, III,

Sullivan - Coughlin - Cross                222

dated 8-10-91, would you look at both pages of that exhibit
for just a moment, please.  Do you recognize that as a
statement that you gave to the Buffalo police within a few
hours of this particular incident?

A.   Yes.

Q.   Okay.  Is that your signature that appears
two-thirds of the way down the right-hand side of the second
page?

A.   Yes.

Q.   And that statement was sworn to, was it?

A.   Yes.

Q.   And, in that statement and at that time did you
describe Tino as being six feet, 160 to 170 pounds?

A.   Yes.

Q.   That was the truth, right?  To the best of your
ability to tell the truth at that time?

A.   I told the police between five-ten and six.
There's a lot of stuff in the statement that is typed, he
typed that I didn't really put in there, you know.

Q.   Did you tell the police he was six foot, 160?

A.   I told him five-eight to six feet.

Q.   Between five-eight and six feet?

A.   Yes.

Q.   Okay.  How long did this rapid fire shooting last?

Sullivan - Coughlin - Cross                      223

1
2   A.    About 15, 30 seconds.

3   Q.    15 to 30 seconds?

4   A.    Yes.

5   Q.    During that 15 to 30 seconds from the first shot
6   that you heard to the time that it was over, you had run
7   across the street, correct?

8   A.    Yes.

9   Q.    And, after you got across the street, you then
10  turned around and looked back?

11  A.    Yes.

12  Q.    And when I say looked back, I mean you turned
13  around and you looked west on East Delevan; is that correct?

14  A.    Yes.

15  Q.    And, when you turned around, you were over here
16  next to some side steps to St. Gerard's Catholic church,
17  weren't you?

18  A.    Yes.

19  Q.    And you were basically hiding down behind those
20  granite steps, weren't you, or using them for protection?

21  A.    No, just standing there.

22  Q.    You were just standing there.  Okay.  And, you then
23  looked back and you saw what you described as Tino Dixon
24  shooting Torre Jackson, is that it?

25  A.    Yes.

Sullivan - Coughlin - Cross                    224

1

2     Q.   Could you estimate for this jury how many feet or

3     yards, or what the distance was, that separated you back

4     behind those side steps from the Dixon and Jackson --

5     A.   Maybe a hundred feet, 150 feet.

6     Q.   Hundred what?

7     A.   Maybe a hundred to 150 feet.

8     Q.   Did you have any difficulty visualizing or viewing,

9     excuse me, did you have any difficulty viewing and seeing and

10    recognizing the facial features of the shooter?

11    A.   Repeat the question, please?

12    Q.   Do you have any difficulty from that position

13    behind the steps to St. Gerard's church seeing the facial

14    features and identifying the features and the face of the

15    person who was shooting?

16    A.   No.

17    Q.   You didn't have any trouble at all?

18    A.   No.

19    Q.   Okay.  Do you have any particular recollection as

20    to the lighting at the time, or light conditions at the time

21    that you were there?

22    A.   Repeat the question.

23    Q.   Do you remember what it was like?  It was dark out,

24    was it?

25    A.   Yes, nighttime.  Streetlights were on.

225

Sullivan - Coughlin - Cross

1

2      Q.    Pardon?

3      A.    It was nighttime.  Streetlights were on.

4      Q.    Streetlights were on.  All right, other than

5  streetlights on, was there any moon shining?

6      A.    I don't remember.

7      Q.    Okay.  Showing you what has been marked Defendant's

8  Exhibit G for identification, or in evidence, would you take

9  a look at that photograph, sir?  Can you tell what that

10  photograph depicts?  Do you recognize the area?

11     A.    Yes.

12     Q.    What is the area?

13     A.    Bailey and Delevan on the east side, looking

14  towards the west.

15     Q.    The camera is on the east side of Bailey Avenue?

16     A.    Yes.

17     Q.    Looking westerly; is that right?

18     A.    Yes.

19     Q.    That's looking across Bailey Avenue and up or west

20  on East Delevan?

21     A.    Yes.

22     Q.    And, is that the Bailey-Delevan market, the corner

23  of the Bailey-Delevan market that is shown on the right-hand

24  side of the photograph?

25     A.    Yes.

1

2      Q.    And, down in the lower right-hand corner of that

3  photograph do you see any of the protrusion or projection of

4  the side stairs from St. Gerard's church?  Do you see that?

5      A.    Yes.

6      Q.    Recognize that?

7      A.    Yes.

8      Q.    Okay.  Does that basically approximate where you

9  were standing at the time you say you viewed Tino Dixon

10 shooting Torre Jackson?

11     A.    Yes.

12     Q.    Okay.  There is a person standing over here on the

13 west side of Bailey Avenue on East Delevan.  Do you see that

14 person?

15     A.    Yes.

16     Q.    Who is that person?

17     A.    I don't know.

18     Q.    That person standing at the bus stop, right?

19              MR. NEWCOMB:  Which picture, please?

20              MR. COUGHLIN:  On Defendant's G, still?

21              THE WITNESS:  Yes.

22 BY MR. COUGHLIN:

23     Q.    You don't know?

24     A.    No.

25     Q.    Okay.  Is that person a white person or an African

227

                    Sullivan - Coughlin - Cross

1

2   American, black person?

3        A.    I can't tell from the light.

4              MR. COUGHLIN:   You can't tell.   Thank you.

5   BY MR. COUGHLIN:

6        You can't tell because not enough lighting, right?

7        A.    Not because not enough light.   Because the lights

8   are shining on the camera.

9        Q.    Were the streetlights on just like this?

10       A.    Yes.

11       Q.    In the morning hours of August 10th, 1991?

12       A.    Yes, but them headlights weren't like that.

13       Q.    Pardon?

14       A.    The headlights from the cars were not like that.

15       Q.    Wasn't there traffic coming and going?

16       A.    Yes, but they wasn't like that.   Them lights are on

17  high beam.

18       Q.    Let's show you Defendant's Exhibit F in evidence?

19             MR. SEDITA:   Your Honor, once again I am going

20             to reassert my objection to the defense counsel's

21             exhibits, those photographs.   I had a lot of good

22             reasons why I objected to them.

23             THE COURT:   Go ahead, Mr. Coughlin.

24  BY MR. COUGHLIN:

25       Q.    Showing you Defendant's Exhibit F in evidence.   Do

228

Sullivan – Coughlin – Cross

1
2  you recognize what is portrayed in that photograph?

3      A.    Yes.

4      Q.    Is that photograph taken from Louie's Texas Red

5  Hots parking lot looking across East Delevan Avenue towards

6  the side of the Bailey-Delevan market?

7      A.    It looks like the Norstar Bank parking lot.

8      Q.    Okay.  Maybe kitty-corner across the street

9  towards --

10      A.    Yes.

11      Q.    Okay.  And there is still a person standing there

12  at the street, or at the bus stop, isn't there?

13      A.    Yes.

14      Q.    Is that person white or African American?

15      A.    I can't tell because of the camera.

16      Q.    And there are no automobile headlights shining in

17  this camera's eyes, are there?

18            MR. SEDITA:  Objection.  How could he possibly

19        know that?

20            THE COURT:  Overruled.

21  BY MR. COUGHLIN:

22      Q.    And your answer to the question is?

23      A.    No.

24      Q.    No?

25      A.    But the camera is adjusted.

229

                    Sullivan - Newcomb - Cross

1
2                   THE COURT:  Is that it, Mr. Coughlin?

3                   MR. COUGHLIN:  That's it for me.

4                   THE COURT:  Mr. Newcomb?

5    BY MR. NEWCOMB:

6        Q.   Mr. Sullivan, your testimony, you're standing on

7    the corner of Bailey and East Delevan, correct?

8        A.   Yes.

9        Q.   On the Louie's side?

10       A.   No.

11       Q.   Fight breaks out?

12                  THE COURT:  He said no, was his last response,

13              just so you are aware.

14   BY MR. NEWCOMB:

15       Q.   Earlier today you said you were standing here?

16       A.   Yes.

17       Q.   Is that Bailey and East Delevan?

18       A.   Yes.  Fight broke out while I was over there by the

19   store.

20                  THE COURT:  Get closer to the microphone.

21                  THE WITNESS:  Fight broke out by the store,

22              and I was over there while the fight was breaking

23              out.

24   BY MR. NEWCOMB:

25       Q.   You are standing here?

230

1              Sullivan - Newcomb - Cross

2       A.   On the sidewalk, yes.

3       Q.   On the Delevan side of the store?

4       A.   Yes.

5       Q.   Fight broke out?

6       A.   Yes.

7       Q.   You go to break up the fight?

8       A.   Yes.

9       Q.   You hear gunshots?

10      A.   Yes.

11      Q.   You turn and run east on East Delevan?

12      A.   Yes.

13      Q.   Your back is to Mario Jarmon, Torre Jackson and

14   Aaron Jackson?

15      A.   Yes.

16      Q.   You gave a statement to the Buffalo police?

17      A.   Yes.

18      Q.   On August 10th?

19      A.   Yes.

20      Q.   Do you remember who the police officers were?

21      A.   No, not by name.

22      Q.   Did they make any note?

23      A.   Note as to what?

24      Q.   Did they write anything down?

25      A.   Yeah.  Yes.

231

Sullivan - Newcomb - Cross

1

2     Q.    Did they write anything down beside the piece of

3  paper that you signed?

4     A.    Yes, lot of other paperwork that went with it, like

5  the mug shots and --

6     Q.    Thank you.

7              MR. NEWCOMB:  Do you have 25?

8  BY MR. NEWCOMB:

9     Q.    I am going to show you what has been marked into

10  evidence, a picture, Number 23.  You said that those cones

11  depicted where Torre Jackson was laying, correct?

12    A.    Yes.

13    Q.    How do you know that?

14    A.    Because I looked back and I seen him laying in the

15  street.

16    Q.    Okay, how do you know those cones marked anything?

17    A.    Because of the blood.

18    Q.    Did you see a gun in the street?

19    A.    No.

20    Q.    On that day of August 9th in the early morning of

21  August 10th did you have anything to drink?

22    A.    Yes.

23    Q.    You drank some malt liquor, right?

24    A.    Yes.

25    Q.    You had a couple beers?

232

1                        Sullivan - Newcomb - Cross

2       A.    Yes.

3       Q.    And earlier in the day you smoked a little

4    marijuana with a little cocaine on it, correct?

5       A.    Yes.

6       Q.    And the malt liquor you had, that was a 40-ounce

7    can?

8       A.    No.

9                    MR. SEDITA:  I object to this.  He has already

10                 answered it.

11                   THE COURT:  Overruled.  Go ahead.

12   BY MR. NEWCOMB:

13      Q.    You like marijuana and cocaine?

14      A.    No.

15                   MR. SEDITA:  Objection.

16                   THE COURT:  Sustained.  Disregard it.  Next

17                 question.

18                   MR. NEWCOMB:  No more questions.

19                   THE COURT:  Redirect?

20                   MR. SEDITA:  I have a few on redirect, Judge.

21   REDIRECT EXAMINATION

22   BY MR. SEDITA:

23      Q.    Mr. Coughlin asked you some questions about the

24   statement that you gave to the police on August 10th of 1991,

25   the day this thing happened.  Remember that?

233

Sullivan - Sedita - Redirect

1

2    A.    Yes.

3    Q.    The police asked you to describe Valentino Dixon?

4    A.    Yes.

5    Q.    You have known Valentino from before, correct?

6    A.    Yes.

7    Q.    How many times had you seen him before that

8    occasion, would you say, in your life?

9    A.    Maybe, five, six.

10    Q.    You knew what he looked like?

11    A.    Yes.

12    Q.    And, they showed you some photographs over at

13    Buffalo Police Department, didn't they?

14    A.    Yes.

15    Q.    Photo array?

16            MR. COUGHLIN:   Objection, your Honor.

17            THE WITNESS:   Mug shots.

18            THE COURT:   Where are we going with this, Mr.

19        Sedita?

20            MR. SEDITA:   I'll move on.

21    BY MR. SEDITA:

22    Q.    John, I'm going to show you Defendant's I in

23    evidence.   You were shown that photograph by defense counsel,

24    right?

25    A.    Yes.

234

Sullivan - Sedita - Redirect

1

2    Q.    The woman in the Bailey-Delevan market?

3    A.    Yes.

4    Q.    See that woman there?

5    A.    Yes.

6    Q.    Torriano Jackson wasn't shot to death in the

7    Bailey-Delevan market, was he?

8            MR. COUGHLIN:  Object to the form of the

9            question.  I don't know prior to Mr. Sedita's

10           statement that there has been any testimony as to

11           whether the person was male, female, adult, or

12           whatever.  Object to the form of the question, do

13           you see the woman?

14           MR. SEDITA:  Oh, okay.

15           THE COURT:  Overruled, go ahead.

16   BY MR. SEDITA:

17   Q.    Torriano Jackson wasn't shot inside the interior of

18   the Bailey Delevan market, was he?

19   A.    No.

20   Q.    All right.  With respect to Defendant's J for

21   identification, another shot of a person in the

22   Bailey-Delevan market, Torriano Jackson wasn't shot there,

23   was he?

24   A.    No.

25           MR. SEDITA:  Nothing further.

235

People vs. Brown & Jarmon

THE COURT:  Any recross, gentlemen?

MR. NEWCOMB:  No, Judge, not from me.

THE COURT:  That's it, Mr. Sullivan.  You may step down.

(Witness excused.)

THE COURT:  All right, we're going to stop for today.  You are going to quit.  I guess I have to stay.  We will let you go home, and I will remind you, please, during the course of this weekend that you are still not permitted to discuss this case among yourselves or with anyone.  No conversation is permit permitted.  In the event there is any media coverage, please don't watch listen or read any coverage concerning this particular case.  Do not visit the places that have been described thus far during this trial.  And, of course, if anybody attempts to talk to you about this case, you should let me know about that as soon as possible without telling other members of the jury.  If you would please return at 9:30 on Monday morning to the jury room, we will resume shortly after that hour.  Any questions?

JUROR NO. 6:  Just one quick question, your Honor.  Will we be like reviewing some of the

236

People vs. Brown & Jarmon

evidence in the deliberation?

THE COURT:  I'll fill you all in on that later on.

JUROR NO. 6:  I'm ahead of myself.

THE COURT:  Right, don't worry about it, okay.  I guess you are all set.  See you Monday morning.  Thank you.

(4:40 p.m. jury excused from courtroom.)

THE COURT:  Mr. Newcomb?

MR. NEWCOMB:  I don't mean to make Mr. Sedita's life more complicated than it appears to be now, because we have a witness named John Sullivan testify that he gave a statement to the Buffalo police, which we have a copy of, and by Mr. Sedita's own offer in evidence and the testimony of the defendant, there are other documents that the defendant saw --

THE COURT:  You mean the witness.

MR. NEWCOMB:  The witness.  He said the Buffalo police took other notes beside his written statement, and I would just ask Mr. Sedita to see if there's any other Rosario.

MR. COUGHLIN:  Also the ID affidavits should be there.  The statement refers to his ID-ing

People vs. Brown & Jarmon

Valentino Dixon.  There has to be --

MR. NEWCOMB:  Or something.  We don't know.

THE COURT:  What do you want?

MR. NEWCOMB:  There has got to be P-73s,

Judge.

THE COURT:  If there is any additional information, obviously, you have to supply it.  If you have any additional notes or statements given by this witness to the police, or anybody else that you have in your possession, I suppose you better get it over to them.  But let me just point out to you, Mr. Newcomb, it is not uncommon for witnesses to think that lots of paperwork is going around, and it isn't.

MR. NEWCOMB:  I know.

THE COURT:  So obviously whatever you have, you must turnover.

MR. SEDITA:  I'll double check.

THE COURT:  Anything else?

MR. NEWCOMB:  No, Judge.

THE COURT:  Have a pleasant evening.

(4:45 p.m. Court adjourned.)

People vs. Brown & Jarmon

Proceedings of Monday, November 9, 1992 .

(Counsel and defendant present.)

MR. SEDITA:  I would like to spread a couple things on the record, if it please the Court.  I believe on Friday defense counsel made two applications.  One was for examination of the People's physical evidence, and I indicated that I would like that done in the presence of CPS personnel for obvious reasons relative to the integrity of the evidence.  I called CPS this morning and advised them that somebody from the defense may contact them relative to the examination, and counsel also made an application to discover any type of handwritten notes by the police officers.  I searched the files.  I have found some handwritten notes.  My brief review of them indicates they are duplicates of the P-73s already handed over to defense counsel, but I have given them to them anyhow.

MR. COUGHLIN:  Acknowledged, Judge.

MR. NEWCOMB:  Acknowledged.

THE COURT:  Okay, let's get the jurors down and we will start.

(1:00 a.m., jury present.)

Loghmanee - Sedita - Direct

THE COURT:  Good morning, ladies and gentlemen.  Mr. Sedita is ready with his next witness.

MR. SEDITA:  Yes, your Honor.  People call Dr. Fazlollah Loghmanee.

MR. NEWCOMB:  May we approach the Bench?

THE COURT:  Yes.

(Bench Conference held.)

F A Z L O L L A H.  L O G H M A N E E, a witness located in Williamsville, New York, having been first duly sworn, was examined, and testified as follows:

DIRECT EXAMINATION

BY MR. SEDITA:

    Q.  Doctor, obviously you're not a native American or from the United States originally; is that correct?

    A.  Yes.

    Q.  Would you tell the jurors where you are originally from?

    A.  I was born in Tehran, Iran.

    Q.  Could you tell the jurors further what you do for a living, sir?

    A.  I'm a physician and Medical Examiner.

    Q.  Where exactly are you employed?

    A.  Medical Examiner's office for the County of Erie.