# EXHIBIT 78

1

2    COUNTY COURT OF THE STATE OF NEW YORK

3    COUNTY OF ERIE : CRIMINAL TERM : PART 1

4    ----------------------------------------------x

5    THE PEOPLE OF THE STATE OF NEW YORK

6                                                    :    Indictment
                                                          No. 91-1476-003
7             -against-                              :

8    LEONARD BROWN & MARIO JARMON,                   :

9                      Defendant.                    :    Perjury

10   ----------------------------------------------x :    Trial

11                              Erie County Hall
                                Buffalo, New York  14202
12                              Thursday, November 5, 1992

13   B e f o r e :

14                   HONORABLE MICHAEL L. D'AMICO

15                                  Judge

16   A p p e a r a n c e s :

17            KEVIN M. DILLON, ESQ.
                   District Attorney, Erie County
18            BY:  FRANK A. SEDITA, III, ESQ.
                   Assistant District Attorney
19                 Appearing for the People

20            EDWARD COUGHLIN, ESQ.
                   Appearing for the Defendant Brown
21
              TERENCE B. NEWCOMB, ESQ.
22                 Appearing for the Defendant Jarmon

23

24

25
                              Kenneth D. Meier, C.S.R.
                              Senior Court Reporter

I N D E X

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|-----------|--------|-------|----------|---------|
| Frank Tucci | 45 | 51C | | |
| William Shephard | 56 | 64C | | |
| Aaron Jackson | 67 | 94C<br>96N<br>100C<br>155N | 160 | |
| Travis Powell | 172 | 191C<br>201N<br>205C | | |
| John Sullivan | 206 | 220C<br>230N | 233 | |
| Fazollah Loghmanee | 239 | 245C | 249 | 250C |
| Robert Lewis | 251 | 260C<br>282N | 284 | 285C |
| Fred Stancil, Jr. | 291 | 299C<br>305N | | |
| Tamara Frida | 312 | 317C<br>320N | | |
| James Lonergan | 321 | 325C<br>333N | 335 | |
| Henry Smardz | 336 | 363C<br>373N | 375 | 376C |
| James Diegelman | 377 | 381 | | |
| Bert Pandolfino | 395 | 401C<br>403N | | |
| Charles Militello | 404 | 412C<br>415N | | |
| Michael Dujanovich | 430 | 442C<br>444N | | |
| Thomas Maxian | 446 | 452N | 455 | |

*C - Coughlin   N - Newcomb

| WITNESSES | DIRECT | CROSS | REDIRECT | 3 RECROSS |
|---|---|---|---|---|
| Raneiro Rasecchia | 455 | 459C | | |
| Christopher J. Belling | 467 | 483C 518N | 558 | 567N |
| Floyd Fisher | 572 | 588 | | |
| Darwin Amerson | 610 | 617N | | |
| Daniel DiPirro | 619 | 622 | 623 | 624 |
| Antione Shannon | 626 | 661 | 693 | |

## E X H I B I T S

| PEOPLE'S | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| No. 1 (Copper bullet) | 6 | 394 |
| No. 2, 3 (copper bullets) | 6 | 394 |
| No. 4 (lead slug) | 6 | 394 |
| No. 5 (22 caliber casing) | 6 | 394 |
| (No Exhibit No. 6) | | |
| No. 7A, 7B, 7C (.32 Caliber revolver) (27 9mm casings) (1 9mm copper jacket bullet) | 6 | 394 |
| No. 8 (Lamarr Scott mug shot) | 6 | 472 |
| No. 9 (lead slug) | 6 | 394 |
| No. 10 (9mm bullet) | 6 | 394 |
| No. 11 (Photo) | 6 | |
| Nos. 12, 13, 14 (Photos) | 6 | 60 |
| No. 15 (Photo - Dixon) | 6 | |
| Nos. 16 thru 20 (9mm slug from victim) | 6 | 394 |
| No. 21 (Dixon's clothes) | 6 | |

EXHIBITS (Continued)

3~A

| PEOPLE'S | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| No. 22 (Map) | 6 | 56 |
| No. 23 (Photo) | 6 | 190 |
| Nos. 24, 25, 26 (Photos) | 6 | 96 |
| No. 27 (Photo) | 6 | 394 |
| No. 28 (Photo) | 6 | 334 |
| No. 29 thru 33 (Photos) | 6 | 394 |
| No. 35 (Photo) | 6 | 190 |
| Nos. 34, 36 (Photos) | 6 | 96 |
| Nos. 37 thru 43 (Photos) | 6 | 394 |
| Nos. 44 thru 50 (Photos) | 6 | |
| Nos. 51, 52 (Photos) | 6 | 317 |
| No. 53 (statement-Dixon) | 411 | |
| No. 54 (Ambulance run report) | 446 | |
| No. 55 (Statement - Brown) | 455 | 467 |
| No. 56 (GJ Test. Brown) | 518 | 568 |
| No. 57 (GJ Test. Jarmon) | 518 | 568 |
| No. 58 (Shannon statement) | 661 | |

| DEFENDANTS' | | |
|---|---|---|
| A (GJ test. A. Jackson) | 110 | |
| B (Dixon trial transcript) | 145 | |
| C (P-73) | 152 | |
| D thru J (Photos) | 197 | 200 |

3-B

EXHIBITS (Continued)

| DEFENDANTS' | FOR IDENT. | IN EVIDENCE |
|---|---|---|
| K (Statement-Sullivan) | 221 | |
| L (GJ test. Lewis) | 288 | |
| M (P-73) | 329 | |
| N (BPD Certificate) | 369 | |
| O (GJ - Jarmon) | 518 | |
| P (Scott -testimony) | 549 | |

|  | PAGE |
|---|---|
| Preliminary Charge | 6 |
| Proceedings of Friday, November 6, 1992 | 29 |
| Opening Statement - Mr. Sedita | 37 |
| Opening Statement - Mr. Coughlin | 40 |
| Opening Statement - Mr. Newcomb | 43 |
| Proceedings of Monday, November 9, 1992 | 238 |
| Proceedings of Tuesday, November 10, 1992 | 425 |
| Proceedings of Thursday, November 12 | 606 |
| Closing Summation - Mr. Coughlin | 701 |
| Closing Summation - Mr. Newcomb | 724 |
| Closing Summation - Mr. Sedita | 740 |
| Proceedings of Friday, November 13, 1992 | 764 |
| Jury Charge | 770 |
| Proceedings of Monday, November 16, 1992 | 181 |
| Jury Verdict | 827 |

Militello - Sedita - Direct                404

County, New York, having been first duly sworn, was examined, and testified as follows:.

DIRECT EXAMINATION

BY MR. SEDITA:

Q.   Mr. Militello, what do you do for a living, sir?

A.   Police officer.

Q.   For what department, sir?

A.   Buffalo police.

Q.   How long have you been a Buffalo Police Officer, sir?

A.   Four years with the Buffalo police and three years with the Municipal Housing.

Q.   Get into the microphone a little bit more, it would be helpful.  What is your current assignment, Mr. Militello?

A.   Currently I am assigned to the Criminal Intelligence Unit.

Q.   Were you assigned to the Criminal Intelligence Unit on August 10th of 1991?

A.   Yes.

Q.   Very briefly could you tell the jury what the Criminal Intelligence Unit of the Buffalo Police Department does?

A.   We keep track of street gangs, investigate drive-by shootings, drug-related kidnappings, motorcycle gangs, and

Militello - Sedita - Direct                    405

2  organized crime.

3      Q.    Sir, I would like to --

4              MR. COUGHLIN:  Objection, your Honor, and move

5      to strike the last response.  I don't see any

6      relevancy to what this officer's assignments are.

7              MR. SEDITA:  Background material.

8              THE COURT:  Objection is overruled.  Go

9      ahead.

10  BY MR. SEDITA:

11      Q.    Sir, I would like to refer your attention to August

12  10th of 1991 at approximately 1:10 p.m. and ask if you had

13  occasion to be in the area of 1129 and 1133 East Delevan

14  Avenue in the City of Buffalo?

15      A.    Yes.

16      Q.    And why specifically did you have occasion to be in

17  that area on that time on that day?

18      A.    We were assisting the Homicide Unit.

19      Q.    In what?  What were you assisting them with?

20      A.    We had a car staked out that belonged to Valentino

21  Dixon, who was wanted in connection with the homicide.

22      Q.    And, sir, you referred to a car.  What kind of car

23  was it?

24      A.    It's a white Eldorado, and it has got, it's all

25  fancied up.

Militello - Sedita - Direct                      406

1

2      Q.    And that was in the vicinity of 1129-1133 East

3  Delevan?

4      A.    Correct.

5      Q.    Sir, I'm going to show you what has been marked as

6  People's Exhibit Number 48 for identification and ask if you

7  recognize what is in that photograph?

8      A.    Valentino Dixon's vehicle.

9      Q.    Have you seen that vehicle before?

10     A.    Yes.

11     Q.    And behind it is 1133 East Delevan?

12     A.    Yes, it is.

13     Q.    And, sir, I would like to show you what has been

14  marked as People's Exhibit 49 for identification and ask what

15  that is?

16     A.    This is a picture of the same car, the back side of

17  it.

18     Q.    Do you recognize what is up here in the upper

19  left-hand corner of the picture?

20     A.    I believe that's St. Gerard's church.

21     Q.    And is St. Gerard's church indicated on People's

22  Exhibit Number 22 in evidence?  On the map?

23              THE COURT:   He doesn't know what 22 was.

24  BY MR. SEDITA:

25     Q.    Is the St. Gerard's church which is contained on

1
2    that photograph that you now have in you your hands indicated
3    in People's Exhibit 22 in evidence, crime scene map?
4         A.    Right, yes, sir.
5         Q.    Are these photographs reasonable and accurate
6    depictions of how Mr. Valentino Dixon's car appeared to you
7    on August 10 of 1991?
8         A.    Yes.
9         Q.    Now, as you were waiting there, sir, does Mr.
10   Valentino Dixon come by?
11        A.    Yes, he did.
12        Q.    And, what kind of car did he drive up in?
13        A.    I believe it was a small red, I think it was a
14   RX-7.
15        Q.    Sir, I show you what has been marked as People's
16   Exhibit 47 for identification.  Can you identify that
17   photograph?
18        A.    Yes.  This is the vehicle that we stopped Valentino
19   Dixon driving.
20        Q.    And once again, People's 50 for identification?
21        A.    Yes.  It's a red RX7 Mazda.
22        Q.    And what is in the upper left-hand -- I'm sorry,
23   the upper right-hand portion of the photograph?
24        A.    St. Gerard's church.
25        Q.    And, finally, People's 46 for identification?

Militello - Sedita - Direct                    408

1

2    A.    It's the RX-7.

3    Q.    Are both cars depicted in that photograph?

4    A.    Yes, they are.  The Cadillac is several car lengths

5    behind it.

6    Q.    Did you arrest Valentino Dixon?

7    A.    Yes.

8    Q.    Now, before August 10th of 1991 had you ever had

9    occasion to come into contact with Valentino Dixon?

10              MR. COUGHLIN:  Objection, your Honor.  May we

11        approach?

12              THE COURT:  Did you ask to approach?  So far

13        we're okay.  Overruled.

14   BY MR. SEDITA:

15   Q.    Could you describe for the jury what Mr. Dixon

16   looks like in terms of his height and physical build?

17              THE COURT:  Did you have occasion to know him

18        before that day?

19              THE WITNESS:  Yeah, we stopped him all the

20        time to talk to him.

21              THE COURT:  Next question.

22   BY MR. SEDITA:

23   Q.    Before August 10 of 1991 and on August 10 of 1991

24   were you familiar with his build and height?

25   A.    Yeah.  About five-eight, five-nine, real slender

Militello - Sedita - Direct                                    409

1
2    build.

3        Q.    How tall are you?

4        A.    About five-six.

5        Q.    All right, and how much bigger is Mr. Dixon than

6    you?

7        A.    He's a couple inches taller.  He's real slim

8    build.

9        Q.    Now, did you have occasion to take Mr. Dixon down

10   to the Homicide Office?

11       A.    Yes.

12       Q.    At that time did you, and I believe was it

13   Detective Stambach?

14       A.    Yeah, Mark Stambach.

15       Q.    Did you both extract a statement out of Mr. Dixon?

16       A.    He questioned him and I witnessed the questioning.

17       Q.    During that statement did Mr. -- strike that.  What

18   was the subject matter of the interview with Mr. Dixon,

19   without stating what Mr. Dixon stated?

20       A.    The questioning involved the circumstances behind

21   the Torriano Jackson homicide.

22       Q.    The homicide which had occurred earlier in the

23   morning on East Delevan and Bailey Avenues?

24       A.    Yes.

25       Q.    And, during the entire course of that sworn

2  statement did Mr. Dixon make any mention of an individual by
3  the name of Lamarr Scott?

4             MR. COUGHLIN:  Objection, your Honor.

5             THE COURT:  Overruled.

6  BY MR. SEDITA:

7      Q.    During the whole time of that sworn statement did
8  Mr. Dixon make any mention of an individual by the name of
9  Lamarr Scott?

10     A.    I don't believe so.

11     Q.    Is that a yes or no?

12            MR. COUGHLIN:  Objection, your Honor.

13            THE COURT:  What is the objection, Mr.
14       Coughlin?

15            MR. COUGHLIN:  He said I don't believe so.
16       He's characterizing.  I don't believe so.  Is that
17       a yes or a no?  But, I would like to renew my
18       objection to this whole line of questioning.

19            THE COURT:  Overruled.  Is that a yes or a
20       no?  Or don't you know?

21            THE WITNESS:  I don't believe I remember that.

22            THE COURT:  All right, next question.

23  BY MR. SEDITA:

24     Q.    Do you remember what he said?

25     A.    The most of the conversation was that he didn't

Militello - Sedita - Direct                411

1

2   know --

3

4           THE COURT:  Wait, wait.  I don't want to hear

5   his conversation.  The question that Mr. Sedita is

6   asking you is did he mention Lamarr Scott?  Do you

7   remember, or don't you?

            THE WITNESS:  No.

8   BY MR. SEDITA:

9

10      Q.   Is there something that I can show you to refresh
    your recollection?

11

        A.   Yes.

12

13          MR. SEDITA:  Would you please mark this as the
    next People's Exhibit?

14

15          (Whereupon, People's Exhibit Number 53
    was marked for identification.)

16  BY MR. SEDITA:

17

18      Q.   Detective Militello, I show you what has been
    marked as People's Exhibit 53 for identification, August 10,

19  1991 statement of Valentino Dixon.  Look it over yourself and

20  tell me when you're done looking it over.

21      A.   No, there's no mention of him.  Witnessed there.

22  My signature appears on it.

23      Q.   I'll ask the question again.  Is there any mention

24  from Mr. Dixon of a Lamarr Scott?

25      A.   No.

Militello - Coughlin - Cross                                41

1

2    Q.    Did Mr. Dixon make any mention of a Torriano

3    Jackson having a weapon?

4    A.    No.

5          MR. COUGHLIN:  Objection, your Honor.

6          THE COURT:  Overruled.

7    BY MR. SEDITA:

8    Q.    Yes or no?

9    A.    I don't believe that there was any testimony of

10   that.

11   Q.    I show you what has been marked as People's Exhibit

12   Number 53 for identification, Mr. Dixon's statement.  Take a

13   look at that.

14   A.    Nothing.  No.

15         MR. SEDITA:  Thank you, detective.  I have no

16   further questions, your Honor.

17   CROSS-EXAMINATION

18   BY MR. COUGHLIN:

19   Q.    Did the fellow, Dixon that you were talking about,

20   did he tell you that he did not shoot Torriano Jackson?

21         MR. SEDITA:  Objection.  Hearsay.

22         THE COURT:  Well, I think we are bordering on

23   hearsay all over the place here.  I'm going to

24   allow you to ask that.

25         MR. COUGHLIN:  Thank you.

Militello - Coughlin - Cross                413

BY MR. COUGHLIN:

Q.   Did he tell you that he did not shoot Torriano Jackson?

A.   He was interviewed by Detective Stambach.  I witnessed it.

THE COURT:  Well, did he say --

BY MR. COUGHLIN:

Q.   Were you there, or weren't you there?

A.   Yes.

Q.   Did you hear him say he did not shoot Torriano Jackson?

A.   He said --

Q.   If you're not sure, you can refresh your recollection?

A.   According to what he said, no.

Q.   According to what he said, no, you mean no, he did not shoot him?

A.   That he was not involved.

Q.   He told you and told Detective Stambach that he was not involved; is that right?

A.   Correct.

Q.   Did he ever at any time during that interrogation mention the name Leonard Brown?

A.   I'd have to look again.

Militello - Coughlin - Cross                    414

1

2    Q.    Showing you what was marked as People's Exhibit 53?

3    A.    I see no mention of Leonard Brown.

4    Q.    Okay.  He did tell you that he was in the area; is

5    that right?

6    A.    That's correct.

7    Q.    And, did he tell you when he heard shooting, he

8    took off and ran away?

9           MR. SEDITA:  I'm just going to object.  We are

10    starting into what he affirmatively said, Judge.

11           THE COURT:  I'll tell you what.  Counsel

12    approach here a minute.

13           (Bench Conference held.)

14           THE COURT:  Give us the last question back.

15           (Record read.)

16           THE COURT:  You may answer the question.

17           THE WITNESS:  According to what he stated --

18    BY MR. COUGHLIN:

19    Q.    The question was, did he tell you when he heard the

20    shooting, did he take off and run away?  Is that what he

21    said?

22    A.    He says he left the area.

23    Q.    He ran from the area?

24    A.    He says I jumped in the car and I left.

25           MR. COUGHLIN:  I have nothing further.

1                    Militello - Newcomb - Cross

2    CROSS-EXAMINATION

3    BY MR. NEWCOMB:

4        Q.    Officer Militello, you made this arrest on August

5    10th?

6        A.    Correct.

7        Q.    You don't recall what time?

8        A.    It was in the afternoon.

9        Q.    In the afternoon the same day as the shooting?

10       A.    No.  Well, I wasn't on duty at the time of the

11   shooting.  That happened in the night time.

12       Q.    Do you know what day the incident occurred?

13       A.    I believe it was the day before.

14       Q.    You said you worked for the Intelligence Unit?

15       A.    Yes.

16       Q.    You gather information on gangs, drive-by

17   shootings?

18              THE COURT:  You have got to answer.

19              THE WITNESS:  Yes.

20   BY MR. NEWCOMB:

21       Q.    Does the name Bailey Posse, do you know of the

22   Bailey Posse?

23       A.    Yes.

24       Q.    Is that a gang in that neighborhood?

25       A.    One of them.

1           Militello - Newcomb - Cross

2       Q.   Did the Jacksons belong to the Bailey Posse, within

3   your knowledge?

4       A.   I couldn't tell you.

5       Q.   How about DLN, does that mean anything to you?

6               MR. SEDITA:   I'm going to object.   I think we

7           are getting far afield.

8               THE COURT:   I don't know where we are going.

9           You can answer that.

10              THE WITNESS:   Yeah, I never heard of it.

11   BY MR. NEWCOMB:

12      Q.   Did you happen to see either one of the Jacksons,

13          Torre or Aaron?

14              THE COURT:   When, Mr. Newcomb?

15              MR. NEWCOMB:   Before the shooting.   Before you

16          made the arrest?

17              THE WITNESS:   No.

18              MR. NEWCOMB:   Yes or no, I'm not trying to

19          trick you.

20   BY MR. NEWCOMB:

21      Q.    And, when you questioned Valentino Dixon, now we're

22   into headquarters, you and Detective Stambach -- you

23   testified that Valentino Dixon did not mention Lamarr Scott's

24   name, correct?

25      A.   Correct.

417

Militello - Newcomb - Cross

1

2      Q.    Did he mention John Sullivan's name?

3      A.    Again, I'm going to have to refer to the paper.

4  This is the first time since the arrest that I have been

5  involved in this.

6      Q.    Take your time.

7      A.    He was asked that question.  He stated no.  Do you

8  know a John Sullivan.

9      Q.    Did he say -- did he mention -- did he mention if

10  he knew Travis Powell?

11      A.    What was the name again, sir?

12      Q.    Travis Powell.

13      A.    I don't see that anywhere.

14      Q.    Officer, I'm not trying to give you a hard time.

15  Does that document refresh your memory?

16      A.    Like I stated.  This is the first time I have been

17  involved with this.  I witnessed it.  I didn't make any

18  questions due to the fact it's a homicide case and we were

19  just there to grab them for them.  That's the extent.

20      Q.    Simple yes or no answer.  Does that document

21  refresh your memory?

22      A.    I'll have to keep refreshing my memory.

23      Q.    So it does refresh your memory, yes?

24      A.    I signed it, so I witnessed it.

25      Q.    I'm not trying to give you a hard time.

Militello - Newcomb - Cross                                418

1

2    A.    No, I'm just trying to let you know.

3    Q.    Does Mr. Dixon mention the name Travis Powell?

4    A.    No.

5    Q.    Yes or no, sir?

6    A.    No.

7    Q.    Does he mention the name Robert Lewis?

8    A.    I don't believe so.  No, no mention.

9    Q.    Does he mention the name Richard Prior?

10              MR. SEDITA:  Who?

11              MR. NEWCOMB:  Richard Prior?

12              MR. SEDITA:  Oh.

13              THE WITNESS:  I don't see that in here either.

14   BY MR. NEWCOMB:

15       Q.    So there are a lot of names that weren't mentioned,

16   correct?

17       A.    Correct.

18              MR. NEWCOMB:  Thank you.  That's all that I

19   have.

20              MR. SEDITA:  Nothing further.

21              THE COURT:  Thank you.  You may step down.

22              (Witness excused.).)

23              MR. SEDITA:  That's my last witness for this

24   afternoon.  My final witness for the day's dad had

25   surgery today.