# EXHIBIT 79

```
COUNTY COURT OF THE STATE OF NEW YORK

COUNTY OF ERIE : CRIMINAL TERM : PART 1

------------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK        :  Indictment
                                              No. 91-1476-003
          -against-                        :

LEONARD BROWN & MARIO JARMON,              :  Perjury

               Defendant.                  :  Trial

------------------------------------------x
```

Erie County Hall
Buffalo, New York 14202
Tuesday, November 10, 1992

B e f o r e :

    HONORABLE MICHAEL L. D'AMICO

                                 Judge

A p p e a r a n c e s :

    KEVIN M. DILLON, ESQ.
        District Attorney, Erie County
        BY: FRANK A. SEDITA, III, ESQ.
            Assistant District Attorney
            Appearing for the People

    EDWARD COUGHLIN, ESQ.
    Appearing for the Defendant Brown

    TERENCE B. NEWCOMB, ESQ.
    Appearing for the Defendant Jarmon

93 FEB 26 AM 11:16 ERIE COUNTY CLERK

                              Kenneth D. Meier, C.S.R.
                              Senior Court Reporter

```
                    Maxian - Sedita - Direct                446

             (Witness excused.)

        MR. SEDITA: People call Thomas Maxian.
T H O M A S   M A X I A N, a witness located in Amherst, New
   York, having been first duly sworn, was examined, and
   testified as follows:

        MR. SEDITA: Please mark this as the next
   exhibit.

             (Whereupon, People's Exhibit Number 54
             was marked for identification.)
DIRECT EXAMINATION
BY MR. SEDITA:
   Q.   Mr. Maxian, would you tell the jury how you are
presently employed, sir?
   A.   Presently employed as a paramedic.
   Q.   Who do you work for now?
   A.   Now I work for Twin City Ambulance in the City of
Tonawanda.
   Q.   In August of 1991 were you employed?
   A.   Yes, I was, for Lasalle Ambulance as a paramedic.
   Q.   I am sorry, I didn't hear that?
   A.   I was employed at Lasalle Ambulance as a
paramedic.
        MR. NEWCOMB: I can't hear.
        THE COURT: Could you speak up a little bit.
```

```
                                                                   447
1                    Maxian - Sedita - Direct

2           Lasalle Ambulance, is that what you said, as a

3           paramedic.

4                THE WITNESS:  That is correct.

5   BY MR. SEDITA:

6      Q.   Mr. Maxian, you either have to project your voice

7   or speak directly into the microphone, okay?

8           Now, you indicate you were a paramedic.  Is that also

9   known as an EMT?

10     A.   EMT for paramedic, that is correct.

11     Q.   Explain what qualifications you have for the jury

12  so they understand?

13     A.   I have been certified by New York State as a

14  paramedic for 6 years.

15     Q.   Sir, I would like to refer your attention to August

16  10th of 1991 at approximately 1:32 p.m.  Did you have

17  occasion to receive a dispatch to respond to the scene of

18  East Delevan and Bailey Avenues in the City of Buffalo for

19  the Lasalle Ambulance Company?

20     A.   Yes, I did, that's correct.

21     Q.   And, did you eventually arrive at that scene, sir?

22     A.   Yes, I did.

23     Q.   And, just in terms of general observations, what

24  did you observe relative to the scene?

25     A.   When I arrived, I found one gentleman in the
```

Maxian - Sedita - Direct                                                  448

street. It appeared to me that he had been shot.

Q. Was that gentleman Mario Jarmon?

A. Apparently it was, according to what I had written down. I could not identify him just by looking at him, but according to my --

Q. You cannot identify Mr. Jarmon in the courtroom today?

A. No, I cannot.

Q. He gave his name as Mario Jarmon?

A. I probably had asked him his first name just to communicate with him, and when I got to the hospital, somebody there probably asked him what his name was, and I had gotten his last name from there.

Q. Can you indicate on the map, sir, which is People's Number 22 in evidence, where you found Mr. Jarmon? Please come off the stand, and, mark your initials where you found Mr. Jarmon.

Your Honor, may the record reflect that the witness has identified where he found Mr. Jarmon with the initials TH on the map between, or I'm sorry, on Bailey Avenue, between 2502 and 2506 Bailey.

THE COURT: Sure.

BY MR. SEDITA:

Q. Now, did Mr. Jarmon appear to be injured to you,

449

Maxian - Sedita - Direct

sir?

A. Yes, he did.

Q. And, is it your duty to try to assess those injuries by talking to a patient?

A. Yeah, that would be very much part it have.

Q. Did you attempt to speak to Mr. Jarmon?

A. Yes, I did.

Q. First of all, can you indicate for the jury Mr. Jarmon's level of alertness or orientation in order to speak with you?

A. Without looking at the run form that I completed, my standard report, I wouldn't be able to do that.

Q. You are indicating an ambulance run form?

A. That's correct.

Q. Sir, I show you what has been marked as People's Exhibit Number 54 for identification and ask you to identify what that document is?

A. This is the standard pre-hospital care report completed for every time I saw a patient, whether he was transported to the hospital or not. This would be filled out so that I would have some recollection of things that I did and treatments that I had rendered at a future date.

Q. When do you fill out that form, sir?

A. Shortly after the patient would be delivered to the

450

Maxian - Sedita - Direct

1
2  hospital.
3      Q.   Is it important that you be as accurate as possible
4  in that form, sir?
5      A.   Yes, it is.
6      Q.   Why is that?
7      A.   A lot of the time the pre-hospital, or I'm sorry,
8  the hospital staff, nurses or doctors, take a look at how I
9  found the patient and treatment that I had rendered, and that
10 would direct them in the way they would treat the patient
11 from that point on.
12     Q.   Now, are you a medical doctor, sir?
13     A.   No, I'm not.
14     Q.   So your assistance in terms of physical treatment
15 and so forth are basically preliminary; is that correct?
16     A.   That's correct.
17     Q.   Now, does your form indicate what Mr. Jarmon's
18 level of alertness or orientation was?
19     A.   Yes, under level of consciousness I have him listed
20 as consciousness, alert and oriented times 3, and that would
21 indicate that he was able to tell me the time, date and the
22 place that he was at the time that I was speaking with him.
23          MR. COUGHLIN:  Excuse me --
24          MR. SEDITA:  When you are discussing matters
25     with the patient --

    MR. COUGHLIN: I'm just wondering where on the form --

    THE COURT: Well, you can ask him when it's your turn. Go ahead.

BY MR. SEDITA:

Q. When you are discussing matters with the patient, is there some portion of your form where you indicate in your notes what that patient may have said to you?

A. Yes, sir, it's under the subjective part of the assessment.

Q. And why do you make out that part of the assessment?

A. To give me a better understanding of exactly what the problem was, circumstances involving that, and history of the present complaint so that he can elaborate to me exactly what hurt and what didn't hurt, and things like that.

Q. What did Mr. Jarmon tell you happened?

A. I have written down here that, I wrote down patient apparently injured in a drive-by shooting, and I always write that in terms of apparently, because I wasn't there witnessing it, and that would be what the patient told me when I arrived and asked how did it happen. I also have written down that, under mechanism of injury, it's unidentified gun, and I would be concerned with that because

Maxian - Newcomb - Cross                                              452

of the size of the gun and how close the victim or the patient was at the time he was shot, or whatever the mechanism of injury happened to be.

Q. And again, that would come from the patient's lips; is that correct?

A. That's correct, everything under subjective would come from what the patient told me.

MR. SEDITA: I have nothing further, your Honor.

MR. COUGHLIN: No questions, Judge.

CROSS-EXAMINATION
BY MR. NEWCOMB:

Q. Mr. Maxian, why don't you hang onto this; when you asked the victim what happened, you do that to help assess his injuries, correct?

A. That's correct.

Q. You're not concerned with the detail of events that lead up to that injury?

A. Not every detail. Some of the details would be relevant to the treatment I would render, and also to be relayed to the emergency room staff for the treatment they would render.

Q. Was Mr. Jarmon in a state of trauma?

A. He was in a state of trauma, that's correct.

453

Maxian - Newcomb - Cross

   Q.   To the best of your ability, as a paramedic, would you tell the jury what that means?

   A.   Trauma is used to oppose any injury or any pre-hospital injury that is medical in origin. Medical would be something like chest pain, a heart attack. Trauma is any soft tissue injury. It could be a bump on the head, it could be a gun shot wound.

         MR. SEDITA:   I am sorry, I didn't hear that.
         THE COURT:   Try to keep your voice up a little would you, Mr. Maxian, please.
         THE WITNESS:   Anything medical in origin would be used to oppose anything traumatic. Trauma could be any soft tissue injury, bump on the head, gunshot wound would both be trauma as opposed to something in origin medically, like chest pains or difficulty breathing.

BY MR. NEWCOMB:
   Q.   When you say he was at a conscious level 3 --
   A.   That is correct.
   Q.   -- that is in the objective part of the chart?
   A.   No. That's correct, objective would be level of consciousness.
   Q.   What is the highest level of consciousness?
   A.   Conscious, alert, oriented times 3 would be the

```
                                                                    454
                        Maxian - Newcomb - Cross
```

most alert. We are all conscious, alert, oriented times 3 now.

    Q.    What would be the low?

    A.    Unresponsive to pain or to voice.

    Q.    What number would that be?

    A.    There is no number for that.

    Q.    So Mr. Jarmon was fully alert?

    A.    As alert as I would expect him to be. Answered me what time it was, what date it was, basically where we were.

    Q.    And he had a number of injuries?

    A.    According to the run form, I have marked what appeared to be an a gunshot wound to the right of the sternum and gunshot wound to the lower right side of the abdomen just before the iliac crest. The iliac crest is the bone on your hip that you can feel if you palpate it.

    Q.    That's two gunshot wounds?

    A.    Two apparent gunshot wounds, that's correct.

    Q.    Any other injury?

    A.    I have, it appears he had a dislocated right index finger.

    Q.    Anything else?

    A.    Nothing really noteworthy here. There may have been some other lacerations or bruises that would have fallen far below my priority to treat other than the two gunshot

Maxian - Sedita - Redirect    455

wounds.

MR. NEWCOMB: Nothing further, Judge. Thank you.

THE COURT: Mr. Sedita?

REDIRECT EXAMINATION
BY MR. SEDITA:

Q. Did you perform any type of operative procedure on Mr. Jarmon?

A. Operative -- you have to define that a little better.

Q. Like surgery?

A. No.

MR. SEDITA: Nothing.

THE COURT: Is that it? Thank you. You may step down.

(Witness excused.)

MR. SEDITA: People call Raniero Masecchia.

(Whereupon, People's Exhibit Number 55 was marked for identification.)

R A N I E R O   M A S E C C H I A, a witness located in Buffalo, New York, having been first duly sworn, was examined, and testified as follows:

DIRECT EXAMINATION
BY MR. SEDITA: