# EXHIBIT 82

STATE OF NEW YORK
COUNTY COURT  :  COUNTY OF ERIE

---

THE PEOPLE OF THE STATE OF NEW YORK

v

LYNN DeJAC

               Defendant

**SUPPORTING AFFIDAVIT**

Indictment No.
00329-1993

---

STATE OF NEW YORK  )
COUNTY OF ERIE     ) ss.
CITY OF BUFFALO    )

    THOMAS M. FINNERTY, being duly sworn, deposes and says:

    1. I am an attorney, duly admitted to the practice of law in the State of New York. I am also an Assistant District Attorney, appearing of counsel to Erie County District Attorney FRANK J. CLARK, on behalf of the people of the State of New York.

    2. This affidavit is made in support of the People's motion seeking to dismiss the indictment in furtherance of justice.

    3. This affidavit is made upon information and belief, the sources of which include familiarity with the confidential District Attorney's Office investigative files, forensic pathology results and conversations with witnesses.

    4. On April 20, 1994, defendant was convicted, after

a jury trial, of Murder in the Second Degree for the strangulation death of Crystallyn Girard and received an indeterminate sentence of imprisonment of 25 years to life.

5. On September 16, 2007, members of the Buffalo Police Department Cold Case Squad met with Deputy District Attorney Frank A. Sedita III, and informed him that the 1975 homicide of Carol Reed, as well as the 1993 homicides of Crystallyn Girard and Joan Giambra had two principal details in common: all the victims died of manual strangulation and they all knew Dennis Donahue.

6. On September 17, 2007, Mr. Sedita met with Dr. John Simich of the Erie County Central Police Services Forensic Laboratory and requested that evidence from the Crystallyn Girard crime scene be compared to the genetic profile of Dennis Donahue. In other words, a request to analyze evidence that might exonerate Lynn Dejac was made by the District Attorney's Office less than 24 hours after the police had voiced their concerns.

7. Soon thereafter, Mr. Sedita called Andrew C. LoTempio, the attorney for Lynn Dejac, on behalf of the District Attorney. Mr. Sedita informed Mr. LoTempio of his laboratory requests and asked whether Mr. LoTempio would like any additional evidence re-tested. Mr. LoTempio provided him with a list and the crime laboratory tested those items as well.

8. The forensic testing revealed that a genetic profile consistent with that of Mr. Donahue was found in a bloodstain on the wall in Crystallyn's bedroom and from a swab taken from Crystallyn's vagina. The defendant filed a motion seeking a new trial based upon this newly discovered evidence. Subsequently, the court set aside the verdict and ordered a new trial.

9. The pending indictment charges the defendant with the crimes of Murder in the Second Degree, Manslaughter in the First Degree and Manslaughter in the Second Degree. All three counts of the indictment accuse the defendant of causing the death of Crystallyn Girard by strangling her. At trial, the prosecution must therefore present proof beyond a reasonable doubt that Crystallyn died as a result of strangulation.

10. I was assigned this case on November 26, 2007 and took approximately two weeks to review the file in its entirety. Upon the completion of my review, it was clear that the time of Crystallyn's death would be of critical importance during the re-trial. The prosecution's case revolved around death occurring at approximately midnight; the defense maintained that death was not until after 5:00 a.m. when the defendant claimed she had last seen her daughter alive. At the first trial, Associate Medical Examiner Dr. Sung-ook Baik testified to a very broad range of time of when death may have occurred; anytime

between 11:30 p.m. on February 13th and 5:30 a.m. on February 14th.

11. On December 13, 2007, I recommended to the District Attorney that we seek an opinion from a nationally recognized forensic pathologist as to whether a greater level of precision could be obtained as to when Crystallyn died. He agreed and, on that same day, I forwarded the autopsy report, toxicology report, scene and autopsy photographs and other relevant materials to Dr. Michael M. Baden, Director of the Medicolegal Investigations Unit of the New York State Police, for his opinion concerning time of death.

12. After his review, Dr. Baden informed me that in his expert opinion the principle issue in this case was not the time of Crystallyn's death, but rather the cause of her death. Thus, the first time that cause of death was raised as an issue was from Dr. Baden. This opinion was neither sought nor expected.

13. Dr. Baden concluded within a reasonable degree of medical certainty that Crystallyn did not die from manual strangulation. Simply, there was insufficient evidence to support the diagnosis of manual strangulation. Specifically, there were (1) no injuries to the skin of the neck; (2) none to the larynx; and (3) none to the hyoid bone (see attached report).

14. I then sought a second and independent opinion regarding the cause of death. On January 31, 2008, Mr. Sedita and I met with the current Erie County Medical Examiner, and former colleague of Dr. Baik's, Dr. James Woytash. He, too, reviewed the autopsy report, toxicology report, as well as scene and autopsy photographs. Additionally, he re-examined the preserved larynx that was still present in the Medical Examiner's Office.

15. Dr. Woytash also and independently concluded within a reasonable degree of medical certainty that Crystallyn did not die from manual strangulation.

16. It is axiomatic that in order to prove that the defendant is guilty of the crime for which she is charged that the people must prove beyond a reasonable doubt that Crystallyn's death was caused by manual strangulation.

17. Clearly, the People cannot prove that Crystallyn died of manual strangulation when two pathologists, that the prosecution consulted, have separately, independently and without any compensation for their opinion concluded that Crystallyn did not die of manual strangulation and that therefore her death was not homicidal.

18. In the event of a trial, the jury would undoubtedly hear testimony from all of the forensic pathologists in this case including Dr. Baik and, at the very best, there

would be an irreconcilable conflict as to what caused the victim's death. Clearly, that is a reasonable doubt.

19. Finally, Dr. Werner U. Spitz was quoted in a recent media account expressing skepticism as to whether death was caused by some factor other than strangulation. Dr. Spitz is the author of the textbook Medicolegal Investigation of Death which is the leading treatise in the field of forensic pathology. He, along with Dr. Baden, is a nationally recognized expert in the field of forensic pathology.

20. On February 19th I spoke to Dr. Spitz about this case. According to Dr. Spitz, he had not been informed of the presence of Benzoylecognine in the blood, the increased weight of the lungs and most importantly, to him, of the abundance of frothy fluid from the mouth.

21. When presented with this information, he informed me that none of these facts are consistent with strangulation and that he is in agreement with the opinions of Dr. Baden and Dr. Woytash eliminating manual strangulation as the cause of death.

22. Thus, there are now three forensic pathologists, one of whom is local, two of whom are nationally recognized, who have ruled out strangulation as the cause of death of Crystallyn Girard.

WHEREFORE, the People respectfully request that an order be entered granting the People's motion to dismiss the indictment upon the following grounds: (1) pursuant to CPL 440.10-1(g), that new evidence discovered since the defendant's 1994 conviction, to wit: the DNA evidence as previously set forth, which could not have been produced at the 1994 trial with due diligence on defendant's part, resulted in the granting of a new trial and the re-evaluation of the 1994 trial evidence; and, (2) the re-evaluation of the 1994 trial evidence led to the recent pathological opinions concluding Crystallyn Girard's death was not the result of strangulation, and establish that there is no evidence of guilt to support a conviction of the defendant for the crimes charged in the Indictment.

Accordingly, pursuant to CPL 210.40-1(c), the Indictment should be dismissed.

_____
THOMAS M. FINNERTY

Subscribed to and Sworn to me
this 28th day of February, 2008.

_____
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 2/28/2011