# EXHIBIT 100

```
 1                    RICHARD T. DONOVAN

 2

 3

 4   UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF NEW YORK
 5

 6   ------------------------------------------
     VALENTINO DIXON,
 7
                              Plaintiff,
 8
                 - vs -       Case No.
 9                            1:19-cv-01678-WMS

10   CITY OF BUFFALO and COUNTY OF ERIE;
     and DETECTIVE MARK R. STAMBACH,
11   DETECTIVE RANIERO MASECCHIA, DETECTIVE
     JAMES P. LONERGAN, DETECTIVE JOHN VICKERD,
12   CHIEF RICHARD T. DONOVAN, JOHN DOES,
     Unknown Buffalo Police Department Supervisors,
13   and ASSISTANT DISTRICT ATTORNEY CHRISTOPHER
     BELLING, in their individual capacities,
14
                              Defendants.
15   ------------------------------------------

16

17            Examination before trial of RICHARD T.

18   DONOVAN, Defendant, taken pursuant to the Federal

19   Rules of Civil Procedure, in the law offices of

20   HARRINGTON & MAHONEY, 70 Niagara Street, Buffalo,

21   New York, on September 15, 2022, commencing at

22   10:23 a.m., before LORI K. BECK, CSR, CM, Notary

23   Public.

24

25
```



```
 1   APPEARANCES:        NEUFELD SCHECK & BRUSTIN, LLP,
                         By NICK J. BRUSTIN, ESQ.,
 2                       nick@nsbcivilrights.com,
                         via Zoom,
 3                           and
                         GERARDO ROMO, ESQ.,
 4                       gerardo@nsbcivilrights.com
                         99 Hudson Street,
 5                       8th Floor,
                         New York, New York  10013,
 6                       (212) 965-9081,
                         Appearing for the Plaintiff.
 7
                         HODGSON RUSS LLP,
 8                       By PETER A. SAHASRABUDHE, ESQ.,
                         The Guaranty Building,
 9                       140 Pearl Street, Suite 100,
                         Buffalo, New York  14202,
10                       (716) 856-4000,
                         psahasra@hodgsonruss.com,
11                       Appearing for the Defendants,
                         City of Buffalo; Detective
12                       Mark R. Stambach, Detective
                         Raniero Masecchia, Detective
13                       James P. Lonergan, Detective
                         John Vickerd, Chief Richard T.
14                       Donovan, and John Does, Unknown
                         Buffalo Police Department
15                       Supervisors.

16                       LIPPES MATHIAS WEXLER FRIEDMAN LLP,
                         By JENNIFER C. PERSICO, ESQ.,
17                       50 Fountain Plaza, Suite 1700,
                         Buffalo, New York  14202,
18                       (716) 853-5100,
                         jpersico@lippes.com,
19                       Appearing for the Defendants,
                         County of Erie and
20                       Assistant District Attorney
                         Christopher Belling.
21

22

23

24

25
```



1      A.   Yes.
2      Q.   And can you -- can you think of any
3 examples where that happened in homicide cases?
4      MS. PERSICO:  Form.
5      MR. SAHASRABUDHE:  Object to the form.
6      THE WITNESS:  I can -- I -- I know there
7 were -- were -- were quite a few.  You know,
8 something would come up that it would be brought to
9 my attention.  I would maybe have to meet with the
10 homicide chief of the DA's office or with another
11 police agency, you know, or, you know, try and get
12 extra stuff.
13      So, you know, there -- there -- there were
14 quite a few where that would happen.  I just
15 like -- yes.
16      BY MR. BRUSTIN:
17      Q.   I'm trying to get a sense of what --
18 what kinds of things would cause you to get
19 involved.  Can you give me some examples?
20      MR. SAHASRABUDHE:  Object to the form.
21      THE WITNESS:  I would review on a regular
22 basis -- and in this case, I don't recall anything
23 specific about this case, but if there was
24 something that came through to me and I saw that
25 there -- it needed to be investigated further or I



```
 1  didn't like the way it was investigated, I would
 2  get involved.
 3          I was active.  I was active in -- I was an
 4  active supervisor.  Or administrator, in this case,
 5  not supervisor.  I was a very, you know -- I was
 6  hands-on, and I -- I probably did stuff in this
 7  case, but I cannot recall anything at all about
 8  this particular case.
 9          BY MR. BRUSTIN:
10      Q.  Right.  So if something unusual
11  happened in a case, that might cause you to get
12  involved; is that fair to say?
13      A.  Yes.
14          MS. PERSICO:  Form.
15          THE WITNESS:  Yes.
16          BY MR. BRUSTIN:
17      Q.  I didn't hear you, I'm sorry.
18      A.  Yes.
19          MR. SAHASRABUDHE:  Note my objection as
20  well.
21          BY MR. BRUSTIN:
22      Q.  So I -- I think we said that if
23  something unusual happened in a homicide
24  investigation, that's one of the reasons why you
25  might have been involved; is that correct?
```



1  different person had been arrested and allegedly
2  identified?
3        A.   I remember -- I -- there were, but I
4  can't recall a specific case, so I have to say, you
5  know, I -- no.  No to it.  No.
6        Q.   All right.  So that would be -- that
7  would be a very unusual circumstances (sic) based
8  on -- unusual circumstance based on your
9  experience; would you agree, sir?
10       A.   Yes.
11            MR. SAHASRABUDHE:  Form.
12            MS. PERSICO:  Form.
13            THE WITNESS:  Oops.  Sorry.
14            BY MR. BRUSTIN:
15       Q.   And that would be the kind of situation
16 where -- even if you don't remember it, that would
17 be the kind of situation where you would be asked
18 to get involved.
19            MR. SAHASRABUDHE:  Form.
20            BY MR. BRUSTIN:
21       Q.   Would you agree with that?
22       A.   Yes.
23       Q.   Okay.  So even though you don't
24 remember being involved in this case, based on what
25 you learned to have happened, you would believe



1  that you were involved, because it was an unusual
2  situation, correct?
3         MR. SAHASRABUDHE:  Object to the form.
4         MS. PERSICO:  Form.
5         THE WITNESS:  Yes.
6         BY MR. BRUSTIN:
7         Q.  So in other words, even though you
8  don't remember Lamarr Scott confessing to this
9  crime that Valentino Dixon was arrested for, you
10 have no doubt that you would have been made aware
11 of it and had been in the loop at the time it
12 happened, correct?
13        MR. SAHASRABUDHE:  Form.
14        MS. PERSICO:  Form.
15        THE WITNESS:  Yes.
16        BY MR. BRUSTIN:
17        Q.  And obviously, as the chief of
18 homicide, you would have ensured that the officers
19 in your chain of command did a full investigation
20 of Lamarr Scott's confession to determine whether
21 or not he was the murderer and you had arrested the
22 wrong person, correct?
23        A.  Yes.
24        MR. SAHASRABUDHE:  Form.
25        MS. PERSICO:  Form.



```
1           THE WITNESS:  Yes.
2           BY MR. BRUSTIN:
3           Q.   There would have been nothing more
4    important than ensuring that happened, correct?
5           MR. SAHASRABUDHE:  Form.
6           MS. PERSICO:  Form.
7           THE WITNESS:  Yes.
8           BY MR. BRUSTIN:
9           Q.   And as chief of homicide, it would have
10   been your job -- withdrawn.
11          Can you explain how the chain of command
12   works?  There's a -- you're -- you're ultimately in
13   charge of the division, but there are supervisors
14   beneath you, correct?
15          A.   Yes.
16          Q.   But the buck stopped with you, correct?
17          MR. SAHASRABUDHE:  Form.
18          MS. PERSICO:  Form.
19          THE WITNESS:  Yes.
20          BY MR. BRUSTIN:
21          Q.   In other words, it was your job -- once
22   Lamarr Scott came forward and claimed that he was
23   the -- was the shooter and not Valentino Dixon, it
24   was your job, through the chain of command, to
25   ensure that that was fully investigated, correct?
```



```
 1  STATE OF NEW YORK)
 2                    ss:
 3  COUNTY OF ERIE   )
 4
 5       I DO HEREBY CERTIFY as a Notary Public in and
 6  for the State of New York, that I did attend and
 7  report the foregoing deposition, which was taken
 8  down by me in a verbatim manner by means of machine
 9  shorthand.  Further, that the deposition was then
10  reduced to writing in my presence and under my
11  direction.  That the deposition was taken to be
12  used in the foregoing entitled action.  That the
13  said deponent, before examination, was duly sworn
14  to testify to the truth, the whole truth and
15  nothing but the truth, relative to said action.
16
17
18
19                    _____
                      LORI K. BECK, CSR, CM,
                      Notary Public.
```

