UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VALENTINO DIXON,

      Plaintiff,

v.

CITY OF BUFFALO, et al.,

      Defendants.

Civil Action No. 19-cv-01678

---

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S
OPPOSITION AND IN FURTHER SUPPORT OF
COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**LIPPES MATHIAS LLP**
Jennifer C. Persico
James P. Blenk
*Attorneys for Defendants, County of Erie
and former Assistant District Attorney
Christopher Belling*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
(716) 853-5100
jpersico@lippes.com
jblenk@lippes.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................. 1

    I.    THIS COURT SHOULD DISMISS ALL CLAIMS AGAINST CHRISTOPHER BELLING BECAUSE HE IS ABSOLUTELY IMMUNE FROM LIABILITY FOR THE CONDUCT HE UNDERTOOK IN CONNECTION WITH THE PLAINTIFF ................ 1

    II.    THE PLAINTIFF DOES NOT RAISE A QUESTION OF FACT IN CONNECTION WITH DEFENDANT BELLING'S INTERACTION WITH LAMARR SCOTT ............ 4

        i.    The Plaintiff Relies on Pure Conjecture to try to Establish a Series of Contacts Between Belling and Scott. ....................................................................................... 4

        ii.    The Plaintiff Improperly Relies on Dated Conclusory Assertions of Lamarr Scott to Try to Establish a Question of Fact. ............................................................... 5

        iii.    Even if there were Merit and Evidentiary Support for Plaintiff's Claims, they would still be Subject to Absolute Immunity. ..................................................................... 7

    III.    THE PLAINTIFF DOES NOT RAISE A QUESTION OF FACT IN CONNECTION WITH DEFENDANT BELLING'S INTERACTION WITH AARON JACKSON .......... 8

    IV.    THE COUNTY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS. ........................................................................... 9

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applegate v. Top Assocs., Inc.*,
  425 F.2d 92 (2d Cir. 1970) .................................................................................................. 6

*Bickerstaff v. Vassar Coll.*,
  196 F.3d 435 (2d Cir. 1999) ................................................................................................ 6

*Buari v. City of New York*,
  530 F. Supp. 3d 356 (S.D.N.Y. 2021) ............................................................................. 1, 2

*Buckley v. Fitzsimmons,*
  509 U.S. 259 (1993) ...................................................................................................... 1, 2, 4

*Burns v. Reed*,
  500 U.S. 478 (1991) ............................................................................................................ 2

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................................ 5

*Davis v. New York*,
  316 F.3d 93 (2d Cir. 2002) .................................................................................................. 5

*Dorman v, Higgins*,
  821 F.2d 133 (2d Cir. 1987) ................................................................................................ 9

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ............................................................................................................ 2

*Jarrett v. Headley*,
  802 F.2d 34 (2d Cir. 1986) .................................................................................................. 9

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005) ................................................................................................ 6

*Kanciper v. Lato*,
  989 F. Supp. 2d 216 (E.D.N.Y. 2013) ............................................................................ 3, 7

*Kellner v. City of New York*,
  No. 17-CV-1268 (MKB), 2021 WL 4251343 (E.D.N.Y. Sept. 17, 2021) ......................... 3

*Lee v. Willins*,
  617 F.2d 320 (2d Cir. 1980) ................................................................................................ 1

Case 1:19-cv-01678-MAV-JJM Document 190 Filed 03/15/24 Page 4 of 14

*McKeon v. Daley*,
   101 F. Supp. 2d 79 (N.D.N.Y. 2000),
   *aff'd*, 8 F. App'x 138 (2d Cir. 2001). ....................................................................... 1, 2

*Pinaud v. Cnty. of Suffolk*,
   52 F.3d 1139 (2d Cir. 1995) ...................................................................................... 10

*Shanks v. Burns*,
   No. 617CV719DNHTWD, 2017 WL 4221070 (N.D.N.Y. Sept. 21, 2017) ................ 2

*Shanks v. Otsego Cnty. New York*,
   No. 617CV00719DNHTWD, 2017 WL 4220463 (N.D.N.Y. July 24, 2017) ............. 2

*Simon v. City of New York*,
   727 F.3d 167 (2d Cir. 2013) ......................................................................................... 4

*Smith v. Garretto*,
   147 F.3d 91 (2d Cir. 1998) ........................................................................................... 4

*Smith v. Woods*,
   No. 9:03-CV-480, 2006 WL 1133247 (N.D.N.Y. Apr. 24, 2006),
   *aff'd*, 219 F. App'x 110 (2d Cir. 2007) ........................................................................ 6

*Tapp v. Champagne*,
   164 F. App'x 106 (2d Cir. 2006) .................................................................................. 9

*Taylor v. Kavanagh*,
   640 F.2d 450 (2d Cir. 1981) .................................................................................... 1, 2

*Thompson v. Kline*,
   504 F. Supp. 3d 200 (W.D.N.Y. 2020) ........................................................................ 9

*Vann v. City of Rochester*,
   No. 6:18-CV-06464(MAT), 2019 WL 2646616 (W.D.N.Y. June 27, 2019) .......... 7, 9

*Ying Jing Gan v. City of New York*,
   996 F.2d 522 (2d Cir. 1993) ..................................................................................... 5, 6

iii

INTRODUCTION

Defendants County of Erie (the "County") and former Assistant District Attorney Christopher Belling (collectively the "County Defendants") submit this memorandum in further support of their Motion for Summary Judgment [167][1].

ARGUMENT

I. **THIS COURT SHOULD DISMISS ALL CLAIMS AGAINST CHRISTOPHER BELLING BECAUSE HE IS ABSOLUTELY IMMUNE FROM LIABILITY FOR THE CONDUCT HE UNDERTOOK IN CONNECTION WITH THE PLAINTIFF**

The Plaintiff faults the County Defendants' reliance on *Lee v. Willins*, 617 F.2d 320 (2d Cir. 1980), on the basis that it precedes the functional approach to prosecutorial liability announced in *Buckley v. Fitzsimmons,* 509 U.S. 259 (1993). The County Defendants do not reject the import in *Buckley*, but this does not render *Lee v. Willins* meaningless for the point on which it is cited: to wit, that absolute immunity applies to nearly all manners of interaction between prosecutors and witnesses. This includes the pursuit of witnesses with threatened or actual legal process and charges. But this is not a principle that was questioned by *Buckley*. Indeed, additional post-*Buckley* caselaw cited by the County Defendants equally support the proposition. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 380 (S.D.N.Y. 2021) (allegations that a prosecutor threatened witnesses with prosecution were subject to absolute immunity); *See McKeon v. Daley*, 101 F. Supp. 2d 79, 88 (N.D.N.Y. 2000) (holding that prosecutor was entitled to absolute immunity for allegations that he ordered the arrest of a grand jury witness on a perjury charge as punishment for the witness' refusal to testify against the suspect). The Plaintiff uses a similar argument to attempt to avoid any continuing relevance of the Second Circuit's holding in *Taylor v. Kavanagh*,

---

[1]Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

1

640 F.2d 450, 452 (2d Cir. 1981).  However, *Taylor* remains good law in the Second Circuit and is routinely cited for the proposition that prosecutors are immune from conduct including falsification of evidence and coercion of witnesses.  *See e.g. Buari*, 530 F. Supp. 3d at 378 (S.D.N.Y. 2021).[2]

The County Defendants do not refute that function is the ultimate consideration, but also notes that the Supreme Court has observed that "[d]rawing a proper line between these functions may present difficult questions."  *Imbler v. Pachtman*, 424 U.S. 409, 431, n. 33 (1976).  When considering the scope of the prosecutorial function, courts routinely rely on the existence of probable cause as a vital consideration.  *See Buckley*, at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to arrest someone."); *see McKeon v. Daley*, 101 F. Supp. 2d 79, 88 (N.D.N.Y. 2000) (prosecutor ceased acting in an administrative or investigative capacity once he had identified the wrongdoer), *aff'd*, 8 F. App'x 138 (2d Cir. 2001).

The Plaintiff cites no case to support the extraordinary proposition that a prosecutor is subject to civil liability for interacting with witnesses after a suspect has been arrested and a criminal information filed.  Instead, the Plaintiff relies on cases that can be distinguished on the same grounds that *Buckley* is distinguished: the allegations concerned conduct prior to probable cause being developed.  *See Buckley*, at 272-74 (generating false evidence through expert shopping before developing probable cause); *See Burns v. Reed*, 500 U.S. 478, 495 (1991) (prosecutor could be liable for advising police on the legality of hypnotizing a suspect in order to elicit a confession);

---

[2] *See also Shanks v. Otsego Cnty. New York*, No. 617CV00719DNHTWD, 2017 WL 4220463, at *6 (N.D.N.Y. July 24, 2017), *report and recommendation adopted sub nom. Shanks v. Burns*, No. 617CV719DNHTWD, 2017 WL 4221070 (N.D.N.Y. Sept. 21, 2017).

2

*Kanciper v. Lato*, 989 F. Supp. 2d 216, 225 (E.D.N.Y. 2013) (a prosecutor conducting a surreptitious reinvestigation at the request of his Facebook friend after the district attorney's office had already determined that probable cause did not exist through ordinary channels).

The Plaintiff's reliance on *Kellner v. City of New York*, No. 17-CV-1268 (MKB), 2021 WL 4251343 (E.D.N.Y. Sept. 17, 2021) typifies this error. There, after a prosecutor dismissed a pending charge concerning a child's allegations of sexual abuse, the prosecutor took a role in developing evidence that the victim's father (the civil plaintiff) had induced fabricated testimony. The prosecutor's role included coordinating a pay-off of the victim, asking the victim's friend to get the victim "to crack" and advising the abuser's family on developing evidence against the victim's father. In essence, the prosecutor's actions took place as part of an active conspiracy to generate evidence of an underlying crime and the father's guilt *before* probable cause had arisen (and before the existence of a crime had even been established). Indeed, the prosecutor's involvement with the accuser was immediately preceded by the prosecutor dismissing a relevant, pending criminal process.

The prosecutor's position in *Kellner* is not comparable to the instant circumstances. The material evidence against Dixon, including two valid eyewitness identifications[3], had already been marshalled, and resulted in Dixon's arrest before Christopher Belling had any role at all. When Lamarr Scott came forward with a factually inaccurate confession that conflicted with the accounts of the Plaintiff and Plaintiff's own allies[4]. Even after Lamarr Scott came forward, Christopher

---

[3] The Plaintiff concedes that Christopher Belling was not aware of any constitutional or technical infirmity in Sullivan's identification of Dixon (P's Statement of Additional Facts [181-2], ¶¶28, 30) or Emil Adams' identification of Dixon (*id.*, ¶¶31-32).

[4] The discrepancies between Lamarrr Scott's confession and the existing and after arriving evidence in the County Defendants' Objections to Plaintiff's Statement of Additional Facts, filed herewith, at paragraph 55.

Belling's involvement was nothing beyond "evaluating evidence and interview[ing] witnesses," which are protected by absolute immunity. *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (*quoting Buckley*, at 273).

Plaintiff's reliance on *Simon v. City of New York*, 727 F.3d 167, 173 (2d Cir. 2013) is also misplaced. In *Simon*, the court held, very narrowly, that "[p]olice officers and a prosecutor who engage in extended detention and interrogation – including requiring attendance for a second full day – of a material witness whom the court has ordered to be brought before the court to determine whether she should be detained or bailed as a material witness are, as a matter of law, engaged in an investigative function that entitles them to, at most, qualified immunity." In doing so, the court noted the execution of a material witness warrant is, inherently, a police function. *Id.* at 172. Here, the instant case involves grand jury and trial matters, which are prosecutorial functions, rendering *Simon* inapposite.

## II. THE PLAINTIFF DOES NOT RAISE A QUESTION OF FACT IN CONNECTION WITH DEFENDANT BELLING'S INTERACTION WITH LAMARR SCOTT

### i. *The Plaintiff Relies on Pure Conjecture to try to Establish a Series of Contacts Between Belling and Scott.*

The Plaintiff speculates that Mr. Belling took several steps that may have resulted in additional contact with the Lamarr Scott, outside the presence of Mr. Scott's attorney and before presenting Lamarr Scott to the grand jury. This argument mischaracterizes documentary evidence and is wholly speculative. (*See* County Ds' Objections to Plaintiff's Statement of Material Facts, ¶¶108-124.)

The Plaintiff bases speculation on several notes taken by Christopher Belling *about* Lamarr, but which do not actually document any communication between Christopher Belling and

4

Lamarr Scott.  (*See* Plaintiff's Statement of Additional Material Facts [181-2], ¶113; County Ds' Objections to Plaintiff's Statement of Material Facts, ¶¶108-124.)

The Plaintiff seizes on Christopher Belling's knowledge of the names of Lamarr Scott's parents, as some sort of smoking gun.  But Mr. Belling also acquired the phone number of Mario Jarmon and his mother's name.  (Plaintiff's Exhibit 36 [181-39].)  Further, there is no record evidence that Mr. Belling contacted these individuals, let alone contacted them to improperly pressure Lamarr Scott.

Finally, the Plaintiff points to the circumstantial fact that Mr. Belling's notes reflect that he served a grand jury subpoena on Lamarr Scott.  However, the Plaintiff mischaracterizes this note to suggest that Mr. Belling might have used this interaction to influence Lamarr Scott.  To the contrary, the note reflects (i) service to a "front desk" rather than to Lamarr Scott personally, (ii) service subsequent to John Molloy being assigned to represent Lamarr Scott, and, in all probability, (iii) service to John Molloy's office.  (Plaintiff's Ex. 179 [182-72].)  Moreover, Lamarr Scott had no recollection of receiving a grand jury subpoena from Mr. Belling or anyone else.  (Scott Dep. Trans. [A1136], p. 68:14-17.)

   ii. *The Plaintiff Improperly Relies on Dated Conclusory Assertions of Lamarr Scott to Try to Establish a Question of Fact.*

In addition to speculation, the Plaintiff relies on prior, conclusory statements of Lamarr Scott that conflict with his grand jury and deposition testimony.  (P's Mem. of L. [181], pp. 30-32.)  These conclusory allegations are insufficient to create a question of fact.  These statements are of no evidentiary value because they fail to set forth "specific facts showing that there is a genuine issue for trial."  *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (quotation omitted) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 [1986]); *see Ying Jing Gan v. City of New*

5

*York*, 996 F.2d 522, 532 (2d Cir. 1993)  Indeed, "even where an affidavit's assertions are specific (e.g., with respect to time, place, persons, events, conversation, etc.), that affidavit may still be deemed conclusory if it is (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.'" *Smith v. Woods*, No. 9:03-CV-480, 2006 WL 1133247, at *3 (N.D.N.Y. Apr. 24, 2006), *aff'd*, 219 F. App'x 110 (2d Cir. 2007) (*quoting Jeffreys v. City of New York*, 426 F.3d 549, 551 [2d Cir. 2005]); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970).

At his grand jury testimony, Lamarr Scott confirmed that he was represented by counsel and that his testimony was not the result of pressure or coercion.  (Trial Trans. [A1434-1435], p. 58:23-59:12.)  Years later, Lamarr Scott would sign several sworn statements that contained purely conclusory allegations.  (*See* P's Mem. of L. [181], pp. 30-31 [five bullet points].).

At deposition, when finally asked for specifics, the harassment and coercion cited by Lamarr Scott consisted of the following ordinary police work:

> Well, he [(Detective Stambach]) – showing up himself was a form of harassment, as far as I understood.  You know, just showing up in places that I didn't think anybody should – should know about and/or show up…Basically that's it, and asking the question of whether I was going to take a polygraph or not.

(Scott Dep. Trans. [A1127], p. 59.).

In sum, Lamarr Scott has never claimed that he was coerced or pressured on August 12, 1991 at the time of his videotaped confession.  His only allegations of substantive misconduct

6

related to a timeline during which he had little contact with law enforcement and *no* contact with Mr. Belling. Those allegations have been abandoned by Mr. Scott in favor of the simple explanation that he recanted, while represented by counsel, because he felt ashamed to be blamed for the brutal murder of Toriano Jackson, and that recantation came about without prior influence or misconduct by police or Mr. Belling.

> iii. *Even if there were Merit and Evidentiary Support for Plaintiff's Claims, they would still be Subject to Absolute Immunity.*

Even if the Plaintiff's mischaracterized view of the evidence is accepted, including Plaintiff's speculation about additional contacts between Mr. Belling and Scott and Scott's family, that interaction would still be subject to absolute immunity privilege. *Kanciper*, at 228 (absolute immunity includes "presenting a case to a grand jury…along with the tasks generally considered adjunct to those functions, such as witness preparation [and] witness selection.")

In 2018, Lamarr Scott conceded that he did not interact outside the context of the grand jury proceedings. (Scott Interview Part I, dated August 15, 2018 [181-20][5] (emphasis added).) And the various contacts about which the Plaintiff speculates came while the grand jury was empaneled and within days of the appointment of counsel of counsel for Lamarr Scott and his subsequent grand jury testimony on January 13, 1992 [A1432 [167-4]]. These actions, even if true and improper, would be subject to absolute immunity in any event. *See Vann v. City of Rochester*, No. 6:18-CV-06464(MAT), 2019 WL 2646616, at *4 (W.D.N.Y. June 27, 2019) (holding that a prosecutor interviewing police officers and civilian witnesses in preparation for grand jury occurs

---

[5] At deposition on March 14, 2022, the Plaintiff showed Mr. Scott the transcript of Mr. Scott's interview with Erie County District Attorney personnel on August 15, 2018. Mr. Scott confirmed during his deposition that he was telling truth during this interview. (Scott Dep. Trans. [A1113-1114], p. 45:19 – 46:12.)

7

in the prosecutor's role as an advocate for the state, and is therefore protected under absolute immunity).

### III. THE PLAINTIFF DOES NOT RAISE A QUESTION OF FACT IN CONNECTION WITH DEFENDANT BELLING'S INTERACTION WITH AARON JACKSON

The Plaintiff does not dispute that Mr. Belling was not present for Aaron Jackson's initial tentative identification of Valentino Dixon. (P's Response to County Ds' Statement of Material Facts, ¶17.) Still, the Plaintiff blames Christopher Belling for the evolution of Aaron Jackson's identification from tentative, while he was hospitalized, to definitive at trial.

This theory is not supported by deposition testimony. To this day, Aaron Jackson maintains that Valentino Dixon was, in fact, the shooter. (Jackson Dep. Trans., pp. 69-70 [A0529-530].) He denied that Mr. Belling suggested the identity of Valentino or indicated any preference that Aaron Jackson identify Valentino Dixon. (Jackson Dep. Trans. [A0601], p. 141:9-15.)

In the absence of any direct testimony of the parties who would have been privy to such an interaction, the Plaintiff asks the Court to simply assume that Belling must have been to blame. (*See* County Ds' Objections to Plaintiff's Statement of Material Facts, ¶¶74-81.) Before the involvement of Christopher Belling or any law enforcement personnel with Aaron Jackson, Jackson was on already subject to external influence. Indeed, as of August 11, 1991, Aaron Jackson's parents were convinced that Valentino Dixon was the shooter. (*See Id*.) At trial, the defense was highly critical of Aaron Jackson's improved recollection, explored his family's role in his improved recollection, and specifically explored the possibility that his family influenced the identification. (Criminal Trial Transcript [181-5], p. 251.)

Moreover, the conduct in which Belling is alleged to have engaged – showing a witness a photograph after he has already engaged in a valid and documented identification – is not

constitutionally deficient.  *See Jarrett v. Headley*, 802 F.2d 34 (2d Cir. 1986) (holding that an initial tentative identification of the defendant by a witness, later strengthened by a subsequent non-suggestive identification, and later undoubted identification of the defendant at grand jury and trial was permissible).

Finally, even if the Plaintiff's account were to be accepted over the testimony of both Belling and Jackson, it would still be subject to absolute immunity, as it related to preparing Aaron Jackson for grand jury and trial testimony.  *See Vann*, No. 6:18-CV-06464(MAT), 2019 WL 2646616, at *4 (W.D.N.Y. June 27, 2019).

### IV. THE COUNTY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS.

The Plaintiff's conspiracy charge is infirm and should be dismissed as a matter of law because it is barred by the doctrine of absolute immunity. *See Tapp v. Champagne*, 164 F. App'x 106, 108 (2d Cir. 2006) ("[F]undamentally, since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity."); *See also Dorman v, Higgins*, 821 F.2d 133, 139 (2d Cir. 1987); *Thompson v. Kline*, 504 F. Supp. 3d 200, 216 (W.D.N.Y. 2020).  The record evidence is further devoid of any evidence of conspiracy between Christopher Belling and any other party.

The Plaintiff fails to contend with the fact that his failure to intervene claim only contemplates that Belling had an opportunity to "intercede on behalf of Valentino Dixon, particularly in an investigative context, before developing any probable cause for his arrest or prosecution." (Compl. [1], p. 55, ¶244.)  There is no record evidence that supports that Christopher Belling had any opportunity before Mr. Metcalf's arrest.  Further, any conspiracy cause of action

would be subject to absolute immunity for the reasons set forth at Point I *supra*. Finally, to the extent that Plaintiff can establish that Plaintiff suffered any constitutional violation in a context outside of the scope of absolute immunity, the Plaintiff has not pointed to facts to support that Mr. Belling had the knowledge of such violation and the opportunity to intervene on behalf of the Plaintiff.

The Plaintiff notes, rightly, that discovery of *Monell* claims was bifurcated. That does not preclude the County Defendants' application, which is not premised on the existence of or absence of *Monell* evidence. Rather, for the reasons set forth in the County Defendants' prior brief, the County Defendants are entitled to judgment on Plaintiff's *Monell* claims because (i) the Plaintiff has not established a constitutional violation that related to conduct of Christopher Belling or the Erie County District Attorney's Office. Moreover, even if there were such conduct, the County is immune from liability on the basis that the constitutional violation arose from the Erie County District Attorney's decision "whether or not and on what charges to prosecute." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1153, n. 14 (2d Cir. 1995).

## CONCLUSION

Based on the foregoing, this Court should grant summary judgment to the County Defendants, dismissing the Plaintiff's Complaint.

Dated: March 15, 2024
      Buffalo, New York          **LIPPES MATHIAS LLP**

                                          By:     /s/James P. Blenk
                                                   Jennifer C. Persico
                                                   James P. Blenk
                                                   *Attorneys for Defendants, County of Erie and former Assistant District Attorney Christopher Belling*