UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

VALENTINO DIXON,

    Plaintiff,

v.

CITY OF BUFFALO et al.,

    Defendants.

No. 19-cv-01678 (WMS) (JJM)

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Valentino Dixon was wrongfully convicted of a murder and attempted murder he had nothing to do with. In this suit, he seeks damages from the police officers who framed him. In opposition to the officers' motion for summary judgment, Mr. Dixon explained how a reasonable jury could conclude that the eyewitness identifications used to convict him had been fabricated by Defendants. ECF 180 at 21–31.[1] Mr. Dixon pointed to some *direct* evidence of Defendants' misconduct—namely, the eyewitnesses testifying that Defendants showed them individual mugshots of Mr. Dixon. *Id*. at 5, 7. And, critically, Mr. Dixon highlighted significant *circumstantial* evidence that a reasonable jury could rely on to conclude that Mr. Dixon was framed. That evidence includes the following:

First, Mr. Dixon is innocent and looks absolutely nothing like the true perpetrator, Lamarr Scott. *Id*. at 3. Because the men look nothing alike, Mr. Dixon's unrebutted eyewitness expert explained that "the most reasonable explanation for how three witnesses all came to select Mr. Dixon…is suggestion or influence during the identification procedures." *Id*. at 4–5, 22–23. That conclusion, based on high-quality scientific research, accords with what the prosecutor told the jury at Mr. Dixon's criminal trial—that there is no way three eyewitnesses could have *independently and coincidentally* identified Mr. Dixon if he were innocent (which we now know for certain he is). *Id*. at 11, 22.[2]

Second, the eyewitnesses also include John Sullivan, who was drunk and high, was running away, and was hit by a bullet before barely getting a look at the shooter—so would not have identified *anyone*, including Mr. Dixon, absent Defendants' misconduct. *Id*. at 5–7. The

---

[1] Pincites are to the document's internal pagination, not the ECF file stamp.
[2] In addition to how unlikely it is that *three* witnesses independently identified Mr. Dixon without police misconduct, one of those witnesses in particular—Emil Adams—got a very good look at true-perpetrator Scott. Even without considering the other two eyewitnesses, it is unlikely that Adams would have incorrectly identified the very-different-looking Mr. Dixon absent Defendants' misconduct. *Id*. at 4–5, 24.

1

jury can take into account the fact that police ordered individual photos of Mr. Dixon half an hour *before* Defendants interviewed Sullivan, even though there was no reason to suspect Mr. Dixon at that time. *Id*. at 6, 25.

Third, Defendants collected Mr. Dixon's clothes but chose *not* to have them tested, even though they knew the shooter's clothes would likely have blood on them. *Id*. at 8. Similarly, when Scott went on television and publicly confessed, and offered to submit his clothing for testing (and even pointed out the victim's blood on his shoes), Defendants incredibly declined his offer. *Id*. at 9, 27. They didn't bother to search for the murder weapon where Scott said he discarded it; nor did they show the eyewitnesses photo arrays including a photo of Scott. *Id*. at 9. Defendants have never offered a reason for failing to take these obvious steps; a reasonable jury can conclude these failures show that Defendants already knew they had framed Mr. Dixon.

\* \* \*

To be sure, this is *circumstantial* evidence of Defendants' misconduct—and Defendants hammered that point. ECF 169 at 30–31 (noting the eyewitnesses did not directly testify that Defendants engaged in misconduct); ECF 191 at 15 (similar). Defendants' premise was always wrong—Mr. Dixon explained that circumstantial evidence is sufficient. ECF 180 at 24, 29. The Second Circuit's recent opinion in *Ortiz v. Stambach* ends that debate.

Josue Ortiz was wrongfully convicted of a double homicide. *Ortiz v. Stambach*, 137 F.4th 48, 55 (2d Cir. 2025). Mr. Ortiz's conviction was based on a "confession" that Detective Stambach—the same Stambach accused of framing Mr. Dixon—fabricated and then coerced him into signing. *Id*. at 55–56 (noting the jury's verdict against Stambach and the Second Circuit's affirmance), 59 ("The only evidence…was the alleged confession."). The *Ortiz* decision is particularly instructive because Mr. Ortiz "confessed" while in the middle of a mental-health crisis and later had absolutely no memory of his interaction with Stambach. *Id*. at 56, 58. Much

2

like the Defendants here rely on the fact that they have never *admitted* wrongdoing, and the eyewitnesses have so far not directly testified about Defendants' misconduct, Stambach thought that if he denied any wrongdoing, and Mr. Ortiz couldn't directly contradict that denial, he would escape liability. *Id*. at 67 (noting Stambach's argument was that he couldn't be liable because "there was no direct evidence" that he maliciously prosecuted Mr. Ortiz, or fabricated his confession, or coerced him into signing it). The Second Circuit squarely rejected that argument:

> As a threshold matter, to the extent Detective Stambach asserts that Ortiz had to offer direct evidence to contradict Detective Stambach's testimony regarding the confession, we reject that assertion as a matter of law…. [T]he law does not require a plaintiff to prove that police officers fabricated evidence or engaged in bad faith through any particular type of evidence and, thus, a plaintiff may do so entirely through circumstantial evidence…. Thus, Ortiz's inability to testify to what took place in his time alone with Detective Stambach, or to provide another form of direct evidence contradicting Detective Stambach's testimony, did not oblige the jury to credit Detective Stambach's version of events regarding the confession.

*Id*. at 62 (rejecting direct-evidence-needed argument as it related to the malicious-prosecution claim), 68 (same, for the fabricated-confession and coerced-confession claims).[3]

      In sum, as *Ortiz* makes clear, it is beyond dispute that a reasonable jury can rely on circumstantial evidence like that presented by Mr. Dixon to find that Defendants violated Mr. Dixon's constitutional rights and caused his wrongful conviction.

Dated: July 11, 2025
New York, New York

                                            s/ Anna Benvenutti Hoffmann

                                            Nick Joel Brustin

---

[3] In *Ortiz*, the circumstantial evidence included that Mr. Ortiz was innocent but his "confession" contained non-public facts known only to the true perpetrators and to police, including Stambach. *Id*. at 63–65, 68. In addition, the jury was entitled to hold Detective Stambach's changing testimony against him. *Id*. at 64. Similarly, Mr. Dixon argued that a jury can hold Defendants' lies against them, in particular the lie that eyewitness John Sullivan, rather than one of the Defendants, was the first person to (wrongly) suggest Mr. Dixon was the shooter. ECF 180 at 25.

Anna Benvenutti Hoffmann
Mary Katherine McCarthy

NEUFELD SCHECK BRUSTIN HOFFMANN &
FREUDENBERGER LLP
200 Varick Street, Suite 800
New York, NY 10014
T: (212) 965-9081

Donald M. Thompson

EASTON THOMPSON KASPEREK
SHIFFRIN LLP
The Powers Building
16 West Main Street, Suite 243
Rochester, New York 14614
T: (585) 423-8290

4